Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040

Attorney for Defendants
TAYLOR SWIFT, KARL MARTIN SANDBERG,
KARL JOHAN SCHUSTER, SONY/ATV MUSIC
PUBLISHING LLC, KOBALT MUSIC
PUBLISHING AMERICA INC.,
BIG MACHINE LABEL GROUP, LLC and
UNIVERSAL MUSIC GROUP, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SEAN HALL d.b.a. GIMME SOME HOT SAUCE MUSIC, an individual, and NATHAN BUTLER d.b.a. FAITH FORCE MUSIC, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> TAYLOR SWIFT, an individual, KARL MARTIN SANDBERG, an individual, KARL JOHAN SCHUSTER, an individual, SONY/ATV MUSIC PUBLISHING, LLC a limited liability company, KOBALT MUSIC PUBLISHING AMERICA INC. a Delaware Corporation, BIG MACHINE LABEL GROUP, LLC, a limited liability company, UNIVERSAL MUSIC GROUP, INC., a California Corporation, and DOES 1-5, <br><br> Defendants. | Case No. 2:17−cv−06882 MWF (ASx) <br><br> DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND MOTION TO STRIKE <br><br> [Fed. R. Civ. P. 12(b)(6) & 12(f)] <br><br> Date: February 12, 2018 <br> Time: 10:00 a.m. <br><br> Courtroom of the Honorable Michael W. Fitzgerald <br> United States District Judge |

# **TABLE OF CONTENTS**

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ...............................1

1.    SUMMARY OF REPLY.............................................................................1

2.    PLAINTIFFS' SPECIFIC ALLEGATIONS AS TO THE ALLEGEDLY
      COPIED LYRICS CONCLUSIVELY NEGATE THEIR CLAIM..................2

    (a)    Plaintiffs Misstate the Standards Governing the Motion to Dismiss.......2

        (1)    Plaintiffs Rely on Pre-*Twombly* and *Iqbal* Cases to Argue
              that Implausible Claims Survive FRCP 12(b)(6) ........................2

        (2)    Plaintiffs' Specific Allegations and Limited Claimed
              Similarity Make FRCP 12(b)(6) Dismissal Proper ......................3

    (b)    Plaintiffs' Allegations and Admissions Negate a Plausible Claim of
      Copying Protected Expression .................................................................5

        (1)    Plaintiffs Confirm They Rely on Copyright Protection for a
              Short Phrase Combining Two Public Domain Concepts, and
              the Idea of Actors Engaging in an Activity ..................................5

        (2)    Plaintiffs Effectively Concede that Combining the Public
              Domain Elements of Players Will Play and Haters Will Hate
              Is Not Copyrightable Expression...................................................7

        (3)    Plaintiffs Cannot Monopolize the Idea that Players Will Play
              and Haters Will Hate ...................................................................10

            i.    *Plaintiffs' Characterization of the Idea They Sought to
                  Convey Does Not Allow Them to Monopolize the Idea
                  that Players Will Play and Haters Will Hate* ...................10

            ii.   *Plaintiffs Are Not Helped by the Cases They Cite* ...........12

        (4)    Plaintiffs' Claim Also Fails Because the Allegedly Copied
              Lyric Is an Unprotected Short Phrase.........................................14

            i.    *The Cases Plaintiffs Cite Do Not Avoid that Copyright
                  Does Not Protect the Allegedly Copied Short Phrase* ......14*

i

           ii.     *Plaintiffs Fail to Distinguish the Cases Defendants Cited* ...............................................................16

     (5)   Plaintiffs Do Not Dispute that the Remaining Lyrics Are Different and Share Only the Unprotected Idea of "Actors Engaging in a Type of Activity"...................................19

     (6)   None of the Cases Plaintiffs Cite Support Plaintiffs' Argument that Industry Custom and Practice Establishes Their Infringement Claim...................................................19

  (c)   Leave to Amend Is Properly Declined Because Plaintiffs Cling to Allegations that Negate a Plausible Infringement Claim......................21

3.    PLAINTIFFS' ALLEGATIONS OF AN INDUSTRY PRACTICE TO OBTAIN LICENSES ARE PROPERLY STRICKEN ...................................22

4.    CONCLUSION ...............................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140 (2d Cir. 1998)........................17

*Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705 (7th Cir. 1972) ...............17

*Allen v. Destiny's Child*, No. 06 C 6606, 2009 WL 2178676
  (N.D. Ill. July 21, 2009) ..........................................................................4, 12

*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994)...................10

*Applied Innovations, Inc. v. Regents of the Univ. of Minnesota*, 876 F.2d 626
  (8th Cir. 1989) ......................................................................................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................................ 2, 3, 4

*Bach v. Forever Living Prod. U.S., Inc.*, 473 F. Supp. 2d 1127
  (W.D. Wash. 2007) ...............................................................................................12

*Batiste v. Najm*, 28 F. Supp. 3d 595 (E.D. La. 2014)................................................17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................ i, 2, 4

*Bruce v. Weekly World News, Inc.*, 310 F.3d 25 (1st Cir. 2002)...............................20

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) .......................................22

*Cellular Accessories for Less, Inc. v. Trinitas LLC*, 65 F. Supp. 3d 909
  (C.D. Cal. 2014) ...................................................................................................16

*Craig Frazier Design, Inc. v. Zimmerman Agency, LLC*, No. C 10-1094 SBA,
  2010 WL 3790656 (N.D. Cal. Sept. 27, 2010) ........................................................4

*Davis v. Powell*, 901 F. Supp. 2d 1196 (S.D. Cal. 2012) .............................................2

*Dezendorf v. Twentieth Century-Fox Film Corp.*, 99 F.2d 850 (9th Cir. 1938) ..........4

*Durham v. Prudential Ins. Co. of Am.*, 236 F. Supp. 3d 1140 (C.D. Cal. 2017) .......13

*Edwards v. Raymond*, 22 F. Supp. 3d 293 (S.D.N.Y. 2014).......................................3

*Emanation Inc. v. Zomba Recording Inc.*, 72 F. App'x 187 (5th Cir. 2003) .............17

*Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221 (9th Cir. 2012) .......10

*Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017 (9th Cir. 2013)...............................3

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)................... 5, 12, 15

*Fischer v. Forrest*, No. 14 CIV. 1304 PAE, 2015 WL 195822
(S.D.N.Y. Jan. 13, 2015) ...................................................................................15

*FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 679 F. Supp. 2d 312
(E.D.N.Y. 2010) ..................................................................................................4

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072
(9th Cir. 2006) ..................................................................................................12

*Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*,
634 F. Supp. 2d 1226 (D. Colo. 2009) ..............................................................14

*Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738 (9th Cir. 1971) .........13

*Holden v. Hagopian*, 978 F.2d 1115 (9th Cir. 1992) .....................................................3

*Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377 (Fed. Cir. 2007) ........................... 16, 17

*Island Software & Computer Serv., Inc. v. Microsoft Corp.,* 413 F.3d 257
(2d Cir. 2005) ...................................................................................................22

*Johnson v. Gordon*, 409 F.3d 12 (1st Cir. 2005) ........................................................17

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140
(9th Cir. 2003) ....................................................................................................8

*Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485
(9th Cir. 1984) ..................................................................................................12

*Limestone Dev. Corp. v. Vill. of Lemont,* 520 F.3d 797 (7th Cir. 2008) ......................2

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936
(9th Cir. 2011) ..................................................................................................22

*Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133 (2d Cir. 2004) ....................15

*Mayimba Music, Inc. v. Sony Corp. of Am.*, No. 12 CIV. 1094 AKH,
2014 WL 5334698 (S.D.N.Y. Aug. 19, 2014) ....................................................9

*Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077 (D. Md. 1995) ........ 10, 20, 23

*Narell v. Freeman*, 872 F.2d 907 (9th Cir. 1989) .............................. 10, 15, 16, 17, 18

*Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2004) ..................................................12

*North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031 (9th Cir. 1992) ...............4

iv

*Optima Tax Relief LLC v. Channel Clarity, Inc.*, No. SACV141902JLSJCGX,
2015 WL 12765016 (C.D. Cal. Aug. 26, 2015)............................................................4

*Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10-CV-00106-LRH,
2015 WL 5176582 (D. Nev. Sept. 3, 2015) ...................................................... 20, 22

*Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920
(N.D. Ill. 2013)...........................................................................................................3, 17

*Plains Cotton Co-op. Ass'n of Lubbock, Texas v. Goodpasture Computer
Serv., Inc.*, 807 F.2d 1256 (5th Cir. 1987) .............................................................20

*Prunte v. Universal Music Grp., Inc.*, 699 F. Supp. 2d 15 (D.D.C. 2010),
*aff'd*, 425 F. App'x 1 (D.C. Cir. 2011) ....................................................................18

*Puckett v. Hernandez*, No. 216CV02199-SVW-AGR, 2016 WL 7647555
(C.D. Cal. Dec. 21, 2016)................................................................... 3, 18, 21

*Reichman v. Poshmark, Inc.*, 267 F. Supp. 3d 1282 (S.D. Cal. 2017) ........................3

*Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892 (9th Cir. 2013) ............................13

*Robert Kubicek Architects & Assocs., Inc. v. Bosley*, No.
CV-11-02112-PHX-DGC, 2012 WL 6554396 (D. Ariz. Dec. 14, 2012).................4

*Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992)........................................................16

*Salinger v. Random House, Inc.*, 811 F.2d 90 (2d Cir.), *opinion supplemented
on denial of reh'g*, 818 F.2d 252 (2d Cir. 1987).....................................................15

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003) ............................................ 7, 8, 9, 10

*Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123 (C.D. Cal. 2015),
*aff'd* 690 F. App'x 519 (9th Cir. 2017), *cert. denied*, No. 17-180,
2017 WL 3325074 (U.S. Oct. 10, 2017)...................................................................3

*Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158 (C.D. Cal. 2016) ....................3

*Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29
(1st Cir. 2012) .............................................................................................................14

*Sophia & Chloe, Inc. v. Brighton Collectibles, LLC*, No. 15-56867,
2018 WL 316022 (9th Cir. Jan. 8, 2018) .................................................................11

v

*Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276 (3d Cir. 2004) ..............................15

*Stern v. Does*, 978 F. Supp. 2d 1031 (C.D. Cal. 2011), *aff'd sub nom.*

  *Stern v. Weinstein*, 512 F. App'x 701 (9th Cir. 2013) ...................................... 11, 15

*Steward v. West*, No. CV1302449BROJCX, 2013 WL 12120232

  (C.D. Cal. Sept. 6, 2013)....................................................................................3

*Syrus v. Bennett*, 455 F. App'x 806 (10th Cir. 2011) ....................................................8

*Tempest Pub., Inc. v. Hacienda Records & Recording Studio, Inc.*,

  No. CIV.A. H-12-736, 2015 WL 1246644 (S.D. Tex. Mar. 18, 2015) ........... 20, 22

*Vargas v. Pfizer, Inc.*, 418 F. Supp. 2d 369 (S.D.N.Y. 2005) .....................................4

*Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513

  (S.D.N.Y. 2008) ..............................................................................................12

**Statutes**

17 U.S.C. § 102.......................................................................................... 12, 19

17 U.S.C. § 103.............................................................................................8

17 U.S.C. § 115............................................................................................22

**Rules**

Federal Rule of Civil Procedure 1 .....................................................................5

Federal Rule of Civil Procedure 11 ..................................................................21

Federal Rule of Civil Procedure 12 ................................................. 2, 3, 4, 5, 13, 19

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

**1.    SUMMARY OF REPLY**

Plaintiffs allege that players, haters and combinations of those terms predate plaintiffs' 2001 musical composition, but claim to own the combination of the two public domain concepts that players will play and haters will hate.  Their claim is frivolous.

First, plaintiffs agree that since they claim copyright in their decision to combine two public domain concepts, they must plausibly plead a protected selection and arrangement.  Yet plaintiffs ignore established law that combining two concepts falls far below the numerous elements required for a protected selection and arrangement.  In addition, combining players play with haters hate is obvious, predictable and trivial.  Also, plaintiffs, by arguing the works' lyrics are close paraphrases, expressly confirm they fall short of the virtual identity required to plead the claim.  For each of those reasons, plaintiffs' claim is properly dismissed.  *See below* at 7-9.

Second, plaintiffs agree that the allegedly copied lyric is not protected expression if it merges with the idea that players will play and haters will hate.  Since that is clearly the case, plaintiffs try to avoid dismissal by arguing they actually intended to convey the idea "that other people are going to do what they are going to do and to not be concerned with the criticism and negative opinions of those people."  Plaintiffs' Memorandum in Opposition ("Oppn"; Doc. 25) at 12:7-8.  That is both absurd and irrelevant: whatever plaintiffs claim to have intended, anyone desiring to express the idea that players will play and haters will hate faces plaintiffs' claimed monopoly of the ability to do so.  For that additional reason, plaintiffs' claim fails and is properly dismissed.  *See below* at 10-13.

Third, plaintiffs' claim also is barred by the established principle that short phrases are not protected by copyright.  Plaintiffs' short phrase consisting of two admittedly public domain concepts hardly rises to the level of a highly creative and

1   unique phrase avoiding that copyright principle.  This is yet another independent

2   reason that plaintiffs' claim fails and is properly dismissed. *See below* at 14-18.

3          Importantly, while each of these defects is fatal to plaintiffs' claim, dismissal

4   is required if the Court concludes that any one of them applies.  Further, plaintiffs –

5   placing all their bets on their specific allegations as to the allegedly copied lyric – do

6   not suggest any way in which they could avoid the fatal defects flowing from their

7   own allegations and admissions.   As a result, amendment would be futile and

8   plaintiffs' claim should be dismissed, without leave to amend.

9   **2.**     **PLAINTIFFS' SPECIFIC ALLEGATIONS AS TO THE ALLEGEDLY**

10            **COPIED LYRICS CONCLUSIVELY NEGATE THEIR CLAIM**

11         **(a)**     **Plaintiffs Misstate the Standards Governing the Motion to Dismiss**

12                  **(1)**     **Plaintiffs Rely on Pre-*Twombly* and *Iqbal* Cases to Argue that**

13                          **Implausible Claims Survive FRCP 12(b)(6)**

14         Plaintiffs rely on pre-2007 cases to argue that Federal Rule of Civil Procedure

15   12(b)(6) motions are disfavored, rarely granted and appropriate only if it is beyond

16   doubt that the plaintiff can prove no facts entitling him to relief.  Oppn. at 3:26-5:5.

17   That is not correct.  In 2007, "[t]he old formula—that the complaint must not be

18   dismissed unless it is beyond doubt without merit—was discarded by the *Bell*

19   *Atlantic* decision." *Davis v. Powell*, 901 F. Supp. 2d 1196, 1208 (S.D. Cal. 2012),

20   *quoting Limestone Dev. Corp. v. Vill. of Lemont,* 520 F.3d 797, 803 (7th Cir. 2008);

21   *see Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563 n. 8 (2007).  Instead, *Twombly*

22   "teaches that a defendant should not be forced to undergo costly discovery unless the

23   complaint contains enough detail, factual or argumentative, to indicate that the

24   plaintiff has a substantial case." *Limestone*, 520 F.3d at 802-03; *see* Defendants'

25   Memorandum in support of Motion ("Defs' Memo."; Doc. 20-1) at 7:5-17.

26         Plaintiffs also argue that the Court must accept their factual allegations as true

27   and draw every inference in their favor.  Oppn. at 4:10-18.  But, for the purposes of

28   Rule 12(b)(6), the Motion does accept plaintiffs' factual allegation that a short

2

phrase combining two unprotected concepts (players will play and haters will hate) was copied.  Also, plaintiffs do not allege facts triggering an inference, reasonable or otherwise, that the short phrase somehow is protected expression.  Neither may the Court credit plaintiffs' conclusory allegation that it is protected.  Complaint at 6:10-13.  "Under *Iqbal, . . .* bald legal conclusions are not entitled to be accepted as true and thus 'do not suffice' to prevail over a motion to dismiss." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1020 (9th Cir. 2013), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Further, plaintiffs' conclusory allegation of copyright protection does not "follow from the description of facts as alleged by the plaintiff[s]." *Reichman v. Poshmark, Inc.*, 267 F. Supp. 3d 1282 (S.D. Cal. 2017), *quoting Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992).  Quite the contrary, the facts alleged by plaintiffs negate a plausible claim that protected expression was copied.

### (2)  Plaintiffs' Specific Allegations and Limited Claimed Similarity Make FRCP 12(b)(6) Dismissal Proper

Plaintiffs argue that whether they allege copying of protected expression "is a question of fact for the jury not properly decided on a motion to dismiss."  Oppn. at 10:12-14.  Plaintiffs simply ignore the many cases defendants cited, granting motions to dismiss for lack of a plausible claim of copying protected expression. *See, e.g., Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1167 (C.D. Cal. 2016); *Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1147, 1148-49 (C.D. Cal. 2015), *aff'd* 690 F. App'x 519 (9th Cir. 2017), *cert. denied*, No. 17-180, 2017 WL 3325074 (U.S. Oct. 10, 2017); *Puckett v. Hernandez*, No. 216CV02199-SVW-AGR, 2016 WL 7647555, at *5 (C.D. Cal. Dec. 21, 2016); *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 925 (N.D. Ill. 2013); *see, also Edwards v. Raymond*, 22 F. Supp. 3d 293, 298 (S.D.N.Y. 2014) (Rule 12(b)(6) motion granted where lyrics not similar in protected expression); *Steward v. West*, No. CV1302449BROJCX, 2013 WL 12120232, at *3 (C.D. Cal. Sept. 6, 2013) (same; "the Court finds that there is no originality in such words and

1   short phrases as 'Get Down,' 'Step Up,' 'It's the Hottest Thing,' or 'Step Up
2   Front'").

3       Further, the cases that plaintiffs cite are easily distinguished.  *Dezendorf v.*
4   *Twentieth Century-Fox Film Corp.*, 99 F.2d 850 (9th Cir. 1938), not only predates
5   *Twombly* and *Iqbal* by seven decades, but also involved a play and motion picture,
6   rather than – as here – a specific and limited claimed similarity.  *Id.* at 851.
7   Likewise, *Optima Tax Relief LLC v. Channel Clarity, Inc.*, No.
8   SACV141902JLSJCGX, 2015 WL 12765016 (C.D. Cal. Aug. 26, 2015), involved
9   "detailed allegations" of at least six "substantially similarly website elements." *Id.*
10  at *4.  In *Craig Frazier Design, Inc. v. Zimmerman Agency, LLC*, No. C 10-1094
11  SBA, 2010 WL 3790656 (N.D. Cal. Sept. 27, 2010), the motion to dismiss was
12  denied because both works were not properly before the court, which only suggested
13  in dicta it would have denied the motion anyway.  *Id.* at *3.  *North Coast Indus. v.*
14  *Jason Maxwell, Inc.*, 972 F.2d 1031, 1032 (9th Cir. 1992) (graphic designs), *Vargas*
15  *v. Pfizer, Inc.*, 418 F. Supp. 2d 369, 372 (S.D.N.Y. 2005) (musical track), *Robert*
16  *Kubicek Architects & Assocs., Inc. v. Bosley*, No. CV-11-02112-PHX-DGC, 2012
17  WL 6554396, at *4 (D. Ariz. Dec. 14, 2012) (architectural plans) and *Allen v.*
18  *Destiny's Child*, No. 06 C 6606, 2009 WL 2178676 (N.D. Ill. July 21, 2009) (title,
19  lyrics and music), were all summary judgment cases where the district court found
20  triable issues.  And *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 679 F. Supp.
21  2d 312 (E.D.N.Y. 2010), confirmed that under Rule 12(b)(6) "courts may resolve
22  [originality] as a matter of law in certain circumstances," before deciding the
23  plaintiff's photographs were not, in their entirety, uncopyrightable as a matter of
24  law.  *FragranceNet.com*, 679 F. Supp. 2d at 320-21.

25      Here, in contrast, plaintiffs admit the prior uses of player, hater and
26  combinations of those terms, and cabin their claim by specifically alleging copying
27  of a short phrase combining two admittedly public domain concepts.  In the interest
28  of "secur[ing] the just, speedy, and inexpensive determination of" an action in which

plaintiffs' allegations negate a plausible claim (Fed. R. Civ. P. 1), dismissal under Rule 12(b)(6) is appropriate.

      **(b)**    <u>**Plaintiffs' Allegations and Admissions Negate a Plausible Claim of Copying Protected Expression**</u>

           **(1)**      **Plaintiffs Confirm They Rely on Copyright Protection for a Short Phrase Combining Two Public Domain Concepts, and the Idea of Actors Engaging in an Activity**

It is important to note what is not disputed.

Plaintiffs agree that a copyright infringement claim must allege "copying of constituent elements of the [plaintiff's] work that are original." Oppn. at 5:7-12, *quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). In addition, plaintiffs agree that the allegedly copied lyrics are the "phrase 'Playas, they gonna play / And haters, they gonna hate,'" "The playas gon' play / Them haters gonna hate," and other lyrics referring to "actors engaging in a type of activity," namely, ballers balling and shot callers calling in plaintiffs' composition, versus heartbreakers breaking and fakers faking in *Shake It Off*. Complaint at 6, ¶¶ 27-28; *see, e.g.,* Oppn. at 2:14-17, 3:1-4, 7:8-10. Also, by relying solely on the specific lyrics identified in their Complaint and Opposition, and by plaintiffs' silence in the face of defendants' Motion (Defs' Memo. at 1:9-10, 6:11-14), plaintiffs concede that as far as music and the remaining lyrics are concerned the works are very different.

Plaintiffs also admit that before their 2001 musical composition, players/playas and haters/hatas were used in lyrics and otherwise,[1] and that prior

---

[1]     Complaint at 5-6, ¶¶ 20-24 ("previous artists had used terms such as "playa hater(s)" or "playa hater(s) hate"; "The term "playa hater(s)" was often used as a noun to describe a type of person"); Plaintiffs' Notice of Non-Opposition to Request for Judicial Notice (Doc. 26); Defs' Memo. at 4 n. 2 & Defendants' Request for Judicial Notice (Doc. 20-4) at 1-2, ¶¶ 2-7 (Player, a 1970s musical group; Playa, a 1990s R&B and hip hop musical group; *The Player*, a 1992 motion picture, based on *The Player*, a 1988 novel; *Psychobetabuckdown* by Cypress Hill (1991) ("you're a hater"); *Player's Ball* by Outkast (1993); *Playa Playa* by Big Mike (1994)).

5

uses in lyrics include "Players . . . playing"[2] and combinations of player and hater.[3] In addition, plaintiffs confirm that they claim copyright protection in their decision "to combine the concept of 'playas' playing along with 'haters' hating." Oppn. at 1:17-18; Complaint at 5-6, ¶¶ 20-24 ("the combination had not been used in popular culture prior to Plaintiffs' original use"; "Plaintiffs originated the linguistic combination of playas/players playing along with hatas/haters hating"). And plaintiffs confirm they claim the exclusive right to say these public domain concepts together. Oppn. at 1-2 n. 2 (until *Shake It Off*, "Plaintiffs enjoyed a de facto monopoly on the phrase as no commercial songwriters had used the combination"), & at 3:17-8 (defendants supposedly infringed by "us[ing] the terms 'playas gonna play' and 'haters gonna hate' together").

---

[2]   *Id.* at 1, ¶ 1 (*Dreams* by Fleetwood Mac (1977) ("Players only love you when they're playing")).

[3]   *Id.* at 1-2, ¶¶ 8-11, 13 (*Playa Hata* by Luniz (1995) ("So playa hataz hate me," "Why you wanna playa hate on me?" and "Why you playa hate?"); *Man U Luv ta Hate* by Sir Mix-A-Lot (1996) ("If you want to playa hate," "Got these playa haters lookin' at me silly," "Boy get a job and quit player hatin'"); *Playa Hater* by Notorious B.I.G. (1997) ("We have, the playas, and we have, the playa haters"); *Hater Players* by Black Star (1998) ("I'm sick of the hater-players" and "Aiyyo, later for the hater-players/Yo-yo, yo-yo, later for these hater-players"); *Don't Hate the Player* by Ice-T (1999) ("Don't hate the player"); *Don't Hate the Player* by Too Short (2000) ("Don't hate the player," "If you never was a player, I can't hate you," "You never was a player, we can't hate you," "You think someone player hated")).

Plaintiffs argue that defendants' cited examples of prior uses must be exhaustive of "every song which contained the words player, hater, or some combination thereof . . . ." Oppn. at 7:10-8:4. That is not so. Defendants provided only examples, which also include, for instance, the use of players playing in *Feelin On Your Booty* by R. Kelly, released the year before plaintiffs' composition and which includes in its chorus "Playas wanna play, Ballers wanna ball, Rollers wanna roll." *See* Copyright Office search results for *Feelin On Your Booty*, *http://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?DB=local&PAGE=First* (composition created and first published in 2000); *Feelin On Your Booty* lyrics, https://genius.com/R-kelly-feelin-on-yo-booty-lyrics; *Feelin On Your Booty* music video, https://www.youtube.com/watch?v=Bf4yHgXdjPY.

1

2

3

**(2)**     **Plaintiffs Effectively Concede that Combining the Public Domain Elements of Players Will Play and Haters Will Hate Is Not Copyrightable Expression**

4

5

6

Plaintiffs' Opposition effectively concedes that their claim that the allegedly copied lyrics are protected as the selection and arrangement of public domain elements is contrary to binding Ninth Circuit precedent. Defs' Memo. at 13:13-16:7.

7

8

9

10

11

12

13

14

15

16

Plaintiffs agree that players will play and haters will hate – nouns and their corresponding verbs – are "concepts" everyone can use. Oppn. at 1:18-19. But plaintiffs claim to have "originated the linguistic <u>combination</u> of playas/players playing <u>along with</u> hatas/haters hating." Complaint at 5:22-23 (emphasis added); *see, above* at 5-6. Accordingly, plaintiffs rely, as they must, on the principle that "a combination of unprotectable elements may qualify for copyright protection." Oppn. at 9:8-10, *quoting Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). However, as a matter of law the allegedly copied lyrics are not a protected selection and arrangement and, even if they were, plaintiffs admit that their lyrics lack the required virtual identity with *Shake It Off*'s lyrics.

17

18

19

20

21

22

23

24

25

Plaintiffs concede that the allegedly copied lyric is protected only if "the public domain elements used therein 'are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.'" Oppn. at 9:10-13, *quoting Satava*, 323 F.3d at 811. Yet plaintiffs ignore that the two public domain elements they contend they combined fall far short of the "numerous" elements required for a protected selection and arrangement. Defs' Memo. at 14:18-26, *citing, inter alia, Satava*, 323 F.3d at 811 (combination of six elements to create glass sculpture of jellyfish not "numerous enough").

26

27

28

Perhaps in an attempt to add two additional elements to support their claim that a protected selection and arrangement was copied, plaintiffs also refer to their lyrics "Ballers, they gonna ball / Shot callers, they gonna call." Oppn. at 2-4. But

7

neither those lyrics nor any lyrics substantially similar to them appear in *Shake It Off*.  As plaintiffs admit, the ensuing lyrics in *Shake It Off* are "Baby I'm just gonna shake, shake, shake, shake, shake, Shake it off.  Shake it off.  Heartbreakers gonna break, break, break, break, break and the fakers gonna fake, fake, fake, fake, fake." *Id.* at 13:9-18.  Plaintiffs do not dispute that the only similarity between those lyrics and plaintiffs' ballers ball and callers call lyrics is an unprotected idea – namely, "actors engaging in a type of activity" (Complaint at 6, ¶ 28) – that as a matter of law is not a substantial similarity.  Defs' Memo. at 16:8-17:15; *see below* at 10-12. And even if these two additional lyrics, which do not appear in *Shake It Off*, could be considered to result in a combination of four elements, four still is not the required "numerous" elements to result in protected expression.  *Satava*, 323 F.3d at 811 (six elements not "numerous enough"); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1147 (9th Cir. 2003) (four elements not sufficient).

Plaintiffs' claim also fails because the decision to combine two unprotected concepts is not "original enough that their combination constitutes an original work of authorship.'"  Oppn. at 9:10-13, *quoting Satava*, 323 F.3d at 811.  Plaintiffs do not dispute that any copyright protection in the allegedly copied combination of players will play and haters will hate extends at most to the decision to combine those public domain truisms.  Defs' Memo. at 13:25-14:23; 17 U.S.C. § 103(b). Plaintiffs concede that well before their 2001 composition, other musical compositions included in their lyrics players, players playing, haters and both player and haters together. *See above* at 5-6.  Given these admissions, the alleged decision to combine players playing and haters hating is not only a trivial variation, but an inevitable one.  *Syrus v. Bennett*, 455 F. App'x 806, 809 (10th Cir. 2011) (phrases unoriginal where they are "merely predictable variations on a cheer widely used in sports").  Indeed, plaintiffs' contention that the simple decision to combine players play with haters hate is original, is barred by *Satava*'s ruling that the plaintiff sculptor's "selection of the clear glass, oblong shroud, bright colors, proportion,

1  vertical orientation, and stereotyped jellyfish form, considered together, lacks the

2  quantum of originality needed to merit copyright protection." *Satava*, 323 F.3d at

3  811; Defs' Memo. at 1:1-15.[4]

4      Plaintiffs cannot overcome that their allegedly copied selection and

5  arrangement does not consist of "numerous" elements and also is not "original

6  enough" to be protected expression. *Satava*, 323 F.3d at 811. Even if they could

7  somehow overcome both of those defects, any protection in their allegedly copied

8  selection and arrangement would be "thin," requiring that to state a claim the lyrics

9  in their composition and *Shake It Off* would have to be "virtually identical . . . ." *Id.*;

10  Def's Memo. at 15:18-16:4. Yet plaintiffs do not even mention the requirement of

11  virtual identity, and plaintiffs' replication of the lyrics confirms the many

12  differences. Oppn. at 13:3-18. Moreover, plaintiffs argue only that the lyrics are a

13  "close paraphrase" (*id.* at 14:5-13), which by definition is not virtual identity.

14      Plaintiffs admit that the allegedly copied lyric is a combination of public

15  domain elements. As a matter of law, the constituent elements are not "numerous,"

16  combining them was not "original enough" and plaintiffs concede the works are not

17  "virtually identical." *Satava*, 323 F.3d at 811. For each of these reasons, plaintiffs

18  do not allege a plausible claim of copying of protected expression and their

19  infringement claim is properly dismissed.

20

21      [4]      In opposition, plaintiffs cite only an unpublished district court decision

22  outside this Circuit finding that "Loca con su Tiguere" is protected by copyright.

23  Oppn. at 9:20-24, *citing Mayimba Music, Inc. v. Sony Corp. of Am.*, No. 12 CIV.

    1094 AKH, 2014 WL 5334698 (S.D.N.Y. Aug. 19, 2014). But *Mayimba* was not

24  even a selection and arrangement case. Also, the district court relied on the absence

25  of evidence of prior uses (*id.* at *16), while here plaintiffs allege and admit prior

    uses of players, haters and combinations of players and haters (*see above* at 5-6). To

26  the extent plaintiffs intended to cite *Mayimba* as an instance of a short phrase being

27  protected, *Mayimba* either implicitly found "Loca con su Tiguere" to be a highly

    creative exception to the established rule that short phrases are not protected, or is

28  irreconcilable with the law of this Circuit. *See below* at 14-17.

**(3)   Plaintiffs Cannot Monopolize the Idea that Players Will Play and Haters Will Hate**

>    **i.     *Plaintiffs' Characterization of the Idea They Sought to Convey Does Not Allow Them to Monopolize the Idea that Players Will Play and Haters Will Hate***

The alleged copying of the phrase "playas, they gonna play and haters, they gonna hate," also does not state a plausible claim because that phrase merely states the unprotected idea that players will play and haters will hate.  Defs' Memo. at 12:12-13:12.

In their Opposition, plaintiffs first try to limit the merger doctrine by citing *Satava* for the proposition that there is no protection "if the idea underlying the copyrighted work can be expressed <u>in only one way</u>, lest there be a monopoly on the underlying idea."  Oppn. at 11:17-19 (emphasis added), *quoting Satava*, 323 F.3d at 812 n. 5.  However, *Satava* found "it unnecessary to consider the application of the merger doctrine" (*id.*), so plaintiffs quote dicta.  Further, both before and after *Satava* this Circuit has held the doctrine is broader.  Defs' Memo. at 12:21-13:1, *quoting Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989) ("Phrases and expressions conveying an idea <u>typically expressed in a limited number of stereotyped fashions</u> are not subject to copyright protection" (emphasis added)); *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1229 (9th Cir. 2012) ("when similar features of a work are '<u>as a practical matter indispensable, or at least standard</u>, in the treatment of a given idea, they are treated like ideas and are therefore not protected by copyright'" (emphasis added)), *quoting Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1444 (9th Cir. 1994).

And, importantly, plaintiffs do not even try to dispute that <u>the idea</u> that players will play and haters will hate merges with the allegedly copied phrase "playas, they gonna play and haters, they gonna hate."  Instead, plaintiffs try to side-step that fatal defect by arguing that plaintiffs intended those words to convey "that other people

10

1    are going to do what they are going to do and to not be concerned with the criticism

2    and negative opinions of those people."  Oppn. at 12:7-8.  Having generalized their

3    claimed idea, they then argue "[t]here are countless ways to express" it.  *Id.* at 8-9.

4    But that is bootstrapping.

5         Rather than referring generally to "other people" or their "negative opinions,"

6    the allegedly copied lyric conveys that players, in particular, will play and haters, in

7    particular, will hate.  Plaintiffs' Opposition suggests "not just different expressions

8    but also different underlying ideas" than the idea in the actual lyrics at issue.  *Stern*

9    *v. Does*, 978 F. Supp. 2d 1031, 1043 (C.D. Cal. 2011), *aff'd sub nom. Stern v.*

10   *Weinstein*, 512 F. App'x 701 (9th Cir. 2013).  That plaintiffs might instead have

11   chosen to convey a more general "idea in such a way as to warrant copyright

12   protection, . . . has no bearing on whether [their] *actual* expression is copyrightable."

13   *Stern*, 978 F. Supp. 2d at 1043; *see, also Sophia & Chloe, Inc. v. Brighton*

14   *Collectibles, LLC*, No. 15-56867, 2018 WL 316022, at *1-2 (9th Cir. Jan. 8, 2018)

15   ("The dissent is correct that there are numerous ways to design an earring, but then

16   misses the relevant question: whether there are many or few ways to design a

17   teardrop-shaped earring incorporating the henna symbol for the word 'kiss' and the

18   shape of the Buddha").  Irrespective of what plaintiffs argue they intended to

19   convey, the allegedly copied lyric is inseparable from the idea that players will play

20   and haters will hate.  As a result, if plaintiffs' lyric were deemed protected than

21   everyone who seeks to convey <u>that idea</u> by stating players will play and haters will

22   hate would face an infringement claim.

23        Neither are plaintiffs helped by their argument that the idea supposedly

24   underlying the entire chorus of their composition is "a female describing" "a positive

25   statement not to worry about what [others] think."  Oppn. at 14:1-4.  Aside from the

26   fact that the recorded version of their composition includes men singing the

27   allegedly copied lyrics (Anderson Decl., Exh. 1), and the fact that female singers is a

28   performance element not protected by their alleged musical composition copyright

1   (Defs' Memo. at 3 n. 1; *Newton v. Diamond*, 388 F.3d 1189, 1193-94 (9th Cir.

2   2004)), claiming a similarity in a general idea behind the entire chorus does

3   plaintiffs no good.  First, it is "[t]he most fundamental axiom of copyright law" that

4   ideas are not protected expression.  *Feist*, 499 U.S. at 344-45; 17 U.S.C. § 102(b);

5   Defs' Memo. at 16:26-17:11.  Second, the lyrics in the two works' choruses (Oppn.

6   at 13:3-18), compel the conclusion that the idea plaintiffs argue they share are

7   expressed in very different ways.  *Funky Films, Inc. v. Time Warner Entm't Co.,*

8   *L.P.*, 462 F.3d 1072, 1078 (9th Cir. 2006) (claim fails where plot and other elements

9   expressed differently).

10              ***ii.    Plaintiffs Are Not Helped by the Cases They Cite***

11          Neither are plaintiffs helped by the cases they cite.  Oppn. at 12:2-26.

12          *Allen*, 2009 WL 2178676, did not even discuss the merger doctrine, let alone

13   parse the idea of the lyric at issue.  *Landsberg v. Scrabble Crossword Game Players,*

14   *Inc.*, 736 F.2d 485 (9th Cir. 1984), also did not discuss the merger doctrine.  Instead,

15   *Landsberg*, which involved a handbook for Scrabble players, discussed the different

16   substantial similarity standards for fictional and factual works.  *Id.* at 488.  In *Bach*

17   *v. Forever Living Prod. U.S., Inc.*, 473 F. Supp. 2d 1127 (W.D. Wash. 2007), the

18   plaintiffs claimed the defendants "use[d] the title, character, name, text, and

19   photographs associated with the book *Jonathan Livingston Seagull*."  *Id.* at 1128-29.

20   Plainly, that expression is not dictated by an underlying idea.  Here, in contrast,

21   plaintiffs' short, allegedly copied phrase "playas, they gonna play and haters, they

22   gonna hate" is congruent with the unprotected idea that players will play and haters

23   will hate.

24          Finally, plaintiffs cite *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp.

25   2d 513 (S.D.N.Y. 2008), for the proposition that if protection in plaintiffs' allegedly

26   copied lyric is "thin," "the merger doctrine does not apply" because *Shake It Off*'s

27   lyric is supposedly a "close paraphrase."  That is nonsense.  In this Circuit, "thin"

28   copyrights protect only against "virtually identical" copying, not "close

paraphrasing." *See above* at 9.  Further, *Warner Bros.* also was not a merger case and, instead, arose from the defendant's planned publication of a fan book that copied extensively from the *Harry Potter* books and other materials.  575 F. Supp. 2d at 534.  Ultimately, the merger doctrine is not avoided by similarities between the parties' works where, as here, the claimed similarity flows from the same idea, namely the truism that players will play and haters will hate.

Plaintiffs claim to have enjoyed a de facto monopoly on stating that players will play and haters will hate, and now seek judicial approval of that monopoly.  Oppn. at 1-2 n. 2.  "What is basically at stake is the extent of the copyright owner's monopoly—from how large an area of activity did Congress intend to allow the copyright owner to exclude others?"  *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971) (declining to extend copyright to jeweled pin in the shape of a bee, since doing so would grant exclusive rights in the idea of a jeweled bee pin).  The monopoly that plaintiffs claim by virtue of the alleged copyright in their musical composition does not extend to the idea that players will play and haters will hate.[5]

Accordingly, plaintiffs' claim also is properly dismissed for the additional reason that the allegedly copied lyric is not protected expression because it merges with the idea that players will play and haters will hate.

///

///

///

---

[5]   Plaintiffs half-heartedly argue that merger is an affirmative defense not "usually" raised by a Rule 12(b)(6) motion to dismiss.  Oppn. at 14-:22-15:2; *quoting Durham v. Prudential Ins. Co. of Am.*, 236 F. Supp. 3d 1140, 1150 (C.D. Cal. 2017).  But both *Durham* and plaintiffs recognize that dismissal is proper if – as here – the defense is established "through either facts that the plaintiff had pleaded or facts that are subject to judicial notice."  *Id.*; Oppn. at 15:3-5, *citing Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (affirming dismissal of claims time-barred on their face).

**(4)** **Plaintiffs' Claim Also Fails Because the Allegedly Copied Lyric Is an Unprotected Short Phrase**

      *i.* *The Cases Plaintiffs Cite Do Not Avoid that Copyright Does Not Protect the Allegedly Copied Short Phrase*

As another independent reason that plaintiffs' allegations negate a plausible claim of copying protected expression, plaintiffs cannot avoid the established copyright principle that short phrases such as "playas, they gonna play and haters, they gonna hate," are not protected.  Defs' Memo. at 10:18-12:11.

Indeed, most of the cases cited by plaintiffs acknowledge the rule and merely note the possibility of an exception for highly creative language.  Oppn. at 5:21-6:5, *citing Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 51-52 (1st Cir. 2012) (general rule that short phrases not copyrightable may have exceptions, but point moot since defendant challenging claim that seven translations of religious texts were copied, failed to identify any short phrases); *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1520 n. 20, 1520-21 (1st Cir. 1996) (recognizing possibility of exception to general rule, but general rule applied and allegedly copied phrases held uncopyrightable), *citing, as an example of exception, Applied Innovations, Inc. v. Regents of the Univ. of Minnesota*, 876 F.2d 626, 635 (8th Cir. 1989) (copier of 38 questions in psychological test could not avoid liability by arguing each question was a short phrase); *Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*, 634 F. Supp. 2d 1226, 1237-38 (D. Colo. 2009) (although "[s]hort phrases are typically unprotectable," there may be exceptions, but plaintiff relied on copying of copyrightable compilations of facts, not just the short phrases they included)[6]; *Fischer v. Forrest*, No. 14 CIV. 1304 PAE, 2015 WL 195822, at *2, 5 (S.D.N.Y. Jan. 13, 2015) (recognizing rule that short

---

[6]     Plaintiffs also quote *Health Grades* as stating that the copyright axiom that short phrases are not copyrightable "does not make sense."  Oppn. at 5:26-6:2.  But that assertion is suspect: plaintiffs omit that *Health Grades* quotes the dissent from

1  phrases not copyrightable, but rule did not apply to alleged copying of sixty-six

2  word passage); *Narell*, 872 F.2d at 911 (holding that as a matter of law no copyright

3  protection in phrases "river wound its way between muddy banks crawling with

4  alligators," "hordes of gold seekers," "shanties and corrugated [iron/steel] shacks . . .

5  were crowded together" and "beach was strewn with boxes, bales," and suggesting

6  in dicta that Frank Zappa's "Weasels Ripped My Flesh" would be protected as an

7  exception to general rule that short phrases not protected).

8      Plaintiffs also argue that the requirement for originality is minimal.  Oppn. at

9  6:6-28.  However, copyright law is clear that while "the originality requirement is

10 not particularly stringent," it must be met.  *Feist*, 499 U.S. at 358-59 ("The standard

11 of originality is low, but it does exist"); Defs' Memo. at 14:27-15:17.  The cases

12 cited by plaintiffs confirm that plaintiffs' phrase falls far short of copyrightable

13 expression.  Oppn. at 6:6-28, *citing CMM Cable*, 97 F.3d at 1520-21 (plaintiff's

14 phrases  "if you're still 'on the clock' at quitting time," "clock in and make $50 an

15 hour" and "call in, clock in, and win" not sufficiently original); *Stern*, 978 F. Supp.

16 2d at 1040 (while the beginning of Lewis Carrols' *Jabberwocky* poem – Twas

17 brillig, and the slithy toves – might be protected, plaintiff's Internet post "Has

18 anyone had a problem with White, Zuckerman . . . cpas including their economist

19 employee Venita McMorris over billing or trying to churn the file?" not sufficiently

20 original); *Salinger v. Random House, Inc.*, 811 F.2d 90, 98 (2d Cir.), *opinion

21 supplemented on denial of reh'g*, 818 F.2d 252 (2d Cir. 1987) (biographer's

22 unauthorized quotation and paraphrasing of forty-four of J.D. Salinger's personal

23 letters not a fair use); *Feist*, 499 U.S. 340, 362-63 (selection and alphabetical

24 arrangement of names, addresses and telephone numbers not original); *Mattel, Inc.*

25

26 the en banc decision in *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 278, 285

27 (3d Cir. 2004) (defendant's alleged copying of plaintiff's part numbers composed of
   identifying sequences, "are also excluded from copyright protection because they are

28 analogous to short phrases or the titles of works").

*v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135-36 (2d Cir. 2004) (specific arrangement and depiction of doll's upturned nose, bow lips and widely spaced eyes original but only that "particularized expression" is protected); *Rogers v. Koons*, 960 F.2d 301, 304, 307-08 (2d Cir. 1992) (photographer's photograph original where included photographer's selection of light, location, bench and arrangement of eight puppies and their owners); *Cellular Accessories for Less, Inc. v. Trinitas LLC*, 65 F. Supp. 3d 909, 912, 913-14 (C.D. Cal. 2014) (originality in website's 971 product descriptions and Frequently Asked Questions section).  The short phrase players will play and haters will hate, especially given the many prior uses of those terms including in combination, falls far short of the creativity in the altogether unprecedented phrases "Twas brillig, and the slithy toves," and "Weasels Ripped My Flesh."

None of the cases plaintiffs cite remove their allegedly copied short phrase from the scope of the established "axiom[ ] that copyright law denies protection to 'fragmentary words and phrases' . . . ."  *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1384 (Fed. Cir. 2007), *quoting CMM Cable,* 97 F.3d at 1519.

### ii. *Plaintiffs Fail to Distinguish the Cases Defendants Cited*

In a footnote, plaintiffs try but fail to distinguish the cases that defendants cited as rejecting protection for short phrases.  Oppn. at 7 n. 2.

Remarkably, although *Narell*, 872 F.2d 907, found no protection as a matter of law in phrases much longer and more creative than plaintiffs' allegedly copied lyric, plaintiffs' only reference to *Narell* is that it suggested in dicta that "Weasels Ripped My Flesh" would be protectable.  Oppn. at 7 n. 2; *see, also id.* at 6:4-5; *see above* at 15.  Plaintiffs' decision not to discuss *Narell* is properly seen as a concession that it precludes copyright protection in plaintiffs' short phrase combining players play with haters hate.

Plaintiffs suggest that other decisions defendants cited are distinguishable because the phrases found to be unprotected echoed prior uses.  Oppn. at 7 n. 2.  But

plaintiffs admit that their lyric was preceded by multiple uses of players, haters and both terms combined, including in earlier compositions. *See above* at 5-6. Accordingly, plaintiffs fail to meaningfully distinguish *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 143 (2d Cir. 1998) (no protection in phrase "You've got to stand for something, or you'll fall for anything"; *Johnson v. Gordon*, 409 F.3d 12, 21 (1st Cir. 2005) (no protection in lyric "You're the One for Me"); *Batiste v. Najm*, 28 F. Supp. 3d 595, 615 (E.D. La. 2014) (no protection in phrase lyrics "I can't get enough," "Win, win, win, at all cost" and "raise your hands in the air"); *Personal Keepsakes*, 975 F. Supp. 2d at 925 (no protection in phrase "May the strength of the Holy Spirit be with you, guiding you every day of your life").

Plaintiffs also argue that *CMM Cable*, 97 F.3d 1504, and *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705 (7th Cir. 1972), involved advertising slogans that described either a competition or product. Plaintiffs fail to explain how the short phrases "if you're still 'on the clock' at quitting time," "clock in and make $50 an hour" and "call in, clock in, and win" (*CMM Cable*, 97 F.3d at 1520) and "the most personal sort of deodorant" (*Alberto-Culver*, 466 F.2d at 711) could be protected when used as a lyric but not when used as a slogan. Plainly, the law makes no such distinction, applying to both lyrics and slogans the "axiom[ ] that copyright law denies protection to 'fragmentary words and phrases' . . . ." *Hutchins*, 492 F.3d at 1384, *quoting CMM Cable*, 97 F.3d at 1519; Defs' Memo. at 11:1-12:3.

Plaintiffs assert that in *Emanation Inc. v. Zomba Recording Inc.*, 72 F. App'x 187 (5th Cir. 2003) the phrases – "We Gon Pass a Good Time, Yeah, Cher" and "You Gotta Suck Da Head of Dem Der Crawfish" – were not protected because they were facts. Actually, that was the district court's ruling. *Id.* at 190. The Court of Appeals instead considered the changes the plaintiff made to create and record the phrases and ruled they were not sufficiently original to render the short phrases protected. *Id.* at 191, *citing, inter alia, Narell*, 872 F.2d at 911-12. As a result,
///

17

1  *Emanation* is directly on point to plaintiffs' claim of protection in the allegedly

2  copied lyrics combining players play and haters hate.

3       Plaintiffs try to distinguish *Puckett*, 2016 WL 7647555, on the basis that the

4  lyrics appeared in different places and contexts in the parties' songs.  Oppn. at 7 n. 2.

5  But the district court merely noted that, as result, there was no claimed similarity in

6  the entire compositions.  Rather, any protection was limited to "the individual

7  [lyrics] themselves" – "I would die for you baby but you don't feel me/I gave you

8  my heart/ But you didn't do the same" – and the district court found them to be

9  "common phrases that do not possess the requisite originality to be copyrightable."

10  *Puckett*, 2016 WL 7647555, at *5.  Once again, the case is on point: plaintiffs

11  expressly allege copying of a specific lyric, as opposed to their composition as a

12  whole, and that lyric consists of admittedly common phrases.

13       Finally, plaintiffs try to distinguish *Prunte v. Universal Music Grp., Inc.*, 699

14  F. Supp. 2d 15 (D.D.C. 2010), *aff'd,* 425 F. App'x 1 (D.C. Cir. 2011), on the basis

15  that the district court relied on a laundry list of grounds.  Oppn. at 7 n. 2.  But

16  plaintiffs concede those grounds included that the lyrics were uncopyrightable

17  "short, common phrases."  *Id.*; *Prunte*, 699 F. Supp. 2d at 25-28.

18       Plaintiffs allege the copying of a short phrase combining players and haters in

19  a single lyric, which is something they admit others did before them.  *See above* at 5

20  n. 1, 6 n. 3.  That short phrase is far below the creativity in, *e.g.*, "Twas brillig, and

21  the slithy toves," and "Weasels Ripped My Flesh," and even below the short phrases

22  – including "river wound its way between muddy banks crawling with alligators"

23  and "shanties and corrugated [iron/steel] shacks . . . were crowded together" – that

24  the Ninth Circuit has held are not protected expression as a matter of law.  *Narell*,

25  872 F.2d at 911.  Accordingly, for this additional and independent reason, plaintiffs

26  fail to allege a plausible claim of copying protected expression.

27  ///

28  ///

18

**(5)    Plaintiffs Do Not Dispute that the Remaining Lyrics Are Different and Share Only the Unprotected Idea of "Actors Engaging in a Type of Activity"**

While plaintiffs allege that their composition and *Shake It Off* also include lyrics referring to "actors engaging in a type of activity," plaintiffs do not dispute that the actors and activities are completely different, namely (1) ballers balling and shot callers calling in plaintiffs' composition and (2) heartbreakers breaking and fakers faking in *Shake It Off*.  The only similarity is the abstract idea of actors doing something, and copyright does not protect ideas.  17 U.S.C. § 102(b).

Accordingly, plaintiffs' allegation that *Shake It Off* copies the idea of different "actors engaging in a type of activity" also does not establish copying of protected expression.

**(6)    None of the Cases Plaintiffs Cite Support Plaintiffs' Argument that Industry Custom and Practice Establishes Their Infringement Claim**

Plaintiffs' claim is not saved by plaintiffs' allegation that there is an industry custom and practice to obtain a license if a new composition includes lyrics similar to an earlier one.  Defs' Memo. at 17:16-18:3.  Plaintiffs admit that "industry custom and practice cannot replace the test for copyright infringement."  Oppn. at 16:3-4.  Accordingly, copyright law, not custom and practice, determines whether the alleged copying of a short phrase combining two public domain concepts establishes a plausible claim surviving Rule 12(b)(6).

Despite plaintiffs' admission that copyright law controls, they proceed to argue that notwithstanding copyright law, industry custom and practice "dictates" that a license was "required" before defendants used the terms play and hate.  Oppn. at 16:5-10.  That also is nonsense.  No license was required if no protectable expression was copied, and whether the allegedly copied material is protected expression is determined by copyright law, not industry custom and practice.

As a result, it is no surprise that none of the cases plaintiffs cite support plaintiffs' argument that the scope of protected expression is determined by industry custom and practice. Oppn. at 15:15-16:2. Four of plaintiffs' cases dealt with the issue of damages, not protected expression. *Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10-CV-00106-LRH, 2015 WL 5176582, at *5 (D. Nev. Sept. 3, 2015) (rebuttal expert's testimony as to customer support practices for software relevant to damages); *Tempest Pub., Inc. v. Hacienda Records & Recording Studio, Inc.*, No. CIV.A. H-12-736, 2015 WL 1246644, at *6–7 (S.D. Tex. Mar. 18, 2015) (industry practice as to whether compulsory licenses obtained before or after album's release relevant to statutory damages); *Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077, 1089 (D. Md. 1995) (evidence that defendants knew Microsoft only sold its software products with an accompanying computer, relevant to statutory damages because it supported that defendants knew the software copies they sold without computers were counterfeit); *Bruce v. Weekly World News, Inc.*, 310 F.3d 25, 29–30 (1st Cir. 2002) (expert testimony as to actual damages).

In the fifth and last case that plaintiffs cite, both parties used software programs that summarized pricing and other information regarding cotton sales. In affirming the district court's denial of the plaintiff's motion for a preliminary injunction, the court of appeal noted that the plaintiff's expert's testimony as to substantial similarity was undercut by his admission he was unaware that the same information was historically provided by written cotton recap sheets pre-dating both parties' computer programs. *Plains Cotton Co-op. Ass'n of Lubbock, Texas v. Goodpasture Computer Serv., Inc.*, 807 F.2d 1256, 1262 (5th Cir. 1987) ("appellees presented evidence that many of the similarities between the GEMS and Telcot programs are dictated by the externalities of the cotton market").

Here, however, plaintiffs' industry custom and practice allegation is not that players and haters and combinations of those terms never appeared in prior art – indeed, plaintiffs specifically admit that they did. *See above* at 5-6. Instead,

1   plaintiffs allege that by industry custom and practice a license is "required" if there
2   is any similarity, even a non-actionable similarity, in lyrics.   Oppn. at 16:3-10;
3   Complaint at 7-8, ¶¶ 31-34.  Only the Copyright Act and the cases applying it, not
4   industry custom and practice, determine whether plaintiffs have plausibly alleged the
5   copying of protected expression.

6       And applying established copyright law, for each of the alternative and
7   independent grounds set out above, plaintiffs have not plausibly alleged the copying
8   of protected expression.   Irrespective of which ground the Court relies upon, the
9   Motion should be granted and plaintiffs' claim dismissed.

10      **(c)** **Leave to Amend Is Properly Declined Because Plaintiffs Cling to**
11          **Allegations that Negate a Plausible Infringement Claim**

12      Plaintiffs cite multiple cases indicating that leave to amend is proper if there is
13  a reasonable possibility that the defects in a claim can be cured.  Oppn. at 18:19-
14  19:28.  <u>But noticeably absent from plaintiffs' opposition is any hint as to what</u>
15  <u>plaintiffs could, consistent with Federal Rule of Civil Procedure 11, amend to cure</u>
16  <u>those defects.</u>  Neither is it apparent that amendment might help.  Quite the contrary,
17  plaintiffs repeatedly confirm and admit the specific allegations that doom their
18  claim, including that they rely on the alleged copying of a short lyric consisting of
19  the combination of the public domain concepts that players will play and haters will
20  hate, and the idea of actors engaging in an activity.  *See above* at 5-6.  This is not a
21  case where "factual allegations [are] deficient" and could be cured, but instead
22  plaintiffs' claim relies on specific lyrics that will not change and, as a result,
23  amendment would be futile and leave to amend is properly denied.  *Puckett*, 2016
24  WL 7647555, at *7 (complaint alleging copying of lyrics dismissed without leave to
25  amend).

26  ///
27  ///
28  ///

21

**3.     PLAINTIFFS' ALLEGATIONS OF AN INDUSTRY PRACTICE TO OBTAIN LICENSES ARE PROPERLY STRICKEN**

Defendants also moved to strike plaintiffs' allegations that it is industry custom and practice to obtain a license if a new composition's lyrics are similar to those in an earlier one, whether or not a license is actually required.  Defs' Memo. at 18:17-19:19.  Plaintiffs argue that their allegations of industry practice are relevant to whether the alleged infringement was willful for the purposes of statutory damages.  Oppn. at 17:19-18:3.  That argument does not bear scrutiny.

An infringement is willful if "(1) . . . the defendant was actually aware of the infringing activity, or (2) . . . the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights."  *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011), *quoting Island Software & Computer Serv., Inc. v. Microsoft Corp.,* 413 F.3d 257, 263 (2d Cir. 2005).  Willfulness turns on that knowledge, not whether a license might have been obtained.  Thus, a defendant who does not obtain a license for a non-infringing use is not an infringer, willful or otherwise.  Even a defendant who seeks a license, fails to obtain it but proceeds anyway, is still not an infringer, willful or otherwise, if the use was not an infringement under the Copyright Act.  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 585 n. 18 (1994).

None of the cases plaintiffs cite hold that willfulness turns on complying with a supposed industry practice to obtain a license if a work has any similarities – actionable or not – to prior works.  Instead, plaintiffs cite two cases allowing expert testimony for the defendant to support that a claimed infringement was not willful.  *Oracle*, 2015 WL 5176582 at *1, 5 (on claim that defendant exceeded its software license from Oracle by using licensed copies to provide support services to other customers, district court allowed defendant's rebuttal expert as to how support services were provided in the industry); *Tempest*, 2015 WL 1246644, at *5 (on claim that defendants failed to timely obtain compulsory license under 17 U.S.C. § 115 to

1   record plaintiff's compositions, district court considered defendants' testimony that

2   in the Tejano music industry it is common to obtain compulsory licenses after rather

3   than before an album's release).  And in *Microsoft*, 910 F. Supp. 1077, evidence that

4   the defendants knew Microsoft only sold its software products with accompanying

5   computers established that the defendants knew the software copies they sold

6   without computers were counterfeit.  *Id.* at 1089.

7        In contrast to those cases, plaintiffs allege that industry custom and practice

8   establishes that defendants' failure to obtain a license triggers a finding of willful

9   infringement.  But the failure to obtain a license proves only that a license was not

10  obtained, not that the defendant knew his use would be infringing.  There is no merit

11  to plaintiffs' contention that copyright protects not just what copyright protects, but

12  also what supposed industry custom and practice suggests should be cleared just to

13  be safe.

14       In addition, allowing plaintiffs to retain their irrelevant allegations as to what

15  other recording artists felt appropriate to license (Complaint at 7:12-28), risks

16  unnecessary discovery as to the reasons and circumstances under which those and

17  other non-parties supposedly obtained licenses for works unrelated to either

18  plaintiffs' composition or *Shake It Off*, as well as risking unnecessary and expensive

19  expert discovery.

20       Industry custom and practice does not supplant the Copyright Act, and

21  plaintiffs' custom and practice allegations should be stricken.

22  **4.    CONCLUSION**

23       Try as they might to make a silk purse, plaintiffs are left with a sow's ear,

24  namely their claim that only they can refer to both players playing and haters hating.

25  For multiple, independent reasons, as a matter of law that is not a plausible claim

26  that protected expression was copied.

27       Plaintiffs claim copying of the combination of two public domain concepts,

28  which is far too few elements and not sufficiently original, and plaintiffs also admit

that the parties' lyrics are not virtually identical.  Alternatively, players gonna play and haters gonna hate merges with the idea that players will play and haters will hate.  And as still another reason plaintiffs' claim fails, the allegedly copied lyric is an unprotected short phrase.  And since plaintiffs do not suggest how they could cure these fatal defects, and in fact they cannot cure them, plaintiffs' claim should be dismissed without leave to amend.

Dated: January 29, 2018

_____/s/ Peter J. Anderson_____
Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
Attorney for Defendants
TAYLOR SWIFT,
KARL MARTIN SANDBERG,
KARL JOHAN SCHUSTER, SONY/ATV
MUSIC PUBLISHING LLC, KOBALT
MUSIC PUBLISHING AMERICA INC.,
BIG MACHINE LABEL GROUP, LLC and
UNIVERSAL MUSIC GROUP, INC.