UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6882-MWF (ASx)                    Date:  February 13, 2018
Title:    Sean Hall d.b.a. Gimme Some Hot Sauce Music, et al. v. Taylor Swift, et al.

Present:  The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER RE: DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND MOTION TO STRIKE [20]

　　Before the Court is the Motion to Dismiss for Failure to State a Claim and Motion to Strike (the "Motion") (Docket No. 20), filed by Defendants Taylor Swift, Karl Martin Sandberg, Karl Johan Schuster, Sony/ATV Music Publishing, LLC ("Sony"), Kobalt Music Publishing America Inc. ("Kobalt"), Big Machine Label Group, LLC ("Big Machine"), and Universal Music Group, Inc. ("Universal") on January 3, 2018.  On January 19, 2018, Plaintiffs Sean Hall d.b.a. Gimme Some Hot Sauce Music ("Hall") and Nathan Butler d.b.a. Faith Force Music ("Butler") filed an Opposition.  (Docket No. 25).  On January 29, 2018, Defendants filed a Reply. (Docket No. 28).

　　The Court has read and considered the papers filed in connection with the Motion and held a hearing on **February 12, 2018**.

　　For the reasons set forth below, the Motion is **GRANTED** *with leave to amend*. The songs in question – *Playas Gon' Play* and *Shake it Off* – are both before the Court, and Plaintiffs have alleged with specificity which portions of *Shake it Off* were copied from *Playas Gon' Play*.  Because Plaintiffs allege that Defendants copied only two brief phrases from the lyrics of *Playas Gon' Play* and do not allege that any musical elements were copied (having listened to both tracks, it does not seem that any distinctive musical elements were), the Court is able to evaluate this action without the

---

**CIVIL MINUTES—GENERAL**                                                   1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6882-MWF (ASx)        Date:  February 13, 2018
Title:    Sean Hall d.b.a. Gimme Some Hot Sauce Music, et al. v. Taylor Swift, et al.

aid of experts opining on various musical elements or a jury evaluating intrinsic similarities between the works.

The allegedly infringed lyrics are short phrases that lack the modicum of originality and creativity required for copyright protection.  Accordingly, if there was copying, it was only of unprotected elements of *Playas Gon' Play*.  While the Court is extremely skeptical that Plaintiffs will – in a manner consistent with Rule 11 – be able to rehabilitate their copyright infringement claim in an amended complaint, out of an abundance of forbearance it will give Plaintiffs a single opportunity to try.  Any future dismissal will be without leave to amend.

I.     BACKGROUND

   A.    **Plaintiffs' Complaint**

Hall and Butler are co-authors and copyright owners of the musical composition titled *Playas Gon' Play*.  (Complaint ¶¶ 1-2, 15).  3LW, an all-girl group that gained popularity in the early 2000s, performed *Playas Gon' Play* and released it to the public in May 2001.  (*Id.* ¶¶ 15, 17).  *Playas Gon' Play* peaked at number 81 on Billboard's Hot 100 chart and, on March 7, 2001, appeared as the number-seven video on TRL, a popular MTV music-video-request show at the time.  (*Id.* ¶¶ 16, 18).  3LW also performed *Playas Gon' Play* several times on national television, including on Regis & Kelly, MTV, and Fox Family.  (*Id.* ¶ 19).  The album that *Playas Gon' Play* appeared on – *3LW*, 3LW's self-titled debut album – was certified platinum by the Recording Industry Association of America, meaning that more than 1,000,000 units were sold.  (*Id.* ¶ 17).

The chorus of *Playas Gon' Play* consists of the following lyrics: "***Playas, they gonna play*** / ***And haters, they gonna hate*** / Ballers, they gonna ball / Shot callers, they gonna call / That ain't got nothin' to do / With me and you / That's the way it is / That's the way it is."  (*Id.* ¶¶ 20, 25; Declaration of Peter Anderson ("Anderson Decl.") (Docket No. 20-3), Ex. 2) (emphasis added).  Plaintiffs acknowledge that the concepts of players / playas, haters, and player / playa haters were already firmly rooted in pop

---

**CIVIL MINUTES—GENERAL**                                                   2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6882-MWF (ASx)                    Date:  February 13, 2018
Title:     Sean Hall d.b.a. Gimme Some Hot Sauce Music, et al. v. Taylor Swift, et al.

culture at the time *Playas Gon' Play* was released, but allege that "[t]he combination of playas/players playing along with hatas/haters hating … was completely original and unique" when the song was released in 2001.  (Complaint ¶ 20; *see id.* ¶ 20-25).

In 2014, Swift, Sandberg, and Schuster co-authored the musical combination titled *Shake it Off*.  (*Id.* ¶ 26).  Swift performed and recorded the song, and it was released to the public in August 2014.  (*Id.*).  *Shake it Off* debuted at number one on Billboard's Hot 100 chart and remained on the chart for 50 consecutive weeks.  (*Id.* ¶ 35).  More than 9,000,000 copies of *Shake it Off* have been sold, and more than 6,000,000 copies of Swift's album *1989* – the album featuring *Shake it Off* – have been sold.   (*Id.* ¶¶ 35-36).

The chorus of *Shake it Off* contains the following lyrics: " '***Cause the players gonna play, play, play, play, play*** / ***And the haters gonna hate, hate, hate, hate, hate*** / Baby I'm just gonna shake, shake, shake, shake, shake / Shake it off / Shake it off / Heartbreakers gonna break, break, break, break, break / And the fakers gonna fake, fake, fake, fake, fake / Baby I'm just gonna shake, shake, shake, shake, shake / Shake it off / Shake it off."  (*Id.* ¶¶ 27-28; Anderson Decl. Ex. 4) (emphasis added).

Plaintiff alleges that Sony and Kobalt co-own publishing rights in *Shake it Off*, Big Machine is Swift's record label and released *Shake it Off*, and Universal distributes *Shake it Off*.  (*Id.* ¶¶ 6-9).

Plaintiff asserts a single claim of copyright infringement against all Defendants, premised upon the lyrical similarities between *Playas Gon' Play* and *Shake it Off*.  (*Id.* ¶¶ 41-50).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6882-MWF (ASx)                      Date:  February 13, 2018
Title:    Sean Hall d.b.a. Gimme Some Hot Sauce Music, et al. v. Taylor Swift, et al.

### B. Request for Judicial Notice

In connection with their Motion, Defendants request that the Court take judicial notice of the following:

- The song *Dreams* by Fleetwood Mac (1977) contains the lyrics "Players only love you when they're playing."  (Anderson Decl. ¶ 9, Exs. 5-7).

- "Player" was the name of a 1970s soft rock band.  (*Id.* ¶ 11, Ex. 9).

- "Playa" was the name of a 1990s R&B musical group.  (*Id.* ¶ 11, Ex. 9).

- *The Player* is the title of a 1992 motion picture based on a 1988 novel titled *The Player*.  (*Id.* ¶ 12, Exs. 10-11).

- The 1991 song *Psychobetabuckdown* by Cypress Hill includes the lyrics "You're looking at the tribe, and you're a hater."  (*Id.* ¶ 13, Exs. 12-14).

- *Player's Ball* is the title of a 1993 song by Outkast.  (*Id.* ¶ 14, Exs. 15-16).

- *Playa Playa* is the title of a 1994 song by Big Mike.  (*Id.* ¶ 15, Ex. 17).

- *Playa Hata* is the title of a 1995 song by Luniz and includes these lyrics: "So playa hataz hate me," "Why you wanna playa hate on me?", and "Why you playa hate?"  (*Id.* ¶ 16, Exs. 18-20).

- *Man U Luv to Hate*, a 1996 song by Sir Mix-A-Lot, includes the lyrics: "If you want to playa hate," "Playa's in the house can you feel me, Got these playa haters lookin' at me silly," "Cause with these haters you gotta keep your strap," and "Boy get a job and quit hatin'."  (*Id.* ¶ 17, Exs. 21-23).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6882-MWF (ASx)　　　　　Date:  February 13, 2018
Title:　　　Sean Hall d.b.a. Gimme Some Hot Sauce Music, et al. v. Taylor Swift, et al.

- *Playa Hater*, a 1997 song by Notorious B.I.G., contains the lyrics: "Playa, turn your head round," and "We have, the playas, and we have, the playa haters."  (*Id.* ¶ 18, Exs. 24-26).

- *Hater Players*, a 1998 song by Black Star, includes the lyrics: "I'm sick of the hater-players," and "Aiyyo, later for the hater-players / Yo-yo, yo-yo, later for these hater-players."  (*Id.* ¶ 19, Exs. 27-29).

- *Don't Hate the Player*, a 1999 song by Ice-T, contains the lyrics: "Bunch of players listenin' to the seventh deadly sin," "Ice-T baby, this goes out to all you haters out there," and "Don't hate the player."  (*Id.* ¶ 12, Exs. 30-32).

- *Don't Hate the Player*, a 2000 song by Too Short, contains the lyrics: "Don't hate the player," "If you never was a player, I can't hate you," "You never was a player, we can't hate you," and "You think someone player hated."  (*Id.* ¶ 21, Exs. 33-35).

(Defendants' Request for Judicial Notice in Support of Motion to Dismiss for Failure to State a Claim ("RJN") (Docket No. 24).

　　　Plaintiffs do not oppose Defendants' RJN.  (*See* Plaintiffs' Notice of Non-Opposition to Defendants' Request for Judicial Notice (Docket No. 26)).  And the Court finds that aforementioned band names, song titles, and song lyrics are appropriate subject matter of judicial notice.  All this information "can be accurately and readily determined by sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2), (c)(2).

　　　Accordingly, Defendants' RJN is **GRANTED**.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6882-MWF (ASx)                    Date:  February 13, 2018
Title:    Sean Hall d.b.a. Gimme Some Hot Sauce Music, et al. v. Taylor Swift, et al.

## II.   DISCUSSION

### A.   Legal Framework

#### 1.   Pleading Standard

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id*. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Properties*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief.  *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, No. 13-56644, 2016 WL 5389307, at *2 (9th Cir. Sept. 27, 2016) (as amended) (quoting *Iqbal*, 556 U.S. at 679).  Where the facts as pleaded in the complaint indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation.

---

**CIVIL MINUTES—GENERAL**                                                        6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 17-6882-MWF (ASx) | Date: February 13, 2018 |
| Title: Sean Hall d.b.a. Gimme Some Hot Sauce Music, et al. v. Taylor Swift, et al. | |

Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Properties*, 751 F.3d at 996–97; *see also Somers*, 729 F.3d at 960.

### 2. Copyright Infringement Generally

"To prevail on [a] copyright infringement claim, [a plaintiff] must demonstrate (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are ***original***." *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010) (citation and internal quotation marks omitted) (emphasis added). "Because the requirement is one of substantial similarity to ***protected*** elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004) (emphasis in original).

A plaintiff may establish copying through direct or circumstantial evidence. *See Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987) ("Because direct evidence of copying is rarely available, a plaintiff may establish copying by circumstantial evidence . . . ."). Circumstantial evidence of copying may include "(1) defendant's access to the copyrighted work prior to creation of defendant's work and (2) substantial similarity of both general ideas and expression between the copyrighted work and the defendant's work." *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987). 'A plaintiff must show 'substantial similarities of *both* ideas and expression.'" *Buggs v. Dreamworks, Inc.*, No. CV 09-07070 SJO (AGRx), 2010 WL 5790251, at *4 (C.D. Cal. Dec. 28, 2010) (quoting *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984)) (emphasis in original).

Defendants do not dispute Plaintiffs' ownership of a valid copyright covering *Playas Gon' Play* for purposes of this Motion. Nor do Defendants dispute that they had access to *Playas Gon' Play* prior to writing, recording, and releasing *Shake it Off*. The Court thus focuses exclusively on whether any elements of *Shake it Off* are substantially similar to protectable elements of *Playas Gon' Play*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 17-6882-MWF (ASx)          Date: February 13, 2018
Title:      Sean Hall d.b.a. Gimme Some Hot Sauce Music, et al. v. Taylor Swift, et al.

### 3. Extrinsic vs. Intrinsic Components of Substantial Similarity

"The substantial-similarity test contains an extrinsic and intrinsic component." *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006). A finding of substantial similarity under the extrinsic component is a necessary prerequisite to considering the intrinsic component, which is expressly reserved for the jury. *See Shaw v. Lindheim*, 919 F.2d 1353, 1360–61 (9th Cir. 1990). A failure to satisfy the extrinsic component on a motion to dismiss thus requires judgment for the defendant as a matter of law. *See Funky Films*, 462 F.3d at 1077.

"In analyzing musical compositions under the extrinsic test, [the Ninth Circuit] has never announced a uniform set of factors to be used… So long as the plaintiff can demonstrate, through expert testimony that addresses some or all of these elements [*e.g.*, rhythm, pitch, cadence, melody, tempo, harmony, lyrics] and supports its employment of them, that the similarity was 'substantial' [as] to 'protected elements' of the copyrighted work, the extrinsic test is satisfied." *Swirsky*, 376 F.3d at 849.

In many, if not most, copyright infringement lawsuits involving music, courts are called upon to evaluate expert testimony concerning extrinsic similarities in the way the relevant songs *sound*. *See, e.g., Swirsky*, 376 F.3d at 845 ("The expert testimony on which Swirsky relied was that of Dr. Robert Walser, chair of the Musicology Department at the University of California at Los Angeles. On the basis of his aural assessment of [the two relevant songs], Dr. Walser opined that the two songs had substantially similar choruses."); *Skidmore v. Led Zeppelin*, No. CV 15-3462 RGK (AGRx), 2016 WL 1442461, at *16 (C.D. Cal. April 8, 2016) (discussing, among other similarities, "repeated A-minor descending chromatic bass lines lasting 13 seconds and separated by a bridge or either seven or eight measures").

Here, Plaintiffs do not contend that *Playas Gon' Play* and *Shake it Off* share any significant rhythmic, melodic, harmonic, or other musical similarities. Instead, Plaintiffs focus exclusively on similarities between portions of the songs' lyrics. Because similarities between snippets of lyrics alone is an issue that is well within the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 17-6882-MWF (ASx)     **Date:** February 13, 2018
**Title:** Sean Hall d.b.a. Gimme Some Hot Sauce Music, et al. v. Taylor Swift, et al.

Court's purview (or the purview of any layman), expert opinions would not be helpful, nor is the Ninth Circuit's extrinsic/intrinsic test particularly apt.

### 4. Can the Issue be Decided Now?

While the question of whether the allegedly infringing work is sufficiently similar to the allegedly infringed work to give rise to liability for infringement is often resolved on summary judgment or by a jury, there is no logical reason to delay the inevitable when the Court already has the allegedly infringed and infringing works before it on a motion to dismiss. Courts have decided issues of similarity based upon the pleadings and the works themselves before, and this Court sees no reason not to do it in this case. *See Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57, 65 (2d Cir. 2010) ("We … acknowledge that there can be certain instances of alleged copyright infringement where the question of substantial similarity cannot be addressed without the aid of discovery and expert testimony… But where, as here, the district court has before it all that is necessary to make a comparison of the works in question, we see no error in the district court's decision to resolve the question of substantial similarity as a matter of law on a Rule 12(b)(6) motion to dismiss."); *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1111 (N.D. Cal. 2010) ("'When the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss.'") (quoting *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945)); *Shame on You Productions, Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123 (C.D. Cal. 2015) (evaluating extrinsic factors and granting motions to dismiss and for judgment on the pleadings based upon lack of substantial similarity between plaintiff's screenplay and defendants' movie); *Thomas v. Walt Disney Co.*, No. C-07-4392 CW, 2008 WL 425647 (N.D. Cal. Feb. 14, 2008) (evaluating extrinsic factors and granting motion to dismiss based upon lack of similarity between the plaintiff's story and the film *Finding Nemo*).

Accordingly, the Court proceeds to consideration of similarity between *Playas Gon' Play* and *Shake it Off*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6882-MWF (ASx)                    Date:  February 13, 2018
Title:     Sean Hall d.b.a. Gimme Some Hot Sauce Music, et al. v. Taylor Swift, et al.

### B. Plaintiffs' Copyright Infringement Claim

As an initial matter, Songwriter 1 may assert a copyright infringement claim against Songwriter 2 based upon Songwriter 2's copying of Songwriter 1's music, lyrics, or some combination thereof.  As explained in *Nimmer on Copyright*:

> [T]he Copyright Act expressly provides for the protection of 'musical works, including any accompanying words.' Suppose that plaintiff's work includes both music and 'accompanying' words, but that defendant copies only plaintiff's words, unaccompanied by music, or only the music, unaccompanied by the words.  It was clear, under the 1909 Act, and remains clear under the current Act, that if words and music have been integrated into a single work, the copyright in a 'musical work' protects against unauthorized use of the music alone or the words alone, or of a combination of music and words.

1 *Nimmer on Copyright* § 2.05[C] (2017).  Thus Plaintiffs could feasibly have a viable copyright infringement claim against Defendants based upon Defendants' copying of Plaintiffs' lyrics alone, regardless of whether any other musical elements of *Playas Gon' Play* were copied.  Plaintiffs do not allege that Defendants copied anything other than lyrics.

The only obvious similarities between the two works is that *Playas Gon' Play* contains the lyrics "Playas, they gonna play / And haters, they gonna hate," and *Shake it Off* contains the lyrics "'Cause the players gonna play, play, play, play, play / And the haters gonna hate, hate, hate, hate, hate."  The lynchpin of this entire case is thus whether or not the lyrics "Playas, they gonna play / And haters, they gonna hate" are eligible for protection under the Copyright Act.

The Copyright Act protects "***original*** works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be

---

**CIVIL MINUTES—GENERAL**                                          10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6882-MWF (ASx)			Date:  February 13, 2018
Title:	Sean Hall d.b.a. Gimme Some Hot Sauce Music, et al. v. Taylor Swift, et al.

perceived, reproduced or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a) (emphasis added).  Any copyrighted expression must be "original." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) (citing *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)). "Although the amount of creative input by the author required to meet the originality requirement is low, it is not negligible." *Id.* (citing *Feist*, 499 U.S. at 362).  "There must be something more than a 'merely trivial' variation, something recognizably the artist's own." *Id.* (quoting *Three Boys Music Corp.*, 212 F.3d 477, 489 (9th Cir. 2000)).

As with any other artistic medium, a song, or a portion of a song, must be sufficiently original and creative to warrant copyright protection:

> [C]opyrightable works require two ingredients.  The first is ***originality,*** which signifies that the work originates in the author rather than having been copied from past sources.  The second is ***creativity***, signifying that the work has a spark that goes beyond the banal or trivial.  Those two elements, of course, apply to the domain of music no less than to any other subject matter of copyright protection.  Although the two are distinct, unfortunately, many cases refer interchangeably to each of them as "originality."

1 *Nimmer on Copyright* § 2.05[B] (2017) (emphasis in original).

Defendants first argue that "Playas, they gonna play/And haters, they gonna hate" is not entitled to copyright protection because it is merely a short phrase and short phrases are not afforded protection under the Copyright Act.  (*See* Mot. at 10-12). Defendants are correct that short phrases are generally not accorded protection. "Ordinary phrases are not entitled to copyright protection… Phrases and expressions conveying an idea typically expressed in a limited number of stereotyped fashions are not subject to copyright protection." *Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989) (holding that the following phrases, among others, that defendant copied were not subject to protection: "river wound its way between muddy banks crawling with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 17-6882-MWF (ASx)         **Date:** February 13, 2018
**Title:**   Sean Hall d.b.a. Gimme Some Hot Sauce Music, et al. v. Taylor Swift, et al.

alligators," "hordes of gold seekers," "shanties and corrugated [iron/steel] shacks … were crowded together," and "beach was strewn with boxes, bales"); *see also Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 143-44 (2d Cir. 1998) (song lyrics "You've got to stand for something, or you'll fall for anything" not protectable); *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir. 1972) (advertising phrase "most personal sort of deodorant" not protectable); *see generally* 1 *Nimmer on Copyright* § 2.01[B][3] ("The refusal to protect short phrases applies *a fortiori* to one or two words. Even marginally longer phrases ('if no pulse, start CPR') are appropriately denied copyright protection.").

As Plaintiffs point out, courts have recognized that there may be exceptions to the general rule that short phrases are not protectable where a short phrase is sufficiently creative. *See, e.g., Society of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 52 (1st Cir. 2012) ("[W]hile both this court and the Copyright Office have generally recognized that short phrases may not be subject to copyrightability…, applicability of this law very much turns on the specific short phrases at issue, as not all short phrases will automatically be deemed uncopyrightable…"); *Syrus v. Bennett*, 455 Fed. Appx. 806, 809 (10th Cir. 2011) ("'[A] short phrase may command copyright protection if it exhibits sufficient creativity … The smaller the effort (*e.g.*, two words) the greater must be the degree of creativity in order to claim copyright protection.'") (quoting 1 *Nimmer on Copyright* § 2.01[B][3]); *Stern v. Does*, 978 F. Supp. 2d 1031, 1041-42 (C.D. Cal. 2011) ("[T]he copyrightability of a very short textual work – be it word, phrase, sentence, or stanza – depends on the presence of creativity. The opening sentence of a poem may contain sufficient creativity to warrant copyright protection whereas a more prosaic sentence of similar length may not."); *Fischer v. Forrest*, Nos. 14 Civ. 1304(PAE), 14 Civ. 1307 (PAE), 2015 WL 195822, at *5 (S.D.N.Y. Jan. 13, 2015) ("[B]revity does not preclude copyright protection.").

Plaintiffs argue that their short phrase – "Playas, they gonna play/And haters, they gonna hate" – is sufficiently creative to warrant protection. The Court disagrees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6882-MWF (ASx)                    Date:  February 13, 2018
Title:    Sean Hall d.b.a. Gimme Some Hot Sauce Music, et al. v. Taylor Swift, et al.

    As reflected in Defendants' RJN, and as Plaintiffs acknowledge, by 2001, American popular culture was heavily steeped in the concepts of players, haters, and player haters.  Although Plaintiffs recognize as much, they allege that they "originated the linguistic combination of playas/players playing along with hatas/haters hating…" (Complaint ¶ 24).  Plaintiffs explain that the plethora of prior works that incorporated "the terms 'playa' and hater together all revolve about the concept of 'playa haters'" – a "playa" being "one who is successful at courting women," and a "playa hater" being "one who is notably jealous of the 'playas'" success."  (Opp. at 8).  Plaintiffs explain that *Playas Gon' Play* "used the terms in the context of a third party, the narrator of a song who is neither a 'playa' nor a hater, stating that other people will do what they will and positively affirming that they won't let the judgment of others affect them." (*Id.*).

    The concept of actors acting in accordance with their essential nature is not at all creative; it is banal.  In the early 2000s, popular culture was adequately suffused with the concepts of players and haters to render the phrases "playas … gonna play" or "haters … gonna hate," standing on their own, no more creative than "runners gonna run," "drummers gonna drum," or "swimmers gonna swim."  Plaintiffs therefore hinge their creativity argument, and their entire case, on the notion that the ***combination*** of "playas, they gonna play" and "haters, they gonna hate" is sufficiently creative to warrant copyright protection.  (*See* Complaint ¶¶ 24-25; Opp. at 9-10).

    "It is true, of course, that a combination of unprotectable elements may qualify for copyright protection…  But it is not true that ***any*** combination of unprotectable elements is eligible for copyright protection…  [A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."  *Satava*, 323 F.3d at 811 (internal citations omitted; emphasis in original).

    Looking at this case from a combination-of-unprotected-elements perspective, Plaintiffs' combination of "playas, they gonna play" and "haters, they gonna hate" – two elements that would not have been subject to copyright protection on their own –

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No. CV 17-6882-MWF (ASx)**          **Date: February 13, 2018**
**Title:**     Sean Hall d.b.a. Gimme Some Hot Sauce Music, et al. v. Taylor Swift, et al.

is not entitled to protection. *See id.* at 812 ("The combination of unprotectable elements in Satava's sculpture falls short of this standard. The selection of clear glass, oblong shroud, bright colors, proportion, vertical orientation, and stereotyped jellyfish form, considered together, lacks the quantum of originality needed to merit copyright protection."); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1147 (9th Cir. 2003) ("Lamps Plus's mechanical combination of four preexisting ceiling-lamp elements with a preexisting table-lamp base did not result in the expression of an original work as required by § 101 [of the Copyright Act]."). Two unprotectable elements that, given pop culture at the time, were inextricably intertwined with one another, is not enough.

    At the hearing, Plaintiffs' counsel suggested that other combination-of-unprotected-elements cases, like *Satava* and *Lamps Plus*, are distinguishable because they involve physical elements, such as jellyfish, rather than words, such as "players" and "haters," that reflect concepts. Neither *Satava*, *Lamps Plus*, nor any other relevant authority supports Plaintiffs' position that there is some meaningful difference between words and physical objects. And the Court is unpersuaded that Plaintiffs' distinction matters. If the touchstone of copyrightability is originality and creativity, the ***category*** of preexisting elements that an artist incorporates into his work (*e.g.,* words, marine animals, Christmas ornaments) really should not matter; what matters is whether the artist combined preexisting elements in such a way as to convert them into a sufficiently original and creative whole.

    Looking at this this case from a potentially-protectable-short-phrase perspective, the lyrics in question are not sufficiently creative to warrant protection. As noted in *Nimmer*, "It appears … that there is a reciprocal relationship between creativity and independent effort: the smaller the effort (*e.g.*, two words) the greater must be the degree of creativity in order to claim copyright protection." 1 *Nimmer on Copyright* § 2.01[B][3]. Even if, as Plaintiffs contend, Plaintiffs were the first to employ the concepts of players playing and haters hating for the purpose of expressing "the idea of not concerning yourself with what other people do and think" (Opp. at 10), the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 17-6882-MWF (ASx)        **Date:** February 13, 2018
**Title:** Sean Hall d.b.a. Gimme Some Hot Sauce Music, et al. v. Taylor Swift, et al.

allegedly-infringed lyrics consist of just six relevant words – "playas … gonna play" and "haters … gonna hate."

In order for such short phrases to be protected under the Copyright Act, they must be more creative than the lyrics at issue here. As discussed above, players, haters, and player haters had received substantial pop culture attention prior to 2001. It is hardly surprising that Plaintiffs, hoping to convey the notion that one should persist regardless of others' thoughts or actions, focused on both players playing and haters hating when numerous recent popular songs had each addressed the subjects of players, haters, and player haters, albeit to convey different messages than Plaintiffs were trying to convey. In short, combining two truisms about playas and haters, both well-worn notions as of 2001, is simply not enough.

At the hearing, Plaintiffs' counsel offered alternative (very clunky) formulations of pairing a noun with its intransitive verb, thereby suggesting that "[noun] gonna [verb]" was creative in itself. While clever, this argument does not persuade. The argument ultimately only makes sense if the use of "gonna" as a contraction of "is going to" is sufficiently creative, or (as discussed above) one can claim creativity in asserting that a type of person acts in accordance with his or her inherent nature. To explicitly state the argument is to see how banal the asserted creativity is.

In sum, the lyrics at issue – the only thing that Plaintiffs allege Defendants copied – are too brief, unoriginal, and uncreative to warrant protection under the Copyright Act. In light of the fact that the Court seemingly "has before it all that is necessary to make a comparison of the works in question," *Peter F. Gaito Architecture*, 602 F.3d at 65, the Court is inclined to grant the Motion without leave to amend. However, out of an abundance of caution, the Court will allow Plaintiffs one opportunity to amend, just in case there are more similarities between *Playas Gon' Play* and *Shake it Off* than Plaintiffs have alleged thus far (which Plaintiffs' counsel did not suggest at the hearing). If there are not, the Court discourages actual amendment. The more efficient course would be for Plaintiffs to consent to judgment being entered against them so that they may pursue an appeal if they believe that is appropriate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 17-6882-MWF (ASx)         **Date:** February 13, 2018
**Title:**     Sean Hall d.b.a. Gimme Some Hot Sauce Music, et al. v. Taylor Swift, et al.

## III. CONCLUSION

For the foregoing reasons, the Motion is **GRANTED** *with leave to amend*. Should Plaintiffs elect to file a first amended complaint, they must do so by **February 26, 2018**.

While there may be a first amended complaint, there will be no second. Any future motion to dismiss will be granted without leave to amend.

IT IS SO ORDERED.