```
                    UNITED STATES DISTRICT COURT

           CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

           HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE



SEAN HALL, et al.,                  )
                                    )
           Plaintiffs,              )
                                    )
               vs.                  )
                                    )   2:17-CV-6882-MWF (ASx)
TAYLOR SWIFT, et al.,               )
                                    )
           Defendants.              )
_____)



                    REPORTER'S TRANSCRIPT OF PROCEEDINGS

                         Los Angeles, California

                       Monday, February 12, 2018



               _____




                       AMY DIAZ, RPR, CRR, FCRR
                       Federal Official Reporter
                     350 West 1st Street, #4455
                         Los Angeles, CA 90012

    *Please order court transcripts here:  www.amydiazfedreporter.com*
```

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

```
 1     APPEARANCES OF COUNSEL:
 2
       For the Plaintiffs:
 3
 4              GERARD FOX LAW P.C.
                By:  Lauren M. Greene, Attorney at Law
 5              1880 Century Park East, Suite 1410
                Los Angeles, California 90067
 6
 7
 8     For the Defendants:
 9              LAW OFFICES OF PETER J. ANDERSON
                By:  Peter J. Anderson, Attorney at Law
10              100 Wilshire Boulevard, Suite 2010
                Santa Monica, California 90401
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1         THE CLERK:  Calling item number four, case number
2   CV-17-6882-MWF, *Sean Hall vs. Taylor Swift, et al.*
3         Counsel, please state your appearance for the
4   record.
5         MS. GREENE:  Good morning, Your Honor.  Lauren Greene
6   from Gerard Fox Law on behalf of Sean Hall and Nathan Butler.
7         MR. ANDERSON:  Peter Anderson on behalf of Ms. Swift,
8   Mr. Schuster, Mr. Sandberg, Sony/ATV Publishing, Universal
9   Music Group, Inc., Kobalt Music Publishing and Big Machine
10  Label Group.
11        THE COURT:  Good morning, Counsel.
12        In light of the tentative, then, let me hear from
13  the plaintiffs.
14        MS. GREENE:  Thank you, Your Honor.
15        And I note the tentative seems to hone in on the
16  question of whether or not plaintiffs' phrase was reasonably
17  creative or original to warrant copyright protection, and on
18  that, the bar for creativity is low.
19        When we are making this analysis, we have to look at
20  the phrase in three different prongs, that is the words
21  player and hater, the way that plaintiffs have used those
22  words separately.  Players, they gonna play and haters, they
23  gonna hate, and a different iteration, players going to play
24  and haters going to hate.  And we have to look at the
25  combination of using the phrase players gonna play and haters

1  gonna hate together.
2       And one thing that I think the Court stated is that,
3  you know, the concept of the words players and haters had
4  been around back in 2011 or 2001 when plaintiffs created
5  their work. And I don't think that that is quite accurate,
6  Your Honor.  I believe that the words player and hater hadn't
7  quite been as popular as perhaps they are today.
8       If you look at the cases or the songs that
9  defendants included in their request for judicial notice, you
10 know, this handful of them that are using the terms player
11 and using the terms hater, and they are typically using them
12 in a different context than how plaintiffs are using them
13 here.  They are talking about a player hater or a player
14 hater who hates.  That is, as the Court noted, that is a
15 different thing.  That is a person, a noun, the player hater
16 engaging in player hating, which is different from a player
17 who is going to play, or a hater who is going to hate.  I
18 think just because those words have been used in a handful of
19 songs, that alone doesn't bar the plaintiffs from meeting
20 that creativity threshold.
21      When you look at how the plaintiffs chose to express
22 the idea, if it is limited to the idea of players playing and
23 haters hating, you know, they've chosen players, they are
24 gonna play, haters, they gonna hate over a myriad of other
25 ways that they could have used that phrase.  They could have

1    said, players, you will find them playing, haters, there they
2    go hating again.  And so using them, you know, individually
3    as players gonna play, haters gonna hate, separately we
4    believe that that is sufficiently original, and especially
5    when you put the two terms together.  Again, these words
6    hadn't been used in combination in the same context in the
7    prior songs that had existed.
8              And I think that -- I know the cases that talk about
9    putting together different elements are distinguishable from
10   our situation here.  For example --
11             THE COURT:  You are right to hone in on that,
12   because obviously I'm treating this as just, you know, a pure
13   matter of law.  Obviously, I wouldn't dream of granting this
14   sort of motion, let alone without leave to amend, unless I
15   thought it was amenable to being resolved by looking at Ninth
16   Circuit case law and coming up with a decision.  And, you
17   know, it's -- here it's just, you know, while I'm thinking of
18   that -- you know, it just -- I'm not exactly -- I'm inclined,
19   just because I always am, and it is to grant leave to amend,
20   but I'm really not sure what is going to be amended.  I'm
21   really looking on this right now like I am -- I'm deciding
22   this case essentially as if the jury was hearing all this
23   stuff and making up its mind, and which is not something I'm
24   typically happy to do.
25             But the fact is, is that we've got the phrases here,

1   we've got the songs here.  This isn't a music case which
2   every other time I've had an issue like this it's been the
3   music, not the lyrics.  So, you know, it really -- just I
4   guess this all of which to say please continue on the thought
5   you were about to express, because I really do care about
6   whether the case law supports the granting the motion or not.
7           MS. GREENE:  Thank you, Your Honor.  And as I was
8   getting into, the cases that you cited, the *Satava* case,
9   which I know defendants have cited as well, that involved
10  someone creating a sculpture of a jellyfish.  A jellyfish is
11  a concrete idea, something that exists in nature.  There are
12  only so many ways to draw something that physically exists in
13  the world where its shape is defined by nature.
14          And here we've got a much more abstract idea of
15  language and how you put those words together.  There is not
16  only one way to say, even again if the idea is limited to
17  players playing and haters hating, there is not just one way
18  to express those ideas.  You know, there is, as I said, you
19  could say, there goes that player playing again, and there is
20  a number of other ways to express that.  And so when you are
21  comparing it to the cases where they are looking at things in
22  nature, things that exist in the actual world, and saying,
23  you didn't make anything, you know, different to what existed
24  in the world, I think that is distinguishable from when we've
25  got language used here.

1      THE COURT: Thank you. Let me hear from Ms. Swift
2 and the other defendants.
3      MR. ANDERSON: Thank you, Your Honor.
4      There is binding precedent on point, and that is
5 narrow. If there is no originality as a matter of law in
6 river wound its way between muddy banks crawling with
7 alligators, there is no originality in the six words players
8 going to play and haters going to hate. *Satava* isn't a word
9 case, but the principle is the same, and it's been applied by
10 the Ninth Circuit throughout.
11      The problem here with all respect to Counsel is that
12 they are claiming dibs. Their whole point is that, yes,
13 there is phrases out there, players, players haters, um,
14 Notorious Big actually talked about two people. They say
15 none of these are about two people. And Notorious Big's
16 1996, his lyric, excuse me, was you see there are two kind of
17 people in the world today, we have the players and we have
18 the player haters. This -- we are quibbling about ideas when
19 we should be talking about the words.
20      Now, you don't get dibs -- you don't get copyright
21 protection by claiming dibs on a couple of concepts, players
22 playing and haters hating. That is what the claim is about.
23 And it trips over at least three problems. The one that Your
24 Honor identifies, which is a short phrase and it doesn't have
25 sufficient originality. The cases talk about sufficient

1 originality.  And as a matter of law, if the phrases as
2 narrow aren't sufficiently okay and don't pass this test that
3 prohibits protection for short phrases, then these six words
4 don't pass that test.
5         Your Honor doesn't actually go into it the way I
6 read the tentative.  There is two other problems.  One is
7 they are talking about a combination.  They are saying we are
8 the only ones that can say both players play and haters hate
9 in the same line, in the same lyric.  That is a selection and
10 arrangement argument.  The Ninth Circuit law is absolutely
11 clear that you have to meet certain criteria which they don't
12 meet.  One is it has to be numerous elements.  Two is not
13 numerous as a matter of law.
14         Second, it has to be original.  The Court's
15 tentative reflects that this is banal.  Putting these two
16 together when they have already been together in all these
17 other different manipulations of the phrases is just banal.
18         And third, there has to be virtual identity.  There
19 is not virtual identity.  In their opposition, they argue
20 there is a close paraphrase.  That is an admission it's not
21 virtually identical.
22         The third is you can't copyright phrases that are
23 just the basic idea.  And they sort of look at the telescope
24 to the wrong end.  They say, "Well, we admit you can't
25 copyright Boy Meets Girl, but you can have Romeo and

1    Juliette, all these things.  They are not claiming we copied
2    Romeo and Juliette or any elaboration on this idea, they are
3    claiming we copied Boy Meets Girl.  If someone wants to say
4    in one sentence, players are going to play and haters are
5    going to hate, they are going to trip over their copyright
6    claim because they are claiming that idea, players play and
7    haters hate, they claim copyright on that.
8           I think Your Honor's tentative is exactly right.
9    The only thing I would suggest is there is no argument in the
10   opposition or here today that they can fix any of this, and
11   they can't fix any of this.
12          The lyrics aren't going to change.  The law is not
13   going to change.  Amendment would be futile.  The only thing
14   that is going to change is there is going to be more
15   attorney's fees and more delay.
16          THE COURT:  I went back and forth on that last
17   Friday.  I -- you know, there is -- I didn't cite it here --
18   there is a Second Circuit case that just very persuasively
19   lays out that under these circumstances where you have what
20   you have and it's in front of you, you've just got to pull
21   the trigger and make a decision.
22          But that being said, you know, usually I let things
23   drag out to the Second Amended Complaint.  Whatever else
24   happens, that won't happen here, although there will be a
25   First Amended Complaint.  But, you know, there is enough,

1   because, you know, there is the certain background on that of
2   what was going on.  And it's -- it is based in time, you
3   know, back in, you know, the 1990s and that.  It seems that
4   it's factual-ish enough that at a minimum I should allow at
5   least one chance to amend.
6          But I understand -- your request is not as
7   unreasonable as it would ordinarily be.  So, but let me
8   briefly hear from the plaintiffs again.
9          MR. FOX:  Thank you, Your Honor.
10         MS. GREENE:  Thank you, Your Honor.  I would just
11  like to address a couple of the points raised by defense
12  counsel.
13         First, you know, he started off discussing the
14  *Narell* case which had phrases talking about the river banks.
15  And in the *Narell* case, what was going on with those phrases,
16  is that they were describing something that happened in
17  history.  That is very akin to when you are looking at a
18  jellyfish, you are looking at something that exists, you are
19  looking at something concrete that happened, and you are
20  using the words to describe that.  That is different from
21  what we have here, where there are abstract ideas of a
22  player, abstract ideas of a hater, and them engaging in
23  playing or engaging in hating and those together.  That is
24  different from the situation in *Narell*.  And the *Satava* case.
25         We are not, you know, asking for a monopoly on the

|     |     |
| --- | --- |
| 1   | idea that there is a player playing or a hater hating.  And |
| 2   | as I have expressed before, there is so many ways that |
| 3   | defendants could have expressed that idea.  They could have |
| 4   | said, there goes a player playing again, you will always see |
| 5   | a hater hating again, and that expresses the idea, but it's |
| 6   | not using plaintiffs' expression. |
| 7   | And when you look at defendants' expression and |
| 8   | compare it to plaintiffs' expression, it's incredibly |
| 9   | similar.  It has the same noun, the same verb, and then they |
| 10  | are engaging in the same action.  It's player gonna play, |
| 11  | haters gonna hate.  And those -- they could have chosen a |
| 12  | number of different ways to express that, even using the same |
| 13  | concepts and ideas. |
| 14  | So, you know, it wouldn't be a monopoly on the idea |
| 15  | that players play and haters hate.  It's the expression that |
| 16  | is protected.  And it's different from just saying that no |
| 17  | one can use the word player and no one can use the word |
| 18  | hater, no one can use them together.  That is not what we are |
| 19  | asking for. |
| 20  | THE COURT:  All right.  Thank you, Counsel.  The |
| 21  | matter is taken under submission. |
| 22  | *****     *****     ***** |
| 23  |     |
| 24  |     |
| 25  |     |

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

```
 1
 2    I certify that the foregoing is a correct transcript from the
 3    record of proceedings in the above-titled matter.
 4
 5
 6
 7    ---------------------------
 8
 9    Amy C. Diaz, RPR, CRR              May 7, 2018
10    S/  Amy Diaz
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER