Peter Anderson, Esq. (Cal. Bar No. 88891)
        peteranderson@dwt.com
Arleen Fernandez, Esq. (Cal. Bar No. 318205)
        arleenfernandez@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorney for Defendants
TAYLOR SWIFT, KARL MARTIN SANDBERG,
KARL JOHAN SCHUSTER, SONY/ATV MUSIC
PUBLISHING LLC, KOBALT MUSIC
PUBLISHING AMERICA INC.,
BIG MACHINE LABEL GROUP, LLC and
UNIVERSAL MUSIC GROUP, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SEAN HALL, *etc., et al.*,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>TAYLOR SWIFT, *etc., et al.*,<br><br>                    Defendants. | ) Case No. 2:17−cv−06882 MWF (ASx)<br>)<br>)<br>) **[DISCOVERY MOTION]**<br>)<br>)<br>) JOINT STIPULATION *RE*<br>) DEFENDANTS' MOTION FOR ORDER<br>) FOR EXPERT DISCOVERY AS TO<br>) COPYRIGHT EXTRINSIC TEST PRIOR<br>) TO EXPERT CUT-OFF DATES<br>) |

Date: February 22, 2021
Time: 10:00 a.m.

Courtroom of the Honorable
Alka Sagar
United States Magistrate Judge

Non-Expert Discovery Cut-off: 12/3/2021
Expert Discovery Cut-off: 11/12/2021
Pretrial Conference: 3/21/2022
Trial Date: 4/21/2022

# **TABLE OF CONTENTS**

1.   INTRODUCTION ........................................................................1

    (a)   Defendants' Introductory Statement ......................................1

    (b)   Plaintiffs' Introductory Statement .........................................3

2.   THE ISSUE: WHETHER EXPERT DISCLOSURES AND DISCOVERY AS TO THE EXTRINSIC TEST SHOULD BE ALLOWED BEFORE THE GENERAL DEADLINES TO COMPLETE EXPERT DISCOVERY ..................................................5

    (a)   Defendants' Contentions ........................................................5

        (1)   Summary of the Case .....................................................5

        (2)   The Role of the Extrinsic Test in Copyright Cases ...................7

        (3)   The Extrinsic Test in this Action ................................9

            i.   The Extrinsic Test as Applied to Literary Works, Including Song Lyrics..................................9

            ii.   There are Substantial Reasons to Conclude that Plaintiffs' Claim Will Not Survive a Motion for Summary Judgment as to the Extrinsic Test .................10

                a.   As Literary Works, the Lyrics in *Playas* and *Shake It Off* Are Very Different Stories...............10

                b.   The Extrinsic Test Disregards the Songs' Unprotected Commonplace Short Phrases and Idea that People Do What They Are Prone to Do........................................................13

                c.   The Extrinsic Test Also Disposes of Plaintiffs' Argument that *Shake It Off* Copies an Original Selection and Arrangement..................................................16

        (4)   Expert Disclosures and Discovery as to the Extrinsic Test Should Not Be Delayed..........................................17

            i.   The Requested Relief Is Permitted by the District Judge's Scheduling Order and Order on the Motion to Bifurcate..................................18

            ii.   There Are No Reasons to Delay, and Substantial Reasons to Allow, Expert Discovery as to the Extrinsic Test ................................19

            iii.   Allowing Both Sides to Pursue Expert Discovery as to the Extrinsic Test Does Not Prejudice Plaintiffs........................................................20

i

|     |     | (5) | Defendants' Proposed Dates for Expert Disclosures and Discovery as to the Extrinsic Test................................20 |
| (b) |     | Plaintiffs' Contentions................................................21 |
|     | (1) | Case Background And Procedural Posture ........................21 |
|     | (2) | Defendants' Motion Is A Motion For Reconsideration In Disguise................................................23 |
|     | (3) | Expert Discovery As To The Extrinsic Test Should Not Take Place Before Fact Discovery................................24 |
|     | (4) | Plaintiffs Will Be Prejudiced If Defendants' Motion Is Granted................................................26 |
| 3.  | CONCLUSION................................................27 |

ii

1
2

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

3
4

*Acii v. AutoZone, Inc.*,
  No. LACV1101751JAKAJWX, 2012 WL 12850433 (C.D. Cal.
  Mar. 16, 2012), *aff'd*, 609 F. App'x 911 (9th Cir. 2015) ................................... 18

5
6

*Benay v. Warner Bros. Entm't*,
  607 F.3d 620 (9th Cir. 2010) ...................................................................*passim*

7
8

*Berkic v. Crichton*,
  761 F.2d 1289 (9th Cir. 1985) ......................................................... 10, 15

9
10
11

*Campion v. Old Republic Home Protection Co., Inc.*,
  No. 9-cv-748-JMA(NLS), 2011 WL 1935967 (S.D. Cal. May 20,
  2011) ........................................................................................... 24

12

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002) ......................................................... 10, 26

13
14

*Ets-Hokin v. Skyy Spirits, Inc.*,
  225 F.3d 1068 (9th Cir. 2000) ....................................................... 14

15
16

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ...................................................................... 16, 17

17
18

*Folkens v. Wyland Worldwide, LLC*,
  882 F.3d 768 (9th Cir. 2018) ......................................................... 8

19
20

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
  462 F.3d 1072 (9th Cir. 2006) ...................................................*passim*

21
22

*Grosso v. Miramax Film Corp.*,
  383 F.3d 965 (9th Cir. 2004), *opinion amended on denial of reh'g*,
  400 F.3d 658 (9th Cir. 2005) ......................................................... 14

23
24

*Hall v. Swift*,
  786 F. App'x 711 (9th Cir. 2019) .................................................. 6

25
26
27

*Hall v. Swift*,
  No. CV 17-6882-MWF (ASX), 2020 WL 5358390 (C.D. Cal. Sept.
  2, 2020) ........................................................................................ 6

28

*Jada Toys, Inc. v. Mattel, Inc.*,
   496 F.3d 974 (9th Cir. 2007) ............................................................................ 25

*Jada Toys, Inc. v. Mattel, Inc.*,
   518 F.3d 628 (9th Cir. 2008) .............................................................................. 8

*Kona Enters., Inc. v. Estate of Bishop*,
   229 F.3d 877 (9th Cir. 2000) ............................................................................ 24

*Kouf v. Walt Disney Pictures & Television*,
   16 F.3d 1042 (9th Cir. 1994) ........................................................... 8, 10, 20, 25

*L.A. Printex Indus. v. Aeropostale, Inc.*,
   676 F.3d 841 (9th Cir. 2012) ............................................................................ 25

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
   345 F.3d 1140 (9th Cir. 2003) .......................................................................... 17

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008) .............................................................................. 9

*Masterson v. Walt Disney Co.*,
   821 F. App'x 779 (9th Cir. 2020) ..................................................................... 17

*Metcalf v. Bochco*,
   294 F.3d 1069 (9th Cir. 2002), *overruled by Skidmore*, 952 F.3d
   1051 .................................................................................................................. 17

*Morrill v. Stefani*,
   338 F. Supp. 3d 1051 (C.D. Cal. 2018) .............................................................. 6

*Narell v. Freeman*,
   872 F.2d 907 (9th Cir. 1989) ...................................................................... 10, 14

*Puckett v. Hernandez*,
   No. 216CV02199-SVW-AGR, 2016 WL 7647555 (C.D. Cal. Dec.
   21, 2016) .......................................................................................................... 14

*Reeder v. Knapik*,
   No. 07-cv-362-L(LSP), 2007 WL 2088402 (S.D. Cal. July 18, 2007) ............... 24

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018), *overruled on other grounds by*
   *Skidmore*, 952 F.3d 1051 .............................................................................. 8, 9

iv

*Robins v. Skolnik*,
   No. 299-CV-0412-LRH-PAL, 2010 WL 3210008 (D. Nev. Aug. 11,
   2010) ........................................................................................................ 18

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) ....................................................... 16, 17

*Shaw v. Lindheim*,
   919 F.2d 1353 (9th Cir. 1990) ...................................................... 25, 26

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,
   562 F.2d 1157 (9th Cir. 1977), *overruled on other grounds by*
   *Skidmore*, 952 F.3d 1051 ................................................................... 9

*Silas v. Home Box Office, Inc.*,
   201 F. Supp. 3d 1158 (C.D. Cal. 2016), *aff'd*, 713 F. App'x 626 (9th
   Cir. 2018) ................................................................................................ 15

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020), *cert. denied sub nom. Skidmore as*
   *Tr. for Randy Craig Wolfe Tr. v. Zeppelin*, 141 S. Ct. 453 (2020),
   *reh'g denied sub nom. Skidmore v. Zeppelin*, No. 20-142, 2020 WL
   7132739 (U.S. Dec. 7, 2020) ....................................................*passim*

*United States v. Cerna*,
   No. CR 08-0730 WHA, 2010 WL 5058894 (N.D. Cal. Dec. 6, 2010) ............... 18

*Zindel as Tr. for David Zindel Tr. v. Fox Searchlight Pictures, Inc.*,
   815 F. App'x 158 (9th Cir. 2020) ....................................................... 26

**Statutes**

17 U.S.C. § 102(b) .......................................................................................... 15

**Rules**

Federal Rules of Civil Procedure
   1 ................................................................................................................ 20
   12(b)(6) .................................................................................................. 1, 6
   26(a)(2)(D) .............................................................................................. 19
   26(a)(2)(D) and (d)(3) .............................................................................. 1
   26(f) .......................................................................................................... 1

Local Rule 7-18 ..........................................................................4, 23, 24

**Regulations**

COPYRIGHT OFFICE & PROCEDURES, 37 C.F.R. § 202.1(a) ........................................ 14

**Other Authorities**

1 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT at 2-136 (1999) ................... 14

1 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 2.01[B][3]
    (2020) ................................................................................................................. 15

**JOINT STIPULATION**

## 1.    INTRODUCTION

The parties respectfully submit this Joint Stipulation in connection with Defendants' Motion for an Order pursuant to Federal Rule of Civil Procedure 26(a)(2)(D) and (d)(3), for early expert disclosures and discovery as to this Circuit's copyright extrinsic test, only, prior to the cut-off dates later this year for expert disclosure and discovery generally.

### (a)    Defendants' Introductory Statement

Plaintiffs allege a single claim for infringement of a copyright they claim in a musical composition. However, they do not claim any similarity in music. Neither do they claim wholesale copying of their song's lyrics. Instead, Plaintiffs expressly base their claim only on the alleged copying of a four-part lyrical sequence consisting of two commonplace short phrases – players gonna play and haters gonna hate – and two other, different phrases that mean people will do what they are inclined to do.

The District Court dismissed their claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the allegedly copied phrases are not original to Plaintiffs, and that decision was reversed on the sole and narrow ground that Plaintiffs had plausibly pleaded originality. Neither the District Court nor the Court of Appeals reached whether Plaintiffs can satisfy this Circuit's extrinsic test – that is, whether the two songs are substantially similar in protected expression.

Moreover, both the Court of Appeals and Plaintiffs' counsel acknowledged the importance of that issue and that it can be decided by an early summary judgment motion:

Judge Owens:

> "But I would take it you would agree that summary judgment is –
> I'm not saying summary judgment is inappropriate in this case, but
> you would agree that while motion to dismiss may not be
> appropriate – summary judgment may be appropriate in certain

1

cases and if a party wants to get to the end of it quickly, they can file a motion for summary judgment very, very quickly if they wanted to and ask the court for limited discovery on that."

Plaintiffs' Counsel:

"There's a wealth of authority in this circuit that summary judgment is appropriate on the issue . . . .  But in this case, we should have been able to at least proceed to summary judgment – this was too early what the judge did . . . ."

9th Cir. Archived Video, Case No. 18-5546 at 9:43.

However, the extrinsic test includes expert testimony and Plaintiffs – by refusing to engage in expert disclosures and discovery as to the extrinsic test before the cut-off dates later this year – have effectively blocked Defendants from filing their summary judgment motion and potentially ending this case early.  Further, the District Judge, in declining to formally bifurcate discovery but acknowledging that "Defendants' concerns are real and their goals are understandable," left to the Magistrate Judge whether to allow specific discovery.  Nov. 13, 2020, Order (Doc. 74) at 3.

Accordingly, the sole issue presented by Defendants' Motion is whether expert disclosures and discovery as to the extrinsic test (1) should occur now so that the early summary judgment motion contemplated by the Court of Appeals can be filed or (2) should be delayed until the end of all other discovery later this year, after the parties have incurred substantial expense and effort as to issues that are irrelevant to the extrinsic test.  For at least the following reasons, Defendants respectfully submit that expert disclosures and discovery as to the extrinsic test should proceed now.

This Circuit's extrinsic test is an objective comparison of the parties' respective works, includes dissection, analysis, and expert testimony, and is distinct and unrelated to issues such as whether copying occurred and the defendants' revenues, costs, and profits attributable to the alleged infringement.  In addition to being distinct

from all other issues in a case, the extrinsic test is potentially dispositive because a plaintiff who cannot satisfy that test necessarily loses on summary judgment.  *See below* at 7-9.

The extrinsic test applicable to literary works applies to claims that lyrics have been infringed and is not satisfied if the works tell different stories.  That is the case here.  Plaintiffs' song is a love song in which the singer assures her lover that, despite what her friends are saying behind his back, she will be true to him.  In Defendants' song, however, the singer catalogs her critics' criticisms and responds that she is driven by her music and finds refuge in it.  The only commonality in the two songs is their use, differently, of short common phrases that the extrinsic test requires be filtered out and disregarded.  Moreover, Plaintiffs' previous argument that Defendants' song copies Plaintiffs' claimed original selection and arrangement of unprotected elements is foreclosed by a recent en banc decision of the Ninth Circuit Court of Appeals.  *See below* at 9-17.

Neither is there any reason to delay expert disclosures and discovery as to the extrinsic test.  Proceeding now will not prevent other discovery, and Plaintiffs confirmed in the parties' Joint Rule 26(f) Report that if required to do so, Plaintiffs can proceed with expert discovery as to the extrinsic test.  Jt. R. 26(f) Report (Doc. 71) at 5:16-25.  On the other hand, delaying this expert discovery forecloses an early summary judgment motion and ensures that the parties will have to incur the expense and effort of full discovery of all issues.  *See below* at 17-21

Accordingly, Defendants respectfully submit that their Motion should be granted.

**(b)** **Plaintiffs' Introductory Statement**

With their motion, Defendants attempt to take another bite at the apple to force Plaintiffs to engage in costly expert discovery—on an expedited basis—before any

///

///

3

substantial fact discovery has taken place.[1]  To be sure, Judge Fitzgerald has now twice shut down Defendants' attempts to move up expert discovery.  At the January 27, 2020 Status Conference, the Court expressed disinterest with bifurcating the case to allow for immediate expert discovery.  (*See* Dkt. No. 60, 1/27/20 Hr. Tr. at 8:13-10:4.)  The Court formally denied Defendants' request to bifurcate discovery on the extrinsic test and standing on November 13, 2020.  (Dkt. No. 74.)

To be sure, Defendants' motion to bifurcate sought the exact same relief that Defendants now seek: to advance the timeline for conducting expert discovery as to the extrinsic test.  Defendants even presented the Court with a proposed schedule for such advanced expert discovery.  The Court rejected Defendants' proposed schedule.  As such, Defendants' motion is, in essence, a motion for reconsideration that does not satisfy Local Rule 7-18's requirements for such motions.

The bulk of Defendants' instant motion previews their forthcoming motion for summary judgment in order to distract from the fact that the relief they request has already been denied, and for good reason.  Advancing expert discovery on the extrinsic test will lead to several of the same inequities and inefficiencies that Plaintiffs noted in their opposition to Defendants' bifurcation motion.  As discussed below, fact discovery into the creation of both works at issue is highly relevant to the extrinsic test.  Yet, Defendants propose exchanging initial expert reports on March 12, 2021, only a couple of weeks after this very motion is scheduled to be heard.  There is no way the parties could conduct the necessary fact discovery needed for the extrinsic test in such a short amount of time.  In all, Defendants' motion should be denied as an improper motion for reconsideration and because the relief requested would greatly prejudice Plaintiffs.

///

---

[1]  All internal alterations, quotation marks, footnotes, and citations in Plaintiffs' portion of this Joint Stipulation are omitted and all emphasis is added unless otherwise noted.

4

2.     <u>**THE ISSUE: WHETHER EXPERT DISCLOSURES AND DISCOVERY AS TO THE EXTRINSIC TEST SHOULD BE ALLOWED BEFORE THE GENERAL DEADLINES TO COMPLETE EXPERT DISCOVERY**</u>

   (a)     <u>**Defendants' Contentions**</u>

       (1)    **Summary of the Case**

Plaintiffs assert a single claim alleging that the copyright in the lyrics in their 2001 musical composition *Playas Gon' Play* ("*Playas*") is infringed by the lyrics in the song *Shake It Off*, featuring Taylor Swift.  Plaintiffs do not claim any similarity in the two songs' music and do not claim any overall similarity in the lyrics.  Instead, Plaintiffs rely solely on the presence in both songs of variations of the phrases players gonna play and haters gonna hate – each of which Plaintiffs acknowledge are commonplace and predate their song – and other phrases that Plaintiffs contend, while different in the two songs, mean that people will do what they are prone to do.

Specifically, Plaintiffs allege that the following four lines of their lyrics are infringed by this portion of *Shake It Off*:

| *<u>Playas Gon' Play</u>* | *<u>Shake It Off</u>* |
|---|---|
| "Playas, they gonna play<br>And haters, they gonna hate<br>Ballers, they gonna ball<br>Shot callers, they gonna call" | "Cause the players gonna play,<br>   play, play, play, play<br>And the haters gonna hate, hate,<br>   hate, hate, hate<br>Baby I'm just gonna shake,<br>   shake, shake, shake, shake,<br>I shake it off<br>I shake it off<br>Heartbreakers gonna break,<br>   break, break, break, break<br>And the fakers gonna fake,<br>   fake, fake, fake, fake" |

Complaint at 5-6, ¶¶ 20-21, 26, & at 6, ¶¶ 27-28; Anderson Decl. at 1, ¶¶ 3-4, & Exh.

///

///

///

1 & 2.[2]

By Orders in 2018, the District Court granted Defendants' Rule 12(b)(6) Motion to Dismiss on the ground that the *Playas*' lyrics "Playas, they gonna play / And haters, they gonna hate," lack originality. Feb. 13, 2018, Order (Doc. 30) at 10-15; Mar. 2, 2018, Order (Doc. 33). On appeal, a three-judge panel reversed on the sole ground that plaintiffs had plausibly alleged originality in their four-part lyrical sequence. *Hall v. Swift*, 786 F. App'x 711, 712 (9th Cir. 2019). Neither the District Court nor the Court of Appeals reached this Circuit's extrinsic test – that is, comparing *Playas* and *Shake It Off* to determine whether they are substantially similar in protected expression – and other arguments Defendants had raised. *Id.* at 712 & 712 n. 1.

Upon remand and consideration of whether to again dismiss Plaintiffs' claim pursuant to Rule 12(b)(6) but on an alternative grounds, the District Court declined to dismiss "at this stage" – a phrase that appears no less than seven times in the District Court's Order. *Hall v. Swift*, No. CV 17-6882-MWF (ASX), 2020 WL 5358390 (C.D. Cal. Sept. 2, 2020). Like its 2018 Order and the three-judge panel's decision, the District Court's September 2020 Order did not consider the extrinsic test. *Id.*

Defendants then moved to bifurcate discovery, with an initial phase limited to the extrinsic test and Plaintiffs' standing, and staying discovery as to all other issues. Motion to Bifurcate (Doc. 69). Plaintiffs opposed that Motion, arguing that

---

[2]     Plaintiffs claim no relevance in the use of player versus playa, hater versus hata, or gonna versus going to or will. *See, e.g.,* Complaint (Doc. 1) at 5 n.1 ("'playa'/ 'player' and 'hater'/'hata'" have been used interchangeably in popular and hip hop culture."); *see, also Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1059 (C.D. Cal. 2018) ("[P]ronouncing words that end in an 'er' with an 'ah' sound is a common practice in African American Vernacular English[,] pre-dates 1996 . . . and is a staple in rap and hip hop music, as well as other types of media."; summary judgment granted). Accordingly, for ease of reference Defendants will refer to, for example, players play and haters hate.

preventing them from pursuing other discovery would be prejudicial. Pltfs' Oppn. (Doc. 70). The District Court, concerned that "formal bifurcation simply means the parties will squabble over whether certain discovery is 'in' or 'out' of the first phase," declined to grant the Motion. Instead, the District Court, after observing that "Defendants' concerns are real and their goals are understandable," deemed it "preferable for each disputed discovery request to be litigated before the magistrate judge." Nov. 13, 2020, Order at 3.[3]

Accordingly, Defendants first requested that Plaintiffs agree to proceed with expert disclosures and discovery as to the extrinsic test. Plaintiffs declined and objected to Defendants' pursuit of that discovery before the cutoff dates applicable to experts generally. Defendants then brought this Motion.

### (2) The Role of the Extrinsic Test in Copyright Cases

Allowing expert discovery to proceed as to the extrinsic test is important because there are serious reasons to conclude that plaintiffs cannot satisfy that test and, as a result, their claim is subject to early resolution by summary judgment. To demonstrate this, Defendants will first review the role that the extrinsic test plays in establishing a copyright infringement claim, before turning to the nature of that test as to literary works, including lyrics, and plaintiffs' inability to satisfy that test.

To establish their copyright infringement claim, Plaintiffs must establish (1) their ownership of a valid copyright in their work and (2) that Defendants' work copies protected aspects of Plaintiffs' work. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020), *cert. denied sub nom. Skidmore as Tr. for Randy Craig Wolfe Tr. v. Zeppelin*, 141 S. Ct. 453

---

[3]     The District Court also issued its Scheduling Order, setting deadlines later this year for expert disclosures and discovery. Order *re* Jury Trial (Doc. 76) at 2 & 3, ¶ 1 (discovery deadlines, "including expert discovery," are the dates "by which . . . discovery . . . is to be completed."). The Scheduling Order does not foreclose proceeding before the cut-off dates. *See below* at 18.

1   *(2020)*, *reh'g denied sub nom.* *Skidmore v. Zeppelin*, No. 20-142, 2020 WL 7132739

2   (U.S. Dec. 7, 2020).

3       "The second prong of the infringement analysis contains two separate

4   components: 'copying' and 'unlawful appropriation.'" *Id.* (quoting *Rentmeester v.*

5   *Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled on other grounds*

6   *by* *Skidmore*, 952 F.3d 1051).  "Proof of copying by the defendant is necessary

7   because . . . [n]o matter how similar the plaintiff's and the defendant's works are, if

8   the defendant created his independently, without knowledge of or exposure to the

9   plaintiff's work, the defendant is not liable for infringement." *Rentmeester*, 883 F.3d

10   at 1117.

11       "On the other hand, the hallmark of 'unlawful appropriation' is that the works

12   share *substantial* similarities." *Skidmore*, 952 F.3d at 1064 (emphasis in original).

13   This Circuit "use[s] a two-part test to determine whether the defendant's work is

14   substantially similar to the plaintiff's copyrighted work . . . .  The first part, the

15   extrinsic test, compares the objective similarities of specific expressive elements in

16   the two works." *Id.*  "Analytic dissection of a work and expert testimony are

17   appropriate for the extrinsic test." *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768,

18   774 (9th Cir. 2018).  "The second part, the intrinsic test, 'test[s] for similarity of

19   expression from the standpoint of the ordinary reasonable observer, with no expert

20   assistance.'" *Skidmore*, 952 F.3d at 1064 (quoting *Jada Toys, Inc. v. Mattel, Inc.*, 518

21   F.3d 628, 637 (9th Cir. 2008)).

22       The extrinsic test is a distinct and dispositive issue on summary judgment.

23   First, "[a] 'plaintiff who cannot satisfy the extrinsic test necessarily loses on summary

24   judgment, because a jury may not find substantial similarity without evidence on both

25   the extrinsic and intrinsic tests.'" *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,

26   462 F.3d 1072, 1077 (9th Cir. 2006) (quoting *Kouf v. Walt Disney Pictures &*

27   *Television*, 16 F.3d 1042, 1045 (9th Cir. 1994)), *overruled on other grounds*

28   *by* *Skidmore*, 952 F.3d 1051).  Second, issues such as whether copying occurred and

whether the defendants had access to the plaintiff's work are irrelevant to the extrinsic test and to a motion for summary judgment based on the extrinsic test. That is so because the extrinsic test compares the parties' respective works and "is objective in nature [and] 'depends . . . on specific criteria which can be listed and analyzed.'" *Funky Films*, 462 F.3d at 1077 (quoting *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977), *overruled on other grounds by Skidmore*, 952 F.3d 1051); *see, also Skidmore*, 952 F.3d at 1066-69 (rejecting inverse ratio rule that tied degree of access to substantial similarity); *Rentmeester*, 883 F.3d at 1124-25 ("The showing of substantial similarity necessary to prove unlawful appropriation does not vary with the degree of access the plaintiff has shown.").

Accordingly, whether a plaintiff can satisfy the extrinsic test is a distinct and separate dispositive issue that is properly raised by a motion for summary judgment. "Indeed, [the Ninth Circuit] ha[s]frequently affirmed summary judgment in favor of copyright defendants on the issue of substantial similarity." *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (quoting *Funky Films*, 462 F.3d at 1077), *overruled on other grounds by Skidmore*, 952 F.3d 1051.

### (3)    The Extrinsic Test in this Action

#### i.    The Extrinsic Test as Applied to Literary Works, Including Song Lyrics

Plaintiffs' copyright infringement claim is based solely on alleged similarity in lyrics, which are protected, if at all, as a literary work. *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 527 (9th Cir. 2008) ("Song lyrics are copyrightable as a literary work"). Plaintiffs have conceded that the extrinsic test as to literary works applies to their claim. *See, e.g.,* Pltfs' Op. Brief (9th Cir. Dkt. Entry 17) at 8 (Plaintiffs' "lyrics represent a literary work"); Pltfs' Reply Brief (9th Cir. Dkt. Entry 42) at 1 ("The work at issue here is a literary work").

As applied to literary works, "[t]he extrinsic test . . . focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and

sequence of events in two works." *Benay*, 607 F.3d at 624–25 (quoting *Kouf,* 16 F.3d at 1045).  The extrinsic test compares "the actual concrete elements" that make up the literary work (*Funky Films*, 462 F.3d at 1077 (quoting *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985)), "filter[s] out and disregard[s] the non-protectable elements," and determines "whether 'the *protectable elements, standing alone,* are substantially similar'" (*Funky Films*, 462 F.3d at 1077 (quoting *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)) (emphasis in original)).  While expert testimony may be offered, expert testimony relying on unprotected facts or "ordinary phrases does not raise a triable issue of fact." *Narell v. Freeman*, 872 F.2d 907, 913 (9th Cir. 1989).

> ii.   **There are Substantial Reasons to Conclude that Plaintiffs' Claim Will Not Survive a Motion for Summary Judgment as to the Extrinsic Test**

It is an understatement that there are substantial reasons to conclude that Plaintiffs are unlikely to survive summary judgment under the extrinsic test.

> a.   **As Literary Works, the Lyrics in *Playas* and *Shake It Off* Are Very Different Stories**

A claim for infringement of a copyright in a literary work does not survive the extrinsic test if the protected elements tell different stories.  *Benay*, 607 F.3d at 625. That is the case here.

Plaintiff's *Playas* is a love song in which the singer assures her lover that she will stay true to him despite what her friends say behind his back.[4]  The singer states that while she "don't mind . . . what people say or do," "I do mind what you believe is true" and "you are the only one getting all my love."  The singer adds that "cuz what they do . . . ain't nothin' new" and, while players will play, haters will hate, ballers

---

[4]     The recorded version of *Playas* released to the public features female singers, so for clarity this summary refers to a female singer.

will ball, and shot callers will call, "that ain't got nothin' to do with me and you."  The singer tells her lover that "so-called friends don't wanna see me with you" and "behind your back callin' my cell and pager too."  But "no matter what they do I will stay true only to you, only to you."  The singer reassures her lover that "I want you to know I'll never let you go."  "We gotta talk about everything you hear cuz I know that it ain't true," "you can trust my love and I can trust yours too," "our love will be forever." Anderson Decl. at 1, ¶ 3, & Exh. 1.

In stark contrast, in *Shake It Off* the singer catalogs her critics' criticism and responds to it by finding comfort and refuge in her music.  *Shake It Off*'s lyrics begin with the singer recounting the criticism that "I stay out too late, got nothing in my brain, that's what people say"; "I go on too many dates, but I can't make then stay, at least that's what people say."  "But I keep cruising, can't stop, won't stop moving, it's like I got this music in my mind saying it's gonna be alright."  Although "the players gonna play, play, play, play, play, play, and the haters gonna hate, hate, hate, hate," and although "heartbreakers gonna break" and "fakers gonna fake," she is "just gonna shake . . . it off" and keep "dancing on my own" and "make the moves up as I go."  A chorus of singers then adds that while the singer was complaining "about the liars and dirty cheats of the world" she "could've been getting down to this sick beat."  The singer also shakes off that her "ex-man brought his new girlfriend," and she invites a "fella over there with the hella good hair" to dance.  Anderson Decl. at 1, ¶ 4, & Exh. 2.

It is beyond serious dispute that *Playas* and *Shake It Off* "tell very different stories." *Benay*, 607 F.3d at 625.  That creates an insurmountable hurdle for Plaintiffs because summary judgment repeatedly has been granted to defendants and affirmed on appeal when literary works are far more similar than the lyrics here.

For example, in *Funky Films* both works were "about a small funeral home and the lives of the family members who operate it" after the father, who "has for decades run the business," dies unexpectedly from non-natural cases.  There are two sons who,

11

after their father's death, share equally in the business, which is financially in debt and with "obsolete equipment and a hearse that stalls."  The older son lives "in a distant city," "work[s] outside the funeral industry," and has no interest in the family business.  A woman who runs a rival funeral home tries to take advantage of their vulnerable financial condition by making a low-ball offer.  The older son is initially interested but changes his mind and commits to helping his brother.  *Funky Films*, 462 F.3d at 1077-78.  However, summary judgment for defendants under the extrinsic test was affirmed because "an actual reading of the two works reveals greater, more significant differences and few real similarities" in protected expression under the extrinsic test.  *Id.*

As another example, in *Benay* both fictional works centered on "an American war veteran going to Japan to help the Imperial Army by training it in the methods of modern Western warfare for its fight against a samurai uprising; both have protagonists who are authors of non-fiction studies on war and who have flashbacks to battles in America; both include meetings with the Emperor and numerous battle scenes; both are reverential toward Japanese culture; and both feature the leader of the samurai rebellion as an important foil to the protagonist.  Finally, in both works the American protagonist is spiritually transformed by his experience in Japan."  *Benay*, 607 F.3d at 625.  Once again, however, the summary judgment for the defendants was affirmed because there were "many more differences than similarities" and "[s]tripped of . . . unprotected elements, the works [were] not sufficiently similar to satisfy the extrinsic test."  *Id.*

While summary judgment for defendants was affirmed in *Funky Films* and *Benay* under the extrinsic test even though they shared significant similarities in the stories they told, *Playas* and *Shake It Off* are very different.  While *Playas* is a love song in which the singer reassures her lover that she loves him despite what her friends say and she will stay true to him, in *Shake It Off* the singer reacts to public criticism of her and finds comfort in her music.  Given that the plaintiffs could not satisfy the

extrinsic test in *Benay* and *Funky Films*, then, *a fortiori,* Plaintiffs cannot satisfy it here.

> **b.      The Extrinsic Test Disregards the Songs'**
> **Unprotected Commonplace Short Phrases and**
> **Idea that People Do What They Are Prone to Do**

As stated above, the extrinsic test "filter[s] out and disregard[s] the non-protectable elements in making [the] substantial similarity determination." *Funky Films*, 462 F.3d at 1077.  Another hurdle Plaintiffs face under the extrinsic test is that the only commonalities between *Playas* and *Shake It Off* are non-protectable elements.

Both *Playas* and *Shake It Off* include the short and commonplace phrases players will play and haters will hate.  But players playing and haters hating are staples of hip hop and popular culture[5] and, as a result, their presence in popular songs is not

---

[5]      Plaintiffs' Complaint alludes to this.  Complaint at 5, ¶ 22 ("[T]he term 'playa haters hate' or simply 'haters hate' was often used" before plaintiffs' 2001 *Playas*. *See, also Dreams* by Fleetwood Mac (1977) ("Players only love you when they're playing"); Player, a 1970s musical group; Playa, a 1990s R&B and hip hop musical group; *The Player*, a 1992 motion picture, based on *The Player*, a 1988 novel; *Psychobetabuckdown* by Cypress Hill (1991) ("You're looking at the Tribe, and you're a hater"); *Player's Ball* by Outkast (1993); *Playa Playa* by Big Mike (1994); *Playa Hata* by Luniz (1995) ("So playa hataz hate me," "Why you wanna playa hate on me?" and "Why you playa hate?"); *Man U Luv ta Hate* by Sir Mix-A-Lot (1996) ("If you want to playa hate," "Playa's in the house can you feel me, Got these playa haters lookin' at me silly," "Cause with these haters you gotta keep your strap," "Boy get a job and quit player hatin'"); *Playa in Me* by Mo Thugs (1996) ("Playa hatin' fellas on the outskirts"); *Family Tree* by Bone Thugs-N-Harmony (1997) ("playa haters gonna hate"); *Playa Hater* by Notorious B.I.G. (1997) ("Playa, turn your head round," "We have, the playas, and we have, the playa haters"); *Dump, Bust, Blast* by E40 (1998) ("Haters gonna hate"); *Hater Players* by Black Star (1998) ("I'm sick of the hater-players" and "Aiyyo, later for the hater-players/Yo-yo, yo-yo, later for these hater-players"); *Don't Hate the Player* by Ice-T (1999) ("Bunch of players listenin' to the seventh deadly sin," "Ice-T baby, this goes out to all you haters out there" and "Don't hate the player"); *Don't Hate the Player* by Too Short (2000) ("Don't hate the player," "If you never was a player, I can't hate you," "You never was a player, we

1    a substantial similarity under the extrinsic test.  *See, e.g., Grosso v. Miramax Film*

2    *Corp.*, 383 F.3d 965, 967 (9th Cir. 2004) ("Both works have poker settings but the

3    only similarities in dialogue between the two works come from the use of common,

4    unprotectable poker jargon."), *opinion amended on denial of reh'g,* 400 F.3d 658 (9th

5    Cir. 2005).

6         In addition, even if Plaintiffs were the first to use the words and phrases players

7    play and haters hate – which they plainly were not – as a matter of law the words and

8    phrases are unprotected elements of their song.  *Ets-Hokin v. Skyy Spirits, Inc.*, 225

9    F.3d 1068, 1081 n. 14 (9th Cir. 2000) ("short phrases or expressions cannot be

10   copyrighted, even if they are distinctively arranged or printed" (quoting 1 M. NIMMER

11   & D. NIMMER, NIMMER ON COPYRIGHT at 2-136 (1999))); *Narell*, 872 F.3d at 911

12   (despite verbatim copying, summary judgment affirmed because no copyright

13   protection in phrases such as "river wound its way between muddy banks crawling

14   with alligators," "hordes of gold seekers," "shanties and corrugated [iron/steel]

15   shacks . . . were crowded together" and "beach was strewn with boxes, bales.");

16   *Puckett v. Hernandez*, No. 216CV02199-SVW-AGR, 2016 WL 7647555, at *5 (C.D.

17   Cal. Dec. 21, 2016) (lyrics "I would die for you baby but you don't feel me/I gave you

18   my heart/But you didn't do the same," "are not entitled to copyright protection");

19   COPYRIGHT OFFICE & PROCEDURES, 37 C.F.R. § 202.1(a) ("words and short phrases"

20   are not copyrightable); 1 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT §

21   2.01[B][3] (2020) ("Cases also deny protection to fragmentary words or phrases").

22   As a result, the extrinsic test requires that they be "filter[ed] out and disregard[ed]."

23

24   _____

25   can't hate you," "You think someone player hated").  *See also* TODD BOYD, THE
     DEATH OF CIVIL RIGHTS AND THE REIGN OF HIP HOP 71-72 (2003) ("The playa hater

26   is an idea that has long been a part of the Black experience, but only during hip hop
     has it been given a name.  The term 'playa hater,' or 'playa hata,' seems to have

27   originated in Oakland and was put on record by a Bay Area group called The Luniz
     experiencing their fifteen minutes of fame during the summer of 1995 . . . .  Shortly

28   thereafter, the term 'playa hater' would become an instant classic.").

1  *Funky Films*, 462 F.3d at 1077.

2       As for Plaintiffs' claim of similarity as to their song's ballers balling and shot

3  callers calling, those words do not appear in *Shake It Off*, which instead refers to

4  heartbreakers breaking and fakers faking.  The only similarity is the generalized idea

5  that people will do what they are prone to do.  That is not a substantial similarity in

6  "actual concrete elements" (*Funky Films*, 462 F.3d at 1077 (quoting *Berkic*, 761 F.2d

7  at 1293)) and, under the extrinsic test, must be "filter[ed] out and disregard[ed]"

8  (*Funky Films*, 462 F.3d at 1077); *see, also* 17 U.S.C. § 102(b) ("In no case does

9  copyright protection . . . extend to any idea, . . . regardless of the form in which it is

10 described, explained, illustrated, or embodied in [a] work").

11      In addition, Plaintiffs' claim is rendered even more susceptible to a summary

12 judgment motion under the extrinsic test because the words that Plaintiffs allege are

13 similar are used differently in the two songs.  For example, while *Playas*' lyric is

14 "Playas, they gonna play, and haters, they gonna hate," *Shake It Off*'s lyric is "Cause

15 the players gonna play, play, play, play, play, and the haters gonna hate, hate, hate,

16 hate, hate."  Also, in *Playas*, players, haters, ballers, and shot callers refer to the people

17 talking about the singer's boyfriend behind his back, while in *Shake It Off* the words

18 players, haters, heartbreakers, and fakers refer to the people criticizing the singer

19 herself.  *Compare* Anderson Decl., Exh. 1 *with id.,* Exh. 2; *see* *Silas v. Home Box*

20 *Office, Inc.*, 201 F. Supp. 3d 1158, 1181 (C.D. Cal. 2016) (summary judgment granted

21 under the extrinsic test; while both works refer to Kobe Bryant, plaintiff's work refers

22 to being caught in a scandal like Bryant was, while defendant's work refers to the

23 money Bryant spent on an engagement ring), *aff'd*, 713 F. App'x 626 (9th Cir. 2018).

24      The only commonality between *Playas*' lyrics and those of *Shake It Off* are

25 commonplace and unprotected words, short phrases, and ideas, used differently, and

26 established Circuit law requires that they be filtered out and disregarded under the

27 extrinsic test.

28 ///

**c.** **The Extrinsic Test Also Disposes of Plaintiffs' Argument that *Shake It Off* Copies an Original Selection and Arrangement**

Plaintiffs have argued that under the extrinsic test their decision to combine players play with haters hate and other phrases not appearing in *Shake It Off* – ballers ball and shot callers call – indicating that people do what they are prone to do, constitutes a protectable selection of arrangement of unprotected elements that is copied in *Shake It Off*. That argument is contrary to established law, as reaffirmed in the en banc decision in *Skidmore*, 952 F.3d 1051.

In *Skidmore*, the Court held that the mere presence or combination of the same or similar unprotected elements in two works does not rise to a protected selection and arrangement. Instead, "the selection and arrangement must itself be original to merit copyright protection." *Id.* at 1074. "[C]opyright protection [extends] to 'a combination of unprotectable elements . . . only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.'" *Id.* (quoting *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003)). "Put another way, what a selection and arrangement copyright protects is the *particular* way in which the artistic elements form a coherent pattern, synthesis, or design." *Skidmore*, 952 F.3d at 1074. Further, "a selection and arrangement copyright is infringed only where the works share, in substantial amounts, the 'particular,' *i.e.*, the 'same,' combination of unprotectable elements." *Id.* at 1075 (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991)).

Here, an original selection and arrangement does not result from Plaintiffs' decision to (1) combine players play with haters hate and (2) add two other phrases to refer to the truism that people do what they are prone to doing. Those few unprotected elements are not "numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Skidmore*,

952 F.3d at 1074 (quoting *Satava*, 323 F.3d at 811 (combination of six unprotected elements not "numerous enough")); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1147 (9th Cir. 2003) (combination of four elements not sufficient); *Masterson v. Walt Disney Co.*, 821 F. App'x 779, 782 (9th Cir. 2020) (combination of five unprotected elements "not numerous or novel enough to warrant copyright protection" (applying *Skidmore*)); *cf. Metcalf v. Bochco*, 294 F.3d 1069, 1073-74 (9th Cir. 2002) (approximately twenty "generic similarities" between script and television show created triable issue), *overruled by Skidmore*, 952 F.3d 1051. In addition, *Shake It Off* does not use the unprotected elements that also appear in *Playas* – players play, haters hate, and other, different phrases meaning people tend to do what they are prone to do – in the "particular" and "same" way. *Id.* at 1075 (quoting *Feist*, 499 U.S. at 349); *see above* at 5, 10-13.

The requirements of the extrinsic test are well-established, the failure to satisfy that test mandates summary judgment for the defense, and there are substantial reasons to conclude that – once Defendants are able to move for summary judgment – this case will end without the need to complete discovery irrelevant to the extrinsic test.

### (4) Expert Disclosures and Discovery as to the Extrinsic Test Should Not Be Delayed

Because the extrinsic test considers expert testimony, Defendants face a Hobson's choice. They could file their motion for summary judgment now and face plaintiffs' opposition relying on experts that plaintiffs have declined to disclose and produce for deposition, depriving defendants of the opportunity to present the expert's deposition admissions and potentially leading to costly inefficiencies such as a continuance and re-briefing of the motion. Or Defendants can seek an Order for expert disclosures and discovery as to the extrinsic test now, prior to the expert disclosure and discovery cut-off dates. They opt for the second choice, which serves the interests of efficiency, economy, and justice, and will not prejudice Plaintiffs.

///

      i.      **The Requested Relief Is Permitted by the District Judge's Scheduling Order and Order on the Motion to Bifurcate**

Defendants do not seek an Order amending the District Judge's Scheduling Order. That Scheduling Order sets the last days to provide expert disclosures and conduct expert discovery and does not prevent earlier disclosures and discovery. *See, e.g., United States v. Cerna*, No. CR 08-0730 WHA, 2010 WL 5058894, at *1 (N.D. Cal. Dec. 6, 2010) ("The *Brady* disclosure deadlines established by the scheduling orders do not prevent the government from turning over *Brady* information earlier than the deadlines."); *Robins v. Skolnik*, No. 299-CV-0412-LRH-PAL, 2010 WL 3210008, at *9 (D. Nev. Aug. 11, 2010) ("The scheduling orders set deadlines for certain activities in the case, including the filing of an amended petition; the scheduling orders did not *prevent* the earlier filing of an amended petition" (emphasis in original)). By setting the last days to exchange expert disclosures and complete expert discovery, the Scheduling Order does not mandate that expert disclosures and the completion of expert discovery has to occur on those dates. *See, e.g., Acii v. AutoZone, Inc.*, No. LACV1101751JAKAJWX, 2012 WL 12850433, at *1 n. 2 (C.D. Cal. Mar. 16, 2012) (rejecting plaintiff's argument that defendants' motion was untimely because filed before scheduling order's deadline to file dispositive motions), *aff'd*, 609 F. App'x 911 (9th Cir. 2015).

Moreover, the District Court expressly left to the Magistrate Judge whether to issue orders to meet the "concerns" and "goals" Defendants raised in the Motion to Bifurcate (Nov. 13, 2020, Order at 3), which include early expert disclosures and discovery as to the extrinsic test so that Defendants could move for summary judgment before the parties have incurred the expense, effort, and delay of discovery on other issues. *See, e.g.,* Defs' Motion to Bifurcate, Memo. (Doc. 69-1) at 5:22-8:26.

Accordingly, the Scheduling Order does not prevent, and the District Court's November 13, 2020, Order expressly contemplates, the relief Defendants seek by this

Motion.  *See, also* Fed. R. Civ. P. 26(a)(2)(D) (court may control timing of expert disclosures) & (d)(3) ("in the interests of justice" court may control sequence of discovery).

### ii.      There Are No Reasons to Delay, and Substantial Reasons to Allow, Expert Discovery as to the Extrinsic Test

There are no reasons to delay expert discovery as to the extrinsic test.  As shown above, the extrinsic test is an objective comparison of the parties' respective works.  Issues such as whether Plaintiffs have a valid copyright, Plaintiffs have standing to sue, Defendants had access to Plaintiffs' song, and Plaintiffs' potential remedies, are completely irrelevant to the extrinsic test.  As a result, there is no need for the parties to pursue discovery as to those other issues before they provide expert disclosures, and engage in expert discovery, as to the extrinsic test. *See above* at 7-9.  Plaintiffs conceded this in the parties' November 2, 2020, Joint Rule 26(f) Report when they agreed that if bifurcation were permitted, they could provide their expert disclosures as to the extrinsic test by January 25, 2021, their rebuttal reports by February 22, 2021, and complete that expert discovery by March 22, 2021.  Jt. R. 26(f) Report at 5:16-25.

Further, there are substantial reasons to direct that expert discovery as to the extrinsic test proceed now.

First, there is, to put it mildly, a serious question as to whether Plaintiffs will be able to survive summary judgment as to the extrinsic test.  The stories told by those lyrics are completely different, and the only commonality is the use of short phrases that Plaintiffs concede pre-date *Playas* and which the extrinsic test requires be "filter[ed] out and disregard[ed]." *Funky Films*, 462 F.3d at 1077.  Indeed, far stronger cases have failed to satisfy that test.  *See above* at 10-13.  The en banc decision in *Skidmore* also negates Plaintiffs' selection-and-arrangement argument.  *See above* at

19

16-17.  And "a plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment . . . ." *Kouf*, 16 F.3d at 1045.

Second, directing that expert disclosures and discovery as to the extrinsic test proceed now rather than later this year allows Defendants to bring an early summary judgment motion that stands to avoid the expense and effort of completing discovery as to other, unrelated issues, including (1) fact discovery as to the creation of *Playas*, (2) fact discovery as to the creation of *Shake It Off*, (3) fact discovery as to Plaintiffs' claim of access, (4) fact and expert discovery as to Plaintiffs' claimed actual damages, and (5) fact and expert discovery as to Defendants' respective confidential revenues and costs from *Shake It Off* and the allocation of profits as between the allegedly infringing elements of *Shake It Off* and other factors.  An early summary judgment motion also stands "to secure the just, speedy, and inexpensive determination of [this] action . . . ." Fed. R. Civ. P. 1.

### iii.    Allowing Both Sides to Pursue Expert Discovery as to the Extrinsic Test Does Not Prejudice Plaintiffs

Neither would proceeding with expert disclosures and discovery as to the extrinsic test prejudice Plaintiffs.  They will have every opportunity to participate in those disclosures and discovery and already have confirmed that they can do so now. Jt. R. 26(f) Report at 5:16-25.  Also, unlike the bifurcation and stay they opposed, directing that this expert discovery proceed will not prevent Plaintiffs from pursuing other discovery.

### (5)    Defendants' Proposed Dates for Expert Disclosures and Discovery as to the Extrinsic Test

Plaintiffs previously agreed that if required to engage in expert disclosures and discovery as to the extrinsic test, they could proceed in January 2021.  Jt. R. 26(f) Report at 5:11-25.  Keeping in mind that the parties are able to proceed quickly once

///

///

20

the Court has ruled on Defendants' Motion, Defendants propose the following dates for expert discovery as to the extrinsic test:

| | |
|---|---|
| Initial expert disclosures: | March 12, 2021 |
| Rebuttal expert disclosures: | April 2, 2021 |
| Expert discovery cut-off: | April 16, 2021 |

Defendants respectfully submit that their Motion should be granted and the parties directed to proceed with expert disclosures and discovery as to the extrinsic test.

### (b)   Plaintiffs' Contentions

Defendants continue to attempt to pull the cart in front of the proverbial horse. Indeed, Defendants' motion spends several pages previewing their summary judgment arguments before even discussing the relief requested. This instant motion, however, is not a summary judgement motion.[6] Defendants are not asking this Court to dismiss Plaintiffs' case, rather they are asking the distinct question of whether expert discovery into the extrinsic text can be advanced and condensed into to a roughly four-week period in March and April. This request should be denied.

### (1)   Case Background And Procedural Posture

Plaintiffs wrote the musical composition *Playas Gon' Play* for the popular girl group 3LW in 2001. *Playas Gon' Play* became a success for 3LW charting on the Billboard Hot 100, Billboard Hot R&B/Hip-Hop, and Billboard Rhythmic charts. The chorus of *Playas Gon' Play* is comprised of the lyrics, "Playas, they gonna play / And haters, they gonna hate / Ballers, they gonna ball / Shot callers, they gonna call." This chorus is a four-part sequence of distinct actors engaging in a distinct activity. Plaintiffs were the first to combine the terms "playas" and "haters" in this unique and

///

---

[6]     Rather than respond to Defendants' summary judgment arguments regarding the merits of Plaintiffs' case, Plaintiffs' Contentions will focus on the actual relief requested by Defendants.

original fashion. This lyrical sequence contains of a number of creative choices Plaintiffs made in composing the work.

Even more, Plaintiffs were the first to use these slang terms to express the idea that people will do as they do, and the narrator is not concerned with what other people do and what other people think about them. In furtherance of that idea, the chorus continues with the lyrics "That ain't got nothin' to do / With me and you / That's the way it is / That's the way it is." Additionally, the introduction to *Playas Gon' Play* includes the lyrics "The playas gon' play / Them haters gonna hate."

In 2014, Defendants wrote and released the musical composition *Shake it Off* performed by Defendant Taylor Swift. The chorus of *Shake it Off* includes the infringing lyrics "Cause the players gonna play, play, play, play, play / And the haters gonna hate, hate, hate, hate, hate." In Defendants' version, the sequence continues with "Heartbreakers gonna break, break, break, break, break /And the fakers gonna fake, fake, fake, fake, fake." Taking another page from *Playas Gon' Play*, the chorus of *Shake it Off* includes a positive affirmation that the narrator is not concerned with the opinions of others in the lyrics "Baby, I'm just gonna shake, shake, shake, shake, shake / I shake it off, I shake it off."

Plaintiffs maintain that *Shake it Off* infringes on *Playas Gon' Play*. Indeed, *Shake it Off* copies a number of the creative choices Plaintiffs made in *Playas Gon' Play* and expresses the same idea of a protagonist being unconcerned with the opinions of naysayers through a four-part lyrical sequence describing actors engaging in various activities.

On February 13, 2018, the Court granted Defendants' motion to dismiss Plaintiffs' Complaint. (Dkt. No. 30.) Plaintiffs appealed. (Dkt. No. 38.) On October 28, 2019, the Ninth Circuit reversed the order dismissing Plaintiffs' Complaint. (Dkt. No. 50.) Defendants revived their motion to dismiss, and the Court denied their motion on September 2, 2020. (Dkt. No. 65.)

///

On October 19, 2020, Defendants filed their motion to bifurcate the case and have discovery on the extrinsic test and standing conducted before any other discovery. (Dkt. No. 69.)  The Court denied Defendants' motion on November 13, 2020 and on November 17, 2020 issued its Order re Jury Trial setting the deadlines for expert discovery in September through November 2021. (Dkt. Nos. 74 & 76.)

### (2)    Defendants' Motion Is A Motion For Reconsideration In Disguise

As an initial matter, Defendants are seeking the same relief sought in their motion to bifurcate which was denied on November 13, 2020.  To be sure, in that motion Defendants asked the Court to move up expert discovery on the extrinsic test and conduct such discovery in a roughly seven-week period from December 2020 – January 2021. (Dkt. No 69-1 at 1:3-7; Dkt. No. 69-3 at 1:20-23.)  Thus, this instant motion is a thinly veiled motion for reconsideration.  Under Local Rule 7-18, a motion for reconsideration:

> may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.

CD. Cal. L.R. 7-18.  None of those grounds are applicable here, and even if they were, Defendants have failed to meet their burden to show they apply.  Even more, such a motion must be made no later than "14 days after entry of the Order that is the subject of the motion or application." *Id*.  The Court's November 13, 2020 Order was undoubtedly more than 14 days ago.  To the extent this motion seeks reconsideration of the Court's Order re Jury Trial, which set the schedule and deadlines for this case, that was also issued well over 14 days ago on November 17, 2020.

///

Local Rule 7-18 contains these restrictions because reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "A motion to reconsider is not another opportunity for the losing party to make its strongest case, reassert arguments, or revamp previously unmeritorious arguments." *Reeder v. Knapik*, No. 07-cv-362-L(LSP), 2007 WL 2088402, at *2 (S.D. Cal. July 18, 2007); *see also Campion v. Old Republic Home Protection Co., Inc.*, No. 9-cv-748-JMA(NLS), 2011 WL 1935967, at *2 (S.D. Cal. May 20, 2011) ("[R]econsideration may not be used to get a second bite at the apple."). Here, Defendants are yet again asking the Court to advance the timeline for expert discovery on the extrinsic test.

Defendants' argument that the Court's Order denying their motion to bifurcate opened the door for this Court to advance expert discovery is misplaced. Judge Fitzgerald had the opportunity to ensure that expert discovery on the extrinsic test was advanced and chose not to do so. Judge Fitzgerald's statement that "it is preferable for each disputed discovery request to be litigated before the magistrate judge" did not open the door for Defendants to ask for reconsideration on an issue he denied twice. (Dkt. 74 at p. 4.) Rather, it is clear that Judge Fitzgerald was not inviting the parties to rewrite his scheduling order through discovery motions, but instead noting that this Court may determine which discovery, if any, should be delayed. As such, the Court should deny this untimely and unsupported motion for reconsideration in disguise.

### (3) Expert Discovery As To The Extrinsic Test Should Not Take Place Before Fact Discovery

It is clear that Defendants feel strongly about their eventual summary judgment motion—of course, Plaintiffs share a different view regarding the merits of Defendants' arguments. Regardless of whether or not Defendants' upcoming summary judgment will be successful, there is fact discovery that has yet to take place, ///

and that Defendants want to skip altogether, that will be relevant to the extrinsic test relied on in Defendants' forthcoming motion.

To determine substantial similarity, the Ninth Circuit applies a "two-part test, the extrinsic test and the intrinsic test, to compare the similarities of ideas and expression in two works." *Kouf v. Walt Disney Pictures & TV*, 16 F.3d 1042, 1045 (9th Cir. 1994). While expert testimony is relevant and helpful to the Court in applying the extrinsic test, *it is not the only evidence* the Court may consider. The core of the extrinsic test is "objective comparison of specific expressive elements" of the works. *L.A. Printex Indus. v. Aeropostale, Inc.*, 676 F.3d 841, 848 (9th Cir. 2012). Courts look at the elements of the work which are original and "the product of independent creation, not novelty." *Jada Toys, Inc. v. Mattel, Inc.*, 496 F.3d 974, 982 (9th Cir. 2007). As such, Plaintiffs' own testimony on the creation of the work would be relevant. This is especially true as Plaintiffs are songwriters and lyricists familiar with the landscape of urban and hip-hop music and lyrics in the relevant time period. Yet, Defendants' proposed schedule would deprive Plaintiffs of the opportunity to have their testimony considered in expert reports and opinions.

Indeed, expert discovery typically comes at the end of the discovery period to avoid this very issue. Expert witnesses analyze what the parties have uncovered through the course of fact discovery. While the extrinsic test looks at the two works analytically, the information and evidence regarding the creation of both works, along with the level of creativity employed by the Plaintiffs when composing their work, may be relevant to determine which portions of Plaintiffs' work is protectable. This is especially so given that this case is concerned with *lyrics* rather than *representational* objects—as such, it is *subjective* reaction of the listener that counts the most, making any objective comparison less relevant here. *See, e.g.*, *Shaw v.*

///

///

///

*Lindheim*, 919 F.2d 1353, 1360 (9th Cir. 1990) (reversing summary judgment).  As the Ninth Circuit puts it:

> Once a court has established that a triable question of objective similarity of expression exists, by analysis of each element of the extrinsic test, its inquiry should proceed no further.  What remains is a subjective assessment of the "concept and feel" of two works of literature—a task no more suitable for a judge than for a jury.  This subjective assessment is not a legal conclusion; rather it involves the audience in an interactive process with the author of the work in question, and calls on us "to transfer from our inward nature a human interest and a semblance of truth sufficient to procure for these shadows of imagination that willing suspension of disbelief for the moment, which constitutes poetic faith."

*Id.*; *see also Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002) (stating the *Shaw* rule as follows: "when comparison of literary works under the extrinsic test presents a triable issue of fact, the question of substantial similarity necessarily survives summary judgment and must go to the jury").  And, in any event, the Ninth Circuit has "long held that [s]ummary judgment is not highly favored on questions of substantial similarity."  *Zindel as Tr. for David Zindel Tr. v. Fox Searchlight Pictures, Inc.*, 815 F. App'x 158, 159 (9th Cir. 2020).

Thus, it is clear that fact discovery should take place before expert discovery related to the extrinsic tests.  As such, Defendants' motion should be denied.

### (4)     Plaintiffs Will Be Prejudiced If Defendants' Motion Is Granted

Finally, Defendants' argument that Plaintiffs will not be prejudiced by their warp speed expert discovery schedule falls flat.   While Plaintiffs agreed to Defendants' *proposed* bifurcated dates, they only agreed to those dates *if the case was actually bifurcated*.  Plaintiffs did not at all concede that fact discovery was not relevant to expert discovery, rather the importance of fact discovery was a main focus of Plaintiffs' opposition to Defendants' proposed bifurcation.  (*See* Dkt. No. 70 at 2:19-5:5.)

26

1        Moreover, Plaintiffs are not in a position to engage in expert discovery on

2    Defendants' expedited schedule.  Defendants bifurcation request was denied over two

3    months ago.  Since that denial, Plaintiffs have been operating on the actual case

4    schedule, not Defendants' rejected bifurcated schedule.  Further, as Plaintiffs have

5    continued to assert, the experts in this case will need to rely on certain fact discovery

6    which has not yet taken place.  Forcing Plaintiffs to produce expert reports without

7    such fact discovery would greatly prejudice Plaintiffs.  As such, it would be

8    impossible for Plaintiffs to engage in expert discovery on the schedule proposed in

9    Defendants' current motion.

10   **3.**     **CONCLUSION**

11       The parties appreciate the Court's assistance in resolving this issue.

12

13   Dated: January 29, 2021

            /s/ Peter Anderson

14                   Peter Anderson, Esq.

                Arlene Fernandez, Esq.

15                   DAVIS WRIGHT TREMAINE LLP

                Attorneys for Defendants

16                   TAYLOR SWIFT,

                KARL MARTIN SANDBERG,

17                   KARL JOHAN SCHUSTER,

                SONY/ATV MUSIC PUBLISHING

18                   LLC, KOBALT MUSIC PUBLISHING

                AMERICA INC., BIG MACHINE

19                   LABEL GROUP, LLC and

                UNIVERSAL MUSIC GROUP, INC.

20

21

22   Dated: January 29, 2021

            /s/ Lauren Greene

23                   Gerard P. Fox, Esq.

                Marina V. Bogorad, Esq.

24                   Lauren Greene, Esq.

                GERARD FOX LAW P.C.

25                   Attorneys for Plaintiffs

                SEAN HALL and NATHAN BUTLER

26

27

28

1

## **<u>Attestation Regarding Signatures</u>**

2          The undersigned attests that all signatories listed and on whose behalf this

3   filing is submitted concur in this filing's content and have authorized its filing.

4

5   Dated: January 29, 2021                              /s/ Peter Anderson
                                                        Peter Anderson, Esq.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28