1   Peter Anderson, Esq. (Cal. Bar No. 88891)
          peteranderson@dwt.com
2   Arleen Fernandez, Esq. (Cal. Bar No. 318205)
          arleenfernandez@dwt.com
3   DAVIS WRIGHT TREMAINE LLP
    865 South Figueroa Street, 24th Floor
4   Los Angeles, California  90017-2566
    Telephone: (213) 633-6800
5   Fax: (213) 633-6899

6   Attorney for Defendants
    TAYLOR SWIFT, KARL MARTIN
7   SANDBERG, KARL JOHAN SCHUSTER,
    SONY MUSIC PUBLISHING (US) LLC,
8   formerly known as Sony/ATV Music
    Publishing LLC, KOBALT MUSIC
9   PUBLISHING AMERICA INC.,
    BIG MACHINE LABEL GROUP, LLC and
10  UNIVERSAL MUSIC GROUP, INC.

11              **UNITED STATES DISTRICT COURT**

12            **CENTRAL DISTRICT OF CALIFORNIA**

13                  **WESTERN DIVISION**

| | |
|---|---|
| 14  SEAN HALL, *etc., et al.*, | ) Case No. 2:17−cv−06882 MWF (ASx) |
| 15          Plaintiffs, | ) |
| 16      vs. | ) **DEFENDANTS' MEMORANDUM OF** |
| 17  TAYLOR SWIFT, *etc., et al.*, | ) **POINTS AND AUTHORITIES IN** |
| | ) **SUPPORT OF MOTION FOR** |
| | ) **SUMMARY JUDGMENT** |
| 18          Defendants. | ) |
| 19 | ) Date: August 30, 2021 |
| 20 | ) Time: 10:00 a.m. |

21                          Courtroom of the Honorable
22                              Michael W. Fitzgerald
                             United States District Judge

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

1.  INTRODUCTION ...................................................................................... 1

   (a)   Summary of Argument ....................................................................... 1

   (b)   Summary of Uncontroverted Facts .................................................... 2

      (1)   The Prevalence of Player and Hater Phrases Prior to 2001 ......... 2

      (2)   Plaintiffs' 2001 Preparation of the Musical Composition
          *Playas* with Already-Existing Player and Hater Phrases ............. 2

      (3)   By 2014, Player and Hater Phrases Had Become Ubiquitous
          in Popular Culture ...................................................................... 3

      (4)   The August 2014 Release of *Shake It Off* with New
          Variations on Player and Hater Phrases ...................................... 3

      (5)   Plaintiffs' Filing of This Action for Copyright Infringement ...... 3

2.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD
   BE GRANTED ........................................................................................ 5

   (a)   The Standards Applicable to This Motion ......................................... 5

   (b)   *Playas* and *Shake It Off* Are Not Substantially Similar in Protected
      Expression ......................................................................................... 6

      (1)   The Extrinsic Test to Determine Whether Works Are
          Substantially Similar in Protected Expression ............................ 6

      (2)   Applying the Extrinsic Test to *Playas* and *Shake It Off* as
          Musical Works with Lyrics ......................................................... 7

          (i)    Structure ............................................................................ 8

          (ii)   Harmony ............................................................................ 9

          (iii)  Rhythm .............................................................................. 9

          (iv)   Melody ............................................................................ 10

          (v)    Lyrics .............................................................................. 10

i

(vi)   As Musical Works with Lyrics, the Works Are Not Substantially Similar in Protected Expression ............... 12

(3)   Applying the Extrinsic Test to the Lyrics of *Playas* and *Shake It Off* as Literary Works.................................... 12

(i)   Plot ............................................................................. 13

(ii)   Sequence of Events......................................... 14

(iii)   Characters ........................................................ 16

(iv)   Theme ................................................................ 17

(v)   Setting ............................................................... 17

(vi)   Mood .................................................................. 18

(vii)   Pace ................................................................... 18

(viii)   Dialogue........................................................... 18

(ix)   As Literary Works, the Songs' Lyrics Are Not Substantially Similar in Protected Expression ............... 19

(4)   Applying the Extrinsic Test to Plaintiffs' Alternative Selection-and-Arrangement Argument ...................................... 20

(i)   The Allegedly Copied Elements Are Not Protected as an Original Selection and Arrangement .......................... 20

(ii)   *Shake It Off* Selects and Arranges the Unprotected Elements Differently........................................................ 22

(c)   Plaintiffs Also Fail to Raise a Genuine Dispute as to Substantial Similarity Probative of Copying........................................................ 23

(1)   The Requirement that Plaintiffs Prove Substantial Similarity Probative of Copying ................................................ 23

(2)   The Differences and Lack of Significant Similarity Is Consistent with Independent Creation, Not Copying ............... 23

3.   CONCLUSION................................................................................ 25

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Behrens v. Pelletier*,
   516 U.S. 299 (1996) ......................................................................... 20

*Benay v. Warner Bros. Ent.*,
   607 F.3d 620 (9th Cir. 2010), *overruled on other grounds by*
   *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) .......7, 12, 13, 16, 19, 25

*Berkic v. Crichton*,
   761 F.2d 1289 (9th Cir. 1985) ....................................................... 14, 19

*Bernal v. Paradigm Talent & Literary Agency*,
   788 F. Supp. 2d 1043 (C.D. Cal. 2010) ........................................... 24, 25

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ...........................................7, 11, 12, 13, 20

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................... 5

*Corbello v. Valli*,
   974 F.3d 965 (9th Cir. 2020) ............................................................ 22

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ...................................................................... 22, 23

*Funky Films, Inc. v. Time Warner Entm't Co.*,
   462 F.3d 1072 (9th Cir. 2006), *overruled on other grounds by*
   *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ................7, 8, 17, 18

*Gordon v. Virtumundo, Inc.*,
   575 F.3d 1040 (9th Cir. 2009) ............................................................ 5

*Hall v. Swift*,
   786 F. App'x 711 (9th Cir. 2019) .................................................... 4, 20

*Kouf v. Walt Disney Pictures & Television*,
   16 F.3d 1042 (9th Cir. 1994) .........................................6, 13, 14, 16, 19

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
  345 F.3d 1140 (9th Cir. 2003) ............................................................ 21

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) ........................................................... 14

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
  922 F.3d 946 (9th Cir. 2019) ............................................................. 23

*Masterson v. Walt Disney Co.*,
  821 F. App'x 779 (9th Cir. 2020) ....................................................... 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ............................................................................ 6

*Morrill v. Stefani*,
  338 F. Supp. 3d 1051 (C.D. Cal. 2018) .............................................. 12

*Mortimer v. Baca*,
  594 F.3d 714 (9th Cir. 2010) ............................................................. 20

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018), *overruled on other grounds by*
  *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ............. 6, 21, 23, 24, 25

*Rice v. Fox Broad. Co.*,
  148 F. Supp. 2d 1029 (C.D. Cal. 2001) ................................................ 6

*S. Cal. Gas Co. v. City of Santa Ana*,
  336 F.3d 885 (9th Cir. 2003) ............................................................... 5

*Satava v. Lowry*,
  323 F.3d 805 (9th Cir. 2003) ..................................................... 7, 21, 22

*Skidmore v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) .................. 6, 7, 10, 11, 20, 21, 22, 23, 24, 25

*Smith v. Jackson*,
  84 F.3d 1213 (9th Cir. 1996) ........................................................ 7, 24

*Swirsky v. Carey*,
  376 F.3d 841 (9th Cir. 2004) ..................................................... 6, 7, 11

*Three Boys Music v. Bolton*,
    212 F.3d 477 (9th Cir. 2000), *overruled on other grounds by*
    *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ...................... 6, 7, 8, 14

*United States ex rel. Lujan v. Hughes Aircraft Co.*,
    243 F.3d 1181 (9th Cir. 2001) ................................................................ 20

*Williams v. Crichton*,
    84 F.3d 581 (2d Cir. 1996) ................................................................. 7, 20

*Williams v. Gaye*,
    895 F.3d 1106 (9th Cir. 2018) ................................................................. 8

**Statutes**

17 U.S.C.
    § 102(a)(2) .......................................................................................... 8
    § 102(b) ......................................................................................... 7, 11
    § 408(b)(2) ........................................................................................ 15

**Rules**

Federal Rules of Civil Procedure
    1 ....................................................................................................... 5
    12(b)(6) ............................................................................................. 20
    56(a) ................................................................................................... 5

**Other Authorities**

1 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 2.05[C] (2021) .................... 8

2 NIMMER ON COPYRIGHT § 8.01[A] ..................................................... 23

4 NIMMER ON COPYRIGHT § 13.02[B] .................................................. 23

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   INTRODUCTION

### (a)   Summary of Argument

The parties have completed expert disclosures and discovery as to the extrinsic test and Plaintiffs and their sole expert have admitted away Plaintiffs' claim that the song *Shake It Off* infringes the copyright in the song *Playas Gon' Play* ("*Playas*").

Plaintiffs admit that *Playas* and *Shake It Off* are very different in their music and also their lyrics – *Playas* is a love song in which "so-called friends" try to break up the singer and her romantic partner, while in *Shake It Off* the singer recounts that people criticize her but she shakes it off and finds comfort in music.  Plaintiffs have narrowly limited their claim to their contention that *Shake It Off* copies *Playas*' use of the phrases "players gonna play" and "haters gonna hate" as the first two tautological phrases ("tautophrases") in a series of four tautophrases that supposedly convey the idea that the world is full of untrustworthy people we should ignore.

However, Plaintiffs and their expert admit that "players gonna play" and "haters gonna hate" are public domain and that *Playas* and *Shake It Off* vary those unprotected phrases in different ways.  They also admit that although *Shake It Off* includes a third and fourth tautophrase, they are different phrases than *Playas*' tautophrases.  Also, *Playas* has an unbroken sequence of four, bare tautophrases, but *Shake It Off* follows its two variations of the preexisting "players gonna play" and "haters gonna hate" phrases with the lyrics, "Baby, I'm just gonna shake, shake, shake, shake, shake/Shake it off/Shake it off."  As a result of the undisputed facts, Plaintiffs' claim is merely that *Shake It Off* copies the unprotected idea of including four tautophrases in a chorus, with different public domain tautophrases used differently.

Applying this Circuit's extrinsic test confirms that *Shake It Off* and *Playas* are not substantially similar and, instead, are very different.  As a result, Plaintiffs' claim fails both because the songs are not substantially similar in protected expression and also because they lack substantial similarities probative of copying.

1

(b)    **Summary of Uncontroverted Facts**

The following facts, most of which are taken from Plaintiffs' pleading, their discovery responses, and their expert's deposition testimony, are assumed true for the purposes of this Motion.

(1)    **The Prevalence of Player and Hater Phrases Prior to 2001**

Before 2001, player and hater phrases, often with the African American Vernacular English ("AAVE") pronunciations "playa" and "hata," were widely used, including in popular music.  Facts 5-7, 28.[1]  The variations of player and hater phrases predating 2001 are numerous (*see* Facts 1-4, 8-27) and include the public domain phrases "players gonna play" and "haters gonna hate," which had become part of the urban vocabulary (Facts 13, 21, 29-30).

(2)    **Plaintiffs' 2001 Preparation of the Musical Composition**
**_Playas_ with Already-Existing Player and Hater Phrases**

Plaintiffs co-authored the musical composition *Playas* in 2001 and sound recordings of the performance of that musical composition by the musical group, 3LW, were released to the public in May 2001.  Facts 31-32.  *Playas* is a romantic love song in which the singer tells her boyfriend that, despite "so-called friends" trying to break them up, she will stay true to him and he can trust her, as she trusts him.  Fact 33.[2]  *Playas* slightly varies the player and hater phrases that appear in prior art by adding "they" and, in one instance, abbreviating "gonna" to "gon'": "Players, they gon' play" and "Haters, they gonna hate."  These variations are trivial and Plaintiffs do not claim copyright in them.  Facts 94-95, 100-101.

---

[1]    References to Facts are to uncontroverted facts in Defendants' accompanying proposed Statement of Uncontroverted Facts and Conclusions of Law.

[2]    *Playas*' lyrics do not identify the genders of the singer and the singer's romantic partner.  For convenience and consistent with the parties' respective expert reports, it is assumed the singer is female and her romantic partner is male.  Likewise, it is assumed that the singer in *Shake It Off* is female.

2

**(3)     By 2014, Player and Hater Phrases Had Become Ubiquitous in Popular Culture**

By 2014, player and hater phrases, including with AAVE pronunciations "playa" and "hata," had become ubiquitous throughout popular culture, including music (Facts 245-55), television (Facts 256-79), movies (Facts 280-86), articles (Facts 287-96), books (Facts 297-98), and even clothing – a t-shirt with the words "Haters Gonna Hate" was worn by Ms. Swift at the 2013 Billboard Awards (Fact 299).

**(4)     The August 2014 Release of *Shake It Off* with New Variations on Player and Hater Phrases**

In 2014, the musical composition *Shake It Off* was created and recordings of it were released to the public.  Fact 34.  In *Shake It Off*, the singer recounts that people say she stays out too late, has nothing in her brain, and goes on too many dates, but she shakes off that criticism and finds comfort in music.  Fact 35.  Rather than a romantic love song like *Playas*, *Shake It Off* is a song about individual freedom and the singer's independence from her critics.  Facts 33, 187.  *Shake It Off* also varies the public domain phrases, "players gonna play" and "haters gonna hate," by repeating the stressed verbs "play" and "hate" to create the new and unique lyrics, "'Cause the players gonna play, play, play, play, play," and "the haters gonna hate, hate, hate, hate, hate."  Facts 119-22.  This rhythmic repetition provides *Shake It Off* a dynamism, mood, and pace absent in *Playas*.  Prof. Lewis Decl., Exh. 5 at 14-15, 19-20, 30-31.

**(5)     Plaintiffs' Filing of this Action for Copyright Infringement**

Plaintiffs' Complaint alleges a single claim for copyright infringement.  Fact 36. Plaintiffs allege that their decision to combine a players-gonna-play phrase with a haters-gonna-hate phrase in a sequence of four tautophrases underlined below on the left in *Playas*, is copied in the underlined portion of *Shake It Off*'s lyrics on the right:

| ***Playas*** | ***Shake It Off*** |
|---|---|
| Playas, they gon' play | 'Cause the players gonna play, |
| And haters, they gonna hate | play, play, play, play |

| | |
|---|---|
| <u>Ballers, they gon' ball</u> | <u>And the haters gonna hate, hate,</u> |
| <u>Shot callers, they gonna call</u> | <u>hate, hate, hate</u> |
| That ain't got nothing to do | Baby, I'm just gonna shake, |
| With me and you | shake, shake, shake, shake |
| That's the way it is | Shake it off |
| That's the way it is | Shake it off |
| | <u>Heartbreakers gonna break,</u> |
| | <u>break, break, break, break</u> |
| | <u>And the fakers gonna fake, fake,</u> |
| | <u>fake, fake, fake</u> |
| | Baby, I'm just gonna shake, |
| | shake, shake, shake, shake |
| | Shake it off |
| | Shake it off |

Anderson Decl. at 2, ¶¶ 8-9, Exh. 13, 14; Facts 70-75.

The Court granted Defendants' Motion to Dismiss but that ruling was reversed on appeal. In reversing, the Court of Appeals ruled only that, as to an allegedly copied "six-word phrase and a four-part lyrical sequence," Plaintiffs had "plausibly alleged originality." *Hall v. Swift*, 786 F. App'x 711, 712 (9th Cir. 2019). The Court of Appeals did not reach other issues, including whether Plaintiffs plausibly pleaded substantial similarity between *Playas* and *Shake It Off*. *Id.* at 712 n.1.

On remand, this Court entered its Order (Doc. 87) on the parties' Stipulation (Doc. 86), setting a separate schedule of expert disclosures and discovery as to the extrinsic test, with an eye to Defendants bringing an early summary judgment motion.

Defendants identified three experts. Defendants' musicologist, Dr. Ferrara, is a Full Professor of Music and the Director Emeritus of all studies in Music and the Performing Arts in New York University's Steinhardt School. Dr. Ferrara Decl. at 1, ¶ 2. Defendants' linguistics expert, Prof. Marcyliena Morgan, is a Professor in

4

Harvard University's Department of African and African American Studies and the Director of Harvard's Hiphop Archive and Research Institute.  Prof. Morgan Decl. at 1, ¶ 2.  Defendants' literary expert, Prof. Nathaniel Lewis, is a Professor of English at Saint Michael's College, Vermont, and past Chair of the Department and Director of the American Studies Program.  Prof. Lewis Decl. at 1, ¶ 2.

Plaintiffs designated only Prof. Loren Kajikawa, an Associate Professor of Music in the Corcoran School of Arts & Design at George Washington University.  Anderson Decl. at 1-2, ¶¶ 4, 6, Exh. 7 (Prof. Kajikawa initial Report) at 1.  The focus of his studies is race and politics.  Fact 137.[3]

## 2.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED

### (a)   The Standards Applicable to this Motion

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once the movant shows that summary judgment is appropriate, the burden shifts to the nonmoving party to establish genuine issues exist as to material facts.  *Celotex*, 477 U.S. at 324.  "The 'party opposing summary judgment must direct [the court's] attention to specific, triable facts'" (*Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1058 (9th Cir. 2009) (quoting *S. Cal. Gas Co. v. City of Santa Ana,* 336 F.3d 885, 889 (9th Cir. 2003)) and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[3]   Defendants reserve the right to challenge Dr. Kajikawa's qualifications.

1      **(b)**    ***Playas* and *Shake It Off* Are Not Substantially Similar in Protected**

2                  **Expression**

3          **(1)**    **The Extrinsic Test to Determine Whether Works Are**

4                  **Substantially Similar in Protected Expression**

5          To defeat summary judgment, the plaintiff in a copyright case must not only

6  present proof that the defendant copied the plaintiff's work but also that the copying

7  constitutes "unlawful appropriation." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064

8  (9th Cir. 2020) (quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir.

9  2018)), *overruled on other grounds by Skidmore*, 952 F.3d 1051. "To prove unlawful

10 appropriation, … the similarities between the two works must be 'substantial' and

11 they must involve protected elements of the plaintiff's work." *Rentmeester*, 883 F.3d

12 at 1117. "[A] two-part analysis – an extrinsic test and an intrinsic test – is applied."

13 *Rice*, 330 F.3d at 1174. Because both tests must be satisfied, "a plaintiff who cannot

14 satisfy the extrinsic test necessarily loses on summary judgment." *Kouf v. Walt Disney*

15 *Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).

16         "[T]he extrinsic test [ ] compares the objective similarities of specific

17 expressive elements in the two works." *Skidmore*, 952 F.3d at 1064. "The extrinsic

18 test requires 'analytical dissection of a work and expert testimony.'" *Swirsky v. Carey*,

19 376 F.3d 841, 845 (9th Cir. 2004) (quoting *Three Boys Music v. Bolton*, 212 F.3d 477,

20 485 (9th Cir. 2000), *overruled on other grounds by Skidmore*, 952 F.3d 1051).

21 "'Analytical dissection' requires breaking the works 'down into their constituent

22 elements, and comparing those elements for proof of copying as measured by

23 'substantial similarity.'" *Swirsky*, 376 F.3d at 845 (quoting *Rice v. Fox Broad. Co.*,

24 148 F. Supp. 2d 1029, 1051 (C.D. Cal. 2001), *rev'd on other grounds*, 330 F.3d 1170

25 (9th Cir. 2003)).

26         "Crucially, because only substantial similarity in protectable expression may

27 constitute actionable copying that results in infringement liability, 'it is essential to

28 distinguish between the protected and unprotected material in a plaintiff's work.'"

*Skidmore*, 952 F.3d at 1064 (quoting *Swirsky*, 376 F.3d at 845).  "A court 'must take care to inquire only whether "the *protectible elements, standing alone,* are substantially similar"' [and] filter out and disregard the non-protectible elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (quoting *Williams v. Crichton,* 84 F.3d 581, 588 (2d Cir. 1996)).

"[E]xpressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." *Skidmore*, 952 F.3d at 1069 (quoting *Satava v. Lowry,* 323 F.3d 805, 811 (9th Cir. 2003)); *Smith v. Jackson,* 84 F.3d 1213, 1219 (9th Cir. 1996).  Also, "[c]opyright law only protects expression of ideas, not the ideas themselves." *Cavalier*, 297 F.3d at 823; 17 U.S.C. § 102(b) ("In no case does copyright protection … extend to any idea [or] concept … regardless of the form in which it is … embodied in [a] work").  Instead, "the extrinsic test requires that the plaintiff identify concrete elements based on objective criteria." *Three Boys Music,* 212 F.3d at 485.  Accordingly, similarities at a "general, abstract level" are not sufficient. *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076, 1081 (9th Cir. 2006), *overruled on other grounds by Skidmore*, 952 F.3d 1051.

In addition, the extrinsic test is not satisfied if "the two works reveal[] greater, more significant differences and few real similarities." *Funky Films*, 462 F.3d at 1078; *see, also Benay v. Warner Bros. Ent.*, 607 F.3d 620, 625 (9th Cir. 2010) (same), *overruled on other grounds by Skidmore*, 952 F.3d 1051.

In summary, the Court, with the aid of expert testimony, "appl[ies] the objective factors of the extrinsic test, considering only the protectible material, to determine whether [the defendant's work], taken as a whole, [is] sufficiently similar to [the plaintiff's work] to raise a triable issue of fact." *Cavalier*, 297 F.3d at 824.

**(2)**   **Applying the Extrinsic Test to *Playas* and *Shake It Off* as Musical Works with Lyrics**

Plaintiffs claim similarity between their musical work, *Playas*, and another musical work, *Shake It Off*.  That these songs are musical works is not changed by the

1  fact each includes lyrics.   17 U.S.C. § 102(a)(2) (copyright subsists in original
2  "musical works, including any accompanying words"); 1 M. NIMMER & D. NIMMER,
3  NIMMER ON COPYRIGHT § 2.05[C] (2021) ("[T]he mere fact that words are in a form
4  adaptable to be set to music does not render them a 'musical work' unless, in fact,
5  those words have been integrated with music.").

6       Plaintiffs contend that because they only claim similarity in lyrics, the music of
7  the two songs is irrelevant.  But the way in which lyrics are set to music is an important
8  aspect of a musicological analysis of two musical compositions.  *See*, *e.g.*, *Williams
9  v. Gaye*, 895 F.3d 1106, 1118-19, 1150 n.10 (9th Cir. 2018) (judgment on jury verdict
10  affirmed where claimed similarities include "word painting" in which the music
11  illustrates words in the lyrics, *e.g.*, "setting the lyric 'higher' to an ascending
12  melody"); *Three Boys Music*, 212 F.3d at 485 (judgment on jury verdict affirmed
13  where claimed similarities included hook phrase's "lyrics, rhythm, and pitch").  To
14  dismiss as irrelevant the very different relationship of the lyrics to the music in *Playas*
15  and *Shake It Off* is to sidestep an important consideration under the extrinsic test,
16  namely whether "the two works reveal[] greater, more significant differences and few
17  real similarities." *Funky Films*, 462 F.3d at 1078.  Accordingly, it is appropriate to
18  analyze *Playas* and *Shake It Off* as musical works with lyrics.

19       The principal elements considered in the analysis of two musical works are
20  (1) structure; (2) harmony; (3) rhythm; and (4) melody; and when present, (5) lyrics.
21  Fact 37.  Applying the extrinsic test to *Playas* and *Shake It Off* confirms they are not
22  substantially similar in protected expression and, instead, they are very different.

23              **(i)    Structure**

24       The "structure" of a musical composition is the organization of musical units
25  or groups, such as verses and choruses.  Fact 42.  Defendants' musicologist, Dr.
26  Lawrence Ferrara, showed that both *Playas* and *Shake It Off* include generic structural
27  building blocks of introductions, verses, bridges, and choruses, and that each song
28  contains other structural units not included in the other song.  Facts 43-45.  Dr. Ferrara

concluded that there are no significant structural similarities between the two songs, but that there are significant structural differences.  Facts 46-47.

Plaintiff's expert, Prof. Kajikawa, did not conduct an analysis of any of the music in *Playas* and *Shake It Off*.  In his Rebuttal Report directed to Dr. Ferrara's initial Report, he asserted that the songs' structures are irrelevant because Plaintiffs limit their claim to the songs' lyrics.  Anderson Decl. at 1, ¶ 4(b), Exh. 8 (Kajikawa Rebuttal Report *re* Ferrara initial Report) at 2, ¶ 3.  In his deposition, however, he testified that he agrees with Dr. Ferrara's conclusion that there are no significant structural similarities between the two songs.  *See* Fact 47 evidence.

### (ii)   Harmony

"Harmony" refers to the tonal relationship of pitches that sound simultaneously, especially with respect to the use and organization of "chords," a sequence of which is referred to as a chord progression, with the rate of change of chords referred to as harmonic rhythm.  Fact 48.  Dr. Ferrara explained that *Playas* and *Shake It Off* are in different keys and modalities, with *Playas* in the key of C-sharp minor and *Shake It Off* in the key of G major.  Facts 49-51.  He also showed that, transposing both musical compositions to the same key for comparison purposes, the chords, chord progressions, and harmonic rhythm of *Playas* and *Shake It Off* are not significantly similar and, quite the contrary, are completely different.  Facts 49-55.

Prof. Kajikawa deemed harmony irrelevant in his Rebuttal Report directed to Dr. Ferrara's initial Report (Exh. 8 at 2, ¶ 4), but testified he agrees that there are no significant similarities in harmony in the two songs.  *See* Fact 55 evidence.

### (iii)   Rhythm

"Rhythm" in music refers to the pattern and organization of the time values of sounds and silences and the overall rhythmic flow and feel in musical time.  Fact 56.  Dr. Ferrara showed that both *Playas* and *Shake It Off* are in 4/4 meter, referred to as "common time," which is commonplace in music.  Fact 57.  He also showed that the two songs' tempos are very different, with *Playas* 93 beats per minute and *Shake It*

9

*Off* much faster at 160 beats per minute, the rhythms in the songs' instrumental and vocal parts are very different, and there are no significant similarities.  Facts 58-62.

Prof. Kajikawa deemed rhythm irrelevant in his Rebuttal Report directed to Dr. Ferrara's initial Report (Exh. 8 at 2, ¶ 5), but testified that he agrees there are no significant similarities in rhythm in the two songs.  *See* Fact 62 evidence.

### (iv)   Melody

"Melody" is a single line of music consisting primarily of a sequence of pitches – that is, the specific high or low placement of musical sounds – and the rhythmic durations of those pitches within a melodic phrase structure.  Fact 63.  Dr. Ferrara explained that because *Playas* and *Shake It Off* are in different modes – minor and major – there are two principal ways of transposing them for comparison purposes, namely to the same key signature or to the same pitch center.  He showed that using either way, there are no significant melodic similarities and, instead, the melodies of the two songs are very different.  Facts 64-68.

Prof. Kajikawa deemed melody irrelevant in his Rebuttal Report directed to Dr. Ferrara's initial Report (Exh. 8 at 2, ¶ 6), but testified that he agreed there are no significant similarities in melody in the two songs.  *See* Fact 68 evidence.

### (v)   Lyrics

Lyrics are the words sung or spoken in a song.  Fact 69.  Dr. Ferrara showed, and Prof. Kajikawa agrees, that the words spoken by the singers in *Shake It Off*'s introduction, two verses, two pre-choruses, interlude, bridge, and post-chorus bear no significant similarity to any lyrics in *Playas*.  Fact 75.  That leaves only the lyrics in the two songs' choruses and, applying the extrinsic test, "it is essential to distinguish between the protected and unprotected material in a plaintiff's work."  *Skidmore*, 952 F.3d at 1064 (quoting *Swirsky*, 376 F.3d at 845).

Both songs' choruses include variations on the phrases "players gonna play" and "haters gonna hate."  Plaintiffs agree that those two phrases, as well as Plaintiffs' variations, "Players, they gon' play" and "haters, they gonna hate," are in the public

10

1  domain.   Facts 92-102.   As a result, Plaintiffs' player and hater phrases are

2  "unprotected material in [Plaintiffs'] work."   *Skidmore*, 952 F.3d at 1064 (quoting

3  *Swirsky*, 376 F.3d at 845).

4      In addition, all parties agree that the other lyrics in *Playas*' chorus do not appear

5  in *Shake It Off*.  Facts 71-73.  Instead, Plaintiffs argue that *Shake It Off*, like *Playas*,

6  includes a third and fourth tautophrase.  However, those third and fourth tautophrases

7  are very different: "Ballers, they gonna ball" and "Shot callers, they gonna call" in

8  *Playas*, but "Heartbreakers gonna break, break, break, break, break" and "Fakers

9  gonna fake, fake, fake, fake, fake" in *Shake It Off*.  Facts 123-28.  Also, *Playas*' four

10 tautophrases are in an unbroken sequence while *Shake It Off* has two sets of two

11 tautophrases each, separated by three lines of lyrics that do not appear in *Playas*.

12 Facts 129-33.  As a result, the only similarity is the idea of multiple tautophrases and

13 that idea also is "unprotected material in [Plaintiffs'] work."  *Skidmore*, 952 F.3d at

14 1064 (quoting *Swirsky*, 376 F.3d at 845); 17 U.S.C. § 102(b) (ideas not protected).

15     Finally, there are great differences in the lyrics of *Playas* and *Shake It Off*.

16 "[T]aken as a whole" (*Cavalier*, 297 F.3d at 824), *Playas* is a love song in which the

17 singer tells her boyfriend that she will stay true to him despite attempts by "so-called

18 friends" to break them up.  Fact 33.  In stark contrast, *Shake It Off* is a song about

19 personal independence in which the singer shakes off criticism of her and finds

20 comfort in music.  Fact 35, 187, 212.  All the lyrics in all of the songs' parts are

21 different except only the choruses, where the unprotected public domain player and

22 hater phrases, as well as the idea of multiple tautophrases, are used differently with

23 different lyrics.  Facts 70-82, 117-33.  Those lyrics also are set to very different music.

24 Facts 48-68.

25     The lack of similarity in protected expression and the many differences

26 preclude a finding of substantial similarity under the extrinsic test.  *See*, *e.g.*, *Benay*,

27 607 F.3d at 625 (summary judgment affirmed where "many more differences than

28 similarities" and "[t]he most important similarities involve unprotectable elements");

11

1  *Cavalier*, 297 F.3d at 828 (no substantial similarity where unprotected elements "are

2  arranged  and formatted differently"); *Morrill v. Stefani*, 338 F. Supp. 3d 1051,

3  1060-61 (C.D. Cal. 2018) (summary judgment granted where musical compositions

4  used unprotected elements "in different manners").

**(vi)   As Musical Works with Lyrics, the Works Are Not**

**Substantially Similar in Protected Expression**

7        Plaintiffs and their expert agree that *Playas* and *Shake It Off* are not

8  substantially similar in structure, harmony, rhythm, and melody, and that the claimed

9  lyric similarity is confined to the songs' choruses where Plaintiffs' variation on the

10  public domain player and hater phrases and the idea of multiple tautophrases are

11  unprotected and different from *Shake It Off*.   "[C]onsidering only the protectible

12  material, [*Shake It Off*], taken as a whole, [is not] sufficiently similar to [*Playas*] to

13  raise a triable issue of fact."  *Cavalier*, 297 F.3d at 824.

**(3)   Applying the Extrinsic Test to the Lyrics of *Playas* and *Shake**

**It Off* as Literary Works**

16        Plaintiffs concede that *Playas*' lyrics were not a pre-existing poem or literary

17  work that was subsequently set to music but, instead, were "written as part of [the]

18  musical composition …."  *See* Pltfs' Opening Brief on appeal (9th Cir. Dkt. Entry 17)

19  at 8.  But Plaintiffs also have described their claim as "involv[ing] a literary work used

20  in a musical composition …."  *Id.* at 29.  However, analyzing the lyrics of *Playas* and

21  *Shake It Off* as literary works ignores the extreme differences in the music to which

22  the lyrics are set.  The music, and those differences, are properly considered.  But

23  Plaintiffs fare no better under this Circuit's extrinsic test as to literary works.

24        As applied to literary works, "[t]he extrinsic test is an objective test based on

25  specific expressive elements: the test focuses on articulable similarities between the

26  plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two

27  works."  *Benay*, 607 F.3d at 624 (quoting *Kouf*, 16 F.3d at 1045).  As with the extrinsic

28  test generally, the "court must take care to inquire only whether the protect[able]

12

elements, standing alone, are substantially similar." *Benay, 607 F.3d at 624* (alteration in original) (quoting *Cavalier, 297 F.3d at 822*).

Review of the two songs' respective lyrics under the extrinsic test as applied to literary works confirms they are not substantially similar in protected expression.

### (i)   Plot

Plot is the pattern of events and situations in a narrative or dramatic work, as selected and arranged both to emphasize relationships – usually of cause and effect – between incidents and to elicit a particular kind of interest in the reader or audience. Fact 142.

Defendants' literary expert, Prof. Lewis, explained that some song lyrics are fully narrative, setting out complex plots – for example, Bob Dylan's song "Hurricane" recounts the story of Ruben "Hurricane" Carter.  Prof. Lewis Decl. at 3, ¶ 11.  Other song lyrics are less so and, here, the plots of *Playas* and *Shake It Off* are in the singer's declarations:

- In *Playas*, the singer professes her undying love for her partner. Although her friends disapprove of their relationship ("don't wanna see me with you") and try to separate them ("behind your back, callin' my cell and pager too"), she insists that she "will stay true" to him.
- In *Shake It Off*, the singer declares her need to "shake off" the criticisms of her.  Instead of giving in, she is going to "keep cruising," dancing to "the music in [her] mind."

Facts 143-44.  The plots of the two songs are glaringly different.  Facts 145-46.

Prof. Kajikawa is not a literary expert and his initial Report did not consider the plots of the lyrics.  Facts 137-140; Anderson Decl., Exh. 7 (Prof. Kajikawa initial Report).   In his Rebuttal Report directed to Prof. Lewis' initial Report, Prof. Kajikawa – after acknowledging that Prof. Lewis relies on "literal events" in the songs' respective lyrics – argued the singers' "feelings" are "similar" because "people are threatening us, but we need to ignore them and hold true to what we believe."

Anderson Decl., Exh. 10 (Kajikawa Rebuttal Report *re* Prof. Lewis initial Report) at 3-4, ¶¶ 12-13.

However, "the extrinsic test requires that the plaintiff identify concrete elements based on objective criteria." *Three Boys Music*, 212 F.3d at 485. While Prof. Lewis relies on the actual words in the lyrics, Prof. Kajikawa ignores them to instead posit a similarity – people who threaten us should be ignored – at a general or abstract level. In doing so, Prof. Kajikawa violates the extrinsic test by relying on generalizations rather than concrete elements. *See*, *e.g.*, *Kouf*, 16 F.3d at 1045-46 ("We attach no significance to the fact that both works involve a life struggle of kids fighting insurmountable dangers, because '[g]eneral plot ideas are not protected by copyright law'") (quoting *Berkic v. Crichton*, 761 F.2d 1289, 1292 (9th Cir. 1985)); *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) ("Any similarities in plot exist only at the general level for which plaintiff cannot claim copyright protection."). In addition, Prof. Kajikawa's assertion that both songs share the general idea that "people are threatening us, but we need to ignore them and hold true to what we believe" is divorced from the actual lyrics. For example, *Shake It Off*'s lyrics refer to people criticizing the singer, and criticizing someone is not threatening them. An apt generalization of a shared idea might be "ignore what people say," and this only highlights there is no substantial similarity in protected expression in plot.

### (ii)   Sequence of Events

The sequence of events in a literary work is the order in which events appear in the narrative. Fact 147. The events in *Playas* are: (1) the singer reassures her partner that, despite what their so-called friends are saying, she cares only about what her partner "believe[s] is true"; (2) their friends are trying to break them up but, "no matter what they do," she will remain true; and (3) the singer expresses an ongoing commitment to remain true to her partner and declares that their love "will be forever." Fact 148. In contrast, the events in *Shake It Off* are: (1) the singer recognizes that "people say" she stays out too late, is not especially intelligent ("got nothing in my brain"),

14

1   and goes on too many "dates"; (2) the singer remarks that people "don't see" that she
2   will persevere (through dancing and music); and (3) the singer describes a situation
3   with her "ex-man" and his "new girlfriend" and a "fella" whom she imagines inviting
4   to "shake." Fact 149. The sequences of events are very different. Facts 152-53.

5       Prof. Kajikawa's initial Report did not consider the sequence of events in the
6   lyrics of *Playas* and *Shake It Off*. Exh. 7 (Prof. Kajikawa initial Report). In his
7   Rebuttal Report directed to Prof. Lewis' initial Report, Prof. Kajikawa argues that the
8   first verse of *Playas* does not mention "so-called friends," which instead appears in
9   the second verse. Exh. 10 (Prof. Kajikawa Rebuttal Report *re* Prof. Lewis initial
10  Report) at 4, ¶ 14. However, *Playas*' first verse, which begins "I, I don't mind," does
11  not describe an event; instead, it is the singer telling her boyfriend she does not mind
12  what people say he does. Exh. 13.[4] Moreover, even if that were considered an event
13  it would not help Plaintiffs because nowhere in *Shake It Off* does the singer say she
14  does not mind what people say her boyfriend does. Facts 150-51.

15      Prof. Kajikawa also argues that Prof. Lewis' statement of the sequence of events
16  in *Playas* and *Shake It Off* omits the songs' respective choruses. Exh. 10 at 4, ¶ 15.
17  However, the choruses also do not describe an event. *See* Exh. 13 & 14; Prof. Lewis
18  Decl. at 11, ¶ 39. Prof. Kajikawa next argues that considering the sequence of events
19  is not "useful or relevant." Exh. 10 at 4-5, ¶¶ 16-17. But the extrinsic test includes
20  whether there are "articulable similarities between the … sequence of events in two
21  [literary] works." *Benay*, 607 F.3d at 624 (quoting *Kouf*, 16 F.3d at 1045).

22

---

23  [4]     Citing unofficial Internet postings of *Playas*' lyrics, Prof. Kajikawa claims the
24  *Playas* lyric might be either "What people say <u>or</u> do" or "What people say <u>and</u> do."
    Even if true, it still is not an event. Further, the *Playas* lyrics he produced in response
25  to Defendants' Subpoena state "What people say <u>you</u> do." Exh. 13. Also, copyright
26  was registered in the *Playas* musical composition by depositing with the Copyright
    Office the 3LW recording as a "complete" copy of the musical composition. 17
27  U.S.C. § 408(b)(2). Listening to the 3LW recording confirms the lyric is "What
28  people say <u>you</u> do." Anderson Decl. at 1, ¶ 5(a), Audio Exh. 1 at track 1 at 0:28-0:32.

Finally, Prof. Kajikawa argues that Prof. Lewis' reference to Dr. Ferrara's initial Report "is misleading" because Dr. Ferrara's initial Report refers to Prof. Lewis' Report. Exh. 10 at 18. However, the references are to different subjects: Prof. Lewis' initial Report refers to Dr. Ferrara's identification of the songs' different <u>structures</u> (Exh. 5 at 9-10), while Dr. Ferrara's initial report refers to Prof. Lewis' and Prof. Morgan's analyses of the songs' respective <u>lyrics</u> (Exh. 1 at 1, ¶ 3).

Prof. Kajikawa fails to raise a genuine dispute and the sequence of events in *Playas* and *Shake It Off* are not substantially similar but, instead, are very different.

### (iii)   Characters

The characters in *Playas* include the singer, who is in a romantic relationship threatened by "so-called friends" and who strives to maintain that romantic relationship by assuring her boyfriend that she trusts him and he should trust her. Facts 154, 156-58. There is no character with those attributes in *Shake It Off*. Instead, the singer in *Shake It Off* acknowledges "people say" she stays out too late, is not smart, and goes on too many dates, but she will "keep cruising" with "music in my mind." She is independent, confident, determined, and defined by her independence and love of music. Fact 159. There is nothing to indicate she is in a romantic relationship, let alone a threatened one. Facts 160-61. Nor does the singer in *Playas* find comfort in music. Facts 162-63. They are very different characters. Facts 164-65.

The characters in *Playas* also include the singer's boyfriend. As the person the singer addresses and strives to reassure in the face of attempts to interfere with their relationship, the singer's boyfriend is central to *Playas*. Facts 166-67. A boyfriend with whom the singer has a threatened romantic relationship is "[c]ompletely missing from" *Shake It Off*. [Funky Films, 462 F.3d at 1079](#) (noting absence in one work of a "central character" whose "romantic attachments and relationships form an important part of [other work's] plot-line"). Facts 168-69.

*Playas*' lyrics also refer to the singer's "so-called friends" who do not want to see the singer with her boyfriend and, behind his back, are calling and paging the

16

singer.  Fact 170.  There is no reference in *Shake It Off*'s lyrics to someone who is trying to break up the singer's romantic relationship.  Facts 171-72.  Also, *Shake It Off*'s lyrics refer to "people" who say she stays up too late, is not smart, and goes on too many dates.  Fact 173.  *Playas*' lyrics do not refer to anyone who criticizes the speaker.  Facts 174-77.  Prof. Kajikawa strains to find similarity by arguing that in both songs someone poses an "existential threat" (Exh. 10 at 3, ¶ 7), namely, in *Playas* a threat to the singer's romantic relationship (Fact 87), and in *Shake It Off* a threat to the singer's "self-confidence" (Fact 88).  But he agrees this is not a substantial similarity.  Facts 89-90; *see also Funky Films*, 462 F.3d at 1078 ("'prodigal son' characters" similar "at the abstract level" but actually "markedly different").

Finally, also completely absent from *Playas* are the characters that *Shake It Off* identifies as the singer's "ex-man," his "new girlfriend," and a "fella" seen from a distance, with whom the singer contemplates dancing.  Facts 178-184.  That these characters "have no counterpart" in *Playas* also supports the lack of substantial similarity under the extrinsic test.  *Funky Films*, 462 F.3d at 1079.

#### (iv)   Theme

The central theme of *Playas* established by its lyrics is the endurance of love in the face of social adversity, while the central theme of *Shake It Off* is the singer's independence from those who criticize her.  Facts 186-87.  Plaintiffs' expert, Prof. Kajikawa, agrees but observes "it is possible to accurately describe each song as having the same basic theme, such as 'maintaining healthy relationships in the face of social adversity.'"  Exh. 10 at 5, ¶¶ 19-20.  His "possible" generalization glosses over the stark differences between the themes established by the actual lyrics.  *Funky Films*, 462 F.3d at 1079 (claimed generalized themes not substantially similar because works "explore [their themes] in very different ways.").

#### (v)   Setting

Setting is the general locale, historical time, and social circumstances in which the action occurs, the "when" and "where."  Fact 190.  References in *Playas* to a cell

1    phone and pager and both songs' use of player and hater phrases suggest the songs are

2    each set in recent times, which is commonplace.  Facts 191-93.  However, *Shake It*

3    *Off*'s lyrics also describe events at a social gathering or nightclub, where the singer's

4    "ex-man brought his new girlfriend" and there is a "fella" with good hair.  Fact 194.

5    There is no counterpart in *Playas* to that setting in *Shake It Off*.  Facts 195-98.

6                              **(vi)   Mood**

7            Mood, also called "atmosphere," is the "emotional tone pervading a section or

8    the whole of a literary work."  Fact 199.  *Playas*' lyrics establish a soulful and intimate

9    mood, while *Shake It Off*'s lyrics establish a defiant, confident, joyful, and playful

10   mood.  Facts 200-03.  Plaintiffs' expert agrees, although he does not believe the lyrics'

11   different moods are relevant.  *See* Facts 200-01 evidence.

12                             **(vii)   Pace**

13           In works of fiction and narrative poetry, pace is generally the speed at which

14   the plot and sequence of events unfold, while in non-narrative poetry and lyrics, pace

15   is the tempo at which the verse unfolds.  Fact 204.  Here, pace refers to the rhythms

16   established by the arrangement or pattern of stressed and unstressed syllables, syntax,

17   punctuation, rhyme, repetition, and word choice.  Prof. Lewis Decl. at 6, ¶ 24.

18           *Playas*' lyrics use lines relatively even in length, largely iambic meter with

19   repeating short end-line rhyming words, and enjambment – the flow of one line into

20   another – to result in a fluid and conversational pace.  *Shake It Off*, in contrast, uses a

21   combination of iambic and trochaic feet, alternating stressed and unstressed syllables,

22   strong end-pauses, and repetition to create an aggressive, staccato pace.  Facts 205-08.

23   Plaintiffs' expert agrees, although he does not believe the lyrics' different paces are

24   relevant.  *See* Facts 205-06; *cf. Benay*, 607 F.3d at 624 (extrinsic test applicable to

25   literary work focuses on, *inter alia*, pace).

26                            **(viii)  Dialogue**

27           Plaintiffs' expert agrees, and it is uncontroverted, that other than a few scattered

28   prepositions, articles, or pronouns, the words spoken or sung in *Playas* and *Shake It*

1    *Off* are all different with the sole exception that each has a different variation of the

2    public domain phrases "players gonna play" and "haters gonna hate."   Facts 211,

3    213-14, 217, 219.   The only claimed similarity is that the variations on those two

4    public domain phrases are the first two of four tautophrases in the songs' respective

5    choruses and are used – Plaintiffs contend – to convey the idea that the world is full

6    of untrustworthy people who should be ignored.   Fact 83.

7          But it is undisputed that tautophrases, parallel phrases, and even parallel

8    tautophrases appear in music prior to *Playas* (Facts 111-16), that each of the four

9    tautophrases in *Playas* is unprotected (Facts 94-95, 100-01, 104-05, 108-09), and that

10   *Playas*  and  *Shake It Off*  have  different  tautophrases  organized  differently

11   (Facts 117-33).   In addition, Plaintiffs' expert agrees that the claimed shared idea that

12   people  are  untrustworthy  is  commonplace  and  not  a  substantial  similarity.

13   Facts 84-85.   *See also* _Berkic_, 761 F.2d at 1293 (claimed similarity at "[a]t a very high

14   level of generality" unprotected); _Kouf_, 16 F.3d at 1046 ("[A] life struggle of kids

15   fighting insurmountable dangers" is an unprotected idea).

16         As a result, there is no genuine dispute that the only similarity in dialogue is

17   two public domain phrases used differently, commonplace practices of tautophrases

18   and parallelism, and the claimed abstracted idea that people are untrustworthy.

19                 **(ix)   As Literary Works, the Songs' Lyrics Are Not**

20                          **Substantially Similar in Protected Expression**

21         Applying the extrinsic test for literary works ignores that *Playas* and *Shake It*

22   *Off* are songs and their lyrics are set to very different music.   Nevertheless, "tak[ing]

23   care  to  inquire  only  whether  'the  *protectible elements, standing alone,*  are

24   substantially similar' [and to] filter out and disregard the non-protectible elements,"

25   the extrinsic test for literary works also confirms that the songs' lyrics are not

26   substantially similar in protected expression.   _Cavalier_, 297 F.3d at 822 (quoting

27   _Williams,_ 84 F.3d at 588).

28   ///

                                            19

1           **(4)**     **Applying the Extrinsic Test to Plaintiffs' Alternative**

2                          **Selection-and-Arrangement Argument**

3        As an alternative theory, Plaintiffs have argued that *Playas*' sequence of four

4 tautophrases is an original selection and arrangement that is substantially similar to

5 *Shake It Off*'s lyrics.  Indeed, Plaintiffs claim the Court of Appeals already determined

6 that the "four-part lyrical sequence" is a protected selection and arrangement.  *See*,

7 *e.g.*, Pltfs' Supp. Memo. *re* Mtn. to Dismiss (Doc. 62) at 4:2-8.

8        However, the Court of Appeals merely ruled that Plaintiffs "plausibly *alleged*

9 originality," not that they had *proven* originality, and the Court of Appeals did not

10 consider the separate and distinct issue of whether *Shake It Off* is substantially similar

11 to *Playas*.  Hall, 786 F. App'x at 712, 712 n.1 (emphasis added); *see also Mortimer*

12 *v. Baca*, 594 F.3d 714, 720 (9th Cir. 2010) (law of the case "doctrine does not apply

13 to issues not addressed by the appellate court.") (quoting *United States ex rel. Lujan*

14 *v. Hughes Aircraft Co.*, 243 F.3d 1181, 1186 (9th Cir. 2001)); *Behrens v. Pelletier*,

15 516 U.S. 299, 309 (1996) (appeal from Fed. R. Civ. P. 12(b)(6) dismissal turns on

16 pleading, while summary judgment turns on evidence).  Further, the en banc decision

17 in *Skidmore*, 952 F.3d 1051 clarifies the requirements for a selection and arrangement

18 claim and governs the claim now.  *Mortimer*, 594 F.3d at 721 (intervening controlling

19 authority renders law of the case doctrine inapplicable).

20        Accordingly, Defendants properly raise that there is no merit to Plaintiffs'

21 alternative selection-and-arrangement theory.

22           **(i)**     **The Allegedly Copied Elements Are Not Protected as**

23                      **an Original Selection and Arrangement**

24        "[C]opyright protection [extends] to 'a combination of unprotectable

25 elements ... only if those elements are numerous enough and their selection and

26 arrangement original enough that their combination constitutes an original work of

27 authorship.'"  *Skidmore*, 952 F.3d at 1074 (quoting *Satava*, 323 F.3d at 811).  "Put

28 another way, what a selection and arrangement copyright protects is the *particular*

1    way in which the artistic elements form a coherent pattern, synthesis, or design."

2    *Skidmore*, 952 F.3d at 1074.

3         Here, Plaintiffs claim originality in the allegedly copied sequence of four short,

4    public domain phrases, "Playas, they gon' play," "haters, they gonna hate," "Ballers,

5    they gon' ball," and "Shot callers, they gonna call."  Facts 70, 94-95, 100-01, 104-05,

6    108-09.   While originality is a "low threshold, copyright *does* require at least a

7    modicum of creativity."   *Skidmore*, 952 F.3d at 1069.   Moreover, "[b]ecause many

8    works of art can be recast as compilations of individually unprotected constituent

9    parts," care must be taken that selection-and-arrangement claims are not "at variance

10   with maintaining a vigorous public domain."  *Id.* at 1075-76; *Rentmeester*, 883 F.3d

11   at 1117.   These considerations support the conclusion that *Playas'* sequence of four

12   bare, unprotected short phrases lacks sufficient originality.

13        However, the Court need not decide that issue because four public domain short

14   phrases are not "numerous enough … that their combination constitutes an original

15   work of authorship."  *Skidmore*, 952 F.3d at 1074 (quoting *Satava*, 323 F.3d at 811).

16   Plaintiffs have acknowledged the case law finding a greater number of unprotected

17   elements insufficient.   *See*, *e.g.*, *Satava*, 323 F.3d at 811-812 (six elements in

18   sculptural work not "numerous enough"); *Lamps Plus, Inc. v. Seattle Lighting Fixture*

19   *Co.*, 345 F.3d 1140, 1147 (9th Cir. 2003) (five elements in lamp insufficient).   But

20   Plaintiffs have argued that the requirement of numerous elements applies only to

21   physical objects.   *See*, *e.g.*, Pltfs' Supp. Memo. *re* Mtn. to Dismiss at 4:12-5:2.

22   *Skidmore* puts that argument to rest by reaffirming, in a music case, the requirement

23   of numerous elements and, in doing so, quoting *Satava* and finding that five public

24   domain musical elements fail to constitute an original selection and arrangement.

25   *Skidmore*, 952 F.3d at 1074; *see also Corbello v. Valli*, 974 F.3d 965, 974 n.2 (9th Cir.

26   2020) (historical facts and other unprotected elements in book not numerous enough);

27   *see also Masterson v. Walt Disney Co.*, 821 F. App'x 779, 782 (9th Cir. 2020) (alleged

28   copying of five unprotected elements in book of poems insufficient).

21

1    Accordingly, Plaintiffs' claim of an allegedly copied original selection
2  comprised of only four public domain elements fails.

3              **(ii)   *Shake It Off* Selects and Arranges the Unprotected**
4                       **Elements Differently**

5    Even if Plaintiffs could raise a genuine dispute as to whether four public domain
6  short phrases constitute an original selection and arrangement, the lyrics of *Shake It*
7  *Off* are not substantially similar to that claimed selection and arrangement.

8    "[A] selection and arrangement copyright is infringed only where the works
9  share, in substantial amounts, the 'particular,' *i.e.*, the 'same,' combination of
10 unprotectable elements." *Skidmore*, 952 F.3d at 1075 (quoting *Feist Publ'ns, Inc. v.*
11 *Rural Tel. Serv. Co.*, 499 U.S. 340, 349, 350-51 (1991)).  That plainly is not the case
12 here.

13   *Shake It Off* does not even use two of *Playas*' four public domain elements at
14 all: "ballers gonna ball" and "shot callers gonna call" simply do not appear in *Shake*
15 *It Off*.  Facts 123-28.  Also, *Playas*' four tautophrases are in an uninterrupted sequence
16 but *Shake It Off* has two tautophrases, followed by three lines of lyrics that do not
17 appear in *Playas*, followed by two more tautophrases that also do not appear in *Playas*.
18 Facts 129-33.  In short, *Playas* has a four-part lyrical sequence but *Shake It Off* does
19 not.  In addition, the player and hater phrases in *Playas* and *Shake It Off* are different –
20 *e.g.*, the unique repetition of "play" and "hate" in *Shake It Off* is completely absent
21 from *Playas*, and all the lyrics are set to different harmonies, rhythms, and melodies.
22 Facts 119-22, 48-68.  *Shake It Off* does not include "the 'particular,' *i.e.*, the 'same,'"
23 sequence of four public domain tautophrases present in *Playas*.  *Skidmore*, 952 F.3d
24 at 1075 (quoting *Feist*, 499 U.S. at 349, 350-51).  For that additional reason, there is
25 no genuine dispute that Plaintiffs' selection-and-arrangement theory fails.

26   Whether analyzed as musical works, literary works, or a claimed selection and
27 arrangement, *Shake It Off* and *Playas* are not substantially similar in protected
28 expression under the extrinsic test and summary judgment should be granted.

(c)   **Plaintiffs Also Fail to Raise a Genuine Dispute as to Substantial Similarity Probative of Copying**

    (1)   **The Requirement that Plaintiffs Prove Substantial Similarity Probative of Copying**

"[A]bsent copying, there can be no infringement of copyright, regardless of the extent of similarity." 2 NIMMER ON COPYRIGHT § 8.01[A]; *Skidmore*, 952 F.3d at 1064 ("[A] plaintiff must prove that a defendant copied the work.").  Copying is proven circumstantially by evidence of either (1) "striking similarity," or (2) access plus substantial similarities that are probative of copying.  *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019).

"Two works are strikingly similar when the similarities between them are so great that they are 'highly unlikely to have been the product of independent creation.'" *Id.* at 953 (quoting *Rentmeester*, 883 F.3d at 1124).  "In other words, as a matter of logic, the only explanation for the similarities between the two works must be 'copying rather than … coincidence, independent creation, or prior common source.'" 4 NIMMER ON COPYRIGHT § 13.02[B] (quoting *Skidmore*, 952 F.3d at 1064).  Plaintiffs do not claim *Playas* and *Shake It Off* are strikingly similar.  Facts 243-244.

As a result, to raise a genuine dispute as to whether copying occurred, Plaintiffs would have to present evidence of both access <u>and</u> substantial similarities probative of copying.  Further, the existence or degree of access does not affect the plaintiff's obligation to present evidence of substantial similarities probative of copying.  *Skidmore*, 952 F.3d at 1068-69 (inverse ratio rule rejected).  Because "access … in no way can prove substantial similarity" (*id.*), proving substantial similarities probative of copying is a separate and distinct requirement Plaintiffs must satisfy.

    (2)   **The Differences and Lack of Significant Similarity Is Consistent with Independent Creation, Not Copying**

Substantial similarities probative of copying "show[] that the similarities between the two works are due to 'copying rather than … coincidence, independent

23

1  creation, or prior common source.'" *Skidmore*, 952 F.3d at 1064 (quoting *Bernal v.*
2  *Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1052 (C.D. Cal. 2010)).
3  "A finding of such similarity may be based on the overlap of unprotectable as well as
4  protectable elements." *Skidmore*, 952 F.3d at 1064.  "They just need to be similarities
5  one would not expect to arise if the two works had been created independently."
6  *Rentmeester*, 883 F.3d at 1117.  Conversely, if the similarities are few or present in
7  other works, they fail to establish "copying rather than … coincidence, independent
8  creation, or prior common source." *Skidmore*, 952 F.3d at 1064 (alteration in original)
9  (quoting *Bernal*, 788 F. Supp. 2d at 1052); *Smith*, 84 F.3d at 1219 ("similarities that
10 plaintiffs attribute to 'copying' could actually be explained by the commonplace
11 presence of the same or similar motives within the relevant field.").

12        Here, Plaintiffs' claimed substantial similarities are <u>both</u> few <u>and</u> already
13 present in songs and popular culture – from television shows to clothing – when *Shake*
14 *It Off* was created in 2014.  Facts 245-299.  The only similar words are each songs'
15 respective variations of the public domain "players gonna play" and "haters gonna
16 hate" phrases that appear in multiple media in songs before 2014, including, for
17 example, Eric Church's 2013 *The Outsiders* ("the player's gonna play and a haters
18 gonna hate").  Fact 255.  Tautophrases are commonplace, including in music.
19 Fact 111.  Further, *Shake It Off* uses the preexisting "player gonna play" and "haters
20 gonna hate" phrases and the idea of tautophrases differently than *Playas* uses them.
21 Facts 119-22, 129-30, 133.  Also, it is undisputed that *Shake It Off*'s music, all of its
22 other lyrics, and the story told in the lyrics, are different from *Playas*.  Facts 48-68,
23 70-82, 143-44, 148-49.  While sharing the same title may be a similarity probative of
24 copying (*Benay*, 607 F.3d at 628), the two songs have different titles.

25        The undisputed fact that *Playas* and *Shake It Off* are different in all respects –
26 except only the use of preexisting player and hater phrases and the idea of
27 tautophrases, which uses are different in each song – is consistent with *Shake It Off*'s
28 having "been created independently" (*Rentmeester*, 883 F.3d at 1117) and fails to

1  prove "copying rather than … coincidence, independent creation, or prior common

2  source."  *Skidmore*, 952 F.3d at 1064 (alteration in original) (quoting *Bernal*, 788 F.

3  Supp. 2d at 1052).  As a result, Plaintiffs also fail to raise a genuine dispute as to

4  substantial similarity probative of copying.

5  **3.    CONCLUSION**

6        Plaintiffs and their expert admit that *Playas* and *Shake It Off* are very different

7  songs both in music and lyrics and the only similarity is a portion of lyrics with

8  different variations of two public domain tautophrases, plus two other completely

9  different tautophrases, all organized differently.  The extrinsic test establishes there is

10 no genuine dispute that, whether analyzed as musical works, as literary works, or

11 under a selection-and-arrangement theory, *Shake It Off* is not substantially similar in

12 protected expression to *Playas*.  That, alone, disposes of Plaintiffs' claim.

13       In addition, there is a second and separate defect: the presence of different

14 versions of two public domain tautophrases used differently in two songs, which also

15 are otherwise very different in music and lyrics, falls short of substantial similarity

16 probative of copying as opposed to independent creation.

17       Defendants respectfully submit that their Motion should be granted.

18

19 Dated: July 19, 2021

                                    _____/s/ Peter Anderson_____
20                                         Peter Anderson, Esq.
                                         Arleen Fernandez, Esq.
21                                    DAVIS WRIGHT TREMAINE LLP
                                       Attorneys for Defendants
22                                         TAYLOR SWIFT,
                                    KARL MARTIN SANDBERG,
23                                  KARL JOHAN SCHUSTER, SONY
                                     MUSIC PUBLISHING (US) LLC,
24                                  formerly known as Sony/ATV Music
                                    Publishing LLC, KOBALT MUSIC
25                                  PUBLISHING AMERICA INC., BIG
                                    MACHINE LABEL GROUP, LLC and
26                                  UNIVERSAL MUSIC GROUP, INC.

27

28