GERARD FOX LAW P.C.
Gerard P. Fox (SBN 151649)
gfox@gerardfoxlaw.com
Marina V. Bogorad (SBN 217524)
mbogorad@gerardfoxlaw.com
1880 Century Park East, Suite 1410
Los Angeles, CA 90067
Telephone: (310) 441-0500
Facsimile: (310) 441-4447

*Attorneys for Plaintiffs*
SEAN HALL D.B.A. GIMME SOME HOT SAUCE MUSIC AND NATHAN BUTLER D.B.A. FAITH FORCE MUSIC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SEAN HALL d.b.a. GIMME SOME HOT SAUCE MUSIC, *et al.*,

Plaintiffs,

vs.

TAYLOR SWIFT, *et al.*,

Defendants.

Case No. 2:17-cv-06882 MWF (ASx)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I. General Governing Principles ........ 3
II. Plaintiffs Have Raised Sufficient Issues of Material Fact on Substantial Similarity ........ 3
A. Defendants' Infringement as to Plaintiffs' Selection and Arrangement ........ 6
1. Plaintiffs' Selection and Arrangement is Original and Thus Protected ........ 7
2. Defendants' Chorus is Substantially Similar to Plaintiffs' Chorus ........ 13
B. Defendants' Infringement of Plaintiffs' Literary Work ........ 20
III. Plaintiffs' Similarity Showing is Sufficient to Infer Copying ........ 24

# TABLE OF AUTHORITIES

**Cases**

*ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405 (9th Cir. 2018) ... 16

*Accord N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031 (9th Cir. 1992) ... 8, 23

*Acuff-Rose Music, Inc. v. Campbell*, 972 F.2d 1429 (6th Cir. 1992) ... 16

*Allen v. Destiny's Child*, 2009 WL 2178676 (N.D. Ill. July 21, 2009) ... 11, 14, 17, 20

*Alvarez v. Hill*, 518 F.3d 1152 (9th Cir. 2008) ... 25

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ... 3

*Andreas Carlsson Prod. AB v. Barnes*, 2016 WL 11499657 (C.D. Cal. Apr. 14, 2016) ... 20, 24

*Art Attacks Ink, LLC v. MGA Ent., Inc.*, 2006 WL 8439847 (S.D. Cal. Nov. 1, 2006) ... 20

*Astor-White v. Strong*, 733 F. App'x 407 (9th Cir. 2018) ... 21

*Bach v. Forever Living Prod. U.S., Inc.*, 473 F. Supp. 2d 1127 (W.D. Wash. 2007) ... 4, 18

*Baxter v. MCA, Inc.*, 812 F.2d 421 (9th Cir. 1987) ... passim

*Benay v. Warner Bros. Ent.*, 607 F.3d 620 (9th Cir. 2010) ... 6, 21

*BMS Entm't/Heat Music LLC v. Bridges*, 2005 WL 1593013 (S.D.N.Y. July 7, 2005) ... 13

*Braham v. Sony/ATV Music Publ'g*, 2015 WL 7074571 (C.D. Cal. Nov. 10, 2015) ... 17

*Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267 (6th Cir. 2009) ... 12, 15, 21

*Bright Tunes Music Corp. v. Harrisongs Music, Ltd.*, 420 F. Supp. 177 (S.D.N.Y. 1976) ... 11

*C&SM Int'l. v. JollyChic, Inc.*, 2019 WL 926328 (C.D. Cal. Jan. 8, 2019) ... 1

*Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*,
150 F.3d 132 (2d Cir. 1998) .......... 22

*Cavalier v. Random House, Inc.*,
297 F.3d 815 (9th Cir. 2002) .......... 18, 21

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 3

*Copeland v. Bieber*,
789 F.3d 484 (4th Cir. 2015) .......... 13, 15

*Corbello v. Valli*,
974 F.3d 965 (9th Cir. 2020) .......... 10

*Danjaq, LLC v. Universal City Studios, LLC*,
2014 WL 7882071 (C.D. Cal. Oct. 2, 2014) .......... 6, 13

*de Becdelievre v. Anastasia Musical LLC*,
2018 WL 1633769 (S.D.N.Y. Apr. 2, 2018) .......... 21

*Desire, LLC v. Manna Textiles, Inc.*,
986 F.3d 1253 (9th Cir. 2021) .......... 4, 7

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*,
924 F. Supp. 1559 (S.D. Cal. 1996) .......... 9, 19, 22

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
109 F.3d 1394 (9th Cir. 1997) .......... 9, 22

*Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc.*,
99 F. App'x 911 (Fed. Cir. 2004) .......... 5

*Elsmere Music, Inc. v. Nat'l Broad. Co.*,
482 F. Supp. 741, 744 (S.D.N.Y. 1980) .......... 12

*Feist Publications, Inc. v. Rural Telephone Service Co. Inc.*,
499 U.S. 340 (1991) .......... 3, 7, 8, 13

*Fisher v. Dees*,
794 F.2d 432 (9th Cir. 1986) .......... 15

*Fodor v. Los Angeles Unified Sch. Dist.*,
2014 WL 12235424 (C.D. Cal. June 3, 2014) .......... 9

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.*,
462 F.3d 1072 (9th Cir. 2006) .......... 18, 24

*Glass v. Sue*,
2010 WL 4274581 (C.D. Cal. Oct. 22, 2010) .......... 9

*Gray v. Perry*,
2018 WL 3954008 (C.D. Cal. Aug. 13, 2018) .......... 12, 14, 20, 21

*Greene v. Ablon*,
794 F.3d 133 (1st Cir. 2015) ..... 9

*Greyhound Computer Corp. v. International Business Machines Corp.*,
559 F.2d 488 (9th Cir. 1977) ..... 5

*Hall v. Swift*,
2020 WL 5358390 (C.D. Cal. Sept. 2, 2020) ..... 10

*Hall v. Swift*,
786 F. App'x 711 (9th Cir. 2019) ..... 8

*Hayes v. Minaj*,
2012 WL 12887393 (C.D. Cal. Dec. 18, 2012) ..... 21

*Heim v. Universal Pictures Co.*,
154 F.2d 480 (2d Cir. 1946) ..... 11, 13, 25

*Jacobsen v. Deseret Book Co.*,
287 F.3d 936 (10th Cir. 2002) ..... 4

*Jada Toys, Inc. v. Mattel, Inc.*,
518 F.3d 628 (9th Cir. 2008) ..... 5

*Jarvis v. A & M Recs.*,
827 F. Supp. 282 (D.N.J. 1993) ..... 11

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ..... 6, 7

*Kouf v. Walt Disney Pictures & Television*,
16 F.3d 1042 (9th Cir. 1994) ..... 24

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
676 F.3d 841 (9th Cir. 2012) ..... passim

*Landsberg v. Scrabble Crossword Game Players, Inc.*,
736 F.2d 485 (9th Cir. 1984) ..... 4

*Leadsinger, Inc. v. BMG Music Pub.*,
512 F.3d 522 (9th Cir. 2008) ..... 17

*Lippitt v. Raymond James Fin. Servs., Inc.*,
340 F.3d 1033 (9th Cir. 2003) ..... 18

*Lotus Dev. Corp. v. Paperback Software Int'l*,
740 F. Supp. 37 (D. Mass. 1990) ..... 8

*M. Kramer Mfg. Co. v. Andrews*,
783 F.2d 421 (4th Cir. 1986) ..... 9

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
922 F.3d 946 (9th Cir. 2019) ..... 6

*Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975 (C.D. Cal. 2015) ........ 18

*Masterson v. Walt Disney Co.*, 821 F. App'x 779 (9th Cir. 2020) ........ 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ........ 3

*May v. Sony Music Ent.*, 399 F. Supp. 3d 169 (S.D.N.Y. 2019) ........ 11, 15, 21, 22

*Metcalf v. Bochco*, 294 F.3d 1069 (9th Cir. 2002) ........ 13, 14

*Morrill v. Stefani*, 338 F. Supp. 3d 1051 (C.D. Cal. 2018) ........ 21

*Murray v. Cable Nat. Broadcasting Co.*, 86 F.3d 858 (9th Cir. 1996) ........ 11

*Newton v. Diamond*, 204 F. Supp. 2d 1244 (C.D. Cal. 2002) ........ 12

*Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2004) ........ 12, 18, 22

*Nichols v. Universal Pictures Corp.*, 45 F.2d 119 (2d Cir. 1930) ........ 5, 19

*O'Connor v. Cindy Gerke & Assocs., Inc.*, 300 F. Supp. 2d 759 (W.D. Wis. 2002) ........ 18

*Phillips v. Cohen*, 400 F.3d 388 (6th Cir. 2005) ........ 5

*Positive Black Talk, Inc. v. Cash Money Recs., Inc.*, 2003 WL 1921999 (E.D. La. Apr. 21, 2003) ........ 11

*Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010) ........ 5

*Raffoler, Ltd. v. Peabody & Wright, Ltd.*, 671 F. Supp. 947 (E.D.N.Y. 1987) ........ 9

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148 (9th Cir. 2012) ........ 4, 25

*Regents of Univ. of California v. Dako N. Am., Inc.*, 2009 WL 1083446 (N.D. Cal. Apr. 22, 2009) ........ 5

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018) ........ 6

*Rice v. Fox Broadcasting Co.*, 330 F.3d 1170 (9th Cir. 2003) .......... 5

*Ricketts v. CBS Corps.*, 2020 WL 3124218 (C.D. Cal. Mar. 19, 2020) .......... 23

*Roberts v. Gordy*, 2015 WL 12911328 (S.D. Fla. Sept. 15, 2015) .......... 17

*Russell v. Walmart Inc.*, 2020 WL 9073046 (C.D. Cal. Oct. 16, 2020) .......... passim

*Salinger v. Random House, Inc.*, 811 F.2d 90 (2d Cir. 1987) .......... 14

*Santrayll v. Burrell*, 1996 WL 134803 (S.D.N.Y. Mar. 25, 1996) .......... 11

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003) .......... 10

*Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123 (C.D. Cal. 2015) .......... 5

*Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990) .......... passim

*Sheldon v. Metro–Goldwyn Pictures Corp.*, 81 F.2d 49 (2d Cir. 1936) .......... 1

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977) .......... 19

*Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC*, 560 F.3d 53 (1st Cir. 2009) .......... 5, 8

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) .......... passim

*Spry Fox LLC v. LOLApps Inc.*, 2012 WL 5290158 (W.D. Wash. Sept. 18, 2012) .......... 6

*Straughter v. Raymond*, 2011 WL 3651350 (C.D. Cal. Aug. 19, 2011) .......... 12, 14, 20

*Stromback v. New Line Cinema*, 384 F.3d 283 (6th Cir. 2004) .......... 5

*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004) .......... passim

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000) .......... passim

*Tin Pan Apple, Inc. v. Miller Brewing Co.*, 1994 WL 62360 (S.D.N.Y. Feb. 24, 1994) .......... 11

*TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588 (S.D.N.Y. 2013) .......... 11, 22

*Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327 (9th Cir. 1983) .......... 4

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743 (W.D. Tex. 2019) .......... 18

*Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980 (9th Cir. 2017) .......... 24

*United States v. Henderson*, 961 F.2d 880 (9th Cir. 1992) .......... 7

*Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354 (9th Cir. 1947) .......... 7, 18

*Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.*, 121 F.3d 1332 (9th Cir. 1997) .......... 3

*VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871 (9th Cir. 2016) .......... 22

*Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513 (S.D.N.Y. 2008) .......... 9

*Williams v. Bridgeport Music, Inc.*, 2014 WL 7877773 (C.D. Cal. Oct. 30, 2014) .......... 20

*Williams v. Gaye*, 895 F.3d 1106 (9th Cir. 2018) .......... 16, 18, 21

*Ziller v. Emerald Art Glass*, 2007 WL 465591 (W.D. Pa. Feb. 12, 2007) .......... 6

*Zindel as Tr. for David Zindel Tr. v. Fox Searchlight Pictures, Inc.*, 815 F. App'x 158 (9th Cir. 2020) .......... 1, 4

**Other Authorities**

1 NIMMER ON COPYRIGHT § 2.05[C] (2021) .......... 17

1 NIMMER ON COPYRIGHT, § 2.01[B][1] (2021) .......... 7

4 NIMMER ON COPYRIGHT, § 13.03[A] (2021) .......... 4

4 NIMMER ON COPYRIGHT, § 13.03[A][2] (2021) .......... 4, 6, 13

4 NIMMER ON COPYRIGHT, § 13.03[B][1] (2021) .......... 1, 6

Melissa Eckhause, *Digital Sampling v. Appropriation Art: Why Is One Stealing and the Other Fair Use? A Proposal for A Code of Best Practices in Fair Use for Digital Music Sampling*, 84 Mo. L. Rev. 371 (2019) .......... 22

Russ VerSteeg, "Rethinking Originality," 34 Wm. & Mary L. Rev. 801, 873 (1993) .......... 8

**Rules**

Fed. R. Civ. P. 56 .......... 3

"[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro–Goldwyn Pictures Corp*., 81 F.2d 49, 56 (2d Cir. 1936) (L. Hand, J.).[1] As Professor Nimmer explains, "[i]t is ***entirely immaterial*** that, in many respects, plaintiff's and defendant's works are dissimilar, if in other respects, similarity as to a substantial element of plaintiff's work can be shown." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 851 (9th Cir. 2012), citing 4 NIMMER ON COPYRIGHT, § 13.03[B][1] (2021) (hereinafter, "NIMMER"); *accord C&SM Int'l. v. JollyChic, Inc*., 2019 WL 926328, at *4 (C.D. Cal. Jan. 8, 2019) (Fitzgerald, J.) (relying on the same principle). These long-standing maxims of copyright jurisprudence render much of the motion at bar, including the expert testimony it touts, effectively irrelevant. This is especially so, given that the Ninth Circuit has "long held that [s]ummary judgment is ***not highly favored*** on questions of substantial similarity." *Zindel as Tr. for David Zindel Tr. v. Fox Searchlight Pictures, Inc*., 815 F. App'x 158, 159 (9th Cir. 2020) (also warning that courts must be "***cautious***" in such dispositions), citing *L.A. Printex*, 676 F.3d at 848; *see also Russell v. Walmart Inc*., 2020 WL 9073046, at *10 (C.D. Cal. Oct. 16, 2020) (Fitzgerald, J.) (same).

Plaintiffs allege that Defendants infringed their four-part "lyrical sequence" of groups of actors engaging in the activities named after those actors to express a familiar truism in a new way: that people should stay true to themselves despite what others may say or do. As such, the protected expression at issue here is the ***combination*** of four tautological phrases, selected and arranged in a parallel sequence, which Defendants copied to express the same idea by using the exact same order, subjects and predicates for half of the copied sequence and closely mimicking the structure for the second part. Plaintiffs' expert finds the allegedly

[1] All internal alterations, quotation marks, footnotes and citations herein are omitted, and all emphasis is added unless otherwise noted. All "D-UF" references are to Defendants' Statement of Uncontroverted Facts and Plaintiffs' Response thereto as reflected in Plaintiffs' Statement of Genuine Dispute, filed herewith. All "P-AUF" references are to Plaintiffs' Statement of Additional Uncontroverted Facts, submitted as part of Plaintiffs' Statement of Genuine Dispute. All "D-Ex." references are to Defendants' exhibits, which are consequently numbered despite being submitted through different supporting declarations. All "P-Ex." references are to Plaintiffs' exhibits, which adopt the same numbering system for the Court's convenience. P-Exs. 1-5 are to the Declaration of Loren Yukio Kajikawa ("Kajikawa Decl."), and P-Exs. 6-21 are to the Declaration of Gerard P. Fox.

infringed expression to be nothing short of "an original innovation" and aptly summarizes the infringement by opining that Defendants' chorus "not only uses the same words and the same phrases, but it does so in combination and as part of a similar four-part poetic sequence that expresses a similar idea." (P-Ex. 4 at ¶¶ 28 & 55.) Nothing more is required to create an issue of material fact as to whether Defendants' chorus is substantially similar.

As for purportedly contrary evidence, Plaintiffs' expert dismisses much of the expert opinions provided by Defendants as "intended to distract from major similarities between the two songs" (P-Ex. 4 at ¶¶ 11 & 28). Notably, none of the cases analyzing song lyrics, as opposed to other literary works, even employs the comparison elements analyzed by Defendants' lyric expert, let alone injects the foreign considerations of musical dissimilarities as Defendants' musicology expert attempts to do where, as here, the music is not part of the infringement claim. Indeed, Professor Ferrara's concession that lyrics can be substantially similar despite musical differences largely neutralizes his opinions offered in this case.

Certainly, expanding the analysis ***beyond*** the expression claimed to be infringed (namely, the four-part poetic sequence at issue) would maximize the sheer volume of differences to obfuscate the real issue, which appears to be the leitmotif of Defendants' entire motion. However, when the inquiry is properly framed to focus ***on the creative expression that Plaintiffs actually claim to have been infringed***, Defendants' experts have little to offer, while Plaintiffs' expert is clearly impressed with "remarkably similar words and a remarkably similar four-part poetic sequence." (P-Ex. 4 at ¶ 26.) And while those words may be truisms on their own, when combined, arranged and sequenced by Plaintiffs, they came to represent innovative "poetic wordplay" on a familiar idea in a new "catchy" way that is "the essence of good songwriting," as it embodies "a poetic use of language that transcends the original meaning" of the words it combines. (P-Exs. 2 at ¶ 10 & 4 at ¶ 49.) It is that innovative poetic wordplay that Defendants copied, thus infringing the creative and original "***particular way of expressing*** that idea" rather than the idea itself. (P-Ex. 4 at ¶¶ 11 & 39-40 (also explaining that when tautophrases are used as "building blocks" of a particular poetic combination, that combination forms a "creative and original" expression).) At the very least, the record here

thus creates a triable issue of fact on the claimed similarity, prompting the inescapable conclusion that "the ear of the court must yield to the ears of jurors." *Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987).

## I. General Governing Principles

This Court "applies *Anderson*, *Celotex*, and their Ninth Circuit progeny" in deciding a summary judgment motion.[2] Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As such, in ruling on a motion for summary judgment, the Court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249. The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. *See Celotex*, 477 U.S. at 323. If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *See Anderson*, 477 U.S. at 250. When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion."[3] A court should not grant a motion for summary judgment unless the record shows that a reasonable jury could not find for the nonmoving party. *See Matsushita*, 475 U.S. at 587.

The proponent of a copyright infringement claim must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[4] Plaintiffs' ownership is not disputed on this motion.

## II. Plaintiffs Have Raised Sufficient Issues of Material Fact on Substantial Similarity

"Substantial similarity is not an element of a claim of copyright infringement. Rather,

---

[2] *Russell*, 2020 WL 9073046, at *7, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986), and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.*, 121 F.3d 1332, 1335 (9th Cir. 1997).

[4] *Feist Publications, Inc. v. Rural Telephone Service Co. Inc.*, 499 U.S. 340, 361 (1991); *see also Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004).

it is a doctrine that helps courts adjudicate whether copying of the constituent elements of the work that are original actually occurred when an allegedly infringing work appropriates elements of an original without reproducing it *in toto*." *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012).[5]

As discussed, the Ninth Circuit has "long held that [s]ummary judgment is not highly favored on questions of substantial similarity." *Zindel,* 815 F. App'x at 159 (also warning that courts must be "cautious" in such dispositions), citing *L.A. Printex*, 676 F.3d at 848. This is because "the determination of the extent of similarity that will constitute a substantial, and hence infringing, similarity presents one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations." NIMMER §13.03 [A]. Accordingly, as "[n]o easy rule of thumb can be stated as to the quantum of fragmented literal similarity permitted without crossing the line of substantial similarity," whether works are substantially similar is "a classic jury question."[6]

To decide whether two works are substantially similar, the Ninth Circuit generally employs a two-part analysis consisting of an objective extrinsic test and a subjective intrinsic test. *See Swirsky*, 376 F.3d at 845. "For the purposes of summary judgment, only the extrinsic test is important because the subjective question whether works are intrinsically similar must be left to the jury." *Id.* "As it has evolved, … the extrinsic test now objectively considers

---

[5] "Before analyzing substantial similarity, we determine whether a copyright is entitled to 'thin' or 'broad' protection." *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1260 (9th Cir. 2021). The scope of protection depends on "the breadth of the possible expression" of a work's ideas. *Id.* at 913. "If there's a wide range of expression ..., then copyright protection is 'broad,' and a work will infringe if it is "substantially similar" to the copyrighted work." *Id.* at 913-14. "Some ideas can be expressed in myriad ways, while others allow only a narrow range of expression. Fictional works generally fall into the first category." *Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485, 488 (9th Cir. 1984); *see also Bach v. Forever Living Prod. U.S., Inc.*, 473 F. Supp. 2d 1127, 1136 (W.D. Wash. 2007) ("[T]here are limitless metaphors for the ideas of achievement, perseverance, and enlightenment. The unique expression of those ideas through the story of Jonathan Livingston Seagull is protectable."). As a work of fiction, the lyrical sequence at issue here is thus entitled to "broad" protection. In any event, since Defendants analyze the alleged infringement in terms of "substantial similarity," they do not appear to dispute the scope of protection on this Motion.

[6] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 943 (10th Cir. 2002), citing NIMMER § 13.03[A][2]; *accord Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 n.6 (9th Cir. 1983) ("Since substantial similarity is usually an extremely close question of fact, summary judgment has traditionally been disfavored in copyright litigation.").

whether there are substantial similarities in *both* ideas and expression…."[7] It "requires that the plaintiff identify concrete elements based on objective criteria" and "often" requires analytical dissection of a work and expert testimony. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000).

However, "[i]n performing the substantial similarity analysis, a court should be careful not to over-dissect the plaintiff's work, causing it to ignore the plaintiff's protectable expression." *Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC*, 560 F.3d 53, 59 (1st Cir. 2009). Moreover, the Court is not required to consider expert testimony—especially, where, as here, the comparison involves "a literary work aimed at a general audience, [where] expert testimony will seldom be *necessary* to determine substantial similarity."[8] To the extent the Court considers the expert testimony in the case, it is, once again, confronted with a classic jury question: weighing the credentials, methodology and credibility of the respective experts.[9] This is why any classic 'battle of the experts' … renders summary judgment improper."[10] After all, "[w]here reasonable minds could differ on the issue of substantial

---

[7] *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 637 (9th Cir. 2008) (original emphasis); *see also Russell*, 2020 WL 9073046, at *10 (reasoning that summary judgment on the issue of substantial similarity is only appropriate where "no reasonable juror could find substantial similarity of ideas and expression").

[8] *Stromback v. New Line Cinema*, 384 F.3d 283, 295-96 (6th Cir. 2004), citing, *inter alia*, *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 123 (2d Cir. 1930) (L. Hand, J.) (reasoning that expert testimony "cumbers the case and tends to confusion, for the more the court is led into the intricacies of dramatic craftsmanship, the less likely it is to stand upon the firmer, if more naive, ground of its considered impressions upon its own perusal") (emphasis and alteration in original); *accord Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1147 (C.D. Cal. 2015) (rejecting "asserti[on] that the court could not conduct the extrinsic test used to assess copyright infringement without expert opinion to guide it. There is no authority for this proposition."), citing *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003).

[9] *See Greyhound Computer Corp. v. International Business Machines Corp.*, 559 F.2d 488, 507 n.41 (9th Cir. 1977); *accord Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). For purposes of this Motion, Defendants have accepted Professor Kajikawa's qualifications (*see* Mot. at 5 n.3). Although Defendants attempt to limit Professor Kajikawa's opinions by painting him as an expert in "race and politics" (Mot. at 5:9), Professor Kajikawa's studies and education are in musicology, and that is the discipline he applied in comparing the two sets of lyrics at issue. (*See* D-UF 137 (Pl. Resp.).) Notably, although this is the first time that Professor Kajikawa has been designated as an expert witness, Professor Lewis, Defendants' literary expert, is a first-time expert witness as well. (*See* D-UF 141 (Pl. Resp.).)

[10] *Regents of Univ. of California v. Dako N. Am., Inc.*, 2009 WL 1083446, at *15 (N.D. Cal. Apr. 22, 2009), citing *Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc.*, 99 F. App'x 911, 920 (Fed. Cir. 2004); *accord Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005) (reversing summary judgment and observing that "competing expert opinions present the

similarity, … summary judgment is improper." *Russell*, 2020 WL 9073046, at *10.

The critical question for any substantial similarity analysis is whether the similarity relates to a substantial portion of ***plaintiff***'s work— not whether such material constitutes a substantial portion of defendant's work." NIMMER § 13.03[A][2]. In the same vein, "[i]t is ***entirely immaterial*** that, in many respects, plaintiff's and defendant's works are dissimilar, if in other respects, similarity as to a substantial element of plaintiff's work can be shown." *L.A. Printex*, 676 F.3d at 851, citing NIMMER § 13.03[B] [1][a]. Indeed, "a court must focus on what is similar, not what is different, when comparing two works."[11]

**A. <u>Defendants' Infringement as to Plaintiffs' Selection and Arrangement</u>**

"We do not have a well-defined standard for assessing when similarity in selection and arrangement becomes 'substantial'" or striking, and in truth no hard-and-fast rule could be devised to guide determinations that will necessarily turn on the unique facts of each case."[12] "The best we can do is borrow from the standard Judge Learned Hand employed in a case involving fabric designs: The two [works'] selection and arrangement of elements must be similar enough that 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them.'"[13] Indeed, in considering a claim of infringement of a combination of unprotected elements, the Court is "guided by relatively little precedent."[14]

---

'classic battle of the experts' and it [is] up to a jury to evaluate what weight and credibility each expert opinion deserves") (original alteration); *see also Ziller v. Emerald Art Glass*, 2007 WL 465591, at *18 (W.D. Pa. Feb. 12, 2007) ("[T]he Court cannot resolve the 'battle of the experts' on the issue of substantial similarity in the context of deciding motions for summary judgment. Whether the two works are so substantially similar that one could not have been independently created but must have been copied from the other will have to be determined by the trier of fact.").

[11] *Danjaq, LLC v. Universal City Studios, LLC*, 2014 WL 7882071, at *5 (C.D. Cal. Oct. 2, 2014), citing *Spry Fox LLC v. LOLApps Inc*., 2012 WL 5290158, at *6 (W.D. Wash. Sept. 18, 2012) (also observing that "a writer who appropriates the plot of *Gone with the Wind* cannot avoid copyright infringement by naming its male protagonist 'Brett Cutler' and making him an Alaskan gold miner instead of a southern gentleman"); *accord Benay v. Warner Bros. Ent.*, 607 F.3d 620, 624 (9th Cir. 2010) (observing that "[t]he [extrinsic] test focuses on articulable similarities").

[12] *Malibu Textiles, Inc. v. Label Lane Int'l, Inc*., 922 F.3d 946, 953 (9th Cir. 2019); *see also Baxter*, 812 F.2d at 425 (citing "the fundamental notion that no bright line rule exists as to what quantum of similarity is permitted before crossing into the realm of substantial similarity").

[13] *Kirk Kara Corp. v. W. Stone & Metal Corp*., 2020 WL 5991503, at *3 (C.D. Cal. Aug. 14, 2020), citing *Rentmeester v. Nike, Inc*., 883 F.3d 1111, 1121 (9th Cir. 2018).

[14] *Swirsky*, 376 F.3d at 848-49 (acknowledging that the "extrinsic test provides an

"[E]ach allegation of infringement [is] unique"—as such, it must be assessed *ad hoc*.[15]

### 1. **Plaintiffs' Selection and Arrangement is Original and Thus Protected**

"It is well-established … that '[o]riginal selection, coordination, and arrangement of unprotectible elements may be protectible expression' if the ***combination*** is sufficiently original."[16] "Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying."[17] This concept of originality has been echoed by courts and commentators alike: "Courts and commentators time and again have restated the fundamental position that

---

awkward framework to apply to copyrighted works like music" and that "no one magical combination of [compositional elements] will automatically substantiate a musical infringement suit").

[15] *Id.* at 849; *accord Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990) (analyzing literary works and observing that "[i]t is … impossible to articulate a definitive demarcation that measures when the similarity between works involves copying of protected expression; decisions must inevitably be *ad hoc*").

[16] *Kirk*, 2020 WL 5991503, at *3, citing, *inter alia*, *L.A. Printex Indus., Inc.*, 676 F.3d at 849; *accord Feist*, 499 U.S. at 358 (when affording copyright protection to a combination of unoriginal elements, "the principal focus should be on whether the selection, coordination, and arrangement are sufficiently original to merit protection").

[17] *Desire*, 986 F.3d at 1260-61 (concluding that the fact "[t]hat the Subject Design may not be novel is immaterial to the question whether it is 'original'"), citing *Feist*, 499 U.S. at 345; *accord* 1 NIMMER ON COPYRIGHT, § 2.01[B][1] at n.31 (2021) (citing legislative history in support of the proposition that the "standard [of originality] does not include requirements of novelty … and there is no intention to enlarge the standard of copyright protection to require them"); *but see Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1075 (9th Cir. 2020) (in *dicta*, requiring a "novel" arrangement for a work to qualify as protected selection and arrangement).

The Court need not resolve the apparent tension on this issue between the en banc decision in *Skidmore* and the later Ninth Circuit's opinion in *Desire*. Since the issue in *Skidmore* was an omission of a jury instruction on "selection and arrangement" liability, the court's conclusion that plaintiff's "failure to properly invoke a selection and arrangement argument is a death knell for Skidmore's request for a selection and arrangement instruction" renders *dicta* its discussion of what constitutes protectable selection and arrangement. *Id.* at 1076 (concluding that plaintiff "is not entitled to an instruction based on a legal theory that was not presented to the jury"); *cf. United States v. Henderson*, 961 F.2d 880, 882 (9th Cir. 1992) (defining "dicta" as language that is "unnecessary to [the court's] its holding"). In any event, to the extent *Skidmore* is in conflict on this issue with the Supreme Court's decision in *Feist*, the latter controls. Notably, the *Skidmore* court itself is not consistent on this point, since it also found that the "concept" that "the 'original' part of a work need not be new or novel" is "embrace[d]" in the jury instruction's "reference to 'minimal creativity.'" 952 F.3d at 1072. Furthermore, the *Skidmore* court relied on *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 363 (9th Cir. 1947), for its puzzling statement of novelty requirement, yet the court in *Universal Pictures* mandated no such rule. Rather, the *Universal Pictures* court merely observed that "originality was displayed in taking commonplace material and acts and making them into a new combination and novel arrangement which is protectable by copyright." *Id.* In other words, it held that a novel combination is protectable but never opined that novelty is a required element for protection to apply in the first place.

copyright originality means independent creation and not novelty, uniqueness, or artistic merit." Russ VerSteeg, "Rethinking Originality," 34 Wm. & Mary L. Rev. 801, 873 & n.319 (1993) (collecting authorities). As one court put it, "It is axiomatic that the designation 'original' is not intended to be limited to works that are novel or unique. Rather, the word 'original,' which was 'purposely left undefined' by Congress, refers to works that have been 'independently created by an author,' ***regardless of their literary or aesthetic merit, or ingenuity, or qualitative value***." *Lotus Dev. Corp. v. Paperback Software Int'l*, 740 F. Supp. 37, 48 (D. Mass. 1990). As long as the expression at issue exhibits "minimal degree of creativity," which is an "extremely low" threshold, as "even a slight amount will suffice," the legal concept of originality is satisfied.[18]

Defendants take issue with the four-part sequence's originality here by asserting that the Ninth Circuit's opinion in this case only addressed its *plausibility* rather than any proof thereof. (*See* Mot. at 20:5-11, citing *Hall v. Swift*, 786 F. App'x 711 (9th Cir. 2019).) But since the Ninth Circuit held, as a matter of law, that the "six-word phrase" and the "four-part lyrical sequence" at issue present a plausibly protectable expression, and Plaintiffs' expert witness agrees that they do as a matter of objective fact, since "this poetic sequence is an ***original innovation***" (P-Ex. 4 at ¶ 28; *accord* P-AUF 2; D-UF (Pl. Resp.) 28-30), nothing further is required to proceed on this issue to the jury. This is especially so given that the Ninth Circuit arrived at its legal conclusion that the work exhibits sufficient plausible originality "[e]ven taking into account the matters of which the district court took judicial notice," *Hall*, 786 F. App'x at 712, which included many of the same examples of playa/hater phrases in prior art that Defendants' expert witnesses considered on this Motion.[19]

---

[18] *Feist*, 499 U.S. at 345 (also observing that "[t]he vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be"); *see also Situation Mgmt.*, 560 F.3d at 60 (holding that "the district court erroneously treated copyright law's originality requirement as functionally equivalent to a novelty standard" by denying originality based on its findings that the works were "filled with generalizations, platitudes, and observations of the obvious" and concluding that "neither the works' absolute novelty nor their creative value determines whether they are original for purposes of copyright protection").

[19] *Accord N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1034-35 (9th Cir. 1992) (reversing summary judgment on the issue of insufficient creativity as distinguished from prior art: "The district court did not focus on the critical distinction between the idea and

In fact, Defendants do not even cite any contrary evidence on the issue of originality of this work when analyzed as a protectable selection and arrangement. (*See* Mot. at 20-22.) This is a tacit admission that any such opinion would be irrelevant to the extent it employs anything higher than the "minimal" legal standard for originality, which is famously low. In fact, nowhere in the Defendants' proposed Statement of Undisputed Facts do they contend that the ***combination*** of the four phrases (as opposed to each phrase individually) is unoriginal.[20]

---

expression of the idea that is so fundamental to our copyright law. While the 'idea' of using bounded geometric figures in a pattern is clearly one which the plaintiff borrowed, it is by no means clear that the 'expressions' of that idea … are substantially similar and the differences merely trivial.").

[20] It is noteworthy that although Professor Lewis offers opinions on the sequence's originality, he does it in the context of analyzing the it as a work of literature, without opining on any selection and arrangement qualities thereof. *Cf. M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 439 (4th Cir. 1986) (collecting cases and concluding that "[i]f 'true artistic skill' were an absolute requirement for *all* copyrights[,] … many works, such as directories …, or the maps …, or perhaps even flashing cards, could not have been copyrighted") (original emphasis). Thus, for example, in his world, combining various preexisting literary devices, such as picking four tautological phrases and arranging them through parallel lyrics, is in itself unremarkable—yet, as a legal matter, this forms a sufficiently original creation of a new combination of unprotected elements. *See, e.g., Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 924 F. Supp. 1559, 1564 (S.D. Cal. 1996) (finding that author's "use of … literary devices represents several significant expressive choices protected by copyright, and appropriated in their entirety in the infringing work"), *aff'd*, 109 F.3d 1394 (9th Cir. 1997); *see also Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 547 (S.D.N.Y. 2008) (finding that author's play on "literary devices" was a protected expression). (*Accord* Pl. Ex. 4 at ¶ 53 ("The plaintiffs are not suing because they claim copyright over the use of parallelism in general but because of the concrete similarities between the way a set of specific parallelisms are being used poetically in both songs.").)

In the same vein, Professor Lewis largely discounts originality based on the cited examples of prior art, yet this is meaningless for purposes of assessing originality of Plaintiffs' ***combination*** of the ***unprotected*** elements found in this prior art, and it is undisputed that none of those works exhibits the same ***combination*** of the playa/hater phrases, selected and arranged in the same way as Plaintiffs had done in their work; indeed, Professor Morgan's analysis in this respect is similarly flawed. (*See* D-Ex. 6 at 2-10; D-Ex. 4 at 1.) *See also Swirsky*, 376 F.3d at 851 (where prior art is not "identical" to the allegedly infringed song, "[t]here is … a triable issue whether there are more than 'merely trivial' differences between the two works); *cf. Fodor v. Los Angeles Unified Sch. Dist.*, 2014 WL 12235424, at *13 (C.D. Cal. June 3, 2014) (holding that copied text passages, although involving "'ordinary' words and word combinations," gave rise to copyright protection); *Glass v. Sue*, 2010 WL 4274581, at *4 (C.D. Cal. Oct. 22, 2010) (finding that the "He Says, She Says" lists, including their phrasing and arrangement, demonstrate the minimum threshold of creativity, even though "[t]he phrases themselves may be considered ordinary phrases that are common to this particular subject matter"); *Raffoler, Ltd. v. Peabody & Wright, Ltd.*, 671 F. Supp. 947, 951 (E.D.N.Y. 1987) (holding that while advertisement contains ordinary phrases, it is protected as a whole because it adds up to an original creation); *accord Greene v. Ablon*, 794 F.3d 133, 160 (1st Cir. 2015). Notably, there is no independent analysis that Defendants' chorus is creatively closer to prior art than to Plaintiffs' chorus. *See Swirsky,*

As such, Defendants are left with challenging originality of the selection and arrangement at issue here ***solely as a matter of law***. (*See* Mot. at 20-22.) They do so by pointing to *Skidmore* as an "intervening" controlling authority that somehow reinstated the numerosity formulas that this Court already rejected as inappropriate in the context of selection and arrangement of literary elements. *See Hall v. Swift*, 2020 WL 5358390, at *3-4 (C.D. Cal. Sept. 2, 2020), citing, *inter alia*, *Shaw*, 919 F.2d at 1360. Since this Court ruled after the *Skidmore* opinion came out, there is nothing "intervening" about it: in fact, the Court specifically cited to *Skidmore* as only overruling *Shaw* on ***other*** grounds. *See Hall*, 2020 WL 5358390, at *3.[21] Moreover, as noted above, the *Skidmore* court's discussion of what constitutes a protectable selection and arrangement is *dicta*. Most importantly, it applied the "representational objects" formulas to ***music rather than words*** and, as such, cannot signify any departure from *Shaw*. *Compare Skidmore*, 952 F.3d at 1057 & 1074 (observing that the infringement claim was limited to musical notes and citing *Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003), a representational object case, for the stated numerosity requirement), with *Hall*, 2020 WL 5358390, at *3 ("[T]he Court is persuaded by Plaintiffs' arguments that the Ninth Circuit has long distinguished between literary works and physical objects with respect to determining the number of unprotectable elements required to result in a protectable composition."), citing *Shaw*, 919 F.2d at 1360.[22] (*See also* Pl. Ex. 2 at ¶ 19 (cautioning

---

376 F.3d at 850-51 (expert's testimony not sufficient to show lack of originality where she failed to introduce independent evidence that plaintiff's song was more similar to the prior art than defendant's song, and testimony that the allegedly infringed elements were "commonplace in the genre" is insufficient to show that there is not a triable issue on originality). Indeed, it speaks volumes that Professor Lewis does not include his originality opinions when summarizing his views in the sworn declaration submitted in support of this Motion, and Professor Morgan similarly omits any originality assessments from the conclusions set forth in her sworn declaration.

[21] Indeed, Defendants cited *Skidmore* throughout their supplemental motion to dismiss briefing back in August 2020 for essentially the same proposition as they now reassert here (*see* Dkt. No. 59).

[22] This Court found it important that none of Defendants' cases on this point dealt with literary works, other than *Masterson v. Walt Disney Co*., 821 F. App'x 779 (9th Cir. 2020), which the Court specifically distinguished as inconsistent with *Shaw*. *See Hall*, 2020 WL 5358390, at *4. Defendants now also cite to *Corbello v. Valli*, 974 F.3d 965, 974 n.2 (9th Cir. 2020), but it also had very little to do with true literary works, since the "unprotectable elements" it dealt with were ***facts*** found in an unauthorized biography; moreover, their specific compilation was "not present" in the allegedly infringing play. *Id.* (concluding that "[t]he selection of the true stories behind the Band's most popular songs and the arrangement

"against using length as a strict measure of creativity in popular music songwriting. Talented songwriters often demonstrate their creativity not through overt complexity or length but by rendering ideas in accessible and catchy ways.").)

Regardless, even if numerosity could be applied as the relevant criteria here, the Ninth Circuit in this case found the number of the elements at issue to suffice—after all, if there were not enough elements, originality could not have been plausibly alleged. Indeed, even a *single word* or a *sound* can qualify for protection when repeated to form a pattern, a rhythm, or a hook in a song. As one court recently confirmed, "use of a lyrical phrase from one song in another song may in some instances be the basis for an infringement claim."[23] If "an arrangement of a limited number of notes can garner copyright protection," *Swirsky*, 376 F.3d

---

of those stories in roughly chronological order is not original, and so not protectable by copyright"). In any event, since "only a panel sitting en banc may overturn existing Ninth Circuit precedent," *Murray v. Cable Nat. Broadcasting Co*., 86 F.3d 858, 860 (9th Cir. 1996), the *Corbello* court's footnote application of the numerosity requirement cannot overcome the teachings of *Shaw*, which remains the Ninth Circuit's valid standing precedent on this issue.

[23] *May v. Sony Music Ent*., 399 F. Supp. 3d 169, 184 (S.D.N.Y. 2019) (finding that one phrase that is a "constituent element" of song lyrics is protected: "a copier may not quote or paraphrase the sequence of creative expression that includes such a phrase"), citing, *inter alia*, *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 604 (S.D.N.Y. 2013); *Jarvis v. A & M Recs*., 827 F. Supp. 282, 292 (D.N.J. 1993) (holding that phrases "ooh," "moves" and "free your body" formed a copyrightable expression based on "the *precise* relationship of the phrases *vis a vis* each other" and concluding that "[t]here is no question that the combined phrase 'ooh ooh ooh ooh ... move ... free your body' is an expression of an idea that was copyrightable") (original emphasis); *cf. Heim v. Universal Pictures Co*., 154 F.2d 480, 488 n.8 (2d Cir. 1946) ("There may be wrongful copying, though small quantitatively," for example, "if someone were to copy the words, 'Euclid alone has looked on Beauty bare,' or 'Twas brillig and the slithy toves.'"); *see also Allen v. Destiny's Child*, 2009 WL 2178676, at *9 (N.D. Ill. July 21, 2009) (denying summary judgment based on, *inter alia*, the court's "declin[ing] to find as a matter of law that no reasonable jury could find the [ordinary] phrase 'cater to you' to be an original expression of the theme set forth in the [original] Song"); *Positive Black Talk, Inc. v. Cash Money Recs., Inc*., 2003 WL 1921999, at *3-4 (E.D. La. Apr. 21, 2003) (denying defendants' motion for summary judgment on originality as to the allegedly infringed song phrase "back that ass up," despite expert evidence that it was a popular club chant that was "relatively common in hip-hop vernacular"); *Santrayll v. Burrell*, 1996 WL 134803, at *1 (S.D.N.Y. Mar. 25, 1996) (holding that "[t]he one measure 'hook,' consisting of the word 'uh-oh' repeated four times to a particular rhythm" deserved copyright protection); *Tin Pan Apple, Inc. v. Miller Brewing Co*., 1994 WL 62360, at *4 (S.D.N.Y. Feb. 24, 1994) ("I hold that a jury could find that the Hugga-Hugga and Brrr sounds, used as lyrics in the copyrighted work, are sufficiently creative to warrant copyright protection, quite apart from the rhythmic patterns or durations demonstrated by that work and the commercial."); *Bright Tunes Music Corp. v. Harrisongs Music, Ltd*., 420 F. Supp. 177, 178 (S.D.N.Y. 1976) (finding for plaintiff on the issue of plagiarism and holding that "[w]hile neither motif is novel, the four repetitions of A, followed by four repetitions of B, is a highly unique pattern").

at 851, so can a combination of a limited number of song lyrics.[24]

Here, the expression at issue consists of (at least) the following elements, exhibiting Plaintiffs' choices to: (1) combine tautological phrases, (2) via parallel lyrics, (3) each bearing grammatical structure "Xers gonna X," (4) use four such phrases in the chorus, (5) two of which are variations on playa/hater phrases invoked to open the chorus, (6) each dealing with groups of "Xers" that bear certain negative connotations,[25] (7) with the combined effect of expressing a larger idea "that we should not be concerned with what other people say or do, trusting in ourselves instead." (P-Ex. 2 at ¶ 1; D-UF (Pl. Resp.) 70 & 76-77; P-AUF 5.) As discussed above, these seven elements are numerous enough in this Circuit to proceed with the substantial similarity analysis.[26]

This is especially so, considering that the sequence at issue appears in the chorus, the most important part of both songs.[27] "It is the chorus—often termed the 'hook,' in recognition

---

[24] *See id.* (finding song's combination of "seven notes" to form a protected expression), citing, *inter alia*, *Elsmere Music, Inc. v. Nat'l Broad. Co*., 482 F. Supp. 741, 744 (S.D.N.Y. 1980) (same as to only four notes combined in a jingle); *Three Boys*, 212 F.3d at 485-86 (same as to "five unprotectible elements" combined in a song); *see also Bridgeport Music, Inc. v. UMG Recordings, Inc*., 585 F.3d 267, 275-76 (6th Cir. 2009) (same with regard to only three elements combined in a song); *accord Skidmore*, 952 F.3d at 1075 n.11 (confirming that "*Swirksy* left open the possibility that five or more different musical elements may be analyzed for a substantial similarity analysis").

[25] "Playing," "hating," "balling" (being flashy or showing off), and "shot calling" (being a dictator) as compared to "playing," "hating," "heartbreaking" or "faking" in Defendants' song). (*See, e.g.*, P-Ex. 2 at ¶¶ 6 & 7c; *see also id.* at ¶ 10 (all the four groups invoke an idea of the world full of untrustworthy people).)

[26] *See Shaw*, 919 F.2d at 1363 ("Even if none of these [common] plot elements is remarkably unusual in and of itself, the fact that both [works] contain all of these similar events gives rise to a triable question of substantial similarity of protected expression."); *Gray v. Perry*, 2018 WL 3954008, at *8 (C.D. Cal. Aug. 13, 2018) (finding genuine issue of material fact precluded summary judgment as to the claimed infringement of a musical composition where the report by plaintiff's expert concluded that the allegedly infringing song "clearly borrows a memorable and highly characteristic combination of discrete and specific musical elements …. Accordingly, the Court cannot determine as a matter of law that the overlapping similarities identified by [the expert] are not protectable musical expressions."); *Straughter v. Raymond*, 2011 WL 3651350, at *16 (C.D. Cal. Aug. 19, 2011) (same where plaintiff's expert identified "copying of a '***combination*** of unprotectible elements'" in musical compositions) (original emphasis), citing *Swirsky*, 376 F.3d at 851-52, and *Three Boys*, 212 F.3d at 485.

[27] *See Baxter*, 812 F.2d at 425 (collecting cases and observing that a six-note sequence could be "qualitatively important" enough to become protectible expression); *see also Newton v. Diamond*, 204 F. Supp. 2d 1244, 1254 (C.D. Cal. 2002) (observing that "sequences of less than six notes could be qualitatively distinctive" to warrant protection where they are, *inter alia*, "at the heart of the musical compositions"); *accord Newton v. Diamond*, 388 F.3d 1189, 1196 (9th Cir. 2004) (considering whether portions of a song constituted the "heart or hook"

of its power to keep a listener coming back for more—that many listeners will recognize immediately or hear in their minds when a song title is mentioned. As the part of a song that is most often repeated and remembered, a chorus hook is important not only aesthetically but also commercially, where it may be central to a song's economic success."[28] Accordingly, given its "qualitative[]" importance, the sequence is a protected expression for this additional reason as well. (P-AUF 6.)

### 2. <u>Defendants' Chorus is Substantially Similar to Plaintiffs' Chorus</u>

A selection and arrangement copyright is infringed when the works share "the particular selection or arrangement" of unprotectable elements. *Feist*, 499 U.S. 340 at 350-51. Importantly, a copyrighted selection and arrangement need not be copied "in [their] entirety" to be infringed under the substantial similarity standard—the infringer need only copy a "substantial portion" of the copyrighted work. *L.A. Printex Indus., Inc.*, 676 F.3d at 852. "Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity."[29] "The particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element. Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection." *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002), *overruled on other grounds by Skidmore*, 952 F.3d 1051;[30] *accord*

---

of the song for purposes of determining its qualitative significance); *cf. Danjaq*, 2014 WL 7882071, at *5 (observing that even three words "Bond. James Bond" are both "recognizable and significant" once they become iconic).

[28] *Copeland v. Bieber*, 789 F.3d 484, 493-94 (4th Cir. 2015) (concluding that "choruses or hooks of popular music songs are often ***disproportionately significant***, relative to the amount of time or number of measures they occupy. '[V]irtually no hit record is without a bit of music or words so compelling that it worms its way into one's memory and won't go away.'"); *see also BMS Entm't/Heat Music LLC v. Bridges*, 2005 WL 1593013, at *3 (S.D.N.Y. July 7, 2005) (rejecting the argument that two songs that "combine[d] a call-and-response format, the lyrics 'like that' preceded by a one-syllable word," and a particular rhythm were not protectable where "[t]hese elements in combination are repeated multiple times in each composition and arguably constitute the hooks in each song").

[29] *Baxter*, 812 F.2d at 425, citing, *inter alia*, *Heim*, 154 F.2d at 488 (single brief phrase so idiosyncratic as to preclude coincidence might suffice to show copying), and NIMMER § 13.03[A][2] (collecting authorities and rejecting notion that copying of three bars from musical work can never constitute infringement).

[30] While the *Skidmore* court overruled the "inverse ratio" rule applied in *Metcalf*, it left intact its substantial similarity" analysis, since the *Metcalf* court applied the "inverse ratio" rule only to "strengthen" plaintiff's showing on substantial similarity, 294 F.3d at 1075, but

*Shaw*, 919 F.2d at 1363 (observing that a common "pattern [that] is sufficiently concrete ... warrant[s] a finding of substantial similarity").[31]

**"Striking" Similarities.** As discussed, there are (at least) seven elements in the selection and arrangement of the four-part lyrical sequence at issue that Defendants' chorus copies: just like Plaintiffs' chorus, Defendants' chorus combines tautological phrases, does so through parallel lyrics, uses grammatical model "Xers gonna X," combined in a four-part structure, chooses to begin that structure with the exact two phrases that Plaintiffs chose (players gonna play/haters gonna hate), selects groups of "Xers" that bear negative connotations, and makes it the heart of the song by delivering essentially the same message—that "we should not be concerned with what other people say and do, trusting in ourselves instead." (*Supra* at 12, citing P-Ex. 2 at ¶ 1, D-UF (Pl. Resp.) 70 & 76-77, and P-AUF 5; *see also* P-AUF 12.) Indeed, Professor Kajikawa finds "[t]he use of similar phrases in [Defendants' chorus] ***striking***," (P-Ex. 2 at ¶ 11), as both choruses "use nearly identical words in nearly identical ways as the basis for the most memorable part of each song (the chorus)." (*Id.* at ¶ 1; *accord* P-Ex. 8 at 103:15-18 (Prof. Ferrara confirming that there is "concrete objective similarity" in the first half of the allegedly infringed four-part lyrical sequence).)

The combined effect of these similarities satisfies the extrinsic test of substantial similarity.[32] Moreover, the fact that the allegedly copied expression appears in the songs'

---

it was not dispositive on the issue.

[31] *See also Salinger v. Random House, Inc.*, 811 F.2d 90, 98 (2d Cir. 1987) ("The 'ordinary' phrase may enjoy no protection as such, but its use in a sequence of expressive words does not cause the entire passage to lose protection. And though the 'ordinary' phrase may be quoted without fear of infringement, a copier may not quote or paraphrase the sequence of creative expression that includes such a phrase."); *Allen*, 2009 WL 2178676, at *9 (declining to limit substantial similarity analysis to literal phrases and holding that copying of the phrase "cater to you" expressed the same idea as in the allegedly infringed work, which was "one of relieving the stress from the significant other and getting them to relax").

[32] *See Metcalf*, 294 F.3d at 1074 (acknowledging that script authors' general themes and ideas were not protected but also finding that "[t]he presence of so many generic similarities and the common patterns in which they arise do help … [plaintiffs] satisfy the extrinsic test," especially given that the particular expression of those themes and ideas was itself a protected element); *Gray*, 2018 WL 3954008, at *7 (denying summary judgment based on a finding of substantial similarity in the combination of five "unprotectable elements" of a musical composition based on expert testimony that "identified particular features of the works which, taken in combination, could support a finding of substantial similarity by a reasonable jury"), citing *Three Boys*, 212 F.3d at 485; *Straughter*, 2011 WL 3651350, at *15-16 ("The Court finds that … expert testimony [introduced by plaintiff] is sufficient to raise a genuine issue

choruses (which, as discussed, are considered to be the most important part of any song, making even slight copying "qualitatively significant") further supports a finding of substantial similarity.[33] Indeed, courts discount "the relative importance of the[] differences as compared to what the songs reasonably could be heard to have in common: their choruses. Even when quantitative majorities of two works bear little resemblance, courts routinely permit a finding of substantial similarity where the works share some especially significant sequence of notes or lyrics."[34]

**<u>Claimed Differences</u>**. Defendants contend that there are essentially four differences that purportedly defeat substantial similarity between the works at issue when analyzed through the prism of copyright protection for original selection and arrangement. (*See* Mot. at 22:12-25.) Each of those purported differences is addressed in turn below.

**(1) <u>Interruption of the sequence</u>**. Defendants contend that their chorus does not use "a four-part lyrical sequence" because there are additional lyrical lines breaking up the first and the second part of the alleged sequence. (*See* Mot. at 22:15-18, citing D-UF 129-33.) Yet Plaintiffs' expert finds the interruption insignificant because it represents merely a change in geography, as the same message that appears in the middle of the sequence in Defendants' chorus also appears at the end of Plaintiffs' chorus. (*See* D-UF 130 & 133 (Pl. Resp.).) Indeed, Professor Kajikawa specifically concludes that "[b]oth sets of lyrics [the

---

of material fact as to substantial and striking similarity. As in *Three Boys*, [the expert] has identified particular features of the works which, taken in combination, can support a finding of substantial similarity.").

[33] *See, e.g., Bridgeport*, 585 F.3d at 276-77 (where the copied elements of the song were "as unique to the song and the Bow Wow refrain, in particular, as the most well-known aspect of the song—in terms of iconology, perhaps the functional equivalent of 'E.T., phone home,'" upholding "substantial similarity, given evidence that the copied elements had such great qualitative importance to the song"); *May*, 399 F. Supp. 3d at 186 (finding allegations of substantial similarity as to the same phrase in two songs plausible where the phrase is "the repeated 'hook' of the chorus … [that] encapsulates the overriding theme of the song…. The Phrase may be viewed as 'the heart of [Plaintiff's] composition.' In short, [Plaintiff] plausibly alleges that the Phrase is both quantitatively and qualitatively significant to his song sufficient to cross the line from a trivial to substantial.").

[34] *Copeland*, 789 F.3d at 493-94, citing, *inter alia*, *Swirsky*, 376 F.3d at 851 (overlap in first measure of chorus—seven total notes—enough to make pop songs substantially similar), and *Fisher v. Dees*, 794 F.2d 432, 434 & n.2 (9th Cir. 1986) (similarity in first six measures of songs, amounting to twenty-nine seconds on a forty-minute album, enough to constitute appropriation of album).

intervening lyrics in Defendants' song and the lyrics at the end of the chorus in Plaintiffs' song] offer an affirmative response to the four-part poetic sequence, communicating resolve against the existential threats they conjure." (P-Ex. 4 at ¶ 52; *see also* P-Ex. 7 at 227:15-22 (interruptive lyrics in Defendants' song "correspond to three lines of lyrics at the end" of Plaintiffs' chorus).) Accordingly, given the reasonable minds such as those of the expert witnesses here obviously disagree on this point, it is an issue of fact best left to the jury.[35]

**(2) <u>Defendants' repetition of words</u>**. Defendants also contend that that their repetition of "play" and "hate" is unique and makes it different from Plaintiffs' chorus. (*See* Mot. at 22:19-21, citing D-UF 119-22.) Yet Plaintiffs' expert opines that "[a]lthough the rhythmic repetition of these words does match the upbeat mood of [Defendants'] song, these added repetitions do not alter the basic poetic structure and meaning of the four-part sequence which is remarkably similar to that of … [Plaintiffs' chorus]. Therefore, I find this argument of substantial difference unconvincing." (P-Ex. 4 at ¶ 47; *but see* P-Ex. 9 at 97:11-15 (Prof. Lewis opining that Defendants' repetition of these words is the "central" difference between the works).)[36] As such, reasonable minds can differ as to this alleged difference as well, precluding summary judgment.[37]

**(3) <u>Different harmonies, rhythms and melodies.</u>** Defendants also point to the alleged differences in "harmonies, rhythms, and melodies" (Mot. at 22 at 22:21), yet Plaintiffs

---

[35] *See, e.g.*, *Russell*, 2020 WL 9073046, at *10, citing *L.A. Printex*, 676 F.3d at 848; *cf. L.A. Printex Indus., Inc.*, 676 F.3d at 852 (holding that a copyrighted selection and arrangement need not be copied "in [their] entirety" to be infringed under the substantial similarity standard—the infringer need only copy a "substantial portion" of the copyrighted work).

[36] Professor Kajikawa's observation that the word repetition matches the upbeat mood of Defendants' song also suggests that the repetition is functional (that is, dictated by its faster beat and pace), which is an additional reason why it should not be regarded as a decisive factor. *See, e.g.*, *ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405, 418 (9th Cir. 2018) (observing that "functionally driven decision-making does not demonstrate the kind of originality with which copyright is exclusively concerned"). (*Cf.* Lewis Decl. at ¶ 32 (observing that the repetition "provides [Defendants' work with its] … dynamism, mood and pace"); *accord* Mot. at 3:19-20.)

[37] *See, e.g.*, *Acuff-Rose Music, Inc. v. Campbell*, 972 F.2d 1429, 1438 (6th Cir. 1992) (where defendants' song borrowed a famous guitar riff and repeated it eight times, concluding that taking the heart of the original and making it the heart of a new work was to purloin a substantial portion of the essence of the original"), *rev'd on other grounds*, 510 U.S. 569 (1994); *cf. Williams v. Gaye*, 895 F.3d 1106, 1143-44 (9th Cir. 2018) (concluding that "repeating notes is obviously not original" to the infringed song and thus "not protectable").

never claimed infringement of any expression beyond the four-part lyrical sequence at issue (*see* Compl. at ¶ 43). *See also Allen*, 2009 WL 2178676, at *12 (analyzing two sets of lyrics and rejecting expert testimony that "the two songs 'do not sound, at first listen, very much alike'" … [because] it is clear from the context of [the expert]'s statement that he is speaking of the musical elements of the songs, not the lyrics"). Indeed, just because the allegedly infringed expression is part of a larger "musical composition" (*see* Mot. at 12:16-22) does not provide Defendants with a license to infuse irrelevant differences into the analysis. *See Braham v. Sony/ATV Music Publ'g*, 2015 WL 7074571, at *3 (C.D. Cal. Nov. 10, 2015) ("[A]s a general matter, lyrics of a musical work can be protected by copyright—even if the musical accompaniment is not copied."),[38] *cf. Roberts v. Gordy*, 2015 WL 12911328, at *4 (S.D. Fla. Sept. 15, 2015) ("[T]he question is whether the use of a three-word phrase appearing in the musical composition, divorced from the accompanying music, … constitutes an infringement of the musical composition *Hustlin'*.").[39] After all, Plaintiffs are the masters of their own claim, *see Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th

---

[38] *See also* 1 NIMMER ON COPYRIGHT § 2.05[C] (2021) ("Suppose the plaintiff's work includes both music and 'accompanying' words, but the defendant copies only the plaintiff's words, unaccompanied by his music.... [It] remains clear under the present Act, that ... the copyright ... will protect against unauthorized use of … the words alone …."); *accord Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 527 (9th Cir. 2008) ("***Song lyrics*** are copyrightable as a literary work and, therefore, enjoy separate protection under the Copyright Act.").

[39] The *Roberts* court answered question in the negative because at issue was only one phrase that had been previously used; moreover, it proceeded to apply the intrinsic test on summary judgment, which is contrary to the Ninth Circuit law. Notably, as Dr. Ferrara served as defendants' musicology expert in that case (*see* P-Ex. 8 at 44:2-47:5), he must have opined on musical dissimilarities, since he considers them necessary for any musicological analysis of a song (*see* Ferrara Decl. at ¶ 6 (g)), yet the *Roberts* court never relied on any such opinions in conducting its substantial similarity analysis of the song lyrics at issue. In fact, when plaintiffs attempted to distinguish prior art by relying on musical dissimilarities, the court rejected the "attempt[] to distinguish those songs on the basis that they are melodically different. [Plaintiff] contends that [defendant's expert] report avoids or ignores the combination of lyric, melodic (pitch/rhythm) and instrumental similarities between *Hustlin* and [prior art]. But that is not the question before the Court." *Id.* at *5 n.4. Clearly, the necessities of musicology (if any) do not dictate legal claims. (*Cf.* D-UF 37 (Pl. Resp.), citing, *inter alia*, Ferrara Decl. at ¶ 6(e) (despite the alleged musical differences, conceding "lyrical similarities" between the songs).) Defendants' contrary contentions (*see* Mot. at 12:2-22) are unsupported by any authorities; indeed, Defendants do not even cite any cases where the claimed infringement was limited to the lyrics (as found in a given musical composition) and thus can master no precedent where courts considered differences arising ***outside*** of the allegedly infringed expression.

Cir. 2003), and they claim infringement of the four-part lyrical sequence only.[40]

The court's analysis in *Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 984 (C.D. Cal. 2015), is illustrative on this point. There, plaintiffs alleged infringement of lyrics in the famous song *Happy Birthday to You*. The court noted that "[t]he distinction between the music and the lyrics as copyrightable elements is critical in this case because both Parties agree that the *Happy Birthday* melody … entered the public domain a long time ago." *Id.* at 984. The court, however, proceeded to analyze the lyrical infringement claim separately because "[a]s a musical work, *Happy Birthday* has at least two copyrightable elements, the music and the lyrics, and each element is protected against infringement ***independently***." *Id.*[41] Accordingly, the claimed similarities in musical elements are

---

[40] *See Newton*, 388 F.3d at 1194-95 (turning to the comparison of the works only "[o]nce we have isolated the basis of Newton's infringement action—the 'Choir' composition, devoid of the unique performance elements found only in the sound recording"); *cf. Bach*, 473 F. Supp. 2d at 1137 (conducting substantial similarity analysis by comparing the allegedly infringed character "***to those elements of … [Defendants' work] that utilized*** the [allegedly infringed] character").

[41] None of Defendants' authorities is to the contrary since Defendants' own characterization of the cited holdings displays that the alleged musical similarities were "claimed" in addition to the lyrical similarities—*i.e.*, were part of the alleged infringement. (*See* Mot. at 8:8-13, citing *Williams*, 895 F.3d at 1118-9 & 1150 n.10, and *Three Boys*, 212 F.3d at 485.) In similar vein, the court's discussion of the differences and similarities in the "works" as a whole in *Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1078 (9th Cir. 2006) (*see* Mot. at 8:13-18; *see also Funky Films,* at 462 F.3d at 1075 (noting that plaintiffs claimed infringement of the screenplay as a whole)) translates here to those of the choruses rather than the compositions as a whole, since no infringement outside of the choruses is at issue. *See, e.g., O'Connor v. Cindy Gerke & Assocs., Inc.*, 300 F. Supp. 2d 759, 767 (W.D. Wis. 2002) (where "plaintiff has not claimed copyright infringement as to the overall format of the show … [but rather] alleged that specific elements within the show have been copied in violation of his copyright," proceeding with the analysis by "examin[ing] each element of the show ***in which plaintiff alleges a copyright violation has been committed***"); *cf. UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 763 (W.D. Tex. 2019) (observing that "plaintiff is not required to show the whole of the infringing work is similar to the whole of the copyrighted work," since "[i]t is possible to infringe while copying only a part of a work").

Defendants' reliance on *Cavalier v. Random House, Inc.*, 297 F.3d 815, 824 (9th Cir. 2002), for the proposition that the works must be analyzed as "a whole" (Mot. at 11:16) similarly ignores the actual claims asserted in that case; moreover, the *Cavalier* court also conducted the analysis that dispels any notion of that the "whole" comparison is somehow controlling: "Even though we hold that the *Good Night* stories, taken as a whole, do not infringe the Cavaliers' copyright, the question remains whether protected parts of the Cavaliers' works have been copied. We therefore consider whether there exists a triable issue of substantial similarity between any of the isolated art work, ***as freestanding work divorced from the stories***." *Id.* at 825, citing *Universal Pictures*, 162 F.2d at 361 ("The whole picture need not be copied to constitute infringement. The mere copying of a major sequence is sufficient.").

irrelevant to Plaintiff's claimed infringement of the sequence of words here.[42] Indeed, Defendants' own expert witness, Professor Ferrara, concedes that there need ***not*** be any "significant similarity in music underlying a work for the lyrics in the work to be significantly similar."[43]

**(4) <u>Paraphrasing of the Second Part of the Structure</u>**. Finally, Defendants emphasize that they chose two groups of actors for their second part of the structure that are different from the actors found in the second part of Plaintiffs' structure. (*See* Mot. at 22:13-15, citing D-UF 123-28.) While it is true that the second part of the structure is paraphrased rather than copied in Defendants' song, this paraphrasing "share[s] the same 'phraseology.'"[44] Moreover, Professor Kajikawa concludes that both second parts of both sequences are "entirely similar in form and function." (P-Ex. 4 at ¶ 51; *see also* D-UF 125 & 128 (Pl. Resp.).)[45] As, once again, reasonable minds clearly disagree, summary judgment on this difference would be improper as well.[46]

***

---

[42] *Accord* P-Ex. 2 at ¶ 21 (Prof. Kajikawa acknowledging that despite their lyrical similarities, the two songs "don't otherwise sound much alike. As a musicologist, I understand the need to consider this question. However, song lyrics are separately protected by copyright irrespective of their musical setting.") & D-UF 37 (Pl. Resp.).

[43] P-Ex. 8 at 88:12-17; *see id.* at 88:19-24, 89:17-19, 92:13-22, 94:20-95:18 & 97:6-98:2 (also agreeing that neither melody, rhythm nor harmony needs to be "significantly similar" for the accompanying lyrics to be "significantly similar" and confirming that "lyrics by themselves can have similarities that are significant"); *see also* D-UF 37 (Pl. Resp.).

[44] P-Ex. 4 at ¶ 50, citing D-Ex. 5 at 33; *see also* Kajikawa Decl. at ¶ 20.

[45] *Cf. Dr. Seuss*, 924 F. Supp. at 1566 ("There is no reason prefer the paraphrasing plagiarist to the slavish copyist."); *accord Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1167 (9th Cir. 1977) (copyright infringement "cannot be limited literally to the text, else a plagiarist would escape by immaterial variations"), citing *Nichols*, 45 F.2d at 120 .

[46] There is an additional claimed difference that Defendants do not identify in their analysis of selection and arrangement, yet it is mentioned in the record. The claimed difference is in the spelling of playa/player and gon/gonna. (*See* D-UF 219, citing, *inter alia*, D-Ex. 5 at 29-31 & Lewis Decl. at ¶ 32.) Professor Kajikawa dismisses this difference as a function of Defendant Swift's identity: indeed, for a white country singer to use traditionally African American vernacular would be an equivalent of "vocal blackface." (P-Ex. 4 at ¶¶ 43-46; *see also* P-Ex. 5 at ¶¶ 10-11.) As such, it is not an important creative difference. *Cf. Dr. Seuss*, 924 F. Supp. at 1564 ("The dissimilarities between the works—the punctuation and capitalization; the absence of Dr. Seuss's use of assonance between the first word of the second and fourth lines; the loss of the epistrophe in the fourth—probably owe more to the storytelling requirements of the satire than any creative decisions by Defendant…."). In fact, both Professor Lewis and Professor Morgan at some point similarly discount any significance in these claimed differences. (*See* P-AUF 30 & 33; D-UF 7.)

The bottom line is that given the many similarities between the song choruses at issue here, "the differences support the opposite conclusion, that there is a genuine dispute of material fact on substantial similarity." *L.A. Printex*, 676 F.3d at 851; *accord Gray*, 2018 WL 3954008, at *7 ("Although [plaintiff's expert's] opinions are contradicted or challenged by defendants' expert, Ferrara, all plaintiffs must do to defeat summary judgment is provide '***indicia of a sufficient disagreement*** concerning the substantial similarity of the two works'"), citing *Swirsky*, 376 F.3d at 846.[47] This is because "a rational jury could find that these differences 'inconsequential,' or could credit [plaintiff's] assertion that these differences [are essentially functional]."[48] As such, "[a] rational jury could find that despite some differences …, the similarities in the selection, coordination, and arrangement of … [the elements] are sufficiently substantial to support an inference of copying."[49]

**B. <u>Defendants' Infringement of Plaintiffs' Literary Work</u>**

Defendants analyze the substantial similarity of the lyrics at issue by employing the comparison structure of the elements that apply to ***narrative*** literary works. *See Andreas Carlsson Prod. AB v. Barnes*, 2016 WL 11499657, at *16 (C.D. Cal. Apr. 14, 2016) (observing that it is "[i]n comparing ***narrative-driven*** works" that "the extrinsic test compares

---

[47] *See also Straughter*, 2011 WL 3651350, at *15-16 (same; also observing that plaintiff's expert "does not simply list random similarities scattered throughout the two songs … [n]or does he completely ignore the differences … [because he] ultimately concludes that those differences do not impact his ultimate conclusion on similarity. Furthermore, to the extent [the expert] does not identify certain dissimilarities between the works, such a failure is not fatal to plaintiff's case ….”), citing *Swirsky*, 376 F.3d at 849; *Williams v. Bridgeport Music, Inc.*, 2014 WL 7877773, at *19-22 (C.D. Cal. Oct. 30, 2014) (denying summary judgment for similar reasons).

[48] *L.A. Printex*, 676 F.3d at 851; *see also Allen*, 2009 WL 2178676, at *11 (denying summary judgment on substantial similarity of song lyrics where defendants' song "include[d] each of [plaintiff's] … elements in its treatment of the same theme. While some of [plaintiff]'s descriptions may be standard expressions of his theme when standing alone, the combination of all of these elements may be sufficiently original so as to be protectable under copyright law. Because reasonable minds could come to different conclusions on the question of whether the [allegedly infringed] lyrics ... constitute scènes à faire, the court declines to find as a matter of law that the lyrics to the [allegedly infringed] Song are inherently unprotectable.").

[49] *L.A. Printex*, 676 F.3d at 851; *see also Art Attacks Ink, LLC v. MGA Ent., Inc.*, 2006 WL 8439847, at *4 (S.D. Cal. Nov. 1, 2006) (where "the designation of which elements are 'stock' elements … is a subject of debate between the parties and their experts," denying summary judgment based on the conclusion that "[w]hether … [the] products have the same arrangement of elements or simply are based upon a similar theme comes down to ***subjective*** opinion. Therefore, several issues of material fact remain with regards to the extrinsic test.").

the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the works at issue"), citing *Benay*, 607 F.3d at 624. But "pop songs do not function exactly like books," and, as both Plaintiffs' and Defendants' experts agree, the song lyrics at issue here are non-narrative.[50] As such, it is pointless to compare them by the elements that are ill-fitted to their nature.[51]

Indeed, Defendants' caselaw almost never deals with song lyrics—and when it does, the "narrative" comparison structure touted by Defendants is nowhere to be found.[52] Importantly, ***the Ninth Circuit does not appear to have ever applied Defendants' "narrative" comparison structure to song lyrics***, and courts that analyzed song lyrics as literary creations (*i.e.*, divorced from the underlying music) have applied an entirely different comparison structure to gauge whether two sets of song lyrics are substantially similar—namely, the fragmented literal similarity test. *See May*, 399 F. Supp. 3d at 180-81 & 185-86 (where the alleged infringement was limited to one phrase in both songs, observing that "[m]ultiple tests exist to determine substantial similarity, including … the 'fragmented literal similarity test'" and applying the latter test to deny motion to dismiss).[53] Under this

---

[50] P-Ex. 4 at ¶ 37; *accord* D-Ex. 5 at 7-8 (Professor Lewis confirming that, unlike narrative-driven songs, the works at issue here "center on the communication of feelings and ideas rather than on a series of experienced events"); *see also* P-AUF 13.

[51] *See Shaw*, 919 F.2d at 1360-61 (accounting for the nature of the underlying work in its substantial similarity analysis); *accord Williams*, 895 F.3d at 1106; *Cavalier*, 297 F.3d at 822; *see also Astor-White v. Strong*, 733 F. App'x 407, 408 n.2 (9th Cir. 2018) (concurring opinion).

[52] The only cases cited by Defendants that involve song lyrics also included allegations of musical copying; as such, none of Defendants' cases analyzes song lyrics as literary works, let alone ***non-narrative*** literary works. *See Williams*, 895 F.3d at 1117; *Swirsky*, 376 F.3d at 845-46; *Three Boys*, 212 F.3d at 485; *Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1056-57 (C.D. Cal. 2018); *cf. de Becdelievre v. Anastasia Musical LLC*, 2018 WL 1633769, at *11 (S.D.N.Y. Apr. 2, 2018) ("Comparisons to unrelated cases do not help."). Notably, when the Ninth Circuit analyzed song lyrics as part of a non-narrative form of expression (musical composition), it expressly observed that it had never "announced a uniform set of factors to be used" in applying "the extrinsic test." *Swirsky*, 376 F.3d at 849; *accord Gray*, 2018 WL 3954008, at *7; *see also Hayes v. Minaj*, 2012 WL 12887393, at *4 (C.D. Cal. Dec. 18, 2012) (distinguishing application of "the extrinsic test to two television shows … examin[ed] … [by] articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events. By contrast, '[m]usic ... is not capable of ready classification into only five or six constituent elements.' Rather, the application of the extrinsic test to musical works is a "somewhat unnatural task, guided by relatively little precedent."), citing, *inter alia*, *Swirsky*, 376 F.3d at 848-49.

[53] *Accord Bridgeport*, 585 F.3d at 276-77 (concluding that the trial court did not err when it applied the fragmented literal similarity standard and refused to instruct the jury "that the

comparison structure, plaintiff satisfies the substantial similarity test by showing that defendant "copie[d] a portion of the plaintiff's work exactly or nearly exactly, without appropriating the work's overall essence or structure."[54] Notably, just like the substantial similarity test under the Ninth Circuit precedent, the fragmented literal similarity test "ask[s] whether the copying is quantitatively and qualitatively sufficient to support a finding of infringement," and "the copying of even a 'relatively small' quantitative 'portion of the pre-existing work may be substantial if it is of great qualitative importance to the [pre-existing] work as a whole.'"[55]

---

two songs differed in theme, tempo, and style …. Bridgeport alleged in its complaint that [defendant] had copied specific elements of [the work] and that these elements were copied literally. Thus, the overall concept or tone of the work was not relevant to the jury's task."); s*ee also TufAmerica*, 968 F. Supp. 2d at 597 & 603-04 (where one of the infringement claims was limited to one song phrase, concluding that "[a]lthough there is a frankly surprising paucity of on-point precedent regarding literal copying of the kind presented in this case, the Court agrees with Plaintiff that the copying here is an example of 'fragmented literal similarity'" because, unlike the "parroting [of] properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art ... are considered in relation to one another," the alleged infringement in the case at bar "involve[d] the literal use of a small portion of the pre-existing work in the later work," and "there are no blurred lines between what was or was not taken" in the latter type of copying); *cf.* Melissa Eckhause, *Digital Sampling v. Appropriation Art: Why Is One Stealing and the Other Fair Use? A Proposal for A Code of Best Practices in Fair Use for Digital Music Sampling*, 84 Mo. L. Rev. 371, 386 (2019) (discussing the fragmented literal similarity test as one of the tests measuring "substantial similarity" under the second prong of the copyright infringement inquiry and noting that it is often applied where "there is a high degree of similarity between the works but the copying is limited").

[54] *May*, 399 F. Supp. 3d at 180-81 (also observing that the analysis focuses on "whether the copying goes to trivial or substantial elements of the original work"), citing, *inter alia*, *Newton*, 388 F.3d at 1194-95; *see also Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 140 (2d Cir. 1998) (fragmented similarity test "focuses upon copying of direct quotations or close paraphrasing").

[55] *May*, 399 F. Supp. 3d at 180-81; *accord Newton*, 388 F.3d at 1196, and *Baxter*, 812 F.2d at 425. Defendants will likely question this test's applicability in this Circuit. However, a closer review of the relevant authorities would support its viability. After the Ninth Circuit applied it in *Newton*, 388 F.3d at 1195-96 ("The high degree of similarity between the works here …, but the limited scope of the copying, place Newton's claim for infringement into the class of cases that allege what Nimmer refers to as 'fragmented literal similarity.'"), the Ninth Circuit revisited it in a non-lyrics case, *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 879-80 n.8 (9th Cir. 2016), by refusing to apply it because the alleged infringers "did not copy 'a portion of the plaintiff's work exactly or nearly exactly.'" *Id.* at 879-80 n.8, citing *Newton*, 388 F.3d at 1195. The *VMG* court also cited to a pre-*Newton* decision in *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 n.4 (9th Cir. 1997), as supposedly "rejecting the category of 'fragmented literal similarity,'" but the latter merely approved of the analysis below, and the *Dr. Seuss* court below, 924 F. Supp. at 1566, only rejected defendants' proposal to limit any possible infringement to either "verbatim or near-verbatim copying of a small part of a work" (under the fragmented literal similarity test) or "paraphrasing of an entire work" (under the comprehensive non-literal similarity test), leaving

Clearly, the literal copying of the sequence combining the first two phrases in a song's chorus and closely paraphrasing the two phrases combined in the second part of the lyrical sequence at issue here, *see supra* at 14-15 (disregarding the superficial differences discussed above, *see supra* at 15-19), qualifies as infringement under the above-discussed comparison structure. In any event, even if analyzed under the set of "narrative" comparison factors, there are enough similarities to withstand summary judgment, and the claimed differences do not defeat them. (*See* D-UF (Pl. Resp.) 143-46 (plot); 152-53 (sequence); 89-90 & 154-77 (characters); 190-98 (setting); 186-87 (theme); 199-201 (mood); 204-08 (pace); 83-85, 117-33, 211, 213-14, 217 & 219 (dialog/style).)[56] Accordingly, even utilizing the ill-fitting "narrative" elements,[57] summary judgment cannot be granted. *See Andreas*, 2016 WL

---

no infringement category for "substantial similarity," *see id.* (declining to adopt the proposed dichotomy as the only two infringement options because "[t]here is no reason [to] prefer the paraphrasing plagiarist to the slavish copyist," which would not happen under the traditional "substantial similarity" test because it measures significant similarity "both on an objective, analytical level and a subjective, audience-response level").

Indeed, when the "fragmented literal similarity" test was recently raised before Judge Fischer in *Ricketts v. CBS Corps*., 2020 WL 3124218, at *5 n.9 (C.D. Cal. Mar. 19, 2020), she distinguished the *May* decision applying the test as involving a "claim that was based on Defendants' use of a phrase, not the overall similarity of the songs as a whole. In contrast, Plaintiff here does contend that the Works and the Series are similar as a whole." By this logic, the comparison structure utilized by the *May* court would apply to the claims at bar.

[56] Defendants' argument that the lyrical sequence at issue is unprotected because it includes "unprotected material" (Mot. at 10:26-11:3) fails for the reasons discussed above. (*See supra* at n.31.) Notably, as Professor Kajikawa opined, "[a]ttempts to dismiss the lyrics in question as banal (too brief and unoriginal to merit protection) signal an inability or unwillingness to recognize the validity of black vernacular expression" that exhibits creativity by utilizing utilizes common phrases into "a formal poetic strategy that expresses a new meaning" (P-Ex. 1 at ¶ 18). Indeed, Professor Kajikawa warns "about a potential racial basis in this case" that downplays Plaintiffs' creativity simply because they used preexisting expressions originating from the African American culture and thus "may be taken less seriously by some readers." (P-Ex. 4 at ¶ 48; *accord* P-Ex. 7 at 214:23-215:12 (cautioning against "rush[ing] to judgment in this case" given that "there's a long and documented history of the way in which black speech has been mocked … and used as evidence of black inferiority").) *Cf. N. Coast*, 972 F.2d at 1034-35 (reasoning that adjudging "the differences in the placement of geometric shapes … as trivial" would condemn Mondrian's creativity in the claimed prior work as nonexistent after his first painting: "This is not the judgment of art history, and it cannot be the correct judgment of a court as a matter of law.").

[57] It is important to note that Defendants' focus on painting the identified similarities in the songs' objective elements as supposedly too abstract or general (*see* Mot. at 14:3-19 & 13-19) crosses into the subjective element of the intrinsic test that does not belong on summary judgment. (*See, e.g.,* P-Ex. 7 at 160:8-161:4 (Professor Kajikawa explaining that any given song's message depends on the subjective point of view of a particular listener).) *Accord Shaw,* 919 F.2d at 1360-61 (observing that "[t]he imagery presented in a literary work may also engage the imagination of the audience and evoke an emotional response," and, since "each of us differs, to some degree, in our capability to reason, imagine, and react

11499657, at *18 (denying summary judgment: "[W]hile the setting, pace, and general plots of the works are different, they include some similar characters, mood, and story elements. Summary judgment in a copyright case is proper only if 'no reasonable juror' could conclude that the works are substantially similar in their ideas and expression. In this case, while there are substantial differences between the works, there is sufficient similarity between certain characters and plot elements of the works to create at least a triable issue regarding whether [one] is substantially similar to the [other]."), citing *Benay*, 607 F.3d at 624 ("[T]he [extrinsic] test focuses on articulable similarities ….").[58]

## III. Plaintiffs' Similarity Showing is Sufficient to Infer Copying

Defendants, having concluded that there is no substantial similarity here (based, in the largest measure, on the ill-fitted framework of comparison applicable to narrative literary works), contend that this is consistent with an independent creation. (*See* Mot. at 23-25.) As shown, however, there is not only substantial similarity but even striking similarity. Where there is such striking similarity that the works are "virtually identical," *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017), as Plaintiffs' expert confirms the choruses are here (*see* P-Ex. 2 at ¶¶ 1, 11-14 & 20), courts infer copying as a matter of law. (*See* Mot.

---

emotionally, ***subjective*** comparisons of literary works that are objectively similar in their expression of ideas ***must be left to the trier of fact***"). Defendants' authorities are not to the contrary because the works at issue there were dissimilar even at the general level. *See Funky Films*, 462 F.3d at 1078 (distinguishing a murder mystery from a character exploration story, the latter being "not so much a story about death as it is about the way the characters struggle with life in the wake of the cataclysmic death of the father"); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (discounting the "general" similarity on the level of "a life struggle of kids fighting insurmountable dangers" after determining that one work "celebrate[d] family values," while the other "depict[ed] the triumph of good over evil"). *But see Shaw*, 919 F.2d at 1362-64 (finding similarities in, *inter alia*, the general message and central characters, sufficient to reverse summary judgment; also observing that "[e]ven if none of these plot elements is remarkably unusual in and of itself, the fact that both scripts contain all of these similar events gives rise to a triable question of substantial similarity of protected expression").

[58] *See also Shaw*, 919 F.2d at 1362-64 (where the two literary works dealt with the same idea of "a man who will equalize the odds, a lone man working outside the system to protect his underdog clients and to resolve their predicaments as a part of his rough notion of justice," reversing summary judgment and finding that while there were "significant similarities and differences," the works exhibited, *inter alia*, "[t]he most striking similarity" between "central characters," which was "their self-assuredness, and unshakeable faith in the satisfactory outcome of any difficult situation;" accordingly, "reasonable minds might differ as to the substantial similarity between the protected *ideas*") (original emphasis).

at 23:7-8.) Indeed, "[i]n an appropriate case, copying might be demonstrated, with no proof or weak proof of access, by showing that a single brief phrase, contained in both pieces, was so idiosyncratic in its treatment as to preclude coincidence. In such circumstances, stimulation by the same stimulus would not serve as a defense …." *Heim*, 154 F.2d at 488. But even on a lesser showing of substantial similarity, which Plaintiffs have satisfied here, all they need to show to establish an inference of copying is Defendants' access to their work, which, as the Ninth Circuit confirms, requires little showing nowadays. *See Skidmore*, 952 F.3d at 1068.[59] Notably, the claimed partial ubiquity of the four-part sequence at issue by 2014 is both beyond the scope of the parties' discovery conducted thus far (as limited to the "extrinsic test" only) and is based on factual overstatements (*see, e.g.*, D-UF (Pl. Resp.) 255).

Defendants' contention that Plaintiffs did not plead striking similarity (*see* Mot. at 23:17, citing D-UF 243-44) is, of course, beside the point. This is because Plaintiffs are not required to state all the legal theories in advance, *see Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008), and Defendants certainly had notice of Plaintiffs' striking similarity claim for about a year now (*see* Dkt. No. 62 at 4 n.8). Moreover, if Plaintiffs can establish direct copying, no showing of similarity would be required.[60] By bifurcating discovery so that Plaintiffs would have no access to discovery on the issue of direct copying (*see* Dkt. No. 87 at 2:9-10), Defendants have foreclosed summary judgment on the issue of lack of probative copying, independent creation or any notion of the merger defense, to the extent applicable. Accordingly, their motion should be denied in its entirety.

DATED: August 23, 2021 BY: GERARD FOX LAW P.C.

---

[59] Even though the parties' discovery has been thus far limited to the "extrinsic test" (Dkt. No. 87 at 2:9-10)—that is, a showing of either substantial or striking similarity—Plaintiffs have already produced sufficient evidence of such access through the evidence of, *inter alia*, their song's chart performance and its exposure on MTV's Total Request Live ("TRL") program. (*See* P-AUF 17-24.) Indeed, as the evidence shows, Defendant Swift was a noted fan of TRL; moreover, Professor Morgan introduced evidence that Ms. Swift was in the top percentage of the hip hop listeners at the time Plaintiffs' song came out (*see* P-AUF 22-23).

[60] *See Range Rd.*, 668 F.3d at 1154 ("A showing of 'substantial similarity' is irrelevant in a case like this one, in which the Music Companies produced evidence that the public performances entailed direct copying of copyrighted works.").

/s/ Marina Bogorad

Gerard P. Fox
Marina V. Bogorad

*Attorneys for Plaintiffs*
SEAN HALL D.B.A. GIMME SOME HOT SAUCE MUSIC and NATHAN BUTLER D.B.A. FAITH FORCE MUSIC