GERARD FOX LAW P.C.
Gerard P. Fox (SBN 151649)
gfox@gerardfoxlaw.com
Marina V. Bogorad (SBN 217524)
mbogorad@gerardfoxlaw.com
1880 Century Park East, Suite 1410
Los Angeles, CA 90067
Telephone: (310) 441-0500
Facsimile: (310) 441-4447

*Attorneys for Plaintiffs*
SEAN HALL D.B.A. GIMME SOME HOT SAUCE MUSIC AND NATHAN BUTLER D.B.A. FAITH FORCE MUSIC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SEAN HALL d.b.a. GIMME SOME HOT SAUCE MUSIC, *et al*.,<br><br>Plaintiffs,<br><br>vs.<br><br>TAYLOR SWIFT, *et al*.,<br><br>Defendants. | Case No. 2:17-cv-06882 MWF (ASx)<br><br>**PLAINTIFFS' STATEMENT OF GENUINE DISPUTE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date: September 27, 2021<br>Time: 10:00 a.m.<br>Ctrm: 5A<br><br>Action Filed: September 18, 2017 |

# TABLE OF CONTENTS

I. PLAINTIFFS' OPPOSITION TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS .......... 1

II. PLAINTIFFS' ADDITIONAL UNCONTROVERTED FACTS IN FURTHER SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT .......... 257

III. CONCLUSIONS OF LAW .......... 286

Plaintiffs Sean Hall d.b.a. Gimme Some Hot Sauce Music and Nathan Butler d.b.a. Faith Force Music (collectively, "Plaintiffs") hereby submit the following Statement of Genuine Issues of Material Fact In Opposition to Defendants Taylor Swift, Karl Martin Sandburg, Karl Johan Schuster, SONY/ATV Music Publishing, LLC, Kobalt Music Publishing America Inc., Big Machine Label Group, LLC, Universal Music Group, Inc.'s (collectively, "Defendants") Statement Of Uncontroverted Facts In Support of Their Motion for Summary Judgment pursuant to Fed. R. Civ. P 56 and L.R. 56-2.[1]

## I. PLAINTIFFS' OPPOSITION TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| **(a) The Extensive Use of Player and Hater Phrases Before Plaintiffs' *Playas*** | | |
| **1.** The 1977 recording of *Dreams* by Fleetwood Mac includes in its lyrics the phrase "players only love you when they're playing." | Anderson Decl. at 2, ¶ 10(a), Exh. 15 (Plfts' Resp. to 3d Request for Admission ("RFA")) at 4-5 (Nos. 35-36); Anderson Decl. at 3, ¶ 11(a), Audio Exh. 2 at track 1; Anderson Decl. at 4, ¶ 12, | **Undisputed.** |

[1] All internal alterations, quotation marks, footnotes and citations herein are omitted, and all emphasis is added unless otherwise noted. All "D-Ex." references are to Defendants' exhibits, which are consequently numbered despite being submitted through different supporting declarations. All "P-Ex." references are to Plaintiffs' exhibits, which adopt the same numbering system for the Court's convenience. All "P-Ex." references are to Plaintiffs' exhibits, which adopt the same numbering system for the Court's convenience. P-Exs. 1-5 are to the Declaration of Loren Yukio Kajikawa, and P-Exs. 6-21 are to the Declaration of Gerard P. Fox.

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | Exh. 18 (lyrics). | |
| **2.** "Player" is the name of a 1970s musical band. | Exh. 15 (Plfts' Resp. to 3d RFA) at 18 (No. 97). | **Undisputed.** |
| **3.** *The Player* is the title of a 1988 book by Michael Tolkin. | Exh. 15 (Plfts' Resp. to 3d RFA) at 18 (No. 99). | **Undisputed.** |
| **4.** *The Player* is the title of a 1992 film directed by Robert Altman. | Exh. 15 (Plfts' Resp. to 3d RFA) at 19 (No. 100). | **Undisputed.** |
| **5.** One of the most common systematic grammatical features of African American Vernacular English ("AAVE"), is general non-rhotic behavior by deleting "r" when not followed by a vowel, so that words ending in an "er" sound are pronounced as ending in an | Prof. Morgan Decl. at 1-2, ¶ 7, 2, ¶¶ 8-9. | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| "ah" sound. | | |
| **6.** The AAVE pronunciation of words that end in an "er" sound as ending in an "ah" sound is a longstanding and commonplace urban dialect practice pre-dating 2000, including in rap and hip hop music. | Prof. Morgan Decl. at 2, ¶¶ 8-9. | **Undisputed.** |
| **7.** Pronouncing "player" and "hater" as, respectively, "playa" and "hata" is consistent with and reflects the longstanding and commonplace AAVE grammatical practice predating 2000 of pronouncing words that | Prof. Morgan Decl. at 2 ¶ 10. | **Disputed** to the extent this fact mischaracterizes evidence cited thereto, as the cited statement has nothing to do with "hater"/"hata."<br><br>Moreover, as Professor Kajikawa opines, this fact does not preclude a creative usage of these terms, as they were used in Plaintiffs' song. (Declaration of Loren |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| end in an "er" sound as ending in an "ah" sound. | | Kajikawa In Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ["Kajikawa Decl."] at ¶ 12.)<br><br>In fact, Professor Kajikawa dismisses this difference as a function of Defendant Swift's identity: indeed, for a white country singer to use traditionally African American vernacular would be an equivalent of "vocal blackface." (P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 43-46; *see also* P-Ex. 5 [Kajikawa Rebuttal Report to Prof. Morgan's Report] at ¶¶ 10-11.) In the end, both Professor Lewis and Professor Morgan also agree that there is no significant |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | difference between the "player"/"playa" and "hater"/"hata" as they are used in the songs at issue. (P-Ex. 10 [Morgan Depo.] at 85:6-11; P-Ex. 9 [Lewis Depo.] at 131:6-132:5.) |
| **8.** "Playa" is the name of a 1990s R&B musical group. | Exh. 15 (Plfts' Resp. to 3d RFA) at 18 (No. 98). | **Undisputed.** |
| **9.** The 1991 recording of *Psycobetabuckdown* by Cypress Hill includes in its lyrics the phrase "you're a hater." | Exh. 15 (Plfts' Resp. to 3d RFA) at 5 (Nos. 37-38); Anderson Decl. at 3, ¶ 11(b), Audio Exh. 2 at track 2; Anderson Decl. at 4, ¶ 13, Exh. 19 (lyrics). | **Undisputed.** |
| **10.** The 1993 recording of *Player's Ball* by Outkast includes in its lyrics the phrase "cause I'm a player, | Exh. 15 (Plfts' Resp. to 3d RFA) at 5-6 (Nos. 39-40); Anderson Decl. at 3, ¶ 11(c), Audio Exh. 2 at track 3; Anderson Decl. at | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| doing what the players do." | 4, ¶ 14, Exh. 20 (lyrics). | |
| **11.** The 1994 recording of *Playa Playa* by Big Mike includes in its lyrics the phrase "I'm just a playa, playa." | Exh. 15 (Plfts' Resp. to 3d RFA) at 6 (Nos. 41-42); Anderson Decl. at 3, ¶ 11(d), Audio Exh. 2 at track 4; Anderson Decl. at 4, ¶ 15, Exh. 21 (lyrics). | **Undisputed.** |
| **12.** The 1995 recording of *Playa Hata* by Luniz includes in its lyrics the phrases "playa hataz hate me" and "why you wanna playa hate on me?" | Exh. 15 (Plfts' Resp. to 3d RFA) at 6-7 (Nos. 43-45); Anderson Decl. at 3, ¶ 11(e), Audio Exh. 2 at track 5; Anderson Decl. at 4, ¶ 16, Exh. 22 (lyrics). | **Undisputed.** |
| **13.** The 1996 recording of *Fool Get a Clue* by Digital Underground includes in its lyrics the phrase "players gonna play." | Exh. 15 (Plfts' Resp. to 3d RFA) at 7 (Nos. 46-47); Anderson Decl. at 3, ¶ 11(f), Audio Exh. 2 at track 6; Anderson Decl. at 5, ¶ 17, Exh. 23 (lyrics); Anderson Decl. at 2, ¶ 6, Exh 11 (Kajikawa Depo.) | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | at 95:16-19. | |
| **14.** The 1996 recording of *Man U Luv Ta Hate* by Sir Mix-A-Lot includes in its lyrics the phrases "playa hate," "playa haters," "player hatin'," "playa," "haters." | Exh. 15 (Plfts' Resp. to 3d RFA) at 7-9 (Nos. 48-53); Anderson Decl. at 3, ¶ 11(g), Audio Exh. 2 at track 7; Anderson Decl. at 5, ¶ 18, Exh. 24 (lyrics). | **Undisputed.** |
| **15.** The 1996 recording of *Playa in Me* by Mo Thugs includes in its lyrics the phrases "playa hatin'," "playa in me," "playa haters," and "playa." | Exh. 15 (Plfts' Resp. to 3d RFA) at 9-10 (Nos. 54-58); Anderson Decl. at 3, ¶ 11(h), Audio Exh. 2 at track 8; Anderson Decl. at 5, ¶ 19, Exh. 25 (lyrics). | **Undisputed.** |
| **16.** The 1996 recording of *Playa Hater* by Flesh-N-Bone includes in its lyrics the phrases "playa haters," "plate hate," and "why we gotta deal with the haters | Exh. 15 (Plfts' Resp. to 3d RFA) at 10 (Nos. 59-62); Anderson Decl. at 3, ¶ 11(i), Audio Exh. 2 at track 9; Anderson Decl. at 5, ¶ 20, Exh. 26 (lyrics). | **Undisputed.** |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| every day?" | | |
| **17.** The 1997 recording of *Family Tree* by Bone Thugs-N-Harmony includes in its lyrics the phrases "playa haters," playa hatas," and "playa hatin'." | Exh. 15 (Plfts' Resp. to 3d RFA) at 10-11 (Nos. 63-66); Anderson Decl. at 3, ¶ 11(j), Audio Exh. 2 at track 10; Anderson Decl. at 5, ¶ 21, Exh. 27 (lyrics). | **Undisputed.** |
| **18.** The 1997 recording of *Playa Hater* by The Notorious B.I.G. includes in its lyrics the phrases "playa haters," "playa playa (hater)," and "playa." | Exh. 15 (Plfts' Resp. to 3d RFA) at 11-12 (Nos. 67-70); Anderson Decl. at 3, ¶ 11(k), Audio Exh. 2 at track 11; Anderson Decl. at 5, ¶ 22, Exh. 28 (lyrics). | **Undisputed.** |
| **19.** The 1997 recording of *Mo' Thug Family Tree* by Bone Thugs-N-Harmony includes in its lyrics the phrase "playa haters gonna hate." | Exh. 15 (Plfts' Resp. to 3d RFA) at 12-13 (Nos. 71-72); Anderson Decl. at 4, ¶ 11(l), Audio Exh. 2 at track 12; Anderson Decl. at 5, ¶ 23, Exh. 29 (lyrics); Exh. 11 (Kajikawa Depo.) | **Undisputed.** |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | at 111:7-18. | |
| **20.** The 1998 recording of *Still Not a Player* by Big Punisher includes in its lyrics the phrases "I'm still not a player, but you still a hater," and "player." | Exh. 15 (Plfts' Resp. to 3d RFA) at 13 (Nos. 73-75); Anderson Decl. at 4, ¶ 11(m), Audio Exh. 2 at track 13; Anderson Decl. at 5, ¶ 24, Exh. 30 (lyrics). | **Undisputed.** |
| **21.** The 1998 recording of *Dump, Bust, Blast* by E-40 includes in its lyrics the phrase "haters gonna hate." | Exh. 15 (Plfts' Resp. to 3d RFA) at 13-14 (Nos. 76-77); Anderson Decl. at 4, ¶ 11(n), Audio Exh. 2 at track 14; Anderson Decl. at 5, ¶ 25, Exh. 31 (lyrics); Exh 11 (Kajikawa Depo.) at 115:9-19. | **Undisputed.** |
| **22.** The 1998 recording of *Hater Players* by Black Star includes in its lyrics the phrase "hater-players." | Exh. 15 (Plfts' Resp. to 3d RFA) at 14 (Nos. 78-79); Anderson Decl. at 4, ¶ 11(o), Audio Exh. 2 at track 15; Anderson Decl. | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | at 5, ¶ 26, Exh. 32 (lyrics). | |
| **23.** The 1999 recording of *Don't Hate the Playa* by Ice-T includes in its lyrics the phrases "don't hate the player," "player," and "hater." | Exh. 15 (Plfts' Resp. to 3d RFA) at 14-15 (Nos. 80-83); Anderson Decl. at 4, ¶ 11(p), Audio Exh. 2 at track 16; Anderson Decl. at 5, ¶ 27, Exh. 33 (lyrics). | **Undisputed.** |
| **24.** The 2000 recording of *Who Run It* by Three 6 Mafia includes in its lyrics the phrases "it's that player that you love to hate" and "hater." | Exh. 15 (Plfts' Resp. to 3d RFA) at 15-16 (Nos. 84-86); Anderson Decl. at 4, ¶ 11(q), Audio Exh. 2 at track 17; Anderson Decl. at 5, ¶ 28, Exh. 34 (lyrics). | **Undisputed.** |
| **25.** The 2000 recording of *Don't Hate the Player* by Too Short includes in its lyrics the phrases "don't hate the player," "if you never was a player, I can't hate you," "you never was a player, we can't hate | Exh. 15 (Plfts' Resp. to 3d RFA) at 16-17 (Nos. 87-92); Anderson Decl. at 4, ¶ 11(r), Audio Exh. 2 at track 18; Anderson Decl. at 5, ¶ 29, Exh. 35 (lyrics). | **Undisputed.** |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| you," "player hated," and "player." | | |
| **26.** The 2000 recording of *Feelin' on Yo Booty* by R. Kelly includes in its lyrics the phrases "players wanna play," "ballers wanna ball," and "rollers wanna roll." | Exh. 15 (Plfts' Resp. to 3d RFA) at 17-18 (Nos. 93-96); Anderson Decl. at 4, ¶ 11(s), Audio Exh. 2 at track 19; Anderson Decl. at 6, ¶ 30, Exh. 36 (lyrics). | **Disputed In Part.** It is undisputed that the lyrics in *Feelin' on Yo Booty* include the phrases "players wanna play," "ballers wanna ball," and "rollers wanna roll," which, unlike Plaintiffs' chorus, is a three-part structure that utilizes two of the groups of actors appearing in Plaintiffs' chorus, yet sequences them differently and replaces "gonna" with "wanna" in both. Also disputed that *Feelin' on Yo Booty* was released in 2000, prior to *Playas*. *Feeling' on Yo Booty* was released in 2001, as Defendants' own production demonstrates. |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | (P-Ex. 12 at D-000367.1; *accord* https://en.wikipedia.org/wiki/Feelin%27_on_Yo_Booty.) |
| **27.** The 2000 film *Next Friday* includes in its dialogue the phrase "playa-hater." | Exh. 15 (Plfts' Resp. to 3d RFA) at 19 (No. 101). | **Undisputed.** |
| **28.** Before 2001, player and hater phrases, often with AAVE pronunciations "playa" and "hata" were widely used, including in popular music. | Exh. 15 (Plfts' Response to 3d RFA) at 4:24-19:10 (Nos. 35-101), & Exh. 11 (Kajikawa Depo.) at 92:12-93:15; Prof. Morgan Decl. at 2, ¶ 10, 3, ¶ 15. | **Disputed.** The evidence cited does not support the proposition that the referenced phrases were used in the exact same combination as in *Playas*. (*See* P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶ 39 ["[T]hat the words 'player' and 'hater' were in usage prior to 2000 does not mean that [Plaintiffs'] lyrics are unoriginal. … The plaintiffs |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
| --- | --- | --- |
| | | do not seek copyright protection for using the individual words 'player' and 'hater' but for the way those words are used in the chorus of their song as the beginning of a four-part poetic sequence that expresses a larger idea."]; P-Ex. 2 [Kajikawa Report] at ¶¶ 1 [Plaintiffs' usage of the elements "is distinct from the way the words 'player' and 'hater' appear in previous song lyrics"], 8-10 [explaining why Plaintiffs' usage is distinct from prior art and concluding that their chorus embodies "poetic wordplay … [that] expresses a larger idea … and does so in a catchy way"] & 15-19 [Plaintiffs' originality cannot be diminished by claims of |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | common coin, banality or brevity: Plaintiffs' originality "resides in the particular way these words were used in service of a larger idea … [as Plaintiffs] take[] words that may seem mundane but transform[] them into a catchy way of saying something about the state of the world. This is a poetic use of language that transcends the original meaning of the words 'player' and 'hater' as they usually appear in song lyrics…"]; P-Ex. 5 [Kajikawa Rebuttal Report to Prof. Morgan Report] at ¶¶ 3-7 [analyzing prior art utilizing similar phrasing and rejecting the notion that any of it combined the elements in the same way; concluding |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | that Plaintiffs' usage of these elements was "distinct, original, and creative" because, *inter alia*, "they were never used in this particular way as part of a four-part poetic sequence to express a larger idea about the state of the world"]; P-Ex. 7 [Kajikawa Depo.] at 94:21-95:5 [expressing doubts that prior "isolated words or phrases" could be relevant because "the usage in those cases is different"], 169:25-171:11 [the sequence at issue is an original creation as based on "the recombination, reuse and sort of deployment of existing things. Nothing is made out of scratch, right? Everything is made of something else, but … when |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | [preexisting unprotected elements] are combined and put forth into … a new work in a way that departs from prior usage that introduced a new way of expressing an idea," then the work is original], 183:12-185:18 [it is Plaintiffs' combination of player/hater phrases that is unique as they drew them together to create a new way to express a larger idea] & 187:18-188:2 [it is Plaintiffs' unique expression of the larger idea in the combination of the four phrases at issue that makes their creation original]; P-Ex. 9 [Lewis Depo.] at 90:15-91:13 [confirming that no prior art combined the two tautological phrases "players gonna play" and |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | "haters gonna hate"]; P-Ex. 10 [Morgan Depo.] at 66:21-67:8 & 81:9-82:11 [same].) |
| **29.** Before plaintiffs' song, *Playas Gon' Play* ("*Playas*"), player hater phrases, including "playas gon' play" and "haters gonna hate," were part of the urban vocabulary. | Exh. 11 (Kajikawa Depo.) at 116:21-117:2. | **Disputed** for the reasons stated above for Plaintiffs' response in No. 28. |
| **30.** Before plaintiffs' song, player hater phrases, including "playas gonna play" and "haters gonna hate," were present in musical works. | Exh. 11 (Kajikawa Depo.) at 117:5-13. | **Disputed** to the extent this mischaracterizes Dr. Kajikawa's testimony. Dr. Kajikawa clarified that the use of the phrases in prior musical works was different than the use in *Playas*. (P-Ex. 7 [Kajikawa Depo.] at 94:21-95:5 [expressing doubts that prior "isolated words or phrases" could be relevant because "the usage in those |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | cases is different"], 169:25-171:11 [the sequence at issue is an original creation as based on "the recombination, reuse and sort of deployment of existing things], 183:12-185:18 [it is Plaintiffs' combination of player/hater phrases that is unique as they drew them together to create a new way to express a larger idea] & 187:18-188:2 [it is Plaintiffs' unique expression of the larger idea in the combination of the four phrases at issue that makes their creation original]; P-Ex. 3 [Kajikawa Rebuttal Report to Dr. Ferrara Report] at ¶¶ 2 & 10 ["[A]lthough the words "players" and "haters" can be found in music prior to 2000, the way that these words and phrases are used |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
| --- | --- | --- |
| | | together "Playas Gon' Play" is unprecedented, creative, and substantially similar to how they are used in "Shake It Off."]; P-Ex. 5 [Kajikawa Rebuttal Report to Prof. Morgan Report] at ¶¶ 2 ["Although one can find the words "player" and "hater" in lyrics prior to "Playas Gon' Play," there are clear differences between these examples and the way these words are used in the plaintiff's song."] & 7 ["The words 'player' and 'hater' may have appeared in previous songs, but they were never used in this particular way as part of a four-part poetic sequence to express a larger idea about the state of the word. Moreover, in all prior cases |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | … the speakers use the terms 'player' and 'hater' to label themselves or other people as players or haters. However, the chorus of Playas Gon' Play uses these words in a sequence of tautological phrases that position the speaker above the fray as neither a player nor hater."].)<br><br>*See* Plaintiffs' Evidentiary Objections To Certain Evidence Submitted In Support Of Defendants' Motion For Summary Judgment ("Evidentiary Objections") filed herewith at No. 16. |
| **(b) Plaintiffs' 2001 Musical Composition, *Playas*** | | |
| **31.** In 2001, Plaintiffs co-authored the song titled, | Complaint (Doc. 1) at 4, ¶ | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| *Playas Gon' Play* ("*Playas*"). | 15. | |
| **32.** *Playas* was recorded by the female group 3LW and released to the public in May 2001. | Complaint (Doc. 1) at 4, ¶ 15. | **Disputed.** The single *Playas* was released in May 2001, however the 3LW album which contained *Playas* was released in November 2000. (P-Exs. 14 [Bates Hall0226] & 15 [Hall0228].) |
| **33.** *Playas* is a romantic love song in which the singer tells her boyfriend that, despite "so-called friends" trying to break them up, she will stay true to him and he can trust her as she trusts him. | Anderson Decl. at 2, ¶ 6, & Exh. 11 (Kajikawa Depo.) at 262:21-263:3, & at 162:20-163:5; Exh. 13 (*Playas* lyrics), Audio Exh. 1 at track 1 (*Playa*). | **Disputed.** *Playas* is a song which expresses the idea that others will do what they do, yet one need not be concerned with what they do and their judgment but rather stay one's own course. (P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶ 20 [underscoring the "same basic theme, such as "maintaining healthy relationships in the face of |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | social adversity,'" be it a "romantic" relationship or "a relationship with oneself"]; P-Ex. 7 [Kajikawa Depo.] at 188:13-189:17 [discussing central idea of people pursuing their own interests in contrast to the interests of the speaker and the speaker resisting these schemes].) |
| **(c) The 2014 Musical Work, *Shake It Off*** | | |
| **34.** In 2014, the musical composition *Shake It Off* was created and recordings of Taylor Swift's performance of *Shake It Off* were released to the public. | Complaint at 6, ¶ 26. | **Undisputed.** |
| **35.** In *Shake It Off*, the singer recounts that people criticize her but she's going to shake it off and find | Exh. 11 (Kajikawa Depo.) at 154:1-8; Exh. 14 (*Shake It Off* lyrics), Audio Exh. 1 | **Disputed.** *Shake It Off* is a song which expresses the idea that others will do what they do, yet one need not be |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| comfort in her music. | at track 2 (*Shake It Off*). | concerned with what they do and their judgment. (P-Ex. 2 [Kajikawa Report] at ¶ 23 ["By using the same words and four-part poetic strategy, Swift expresses the same idea as 3LW: that we should not be concerned with what other people say and do, and that we should trust in ourselves."]; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶ 20 [basic theme of maintaining healthy relationships in the face of social adversity]; D-Ex. 6 [Lewis Rebuttal] at 22-23 [agreeing that there is a "general similarity in presenting a speaker who is considering negative comments made by others" and that "both works depict in a general way a world in |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | which some people are critical"]; P-Ex. 9 [Lewis Depo.] at 43:21-44:12 [agreeing both songs recount people speaking negatively about the speaker].)<br><br>Further disputed as Dr. Kajikawa's testimony used to support this fact has been misstated. (P-Ex. 7 [Kajikawa Depo.] at 154:2-8.)<br><br>*See* Evidentiary Objections at No. 17. |
| **(d) Plaintiffs' Claim of Infringement** | | |
| **36.** Plaintiffs' Complaint alleges a single claim for copyright infringement against all defendants. | Complaint at 9:6-10:22. | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | |
| **(e) Whether *Playas* and *Shake It Off* Are Substantially Similar Under the Extrinsic Test** **(1) Applying the Extrinsic Test to *Playas* and *Shake It Off* as Musical Works with Lyrics** | | |
| **37.** In a musicological analysis of musical compositions to determine whether they share substantial similarities under the extrinsic test, the important elements are (1) structure; (2) harmony; (3) rhythm; and (4) melody, and when present, (5) lyrics. | Dr. Ferrara Decl. at 1-5, ¶ 6-6(f), Exh. 1 (Ferrara initial Report) at 1-4, ¶¶ 3, 6. | **Disputed.** This is not an uncontroverted fact rather a statement of expert opinion.<br><br>Further disputed to the extent Defendants contend that Plaintiffs claim infringement of the underlying music such that the musical compositions, apart from the lyrics, is relevant. (P-Ex. 6 [Pl. Resp. to 2nd Request for Admission ("RFA")] at 5:6-13 (No. 33)] ["Plaintiffs |

| <u>**Defendants' Uncontroverted Fact**</u> | <u>**Evidence in Support**</u> | <u>**Plaintiffs' Response**</u> |
|---|---|---|
| | | admit that they do not allege an infringement of a copyright in a sound recording of *Playas*. However, to the extent any sound recording of *Playas* contains the lyrical content that Plaintiffs contend Defendants misappropriated for *Shake It Off*, Plaintiffs do allege infringement of their copyright."]; Compl. ¶ 43.)<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody]; *see also* Dkt. No. 92-3 [Ferrara Decl.] at ¶ 6(e) [despite the alleged musical differences, conceding "lyrical similarities" between the songs]; P-Ex. 2 [Kajikawa Report] at ¶ 21 [acknowledging that despite their lyrical similarities, the two songs "don't otherwise sound much alike. As a musicologist, I understand the need to consider this question. However, song lyrics are separately protected by copyright irrespective of their musical setting."]; P-Ex. 3 [Kajikawa Rebuttal to Dr. Ferrara |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | Report] at ¶ 1 [dismissing claimed differences in musical "structure, harmony, rhythm, and melody" as they are "irrelevant to this case, which does not allege any musical copying"]; P-Ex. 7 [Kajikawa Depo.] at 76:22-78:2 [("[I]t's important to understand this case and know that this wasn't a question of musical similarity, but one of lyrical similarity."] & 130:14-131:20 [drawing on his own teachings "about copyright law in academic context for many, many years," observing that "the musical track and the lyrics are protected separately under copyright law[,] … [and Plaintiffs are] not claiming any infringement on the |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | music"]; *accord* Kajikawa Decl. at ¶ 19.)<br><br>*See* Evidentiary Objections at No. 18. |
| **38.** In his initial and Rebuttal Reports, Plaintiffs' expert, Prof. Kajikawa, did not conduct an analysis of the music in *Playas* and *Shake It Off*. | Exh. 11 (Kajikawa Depo.) at 127:25-128:5, 134:25-135:19. | **Disputed in Part.** To the extent the musical compositions of *Playas* and *Shake It Off* include the lyrics to both works, Dr. Kajikawa did conduct an analysis thereof. (P-Ex. 2 [Kajikawa Report] at ¶¶ 1 & 21-22.) |
| **39.** Prof. Kajikawa testified at his deposition that he had not at any time conducted an analysis of the music in *Playas* and *Shake It Off*. | Exh. 11 (Kajikawa Depo.) at 127:25-128:5, 134:25-135:22. | **Disputed in Part.** To the extent the musical compositions of *Playas* and *Shake It Off* include the lyrics to both works, Dr. Kajikawa did conduct an analysis thereof. (*See also* P-Ex. 7 [Kajikawa Depo.] at |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | 135:5-22 [distinguishing between music as apart from the lyrics or music of the song].) |
| **40.** Prof. Kajikawa's knowledge of the extrinsic test is limited to knowing that there is an extrinsic and an intrinsic test and one involves experts while the other involves lay people, but he does not know which is which. | Exh. 11 (Kajikawa Depo.) at 132:19-133:18. | **Disputed** to the extent Prof. Kajikawa's testimony used to support this fact has been misstated. (P-Ex. 7 [Kajikawa Depo.] at 133:2-14 [Prof. Kajikawa testified that he knows the extrinsic test involves experts and thus an objective comparison, as distinguished from a lay, subjective opinion used for the intrinsic test].) Further, Prof. Kajikawa has not been designated an expert witness on copyright law in this case. (Kajikawa Decl. at ¶ 4.)<br><br>*See* Evidentiary Objections |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | at No. 19. |
| **41.** Prof. Kajikawa does not know the requirements of the extrinsic test. | Exh. 11 (Kajikawa Depo.) at 132:19-133:18. | **Disputed** to the extent Prof. Kajikawa's testimony used to support this fact has been misstated. (P-Ex. 7 [Kajikawa Depo.] at 133:2-14 [Prof. Kajikawa testified that he knows the extrinsic test involves experts and thus an objective comparison, as distinguished from a lay, subjective opinion used for the intrinsic test]. Further, Prof. Kajikawa has not been designated an expert witness on copyright law in this case. (Kajikawa Decl. at ¶ 4.)<br><br>*See* Evidentiary Objections at No. 20. |
| **(i) Structure** | | |
| **42.** "Structure" is the | Dr. Ferrara Decl. at 2, ¶ | **Disputed.** This is not an |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| organization of musical units or groups, such as verses and choruses, which in turn consist of phrases. | 6(b), & Exh. 1 (Ferrara initial Report) at 3, ¶ 6(a). | uncontroverted fact rather a statement of expert opinion. Further disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Further disputed to the extent Defendants claim this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.)<br><br>Moreover, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 21. |
| **43.** *Playas* and *Shake It Off* incorporate general structural building blocks, organized differently. | Dr. Ferrara Decl. at 2, ¶ 6(b), & Exh. 1 (Ferrara initial Report) at 4-6, ¶¶ 7-10. | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | at No. 22. |
| **44.** *Playas* includes a pre-intro and re-intro, but *Shake It Off* does not. | Dr. Ferrara Decl. at 2, ¶ 6(b), & Exh. 1 (Ferrara initial Report) at 4-6, ¶¶ 7-9. | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 23. |
| **45.** *Shake It Off* includes pre-choruses, post-choruses and a breakdown, but *Playas* does not. | Dr. Ferrara Decl. at 2, ¶ 6(b), & Exh. 1 (Ferrara initial Report) at 4-6, ¶¶ 7-9. | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
| --- | --- | --- |
| | | disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 24. |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| **46.** There are significant structural differences between *Playas* and *Shake It Off*. | Dr. Ferrara Decl. at 2, ¶ 6(b), & Exh. 1 (Ferrara initial Report) at 5-6, ¶¶ 9-10. | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 25. |
| **47.** There are no musicologically significant similarities in the structure of *Playas* and *Shake It Off*. | Dr. Ferrara Decl. at 2, ¶ 6(b), & Exh. 1 (Ferrara initial Report) at 5-6, ¶¶ 9-10; Exh. 11 (Kajikawa Depo.) at 135:23-25, 136:14-20. | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 26. |
| **(ii) Harmony** | | |
| **48.** "Harmony" refers to | Dr. Ferrara Decl. at 2-3, ¶ | **Disputed.** This is not an |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| the tonal relationship of pitches that sound simultaneously, especially with respect to the use and organization of "chords," a sequence of which is referred to as a chord progression, with the rate of change of chords referred to as harmonic rhythm. | 6(c), & Exh. 1 (Ferrara initial Report) at 3, ¶ 6(b). | uncontroverted fact rather a statement of expert opinion.<br><br>Further disputed to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 27. |
| **49.** *Playas* is recorded in the key of C-sharp minor. | Dr. Ferrara Decl. at 2-3, ¶ 6(c), & Exh. 1 (Ferrara initial Report) at 6, ¶ 12. | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
| --- | --- | --- |
| | | 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | at No. 28. |
| **50.** *Shake It Off* is recorded in G major. | Dr. Ferrara Decl. at 2-3, ¶ 6(c), & Exh. 1 (Ferrara initial Report) at 6, ¶ 12. | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure]; 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 29. |
| **51.** C-sharp minor and G-sharp major are different keys and modalities. | Dr. Ferrara Decl. at 2-3, ¶ 6(c), & Exh. 1 (Ferrara initial Report) at 6, ¶ 12. | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
| --- | --- | --- |
| | | disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 30. |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| **52.** The chords in *Playa* are very different from the chords in *Shake It Off*. | Dr. Ferrara Decl. at 2-3, ¶ 6(c), & Exh. 1 (Ferrara initial Report) at 6, ¶ 12. | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 31. |
| **53.** The chord progressions are very different in *Playas* and *Shake It Off*, including in the sections that have the claimed similar lyrics. | Dr. Ferrara Decl. at 2-3, ¶ 6(c), & Exh. 1 (Ferrara initial Report) at 6-7, ¶¶ 13-15. | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 32. |
| **54.** The harmonic rhythms are very different | Dr. Ferrara Decl. at 2-3, ¶ 6(c), & Exh. 1 (Ferrara | **Disputed** to the extent Defendants contend this is |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| in *Playas* and *Shake It Off*, including in the sections that have the claimed similar lyrics. | initial Report) at 7, ¶ 16. | relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 33. |
| **55.** There are no musicologically significant similarities in the harmony of *Playas* and *Shake It Off*. | Dr. Ferrara Decl. at 2-3, ¶ 6(c), & Exh. 1 (Ferrara initial Report) at 8, ¶ 17; Exh. 11 (Kajikawa Depo.) at 136:24-137:14. | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above. |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 34. |
| **(iii) Rhythm** | | |
| **56.** "Rhythm" refers to the pattern and organization of the time | Dr. Ferrara Decl. at 3, ¶ 6(d), & Exh. 1 (Ferrara initial Report) at 4, 8, ¶¶ | **Disputed.** This is not an uncontroverted fact rather a |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| values of sounds and silences as well as the overall rhythmic flow and feel in musical time. | 6(c), 18. | statement of expert opinion.<br><br>Further disputed to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 35. |
| **57.** Both *Playas* and *Shake* are in 4/4 meter, or "common time," which is a commonplace musical building block. | Dr. Ferrara Decl. at 3, ¶ 6(d), & Exh. 1 (Ferrara initial Report) at 8, ¶ 19. | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
| --- | --- | --- |
| | | disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 6 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar]. 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 36. |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| **58.** The tempo of *Playas* is 93 beats per minute while *Shake* is much faster at 160 beats per minute. | Dr. Ferrara Decl. at 3, ¶ 6(d), & Exh. 1 (Ferrara initial Report) at 8, ¶ 20. | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 37. |
| **59.** The melodies in *Playas* include considerable rhythmic syncopation, while the melodies in *Shake* do not. | Dr. Ferrara Decl. at 3, ¶ 6(d), & Exh. 1 (Ferrara initial Report) at 8, 13, ¶¶ 22, 35. | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 38. |
| **60.** The drums and percussions in *Playas* | Dr. Ferrara Decl. at 3, ¶ 6(d), & Exh. 1 (Ferrara | **Disputed** to the extent Defendants contend this is |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| consist largely of rhythmically complex patterns of programmed electronic drum sounds. | initial Report) at 8-9, ¶ 23. | relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
| --- | --- | --- |
| | | similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 39. |
| **61.** The rhythms in the vocal and instrumental parts in *Playas* and *Shake* are very different. | Dr. Ferrara Decl. at 3, ¶ 6(d), & Exh. 1 (Ferrara initial Report) at 8, ¶¶ 21. | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above. |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 40. |
| **62.** There are no musicologically significant rhythmic similarities between *Playas* and *Shake* | Dr. Ferrara Decl. at 3, ¶ 6(d), & Exh. 1 (Ferrara initial Report) at 9, ¶ 24; Exh. 11 (Kajikawa Depo.) | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| *It Off*. | at 137:5-9. | infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 41. |
| **(iv) Melody** | | |
| **63.** "Melody" is a single line of music that consists primarily of a sequence of pitches – that is, the specific high or low placement of a musical sound – and the rhythmic durations of those pitches within a melodic phrase structure. | Dr. Ferrara Decl. at 3-5, ¶ 6(e), & Exh. 1 (Ferrara initial Report) at 9, ¶ 25. | **Disputed.** This is not an uncontroverted fact rather a statement of expert opinion.<br><br>Further disputed to the extent Defendants claim this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 42. |
| **64.** Transposing the | Dr. Ferrara Decl. at 3-5, ¶ | **Disputed** to the extent |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| melodies of *Playas* and *Shake It Off* the relative keys of A minor and C major, the order and metric positions of approximately 85% of the notes in the choruses of *Playas* and *Shake* are different. | 6(e), & Exh. 1 (Ferrara initial Report) at 10-11, ¶¶ 29, 31. | Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl. ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 43. |
| **65.** Transposing the melodies in the choruses of *Playas* and *Shake It Off* to C minor and C major, none of the notes are in the same order and metric position. | Dr. Ferrara Decl. at 3-5, ¶ 6(e), & Exh. 1 (Ferrara initial Report) at 10, 12, ¶¶ 30, 32. | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 44. |
| **66.** The overall rhythmic settings of the lyrics in the | Dr. Ferrara Decl. at 5, ¶ 6(f), & Exh. 1 (Ferrara | **Disputed** to the extent Defendants contend this is |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| choruses of *Playas* and *Shake* are very different. | initial Report) at 13-14, ¶ 35. | relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 45. |
| **67.** There are very significant melodic differences between *Playas* and *Shake*, including in the sections that have the claimed similar lyrics. | Dr. Ferrara Decl. at 5, ¶ 6(f), & Exh. 1 (Ferrara initial Report) at 14-15, ¶ 36. | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above. |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 46. |
| **68.** There are no musicologically significant melodic similarities between *Playas* and *Shake* | Dr. Ferrara Decl. at 5, ¶ 6(f), & Exh. 1 (Ferrara initial Report) at 17, ¶ 39; Exh. 11 (Kajikawa Depo.) | **Disputed** to the extent Defendants contend this is relevant to this case. Plaintiffs do not claim |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| *It Off*. | at 137:10-14. | infringement of the underlying music such that the musical compositions, apart from the lyrics, are not relevant. (P-Ex. 6 [Pl. Resp. to 2nd RFA] at 5:6-13 (No. 33); Compl., ¶ 43.) Further disputed for the reasons stated in Plaintiffs' response to No. 37 above.<br><br>Furthermore, Dr. Ferrara testified that neither music, melody, harmony nor rhythm has to be similar for the lyrics to be similar. (P-Ex. 8 [Ferrara Depo.] at 88:12-25 [significant similarity in music underlying a work not necessary for the lyrics in the work to be significantly similar], 89:7-19 [same re: structure], 92:13-22 [same |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | re: harmony], 93:2-94:7 [same re: rhythm] & 97:6-98:2 [same re: melody].)<br><br>*See* Evidentiary Objections at No. 47. |
| **(v) Lyrics** | | |
| **69.** "Lyrics" are the words that are sung or spoken in a song. | Dr. Ferrara Decl. at 5, ¶ 6(f), & Exh. 1 (Ferrara initial Report) at 4, ¶¶ 6(e). | **Disputed.** This is not an uncontroverted fact rather a statement of expert opinion.<br><br>*See* Evidentiary Objections at No. 48. |
| **a. Plaintiffs' Claimed Substantial Similarity Is Limited to Lyrics in the Two Songs' Choruses** | | |
| **70.** Plaintiffs contend that *Shake It Off* copies the following sequence of four tautophrases in the lyrics of *Playas*' choruses:<br>Playas, they gon' play<br>And haters, they gonna | Exh. 11 (Kajikawa Depo.) at 185:24-186:17; Complaint at 5-6, ¶¶ 20, 25, 28. | **Disputed in part.** Undisputed that Plaintiffs contend that *Shake It Off* copies four tautophrases in the lyrics of *Playas*' choruses. Disputed that this is the only aspect of *Playas* |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| hate<br>Ballers, they gon' ball<br>Shot callers, they gonna call | | that Plaintiffs contend was copied by Defendants.<br><br>Plaintiffs contend there are at least seven elements in the selection and arrangement of the four-part lyrical sequence at issue that Defendants copied, including Plaintiffs' choices to: (1) combine tautological phrases, (2) via parallel lyrics, (3) each bearing grammatical structure "Xers gonna X", (4) use of four such phrases in the chorus, (5) two of which are variations on playa/hater phrases invoked to open the chorus, (6) each dealing with groups of "Xers" that bear certain negative connotations,[2] (7) |

[2] P-Ex. 2 [Kajikawa Report] at ¶¶ 6 & 7c ["Playing," "hating," "balling" (being flashy or showing off), and "shot calling" (being a dictator) as compared to "playing," "hating,"

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | with the combined effect of expressing a larger idea "that we should not be concerned with what other people say or do, trusting in ourselves instead." (P-Ex. 2 [Kajikawa Report] at ¶ 1 & 11-12 [both songs use "stringking[ly]" similar phraseology to "position the singer (narrator) above the fray"]; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 20 [underscoring the "same basic theme, such as 'maintaining healthy relationships in the face of social adversity,'" be it a "romantic" relationship or a "relationship with oneself"] & 53 [underscoring that both |

"heartbreaking" or faking" in Defendants' song]; *see also id.* at ¶ 10 [all of the four groups invoke the idea of the world full of untrustworthy people].

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | sets of lyrics represent "concrete similarities between a set of specific parallelisms are being used poetically in both songs."]; D-Ex. 6 [Lewis Rebuttal Report] at 22-23 [agreeing that there is a "general similarity in presenting a speaker who is considering negative comments made by others" and that "both works depict in a general way a world in which some people are critical"]; Lewis Decl. at ¶¶ 32-33 [confirming that the choruses of both songs share two similarities: they "contain 'a version of the phrases 'players gonna play' and 'haters gonna hate'" and "include four tautological phrases …., with the structure 'Xers gonna X'"]; |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | D-Ex. 5 [Lewis Initial Report] at 34-36 (observing the use of parallel lyrics in both songs); *accord* Lewis Depo. at 100:5-101:19 [confirming certain lyrical similarities]. |
| **71.** Aside from four tautophrases, the other lyrics in *Playas*' chorus are "That ain't got nothin' to do with me and you, that's the way it is, that's the way it is." | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off*) lyrics; Prof. Lewis Decl. at 8, ¶ 31; Dr. Ferrara Decl. at 4, Musical Example 1. | **Undisputed.** |
| **72.** The lyrics "That ain't got nothin' to do with me and you, that's the way it is, that's the way it is," in *Playas*' chorus do not appear in *Shake It Off*. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off*) lyrics; Exh. 11 (Kajikawa Depo.) at 155:23-156:2, 156:15-22, 228:11-18; Prof. Lewis Decl. at 8, ¶ 31; Dr. Ferrara Decl. at 4, | **Disputed In Part.** The lyrics in this fact do not appear in *Shake It Off* collectively; however, some of those lyrics do appear, and portions of the chorus in *Shake It Off* perform a similar function the function |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | Musical Example 1. | performed by these lyrics in *Playas*. (P-Ex. 2 [Kajikawa Report] at ¶¶ 11-14; P-Ex. 7 [Kajikawa Depo.] at 156:18-157:16.) |
| **73.** *Shake It Off* does not include lyrics substantially similar to *Playas*' lyrics "That ain't got nothin' to do with me and you, that's the way it is, that's the way it is." | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off*) lyrics; Exh. 11 (Kajikawa Depo.) at 157:17-158:4; Prof. Lewis Decl. at 8, ¶ 31; Dr. Ferrara Decl. at 4, Musical Example 1. | **Disputed In Part.** The lyrics in this fact do not appear in *Shake It Off* collectively; however, some of those lyrics do appear, and portions of the chorus in *Shake It Off* perform a similar function the function performed by these lyrics in *Playas*. (P-Ex. 2 [Kajikawa Report] at ¶¶ 11-14; P-Ex. 7 [Kajikawa Depo.] at 156:18-157:16.) |
| **74.** Plaintiffs contend that the allegedly copied portion of *Playas* is contained in the lyrics of | Complaint at 6, ¶¶ 27-28; Exh. 7 (Kajikawa Report) at 1, ¶ 1, at 2, ¶ 4, & at 4- | **Disputed In Part.** Undisputed that Plaintiffs contend that copied portions of *Playas* are contained in |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
| --- | --- | --- |
| *Shake It Off*'s choruses. | 5, ¶ 11. | the lyrics of *Shake It Off*'s choruses. Disputed to the extent that lyrics in *Playas* and *Shake If Off* that appear outside of the choruses of both works also perform the same function. (P-Ex. 7 [Kajikawa Depo.] at 144:19-145:25 [first verse], 147:4-148:10 & 148:15-149:14 [pre-chorus], 281:7-282:12 [bridge]; P-Ex. 2 [Kajikawa Report] at ¶¶ 13-14 & 20; P-Ex. 4 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶¶ 3 [discussing similar characters mentioned in first verse of both songs], 5-7, 10, 13-14, 17, 20 & 35-36 [introduction].) |
| **75.** None of the lyrics in *Shake It Off*'s introduction, verses, pre-choruses, | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. | **Disputed.** Portions of the lyrics in *Playas* and *Shake It Off*'s introduction, verses, |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| interlude, bridge, or post-chorus are substantially similar to lyrics in *Playas*. | at 7-8, 10-11, ¶¶ 29-30, 35-36; Dr. Ferrara Decl. at 5, ¶ 6(f); Exh. 11 (Kajikawa Depo.) at 144:5-18, 146:1-147:3, 147:4-7, 148:11-14, 149:18-150:20-20, 151:23-153:25. | pre-choruses, interlude, bridge, and/or post-chorus perform the same function in both songs. (P-Ex. 7 [Kajikawa Depo.] at 144:19-145:25 [first verse], 147:4-148:10 & 148:15-149:14 [pre-chorus], 281:7-282:12 [bridge]; P-Ex. 2 [Kajikawa Report] at ¶¶ 13-14 ["In both [songs], the verses name particular threats posed by the untrustworthy people referenced in the chorus." Opining that these lyrics "uses the phrases in question to begin a four-part sequence that anchors the chorus and conjures a hostile world."], 17, 20 & 35-36; P-Ex. 4 [Kajikawa Rebuttal to Prof. Lewis' Expert Report] at ¶¶ 3 [discussing similar characters mentioned in first |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | verse of both songs], 5-7, 10, 13-14, 17, 20 & 35-36 [introduction].) |
| **76.** In *Playas*' lyrics the singer tells her romantic interest that so-called friends are trying to break them up but she will not let him go, he should trust her in her love, and he should trust in her love. | Exh. 13 (*Playas* lyrics); Exh. 11 (Kajikawa Depo.) at 158:13-25, 162:20-163:5; Prof. Lewis Decl. at 2-6, ¶¶ 10, 12, 14, 19, 23. | **Disputed.** In *Playas*' lyrics the singer tells the listener that we should not be concerned with what other people say or do, trusting in ourselves instead. (P-Ex. 2 [Kajikawa Report] at ¶¶ 1 & 11-12 [both songs use "striking[ly]" similar phraseology to "position the singer (narrator) above the fray"]; D-Ex. 6 [Lewis Rebuttal] at 22-23 [agreeing that there is a "general similarity in presenting a speaker who is considering negative comments made by others" and that "both works depict in a general way a world in which some people |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | are critical"]; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶ 20 [underscoring the "same basic theme, such as "maintaining healthy relationships in the face of social adversity,'" be it a "romantic" relationship or "a relationship with oneself"]; P-Ex. 7 [Kajikawa Depo.] at 266:3-24 [underscoring both works being centered around "an expression of emotion and resolve in the face of criticism or people who are saying and doing things to undermine them"].) |
| **77.** *Shake It Off*'s lyrics do not refer to so-called friends trying to break up a romantic relationship that the singer has with | Exh. 14 (*Shake It Off* lyrics); Exh. 11 (Kajikawa Depo.) at 162:2-7; Prof. Lewis Decl. at 2-6, ¶¶ 10, | **Disputed in Part** to the extent that in *Playas*' lyrics the singer also tells the listener that we should not be concerned with what other |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| someone. | 12, 14, 19, 23. | people say or do, trusting in ourselves instead. (P-Ex. 2 [Kajikawa Report] at ¶¶ 1 & 11-12 [both songs use "striking[ly]" similar phraseology to "position the singer (narrator) above the fray"]; D-Ex. 6 [Lewis Rebuttal] at 22-23 [agreeing that there is a "general similarity in presenting a speaker who is considering negative comments made by others" and that "both works depict in a general way a world in which some people are critical"]; P-Ex. 4 [Kajikawa Rebuttal Report directed to Prof. Lewis Report] at ¶ 20 [underscoring the "same basic theme, such as "maintaining healthy relationships in the face of social adversity,'" be it a |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
| --- | --- | --- |
| | | "romantic" relationship or "a relationship with oneself"]; P-Ex. 7 [Kajikawa Depo.] at 266:3-24 [underscoring both works being centered around "an expression of emotion and resolve in the face of criticism or people who are saying and doing things to undermine them"].) |
| **78.** Nowhere in *Shake It Off*'s lyrics does the singer tell a romantic interest she will not let him go. | Exh. 14 (*Shake It Off* lyrics); Exh. 11 (Kajikawa Depo.) at 163:6-9; Prof. Lewis Decl. at 2-6, ¶¶ 10, 12, 14, 19, 23. | **Undisputed.** |
| **79.** Nowhere in *Shake It Off*'s lyrics does the singer tell a romantic interest to trust in her love. | Exh. 14 (*Shake It Off* lyrics); Exh. 11 (Kajikawa Depo.) at 163:10-13; Prof. Lewis Decl. at 2-6, ¶¶ 10, 12, 14, 19, 23. | **Undisputed.** |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| **80.** Nowhere in *Shake It Off*'s lyrics does the singer tell a romantic interest that she trusts in his love. | Exh. 14 (*Shake It Off* lyrics); Exh. 11 (Kajikawa Depo.) at 163:14-17; Prof. Lewis Decl. at 2-6, ¶¶ 10, 12, 14, 19, 23. | **Undisputed.** |
| **81.** *Shake It Off*'s lyrics refer to the singer having music in her mind. | Exh. 14 (*Shake It Off* lyrics); Exh. 11 (Kajikawa Depo.) at 154:2-8. | **Undisputed.** |
| **82.** There is no mention in *Playas*' lyrics to music in the singer's mind. | Exh. 13 (*Playas* lyrics); Exh. 11 (Kajikawa Depo.) at 149:15-17. | **Undisputed.** |
| **83.** Plaintiffs contend that the four tautophrases in *Playas* and the four tautophrases in *Shake It Off* convey the idea that the world is full of untrustworthy people who should be ignored. | Anderson Decl. at 1, ¶ 4(a), Exh. 7 (Kajikawa initial Report) at 4, ¶ 10. | **Disputed in Part** to the extent Defendants contend this is the sole shared idea. (P-Ex. 2 [Kajikawa Report], ¶¶ 1 & 11-12 [both songs use "striking[ly]" similar phraseology to "position the singer (narrator) above the fray"]; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
| --- | --- | --- |
| | | Lewis Report] at ¶¶ 20 [underscoring the "same basic theme, such as "maintaining healthy relationships in the face of social adversity,'" be it a "romantic" relationship or "a relationship with oneself"], 29-34 & 55 [observing that Lewis "overlooks" the shared wordplay and other literary devices in the choruses, and the claimed "stylistic differences have no bearing on the central charges in this case;" also observing that both choruses employ "the same colloquial, AAVE-derived terms" and "not only use[] the same words and the same phrases, but [they] do[] so in combination and as part of a similar four-part poetic |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | sequence that expresses a similar idea"]; P-Ex. 7 [Kajikawa Depo.] at 184:19-185:18.) |
| **84.** The concept that the world is full of untrustworthy people appears in lyrics before *Playas*. | Exh. 11 (Kajikawa Depo.) at 187:13-17. | **Disputed.** *Playas* is the first work to express the concept that the world is full of untrustworthy people through the use of four tautological phrases involving players and haters. (P-Ex. 7 [Kajikawa Depo.] at 187:13-188:2, 188:13-189:17, 195:8-19 & 198:18-199:6 [*Shake It Off* "adopts a four-part sequence substituting heartbreakers and fakers or ballers and shot callers to make the same point: The world is full of untrustworthy people, but we should ignore them. As in *Playas*, the words player and |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | hater are not used to label individual people, but to position the singer above the fray."].) |
| **85.** The concept that the world is full of untrustworthy people is not a substantial similarity between *Playas* and *Shake It Off*. | Exh. 11 (Kajikawa Depo.) at 187:18-188:2; Exh. 6 (Lewis Rebuttal Report) at 22-24. | **Disputed.** The evidence used to support this fact has been misstated. Dr. Kajikawa testified that there was substantial similarity in the way both songs expressed the concept that the world is full of untrustworthy people. (P-Ex. 7 [Kajikawa Depo.] at 187:18-188:2 & 198:18-199:6 [*Shake It Off* "adopts a four-part sequence substituting heartbreakers and fakers or ballers and shot callers to make the same point: The world is full of untrustworthy people, but we should ignore them. As in |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | *Playas*, the words player and hater are not used to label individual people, but to position the singer above the fray."]; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 29-34 & 55 [observing that Lewis "overlooks" the shared wordplay and other literary devices in the choruses, and the claimed "stylistic differences have no bearing on the central charges in this case;" also observing that both choruses employ "the same colloquial AAVE-derived terms" and "not only use[] the same words and the same phrases, but [they] do[] so in combination and as part of a similar four-part poetic sequence that expresses a |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | similar idea"].)<br><br>*See* Evidentiary Objections at No. 49. |
| **86.** Plaintiffs also contend that in both *Playas* and *Shake It Off* the singer is facing "some kind of an existential threat that the singer (narrator) seeks to counter." | Exh. 7 (Kajikawa initial Report) at 6, ¶ 17, at 7, ¶ 19. | **Undisputed.** |
| **87.** Plaintiffs contend that in *Playas* the singer faces the existential threat that so-called friends are trying to break up her romantic relationship with the person she is singing to. | Exh. 11 (Kajikawa Depo.) at 202:4-20. | **Disputed In Part.** Undisputed that the singer faces the existential threat that so-called friends are trying to break up her romantic relationship. Disputed to the extent this fact attempts to limit the existential threat that Dr. Kajikawa testified to. Dr. Kajikawa testified that the |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | threat was people talking negatively about the singer's romantic partner and relationship. (P-Ex. 7 [Kajikawa Depo.] at 184:19-185:18, 200:16-202:3 & 263:9-24; P-Ex. 2 [Kajikawa Report] at ¶ 13.)<br><br>*See* Evidentiary Objections at No. 50. |
| **88.** Plaintiffs contend that in *Shake It Off* the singer, because of the critical things people say about her, faces an existential threat to her self-confidence and self-worth. | Exh. 11 (Kajikawa Depo.) at 202:21-203:6. | **Disputed In Part.** Undisputed that the singer faces the existential threat to her self-confidence and self-worth because of the critical things people say about her. Disputed to the extent this fact attempts to limit the existential threat that Dr. Kajikawa testified to. Dr. Kajikawa testified that the threat was people talking |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | negatively about the singer and interfering with her relationship with herself. (P-Ex. 2 [Kajikawa Report] at ¶ 13; P-Ex. 7 [Kajikawa Depo.] at 203:7-204:7, 208:9-21 & 263:9-24.)<br><br>*See* Evidentiary Objections at No. 51. |
| **89.** The idea of an existential threat appears in works prior to *Playas*. | Exh. 11 (Kajikawa Depo.) at 187:9-12. | **Disputed in part** to the extent Defendants contend that the idea of the same existential threat was expressed through the use of the four tautological phrases before *Playas*. [P-Ex. 4 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶¶ 3-11 (opining that both songs share a protagonist positioned against the world, who is "determined to |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
| --- | --- | --- |
| | | maintain healthy relationships by staying above the fray and ignoring untrustworthy people," even though it is a romantic relationship in Plaintiffs' song and "relationship with oneself" in Defendants' song; the main characters in both songs "share … existential threats" that are described as "gossipy people using similar language … and via a similar four-part poetic sequence that conveys the same fundamental message," while secondary characters in Defendants' song do not appear in and "have no impact on" the allegedly infringing chorus]; P-Ex. 7 [Kajikawa Depo.] at 187:18-188:2; D-Ex. 5 [Lewis Report] at 6 |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | [confirming "commonality between the characters" found in gossipy people present in both songs].) |
| **90.** The idea of the singer facing an existential threat is not a substantial similarity between *Playas* and *Shake It Off*. | Exh. 11 (Kajikawa Depo.) at 187:18-188:2; Exh. 6 (Lewis Rebuttal Report) at 22-24. | **Disputed.** The evidence used to support this fact has been misstated. Dr. Kajikawa testified that there was substantial similarity in the way both songs expressed this idea. (P-Ex. 7 [Kajikawa Depo.] at 187:18-188:2; D-Ex. 5 [Lewis Report] at 6 [confirming "commonality between the characters" found in gossipy people present in both songs]; P. Ex. 9 [Lewis Depo.] at 38:25-39:4 [same]; P-Ex. 4 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶¶ 3-11 (opining that both songs share a protagonist |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | positioned against the world, who is "determined to maintain healthy relationships by staying above the fray and ignoring untrustworthy people," even though it is a romantic relationship in Plaintiffs' song and "relationship with oneself" in Defendants' song; the main characters in both songs "share … existential threats" that are described as "gossipy people using similar language … and via a similar four-part poetic sequence that conveys the same fundamental message," while secondary characters in Defendants' song do not appear in and "have no impact on" the allegedly infringing |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | chorus].)<br><br>*See* Evidentiary Objections at No. 52. |
| **b. Plaintiffs Agree that Each Tautophrase in *Playas*' Sequence of Four Tautophrases Is Unprotected**<br><br>**1. The tautophrase "Players, they gonna play"** | | |
| **91.** The first tautophrase in *Playas*' choruses' sequence of four tautophrases is "Playas, they gon' play." | Exh. 7 (Kajikawa initial Report) at 4, ¶ 9; Exh. 13 (*Playas* lyrics). | **Undisputed.** |
| **92.** Plaintiffs do not claim copyright ownership of the words "the playas gon' play." | Anderson Decl. at 2, ¶ 10(b), Exh. 16 (Pltfs' Resp. to 4th RFA) at 4:24-5:4 (No. 102); Exh. 11 (Kajikawa Depo.) at 172:10-173:17; Anderson | **Disputed In Part.** Plaintiffs do not claim copyright ownership of the words "the playas gon' play" in isolation but do claim copyright ownership of the |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | Decl. at 1, ¶ 4(b), Exh. 10 (Kajikawa Rebuttal Report directed to Prof. Lewis Report) at 13, ¶ 55 ("The plaintiffs do not claim to be the first to use the words in question, nor do they seek copyright protection for individual phrases. If 'Shake It Off' had only used the phrase 'players gonna play' or 'haters gonna hate' there would be no case."). | combinations of words used in the tautological phases at issue. (D-Ex. 16 [Pl. Resp. to 4th RFA] at 4:24-5:4 (No. 102) ["Plaintiffs do claim copyright ownership in the lyrical text to 'Playas Gon' Play,' in which the phrase 'the playas gon' play' constitutes both the title and a significant recurring lyrical phrase…"].) |
| **93.** Plaintiffs do not claim the exclusive right to use the words "the playas gon' play." | Anderson Decl. at 2, ¶ 10(c), Exh. 17 (Pltfs' Supp. Resp. to 4th RFA) at 4:24-25, 5:5-10 (No. 103); Exh. 11 (Kajikawa Depo.) at 172:10-173:17. | **Disputed In Part.** Plaintiffs do not claim the exclusive right to use the words "the playas gon' play" in isolation but do claim the exclusive right to use the combinations of words used in the tautological phases at issue. (D-Ex. 16 [Pl. Supp. Resp. to |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | 4th RFA] at 4:24-25, 5:5-10 [No. 103] ["Plaintiffs do claim copyright ownership right in the lyrical text to 'Playas Gon Play,' in which the phrase 'the playas, gon' play' constitutes both the title and a significant recurring lyrical phrase."].) |
| **94.** Plaintiffs do not claim copyright ownership of the words "playas, they gonna play." | Anderson Decl. at 2, ¶ 10(b), Exh. 16 (Pltfs' Resp. to 4th RFA) at 5:14-22 (No. 104); Exh. 11 (Kajikawa Depo.) at 172:10-173:17. | **Disputed In Part.** Plaintiffs do not claim copyright ownership of the words "playas, they gonna play" in isolation but do claim copyright ownership of the combinations of words used in the tautological phases at issue. (D-Ex. 16 [Pl. Resp. to 4th RFA] at 5:14-22 [No. 104] ["Plaintiffs do claim copyright ownership in the lyrical text to 'Playas Gon Play,' in which the phrase |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | 'playas, they gonna play,' is a significant recurring lyrical phrase…"].) |
| **95.** Plaintiffs do not claim the exclusive right to use the words "playas, they gonna play." | Anderson Decl. at 2, ¶ 10(c), Exh. 17 (Pltfs' Supp. Resp. to 4th RFA) at 5:11-13, 5:21-26 (No. 105); Exh. 11 (Kajikawa Depo.) at 172:10-173:17. | **Disputed In Part.** Plaintiffs do not claim the exclusive right to use the words "playas, they gonna play" in isolation but do claim the exclusive right to use the combinations of words used in the tautological phases at issue. (D-Ex. 17 [Pl. Supp. Resp. to 4th RFA] at 5:11-13, 5:21-26 [No. 105] ["Plaintiffs do claim copyright ownership right in the lyrical text to 'Playas Gon Play,' in which the phrase 'playas, they gonna play' is a significant recurring lyrical phrase."].) |
| **96.** The first tautophrase | *See* evidence cited in | **Disputed**. The evidence |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| – "Playas, they gon' play" – in *Playas*' sequence of four tautophrase is unprotected material in the public domain. | support of Facts 91-95. | cited does not support this statement. (*See* evidence cited in response to Nos. 92-95 above.)<br><br>Further disputed to the extent Defendants contend that the phrase was in the public domain as part of a similar combination of phrases as used by Plaintiffs in *Playas*. (P-Ex. 2 [Kajikawa Report] at ¶¶ 8-10; P-Ex. 7 [Kajikawa Depo.] at 169:8-14, 172:10-13 & 175:6-24 [noting that the phrase pre-dates *Playas* when used ***in isolation***].) |
| **2. The tautophrase "haters, they gonna hate"** | | |
| **97.** The second tautophrase in *Playas*' choruses' sequence of four tautophrases is "haters, | Exh. 7 (Kajikawa initial Report) at 4, ¶ 9; Exh. 13 (*Playas* lyrics). | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| they gonna hate." | | |
| **98.** Plaintiffs do not claim copyright ownership of the words "haters gonna hate." | Anderson Decl. at 2, ¶ 10(b), Exh. 16 (Pltfs' Resp. to 4th RFA) at 6:5-13 (No. 106); Exh. 11 (Kajikawa Depo.) at 172:10-173:17. | **Disputed In Part.** Plaintiffs do not claim copyright ownership of the words "haters gonna hate" in isolation but do claim copyright ownership of the combinations of words used in the tautological phases at issue. (D-Ex. 16 [Pl. Resp. to 4th RFA] at 6:5-13 [No. 106] ["Plaintiffs do claim copyright ownership in the lyrical text to 'Playas Gon' Play,' in which the phrase [haters gonna hate] is a significant recurring lyrical phrase…"].) |
| **99.** Plaintiffs do not claim the exclusive right to use the words "haters | Anderson Decl. at 2, ¶ 10(c), Exh. 17 (Pltfs' Supp. Resp. to 4th RFA) at 5:27-28, 6:8-13 (No. 107); | **Disputed In Part.** Plaintiffs do not claim the exclusive right to use the words "haters gonna hate" in isolation but |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| gonna hate." | Exh. 11 (Kajikawa Depo.) at 172:10-173:17. | do claim the exclusive right to use the combinations of words used in the tautological phases at issue. (D-Ex. 17 [Pl. Supp. Resp. to 4th RFA) at 5:27-28, 6:8-13 [No. 107] ["Plaintiffs do claim copyright ownership right in the lyrical text to 'Playas Gon Play,' in which the phrase 'haters gonna hate' is a significant recurring lyrical phrase."].) |
| **100.** Plaintiffs do not claim copyright ownership of the words "haters, they gonna hate." | Anderson Decl. at 2, ¶ 10(b), Exh. 16 (Pltfs' Resp. to 4th RFA) at 6:23-7:3 (No. 108); Exh. 11 (Kajikawa Depo.) at 172:10-173:17. | **Disputed In Part.** Plaintiffs do not claim copyright ownership of the words "haters, they gonna hate" in isolation but do claim copyright ownership of the combinations of words used in the tautological phases at issue. (D-Ex. 16 [Pl. Resp. to 4th RFA] 6:23-7:3 [No. 108] |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | ["Plaintiffs do claim copyright ownership in the lyrical text to 'Playas Gon Play,' in which the phrase 'hatas, they gonna hate' is a significant recurring lyrical phrase…"].) |
| **101.** Plaintiffs do not claim the exclusive right to use the words "haters, they gonna hate." | Anderson Decl. at 2, ¶ 10(c), Exh. 17 (Pltfs' Supp. Resp. to 4th RFA) at 6:14-15, 6:23-28 (No. 109); Exh. 11 (Kajikawa Depo.) at 172:10-173:17. | **Disputed In Part.** Plaintiffs do not claim the exclusive right to use the words "haters, they gonna hate" in isolation but do claim the exclusive right to use the combinations of words used in the tautological phases at issue. (Dkt. 92-3 (Pl. Supp. Resp. to 4th RFA) at 6:14-15, 6:23-28 [No. 109] ["Plaintiffs do claim copyright ownership right in the lyrical text to 'Playas Gon Play,' in which the phrase 'hatas, they gonna |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | hate' is a significant recurring lyrical phrase."].) |
| **102.** The second tautophrase – "haters, they gonna hate" – in *Playas*' sequence of four tautophrase is unprotected material in the public domain. | *See* evidence cited in support of Facts 97-101. | **Disputed.** The evidence cited does not support this statement. (*See* evidence cited in response to Nos. 98-101 above.)<br><br>Further disputed to the extent Defendants contend that the phrase was in the public domain as part of a similar combination of phrases as used by Plaintiffs in *Playas*. (P-Ex. 2 [Kajikawa Report] at ¶¶ 8-10; P-Ex. 7 [Kajikawa Depo.] at 117:5-13 [noting prior use in "different ways"], 172:16-21 [noting prior use as an "individual phrase" only], 173:3-8 [noting prior use of phrase "in isolation" only], |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | 173:11-17 [same] & 175:6-24 [same].) |
| | **3. The tautophrase "Ballers, they gon' ball"** | |
| **103.** The third tautophrase in *Playas'* choruses' sequence of four tautophrases is "Ballers, they gon' ball." | Exh. 7 (Kajikawa initial Report) at 4, ¶ 9; Exh. 13 (*Playas* lyrics). | **Undisputed.** |
| **104.** Plaintiffs do not claim copyright ownership of the words "ballers, they gon' ball." | Anderson Decl. at 2, ¶ 10(b), Exh. 16 (Pltfs' Resp. to 4th RFA) at 7:13-21 (No. 110). | **Disputed In Part.** Plaintiffs do not claim copyright ownership of the words "ballers, they gon' ball" in isolation but do claim copyright ownership of the combinations of words used in the tautological phases at issue. (D-Ex. 16 [Pl. Resp. to 4th RFA] at 7:13-21 [No. 110] ["Plaintiffs do claim copyright ownership in the lyrical text to 'Playas Gon Play,' in which the phrase |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | 'ballers, they gonna ball' is a significant recurring lyrical phrase…"].) |
| **105.** Plaintiffs do not claim the exclusive right to use the words "ballers, they gon' ball." | Anderson Decl. at 2, ¶ 10(c), Exh. 17 (Pltfs' Supp. Resp. to 4th RFA) at 7:1-3, 7:11-16 (No. 111). | **Disputed In Part.** Plaintiffs do not claim the exclusive right to use the words "ballers, they gon' ball" in isolation but do claim the exclusive right to use the combinations of words used in the tautological phases at issue. (D-Ex. 17 [Pl. Supp. Resp. to 4th RFA] at 7:1-3, 7:11-16 [No. 111] ["Plaintiffs do claim copyright ownership right in the lyrical text to 'Playas Gon Play,' in which the phrase '[ballers, they gon' ball'] is a significant recurring lyrical phrase."].) |
| **106.** The third | *See* evidence cited in | **Disputed.** The evidence |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| tautophrase – "Ballers, they gon' ball" – in *Playas'* sequence of four tautophrase is unprotected material in the public domain. | support of Facts 103-105. | cited does not support this statement. (*See* evidence cited in response to Nos. 104-105 above.)<br><br>Further disputed to the extent Defendants contend the phrase was in the public domain before Plaintiffs composed *Playas*. Prior to *Playas,* no other songs used the lyrics "Ballers, they gon' ball." (P-Ex. 7 [Kajikawa Depo.] at 173:18-174:5.) |
| | **4. The tautophrase: "Shot callers, they gonna call"** | |
| **107.** The fourth tautophrase in *Playas'* choruses' sequence of four tautophrases is "Shot callers, they gonna call." | Exh. 7 (Kajikawa initial Report) at 4, ¶ 9; Exh. 13 (*Playas* lyrics). | **Undisputed.** |
| **108.** Plaintiffs do not | Anderson Decl. at 2, ¶ | **Disputed In Part.** Plaintiffs |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| claim copyright ownership of the words "shot callers, they gonna call." | 10(b), Exh. 16 (Pltfs' Resp. to 4th RFA) at 8:4-13 (No. 112). | do not claim copyright ownership of the words "shot callers, they gonna call" in isolation but do claim copyright ownership of the combinations of words used in the tautological phases at issue. (D-Ex. 16 [Pl. Resp. to 4th RFA] at 8:4-23 [No. 112] ["Plaintiffs do claim copyright ownership in the lyrical text to 'Playas Gon Play,' in which the phrase 'shot callers, they gonna call' is a significant recurring lyrical phrase…"].) |
| **109.** Plaintiffs do not claim the exclusive right to use the words "shot callers, they gonna call." | Anderson Decl. at 2, ¶ 10(c), Exh. 17 (Pltfs' Supp. Resp. to 4th RFA) at 7:17-19, 7:27-8:4 (No. 113). | **Disputed In Part.** Plaintiffs do not claim the exclusive right to use the words "shot callers, they gonna call" in isolation but do claim the exclusive right to use the combinations of words used |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | in the tautological phases at issue. (D-Ex. 17 [Pl. Supp. Resp. to 4th RFA] at 7:17-19, 7:27-8:4 [No. 113] ["Plaintiffs do claim copyright ownership right in the lyrical text to 'Playas Gon Play,' in which the phrase 'shot callers, they gonna call' is a significant recurring lyrical phrase."].) |
| **110.** The fourth tautophrase – "Shot callers, they gonna call" – in *Playas*' sequence of four tautophrase is unprotected material in the public domain. | *See* evidence cited in support of Facts 107-109. | **Disputed.** The evidence cited does not support this statement. (*See* evidence cited in response to Nos. 108-109 above.)<br><br>Further disputed to the extent Defendants contend the phrase was in the public domain before Plaintiffs composed *Playas*. Prior to *Playas,* no other songs used |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | the lyrics "shot callers, they gonna call." |
| | **c. Tautophrases and Parallelism Are place, including in Song Lyrics** | |
| **111.** Tautological phrases ("tautophrases") were commonplace before *Playas*. | Exh. 11 (Kajikawa Depo.) at 102:15-103:25, 115:9-22; Dr. Ferrara Decl. at 7, ¶ 8; Prof. Lewis Decl. at 9, ¶¶ 32-33; Prof. Morgan Decl. at 3, ¶ 16. | **Undisputed.** |
| **112.** Parallel phrases were commonplace in lyrics before *Playas*. | Exh. 11 (Kajikawa Depo.) at 90:10-15, 91:8-22, 116:11-20; Prof. Lewis Decl. at 9, 12 ¶¶ 33, 42. | **Undisputed.** |
| **113.** The 1977 recording of *Dreams* by Fleetwood Mac uses parallelism in the lyrics "Thunder only happens when it's raining/Players only love | Exh. 11 (Kajikawa Depo.) at 90:10-15, 91:11-13. | **Undisputed.** |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| you when they're playing." | | |
| **114.** The 1996 song *Fool Get a Clue* by Digital Underground uses the tautophrase "playas gonna play" in lyrics that exhibit parallelism. | Exh. 11 (Kajikawa Depo.) at 104:2-5. | **Undisputed.** |
| **115.** The 1999 recording of *Don't Hate the Playa* by Ice-T includes the word "hate" in parallel lyrics. | Exh. 11 (Kajikawa Depo.) at 116:11-20. | **Disputed In Part.** Undisputed that the 1999 recording of *Don't Hate the Playa* by Ice-T includes the word "hate" in parallel lyrics. Disputed that *Don't Hate the Playa* uses the same literary device (parallel lyrics) in the same way as *Playas*. (P-Ex. 7 [Kajikawa Depo.] at 116:5-10 & 117:5-13.) |
| **116.** The 2000 song *Feelin On Yo Booty* | Exh. 11 (Kajikawa Depo.) | **Disputed In Part.** Undisputed that the song |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| includes in its lyrics three parallel tautological phrases in a row, "playas wanna play, ballers want to ball, rollers wanna roll." | at 120:18-121:3. | *Feelin On Yo Booty* uses three parallel tautological phrases in a row. Disputed that it was released prior to *Playas*. (P-Ex. 12 at D-000367.1.) Further disputed that the combination in this song is substantially similar to that used in Plaintiffs' chorus: unlike Plaintiffs' chorus, here it is a three-part structure that utilizes two of the groups of actors appearing in Plaintiffs' chorus, yet sequences them differently and replaces "gonna" with "wanna" in both. |
| ***d.*** ***Shake It Off*'s Choruses Use Different Tautophrases and Use them Differently than *Playas*** | | |
| **117.** The lyrics in *Shake It Off*'s choruses are: | Prof. Lewis Decl. at 8, ¶ 31, & Exh. 14 (*Shake It Off* lyrics); Exh.11 | **Undisputed.** |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| 'Cause the players gonna play, play, play, play, play<br>And the haters gonna hate, hate, hate, hate, hate<br>Baby, I'm just gonna shake, shake, shake, shake, shake<br>Shake it off<br>Shake it off<br>Heartbreakers gonna break, break, break, break, break<br>And the fakers gonna fake, fake, fake, fake, fake<br>Baby, I'm just gonna shake, shake, shake, shake, shake<br>Shake it off<br>Shake it off | (Kajikawa Depo.) at 139:2-5. | |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| **118.** *Shake It Off*'s choruses each include a total of four tautophrases. | Exh. 14 (*Shake It Off*) lyrics; Prof. Lewis Decl. at 8, ¶ 31; P-Ex. 11 (Kajikawa Depo.) 176:16-19. | **Undisputed.** |
| | ***1. Shake It Off*'s first two tautophrases are different and unique variations on player and hater phrases** | |
| **119.** Unlike *Playas*' use of the public domain "players gonna play" phrase, *Shake It Off*'s chorus repeats "play" four times. | Exh. 11 (Kajikawa Depo.) at 196:2-20; Prof. Lewis Decl. at 8-10, ¶¶ 31-32, 34; Prof. Morgan Decl. at 3-4, ¶ 18; Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off*) lyrics. | **Disputed** to the extent Defendants contend that the phrase was in the public domain as part of a similar combination of phrases as used by Plaintiffs in *Playas*. (P-Ex. 2 [Kajikawa Report] at ¶¶ 8-10; P-Ex. 7 [Kajikawa Depo.] at 169:8-14, 172:10-13 & 175:6-24 [noting that the phrase pre-dates *Playas* when used ***in isolation***].)<br><br>Further disputed to the extent |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | Defendants suggest that these added repetitions alter the basic poetic structure and meaning of the four-part sequence which is substantially similar to that of Plaintiffs' chorus. (Kajikawa Decl. at ¶ 17; P-Ex. 4 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶ 47 [opining that "[a]lthough the rhythmic repetition of these words does match the upbeat mood of [Defendants'] song, these added repetitions do not alter the basic poetic structure and meaning of the four-part sequence which is remarkably similar to that of … [Plaintiffs' chorus]. Therefore, I find this argument of substantial difference unconvincing."].) |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| **120.** *Shake It Off*'s lyrics "the players gonna play, play, play, play, play" do not appear in any prior work. | Anderson Decl. at 2, ¶ 10(c), P-Ex. 17 (Pltfs' Supp. Resp. to 4th RFA) at 8:5-22 (Nos. 150-51); Prof. Lewis Decl. at 9, ¶ 32; Prof. Morgan Decl. at 3-4, ¶ 18. | **Disputed.** Aside from repetition (which is insufficiently distinguishing), it is substantially similar to Plaintiffs' lyrics for the reasons stated in Plaintiffs' response to No. 119 above. |
| **121.** Unlike *Playas*' use of the public domain "haters gonna hate" phrase, *Shake It Off*'s chorus repeats "hate" four times. | Exh. 11 (Kajikawa Depo.) at 196:2-20; Prof. Lewis Decl. at 8, 9-10, ¶ 31-32, 34; Prof. Morgan Decl. at 3-4, ¶ 18; Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off*) lyrics. | **Disputed in part** to the extent Defendants contend that the phrase was in the public domain as part of a similar combination of phrases as used by Plaintiffs in *Playas*. (P-Ex. 2 [Kajikawa Report] at ¶¶ 8-10; P-Ex. 7 [Kajikawa Depo.] at 117:5-13 [noting prior use in "different ways"], 172:16-21 [noting prior use as an "individual phrase" only], 173:3-8 [noting prior use of phrase |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | "in isolation" only], 173:11-17 [same] & 175:6-24 [same].)<br><br>Further disputed to the extent Defendants suggest that these added repetitions alter the basic poetic structure and meaning of the four-part sequence which is substantially similar to that of Plaintiffs' chorus. (Kajikawa Decl. at ¶ 17; P-Ex. 4 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶ 47 [opining that "[a]lthough the rhythmic repetition of these words does match the upbeat mood of [Defendants'] song, these added repetitions do not alter the basic poetic structure and meaning of the four-part sequence which is remarkably similar to that of |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | … [Plaintiffs' chorus]. Therefore, I find this argument of substantial difference unconvincing."].) |
| **122.** *Shake It Off*'s lyrics "the haters gonna hate, hate, hate, hate, hate" do not appear in any prior work. | Exh. __ (Pltfs' Supp. Resp. to 4th RFA) at 8:23-9:12 (Nos. 152-53); Prof. Lewis Decl. at 9, ¶ 32; Prof. Morgan Decl. at 3, ¶ 18. | **Disputed.** Aside from repetition (which is insufficiently distinguishing), it is substantially similar to Plaintiffs' lyrics for the reasons stated in Plaintiffs' response to No. 121 above. |
| **2. *Playas'* third and fourth tautophrases do not appear in *Shake It Off*** | | |
| **123.** While *Playas*' third tautophrase is "Ballers, they gon' ball," *Shake It Off*'s third tautophrase is "Heartbreakers gonna break, break, break, break, break." | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off*) lyrics; Exh. 7 (Kajikawa initial Report) at 5, ¶ 11; Prof. Lewis Decl. at 8, 9-10 ¶¶ 31, 34; Prof. Morgan Decl. at 4, ¶ 19. | **Disputed In Part.** While the second part of the structure is paraphrased rather than copied verbatim, this paraphrasing shares the same phraseology. (Kajikawa Decl. at ¶ 16; P-Ex. 4 [Kajikawa Rebuttal Report |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
| --- | --- | --- |
| | | to Prof. Lewis Report] at ¶¶ 50-51 [noting that although the second part of the structure is paraphrased rather than copied in Defendants' song, this paraphrasing "share[s] the same 'phraseology'" and concluding that both second parts of both sequences are "entirely similar in form and function"], citing D-Ex. 5 [Lewis Report] at 33.) |
| **124.** *Shake It Off* does not include the lyrics "Ballers, they gon' ball." | Exh. 11 (Kajikawa Depo.) at 174:14-17; Prof. Lewis Decl. at 9-10, ¶ 34; Prof. Morgan Decl. at 4, ¶ 19 Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off*) lyrics. | **Undisputed.** |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| **125.** *Shake It Off* does not include lyrics substantially similar to *Playas*' lyrics "Ballers, they gon' ball." | Prof. Lewis Decl. at 9-10, ¶ 34; Prof. Morgan Decl. at 4, ¶ 19; Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off*) lyrics. | **Disputed.** The chorus of *Shake It Off* uses lyrics that perform a substantially similar function to *Playas*' lyrics "Ballers, they gon' ball." (Kajikawa Decl. at ¶ 16 [noting that while the second part of the structure is paraphrased rather than copied verbatim, this paraphrasing shares the same phraseology]; P-Ex. 7 [Kajikawa Depo.] at 197:20-199:6; P-Ex. 2 [Kajikawa Report] at ¶¶ 6, 7c & 10 [all the four groups invoke an idea of the world full of untrustworthy people]; Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 50-51 [noting that although the second part of the structure is paraphrased rather than copied in |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | Defendants' song, this paraphrasing "share[s] the same 'phraseology'" and concluding that both second parts of both sequences are "entirely similar in form and function"], citing D-Ex. 5 [Lewis Report] at 33.) |
| **126.** While *Playas*' fourth tautophrase is "Shot callers, they gonna call," *Shake It Off*'s fourth tautophrase is "Fakers gonna fake, fake, fake, fake, fake." | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off*) lyrics; Exh. 7 (Kajikawa initial Report) at 5, ¶ 11; Prof. Lewis Decl. at 8, 9-10 ¶¶ 31, 34; Prof. Morgan Decl. at 4, ¶ 19. | **Disputed In Part.** While the second part of the structure is paraphrased rather than copied verbatim, this paraphrasing shares the same phraseology. (Kajikawa Decl. at ¶ 16; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 50-51 [noting that although the second part of the structure is paraphrased rather than copied in Defendants' song, this paraphrasing "share[s] the |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | same 'phraseology'" and concluding that both second parts of both sequences are "entirely similar in form and function"], citing D-Ex. 5 [Lewis Report] at 33.) |
| **127.** *Shake It Off* does not include the lyrics "Shot callers, they gonna call." | Exh. 11 (Kajikawa Depo.) at 174:18-20; Prof. Lewis Decl. at 9-10, ¶ 34; Prof. Morgan Decl. at 4, ¶ 19; Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off*) lyrics. | **Undisputed.** |
| **128.** *Shake It Off* does not include lyrics substantially similar to *Playas*' lyrics "Shot callers, they gonna call." | Prof. Lewis Decl. at 9-10, ¶ 34; Prof. Morgan Decl. at 4, ¶ 19; Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off*) lyrics. | **Disputed.** The chorus of *Shake It Off* uses lyrics that perform a substantially similar function to *Playas*' lyrics "Shot callers, they gonna call." (Kajikawa Decl. at ¶ 16 [noting that |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | while the second part of the structure is paraphrased rather than copied verbatim, this paraphrasing shares the same phraseology]; P-Ex. 7 [Kajikawa Depo.] at 197:20-199:6; P-Ex. 2 [Kajikawa Report] at ¶¶ 6, 7c & 10 [all the four groups invoke an idea of the world full of untrustworthy people]; Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 50-51 [noting that although the second part of the structure is paraphrased rather than copied in Defendants' song, this paraphrasing "share[s] the same 'phraseology'" and concluding that both second parts of both sequences are "entirely similar in form and function"], citing D-Ex. 5 |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | [Lewis Report] at 33.) |
| | **3. While *Playas*' four tautophrases are in an unbroken sequence, *Shake It Off* separates its tautophrases by lyrics not in *Playas*** | |
| **129.** In *Playas*' chorus, there is an unbroken sequence of four tautophrases. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off*) lyrics; Exh. 11 (Kajikawa Depo.) at 227:15-22; Prof. Lewis Decl. at 9-10, ¶ 34. | **Undisputed.** |
| **130.** In *Shake It Off*'s chorus, three lines of lyrics – "Baby, I'm just gonna shake, shake, shake, shake, shake/Shake it off/Shake it off" – separate the first two tautophrases from the last two tautophrases. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off*) lyrics; Exh. 11 (Kajikawa Depo.) at 286:2-9; Prof. Lewis Decl. at 8, 9-10 ¶¶ 31, 34. | **Disputed** to the extent that Defendants suggest that this interruption is significant and not merely a change in geography. (Kajikawa Decl. at ¶ 15; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶ 52 [opining that despite the insertion of lyrics, "the overall function and meaning of the poetic sequence remains intact" and the |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | inserted lyrics in Defendants' chorus ("I'm just gonna shake (shake x4)/I shake it off, I shake it off") "have a direct corollary" at the end of Plaintiffs' chorus ("That ain't got nothing to do with me and you/That's the way it is; that's the way it is"), "which performs the same function" as the intervening lyrics in Defendants' chorus and concluding that "[b]oth sets of lyrics [the intervening lyrics in Defendants' song and the lyrics at the end of the chorus in Plaintiffs' song] offer an affirmative response to the four-part poetic sequence, communicating resolve against the existential threats they conjure."], P-Ex. 7 |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | [Kajikawa Depo.] at 227:15-229:14 [observing that interruptive lyrics in Defendants' song "correspond to three lines of lyrics at the end" of Plaintiffs' chorus and explaining that the interrupting lyrics "do[] the same work" as the "affirmative statement or statement of resolve" that is found at the end of Plaintiffs' chorus"].) |
| **131.** *Shake It Off*'s lyrics "Baby, I'm just gonna shake, shake, shake, shake, shake/Shake it off/Shake it off," do not appear in *Playas*. | Exh. 11 (Kajikawa Depo.) at 149:18-150:20; Prof. Lewis Decl. at 9-10, ¶ 34; Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off*) lyrics. | **Undisputed.** |
| **132.** *Shake It Off*'s lyrics "Baby, I'm just gonna | Exh. 11 (Kajikawa Depo.) at 149:18-150:20; Prof. | **Disputed.** The lyrics "Baby, I'm just gonna shake, shake, |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| shake, shake, shake, shake, shake/Shake it off/Shake it off," are not substantially similar to any lyrics in *Playas*. | Lewis Decl. at 9-10, ¶ 34; Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off*) lyrics. | shake, shake, shake/Shake it off/Shake it off" perform the same function as the lyrics "they ain't got nothing to do with me and you, that's the way it is, that's the way it is" in *Playas*' for the reasons stated in Plaintiffs' response to No. 130 above. |
| **133.** While *Playas*' four tautophrases are in sequence one after the other, *Shake It Off* has two tautophrases, three lines of other lyrics that do not appear in *Playas*, and then two more tautophrases. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off*) lyrics; Exh. 11 (Kajikawa Depo.) at 227:15-22, 285:18-286:9, 149:18-150:20; Prof. Lewis Decl. at 8, 9-10, ¶¶ 31, 34. | **Disputed in part** to the extent that *Shake It Off*'s insertion of lyrics in the middle of the sequence is not a significant change for the reasons stated in Plaintiffs' response to No. 130 above. |
| **(vi) Summary of the Application of the Extrinsic Test to *Playas* and *Shake It Off* as Musical Works with Lyrics** | | |
| **134.** Analyzing *Playas* and *Shake It Off* as musical | *See* evidence cited in | **Disputed in Part.** There are substantial similarities in the |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| compositions that include lyrics, there are no substantial similarities in structure, harmony, rhythm, melody, and lyrics. | support of Facts 37-133. | lyrics of *Playas* and *Shake It Off*. (P-Ex. 7 [Kajikawa Depo.] at 144:19-145:25, 147:4-148:10, 148:15-149:14 & 156:18-157:16; P-Ex. 2 [Kajikawa Report] at ¶¶ 1 & 11-12 [both songs use "striking[ly]" similar phraseology to "position the singer (narrator) above the fray"]; *see also id.* at ¶ 20 [underscoring the "same basic theme, such as "maintaining healthy relationships in the face of social adversity,'" be it a "romantic" relationship or "a relationship with oneself"] & ¶ 53 [underscoring that both sets of lyrics represent "concrete similarities between a set of specific parallelisms are being used |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | poetically in both songs"].)<br><br>Indeed, Professor Kajikawa finds "[t]he use of similar phrases in [Defendants' chorus] striking." (P-Ex. 2 [Kajikawa Report] at ¶ 11.) As he further opines, both choruses "use nearly identical words in nearly identical ways as the basis for the most memorable part of each song (the chorus)." (*Id.* at ¶ 1; *see also id.* at ¶¶ 12-14 [opining that the choruses' "similarities are fundamentally structural," as Defendants adopt the same "four-part sequence," using the same phrasing for the first part of it and paraphrasing the second part, to "make the same point" as Plaintiffs' chorus; as such, |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
| --- | --- | --- |
| | | "not only do … [the two choruses] share lyrics but those lyrics also function in identical ways. Each uses the phrases in question to begin a four-part sequence that anchors the chorus and conjures a hostile world. Thus, each chorus uses the terms 'player' and 'hater' playfully as part of a poetic gambit that pushes the listener towards a larger idea: the world is full of untrustworthy people, but we should ignore them."] & 20 (observing that "the similarity" between the choruses "involves more than just … six words. Not only are the lyrics in question nearly identical, but in each song they begin a four-part sequence that anchors the |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | chorus and expresses the song's central idea: the world is full of untrustworthy people, but we should ignore them and believe in ourselves. In addition, the verses of both songs name particular threats posed by the untrustworthy people mentioned in the chorus…. These poetic and structural similarities suggest that the six words in question are just the tip of the iceberg in terms of what may have been copied."]; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶ 26 [reasoning that there are no substantial differences "where it matters most: the chorus which features ***remarkably similar words*** and a ***remarkably similar*** |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | ***four-part poetic sequence***"].)<br><br>(*See also* evidence cited in support of Plaintiffs' responses to Nos. 37-133 above.) |
| **135.** Analyzing *Playas* and *Shake It Off* as musical compositions that include lyrics, there are significant differences in structure, harmony, rhythm, melody, and lyrics. | *See* evidence cited in support of Facts 37-133. | **Disputed in Part.** There are substantial similarities in the lyrics of *Playas* and *Shake It Off* for the reasons stated in Plaintiffs' response to No. 134 above.<br><br>*See also* evidence cited in support of Plaintiffs' responses to Nos. 37-133 above. |
| **136.** Disregarding the public domain elements, the only similarity between *Playas* and *Shake It Off* is | *See* evidence cited in support of Facts 37-133. | **Disputed** for the reasons stated in Plaintiffs' response to Nos. 70 & 134 above. |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| the idea of including four tautological phrases in its chorus. | | *See also* evidence cited in support of Plaintiffs' responses to Nos. 37-133 above. |
| **(2) Applying the Extrinsic Test to the Lyrics of *Playas* and *Shake It Off* as Literary Works** | | |
| **137.** Plaintiffs' designated expert witness, Prof. Kajikawa, is a musicologist whose emphasis in research and teaching is the dynamics of race and politics. | Exh. 11 (Kajikawa Depo.) at 29:22-30:2. | **Disputed In Part.** Prof. Kajikawa's main area of research and teaching is American music of the twentieth and twenty-first centuries, with special attention to the dynamics of race and politics. (Kajikawa Decl. at ¶ 2; P-Ex. 1 [CV].) Prof. Kajikawa's studies and education are in musicology, and this is the discipline he applied in comparing the two sets of lyrics at issue. (P-Ex. 7 [Kajikawa Depo.] at 13:15-18, 16:10-12 & 17:4-6; P-Ex. |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | 2 [Kajikawa Report] at ¶ 2.) |
| **138.** Prof. Kajikawa does not have a degree in linguistics. | Exh. 11 (Kajikawa Depo.) at 17:23-25. | **Undisputed.** |
| **139.** Prof. Kajikawa has never taken any classes in linguistics. | Exh. 11 (Kajikawa Depo.) at 22:13-15. | **Undisputed.** |
| **140.** Prof. Kajikawa would have to check his undergraduate and graduate transcripts to see if he ever took any classes in comparative literature. | Exh. 11 (Kajikawa Depo.) at 22:16-23:20. | **Undisputed.** |
| **141.** Prof. Kajikawa has never previously been designated as an expert witness. | Exh. 11 (Kajikawa Depo.) at 12:16-13:2. | **Disputed in Part.** Undisputed that Prof. Kajikawa has never previously been designated as an expert witness. Disputed to the extent Defendants contend Prof. Kajikawa lacks the expertise |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | to offer his expert opinion in this case. Prof. Kajikawa's main area of research and teaching is American music of the twentieth and twenty-first centuries, with special attention to the dynamics of race and politics. (Kajikawa Decl. at ¶ 2 and P-Ex. 1 [CV].) Prof. Kajikawa's studies and education are in musicology, and this is the discipline he applied in comparing the two sets of lyrics at issue. (P-Ex. 7 [Kajikawa Depo.] at 16:10-12 & 17:4-6 [Master of Arts degree and Ph.D. in Musicology from UCLA], 17:10-22 [subject of doctoral thesis was the culture, politics and history of African America music]; P-Ex. 2 [Kajikawa Report] at ¶ |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | 2.)<br><br>Further, Prof. Lewis, Defendants' expert witness, is a first-time expert witness as well. (P-Ex. 9 [Lewis Depo.] at 27:14-16.) |
| **(i) Plot** | | |
| **142.** Plot is the pattern of events and situations in a narrative or dramatic work, as selected and arranged both to emphasize relationships—usually of cause and effect—between incidents and to elicit a particular kind of interest in the reader or audience. | Prof. Lewis Decl. at 3, ¶ 11, Exh. 5 (Lewis initial Report) at 7. | **Disputed.** This is not an uncontroverted fact rather a statement of expert opinion.<br><br>*See* Evidentiary Objections at No. 53. |
| **143.** In *Playas*, the singer professes her undying love for her partner, and although her friends | Exh. 13 (*Playas* lyrics); Prof. Lewis Decl. at 3, ¶ 12, & Exh. 5 (Lewis initial Report) at 7-8; Exh. 11 | **Disputed.** In *Playas*, the singer discusses that people speak negatively about her and her relationship but that |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| disapprove of their relationship ("don't wanna see me with you") and try to separate them ("behind your back, callin' my cell and pager too"), she insists that she "will stay true" to him. | (Kajikawa Depo.) at 158:13-25, 162:13-163:5, 202:10-16, 262:21-263:3, 265:2-14. | she will not be swayed by what others do or say and she will trust in herself and her relationship. (P-Ex. 11 [Hall0197-Hall0199 (*Playas* lyrics)]; P-Ex. 7 [Kajikawa Depo.] at 266:3-24; P-Ex. 2 [Kajikawa Report] at ¶¶ 1 [expressing larger idea that we should not be concerned with what other people say or do, trusting in ourselves instead] & 11-12 [singer positioned above the fray]; D-Ex. 6 [Lewis Rebuttal Report] at 22-23 [agreeing that there is a "general similarity in presenting a speaker who is considering negative comments made by others" and that "both works depict in a general way a world in which some people are critical"]; P-Ex. 4 |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 12-13 [opining that the described "feelings [in the two songs] … are in fact similar"] & 20 [underscoring the same basic theme, such as maintaining healthy relationships in the face of social adversity]; P-Ex. 9 [Lewis Depo.] at 47:6-48:21 [agreeing that both songs communicate decisions "not to give in to criticisms"].) |
| **144.** In *Shake It Off*, the singer declares her need to "shake off" the criticisms of her and, instead of giving in, she is going to "keep cruising," dancing to "the music in [her] mind." | Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 3, ¶ 12, & Exh. 5 (Lewis initial Report) at 7-8; Exh. 11 (Kajikawa Depo.) at 154:2-8, 265:15-266:2. | **Disputed In Part.** In *Shake It Off*, the singer discusses that she receives criticism from the outside world but that she will not be swayed by what others do or say and she will trust in herself. (D-Ex. 14 [*Shake It Off* lyrics]; P-Ex. 7 [Kajikawa Depo.] at |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | 266:3-24; P-Ex. 2 [Kajikawa Report] at ¶¶ 1 & 11-12 (both songs use "striking[ly]" similar phraseology to "position the singer (narrator) above the fray"); D-Ex. 6 [Lewis Rebuttal Report] at 22-23 [agreeing that there is a "general similarity in presenting a speaker who is considering negative comments made by others" and that "both works depict in a general way a world in which some people are critical"]; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 12-13 [opining that the described "feelings [in the two songs] … are in fact similar"] & 20 [underscoring the same basic theme, such as "maintaining healthy |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
| --- | --- | --- |
| | | relationships in the face of social adversity]; P-Ex. 9 [Lewis Depo.] at 47:6-48:21 [agreeing that both songs communicate decisions "not to give in to criticisms"].) |
| **145.** The plots of *Playas* and *Shake It Off* are not substantially similar. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 3, ¶ 12, & Exh. 5 (Lewis initial Report) at 7-8. | **Disputed.** To the extent similarity of plots in non-narrative works is probative on the issue of substantial similarity, the plots of both works are substantially similar. Both works describe a speaker who is receives criticism from the outside world and is determined not to let that criticism impact her, trusting in herself instead. (*See* evidence cited in support of Plaintiffs' responses to Nos. 143-144 above. *See also* Kajikawa Decl. at ¶ 21(b) [both works |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | describe a speaker who receives criticism from the outside world and is determined not to let that criticism impact her]; P-Ex. 7 [Kajikawa Depo.] at 263:9-24; P-Ex. 2 [Kajikawa Report] at ¶¶ 1 & 11-12 [both songs use strikingly similar phraseology to position the singer (narrator) above the fray]; D-Ex. 6 [Lewis Rebuttal Report] at 22-23 [agreeing that there is a "general similarity in presenting a speaker who is considering negative comments made by others" and that "both works depict in a general way a world in which some people are critical"]; P-Ex. 9 [Lewis Depo.] at 47:6-48:21 [agreeing that both songs |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | communicate decisions "not to give in to criticisms"]; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 12-13 [opining that the described "feelings [in the two songs] … are in fact similar"].) |
| **146.** The plots of *Playas* and *Shake It Off* are different. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 3, ¶ 12, & Exh. 5 (Lewis initial Report) at 7-8; Exh. 11 (Kajikawa Depo.) at 158:13-25, 162:2-7, 162:20-163:17, 202:10-16, 262:21-263:8, 265:2-266:2. | **Disputed.** To the extent similarity of plots in non-narrative works is probative on the issue of substantial similarity, the plots of both works are substantially similar. Both works describe a speaker who is receives criticism from the outside world and is determined not to let that criticism impact her. (*See* evidence cited in support of Plaintiffs' responses to Nos. 143-145 |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | above.) |
| **(ii) Sequence of Events** | | |
| **147.** The sequence of events in a literary work is the order in which events appear in a narrative. | Prof. Lewis Decl. at 3, ¶ 13. | **Disputed.** This is not an uncontroverted fact rather a statement of expert opinion.<br><br>*See* Evidentiary Objections at No. 54. |
| **148.** The sequence of events in *Playas* are (1) the speaker reassures her partner that, despite what their so-called friends are saying, she cares only about what her partner "believe[s] is true" (2) their friends are trying to break them up but, "no matter what they do," she will remain true; (3) the speaker expresses an ongoing commitment to remain true | Prof. Lewis Decl. at 3-4, ¶ 14, Exh. 5 (Lewis initial Report) at 8-9; Exh. 13 (*Playas* lyrics). | **Disputed.** The sequence of events in *Playas* is: (1) the speaker introduces the idea that there are people that criticize and gossip about her but that she does not "mind what people say or do," and will not let that interfere with her relationship, (2) the speaker uses the four part tautological sequence to expand on the idea the theme that we should not be concerned with what other |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| to her partner and declares that their love "will be forever." | | people say and do, trusting in ourselves instead, and (3) the singer confirms that she will not give into the criticism and will stay true to her relationship. (P-Ex. 11 [Hall0197-Hall0198 (*Playas* lyrics)]; Kajikawa Decl. at ¶ 21(c) [sequencing similarities include the introduction to both songs' discussion of the criticism the speaker receives from outsiders]; P-Ex. 7 [Kajikawa Depo.] at 147:8-148:3 & 148:15-149:10 [similarities in first and second part of sequence as mentioning gossipers followed by the speaker countering the gossipers], *see also id.* at 276:2-277:5 [noting similarities in sequence of events include |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | threats from outsiders followed by responding to those threats]; P-Ex. 2 [Kajikawa Report] at ¶ 20 [discussing similarity in both songs' first verse both calling attention to gossipy people]; P-Ex. 9 [Lewis Depo.] at 50:15-51:13 [conceding that both songs start with the introduction of outsiders' criticisms].) |
| **149.** The sequence of events in *Shake It Off* are: (1) the speaker recognizes that "people say" she stays out too late, is not especially intelligent ("got nothing in my brain"), and goes on too many "dates"; (2) the speaker remarks that people "don't see" that she will persevere (through | Prof. Lewis Decl. at 3-4, ¶ 14, Exh. 5 (Lewis initial Report) at 9; Exh. 14 (*Shake It Off* lyrics). | **Disputed.** The sequence of events in *Shake It Off* is: (1) the speaker introduces the idea that people gossip about her, (2) the speaker uses the four part tautological sequence to express the idea the theme that we should not be concerned with what other people say and do, trusting in ourselves instead, |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| dancing and music); and (3) the speaker describes a situation with her "ex-man" and his "new girlfriend," and a "fella" whom she imagines inviting to "shake." | | and (3) the singer confirms that she will not give into the criticism and provides examples of her staying true to herself. (D-Ex. 14 [*Shake It Off* lyrics]; Kajikawa Decl. at ¶ 21(c) [sequencing similarities include the introduction to both songs' discussion of the criticism the speaker receives from outsiders]; P-Ex. 7 [Kajikawa Depo.] at 147:8-148:3 & 148:15-149:10 [similarities in first and second part of sequence as mentioning gossipers followed by the speaker countering the gossipers], *see also id.* at 276:2-277:5 [noting similarities in sequence of events include threats from outsiders followed by responding to |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | those threats]; P-Ex. 2 [Kajikawa Report] at ¶ 20 [discussing similarity in both songs' first verse both calling attention to gossipy people; P-Ex. 9 [Lewis Depo.] at 50:15-51:13 [conceding there are certain sequencing similarities, such as that both songs start with the introduction of outsiders' criticisms].) |
| **150.** The lyrics in *Playas*' first verse beginning with "I don't mind" and ending "ain't nothing new," do not appear in *Shake It Off*. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Exh. 11 (Kajikawa Depo.) at 155:23-156:9. | **Disputed In Part.** Undisputed that those exact lyrics do not appear in *Shake It Off*.<br><br>Disputed because *Shake It Off* uses lyrics that perform a substantially similar function to the first verse in *Playas*. (P-Ex. 7 [Kajikawa Depo.] at 147:8-148:3 & 148:15- |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | 149:10 [similarities in first and second part of sequence as mentioning gossipers followed by the speaker countering the gossipers]; P-Ex. 2 [Kajikawa Report] at ¶ 20 [discussing similarity in both songs' first verse both calling attention to gossipy people]; P-Ex. 9 [Lewis Depo.] at 50:15-51:13 [conceding there are certain sequencing similarities, such as that both songs start with the introduction of outsiders' criticisms].) |
| **151.** *Shake It Off* does not contain lyrics substantially similar to the lyrics in *Playas*' first verse beginning with "I don't mind" and ending "ain't | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Exh. 11 (Kajikawa Depo.) at 156:10-14. | **Disputed In Part.** Undisputed that those exact lyrics do not appear in *Shake It Off*. Disputed because *Shake It Off* uses lyrics that perform a substantially similar function to the first |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| nothing new." | | verse in *Playas*. (P-Ex. 7 [Kajikawa Depo.] at 147:8-148:3 & 148:15-149:10 [similarities in first and second part of sequence as mentioning gossipers followed by the speaker countering the gossipers]; P-Ex. 2 [Kajikawa Report] at ¶ 20 [discussing similarity in both songs' first verse both calling attention to gossipy people]; P-Ex. 9 [Lewis Depo.] at 50:15-51:19 [conceding there are certain sequencing similarities, such as that both songs start with the introduction of outsiders' criticisms].) |
| **152.** The sequence of events in *Playas* and *Shake It Off* are not substantially | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 3-4, ¶¶ 14-17, & Exh. 5 | **Disputed.** To the extent similarity of sequences in non-narrative works is probative on the issue of |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| similar. | (Lewis initial Report) at 8-10. | substantial similarity, the sequence of events in *Playas* and *Shake It Off* are substantially similar. (P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 14-18 [criticizing Prof. Lewis for omitting the allegedly infringing expression from his sequence analysis and opining that the claimed differences outside of the four-part sequence at issue "have no bearing" on the similarities between the choruses; Kajikawa Decl. at ¶ 21(c) [sequencing similarities include the introduction to both songs' discussion of the criticism the speaker receives from outsiders]; P-Ex. 7 [Kajikawa Depo.] at 147:8- |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | 148:3 & 148:15-149:10 [similarities in first and second part of sequence as mentioning gossipers followed by the speaker countering the gossipers], *see also id.* at 276:2-277:5 [noting similarities in sequence of events include threats from outsiders followed by responding to those threats]; P-Ex. 2 [Kajikawa Report] at ¶ 20 [discussing similarity in both songs' first verse both calling attention to gossipy people]; P-Ex. 9 [Lewis Depo.] at 50:15-56:18 [conceding there are certain sequencing similarities, such as that both songs start with the introduction of outsiders' criticisms].) |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| **153.** The sequence of events in *Playas* and *Shake It Off* are different. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 3-4, ¶¶ 14-17, & Exh. 5 (Lewis initial Report) at 8-10; Exh. 11 (Kajikawa Depo.) at 158:13-25, 162:2-7, 162:20-163:17, 202:10-16, 262:21-263:8, 265:2-266:2. | **Disputed.** To the extent similarity of sequences in non-narrative works is probative on the issue of substantial similarity, the sequence of events in *Playas* and *Shake It Off* are substantially similar (*see* evidence cited in support of Plaintiffs' response to No. 152 above). |
| **(iii) Characters** | | |
| **154.** *Playas* includes three characters: (1) the speaker; (2) the speaker's romantic partner; and, (3) "so-called friends." | Exh. 13 (*Playas* lyrics); Prof. Lewis Decl. at 2, ¶ 9. | **Disputed.** *Playas* includes the following characters: (1) the speaker, (2) the speaker's romantic partner, and (3) gossipy people (playas, haters, shot callers and ballers). (P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 3, 6-7, 9-10 & 51; D-Ex. 5 [Lewis |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | Report] at 6 [confirming "commonality between the characters" found in gossipy people present in both songs]; P-Ex. 9 [Lewis Depo.] at 41:15-42:1, 48:8-21, 49:9-24 & 50:21-51:5 [same].) |
| **155.** *Shake* has five characters: (1) the speaker, (2) people who say things about the speaker, (3) the speaker's "ex-man", (4) his "new girlfriend," and (5) a "fella" whom the speaker sees from a distance. | Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 2, ¶ 9. | **Disputed.** *Shake It Off* includes the following characters: (1) the speaker, and (2) gossipy people (playas, haters, fakers and heartbreakers). (P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 3-11 [opining that both songs share a protagonist positioned against the world, who is "determined to maintain healthy relationships by staying above the fray and ignoring |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | untrustworthy people," even though it is a romantic relationship in *Playas* and "relationship with oneself" in *Shake It Off*; the main characters in both songs "share … existential threats" that are described as "gossipy people using similar language … and via a similar four-part poetic sequence that conveys the same fundamental message," while secondary characters in Defendants' song do not appear in and "have no impact on" the allegedly infringing chorus] & 51; D-Ex. 5 [Lewis Report] at 6 [confirming "commonality between the characters" found in gossipy people present in both songs]; P-Ex. 9 [Lewis Depo.] at 41:15- |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | 42:1, 48:8-21, 49:9-24 & 50:21-51:5 [same].) |
| **a. The Speakers in *Playas* and *Shake It Off*** | | |
| **156.** Like innumerable works, the lyrics of *Playas* and *Shake It Off* are written in the first person. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Exh. 5 (Lewis initial Report) at 4. | **Undisputed.** |
| **157.** The speaker in *Playas* is deeply attached to her romantic partner and their romantic relationship. | Exh. 13 (*Playas* lyrics); Prof. Lewis Decl. at 2-4, 5-6 ¶¶ 10, 12, 14, 23; Exh. 5 (Lewis initial Report) at 5. | **Undisputed.** |
| **158.** The speaker in *Playas* reassures her boyfriend when so-called friends attempt to break the romantic couple up. | Exh. 13 (*Playas* lyrics); Prof. Lewis Decl. at 3-4, 5-6, ¶ 12, 14, 23; Exh. 5 (Lewis initial Report) at 4-5; Exh. 11 (Kajikawa Depo.) at 158:13-25, 162:20-163:5. | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| **159.** The speaker in *Shake It Off* is independent, confident, determined, and defined by her independence and love of music. | Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 2, ¶ 10; Exh. 5 (Lewis initial Report) at 4-5. | **Undisputed.** |
| **160.** Nowhere in *Shake It Off* does the speaker reassure her boyfriend when so-called friends attempt to break the romantic couple up. | Exh. 14 (*Shake It Off* lyrics); Exh. 11 (Kajikawa Depo.) at 162:2-7, 163:6-17. | **Disputed In Part.** The speaker in *Shake It Off* reassures herself, as the overall message she will stay true to her relationship with self. (P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶ 20 [underscoring the "same basic theme, such as "maintaining healthy relationships in the face of social adversity,'" be it a "romantic" relationship or "a relationship with oneself"], 19-23 [opining that the core theme shared by the songs at |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | issue is "maintaining healthy relationships in the face of social adversity," even though it is "a relationship with oneself" that is discussed in *Shake It Off*], ¶¶ 3-11 [opining that both songs share a protagonist positioned against the world, who is "determined to maintain healthy relationships by staying above the fray and ignoring untrustworthy people," even though it is a romantic relationship in *Playas* and "relationship with oneself" in *Shake It Off*; the main characters in both songs "share … existential threats" that are described as "gossipy people"]; P-Ex. 9 [Lewis Depo.] at 47:6-48:21 [agreeing that both songs |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | communicate decisions "not to give in to criticisms"], 57:19-58:11 & 60:18-61:11 [agreeing that "both songs are about … rising above or moving beyond the criticisms the speaker is receiving" and finding this message to be contained in the four-part sequence at issue]; D-Ex. 6 [Lewis Rebuttal] at 22-23 [agreeing that there is a "general similarity in presenting a speaker who is considering negative comments made by others" and that "both works depict in a general way a world in which some people are critical"].) |
| **161.** Nowhere in *Shake It Off* does the speaker | Exh. 14 (*Shake It Off* lyrics); Exh. 11 (Kajikawa | **Undisputed.** |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| reassure her boyfriend. | Depo.) at 163:6-17. | |
| **162.** Nowhere in *Playas* does the speaker refer to having music in her mind. | Exh. 13 (*Playas* lyrics); Exh. 11 (Kajikawa Depo.) at 149:15-17. | **Undisputed.** |
| **163.** Nowhere in *Playas* does the speaker refer to finding comfort in music. | Exh. 13 (*Playas* lyrics). | **Undisputed.** |
| **164.** The speakers in *Playas* and *Shake It Off* are not substantially similar characters. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 2-3, ¶ 10; Exh. 5 (Lewis initial Report) at 4-5. | **Disputed.** To the extent similarity of characters in non-narrative works is probative on the issue of substantial similarity, the speakers in *Playas* and *Shake It Off* both acknowledge that there are people that gossip and criticize them, both speakers express their resolve to not give into the criticism and stay true to |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | their relationships, either with a romantic partner or themselves. Both speakers describe the gossipy people using similar language ("players gonna play, haters gonna hate" and two other groups of actors following the same structure) and via a similar four-part poetic sequence that conveys the same fundamental message: ignore the untrustworthy people and stay true to your own course. (P-Ex. 7 [Kajikawa Depo.] at 144:5-145:25 [both songs' first "[m]aking statements about what people are saying about the speaker"] & 147:8-148:10 [both songs' pre-chorus performs similar function "of countering the gossipers that are mentioned, |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
| --- | --- | --- |
| | | the people that have ill intent that are based on the first verse and again set up the chorus, where there is some similarities"]; P-Ex. 2 [Kajikawa Report] at ¶¶ 9-14; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 6-7 & 9-11 [opining that both songs share a protagonist positioned against the world, who is "determined to maintain healthy relationships by staying above the fray and ignoring untrustworthy people," even though it is a romantic relationship in *Playas* and "relationship with oneself" in *Shake It Off*]; D-Ex. 6 [Lewis Rebuttal] at 22-23 [agreeing that there is a "general similarity in |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | presenting a speaker who is considering negative comments made by others" and that "both works depict in a general way a world in which some people are critical"]; P-Ex. 9 [Lewis Depo.] at 38:25-39:4 [agreeing the speakers in both songs experience criticism from outsiders], 57:19-58:11 & 60:18-61:11 [agreeing that "both songs are about … rising above or moving beyond the criticisms the speaker is receiving" and finding this message to be contained in the four-part sequence at issue].) |
| **165.** The speakers in *Playas* and *Shake It Off* are | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. | **Disputed.** To the extent similarity of characters in non-narrative works is |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| different. | at -2-3, ¶ 10; Exh. 5 (Lewis initial Report) at 4-5; Exh. 11 (Kajikawa Depo.) at 149:15-17, 162:2-7, 163:6-17. | probative on the issue of substantial similarity, the speakers in *Playas* and *Shake It Off* both acknowledge that there are people that gossip and criticize them, both speakers express their resolve to not give into the criticism and stay true to their relationships, either with a romantic partner or themselves. Both speakers describe the gossipy people using similar language ("players gonna play, haters gonna hate" and two other groups of actors following the same structure) and via a similar four-part poetic sequence that conveys the same fundamental message: ignore the untrustworthy people and stay true to your own course. (P-Ex. 4 |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 6-7 & 9-11 [opining that both songs share a protagonist positioned against the world, who is "determined to maintain healthy relationships by staying above the fray and ignoring untrustworthy people," even though it is a romantic relationship in *Playas* and "relationship with oneself" in *Shake It Off*; the main characters in both songs "share … existential threats" that are described as "gossipy people"]; P-Ex. 9 [Lewis Depo.] at 57:19-58:11 & 60:18-61:11 [agreeing that "both songs are about … rising above or moving beyond the criticisms the speaker is |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | receiving" and finding this message to be contained in the four-part sequence at issue]; D-Ex. 6 [Lewis Rebuttal] at 22-23 [agreeing that there is a "general similarity in presenting a speaker who is considering negative comments made by others" and that "both works depict in a general way a world in which some people are critical"]; P-Ex. 2 [Kajikawa Report] at ¶¶ 9-14; P-Ex. 7 [Kajikawa Depo] at 144:5-145:25 [both songs' first "[m]aking statements about what people are saying about the speaker."] & 147:8-148:10 [both songs' pre-chorus performs similar function "of countering the gossipers that are mentioned, the people that have ill intent |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | that are based on the first verse and again set up the chorus, where there is some similarities"].) |
| | ***b. Playas*: the Speaker's Romantic Partner** | |
| **166.** Throughout *Playas*' lyrics, the speaker is addressing her romantic partner. | Exh. 13 (*Playas* lyrics); Exh. 11 (Kajikawa Depo.) at 158:13-25, 162:20-25, 202:10-16, 262:21-263:3, 265:2-14. | **Undisputed.** |
| **167.** In *Playas*, the speaker reassures her romantic partner in the face of attempts to interfere with their romantic relationship. | Exh. 13 (*Playas* lyrics); Exh. 11 (Kajikawa Depo.) at 158:13-25, 162:20-25, 202:10-16, 262:21-263:3, 265:2-14. | **Disputed In Part.**<br><br>The speaker in *Playas* expresses resolve to not give into the criticism. (P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 9-11 [opining that both songs share a protagonist positioned against the world, who is "determined to maintain healthy |

| <u>**Defendants' Uncontroverted Fact**</u> | <u>**Evidence in Support**</u> | <u>**Plaintiffs' Response**</u> |
|---|---|---|
| | | relationships by staying above the fray and ignoring untrustworthy people"]; P-Ex. 9 [Lewis Depo.] at 57:19-58:11 & 60:18-61:11 [agreeing that "both songs are about … rising above or moving beyond the criticisms the speaker is receiving" and finding this message to be contained in the four-part sequence at issue].) |
| **168.** Nowhere in *Shake It Off* does the speaker reassure a romantic partner of her love or trust. | Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 2-4, ¶¶ 9-10, 14, Exh. 5 (Lewis initial Report) at 5; Exh. 11 (Kajikawa Depo.) at 163:6-17. | **Disputed In Part.**<br><br>The speakers in *Playas* and *Shake It Off* both acknowledge that there are people that gossip and criticize them and both speakers express their resolve to not give into the criticism, such that the |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | romantic partner in *Playas* is functionally equivalent to the self in *Shake It Off*. (P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 6 ["both songs feature speakers determined to maintain healthy relationships," be it a romantic relationship or a relationship with oneself] & 9-11 [opining that both songs share a protagonist positioned against the world, who is "determined to maintain healthy relationships by staying above the fray and ignoring untrustworthy people," even though it is a romantic relationship in *Playas* and "relationship with oneself" in *Shake It Off*].) |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| **169.** The speaker's romantic interest in *Playas* is not substantially similar to any character in *Shake It Off*. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 2, ¶ 9, Exh. 5 (Lewis initial Report) at 5; Exh. 11 (Kajikawa Depo.) at 163:6-17. | **Disputed In Part.**<br><br>The speakers in *Playas* and *Shake It Off* both acknowledge that there are people that gossip and criticize them and both speakers express their resolve to not give into the criticism, such that the romantic partner in *Playas* is functionally equivalent to the self in *Shake It Off*. (P-Ex. 4 [Kajikawa Rebuttal Report directed to Prof. Lewis Report] at ¶¶ 6 ["both songs feature speakers determined to maintain healthy relationships," be it a romantic relationship or a relationship with oneself] & 9-11 [opining that both songs share a protagonist positioned against the world, |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | who is "determined to maintain healthy relationships by staying above the fray and ignoring untrustworthy people," even though it is a romantic relationship in *Playas* and "relationship with oneself" in *Shake It Off*].) |
| | ***c.*** ***Playas*: the So-Called Friends who Are Trying to Break Up the Romantic Couple** | |
| **170.** In *Playas*, "so-called friends" are trying to break up the speaker's romantic relationship with her boyfriend. | Exh. 13 (*Playas* lyrics); Prof. Lewis Decl. at 2, 3-4 ¶¶ 9, 12, 14; Exh. 5 (Lewis initial Report) at 5-6; Exh. 11 (Kajikawa Depo.) at 158:13-25, 162:20-25, 202:10-16, 262:21-263:3, 265:2-14. | **Disputed In Part.** Undisputed that in *Playas*, "so-called' friends are trying to interfere with the speaker's romantic relationship. Disputed because these so-called friends pose an existential threat to the singer's relationship that is functionally equivalent to the existential threat posed to the |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | singer's self-confidence in *Shake It Off*. (P-Ex. 7 [Kajikawa Depo.] at 202:9-203:6.) |
| **171.** There is no reference in *Shake It Off* to someone trying to break up the speaker's romantic relationship. | Exh. 14 (*Shake It Off* lyrics); Exh. 11 (Kajikawa Depo.) at 162:2-7. | **Disputed In Part.** Undisputed that *Shake It Off* does not specifically reference someone trying to break up the speaker's romantic relationship. Disputed because these so-called friends pose an existential threat to the singer's relationship that is functionally equivalent to the existential threat posed to the singer's self-confidence in *Shake It Off*. (P-Ex. 7 [Kajikawa Depo.] at 202:9-203:6.) |
| **172.** The speaker's so-called friends in *Playas* are | Exh. 13 (*Playas* lyrics); Prof. Lewis Decl. at 2-4, | **Disputed.** Both the so-called friends in *Playas* and |

| <u>**Defendants' Uncontroverted Fact**</u> | <u>**Evidence in Support**</u> | <u>**Plaintiffs' Response**</u> |
|---|---|---|
| not substantially similar to any character in *Shake It Off*. | ¶¶ 9-10, 14; Exh. 5 (Lewis initial Report) at 5-7; Exh. 11 (Kajikawa Depo.) at 162:2-7. | the people in *Shake It Off* represent abstract and not fully formed threats to the speaker. With both characters, it is unclear who exactly they are or how closely the speakers know them. Those characters in both songs are both presented as a shadowy threat. (P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 7 [opining that "people" and "so-called friends" both "represent abstract and not fully formed threats to the speaker"] & 3 [noting that both songs' first verse mentions ("people") as characters that spread rumors about the speaker]; P-Ex. 7 [Kajikawa Depo.] at 269:25- |

| **<u>Defendants' Uncontroverted Fact</u>** | **<u>Evidence in Support</u>** | **<u>Plaintiffs' Response</u>** |
|---|---|---|
| | | 271:6.) |
| ***d.*** | ***Shake It Off*: the People who Criticize the Speaker** | |
| **173.** In *Shake It Off*, the speaker refers to people who have criticized her for staying out too late, having nothing in her brain, and going on too many dates but being unable to make them stay. | Exh. 14 (*Shake It Off* lyrics). | **Undisputed.** |
| **174.** There is no reference in *Playas* to people who criticize the speaker for staying out too late. | Exh. 13 (*Playas* lyrics); Exh. 11 (Kajikawa Depo.) at 144:5-18, 146:2-6. | **Undisputed.** |
| **175.** There is no reference in *Playas* to people who criticize the speaker for having nothing in her brain. | Exh. 13 (*Playas* lyrics); Exh. 11 (Kajikawa Depo.) at 146:7-11. | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| **176.** There is no reference in *Playas* to people who criticize the speaker for going on too many dates and being unable to make them stay. | Exh. 13 (*Playas* lyrics); Exh. 11 (Kajikawa Depo.) at 146:16-23. | **Undisputed.** |
| **177.** The people who criticize the speaker in *Shake It Off* are not substantially similar to any character in *Playas*. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 2-3, ¶¶ 9-10, Exh. 5 (Lewis initial Report) at 6-7; Exh. 11 (Kajikawa Depo.) at 144:5-18, 146:2-23. | **Disputed.** The people who criticize the speaker in *Shake It Off* are substantially similar to the people who criticize the speaker in *Playas*. (P-Ex. 4 [Kajikawa Rebuttal Report directed to Prof. Lewis Report] at ¶¶ 7 [opining that "people" and "so-called friends" both "represent abstract and not fully formed threats to the speaker"] & 3 [noting that both songs' first verse mentions ("people") as characters that spread rumors about the speaker]; P-Ex. 7 |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | [Kajikawa Depo.] at 269:25-271:6.).) |
| ***e. Shake It Off*: the Speaker's Ex-Man, the Ex-Man's New Girlfriend, and the Fella with Good Hair** | | |
| **178.** *Shake It Off*'s lyrics refer to the speaker's ex-man, the ex-man's new girlfriend, and a fella with good hair. | Exh. 14 (*Shake It Off* lyrics) at 3. | **Undisputed.** |
| **179.** There is no reference in *Playas* to the speaker's ex-boyfriend. | Exh. 13 (*Playas* lyrics); Prof. Lewis Decl. at 2, ¶ 9, Exh. 5 (Lewis initial Report) at 5. | **Undisputed.** |
| **180.** There is no reference in *Playas* to the new girlfriend of the speaker's ex-boyfriend. | Exh. 13 (*Playas* lyrics); Prof. Lewis Decl. at 2, ¶ 9, Exh. 5 (Lewis initial Report) at 5. | **Undisputed.** |
| **181.** There is no reference in *Playas* to a person with good hair. | Exh. 13 (*Playas* lyrics); Prof. Lewis Decl. at 2, ¶ 9, Exh. 5 (Lewis initial | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | Report) at 5. | |
| **182.** The speaker's ex-boyfriend in *Shake It Off* is not substantially similar to any character in *Playas*. | Exh. 13 (*Playas* lyrics); Prof. Lewis Decl. at 2, ¶ 9, Exh. 5 (Lewis initial Report) at 5. | **Disputed In Part.** This is not a fundamental difference in the songs' lyrics. The speaker's ex-boyfriend in *Shake If Off* only appears during the bridge section of *Shake If Off* and has no impact on the part of the song – the chorus – where infringement is alleged. (P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶ 8; D-Ex. 14 [*Shake It Off* lyrics].) |
| **183.** The new girlfriend of the speaker's ex-boyfriend in *Shake It Off* is not substantially similar to any character in *Playas*. | Exh. 13 (*Playas* lyrics); Prof. Lewis Decl. at 2-3, ¶¶ 9-10, Exh. 5 (Lewis initial Report) at 5. | **Disputed In Part.** This is not a fundamental difference in the songs' lyrics. The new girlfriend in *Shake If Off* only appears during the bridge section of *Shake If Off* and has no impact on the part of |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | the song – the chorus – where infringement is alleged. (P-Ex. 4 [Kajikawa Rebuttal Report directed to Prof. Lewis Report] at ¶ 8; D-Ex. 14 [*Shake It Off* lyrics].) |
| **184.** The fella with good hair in *Shake It Off* is not substantially similar to any character in *Playas*. | Exh. 13 (*Playas* lyrics); Prof. Lewis Decl. at 2, ¶ 9, Exh. 5 (Lewis initial Report) at 5. | **Disputed In Part.** This is not a fundamental difference in the songs' lyrics. The fella with good hair in *Shake If Off* only appears during the bridge section of *Shake If Off* and has no impact on the part of the song – the chorus – where infringement is alleged. (P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶ 8; D-Ex. 14 [*Shake It Off* lyrics].) |
| **185.** The characters in *Playas* and *Shake It Off* are | *See* evidence cited in support of Facts 154-184. | **Disputed.** To the extent similarity of characters in non-narrative works is |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| different. | | probative on the issue of substantial similarity, the speakers in *Playas* and *Shake It Off* are substantially similar, and the people in *Playas* and *Shake It Off* are substantially similar. (*See* evidence cited in support of Plaintiffs' Responses to Nos. 154-184 above.)<br><br>(*See also* P-Ex.4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 3-11 [opining that both songs share a protagonist positioned against the world, who is "determined to maintain healthy relationships by staying above the fray and ignoring untrustworthy people," even though it is a romantic relationship in Plaintiffs' |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | song and "relationship with oneself" in Defendants' song; the main characters in both songs "share … existential threats" that are described as "gossipy people using similar language … and via a similar four-part poetic sequence that conveys the same fundamental message," while secondary characters in Defendants' song do not appear in and "have no impact on" the allegedly infringing chorus]; D-Ex. 5 [Lewis Report] at 6 [confirming "commonality between the characters" found in gossipy people present in both songs]; P-Ex. 9 [Lewis Depo.] at 41:15-42:1, 48:8-21, 49:9-24 & 50:21-51:5 [same].) |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| **(iv) Theme** | | |
| **186.** *Playas* is a love song and its central theme is the endurance of love in the face of social adversity. | Exh. 13 (*Playas* lyrics); Prof. Lewis Decl. at 5, ¶ 19, Exh. 5 (Lewis initial Report) at 10-11; Exh. 10 (Kajikawa Rebuttal Report directed to Lewis initial Report) at 5, ¶¶ 19-20 (Prof. Lewis' statement of *Playas* and *Shake It Off*'s respective themes is "mostly accurate" but "highlight[s] a difference" by being specific rather than general). | **Disputed.** The main theme of *Playas* is that the world is full of untrustworthy people, and we should ignore them and stay our own course. (P-Ex. 2 [Kajikawa Report] at ¶ 1; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 19-23 [opining that the core theme shared by the songs at issue is "maintaining healthy relationships in the face of social adversity," even though it is "a relationship with oneself" that is discussed in Defendants' song, and the "small differences in setting" are "not relevant" to the core shared theme]; P-Ex. 9 [Lewis Depo.] at 57:19-58:11 & 60:18-61:11 |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | [agreeing that "both songs are about … rising above or moving beyond the criticisms the speaker is receiving" and finding this message to be contained in the four-part sequence at issue]; P-Ex. 7 [Kajikawa Depo.] at 200:11-201:15.) |
| **187.** *Shake It Off* is a song about individual freedom and its central theme is the speaker's independence from those who criticize her. | Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 5, ¶ 19, Exh. 5 (Lewis initial Report) at 10-11; Exh. 10 (Kajikawa Rebuttal Report directed to Lewis initial Report) at 5, ¶¶ 19-20. | **Disputed.** The main theme of *Shake It Off* is that the world is full of untrustworthy people, and we should ignore them and do as we please. (P-Ex. 2 [Kajikawa Report] at ¶ 1; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 19-23 [opining that the core theme shared by the songs at issue is "maintaining healthy relationships in the face of |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | social adversity," even though it is "a relationship with oneself" that is discussed in Defendants' song, and the "small differences in setting" are "not relevant" to the core shared theme]; P-Ex. 9 [Lewis Depo.] at 57:19-58:11 & 60:18-61:11 [agreeing that "both songs are about … rising above or moving beyond the criticisms the speaker is receiving" and finding this message to be contained in the four-part sequence at issue]; P-Ex. 7 [Kajikawa Depo.] at 200:11-201:15 [general theme staying true to what you believe in the face of others looking out for themselves].) |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| **188.** The themes of *Playas* and *Shake It Off* are not substantially similar. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 5, ¶ 19, Exh. 5 (Lewis initial Report) at 10-12; Exh. 10 (Kajikawa Rebuttal Report directed to Lewis initial Report) at 5, ¶¶ 19-20. | **Disputed.** To the extent similarity of themes in non-narrative works is probative on the issue of substantial similarity, the main theme of both songs is that the world is full of untrustworthy people, and we should ignore them and stay our own course. (P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 19-23 [opining that the core theme shared by the songs at issue is "maintaining healthy relationships in the face of social adversity," even though it is "a relationship with oneself" that is discussed in Defendants' song, and the "small differences in setting" are "not relevant" to the core shared theme]; P-Ex. 9 |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | [Lewis Depo.] at 57:19-58:11 & 60:18-61:11 [agreeing that "both songs are about … rising above or moving beyond the criticisms the speaker is receiving" and finding this message to be contained in the four-part sequence at issue]; see also P-Ex. 2 [Kajikawa Report] at ¶ 1; P-Ex. 7 [Kajikawa Depo.] at 200:11-201:15.) |
| **189.** The themes of *Playas* and *Shake It Off* are different. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 5, ¶ 19, Exh. 5 (Lewis initial Report) at 10-12; Exh. 10 (Kajikawa Rebuttal Report directed to Lewis initial Report) at 5, ¶¶ 19-20. | **Disputed.** To the extent similarity of themes in non-narrative works is probative on the issue of substantial similarity, the main theme of both songs is that the world is full of untrustworthy people and stay our own course. (*See* evidence cited in support of Plaintiffs' |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
| --- | --- | --- |
| | | responses to Nos. 186-88 above.) |
| **(v) Setting** | | |
| **190.** In a literary work, setting is the general locale, historical time, and social circumstances in which its action occurs, the "when" and "where." | Prof. Lewis Decl. at 5, ¶ 20, Exh. 5 (Lewis initial Report) at 13. | **Disputed.** This is not an uncontroverted fact rather a statement of expert opinion.<br><br>*See* Evidentiary Objections at No. 55. |
| **191.** References in *Playas*' lyrics to use of a cell phone and pager and to player and hater words suggests that *Playas* is set in recent times. | Exh. 13 (*Playas* lyrics); Prof. Lewis Decl. at 5, ¶ 21, Exh. 5 (Lewis initial Report) at 13. | **Undisputed.** |
| **192.** References in *Shake It Off* to player and hater words suggests that *Playas* is set in recent times. | Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 5, ¶ 21, Exh. 5 (Lewis initial Report) at 13. | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| **193.** Setting literature or lyrics to recent times is commonplace. | Prof. Lewis Decl. at 5, ¶ 21, Exh. 5 (Lewis initial Report) at 13. | **Undisputed.** |
| **194.** *Shake It Off*'s lyrics describe events at a social gathering or nightclub, where the speaker's "ex-man brought his new girlfriend" and there's also a "fella" with good hair. | Exh. 14 (*Shake It Off* lyrics) at 3; Prof. Lewis Decl. at 5, ¶ 21, Exh. 5 (Lewis initial Report) at 13; Exh. 11 (Kajikawa Depo.) at 280:20-23. | **Undisputed.** |
| **195.** *Playas*' lyrics do not refer to events at a social gathering or nightclub. | Exh. 13 (*Playa* lyrics); Prof. Lewis Decl. at 5, ¶ 21, Exh. 5 (Lewis initial Report) at 13. | **Undisputed.** |
| **196.** Nowhere in *Playas* is a physical location referenced. | Exh. 13 (*Playas* lyrics). | **Undisputed.** |
| **197.** The settings of *Playas* and *Shake It Off* are | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics) at 3; Prof. Lewis | **Disputed.** To the extent similarity of settings in non-narrative works is probative |

| <u>**Defendants' Uncontroverted Fact**</u> | <u>**Evidence in Support**</u> | <u>**Plaintiffs' Response**</u> |
|---|---|---|
| not substantially similar. | Decl. at 5, ¶ 21, Exh. 5 (Lewis initial Report) at 13; Exh. 11 (Kajikawa Depo.) at 280:20-23. | on the issue of substantial similarity, both songs are set in recent times. (P-Ex. 11 (*Playas* lyrics); Dkt. No. 92-9 [Lewis Decl.] at 5, ¶ 21; D-Ex.5 (Lewis Report) at 13 [opining that the songs "share the commonplace setting of the present or a recent historical period without identification of a specific place"].) |
| **198.** *Shake It Off* includes a physical setting that does not appear in *Playas*. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics) at 3; Prof. Lewis Decl. at 5, ¶ 21, Exh. 5 (Lewis initial Report) at 13; Exh. 11 (Kajikawa Depo.) at 280:20-23. | **Undisputed.** |
| **(vi) Mood** | | |
| **199.** Mood, also called "atmosphere," is the | Prof. Lewis Decl. at 5, ¶ 22, Exh. 5 (Lewis initial | **Disputed.** This is not an uncontroverted fact rather a |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| "emotional tone pervading a section or the whole of a literary work. | Report) at 14. | statement of expert opinion.<br><br>*See* Evidentiary Objections at No. 56. |
| **200.** The lyrics of *Playas* establish an intimate and romantic mood, including by the speaker only addressing her romantic partner and using straightforward language, such as "I want you to know/ I'll never let you go," to speak to her beloved. | Exh. 13 (*Playas* lyrics); Prof. Lewis Decl. at 5-6, ¶ 23, Exh. 5 (Lewis initial Report) at 15-16; Exh. 10 (Kajikawa Rebuttal Report directed to Lewis initial Report) at 6, ¶ 24 ("I generally agree with Lewis' characterizations" of the works' respective moods). | **Disputed In Part.** In addition, *Playas* is a pop song with a mood that is playful and affirming. (P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 24-25 [discounting certain mood differences as insignificant: "[b]oth are pop songs, and both come across as playful and affirming"]; P-Ex. 7 [Kajikawa Depo.] at 137:15-18.) |
| **201.** *Shake*'s lyrics establish a boisterous and playful mood, including by employing the metrically | Exh. 14 (*Shake It Off* lyrics) at 1-3; Prof. Lewis Decl. at 5, ¶ 23, Exh. 5 (Lewis initial Report) at | **Disputed In Part.** In addition, *Shake It Off* is a pop song with a mood that is playful and affirming. (P- |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| insistent repetition of verbs in the chorus, e.g., "[p]layers gonna play, play, play, play, play," and which connects the song's phrasing to the idea of dance. | 15; Exh. 10 (Kajikawa Rebuttal Report directed to Lewis initial Report) at 6, ¶ 24. | Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 24-25 [discounting certain mood differences as insignificant: "[b]oth are pop songs, and both come across as playful and affirming"]; P-Ex. 7 [Kajikawa Depo.] at 137:15-18].) |
| **202.** The moods of *Playas* and *Shake It Off* are not substantially similar. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 5-6, ¶ 23, Exh. 5 (Lewis initial Report) at 14-16; Exh. 10 (Kajikawa Rebuttal Report directed to Lewis initial Report) at 6, ¶ 24. | **Disputed.** To the extent similarity of moods in non-narrative works is probative on the issue of substantial similarity, both songs are pop songs with a mood that is playful and affirming. (P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 24-25 [discounting certain mood differences as insignificant: "[b]oth are pop songs, and |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | both come across as playful and affirming"]; P-Ex. 7 [Kajikawa Depo.] at 137:15-18.) |
| **203.** The moods of *Playas* and *Shake It Off* are different. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 5-6, ¶ 23, Exh. 5 (Lewis initial Report) at 14-16; Exh. 10 (Kajikawa Rebuttal Report directed to Lewis initial Report) at 6, ¶ 24. | **Disputed.** (*See* evidence cited in support of Plaintiffs' response to No. 202 above.) |
| **(vii) Pace** | | |
| **204.** In works of fiction and narrative poetry, pace is generally the speed at which the plot and sequence of events unfold, while in non-narrative poetry and lyrics pace is the tempo at which the verse | Prof. Lewis Decl. at 6, ¶ 24, Exh. 5 (Lewis initial Report) at 16-17. | **Disputed.** This is not an uncontroverted fact rather a statement of expert opinion.<br><br>*See* Evidentiary Objections at No. 57. |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| unfolds. | | |
| **205.** *Playas*' lyrics use lines relatively even in length, largely iambic meter with repeating short end-line rhyming words, and enjambment – the flow of one line into another – to result in a fluid and conversational pace. | Exh. 13 (*Playas* lyrics); Prof. Lewis Decl. at 6, ¶ 25, Exh. 5 (Lewis initial Report) at 16-19, 20-21; Exh. 10 (Kajikawa Rebuttal Report directed to Lewis initial Report) at 6, ¶ 26 ("I mostly agree with Lewis's descriptions" of the works' respective paces). | **Disputed** to the extent Defendants contend that both songs' lyrics do not use wordplay and are not otherwise playful. (P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 26-28 [discounting the claimed differences in pace as insufficient to overcome the "remarkably similar" choruses and strongly disagreeing that Plaintiffs' lyrics lack wordplay or are not otherwise playful].)<br><br>Further disputed to the extent Defendants contend that *Shake It Off's* lyrics do not have instances of enjambment. (P-Ex. 9 |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
| --- | --- | --- |
| | | [Lewis Depo.] at 66:5-15.) |
| **206.** *Shake It Off*'s lyrics employ trochaic feet, or alternating stressed and unstressed syllables, strong end-pauses, and repetition to create a dynamic, aggressive, choppy, staccato pace. | Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 6, ¶ 25, Exh. 5 (Lewis initial Report) at 16-20; Exh. 10 (Kajikawa Rebuttal Report directed to Lewis initial Report) at 6, ¶ 26. | **Disputed** to the extent Defendants contend that both songs' lyrics do not use wordplay and are not otherwise playful. (P-Ex. 4 [Kajikawa Rebuttal Report directed to Prof. Lewis Report] at ¶¶ 26-28 [discounting the claimed differences in pace as insufficient to overcome the "remarkably similar" choruses and strongly disagreeing that Plaintiffs' lyrics lack wordplay or are not otherwise playful].)<br><br>Further disputed to the extent Defendants contend that *Shake It Off's* lyrics do not have instances of enjambment. (P-Ex. 9 |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | [Lewis Depo.] at 66:5-15.) |
| **207.** The paces of *Playas'* lyrics and *Shake It Off*'s lyrics are not substantially similar. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 6, ¶ 25, Exh. 5 (Lewis initial Report) at 17-20; Exh. 10 (Kajikawa Rebuttal Report directed to Lewis initial Report) at 6, ¶ 26. | **Disputed.** To the extent similarity of paces in non-narrative works is probative on the issue of substantial similarity, both songs' lyrics use wordplay and are otherwise playful. (P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 26-28 [discounting the claimed differences in pace as insufficient to overcome the "remarkably similar" choruses and strongly disagreeing that Plaintiffs' lyrics lack wordplay or are not otherwise playful].)<br><br>Further disputed to the extent Defendants contend that both songs' lyrics do not have instances of enjambment. |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | (P-Ex. 9 [Lewis Depo.] at 66:5-15.) |
| **208.** The paces of *Playas*' lyrics and *Shake It Off*'s lyrics are different. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 6, ¶ 25, Exh. 5 (Lewis initial Report) at 17-20; Exh. 10 (Kajikawa Rebuttal Report directed to Lewis initial Report) at 6, ¶ 26. | **Disputed.** (*See* evidence cited in support of Plaintiffs' response to No. 207 above.) |
| **(viii) Dialogue** | | |
| **209.** *Playas* uses a direct and unadorned style, relying on language that is colloquial and intimate, e.g., "I want you to know/I'll never let you go." | Exh. 13 (*Playas* lyrics); Prof. Lewis Decl. at 7, ¶ 27, Exh. 5 (Lewis initial Report) at 22. | **Disputed** to the extent Defendants contend that *Shake It Off* does not use colloquial language. (P-Ex. 4 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶¶ 29-34 & 55 [observing that both choruses employ "the same colloquial, AAVE-derived terms" and "not only use[] |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | the same words and the same phrases, but [they] do[] so in combination and as part of a similar four-part poetic sequence that expresses a similar idea"]; P-Ex. 9 [Lewis Depo.] at 77:4-78:11 [agreeing that, like *Playas*, *Shake It Off* uses colloquial language].) |
| **210.** *Shake* uses numerous puns and suggestive phrasing, *e.g.*, the word "shake" hints at the movement of both dance and desire, as when the speaker invites the fella with good hair to come over so they can shake, shake, shake. | Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 7, ¶ 27, Exh. 5 (Lewis initial Report) at 22. | **Disputed** to the extent Defendants contend that the two songs do not use similar literary devices. (P-Ex. 4 [Kajikawa Rebuttal Prof. Lewis Report] at ¶¶ 29-34 & 55 [observing that both works use wordplay and other literary devices in the choruses]; P-Ex. 9 [Lewis Depo.] at 77:4-78:11 [agreeing that, like *Playas*, *Shake It Off* uses colloquial |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | language].) |
| **211.** The language in *Shake It Off*'s introduction, two verses, two pre-choruses, interlude, bridge, and post-chorus is completely different from the language in *Playas*. | Exh. 14 (*Shake It Off* lyrics); Exh. 13 (*Playas* lyrics); Prof. Lewis' Declaration at 7, ¶ 28, Exh. 5 (Lewis initial Report) at 23-25; Exh. 11 (Kajikawa Depo.) at 144:5-18, 146:1-147:3, 147:4-7, 148:11-14, 149:11-14, 151:23-153:25. | **Disputed.** The language in the verses of both songs serve similar story functions and portions of the pre-chorus of *Shake It Off* serve similar story functions to the verses of *Playas*. (P-Ex. 7 [Kajikawa Depo.] at 144:5-145:25 [observing both songs' first verses "[m]aking statements about what people are saying about the speaker"], 147:8-148:10 [observing lyrics in both songs' pre-chorus perform a similar function in terms of countering the gossipers that are mentioned, the people that have ill intent that are based on the first verse and again set up the chorus, where there is some |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | similarities"], 148:15-149:14 [noting similarity with "Can't stop won't stop moving, its like I got this music in my mind, saying its gonna be alright" from *Shake It Off* to the end of the first verse of *Playas* – "you are the only one getting all my love, that's what they do, aint nothing new" – is a transition and getting us to think about refuting what it is that people say and do] & 156:15-157:16]; P-Ex. 2 [Kajikawa Report] at ¶ 1; P-Ex. 4 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶¶ 29-34 & 55 [observing that both works use wordplay and other literary devices in the choruses and both choruses employ "the same colloquial, AAVE-derived terms" and |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | "not only use[] the same words and the same phrases, but [they] do[] so in combination and as part of a similar four-part poetic sequence that expresses a similar idea"]; P-Ex. 9 [Lewis Depo.] at 77:4-78:11 [agreeing that, like *Playas*, *Shake It Off* uses colloquial language], 100:5-18 & 101:11-19 [acknowledging commonalities in language]; D-Ex. 1 [Ferrara Report] at ¶¶ 40-41 [acknowledging lyrical similarities between both songs' choruses]; P-Ex. 8 [Ferrara Depo.] at 103:15-18 [conceding "concrete objective" similarity between the lyrics in question]; Ferrara Decl. at ¶ 6(f) [observing lyrical |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | similarities].) |
| **212.** While *Playas* is a love song about a person assuring her boyfriend when so-called friends are trying to break them up, *Shake It Off* is a song about personal freedom, shaking off the criticism of others and finding comfort in music. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); *see* evidence cited in support of Facts 186-212. | **Disputed.** The main theme of both songs is that the world is full of untrustworthy people, and we should ignore them and do as we please. (P-Ex. 2 [Kajikawa Report] at ¶ 1; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶ 20; P-Ex. 9 [Lewis Depo.] at 60:18-61:11 [agreeing that "both songs are about … rising above or moving beyond the criticisms the speaker is receiving" and finding this message to be contained in the four-part sequence at issue]; P-Ex. 7 [Kajikawa Depo.] at 184:19-185:18, 188:13-189:17 & 192:8-193:15 [noting similarities in |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | general theme].) |
| **213.** The choruses of *Playas* and *Shake It Off* each include a version of the public domain phrases "players gonna play" and "haters gonna hate." | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); *see* evidence cited in support of Facts 1-30. | **Disputed** to the extent Defendants contend that the phrases "players gonna play" and "haters gonna hate," used as part of a four-part tautological sequence, were in the public domain. (P-Ex. 2 [Kajikawa Report] at ¶¶ 1 [Plaintiffs' usage of the elements "is distinct from the way the words 'player' and 'hater' appear in previous song lyrics"], 8-10 [explaining why Plaintiffs' usage is distinct from prior art and concluding that their chorus embodies "poetic wordplay … [that] expresses a larger idea … and does so in a catchy way] & 15-19 [Plaintiffs' originality cannot be diminished by claims of |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | common coin, banality or brevity: Plaintiffs' originality "resides in the particular way these words were used in service of a larger idea … [as Plaintiffs] take[] words that may seem mundane but transform[] them into a catchy way of saying something about the state of the world. This is a poetic use of language that transcends the original meaning of the words 'player' and 'hater' as they usually appear in song lyrics…"]; P-Ex. 7 [Kajikawa Depo.] at 94:21-95:5 [expressing doubts that prior "isolated words or phrases" could be relevant because "the usage in those cases is different"], 169:25-171:11 [the sequence at issue |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | is an original creation as based on "the recombination, reuse and sort of deployment of existing things], 172:10-13, 172:16-21, 173:3-8 & 173:11-17 [noting prior use of phrases only ***in isolation***], 183:12-185:18 [it is Plaintiffs' combination of player/hater phrases that is unique as they drew them together to create a new way to express a larger idea] & 187:18-188:2 [it is Plaintiffs' unique expression of the larger idea in the combination of the four phrases at issue that makes their creation original]; Ex 4 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶ 39 [that the words 'player' and 'hater' were in usage prior to 2000 does not mean that |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | [Plaintiffs'] lyrics are unoriginal. … The plaintiffs do not seek copyright protection for using the individual words 'player' and 'hater' but for the way those words are used in the chorus of their song as the beginning of a four-part poetic sequence that expresses a larger idea."]; P-Ex. 5 [Kajikawa Rebuttal to Prof. Morgan Report] at ¶¶ 3-7 [analyzing prior art utilizing similar phrasing and rejecting the notion that any of it combined the elements in the same way; concluding that Plaintiffs' usage of these elements was "distinct, original, and creative" because, *inter alia*, "they were never used in this particular way as part of a |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | four-part poetic sequence to express a larger idea about the state of the world]; D-Ex. 5 [Lewis Report] at 36 [confirming that "all literature operates by taking existing words and phrases and then re-presenting them"]; P-Ex. 9 [Lewis Depo.] at 90:15-91:13 [confirming that no prior art combined the two tautological phrases "players gonna play" and "haters gonna hate"]; P-Ex. 10 [Morgan Depo.] at 66:21-67:8 & 81:9-82:11 [same].) |
| **214.** *Playas* varies the public domain "players gonna play" and "haters gonna hate" phrases as follows: "players, they gon' play" and "haters, | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 9, 10-11 ¶¶ 32, 36 Exh. 5 (Lewis initial Report) at | **Disputed** to the extent Defendants contend that the phrase "players gonna play," used as part of a four-part tautological sequence, were in the public domain. (P-Ex. |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| they gonna hate." | 26-30. | 2 [Kajikawa Report] at ¶¶ 1, 8-10 & 15-19; P-Ex. 4 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶¶ 29-34 & 55; P-Ex. 5 [Kajikawa Rebuttal to Prof. Morgan Report] at ¶¶ 3-7; P-Ex. 7 [Kajikawa Depo.] at 94:21-95:5, 117:5-13, 169:25-171:11; 183:12-185:18 & 187:18-188:2; P-Ex. 9 [Lewis Depo.] at 90:15-91:13; P-Ex. 10 [Morgan Depo.] at 66:21-67:8 & 81:9-82:11.)<br><br>Further disputed that this addition changes the meaning of the expression being conveyed. (D-Ex. 5 [Lewis Report] at 29; P-Ex. 4 [Kajikawa Rebuttal to Lewis Report] at ¶ 43.) |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| **215.** Adding ", they" is a commonplace practice predating *Playas* and present in many literary works and songs. | Exh. 6 (Lewis Rebuttal Report) at 4-5 (insertion of ", they" referred to by grammarians as a "left dislocation included in, *e.g.*, Bob Dylan's *The Times They Are A-Changin'* (1964)); Prof. Morgan Decl. at 2-3, ¶¶ 13-14, Exh. 4 (Morgan Rebuttal Report) at 1 (insertion of ", they" referred to by linguists as linguistic anaphora and appositive or pleonastic pronouns, which are commonplace in AAVE); Exh. 11 (Kajikawa Depo.) at 180:8-23, 181:2-25. | **Disputed.** Adding "they" was not commonplace prior to *Playas*. (P-Ex. 9 [Lewis Depo.] at 98:19-25 [not seen in prior art]; P-Ex. 7 [Kajikawa Depo.] at 181:4-9; P-Ex. 10 [Morgan Depo.] at 110:12-112:5.) |
| **216.** "Gon'" is a commonplace variant of "gonna." | Prof. Morgan Decl. at 2, ¶ 12. | **Undisputed.** |
| **217.** *Shake It Off* varies | Exh. 14 (*Shake It Off* | **Disputed** to the extent |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| the public domain phrases "players gonna play" and "haters gonna hate" by repeating the last word in each phrase four times. | lyrics). | Defendants contend that the phrases "players gonna play" and "haters gonna hate," used as part of a four-part tautological sequence, were in the public domain. (P-Ex. 2 [Kajikawa Report] at ¶¶ 1, 8-10 & 15-19; P-Ex. 4 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶ 39; P-Ex. 5 [Kajikawa Rebuttal to Prof. Morgan Report at ¶¶ 3-7; P-Ex. 7 [Kajikawa Depo.] at 94:21-95:5, 117:5-14, 169:25-171:11; 183:12-185:18 & 187:18-188:2; P-Ex. 9 [Lewis Depo.] at 90:15-91:13; P-Ex. 10 [Morgan Depo.] at 66:21-67:8 & 81:9-82:11.)<br><br>Further, the repetition is not a substantial difference. (*See* evidence cited in support of |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | Plaintiffs' responses to Nos. 119 & 121 above.) |
| **218.** *Shake It Off*'s five-fold repetition of the last word in the public domain phrases "players gonna play" and "haters gonna hate" creates dramatic energy and insistence to each phrase. | Prof. Lewis Decl. at 5-6, ¶ 23, Exh. 5 (Lewis initial Report) at 30. | **Disputed.** This is not an uncontroverted fact rather a statement of expert opinion.<br><br>Further disputed to the extent Defendants contend that the phrases "players gonna play" and "haters gonna hate," used as part of a four-part tautological sequence, were in the public domain. (P-Ex. 2 [Kajikawa Report] at ¶¶ 1, 8-10 & 15-19; P-Ex. 4 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶ 39; P-Ex. 5 [Kajikawa Rebuttal to Prof. Morgan Report at ¶¶ 3-7; P-Ex. 7 [Kajikawa Depo.] at 94:21-95:5, 117:5-14, 169:25-171:11; 183:12-185:18 & 187:18-188:2; P- |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | Ex. 9 [Lewis Depo.] at 90:15-91:13; P-Ex. 10 [Morgan Depo.] at 66:21-67:8 & 81:9-82:11.)<br><br>Further, the repetition is not a substantial difference. (*See* evidence cited in support of Plaintiffs' responses to Nos. 119 & 121 above.) |
| **219.** *Playas*' versions of the public domain phrases "players gonna play" and "haters gonna hate" are different from *Shake It Off*'s versions of those two public domain phrases. | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 5-6, 8-10 ¶¶ 2, 31, 34, Exh. 5 (Lewis initial Report) at 29-31. | **Disputed** to the extent Defendants contend that the phrases "players gonna play" and "haters gonna hate," used as part of a four-part tautological sequence, were in the public domain. (P-Ex. 2 [Kajikawa Report] at ¶¶ 1 & 8-10; P-Ex. 4 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶¶ 29-34 & 55 [observing that both choruses employ "the same |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | colloquial, AAVE-derived terms" and "not only use[] the same words and the same phrases, but [they] do[] so in combination and as part of a similar four-part poetic sequence that expresses a similar idea"]; P-Ex. 5 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶¶ 3-7; P-Ex. 7 [Kajikawa Depo.] at 94:21-95:5, 117:5-14, 169:25-171:11; 183:12-185:18 & 187:18-188:2; P-Ex. 9 [Lewis Depo.] at 90:15-91:13' P-Ex. 10 [Morgan Depo.] at 66:21-67:8 & 81:9-82:11.)<br><br>Further disputed to the extent the claimed difference in the spelling of playa/player and gon/gonna, as the difference is insignificant. (P-Ex. 9 |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | [Lewis Depo.] at 131:6-132:5; P-Ex. 10 [Morgan Depo.] at 85:6-12; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 43-46; P-Ex. 5 [Kajikawa Rebuttal Report to Prof. Morgan Report] at ¶¶ 10-11.)<br><br>Moreover, the repetition of "play" and "hate" is not a substantial difference. (*See* evidence cited in support of Plaintiffs' responses to Nos. 119 & 121 above.) |
| **220.** Aside from *Playas*' and *Shake It Off*'s respective versions of the public domain phrases "players gonna play" and "haters gonna hate," all the other words in each song's respective chorus are | Exh. 13 (*Playas* lyrics); Exh. 14 (*Shake It Off* lyrics); Prof. Lewis Decl. at 8-11, ¶¶ 31-36; *see* evidence cited in support of Facts 213-219. | **Disputed.** There are additional words which appear in both choruses outside of the respective versions of the phrases "players gonna play" and "haters gonna hate." (P-Ex. 11 [Hall0197 (*Playas* |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| different. | | lyrics)]; D-Ex. 14 [*Shake It Off* lyrics]; *see also* evidence cited in support of Plaintiffs' responses to Nos. 213-219 above.)<br><br>Further disputed to the extent Defendants contend that the phrases "players gonna play" and "haters gonna hate," used as part of a four-part tautological sequence, were in the public domain. (P-Ex. 2 [Kajikawa Report] at ¶¶ 8-10; P-Ex. 5 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶¶ 3-7; P-Ex. 7 [Kajikawa Depo.] at 94:21-95:5, 117:5-14, 169:25-171:11; 183:12-185:18 & 187:18-188:2; P-Ex. 9 [Lewis Depo.] at 90:15-91:13' P-Ex. 10 [Morgan Depo.] at 66:21-67:8 & 81:9- |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
| --- | --- | --- |
| | | 82:11.)<br><br>Further disputed to the extent Defendants contend that the versions of these phrases in both songs are more different than they are similar. (P-Ex. 2 [Kajikawa Report] at ¶¶ 12-14 [opining that the choruses' "similarities are fundamentally structural," as Defendants adopt the same "four-part sequence," using the same phrasing for the first part of it and paraphrasing the second part, to "make the same point" as Plaintiffs' chorus; as such, "not only do … [the two choruses] share lyrics but those lyrics also function in identical ways. Each uses the phrases in question to begin a four-part sequence that |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | anchors the chorus and conjures a hostile world. Thus, each chorus uses the terms 'player' and 'hater' playfully as part of a poetic gambit that pushes the listener towards a larger idea: the world is full of untrustworthy people, but we should ignore them."]; P-Ex. 4 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶ 52 [opining that despite the insertion of lyrics in the sequence of Defendants' chorus, "the overall function and meaning of the poetic sequence remains intact" and the inserted lyrics in Defendants' chorus ("I'm just gonna shake (shake x4)/I shake it off, I shake it off") "have a direct corollary" at the end of Plaintiffs' chorus |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | ("That ain't got nothing to do with me and you/That's the way it is; that's the way it is"), "which performs the same function" as the intervening lyrics in Defendants' chorus], P-Ex. 7 [Kajikawa Depo.] at 156:15-157:16 & 227:15-229:14 [explaining that the interrupting lyrics "do[] the same work" as the "affirmative statement or statement of resolve" that is found at the end of Plaintiffs' chorus"].) |
| **221.** "Ballers, they gon' ball" and "Shot callers, they gonna call," on the one hand, and "Heartbreakers gonna break, break, break, break, break, break," on the other | Prof. Lewis Decl. at 8-10, ¶¶ 31, 34, Exh. 5 (Lewis initial Report) at 33; Exh. 11 (Kajikawa Depo.) at 174:14-175:2. | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| hand, are different words. | | |
| **222.** The only similarity between "Ballers, they gon' ball" and "Shot callers, they gonna call," on the one hand, and "Heartbreakers gonna break, break, break, break, break," on the other hand, is that they are each tautological phrases conveying the truism that people will do what they are prone to do. | Prof. Lewis Decl. at 9-10, ¶¶ 33-34, Exh. 5 (Lewis initial Report) at 33. | **Disputed.** These phrases are also used to express the songs' main theme that the world is full of untrustworthy people, and we should ignore them and do as we please. (P-Ex. 2 [Kajikawa Report] at ¶ 1; P-Ex. 4 [Kajikawa Rebuttal Report directed to Prof. Lewis Report] at ¶ 20; P-Ex. 7 [Kajikawa Depo.] at 198:18-199:6 [*Shake It Off* "adopts a four-part sequence substituting heartbreakers and fakers or ballers and shot callers to make the same point: The world is full of untrustworthy people, but we should ignore them. As in *Playas*, the words player and hater are not used to label |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | individual people, but to position the singer above the fray."].)<br><br>While the second part of the structure is paraphrased rather than copied verbatim, this paraphrasing shares the same phraseology. (Kajikawa Decl. at ¶ 16; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 50-51 [noting that although the second part of the structure is paraphrased rather than copied in Defendants' song, this paraphrasing "share[s] the same 'phraseology'" and concluding that both second parts of both sequences are "entirely similar in form and function"], citing D-Ex. 5 |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
| --- | --- | --- |
| | | [Lewis Report] at 33.) |
| **223.** "Ballers, they gon' ball" and "Shot callers, they gonna call," on the one hand, and "Fakers gonna fake, fake, fake, fake, fake," on the other hand, are different words. | Prof. Lewis Decl. at 8, 9-10, ¶ 31, 34, Exh. 5 (Lewis initial Report) at 33-34; Exh. 11 (Kajikawa Depo.) at 174:14-20, 175:3-5. | **Undisputed.** |
| **224.** The only similarity between "Ballers, they gon' ball" and "Shot callers, they gonna call," on the one hand, and "Fakers gonna fake, fake, fake, fake, fake," on the other hand, is that they are each tautological phrases conveying the truism that people will do what they are prone to do. | Prof. Lewis Decl. at 9-10, ¶¶ 33-34, Exh. 5 (Lewis initial Report) at 33. | **Disputed.** These phrases are also used to express the songs' main theme that the world is full of untrustworthy people, and we should ignore them and do as we please. (P-Ex. 2 [Kajikawa Report] at ¶ 1; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶ 20; P-Ex. 7 [Kajikawa Depo.] at 198:18-199:6 [*Shake It Off* "adopts a four-part sequence |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | substituting heartbreakers and fakers or ballers and shot callers to make the same point: The world is full of untrustworthy people, but we should ignore them. As in *Playas*, the words player and hater are not used to label individual people, but to position the singer above the fray."].)<br><br>While the second part of the structure is paraphrased rather than copied verbatim, this paraphrasing shares the same phraseology. (Kajikawa Decl. at ¶ 16; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 50-51 [noting that although the second part of the structure is paraphrased rather than |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | copied in Defendants' song, this paraphrasing "share[s] the same 'phraseology'" and concluding that both second parts of both sequences are "entirely similar in form and function"], citing D-Ex. 5 [Lewis Report] at 33.) |
| **225.** Tautological phrases are commonplace in literary works and songs. | Prof. Lewis Decl. at 9, ¶ 33, Exh. 5 (Lewis initial Report) at 28-29; Prof. Morgan Decl. at 3, 4, ¶¶ 16, 19, Exh. 3 (Morgan initial Report) at 1, 5, 6, ¶ 3. | **Undisputed.** |
| **226.** While *Playas'* tautological phrases are in an unbroken sequence, *Shake It Off* breaks up its tautological phrases into pairs separated by three lines of lyrics that do not | *See* evidence cited in support of Facts 129-133. | **Disputed In Part.** The interruption of lyrics is not significant because the same message that appears in the middle of the sequence in *Shake It Off* also appears at the end of the chorus in |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| appear in *Playas*. | | *Playas*. (P-Ex. 9 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶ 52 [opining that despite the insertion of lyrics, "the overall function and meaning of the poetic sequence remains intact" and the inserted lyrics in Defendants' chorus ("I'm just gonna shake (shake x4)/I shake it off, I shake it off") "have a direct corollary" at the end of Plaintiffs' chorus ("That ain't got nothing to do with me and you/That's the way it is; that's the way it is"), "which performs the same function" as the intervening lyrics in Defendants' chorus]; P-Ex. 7 [Kajikawa Depo.] at 227:15-229:14 [explaining that the interrupting lyrics "do[] the same work" as the |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | "affirmative statement or statement of resolve" that is found at the end of Plaintiffs' chorus"]; *see also* evidence cited in support of Plaintiffs' responses to Nos. 129-133 above].) |
| **227.** *Playas*' use of four tautological phrases is not substantially similar to *Shake It Off*'s use of four tautological phrases. | Prof. Lewis Decl. at 9-10, ¶ 34, Exh. 5 (Lewis initial Report) at 26-36. | **Disputed.** *Playas*' use of four tautological phrases is substantially similar to *Shake It Off*'s use of four tautological phrases. (P-Ex. 2 [Kajikawa Report] at ¶¶ 1 & 4; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 42, 51-52 & 55; P-Ex. 7 [Kajikawa Depo.] at 184:19-185:18, 185:24-186:15, 188:13-189:17, 192:8-193:15, 195:8-19 & 198:18-199:6.)<br><br>Indeed, Professor Kajikawa |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | finds "[t]he use of similar phrases in [Defendants' chorus] striking." (P-Ex. 2 [Kajikawa Report] at ¶ 11.) As he further opines, both choruses "use nearly identical words in nearly identical ways as the basis for the most memorable part of each song (the chorus)." (*Id.* at ¶ 1; *see also id.* at ¶¶ 12-14 [opining that the choruses' "similarities are fundamentally structural," as Defendants adopt the same "four-part sequence," using the same phrasing for the first part of it and paraphrasing the second part, to "make the same point" as Plaintiffs' chorus; as such, "not only do … [the two choruses] share lyrics but those lyrics also function in |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | identical ways. Each uses the phrases in question to begin a four-part sequence that anchors the chorus and conjures a hostile world. Thus, each chorus uses the terms 'player' and 'hater' playfully as part of a poetic gambit that pushes the listener towards a larger idea: the world is full of untrustworthy people, but we should ignore them."] & 20 (observing that "the similarity" between the choruses "involves more than just … six words. Not only are the lyrics in question nearly identical, but in each song they begin a four-part sequence that anchors the chorus and expresses the song's central idea: the world is full of |

| <u>**Defendants' Uncontroverted Fact**</u> | <u>**Evidence in Support**</u> | <u>**Plaintiffs' Response**</u> |
|---|---|---|
| | | untrustworthy people, but we should ignore them and believe in ourselves. In addition, the verses of both songs name particular threats posed by the untrustworthy people mentioned in the chorus…. These poetic and structural similarities suggest that the six words in question are just the tip of the iceberg in terms of what may have been copied."]; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶ 26 [reasoning that there are no substantial differences "where it matters most: the chorus which features ***remarkably similar words*** and a ***remarkably similar four-part poetic sequence***"].) |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | (*See also* evidence cited in support of Plaintiffs' responses to Nos. 37-133 above.) |
| **228.** *Playas*' use of four tautological phrases is different from *Shake It Off*'s use of four tautological phrases. | Prof. Lewis Decl. at 9-10, ¶ 34, Exh. 5 (Lewis initial Report) at 26-36. | **Disputed**. *Playas*' use of four tautological phrases is substantially similar to *Shake It Off*'s use of four tautological phrases. (*See* evidence cited in Plaintiffs' response to No. 227 above.)<br><br>(*See also* P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶¶ 29-34 & 55 [observing that Prof. Lewis "overlooks" the shared wordplay and other literary devices in the choruses, and the claimed "stylistic differences have no bearing on the central charges in this case;" also |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | observing that both choruses employ "the same colloquial, AAVE-derived terms" and "not only use[] the same words and the same phrases, but [they] do[] so in combination and as part of a similar four-part poetic sequence that expresses a similar idea"].) |
| | **(ix) Summary of the Application of the Extrinsic Test to the Lyrics of *Playas* and *Shake It Off* as Literary Works** | |
| **229.** Analyzing *Playas*' and *Shake It Off*'s lyrics as literary works, there are no substantial similarities in plot, sequence of events, characters, setting, mood, pace, or dialogue. | *See* evidence cited in support of Facts 137-230. | **Disputed.** Analyzing *Playas*' and *Shake It Off*'s lyrics as literary works, there are substantial similarities in plot, sequence of events, characters, setting, mood, pace, and dialogue. (*See* evidence cited in support of Plaintiffs' Responses to Nos. |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
| --- | --- | --- |
| | | 137-230 above.) |
| **230.** Analyzing *Playas*'s and *Shake It Off*'s lyrics as literary works, there are significant differences in in plot, sequence of events, characters, setting, mood, pace, or dialogue. | *See* evidence cited in support of Facts 137-230. | **Disputed.** While there are certain differences between in the plot, sequence of events, characters, setting, mood, pace, and dialogue, there are also substantial similarities. (*See* evidence cited in support of Plaintiffs' Responses to Nos. 137-230 above.) |
| **231.** Disregarding the public domain elements, the only similarity between the lyrics of *Playas* and *Shake It Off* is the idea of including four tautological phrases in its chorus. | *See* evidence cited in support of Facts 137-230. | **Disputed.** There are more similarities in the lyrics than just the idea of including four tautological phrases in its chorus. (*See* evidence cited in support of Plaintiffs' Responses to Nos. 137-230 above.) |
| **(3) Analyzing the Allegedly Copied Portion of *Playas* as a Selection and Arrangement** | | |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| **232.** The allegedly copied portion of *Playas* consists of four tautological phrases each of which is unprotected. | *See* evidence in support of Facts 74, 83-110. | **Disputed.** Plaintiffs' expression of the theme that the world is full of untrustworthy people, and we should ignore them and do as we please through their particular use of four tautological phrases, combined, arranged and sequenced in a unique way, is protected. (P-Ex. 2 [Kajikawa Report] at ¶ 1; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶ 20 [underscoring the "same basic theme, such as "maintaining healthy relationships in the face of social adversity,'" be it a "romantic" relationship or "a relationship with oneself"]; P-Ex. 7 [Kajikawa Depo.] at 266:3-24 [underscoring both works being centered around |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | "an expression of emotion and resolve in the face of criticism or people who are saying and doing things to undermine them"].) (*See* also evidence cited in Plaintiffs' responses to Nos. 70, 74 & 83-110 above.)<br><br>Further disputed that this is not a statement of fact but a legal conclusion. |
| **233.** While the first allegedly copied tautological phrase in *Playas* is "Players, they gonna play," the first tautological phrase in *Shake It Off* is "'Cause the players gonna play, play, play, play, play." | *See* evidence in support of Facts 117, 119. | **Disputed** to the extent these added repetitions alter the basic poetic structure and meaning of the four-part sequence which is substantially similar to that of Plaintiffs' chorus. (Kajikawa Decl. at ¶ 17; P-Ex. 4 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶¶ 47 [opining that "[a]lthough the |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | rhythmic repetition of these words does match the upbeat mood of [Defendants'] song, these added repetitions do not alter the basic poetic structure and meaning of the four-part sequence which is remarkably similar to that of … [Plaintiffs' chorus]. Therefore, I find this argument of substantial difference unconvincing."], 29-34 & 55 [observing that Lewis "overlooks" the shared wordplay and other literary devices in the choruses, and the claimed "stylistic differences have no bearing on the central charges in this case;" also observing that both choruses employ "the same colloquial, AAVE-derived terms" and "not only use[] the same |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | words and the same phrases, but [they] do[] so in combination and as part of a similar four-part poetic sequence that expresses a similar idea"].)<br><br>(*See also* evidence cited in support of Plaintiffs' responses to Nos. 117 & 119 above.) |
| **234.** The first tautological phrases in *Playas* and *Shake It Off* are each different variations on the public domain phrase "players gonna play." | *See* evidence in support of Facts 119-120. | **Disputed** to the extent Defendants' claimed variations are insignificant. (*See* evidence cited in support of Plaintiffs' responses to Nos. 119-120 above.) Also disputed to the extent Defendants contend that using variations of the phrase "players gonna play" as part of a four-part tautological sequence is in |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
| --- | --- | --- |
| | | the public domain. (P-Ex. 2 [Kajikawa Report] at ¶¶ 8-10.) |
| **235.** While the second allegedly copied tautological phrase in *Playas* is "haters, they gonna hate," the second tautological phrase in *Shake It Off* is "the haters gonna hate, hate, hate, hate, hate." | *See* evidence in support of Facts 121. | **Disputed** to the extent these added repetitions alter the basic poetic structure and meaning of the four-part sequence which is substantially similar to that of Plaintiffs' chorus. (Kajikawa Decl. at ¶ 17; P-Ex. 4 [Kajikawa Rebuttal to Prof. Lewis Report] at ¶¶ 47 [opining that "[a]lthough the rhythmic repetition of these words does match the upbeat mood of [Defendants'] song, these added repetitions do not alter the basic poetic structure and meaning of the four-part sequence which is remarkably similar to that of … [Plaintiffs' chorus]. |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
| --- | --- | --- |
| | | Therefore, I find this argument of substantial difference unconvincing."], 29-34 & 55 [observing that Lewis "overlooks" the shared wordplay and other literary devices in the choruses, and the claimed "stylistic differences have no bearing on the central charges in this case;" also observing that both choruses employ "the same colloquial, AAVE-derived terms" and "not only use[] the same words and the same phrases, but [they] do[] so in combination and as part of a similar four-part poetic sequence that expresses a similar idea"] .)<br><br>(*See also* evidence cited in Plaintiffs' responses to No. |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | 121 above.) |
| **236.** The second tautological phrases in *Playas* and *Shake It Off* are each different variations on the public domain phrase "haters gonna hate." | *See* evidence in support of Facts 121-122. | **Disputed** to the extent Defendants' claimed variations are insignificant. (*See* evidence cited in support of Plaintiffs' responses to Nos. 121-122 above.)<br><br>**Disputed** to the extent Defendants contend that using variations of the phrase "haters gonna hate" as part of a four-part tautological sequence is in the public domain. (P-Ex. 2 [Kajikawa Report] at ¶¶ 8-10.) |
| **237.** While the third allegedly copied tautological phrases in *Playas* is "Ballers, they gonna ball," the third | *See* evidence in support of Facts 123-12. | **Disputed** to the extent Defendants contend that these lyrics do not perform a substantially similar function and do not share the same |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| tautological phrase in *Shake It Off* is "Heartbreakers gonna break, break, break, break, break." | | phraseology. (*See* evidence cited in support of Plaintiffs' responses to Nos. 123-124 above.) |
| **238.** The third tautological phrases in *Playas* and *Shake It Off* are not substantially similar. | *See* evidence in support of Facts 125. | **Disputed.** The third tautological phrases in *Playas* and *Shake It Off* perform a substantially similar function and share the same phraseology. (*See* evidence cited in support of Plaintiffs' Response to No. 125 above). |
| **239.** While the fourth allegedly copied tautological phrases in *Playas* is "Shot callers, they gonna call," the fourth tautological phrase in *Shake It Off* is "Fakers gonna fake, fake, fake, | *See* evidence in support of Facts 126. | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| fake, fake." | | |
| **240.** The fourth tautological phrases in *Playas* and *Shake It Off* are not substantially similar. | *See* evidence in support of Facts 126-128. | **Disputed.** The fourth tautological phrases in *Playas* and *Shake It Off* perform a substantially similar function and share the same phraseology. (*See* evidence cited in support of Plaintiffs' Responses to Nos. 126-128 above.) |
| **241.** While the four tautological phrases in *Playas* are in an unbroken sequence of four tautological phrases, *Shake It Off* has two pairs of tautological phrases separated by the three lines of lyrics "Baby, I'm just gonna shake, shake, shake, shake, shake/Shake it | *See* evidence in support of Facts 117, 129-133. | **Disputed** to the extent that the interruptive lyrics are insignificant**.** **(***See* evidence cited in support of Plaintiffs' Responses to Nos. 117 & 129-133 above.) |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| off/Shake it off." | | |
| **242.** *Playas* and *Shake It Off* do not arrange their respective four tautological phrase in the same way. | *See* evidence in support of Facts 133. | **Disputed.** There is substantial (indeed, "striking") similarity between the way the four tautological phrases are arranged in *Playas* and *Shake It Off*. (*See* evidence cited in support of Plaintiffs' Responses to Nos. 133-34 above.) |
| **(f) Substantial Similarity Probative of Copying** **(1) Plaintiffs Do Not Claim the Works Are Strikingly Similar** | | |
| **243.** Plaintiffs do not allege in their Complaint that *Playas* and *Shake It Off* are strikingly similar. | Complaint. | **Disputed** to the extent that Plaintiffs did not allege the exhaustive list of their theories for recovery, nor are they required to do so by the basic notice pleading rules of procedure. |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| **244.** As to whether copying occurred, Plaintiffs' expert, Prof. Kajikawa concluded only that *Shake It Off* could have been copied from *Playas*. | Exh. 7 (Kajikawa initial Report) at 1, ¶ 1 ("[I]t is my opinion … that the 2014 work *could have been copied* from the 2000 work" (emphasis added)), at 8, ¶ 23 (emphasis added) ("[*Shake It Off*] could have copied from [*Playas*]"). | Disputed to the extent that any opinions on copying are beyond the scope of the discovery conducted to date, as it has been so far limited to the "extrinsic test," which only pertains to substantial similarity. (Dkt. No. 87 at 2:9-10.) |
| **(2) The Extensive Use of Player and Hater Phrases Before *Shake It Off*** | | |
| **245.** The 2000 recording of the song *Playa Hater* by Chico DeBarge includes in its lyrics the phrases "I'll be the hater, he can be the player" and "playa hater." | Fernandez Decl. at 1, ¶ 3(a), Audio Exh. 3 at track 1 (recording); Fernandez Decl. at 3, ¶¶ 5-6, Exh. 37 (lyrics), Exh. 38 (copyright registration). | **Undisputed.** |
| **246.** The 2001 recording of the song *Can't Believe* by Virtue includes in its lyrics the phrase "player haters." | Fernandez Decl. at 1, ¶ 3(b), Audio Exh. 3 at track 2 (recording); Fernandez Decl. at 3, ¶¶ 7-8, Exh. 39 (lyrics), Exh. 40 | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | (copyright registration). | |
| **247.** *Haters Gon Hate* is the title of a 2002 song by 504 Boyz. | Fernandez Decl. at 1, ¶ 3(c), Audio Exh. 3 at track 3 (recording); Fernandez Decl. at 3, ¶ 9, Exh. 41 (lyrics). | **Undisputed.** |
| **248.** The 2004 recording of the song *Bring It On* by Kottonmouth Kings includes in its lyrics the phrase "player haters." | Fernandez Decl. at 1, ¶ 3(d), Audio Exh. 3 at track 4 (recording); Fernandez Decl. at 3, ¶ 10, Exh. 42 (lyrics). | **Undisputed.** |
| **249.** The 2004 recording of the song *Balla Baby* by Chingy includes in its lyrics the phrase "you a hater (you a hater) why you tryin' to play me." | Fernandez Decl. at 1, ¶ 3(e), Audio Exh. 3 at track 5 (recording); Fernandez Decl. at 3-4, ¶¶ 11-12, Exh. 43 (lyrics), Exh. 44 (copyright registration). | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| **250.** *Player Hater Anthem* is the title of a 2006 song by The Loved Ones. | Fernandez Decl. at 1, ¶ 3(f), Audio Exh. 3 at track 6 (recording); Fernandez Decl. at 4, ¶ 13, Exh. 45 (lyrics). | **Undisputed.** |
| **251.** The 2006 recording of the song *Hater* by Everclear includes in its lyrics the word "haters." | Fernandez Decl. at 2, ¶ 3(g), Audio Exh. 3 at track 7 (recording); Fernandez Decl. at 4, ¶ 14, Exh. 46 (lyrics). | **Undisputed.** |
| **252.** The 2006 recording of the song *I Know You Want That* by Big Tuck featuring Chamillionare includes in its lyrics the phrases "I'm shining on haters" and "I'm a player." | Fernandez Decl. at 2, ¶ 3(h), Audio Exh. 3 at track 8 (recording); Fernandez Decl. at 4, ¶ 15, Exh. 47 (lyrics). | **Undisputed.** |
| **253.** The 2006 recording of the song *Play on Playa* by Nas featuring Snoop Dogg includes in its lyrics | Fernandez Decl. at 2, ¶ 3(i), Audio Exh. 3 at track 9 (recording); Fernandez Decl. at 4, ¶¶ 16-17, Exh. | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| the phrase "play on playa." | 48 (lyrics), Exh. 49 (copyright registration). | |
| **254.** *Haters Gonna Hate* is the title of a 2011 music video featuring Tonite Only. | Fernandez Decl. at 12, ¶ 73, Exh. 105 (IMDb page). | **Undisputed.** |
| **255.** The 2013 recording of the song *The Outsiders* by Eric Church includes in its lyrics the phrases "the player's gonna play and a haters gonna hate." | Fernandez Decl. at 2, ¶ 3(j), Audio Exh. 3 at track 10 (recording); Fernandez Decl. at 4, ¶¶ 18-19, Exh. 50 (lyrics), Exh. 51 (copyright registration). | **Disputed** to the extent Defendants contend that *The Outsiders* includes the same four-part tautological sequence, as *The Outsiders* uses only the first part of the sequence; moreover, it uses it only once, and it is not used in the chorus. (D-Ex. 50 [*The Outsiders* lyrics].)<br><br>Additionally, it does not signify any cultural prevalence since *The Outsiders*' actual success was largely limited the country music charts and thus enjoyed |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| | | only limited exposure. (*See* P-Ex. 13.) |
| **256.** The *Family Guy* television show's 2001 episode titled "Peter Griffin: Husband, Father . . . Brother?" includes in its dialogue the phrase "playa-hata." | Fernandez Decl. at 5, ¶¶ 20-21, Exh. 52 (IMDb page), Exh. 53 (copyright registration). | **Undisputed.** |
| **257.** The *Chappelle's Show* television show's 2003 episode titled "Blackzilla & Player Haters' Ball" includes in its dialogue the phrases "player haters," "player" and "hater." | Fernandez Decl. at 2, ¶ 4(a), Video Exhibit 1 (clip of relevant skit); Fernandez Decl. at 5, ¶ 22, Exh. 54 (IMDb page). | **Undisputed.** |
| **258.** "The Player Haters" is the title of a meme created from the *Chappelle*'s *Show* 2003 | Fernandez Decl. at 5, ¶ 23, Exh. 55 (meme). | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| episode "Blackzilla & Player Haters' Ball." | | |
| **259.** The *Da Ali G Show* television show's 2003 episode titled "Science" includes in its dialogue the phrase "playa hater." | Fernandez Decl. at 2, ¶ 4(b), Video Exhibit 2 (clip of relevant skit); Fernandez Decl. at 5, ¶¶ 24-25, Exh. 56 (IMDb page), Exh. 57 (copyright registration). | **Undisputed.** |
| **260.** The *Da Ali G Show* television show's 2003 episode titled "War" includes in its dialogue the phrase "playa haters." | Fernandez Decl. at 2, ¶ 4(c), Video Exhibit 3 (clip of relevant skit); Fernandez Decl. at 5-6, ¶ 26, Exh. 58 (IMDb page). | **Undisputed.** |
| **261.** The *Chappelle's Show* television's show 2003 episode titled "Piss on You & The World's Greatest Wars" includes in its dialogue the phrases | Fernandez Decl. at 2, ¶ 4(d), Video Exhibit 4 (clip of relevant skit); Fernandez Decl. at 6, ¶¶ 27-28, Exh. 59 (IMDb page), Exh. 60 (copyright | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| "haters wanna hate" and "lovers wanna love." | registration). | |
| **262.** The *Degrassi: Next Generation* television show's 2004 episode titled "Rock and Roll High School" includes in its dialogue the phrases "player" and "playa hater." | Fernandez Decl. at 2, ¶ 4(e), Video Exhibit 5 (clip of relevant skit); Fernandez Decl. at 6, ¶ 29, Exh. 61 (IMDb page). | **Undisputed.** |
| **263.** "Play on Playa" is the title of a 2008 episode of the television show *House of Payne*. | Fernandez Decl. at 6-7, ¶¶ 30-31Exh. 62 (IMDb page), Exh. 63 (copyright registration). | **Undisputed.** |
| **264.** "Player HateHer" is the title of a 2009 episode of the *Tyra Banks Show* television show. | Fernandez Decl. at 6-7, ¶ 32, Exh. 64 (IMDb page). | **Undisputed.** |
| **265.** "Don't Hate the Player" is the title of a 2009 episode of the *Hitched or* | Fernandez Decl. at 7, ¶ 33, Exh. 65 (IMDb page). | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
| --- | --- | --- |
| *Ditched* television show. | | |
| **266.** The *Penguins of Madagascar* television show's 2010 episode titled "Jiggles" includes in its dialogue the word "haters." | Fernandez Decl. at 7, ¶ 34, Exh. 66 (IMDb page). | **Undisputed.** |
| **267.** *The Simpsons* television show's 2010 episode titled "MoneyBart" includes in its dialogue the phrases "managers manage, and players play." | Fernandez Decl. at 7, ¶¶ 35-36, Exh. 67 (IMDb page), Exh. 68 (copyright registration). | **Undisputed.** |
| **268.** The *Tosh.O* television show's 2011 episode titled "National Anthem Fail Girl" includes in its dialogue the phrase "haters are gonna hate." | Fernandez Decl. at 7-8, ¶ 37, Exh. 69 (IMDb page). | **Undisputed.** |
| **269.** "Playas Gettin' Played" is the title of a | Fernandez Decl. at 8, ¶ 38, | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| 2011 episode of *The Real World* television show. | Exh. 70 (IMDb page). | |
| **270.** "Don't Hate the Player" is the title of a 2011 episode of the television show *Rizzoli & Isles*. | Fernandez Decl. at 7-8, ¶ 39, Exh. 71 (IMDb page). | **Undisputed.** |
| **271.** "Don't Hate the Player" is the title of a 2011 episode of the television show *Warehouse 13*. | Fernandez Decl. at 8, ¶ 40, Exh. 72 (IMDb page). | **Undisputed.** |
| **272.** The *NCIS: Los Angeles* television show's 2011 episode titled "The Debt" includes in its dialogue the phrase "haters gonna hate." | Fernandez Decl. at 8, ¶¶ 41-42, Exh. 73 (IMDb page), Exh. 74 (copyright registration). | **Undisputed.** |
| **273.** "Nick Krauser - Don't Hate the Player" is the title of a 2013 episode of the talk show *London* | Fernandez Decl. at 8, ¶ 43, Exh. 75 (IMDb page). | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| *Real*. | | |
| **274.** "Don't Hate the Player" is the title of a 2012 episode of the television show *No Regrets*. | Fernandez Decl. at 8, ¶ 44, Exh. 76 (IMDb page). | **Undisputed.** |
| **275.** "Haters Gonna Hate" is the title of a 2013 episode of the television show *The Robin Diaries*. | Fernandez Decl. at 8, ¶ 45, Exh. 77 (IMDb page). | **Undisputed.** |
| **276.** "Haters Gonna Hate" is the title of a 2013 episode of the television show *Ke$ha: My Crazy Beautiful Life*. | Fernandez Decl. at 8-9, ¶¶ 46-47, Exh. 78 (IMDb page), Exh. 79 (copyright registration). | **Undisputed.** |
| **277.** "Haters" is the title of a 2013 episode of the television show *The Kanard Way*. | Fernandez Decl. at 9, ¶ 48, Exh. 80 (IMDb page). | **Undisputed.** |

| <u>**Defendants' Uncontroverted Fact**</u> | <u>**Evidence in Support**</u> | <u>**Plaintiffs' Response**</u> |
| --- | --- | --- |
| **278.** "Don't Hate the Player, Hate the Gamemaster" is the title of a 2013 episode of the show *Game Knights*. | Fernandez Decl. at 9, ¶ 49, Exh. 81 (IMDb page). | **Undisputed.** |
| **279.** "'Gravity' and Player Hatin' Degrees" is the title of a 2013 episode of the television show *Throwing Shade*. | Fernandez Decl. at 9, ¶ 50, Exh. 82 (IMDb page). | **Undisputed.** |
| **280.** *Sorry, Haters* is the title of a 2006 film directed by Jeff Stanzler. | Fernandez Decl. at 9, ¶ 51, Exh. 83 (IMDb page). | **Undisputed.** |
| **281.** The 2008 film *Assassination of a High School President* includes in its dialogue the phrase "player-haters." | Fernandez Decl. at 9, ¶ 52, Exh. 84 (IMDb page). | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| **282.** The 2008 film *Twilight* includes in its dialogue the phrase "let a playa play!" | Fernandez Decl. at 10, ¶ 53, Exh. 85 (IMDb page). | **Undisputed.** |
| **283.** The 2009 film *Jennifer's Body* includes in its dialogue the phrase "player-hater." | Fernandez Decl. at 10, ¶ 55, Exh. 86 (IMDb page), Exh. 87 (copyright registration). | **Undisputed.** |
| **284.** The 2011 film *Yu-Gi-Oh! 3D: Bonds Beyond Time Abridged* includes in its dialogue the phrase "playa hater." | Fernandez Decl. at 10, ¶ 56, Exh. 88 (IMDb page). | **Undisputed.** |
| **285.** *Player Hating: A Love Story* is the title of a 2012 documentary film directed by Maggie Hadleigh-West. | Fernandez Decl. at 10, ¶ 57, Exh. 89 (IMDb page). | **Undisputed.** |
| **286.** *Haters* is the title of a 2012 film directed by | Fernandez Decl. at 10, ¶ | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| Carl Stallworth. | 58, Exh. 90 (IMDb page). | |
| **287.** The 2008 MTV article titled *Nas Takes Jesse Jackson to Task for Barack Obama Comments: "His Time Is Up"* by Shaheem Reid includes the phrase "player hater." | Fernandez Decl. at 10, ¶ 59, Exh. 91 (article). | **Undisputed.** |
| **288.** The 2011 article titled *Haters Gonna Hate* by Chris Richards includes the phrase "haters gonna hate." | Fernandez Decl. at 10, ¶ 60, Exh. 92 (article). | **Undisputed.** |
| **289.** *Haters Gonna Hate! Online Anonymity Causes Problems* is the title of a 2011 blog post by Satu Nuoramo. | Fernandez Decl. at 11, ¶ 61, Exh. 93 (blog post). | **Undisputed.** |
| **290.** *"Haters" Are Going to Hate This Story* is the | Fernandez Decl. at 11, ¶ | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| title of a 2011 NPR article by Linton Weeks. | 62, Exh. 94 (article). | |
| **291.** The 2011 NPR article *"Haters Are Going to Hate This Story* by Linton Weeks references the omnipresence of the "Haters Gonna Hate" meme. | Fernandez Decl. at 11, ¶ 62, Exh. 94 (article). | **Undisputed.** |
| **292.** *Michelle Obama Joins Twitter, and Haters Hate* is the title of a 2012 Washington Post article by Lauren McEwen. | Fernandez Decl. at 11, ¶ 63, Exh. 95 (article). | **Undisputed.** |
| **293.** The 2013 Boston Magazine article titled *The Internet's Ridiculous Response to VH1's "Wicked Single" Supertrailer* includes the phrase "the haters be | Fernandez Decl. at 11, ¶ 64, Exh. 96 (article). | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| hatin." | | |
| **294.** *Science May Have Just Discovered Why Haters Gonna Hate* is the title of a 2013 The Mary Sue article by Ian Chant. | Fernandez Decl. at 11, ¶ 65, Exh. 97 (article). | **Undisputed.** |
| **295.** *Haters Gonna Hate? Why Some People Dislike Everything* is the title of a 2013 CBS News article. | Fernandez Decl. at 11, ¶ 66, Exh. 98 (article). | **Undisputed.** |
| **296.** *Haters Gonna Hate: The Hollow Victory of An Asian American Miss America* is the title of a 2013 Hyphen article by Theresa Celebran Jones. | Fernandez Decl. at 11, ¶ 67, Exh. 99 (article). | **Undisputed.** |
| **297.** *Pimps, Hos, Playa Hatas, and All the Rest of My Hollywood Friends* is the name of a 2006 book by | Fernandez Decl. at 12, ¶¶ 68-69, Exh. 100 (cover and copyright pages), Exh. 101 (copyright | **Undisputed.** |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| John Leguizamo. | registration). | |
| **298.** *Player HateHer* is the name of a 2008 book by Tamara A. Johnson-George and Katrina R. Chambers. | Fernandez Decl. at 12, ¶¶ 70-71, Exh. 102 (cover and copyright pages), Exh. 103 (copyright registration). | **Undisputed.** |
| **299.** Taylor Swift wore a "Haters Gonna Hate" graphic t-shirt by the clothing brand Junk Food at the 2013 Billboard Music Awards. | Fernandez Decl. at 3, ¶ 4(f), Video Exhibit 6 (video of Taylor Swift's 2013 performance); Fernandez Decl. at 12, ¶ 72, Exh. 104 (article). | **Undisputed.** |
| **(3) The Alleged Similarities Are Consistent with the Independent Creation of *Shake It Off* in 2014** | | |
| **300.** Prior to the 2014 creation of *Shake It Off*, player and hater phrases had become ubiquitous in popular culture. | *See* evidence cited in support of Facts 245-299. | **Disputed** as irrelevant because it is beyond the scope of the discovery conducted to date. (Dkt. No. 87 at 2:9-10.) Disputed further to the extent none of the pre- or post-*Playas* |

| Defendants' Uncontroverted Fact | Evidence in Support | Plaintiffs' Response |
|---|---|---|
| | | usages utilized the same four-part sequence as that in Plaintiffs' chorus.<br><br>(*See also* evidence cited in support of Nos. 245-299 above.) |
| **301.** Prior to the 2014 creation of *Shake It Off*, the public domain included the phrases "players gonna play" and "haters gonna hate." | *See* evidence cited in support of Facts 245-299. | **Disputed** as irrelevant because it is beyond the scope of the discovery conducted to date. (Dkt. No. 87 at 2:9-10.) Disputed further to the extent none of the pre- or post-*Playas* usages utilized the same four-part sequence as that in Plaintiffs' chorus.<br><br>(*See also* evidence cited in support of Nos. 245-299 above.) |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| **302.** Prior to the 2014 creation of *Shake It Off*, the idea of tautological phrases was commonplace. | *See* evidence cited in support of Facts 111. | **Undisputed.** |
| **303.** Prior to the 2014 creation of *Shake It Off*, the literary device of parallelism in lyrics was commonplace. | *See* evidence cited in support of Facts 112. | **Undisputed.** |
| **304.** *Playas* and *Shake It Off* are very different in music, including the rhythm, harmony, and melody to which their respective four tautological phrases are set. | *See* evidence cited in support of Facts 37-68. | **Disputed** as stated in Plaintiffs' responses to Nos. 37-68 above. |
| **305.** Aside from including in their respective lyrics different variations of the public domain phrases "player | *See* evidence cited in support of Facts 70-90, 117-133. | **Disputed** for the reasons stated in Plaintiffs' Responses to Nos. 70-90 & 117-133 above.) |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| gonna play" and "haters gonna hate," the lyrics of *Playas* and *Shake It Off* are very different. | | |
| **306.** *Shake It Off* was created almost 14 years after *Playa*. | *See* evidence cited in support of Facts 31, 34. | **Undisputed.** |
| **307.** The fact that *Playas* and *Shake It Off* include different variations on the public domain phrases "players gonna play" and "haters gonna hate" and two other, different tautological phrases, all set to very different music and telling different stories, is consistent with the independent creation of | *See* evidence cited in support of Facts 70-90, 117-133, 143-228, 232-242. | **Disputed** for the reasons stated in Plaintiffs' responses to Nos. 70-90, 117-133, 143-228 & 232-242 above. |

| **Defendants' Uncontroverted Fact** | **Evidence in Support** | **Plaintiffs' Response** |
|---|---|---|
| *Shake It Off*. | | |

## II. PLAINTIFFS' ADDITIONAL UNCONTROVERTED FACTS IN FURTHER SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| **Pl. AUF No.** | **FACT** | **SUPPORTING EVIDENCE** |
|---|---|---|
| | **I. Substantial Similarity**<br>**A. Selection and Arrangement**<br>**1. Originality** | |
| 1. | Plaintiffs' claim of copyright infringement is limited to the four-part lyrical sequence alleged in their complaint. | Compl. ¶¶ 28 & 43; P-Ex. 6 [Pl. Responses to 2nd RFA] at No. 33. |
| 2. | Plaintiffs' selection and arrangement is original and creatively distinct from prior art. | Kajikawa Decl. at ¶¶ 8-13; P-Ex. 4 at ¶ 28 [Prof. Kajikawa opining that Plaintiffs' "poetic sequence is an original innovation"]; *see also id*. at ¶ 39 [opining that the fact "that the words 'player' and 'hater' were in usage prior to 2000 does |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | | not mean that [Plaintiffs'] lyrics are unoriginal. All original and creative lyrics are built from preexisting words that are by themselves unoriginal and uncopyrightable. The plaintiffs do not seek copyright protection for using the individual words 'player' and 'hater' but for the way those words are used in the chorus of their song as the beginning of a four-part poetic sequence that expresses a larger idea."]; P-Ex. 2 at ¶¶ 1 [Prof. Kajikawa opining, *inter alia*, that Plaintiffs' usage of the elements "is distinct from the way the words 'player' and 'hater' appear in previous song lyrics"]; *see also id.* at ¶¶ 8-10 [explaining why Plaintiffs' usage is distinct from prior art and concluding that their chorus embodies "poetic wordplay … [that] expresses a larger idea … and does so in a catchy way"], 15-19 [opining that Plaintiffs' originality cannot be diminished by claims of common coin, banality or brevity: |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | | Plaintiffs' originality "resides in the particular way these words were used in service of a larger idea … [as Plaintiffs] take[] words that may seem mundane but transform[] them into a catchy way of saying something about the state of the world. This is a poetic use of language that transcends the original meaning of the words 'player' and 'hater' as they usually appear in song lyrics. By this metric, [Plaintiffs'] chorus … is creative and original."] & 23 [explaining that in songs, brevity is itself a creative element]; P-Ex. 5 at ¶¶ 3-7 [Professor Kajikawa analyzing prior art utilizing similar phrasing and rejecting the notion that any of it combined the elements in the same way; concluding that Plaintiffs' usage of these elements was "distinct, original, and creative" because, inter alia, "they were never used in this particular way as part of a four-part poetic sequence to express a larger idea about the state of the world"]; P-Ex. 7 at 94:24- |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | | 95:5 [Professor Kajikawa expressing doubts that prior "isolated words or phrases" could be relevant because "the usage in those cases is different"], 169:25-171:11 [explaining that the sequence at issue is an original creation as based on "the recombination, reuse and sort of deployment of existing things. Nothing is made out of scratch, right? Everything is made of something else, but … when [preexisting unprotected elements] are combined and put forth into … a new work in a way that departs from prior usage that introduced a new way of expressing an idea," then the work is original]; 183:12-185:18 [explaining that it is Plaintiffs' combination of player/hater phrases that is unique as they drew them together to create a new way to express a larger idea] & 187:18-188:1 [underscoring that it is Plaintiffs' unique expression of the larger idea in the combination of the four phrases at issue that makes their creation |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | | original]; *cf.* D-Ex. 5 at 36 [Professor Lewis confirming that "all literature operates by taking existing words and phrases and then re-presenting them"]; P-Ex. 9 at 90:15-91:13 [confirming that no prior art combined the two tautological phrases "players gonna play" and "haters gonna hate"]; P-Ex. 10 at 66:21-67:8 & 81:9-82:11 [Professor Morgan confirming the same]. |
| 3. | None of Defendants' experts opine that Plaintiffs' word sequence is unoriginal as a combination of unprotected elements. | *See generally* D-Ex. 6 at 2-10 [setting forth Professor Lewis' rebuttal analysis without him addressing Plaintiffs' work as a combination of unprotected elements]; D-Ex. 4 at 1 [same as to Professor Morgan's analysis].) *Cf.* P-Ex. 2 at ¶ 19 [cautioning "against using length as a strict measure of creativity in popular music songwriting. Talented songwriters often demonstrate their creativity not through overt complexity |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | | or length but by rendering ideas in accessible and catchy ways."].) |
| 4. | Defendants introduced no independent analysis that Defendants' chorus is creatively closer to prior art than to Plaintiffs' chorus. | *See generally* Defendants' expert witnesses' opinions. |
| 5. | Plaintiffs' expression at issue consists of (at least) the following elements, exhibiting Plaintiffs' choices to: (1) combine tautological phrases, (2) via parallel lyrics, (3) each bearing grammatical structure "Xers gonna X," (4) use four such phrases in the chorus, (5) two of which are variations on playa/hater phrases invoked to open the chorus, (6) each dealing with groups of "Xers" that bear certain negative connotations,[3] (7) with the combined | P-Ex. 2 at ¶ 1; *see also id.* at ¶ 11-12 [both songs use "striking[ly]" similar phraseology to "position the singer (narrator) above the fray"]; D-Ex. 6 at 22-23 [Professor Lewis agreeing that there is a "general similarity in presenting a speaker who is considering negative comments made by others" and that "both works depict in a general way a world in which some people are critical"]; Lewis Decl. at ¶¶ 32-33 [confirming that the choruses of both songs share two similarities: they |

[3] "Playing," "hating," "balling" (being flashy or showing off), and "shot calling" (being a dictator) as compared to "playing," "hating," "heartbreaking" or "faking" in Defendants' song). (*See, e.g.*, P-Ex. 2 at ¶¶ 6 & 7c; *see also id.* at ¶ 10 [Prof. Kajikawa observing that all

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | effect of expressing a larger idea "that we should not be concerned with what other people say or do, trusting in ourselves instead." | "contain 'a version of the phrases 'players gonna play' and 'haters gonna hate''' and "include four tautological phrases …., with the structure 'Xers gonna X'''"]; D-Ex. 5 at 34-36 [observing the use of parallel lyrics in both songs]; *accord* P-Ex. 9 at 100:5-101:19; *see also* P-Ex. 4 at ¶ 20 [Professor Kajikawa underscoring the "same basic theme, such as "maintaining healthy relationships in the face of social adversity,''' be it a "romantic" relationship or "a relationship with oneself"] & ¶ 53 (underscoring that both sets of lyrics represent "concrete similarities between a set of specific parallelisms are being used poetically in both songs"]. |

the four groups invoke an idea of the world full of untrustworthy people].)

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 6. | Both songs at issue here use Plaintiffs' expression at issue in the chorus, which further supports its qualitative importance. | P-Ex. 2 at ¶¶ 9, 14 & 20 [Kajikawa focusing on the qualitative importance of the sequence by consistently emphasizing that it "anchors the chorus"]; P-Ex. 7 at 218:3-8 [Kajikawa emphasizing that the expression at issue is found in "a part of the song that is most memorable, … that is highlighted in the song"]; *id.* at 113:4-11 [reasoning that the sequence is "so central to the chorus of the song" that reusing the same expression in another chorus "would be an obvious case of infringement"]. |
| 7. | *Playas* is the first work which expressed the concept that the world is full of untrustworthy people through the use of four tautological phrases involving players and haters as selected and arranged by Plaintiffs. | P-Ex. 2 at ¶¶ 10, 12-14, 20; P-Ex. 3 at ¶ 2; P-Ex. 4 at ¶¶ 2 & 20; P-Ex. 7 at 187:22-23, 188:13-189:17, 195:8-19 & 197:20-199:6.; P-Ex. 9 at 57:19-58:11 & 60:18-61:11 [Professor Lewis agreeing that "both songs are about … rising above or moving beyond the criticisms the speaker is receiving" and finding this |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | | message to be contained in the four-part sequence at issue]. |
| 8. | Plaintiffs were first to use to combine phrases "players gonna hate" and "haters gonna hate" as part of a four-part tautological sequence connected by parallel structure. | P-Ex. 4 at ¶¶ 28 & 39; P-Ex. 2 at ¶¶ 1, 8-10, 15-19 & 23; P-Ex. 5 at ¶¶ 3-7; P-Ex. 7 at 94:24-95:5, 169:25-171:11, 183:12-185:18 & 187:18-188:2; P-Ex. 9 at 90:15-91:13; P-Ex. 10 at 66:21-67:8 & 81:9-82:11. |
| 9. | Neither use of the African-American vernacular nor brevity of the expression renders Plaintiffs' four-part sequence insufficiently creative. | As Professor Kajikawa notes, "[a]ttempts to dismiss the lyrics in question as banal (too brief and unoriginal to merit protection) signal an inability or unwillingness to recognize the validity of black vernacular expression" that exhibits creativity by utilizing utilizes common phrases into "a formal poetic strategy that expresses a new meaning" (P-Ex. 2 at ¶ 18). Indeed, Professor Kajikawa warns "about a potential racial basis in this case" that downplays Plaintiffs' creativity simply because they used preexisting expressions originating |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | | from the African American culture and thus "may be taken less seriously by some readers." (P-Ex. 4 at ¶ 48; *accord* P-Ex. 7 at 214:23-215:12 [cautioning against "rush[ing] to judgment in this case" given that "there's a long and documented history of the way in which black speech has been mocked … and used as evidence of black inferiority"].) |
| **2. <u>Substantial Similarity as to Selection and Arrangement</u>** | | |
| 10. | The theme of *Playas* is that we should not be concerned with what other people say and do, trusting in ourselves instead. | P-Ex. 2 [Kajikawa Report] at ¶¶ 1 & 11-12 [both songs use "striking[ly]" similar phraseology to "position the singer (narrator) above the fray"]; D-Ex. 6 [Lewis Rebuttal] at 22-23 [agreeing that there is a "general similarity in presenting a speaker who is considering negative comments made by others" and that "both works depict in a general way a world in which some people are critical"]; Dkt. No. 92-9 [Lewis Decl.] at |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | | ¶¶ 32-33; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶ 20 [underscoring the "same basic theme, such as "maintaining healthy relationships in the face of social adversity,"" be it a "romantic" relationship or "a relationship with oneself"]; P-Ex. 7 [Kajikawa Depo.] at 266:3-24 [underscoring both works being centered around "an expression of emotion and resolve in the face of criticism or people who are saying and doing things to undermine them"].) |
| 11. | The theme of *Shake It Off* is that we should not be concerned with what other people say and do, trusting in ourselves instead. | P-Ex. 2 [Kajikawa Report] at ¶¶ 1 & 11-12 [both songs use "striking[ly]" similar phraseology to "position the singer (narrator) above the fray"]; D-Ex. 6 [Lewis Rebuttal] at 22-23 [agreeing that there is a "general similarity in presenting a speaker who is considering negative comments made by others" and that "both works depict in a general way a world in which some people are |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
| --- | --- | --- |
| | | critical"]; P-Ex. 4 [Kajikawa Rebuttal Report to Prof. Lewis Report] at ¶ 20 [underscoring the "same basic theme, such as "maintaining healthy relationships in the face of social adversity,'" be it a "romantic" relationship or "a relationship with oneself"]; P-Ex. 7 [Kajikawa Depo.] at 266:3-24 [underscoring both works being centered around "an expression of emotion and resolve in the face of criticism or people who are saying and doing things to undermine them"].) |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 12. | There are (at least) seven elements in the selection and arrangement of the four-part lyrical sequence at issue that Defendants' chorus copies: just like Plaintiffs' chorus, Defendants' chorus combines tautological phrases, does so through parallel lyrics, uses grammatical model "Xers gonna X," combined in a four-part structure, chooses to begin that structure with the exact two phrases that Plaintiffs chose (players gonna play/haters gonna hate), selects groups of "Xers" that bear negative connotations, and makes it the heart of the song by delivering essentially the same message—that "we should not be concerned with what other people say and do, trusting in ourselves instead." | Kajikawa Decl. at ¶¶ 14-16 & 18; P-Ex. 2 at ¶¶ 12-14 [Professor Kajikawa opining that the choruses' "similarities are fundamentally structural," as Defendants adopt the same "four-part sequence," using the same phrasing for the first part of it and paraphrasing the second part, to "make the same point" as Plaintiffs' chorus; as such, "not only do … [the two choruses] share lyrics but those lyrics also function in identical ways. Each uses the phrases in question to begin a four-part sequence that anchors the chorus and conjures a hostile world. Thus, each chorus uses the terms 'player' and 'hater' playfully as part of a poetic gambit that pushes the listener towards a larger idea: the world is full of untrustworthy people, but we should ignore them."] & 20 [observing that "the similarity" between the choruses "involves more than just … six words. Not only are the lyrics in question nearly identical, but in each song they begin a four-part sequence that |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | | anchors the chorus and expresses the song's central idea: the world is full of untrustworthy people, but we should ignore them and believe in ourselves. In addition, the verses of both songs name particular threats posed by the untrustworthy people mentioned in the chorus…. These poetic and structural similarities suggest that the six words in question are just the tip of the iceberg in terms of what may have been copied."]; P-Ex. 4 at ¶ 26 [Professor Kajikawa reasoning that there are no substantial differences "where it matters most: the chorus which features remarkably similar words and a remarkably similar four-part poetic sequence"].<br><br>*See also* evidence cited in support of P-AUF No. 2.<br><br>Notably, Professor Kajikawa finds "[t]he use of similar phrases in [Defendants' chorus] ***striking***." (P-Ex. 2 at ¶ 11.) As |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | | he further opines, both choruses "use nearly identical words in nearly identical ways as the basis for the most memorable part of each song (the chorus)." (*Id.* at ¶ 1; *accord* P-Ex. 8 at 103:15-18 [Professor Ferrara confirming that there is "concrete objective similarity" in the first half of the allegedly infringed four-part lyrical sequence].) |
| | **B. <u>Literary Work</u>** | |
| 13. | Both choruses at issue are non-narrative literary works. | "[P]op songs do not function exactly like books" (P-Ex. 4 at ¶ 37; *see also id.* at ¶ 17 [Professor Kajikawa explaining that "these are not books or films, let alone narrative-driven, story-telling songs"]; *accord* D-Ex. 5 at 7-8 [Professor Lewis confirming that, unlike narrative-driven songs, the works at issue here "center on the communication of feelings and ideas rather than on a series of experienced events"]; Lewis Decl. at ¶ 11 [confirming that "many popular songs are less concerned with narrative and more focused on emotional expression" and |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | | opining that both works at issue here "center on the communication of feelings and ideas rather than on narrative"]; P-Ex. 7 at 264:3-22 & 266:13-17 [Professor Kajikawa agreeing with Professor Lewis that neither song is "really a storytelling song[]" and that "neither of these are narrative driven songs" but rather "[b]oth of these songs are centered more around an expression of emotion and resolve in the face of criticism"]; *accord* Kajikawa Decl. at ¶ 20. |
| 14. | Defendants' chorus is a literal copy of the first half of Plaintiffs' four-part sequence at issue and a paraphrased copy of the second half of the same. | Kajikawa Decl. at ¶¶ 7, 13 & 20.<br><br>*See also* evidence cited in support of P-AUF No. 10. |
| 15. | Defendants' chorus contains many similarities to Plaintiffs' chorus when analyzed using the elements of comparison for narrative literary works. | Plot: Kajikawa Decl. at ¶ 21(b); P-Ex. 4 at ¶¶ 12-13 [Professor Kajikawa opining that the described "feelings [in the two songs] … are in fact similar"]; P-Ex. 9 at 47:6-48:21 [Professor Lewis agreeing that both songs communicate decisions |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | | "not to give in to criticisms"]. (*See also* evidence cited in Plaintiffs' responses to D-UF Nos. 143-146.)<br><br>Sequence: Kajikawa Decl. at ¶ 21(c); P-Ex. 4 at ¶¶ 14-18 [Professor Kajikawa criticizing Professor Lewis for omitting the allegedly infringing expression from his sequence analysis and opining that the claimed differences outside of the four-part sequence at issue "have no bearing" on the similarities between the choruses]; P-Ex. 9 at 50:15-56:18 [Professor Lewis conceding there are certain sequencing similarities, such as that both songs start with the introduction of outsiders' criticisms]. (*See also* evidence cited in Plaintiffs' responses to D-UF Nos. 152-53.)<br><br>Characters: Kajikawa Decl. at ¶ 21(a); P-Ex. 4 at ¶¶ 3-11 [Professor Kajikawa opining that both songs share a protagonist positioned against the world, |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | | who is "determined to maintain healthy relationships by staying above the fray and ignoring untrustworthy people," even though it is a romantic relationship in Plaintiffs' song and "relationship with oneself" in Defendants' song; the main characters in both songs "share … existential threats" that are described as "gossipy people using similar language … and via a similar four-part poetic sequence that conveys the same fundamental message," while secondary characters in Defendants' song do not appear in and "have no impact on" the allegedly infringing chorus]; D-Ex. 5 at 6 [Professor Lewis confirming "commonality between the characters" found in gossipy people present in both songs]; P-Ex. 9 at 41:15-42:1, 48:8-21, 49:9-24 & 50:21-51:5 [same]. (*See also* evidence cited in support of Plaintiffs' responses to D-UF Nos. 89-90 & 154-177.) |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | | Setting: Kajikawa Decl. at ¶ 21(f); D-Ex. 5 at 13 [Professor Lewis opining that the songs "share the commonplace setting of the present or a recent historical period without identification of a specific place"]. (*See also* evidence cited in support of Plaintiffs' responses to D-UF Nos. 190-98.)<br><br>Theme: Kajikawa Decl. at ¶ 21(d): P-Ex. 4 at ¶¶ 19-23 [Professor Kajikawa opining that the core theme shared by the songs at issue is "maintaining healthy relationships in the face of social adversity," even though it is "a relationship with oneself" that is discussed in Defendants' song, and the "small differences in setting" are "not relevant" to the core shared theme]; P-Ex. 9 at 57:19-58:11 & 60:18-61:11 [Professor Lewis agreeing that "both songs are about … rising above or moving beyond the criticisms the speaker is receiving" and finding this message to |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | | be contained in the four-part sequence at issue]. *Cf.* P-Ex. 7 at 160:8-161:4 [Professor Kajikawa explaining that any given song's message depends on the subjective point of view of a particular listener]. (*See also* evidence cited in support of Plaintiffs' responses to D-UF Nos. 186-87.)<br><br>Mood: Kajikawa Decl. at ¶ 21(f); P-Ex. 4 at ¶¶ 24-25 [Professor Kajikawa discounting certain mood differences as insignificant: "[b]oth are pop songs, and both come across as playful and affirming"]. (*See also* evidence cited in support of Plaintiffs' responses to D-UF Nos. 199-201.)<br><br>Pace: Kajikawa Decl. at ¶ 21(f); P-Ex. 4 at ¶¶ 26-28 [Professor Kajikawa discounting the claimed differences in pace as insufficient to overcome the "remarkably similar" choruses and strongly disagreeing that Plaintiffs' lyrics |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | | lack wordplay or are not otherwise playful]. (*See also* evidence cited in support of Plaintiffs' responses to D-UF Nos. 204-08.)<br><br>Dialog/style: Kajikawa Decl. at ¶ 21(e); P-Ex. 4 at ¶¶ 29-34 & 55 [Professor Kajikawa observing that Professor Lewis "overlooks" the shared wordplay and other literary devices in the choruses, and the claimed "stylistic differences have no bearing on the central charges in this case;" also observing that both choruses employ "the same colloquial, AAVE-derived terms" and "not only use[] the same words and the same phrases, but [they] do[] so in combination and as part of a similar four-part poetic sequence that expresses a similar idea"]. (*See also* evidence cited in support of Plaintiffs' responses to D-UF Nos. 83-85, 117-33, 211, 213-14, 217 & 219.) |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | **II. <u>Inference of Copying</u>** | |
| 16. | *Playas* was released to the public on November 2000 as part of the group 3LW's debut self-titled album. | P-Exs. 14 [Bates Hall0226] & 15 [Hall0228]. |
| 17. | *Playas* was widely disseminated in the United States. | P-Exs. 16-18; *see also* P-Ex. 7 at 79:25-8-:7 [Professor Kajikawa: "[G]iven its chart position, … the relative success … the success that it did have, it would seem plausible to me that it … would've been … easy to hear."]. |
| 18. | *Playas* spent seven weeks on the Billboard Hot 100 chart and peaked at number 81. | P-Ex.16 [Hall0242]. |
| 19. | *Playas* spent twelve weeks on the Billboard Hot R&B/Hip-Hop Songs chart and peaked at number 56. | P-Ex. 17 [Hall0244]. |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 20. | *Playas* spent fifteen weeks on the Billboard Rhythmic Airplay chart and peaked at number 17. | P-Ex. 18 [Hall0246]. |
| 21. | The video for *Playas* appeared on the television show Total Request Live ("TRL"), ***stayed on the countdown for 11 days and peaked at number five.*** | P-Ex. 21; Compl. at ¶ 18. |
| 22. | Defendant Swift is a noted fan of TRL. | P-Ex. 19 [Hall0209]. |
| 23. | Defendant Swift was in the top percentage of the hip hop listeners at the time Plaintiffs' song came out. | D-Ex. 3 at 3. |
| 24. | In 2001 3LW went on the Total Request Live Tour where they performed *Playas*. | P-Ex. 20 [Hall0234]. |
| 25. | The two choruses in the songs at issue are virtually identical. | Kajikawa Report at ¶¶ 1, 11-14 & 20. |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 26. | The parties' discovery to date and hence the scope of Defendants' motion for summary judgment is limited to the "extrinsic test." | Dkt. No. 87 at 2:9-10. |
| | **III. <u>Defendants' Evidence</u>** | |
| 27. | Professor Lewis finds "two" similarities in the choruses of *Playas* and *Shake It Off*: (1) each chorus contains "a version" of the same phrases "players gonna play" and "haters gonna hate;" and (2) both choruses include four tautological phrases with the structure "Xers gonna X." | Lewis Decl. at ¶¶ 32-33. |
| 28. | Professor Lewis identifies a third similarity between the choruses by confirming that both repeat the four tautological phrases through parallelism. | Lewis Decl. at ¶ 33. |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 29. | Prof. Lewis identifies only two significant differences when comparing the first half of the allegedly infringed four-part lyrical sequence: Defendants' repetition of certain words and different forms of player/playas/haters/gon'/gonna. | Lewis Decl. at ¶ 32; D-Ex. 5 at 29-30; P-Ex. 9 at 131:6-132:5 |
| 30. | In his deposition testimony, Prof. Lewis discounted any significance in the usage of different forms of player/playas/haters/gon'/gonna. | P-Ex. 9 at 131:6-132:5. |
| 31. | Prof. Lewis concedes that Defendants' repetition of words is functional to the extent it provides Defendants' work with its "dynamism, mood and pace." | Lewis Decl. at ¶ 32. |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 32. | Prof. Kajikawa opines that repetition in Defendants' work is there to match the upbeat mood of the song, which does not alter the basic poetic structure and meaning of the four-part sequence at issue. | Kajikawa Decl. at ¶ 17; P-Ex. 4 at ¶ 47. |
| 33. | Defendants' expert witnesses agree that player/playa, hater/hata and gon/gonna are insignificant changes. Moreover, according to Prof. Kajikawa, Defendants' change of form for the words player/playas/haters/gon'/gonna was functional, since using the same vernacular would have amounted to "vocal blackface"—in other words, the change was dictated by the identity of the white singer rather than creativity. | P-Ex. 9 131:6-132:5; P-Ex. 10 at 85:6-12; P-Ex. 4 at ¶¶ 43-46; P-Ex. 5 at ¶¶ 10-11. |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 34. | Professor Lewis' published work does not focus on music and does not pay "significant attention" to song lyrics. | P-Ex. 9 at 19:25-21:9. |
| 35. | Professor Lewis' works include only one comparative study of song lyrics. | P-Ex. 9 at 23:11-24. |
| 36. | Dr. Ferrara admits there is "concrete objective similarity" in the first half of the allegedly infringed four-part lyrical sequence; he also confirms that there are "similar lyrics" in the two songs. | P-Ex. 8 at 103:15-18; Ferrara Decl. at ¶ 6(f). |
| 37. | Dr. Ferrara has never provided an expert opinion in a case where the claimed infringement was limited to song lyrics. | P-Ex. 8 at 33:2-24, 36:20-38:17, 41:4-42:13, 44:2-24, 47:6-49:9, 53:23-54:15, 55:4-15, 58:3-59:7, 64:8-25 & 65:9-20. |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 38. | Dr. Ferrara is a defense expert: in all the cases he listed, he was hired by the defense; as such, his expertise is finding ***dissimilarities*** between the works at issue. | P-Ex. 8 at 33:2-24, 36:20-38:17, 41:4-42:13, 44:2-24, 47:6-49:9, 53:23-54:15, 55:4-15, 58:3-59:7, 64:8-25, 65:9-20 & 74:3-75:1. |
| 39. | Dr. Ferrara admits that for lyrics to be similar, none of the elements he analyzed, such as melody, harmony, and rhythm, need to be similar. | P-Ex. 8 at 88:12-25, 89:7-19, 92:13-22, 93:2-94:7, & 97:6-98:2. |
| 40. | Professor Ferrara's work never focused on song lyrics but rather deals with "the analysis of songs" in general. | P-Ex. 8 at 28:9-30:10. |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 41. | Professor Ferrara provides no musicological comparison of the lyrics at issue; for the lyrics, he relies on the analysis performed by Professor Lewis and Professor Morgan instead, and his conclusion that there are "no significant … lyrical similarities, individually or in the aggregate" is thus based solely on his identification of the differences in music. | D-Ex. 1 at ¶¶ 40-44; Ferrara Decl. ¶ 6(f). |
| 42. | Professor Ferrara opines that no copying occurred between the two songs at issue only because he found them to share no similarities in music. | D-Ex. 1 at ¶¶ 49-50. |

| Pl. AUF No. | FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 43. | Professor Morgan's conclusion that "there is no linguistic support" for the proposition that *Playas*' phrases and similar phrases "do not appear in prior art or are unique" never considers the particular combination of the phrases at issue. | D-Ex. 3; *see also* P-Ex. 10 at 81:9-82:4 [Professor Morgan conceding that she knew of no prior art that included the same combination]; *accord* P-Ex. 5 at ¶¶ 3-5 & 7. |
| 44. | Professor Morgan effectively agrees that Professor Kajikawa's interpretation of the songs' themes as being similar could be right because the phrases' meaning is a matter of an individual's "perspective." | P-Ex. 10 at 133:4-134:5. |

## III. CONCLUSIONS OF LAW

### I. <u>General Governing Principles</u>

1. This Court "applies *Anderson*, *Celotex*, and their Ninth Circuit progeny" in deciding a summary judgment motion. *Russell v. Walmart Inc.*, 2020 WL 9073046, at *7 (C.D. Cal. Oct. 16, 2020), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986), and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

2. Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

3. As such, in ruling on a motion for summary judgment, the Court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249.

4. The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. *See Celotex*, 477 U.S. at 323.

5. If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *See Anderson*, 477 U.S. at 250.

6. When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.*, 121 F.3d 1332, 1335 (9th Cir. 1997).

7. A court should not grant a motion for summary judgment unless the record shows that a reasonable jury could not find for the nonmoving party. *See Matsushita*, 475 U.S. at 587.

8. The proponent of a copyright infringement claim must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co. Inc.*, 499 U.S. 340, 361 (1991); *see also Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004). Plaintiffs' ownership is not disputed on this motion.

**II. <u>Plaintiffs Have Raised Sufficient Issues of Material Fact on Substantial Similarity</u>**

9. "Substantial similarity is not an element of a claim of copyright infringement. Rather, it is a doctrine that helps courts adjudicate whether copying of the constituent elements of the work that are original actually occurred when an allegedly infringing work appropriates elements of an original without reproducing it *in toto*." *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012).

10. "Before analyzing substantial similarity, we determine whether a copyright is entitled to 'thin' or 'broad' protection." *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1260 (9th Cir. 2021). The scope of protection depends on "the breadth of the possible expression" of a work's ideas. *Id.* at 913. "If there's a wide range of expression ..., then copyright protection is 'broad,' and a work will infringe if it is "substantially similar" to the copyrighted work." *Id.* at 913-14. "Some ideas can be expressed in myriad ways, while others allow only a narrow range of expression. Fictional works generally fall into the first category." *Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485, 488 (9th Cir. 1984); see also *Bach v. Forever Living Prod. U.S., Inc.*, 473 F. Supp. 2d 1127, 1136 (W.D. Wash. 2007) ("[T]here are limitless metaphors for the ideas of achievement, perseverance, and enlightenment. The unique expression of those ideas through the story of Jonathan Livingston Seagull is protectable."). As a work of fiction, the lyrical sequence at issue here is thus entitled to "broad" protection. In any event, since Defendants analyze the alleged infringement in terms of "substantial similarity," they do not appear to dispute the scope of protection on this Motion.

11. The Ninth Circuit has "long held that [s]ummary judgment is not highly favored on questions of substantial similarity." *Zindel as Tr. for David Zindel Tr. v. Fox Searchlight Pictures, Inc.*, 815 F. App'x 158, 159 (9th Cir. 2020), citing *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 848 (9th Cir. 2012). This is because "the determination of the extent of similarity that will constitute a substantial, and hence infringing, similarity presents one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations." 4 NIMMER ON COPYRIGHT, § 13.03[B][1] (2021) ("NIMMER"). NIMMER §13.03[A]. Accordingly, as "[n]o easy rule of thumb can be stated as to the quantum of fragmented literal similarity permitted without crossing the line of substantial similarity," whether works are substantially similar is "a classic jury question." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 943 (10th Cir. 2002), citing NIMMER § 13.03[A][2]; *accord Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d

1327, 1330 n.6 (9th Cir. 1983) ("Since substantial similarity is usually an extremely close question of fact, summary judgment has traditionally been disfavored in copyright litigation.").

12. To decide whether two works are substantially similar, the Ninth Circuit generally employs a two-part analysis consisting of an objective extrinsic test and a subjective intrinsic test. *See Swirsky*, 376 F.3d at 845. "For the purposes of summary judgment, only the extrinsic test is important because the subjective question whether works are intrinsically similar must be left to the jury." *Id.* "As it has evolved, … the extrinsic test now objectively considers whether there are substantial similarities in *both* ideas and expression…." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 637 (9th Cir. 2008) (original emphasis); *see also Russell*, 2020 WL 9073046, at *10 (reasoning that summary judgment on the issue of substantial similarity is only appropriate where "no reasonable juror could find substantial similarity of ideas and expression"). It "requires that the plaintiff identify concrete elements based on objective criteria" and "often" requires analytical dissection of a work and expert testimony. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000).

13. However, "[i]n performing the substantial similarity analysis, a court should be careful not to over-dissect the plaintiff's work, causing it to ignore the plaintiff's protectable expression." *Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC*, 560 F.3d 53, 59 (1st Cir. 2009).

14. Moreover, the Court is not required to consider expert testimony—especially, where, as here, the comparison involves "a literary work aimed at a general audience, [where] expert testimony will seldom be *necessary* to determine substantial similarity." *Stromback v. New Line Cinema*, 384 F.3d 283, 295-96 (6th Cir. 2004), citing, *inter alia*, *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 123 (2d Cir. 1930) (L. Hand, J.) (reasoning that expert testimony "cumbers the case and tends to confusion, for the more the court is led into the intricacies of dramatic craftsmanship, the less likely it is to stand upon the firmer, if more naive, ground of its considered impressions upon its own perusal") (emphasis and alteration

in original); *accord Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1147 (C.D. Cal. 2015) (rejecting "asserti[on] that the court could not conduct the extrinsic test used to assess copyright infringement without expert opinion to guide it. There is no authority for this proposition."), citing *Rice v. Fox Broadcasting Co*., 330 F.3d 1170, 1180 (9th Cir. 2003).

15. To the extent the Court considers the expert testimony in the case, it is, once again, confronted with a classic jury question: weighing the credentials, methodology and credibility of the respective experts. *See Greyhound Computer Corp. v. International Business Machines Corp*., 559 F.2d 488, 507 n.41 (9th Cir. 1977); *accord Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). For purposes of this Motion, Defendants have accepted Professor Kajikawa's qualifications (*see* Mot. at 5 n.3).

16. This is why any classic 'battle of the experts' … renders summary judgment improper." *Regents of Univ. of California v. Dako N. Am., Inc*., 2009 WL 1083446, at *15 (N.D. Cal. Apr. 22, 2009), citing *Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc*., 99 F. App'x 911, 920 (Fed. Cir. 2004); *accord Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005) (reversing summary judgment and observing that "competing expert opinions present the 'classic battle of the experts' and it [is] up to a jury to evaluate what weight and credibility each expert opinion deserves") (original alteration); *see also Ziller v. Emerald Art Glass*, 2007 WL 465591, at *18 (W.D. Pa. Feb. 12, 2007) ("[T]he Court cannot resolve the 'battle of the experts' on the issue of substantial similarity in the context of deciding motions for summary judgment. Whether the two works are so substantially similar that one could not have been independently created but must have been copied from the other will have to be determined by the trier of fact."). After all, "[w]here reasonable minds could differ on the issue of substantial similarity, … summary judgment is improper." *Russell*, 2020 WL 9073046, at *10.

17. The critical question for any substantial similarity analysis is whether the similarity relates to a substantial portion of ***plaintiff***'s work— not whether such material

constitutes a substantial portion of defendant's work." NIMMER § 13.03[A][2]. In the same vein, "[i]t is ***entirely immaterial*** that, in many respects, plaintiff's and defendant's works are dissimilar, if in other respects, similarity as to a substantial element of plaintiff's work can be shown." *L.A. Printex*, 676 F.3d at 851, citing NIMMER § 13.03[B] [1][a]. Indeed, "a court must focus on what is similar, not what is different, when comparing two works." *Danjaq, LLC v. Universal City Studios, LLC*, 2014 WL 7882071, at *5 (C.D. Cal. Oct. 2, 2014), citing *Spry Fox LLC v. LOLApps Inc.*, 2012 WL 5290158, at *6 (W.D. Wash. Sept. 18, 2012) (also observing that "a writer who appropriates the plot of Gone with the Wind cannot avoid copyright infringement by naming its male protagonist 'Brett Cutler' and making him an Alaskan gold miner instead of a southern gentleman"); *accord Benay v. Warner Bros. Ent.*, 607 F.3d 620, 624 (9th Cir. 2010) (observing that "[t]he [extrinsic] test focuses on articulable similarities").

**A. <u>Defendants' Infringement as to Plaintiffs' Selection and Arrangement</u>**

18. "We do not have a well-defined standard for assessing when similarity in selection and arrangement becomes 'substantial'" or striking, and in truth no hard-and-fast rule could be devised to guide determinations that will necessarily turn on the unique facts of each case." *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 953 (9th Cir. 2019); *see also Baxter*, 812 F.2d at 425 (citing "the fundamental notion that no bright line rule exists as to what quantum of similarity is permitted before crossing into the realm of substantial similarity"). "The best we can do is borrow from the standard Judge Learned Hand employed in a case involving fabric designs: The two [works'] selection and arrangement of elements must be similar enough that 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them.'" *Kirk Kara Corp. v. W. Stone & Metal Corp.*, 2020 WL 5991503, at *3 (C.D. Cal. Aug. 14, 2020), citing *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1121 (9th Cir. 2018).

19. Indeed, in considering a claim of infringement of a combination of unprotected elements, the Court is "guided by relatively little precedent." *Swirsky*, 376 F.3d at 848-49

(acknowledging that the "extrinsic test provides an awkward framework to apply to copyrighted works like music" and that "no one magical combination of [compositional elements] will automatically substantiate a musical infringement suit"). "[E]ach allegation of infringement [is] unique"—as such, it must be assessed *ad hoc*. *Id.* at 849; *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990) (analyzing literary works and observing that "[i]t is … impossible to articulate a definitive demarcation that measures when the similarity between works involves copying of protected expression; decisions must inevitably be *ad hoc*").

**1. <u>Plaintiffs' Selection and Arrangement is Original and Thus Protected</u>**

20. "It is well-established … that '[o]riginal selection, coordination, and arrangement of unprotectible elements may be protectible expression' if the ***combination*** is sufficiently original." *Kirk*, 2020 WL 5991503, at *3, citing, *inter alia*, *L.A. Printex Indus., Inc.*, 676 F.3d at 849; *accord Feist*, 499 U.S. at 358 (when affording copyright protection to a combination of unoriginal elements, "the principal focus should be on whether the selection, coordination, and arrangement are sufficiently original to merit protection"). "Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Desire*, 986 F.3d at 1260-61 (concluding that the fact "[t]hat the Subject Design may not be novel is immaterial to the question whether it is 'original'"), citing *Feist*, 499 U.S. at 345; *accord* 1 NIMMER ON COPYRIGHT, § 2.01[B][1] at n.31 (2021) (citing legislative history in support of the proposition that the "standard [of originality] does not include requirements of novelty … and there is no intention to enlarge the standard of copyright protection to require them"); *but see Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1075 (9th Cir. 2020) (in *dicta*, requiring a "novel" arrangement for a work to qualify as protected selection and arrangement).[4]

[4] The Court need not resolve the apparent tension on this issue between the en banc decision in *Skidmore* and the later Ninth Circuit's opinion in *Desire*. Since the issue in *Skidmore* was an omission of a jury instruction on "selection and arrangement" liability, the

21. This concept of originality has been echoed by courts and commentators alike: "Courts and commentators time and again have restated the fundamental position that copyright originality means independent creation and not novelty, uniqueness, or artistic merit." Russ VerSteeg, "Rethinking Originality," 34 Wm. & Mary L. Rev. 801, 873 & n.319 (1993) (collecting authorities). As one court put it, "It is axiomatic that the designation 'original' is not intended to be limited to works that are novel or unique. Rather, the word 'original,' which was 'purposely left undefined' by Congress, refers to works that have been 'independently created by an author,' ***regardless of their literary or aesthetic merit, or ingenuity, or qualitative value***." *Lotus Dev. Corp. v. Paperback Software Int'l*, 740 F. Supp. 37, 48 (D. Mass. 1990).

22. As long as the expression at issue exhibits "minimal degree of creativity," which is an "extremely low" threshold, as "even a slight amount will suffice," the legal concept of originality is satisfied. *Feist*, 499 U.S. at 345 (also observing that "[t]he vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be"); *see also Situation Mgmt.*, 560 F.3d at 60 (holding that "the district court erroneously treated copyright law's originality requirement as functionally equivalent to a novelty standard" by denying originality based on its findings that the works

---

court's conclusion that plaintiff's "failure to properly invoke a selection and arrangement argument is a death knell for Skidmore's request for a selection and arrangement instruction" renders *dicta* its discussion of what constitutes protectable selection and arrangement. *Id.* at 1076 (concluding that plaintiff "is not entitled to an instruction based on a legal theory that was not presented to the jury"); *cf. United States v. Henderson*, 961 F.2d 880, 882 (9th Cir. 1992) (defining "dicta" as language that is "unnecessary to [the court's] its holding"). In any event, to the extent *Skidmore* is in conflict on this issue with the Supreme Court's decision in *Feist*, the latter controls.

Notably, the *Skidmore* court itself is not consistent on this point, since it also found that the "concept" that "the 'original' part of a work need not be new or novel" is "embrace[d]" in the jury instruction's "reference to 'minimal creativity.'" 952 F.3d at 1072. Furthermore, the *Skidmore* court relied on *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 363 (9th Cir. 1947), for its puzzling statement of novelty requirement, yet the court in *Universal Pictures* mandated no such rule. Rather, the *Universal Pictures* court merely observed that "originality was displayed in taking commonplace material and acts and making them into a new combination and novel arrangement which is protectable by copyright." *Id.* In other words, it held that a novel combination is protectable but never opined that novelty is a required element for protection to apply in the first place.

were "filled with generalizations, platitudes, and observations of the obvious" and concluding that "neither the works' absolute novelty nor their creative value determines whether they are original for purposes of copyright protection").

23. Here, since the Ninth Circuit has already found, as a matter of law, that the "six-word phrase" and the "four-part lyrical sequence" at issue present a plausibly protectable expression, *Hall v. Swift*, 786 F. App'x 711 (9th Cir. 2019), and Plaintiffs' expert witness agrees that they do as a matter of objective fact, nothing further is required to proceed on this issue to the jury. This is especially so given that the Ninth Circuit arrived at its legal conclusion that the work exhibits sufficient plausible originality "[e]ven taking into account the matters of which the district court took judicial notice," *Hall*, 786 F. App'x at 712, which included many of the same examples of playa/hater phrases in prior art that Defendants' expert witnesses considered on this Motion. *Accord N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1034-35 (9th Cir. 1992) (reversing summary judgment on the issue of insufficient creativity as distinguished from prior art: "The district court did not focus on the critical distinction between the idea and expression of the idea that is so fundamental to our copyright law. While the 'idea' of using bounded geometric figures in a pattern is clearly one which the plaintiff borrowed, it is by no means clear that the 'expressions' of that idea … are substantially similar and the differences merely trivial.").

24. As such, Defendants are left with challenging originality of the selection and arrangement at issue here ***solely as a matter of law***. They do so by pointing to *Skidmore* as an "intervening" controlling authority that somehow reinstated the numerosity formulas that this Court already rejected as inappropriate in the context of selection and arrangement of literary elements. *See Hall v. Swift*, 2020 WL 5358390, at *3-4 (C.D. Cal. Sept. 2, 2020), citing, *inter alia*, *Shaw*, 919 F.2d at 1360. Since this Court ruled after the *Skidmore* opinion came out, there is nothing "intervening" about it: in fact, the Court specifically cited to *Skidmore* as only overruling *Shaw* on ***other*** grounds. *See Hall*, 2020 WL 5358390, at *3.

25. Moreover, as noted above, the *Skidmore* court's discussion of what constitutes a

protectable selection and arrangement is *dicta*. Most importantly, it applied the "representational objects" formulas to ***music rather than words*** and, as such, cannot signify any departure from *Shaw*. *Compare Skidmore*, 952 F.3d at 1057 & 1074 (observing that the infringement claim was limited to musical notes and citing *Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003), a representational object case, for the stated numerosity requirement), with *Hall*, 2020 WL 5358390, at *3 ("[T]he Court is persuaded by Plaintiffs' arguments that the Ninth Circuit has long distinguished between literary works and physical objects with respect to determining the number of unprotectable elements required to result in a protectable composition."), citing *Shaw*, 919 F.2d at 1360.[5]

26. Regardless, even if numerosity could be applied as the relevant criteria here, the Ninth Circuit in this case found the number of the elements at issue to suffice—after all, if there were not enough elements, originality could not have been plausibly alleged.

27. Indeed, even a *single word* or a *sound* can qualify for protection when repeated to form a pattern, a rhythm, or a hook in a song. As one court recently confirmed, "use of a lyrical phrase from one song in another song may in some instances be the basis for an infringement claim."[6]

---

[5] This Court found it important that none of Defendants' cases on this point dealt with literary works, other than *Masterson v. Walt Disney Co.*, 821 F. App'x 779 (9th Cir. 2020), which the Court specifically distinguished as inconsistent with *Shaw*. *See Hall*, 2020 WL 5358390, at *4. Defendants now also cite to *Corbello v. Valli*, 974 F.3d 965, 974 n.2 (9th Cir. 2020), but it also had very little to do with true literary works, since the "unprotectable elements" it dealt with were ***facts*** found in an unauthorized biography; moreover, their specific compilation was "not present" in the allegedly infringing play. *Id.* (concluding that "[t]he selection of the true stories behind the Band's most popular songs and the arrangement of those stories in roughly chronological order is not original, and so not protectable by copyright"). In any event, since "only a panel sitting en banc may overturn existing Ninth Circuit precedent," *Murray v. Cable Nat. Broadcasting Co*., 86 F.3d 858, 860 (9th Cir. 1996), the *Corbello* court's footnote application of the numerosity requirement cannot overcome the teachings of *Shaw*, which remains the Ninth Circuit's valid standing precedent on this issue.

[6] *May v. Sony Music Ent*., 399 F. Supp. 3d 169, 184 (S.D.N.Y. 2019) (finding that one phrase that is a "constituent element" of song lyrics is protected: "a copier may not quote or paraphrase the sequence of creative expression that includes such a phrase"), citing, *inter alia*, *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 604 (S.D.N.Y. 2013); *Jarvis v. A & M Recs*., 827 F. Supp. 282, 292 (D.N.J. 1993) (holding that phrases "ooh," "moves" and "free your body" formed a copyrightable expression based on "the *precise* relationship of the phrases *vis a vis* each other" and concluding that "[t]here is no question that the combined phrase 'ooh ooh ooh ooh ... move ... free your body' is an expression of an idea that was

28. If "an arrangement of a limited number of notes can garner copyright protection," *Swirsky*, 376 F.3d at 851, so can a combination of a limited number of song lyrics. *See id.* (finding song's combination of "seven notes" to form a protected expression), citing, *inter alia*, *Elsmere Music, Inc. v. Nat'l Broad. Co*., 482 F. Supp. 741, 744 (S.D.N.Y. 1980 (same as to only four notes combined in a jingle); *Three Boys*, 212 F.3d at 485-86 (same as to "five unprotectible elements" combined in a song); *see also Bridgeport Music, Inc. v. UMG Recordings, Inc*., 585 F.3d 267, 275-76 (6th Cir. 2009) (same with regard to only three elements combined in a song); *accord Skidmore*, 952 F.3d at 1075 n.11 (confirming that "*Swirksy* left open the possibility that five or more different musical elements may be analyzed for a substantial similarity analysis").

29. Plaintiffs have identified at least seven elements comprising the expression here, which reflect Plaintiffs' choices to: (1) combine tautological phrases, (2) via parallel lyrics, (3) each bearing grammatical structure "Xers gonna X," (4) use four such phrases in the chorus, (5) two of which are variations on playa/hater phrases invoked to open the chorus, (6) each dealing with groups of "Xers" that bear certain negative connotations, (7) with the combined effect of expressing a larger idea "that we should not be concerned with what other

---

copyrightable") (original emphasis); *cf. Heim v. Universal Pictures Co*., 154 F.2d 480, 488 n.8 (2d Cir. 1946) ("There may be wrongful copying, though small quantitatively," for example, "if someone were to copy the words, 'Euclid alone has looked on Beauty bare,' or 'Twas brillig and the slithy toves.'"); *see also Allen v. Destiny's Child*, 2009 WL 2178676, at *9 (N.D. Ill. July 21, 2009) (denying summary judgment based on, *inter alia*, the court's "declin[ing] to find as a matter of law that no reasonable jury could find the [ordinary] phrase 'cater to you' to be an original expression of the theme set forth in the [original] Song"); *Positive Black Talk, Inc. v. Cash Money Recs., Inc*., 2003 WL 1921999, at *3-4 (E.D. La. Apr. 21, 2003) (denying defendants' motion for summary judgment on originality as to the allegedly infringed song phrase "back that ass up," despite expert evidence that it was a popular club chant that was "relatively common in hip-hop vernacular"); *Santrayll v. Burrell*, 1996 WL 134803, at *1 (S.D.N.Y. Mar. 25, 1996) (holding that "[t]he one measure 'hook,' consisting of the word 'uh-oh' repeated four times to a particular rhythm" deserved copyright protection); *Tin Pan Apple, Inc. v. Miller Brewing Co*., 1994 WL 62360, at *4 (S.D.N.Y. Feb. 24, 1994) ("I hold that a jury could find that the Hugga-Hugga and Brrr sounds, used as lyrics in the copyrighted work, are sufficiently creative to warrant copyright protection, quite apart from the rhythmic patterns or durations demonstrated by that work and the commercial."); *Bright Tunes Music Corp. v. Harrisongs Music, Ltd*., 420 F. Supp. 177, 178 (S.D.N.Y. 1976) (finding for plaintiff on the issue of plagiarism and holding that "[w]hile neither motif is novel, the four repetitions of A, followed by four repetitions of B, is a highly unique pattern").

people say or do, trusting in ourselves instead."

30. As discussed above, these seven elements are numerous enough in this Circuit to proceed with the substantial similarity analysis. *See Shaw*, 919 F.2d at 1363 ("Even if none of these [common] plot elements is remarkably unusual in and of itself, the fact that both [works] contain all of these similar events gives rise to a triable question of substantial similarity of protected expression."); *Gray v. Perry*, 2018 WL 3954008, at *8 (C.D. Cal. Aug. 13, 2018) (finding genuine issue of material fact precluded summary judgment as to the claimed infringement of a musical composition where the report by plaintiff's expert concluded that the allegedly infringing song "clearly borrows a memorable and highly characteristic combination of discrete and specific musical elements …. Accordingly, the Court cannot determine as a matter of law that the overlapping similarities identified by [the expert] are not protectable musical expressions."); *Straughter v. Raymond*, 2011 WL 3651350, at *16 (C.D. Cal. Aug. 19, 2011) (same where plaintiff's expert identified "copying of a '***combination*** of unprotectible elements'" in musical compositions) (original emphasis), citing *Swirsky*, 376 F.3d at 851-52, and *Three Boys*, 212 F.3d at 485.

31. This is especially so, considering that the sequence at issue appears in the chorus, the most important part of both songs. *See Baxter*, 812 F.2d at 425 (collecting cases and observing that a six-note sequence could be "qualitatively important" enough to become protectible expression); *see also Newton v. Diamond*, 204 F. Supp. 2d 1244, 1254 (C.D. Cal. 2002) (observing that "sequences of less than six notes could be qualitatively distinctive" to warrant protection where they are, *inter alia*, "at the heart of the musical compositions"); *accord Newton v. Diamond*, 388 F.3d 1189, 1196 (9th Cir. 2004) (considering whether portions of a song constituted the "heart or hook" of the song for purposes of determining its qualitative significance); *cf. Danjaq*, 2014 WL 7882071, at *5 (observing that even three words "Bond. James Bond" are both "recognizable and significant" once they become iconic).

32. "It is the chorus—often termed the 'hook,' in recognition of its power to keep a listener coming back for more—that many listeners will recognize immediately or hear in

their minds when a song title is mentioned. As the part of a song that is most often repeated and remembered, a chorus hook is important not only aesthetically but also commercially, where it may be central to a song's economic success." *Copeland v. Bieber*, 789 F.3d 484, 493-94 (4th Cir. 2015) (concluding that "choruses or hooks of popular music songs are often disproportionately significant, relative to the amount of time or number of measures they occupy. '[V]irtually no hit record is without a bit of music or words so compelling that it worms its way into one's memory and won't go away.'"); *see also BMS Entm't/Heat Music LLC v. Bridges*, 2005 WL 1593013, at *3 (S.D.N.Y. July 7, 2005) (rejecting the argument that two songs that "combine[d] a call-and-response format, the lyrics 'like that' preceded by a one-syllable word," and a particular rhythm were not protectable where "[t]hese elements in combination are repeated multiple times in each composition and arguably constitute the hooks in each song"). Accordingly, given its "qualitative[]" importance, the sequence is a protected expression for this additional reason as well.

**2. Defendants' Chorus is Substantially Similar to Plaintiffs' Chorus**

33. A selection and arrangement copyright is infringed when the works share "the particular selection or arrangement" of unprotectable elements. *Feist*, 499 U.S. 340 at 350-51. Importantly, a copyrighted selection and arrangement need not be copied "in [their] entirety" to be infringed under the substantial similarity standard—the infringer need only copy a "substantial portion" of the copyrighted work. *L.A. Printex Indus., Inc.*, 676 F.3d at 852.

34. "Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity." *Baxter*, 812 F.2d at 425, citing, *inter alia*, *Heim*, 154 F.2d at 488 (single brief phrase so idiosyncratic as to preclude coincidence might suffice to show copying), and NIMMER § 13.03[A][2] (collecting authorities and rejecting notion that copying of three bars from musical work can never constitute infringement).

35. "The particular sequence in which an author strings a significant number of

unprotectable elements can itself be a protectable element. Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection." *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002), *overruled on other grounds by Skidmore*, 952 F.3d 1051;[7] *accord Shaw*, 919 F.2d at 1363 (observing that a common "pattern [that] is sufficiently concrete ... warrant[s] a finding of substantial similarity"). *See also Salinger v. Random House, Inc.*, 811 F.2d 90, 98 (2d Cir. 1987) ("The 'ordinary' phrase may enjoy no protection as such, but its use in a sequence of expressive words does not cause the entire passage to lose protection. And though the 'ordinary' phrase may be quoted without fear of infringement, a copier may not quote or paraphrase the sequence of creative expression that includes such a phrase."); *Allen*, 2009 WL 2178676, at *9 (declining to limit substantial similarity analysis to literal phrases and holding that copying of the phrase "cater to you" expressed the same idea as in the allegedly infringed work, which was "one of relieving the stress from the significant other and getting them to relax").

36. As discussed, there are (at least) seven elements in the selection and arrangement of the four-part lyrical sequence at issue that Defendants' chorus copies. Indeed, Plaintiffs' expert witness finds "[t]he use of similar phrases in [Defendants' chorus] ***striking***," as both choruses "use nearly identical words in nearly identical ways as the basis for the most memorable part of each song (the chorus)."

37. The combined effect of these similarities satisfies the extrinsic test of substantial similarity. *See Metcalf*, 294 F.3d at 1074 (acknowledging that script authors' general themes and ideas were not protected but also finding that "[t]he presence of so many generic similarities and the common patterns in which they arise do help … [plaintiffs] satisfy the extrinsic test," especially given that the particular expression of those themes and ideas was itself a protected element); *Gray*, 2018 WL 3954008, at *7 (denying summary judgment

---

[7] While the *Skidmore* court overruled the "inverse ratio" rule applied in *Metcalf*, it left intact its substantial similarity" analysis, since the *Metcalf* court applied the "inverse ratio" rule only to "strengthen" plaintiff's showing on substantial similarity, 294 F.3d at 1075, but it was not dispositive on the issue.

based on a finding of substantial similarity in the combination of five "unprotectable elements" of a musical composition based on expert testimony that "identified particular features of the works which, taken in combination, could support a finding of substantial similarity by a reasonable jury"), citing *Three Boys*, 212 F.3d at 485; *Straughter*, 2011 WL 3651350, at *15-16 ("The Court finds that … expert testimony [introduced by plaintiff] is sufficient to raise a genuine issue of material fact as to substantial and striking similarity. As in *Three Boys*, [the expert] has identified particular features of the works which, taken in combination, can support a finding of substantial similarity.").

38. Moreover, the fact that the allegedly copied expression appears in the songs' choruses (which, as discussed, are considered to be the most important part of any song, making even slight copying "qualitatively significant") further supports a finding of substantial similarity. *See, e.g., Bridgeport*, 585 F.3d at 276-77 (where the copied elements of the song were "as unique to the song and the Bow Wow refrain, in particular, as the most well-known aspect of the song—in terms of iconology, perhaps the functional equivalent of 'E.T., phone home,'" upholding "substantial similarity, given evidence that the copied elements had such great qualitative importance to the song"); *May*, 399 F. Supp. 3d at 186 (finding allegations of substantial similarity as to the same phrase in two songs plausible where the phrase is "the repeated 'hook' of the chorus … [that] encapsulates the overriding theme of the song…. The Phrase may be viewed as 'the heart of [Plaintiff's] composition.' In short, [Plaintiff] plausibly alleges that the Phrase is both quantitatively and qualitatively significant to his song sufficient to cross the line from a trivial to substantial.").

39. Indeed, courts discount "the relative importance of the[] differences as compared to what the songs reasonably could be heard to have in common: their choruses. Even when quantitative majorities of two works bear little resemblance, courts routinely permit a finding of substantial similarity where the works share some especially significant sequence of notes or lyrics." *Copeland*, 789 F.3d at 493-94, citing, *inter alia*, *Swirsky*, 376 F.3d at 851 (overlap in first measure of chorus—seven total notes—enough to make pop songs substantially

similar), and *Fisher v. Dees*, 794 F.2d 432, 434 & n.2 (9th Cir. 1986) (similarity in first six measures of songs, amounting to twenty-nine seconds on a forty-minute album, enough to constitute appropriation of album).

40. There is conflicting expert witness testimony as to the claimed differences in the expressions at issue. Accordingly, given the reasonable minds such as those of the expert witnesses here obviously disagree on this point, it is an issue of fact best left to the jury. *See, e.g.*, *Russell*, 2020 WL 9073046, at *10, citing *L.A. Printex*, 676 F.3d at 848; *cf. L.A. Printex Indus., Inc.*, 676 F.3d at 852 (holding that a copyrighted selection and arrangement need not be copied "in [their] entirety" to be infringed under the substantial similarity standard—the infringer need only copy a "substantial portion" of the copyrighted work).

41. The bottom line is that given the many similarities between the song choruses at issue here, "the differences support the opposite conclusion, that there is a genuine dispute of material fact on substantial similarity." *L.A. Printex*, 676 F.3d at 851; *accord Gray*, 2018 WL 3954008, at *7 ("Although [plaintiff's expert's] opinions are contradicted or challenged by defendants' expert, Ferrara, all plaintiffs must do to defeat summary judgment is provide '***indicia of a sufficient disagreement*** concerning the substantial similarity of the two works'"), citing *Swirsky*, 376 F.3d at 846; *Straughter*, 2011 WL 3651350, at *15-16 (same; also observing that plaintiff's expert "does not simply list random similarities scattered throughout the two songs … [n]or does he completely ignore the differences … [because he] ultimately concludes that those differences do not impact his ultimate conclusion on similarity. Furthermore, to the extent [the expert] does not identify certain dissimilarities between the works, such a failure is not fatal to plaintiff's case …."), citing *Swirsky*, 376 F.3d at 849; *see also Williams v. Bridgeport Music, Inc.*, 2014 WL 7877773, at *19-22 (C.D. Cal. Oct. 30, 2014) (denying summary judgment for similar reasons).

42. This is because "a rational jury could find that these differences 'inconsequential,' or could credit [plaintiff's] assertion that these differences [are essentially functional]." *L.A. Printex*, 676 F.3d at 851; *see also Allen*, 2009 WL 2178676, at *11

(denying summary judgment on substantial similarity of song lyrics where defendants' song "include[d] each of [plaintiff's] … elements in its treatment of the same theme. While some of [plaintiff]'s descriptions may be standard expressions of his theme when standing alone, the combination of all of these elements may be sufficiently original so as to be protectable under copyright law. Because reasonable minds could come to different conclusions on the question of whether the [allegedly infringed] lyrics ... constitute scènes à faire, the court declines to find as a matter of law that the lyrics to the [allegedly infringed] Song are inherently unprotectable.").

43. As such, "[a] rational jury could find that despite some differences …, the similarities in the selection, coordination, and arrangement of … [the elements] are sufficiently substantial to support an inference of copying." *L.A. Printex*, 676 F.3d at 851; *see also Art Attacks Ink, LLC v. MGA Ent., Inc.*, 2006 WL 8439847, at *4 (S.D. Cal. Nov. 1, 2006) (where "the designation of which elements are 'stock' elements … is a subject of debate between the parties and their experts," denying summary judgment based on the conclusion that "[w]hether … [the] products have the same arrangement of elements or simply are based upon a similar theme comes down to ***subjective*** opinion. Therefore, several issues of material fact remain with regards to the extrinsic test.").

**B. <u>Defendants' Infringement of Plaintiffs' Literary Work</u>**

44. Defendants analyze the substantial similarity of the lyrics at issue by employing the comparison structure of the elements that apply to ***narrative*** literary works. *See Andreas Carlsson Prod. AB v. Barnes*, 2016 WL 11499657, at *16 (C.D. Cal. Apr. 14, 2016) (observing that it is "[i]n comparing ***narrative-driven*** works" that "the extrinsic test compares the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the works at issue"), citing *Benay*, 607 F.3d at 624. But, as the expert witnesses agree here, "pop songs do not function exactly like books," and the song lyrics at issue here are non-narrative. As such, it is pointless to compare them by the elements that are ill-fitted to their nature. *See Shaw*, 919 F.2d at 1360-61 (accounting for the nature of the underlying work in its substantial

similarity analysis); *accord Williams*, 895 F.3d at 1106; *Cavalier*, 297 F.3d at 822; *see also Astor-White v. Strong*, 733 F. App'x 407, 408 n.2 (9th Cir. 2018) (concurring opinion).

45. Importantly, ***the Ninth Circuit does not appear to have ever applied Defendants' "narrative" comparison structure to song lyrics***, and courts that analyzed song lyrics as literary creations (*i.e.*, divorced from the underlying music) have applied an entirely different comparison structure to gauge whether two sets of song lyrics are substantially similar—namely, the fragmented literal similarity test. *See May*, 399 F. Supp. 3d at 180-81 & 185-86 (where the alleged infringement was limited to one phrase in both songs, observing that "[m]ultiple tests exist to determine substantial similarity, including … the 'fragmented literal similarity test'" and applying the latter test to deny motion to dismiss).[8]

46. Under this comparison structure, plaintiff satisfies the substantial similarity test by showing that defendant "copie[d] a portion of the plaintiff's work exactly or nearly exactly, without appropriating the work's overall essence or structure." *May*, 399 F. Supp. 3d at 180-81 (also observing that the analysis focuses on "whether the copying goes to trivial or substantial elements of the original work"), citing, *inter alia*, *Newton*, 388 F.3d at 1194-95; *see also Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 140 (2d Cir. 1998)

---

[8] *Accord Bridgeport*, 585 F.3d at 276-77 (concluding that the trial court did not err when it applied the fragmented literal similarity standard and refused to instruct the jury "that the two songs differed in theme, tempo, and style …. Bridgeport alleged in its complaint that [defendant] had copied specific elements of [the work] and that these elements were copied literally. Thus, the overall concept or tone of the work was not relevant to the jury's task."); *see also TufAmerica*, 968 F. Supp. 2d at 597 & 603-04 (where one of the infringement claims was limited to one song phrase, concluding that "[a]lthough there is a frankly surprising paucity of on-point precedent regarding literal copying of the kind presented in this case, the Court agrees with Plaintiff that the copying here is an example of 'fragmented literal similarity'" because, unlike the "parroting [of] properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art ... are considered in relation to one another," the alleged infringement in the case at bar "involve[d] the literal use of a small portion of the pre-existing work in the later work," and "there are no blurred lines between what was or was not taken" in the latter type of copying); *cf.* Melissa Eckhause, *Digital Sampling v. Appropriation Art: Why Is One Stealing and the Other Fair Use? A Proposal for A Code of Best Practices in Fair Use for Digital Music Sampling*, 84 Mo. L. Rev. 371, 386 (2019) (discussing the fragmented literal similarity test as one of the tests measuring "substantial similarity" under the second prong of the copyright infringement inquiry and noting that it is often applied where "there is a high degree of similarity between the works but the copying is limited").

(fragmented similarity test "focuses upon copying of direct quotations or close paraphrasing").

47. Notably, just like the substantial similarity test under the Ninth Circuit precedent, the fragmented literal similarity test "ask[s] whether the copying is quantitatively and qualitatively sufficient to support a finding of infringement," and "the copying of even a 'relatively small' quantitative 'portion of the pre-existing work may be substantial if it is of great qualitative importance to the [pre-existing] work as a whole.'" *May*, 399 F. Supp. 3d at 180-81; *accord Newton*, 388 F.3d at 1196, and *Baxter*, 812 F.2d at 425.

48. Clearly, the literal copying of the sequence combining the first two phrases in a song's chorus and closely paraphrasing the two phrases combined in the second part of the lyrical sequence at issue here qualifies as infringement under the above-discussed comparison structure.

49. In any event, even if analyzed under the set of "narrative" comparison factors, there are enough similarities to withstand summary judgment, and the claimed differences do not defeat them.

50. In this connection, it is important to note that Defendants' focus on painting the identified similarities in the songs' objective elements as supposedly too abstract or general crosses into the subjective element of the intrinsic test that does not belong on summary judgment. *Accord Shaw* 919 F.2d at 1360-61 (observing that "[t]he imagery presented in a literary work may also engage the imagination of the audience and evoke an emotional response," and, since "each of us differs, to some degree, in our capability to reason, imagine, and react emotionally, ***subjective*** comparisons of literary works that are objectively similar in their expression of ideas ***must be left to the trier of fact***").

51. Accordingly, summary judgment cannot be granted. *See Andreas*, 2016 WL 11499657, at *18 (denying summary judgment: "[W]hile the setting, pace, and general plots of the works are different, they include some similar characters, mood, and story elements. Summary judgment in a copyright case is proper only if 'no reasonable juror' could conclude

that the works are substantially similar in their ideas and expression. In this case, while there are substantial differences between the works, there is sufficient similarity between certain characters and plot elements of the works to create at least a triable issue regarding whether [one] is substantially similar to the [other]."), citing *Benay*, 607 F.3d at 624 ("[T]he [extrinsic] test focuses on articulable similarities …."); *see also Shaw*, 919 F.2d at 1362-64 (where the two literary works dealt with the same idea of "a man who will equalize the odds, a lone man working outside the system to protect his underdog clients and to resolve their predicaments as a part of his rough notion of justice," reversing summary judgment and finding that while there were "significant similarities and differences," the works exhibited, *inter alia*, "[t]he most striking similarity" between "central characters," which was "their self-assuredness, and unshakeable faith in the satisfactory outcome of any difficult situation;" accordingly, "reasonable minds might differ as to the substantial similarity between the protected *ideas*") (original emphasis).

**III. <u>Further Issues Are Beyond Allowed Scope</u>**

52. Defendants also argue that the claimed lack of substantial similarity here is consistent with an independent creation. This is beyond the scope of discovery conducted to date (and hence Defendants' motion) because the scope is limited to the "extrinsic test," which measures substantial similarity only. (*See* Dkt. No. 87 at 2:9-10.)

DATED: August 23, 2021 BY: GERARD FOX LAW P.C.

/s/ *Marina V. Bogorad*
Gerard P. Fox
Marina V. Bogorad
*Attorneys for Plaintiffs*
SEAN HALL D.B.A. GIMME SOME HOT SAUCE MUSIC and NATHAN BUTLER D.B.A. FAITH FORCE MUSIC