GERARD FOX LAW P.C.
Gerard P. Fox (SBN 151649)
gfox@gerardfoxlaw.com
Marina V. Bogorad (SBN 217524)
mbogorad@gerardfoxlaw.com
1880 Century Park East, Suite 1410
Los Angeles, CA 90067
Telephone: (310) 441-0500
Facsimile: (310) 441-4447

*Attorneys for Plaintiffs*
SEAN HALL D.B.A. GIMME SOME HOT
SAUCE MUSIC AND NATHAN BUTLER
D.B.A. FAITH FORCE MUSIC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SEAN HALL d.b.a. GIMME SOME HOT SAUCE MUSIC, *et al.*,

Plaintiffs,

vs.

TAYLOR SWIFT, *et al.*,

Defendants.

Case No. 2:17-cv-06882 MWF (ASx)

**DECLARATION OF LOREN KAJIKAWA IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Date: September 27, 2021
Time: 10:00 a.m.
Ctrm: 5A

Action Filed: September 18, 2017

# DECLARATION OF LOREN KAJIKAWA

I, Loren Yukio Kajikawa, declare and state as follows:

1. I am over the age of 18 and I have personal knowledge of the following facts and could competently testify to these facts if called upon to do so.

2. I am an academic musicologist, a tenured professor of music at The George Washington University, and hold an M.A. and Ph.D. in Musicology. I am also the chair of the Music Program at George Washington University's Corcoran School of the Arts & Design. Additionally, I am the co-editor of the Tracking Pop series at the University of Michigan Press as well a member of the editorial board for the Journal of Popular Music Studies. My areas of study and writing include analyzing and historicizing U.S. popular music genres, as well as analyzing sonic properties of music and poetic qualities of song lyrics in American popular music. My scholarship also focuses on areas of American music of the twentieth and twenty-first centuries with focuses on African American music, rap, hip-hop, and the impact of race and politics on music. Attached to this Declaration as **Exhibit 1** is a true and correct copy of my CV.

3. I was asked in connection with this matter to perform a comparative musicological analysis of the lyrics in *Playas Gon' Play* ("*Playas*") and *Shake It Off* ("*Shake*"). Attached to this Declaration as **Exhibit 2** is a true and correct copy of my initial Report dated April 30, 2021, setting out my qualifications, analysis of the lyrical works, *Playas* and *Shake*, and my conclusions as to those lyrical works.

4. In this connection, I would like to briefly respond to Defendants' "facts" concerning my understanding of the "extrinsic" test of substantial similarity under the Ninth Circuit precedent. I have been asked to perform a musicological analysis that objectively compares the allegedly infringed expression with the allegedly infringing expression. I have not been asked to render a legal analysis, such as, for example, determine which comparison model should be applied as a matter of copyright law.

5. I also was asked to review and consider the Reports of Defendants' designated expert witnesses, Dr. Lawrence Ferrara, Prof. Nathaniel Lewis, and Prof. Marcyliena Morgan,

dated April 30, 2021. Attached to this Declaration as **Exhibits 3, 4 and 5** are true and correct copies of my Rebuttal Reports, dated May 21, 2021, which set out my conclusions regarding the Reports of, respectively, Dr. Ferrara, Prof. Lewis, and Prof. Morgan.

6. My initial Report and my attached Rebuttal Reports are each made a part of and incorporated in this Declaration, and I can and do testify to my statements, analyses, and conclusions in my initial Report and Rebuttal Reports.

## SUMMARY OF CONCLUSIONS

7. As set out in more detail in my initial and Rebuttal Reports, and by applying objective analyses and established and recognized principles applicable to the study of musicology and, in particular, lyrics as found in popular songs, I conclude that there are substantial similarities in the lyrics of the respective choruses of *Playas* and *Shake*. Both songs use nearly identical words in nearly identical ways as the basis for the most memorable part of each song (the chorus). Moreover, this usage is distinct from the way the words "player" and "hater" appear in prior songs. In both songs, the phrases in question begin a four-part sequence that depicts a world full of untrustworthy people. In both songs, this sequence serves as a foil for the songs' main theme: that we should not be concerned with what other people say and do, trusting in ourselves instead. In both songs, the substantial similarity is the particular combination of the ordinary phrases, sequenced in similar parallel way, with the first part copied almost verbatim, and the second part closely paraphrased. Accordingly, it is my opinion that the lyrics of Plaintiffs' chorus represent an act of substantial creativity worthy of protection, and that Defendants' song was likely copied from Plaintiffs' song, given the remarkable similarities in lyrical form and function that are unlikely to be purely coincidental or arise from an independent creation.

### A. Originality

8. As set forth in my initial and Rebuttal Reports, the chorus in *Playas* engages in wordplay (players play, haters hate, ballers ball, callers call) to convey the song's central message: the world is full of untrustworthy people, but we should ignore them and trust in ourselves instead. The phrases "players, they gon' play" and "haters, they gonna hate" are

not simple statements of fact; nor are they intended to label particular individuals as "players" or "haters." Instead, they serve a poetic function that conjures a world of untrustworthy people who threaten otherwise healthy relationships. This poetic sequence, through the use of various literary devices such as tautophrases and parallelisms, is an original innovation through which the songwriters express the importance of trust in maintaining healthy relationships.

9. Plaintiffs' usage of tautophrases (players play/haters hate) and parallelism, which have a history of usage in the English language, does not mean that these standard literary devices cannot be used as the building blocks of something creative and original. Indeed, it is Plaintiffs' use of these creative devices as building blocks of a particular poetic combination that forms a creative and original expression, which consists of (at least) the following elements, exhibiting Plaintiffs' choices to: (1) combine tautological phrases, (2) via parallel lyrics, (3) each bearing grammatical structure "Xers gonna X," (4) use four such phrases in the chorus, (5) two of which are variations on playa/hater phrases invoked to open the chorus, (6) each dealing with groups of "Xers" that bear certain negative connotations, (7) with the combined effect of expressing a larger idea that we should not be concerned with what other people say or do, trusting in ourselves instead. Accordingly, it is Plaintiffs' unique ***combination*** of various commonplace elements (phrases, literary devices) that makes their work original.

10. Similarly, while the terms "player" and "hater" were in usage prior to *Playas*, there are clear differences between their prior use and the way the words are used in *Playas.* The terms "player" (playa), "hater" (hata) and "player hater" (playa hater) have roots in twentieth-century African American Vernacular English ("AAVE") but rose to prominence in hip hop and R&B music in the late 1990s. And while the words themselves are not original or new, the originality and creativity of Plaintiffs' work resides in the particular way these words were used in the service of a larger idea.

11. For example, the nouns "player," "hater," and "player hater" have historically been used to portray the singer or another person in a positive or negative light. In contrast,

Plaintiffs were first to use these words to begin a four-part lyrical sequence that anchors the chorus and expresses a larger idea: the singer of the song is neither a player nor hater, but a third party trying to stay above the fray. The chorus in *Playas* engages in wordplay (players play/haters hate/ballers ball/callers call) to convey the song's central message: the world is full of untrustworthy people, but we should ignore them, trusting in ourselves instead. Accordingly, Plaintiffs' chorus takes words that may seem mundane or commonplace and transforms them into a catchy way of saying something about the state of the world and it is this poetic use of language that transcends the original meaning of the words "player" and "hater" as they have previously appeared in song lyrics.

12. In her Rebuttal Report, Prof. Morgan notes that the fact that words, phrases and conventions are within AAVE does not mean that every use of them is new, creative or unique. (Morgan Rebuttal, at 3.) While I agree with Prof. Morgan on this point, I disagree that Plaintiffs' ***particular use*** of the phrases "player/playa" and "hater/hata" is unoriginal. Although one can find the words "player" and "hater" in lyrics before 2000, there are clear differences between these examples and the way these words are selected, arranged and sequenced in Plaintiffs' chorus. Thus, as set forth in my initial and Rebuttal Report, it is Plaintiffs' combination of these unprotected elements found in prior art (the playa/hater phrases), selected and arranged in a unique way, that is original to *Playas*.

13. The above-described principles also compel my conclusion that Plaintiffs' chorus is an original lyrical sequence. One's employment of ordinary phrases as part of a creative lyrical sequence does not defeat its originality, especially where the sequence is copied almost literally for one part and closely paraphrased for another, as it is here.

**B. Substantial Similarity**

14. As set forth in my initial and Rebuttal Reports, there are substantial similarities between Plaintiffs' chorus, and the way Defendants' chorus combines tautological phrases, does so through parallel lyrics, uses grammatical model "Xers gonna X," combined in a four-part structure, chooses to begin that structure with the exact two phrases that Plaintiffs chose (players gonna play/haters gonna hate), selects groups of "Xers" that bear negative

connotations, and makes it the heart of the song by delivering essentially the same message – that we should not be concerned with what other people say and do, trusting in ourselves instead.

15. Significantly, Defendants' chorus not only uses the same words and the same phrases, but it does so in combination and as part of a similar four-part poetic sequence that expresses a similar idea. And while Defendants' chorus includes additional lyrical lines breaking up the first and the second part of the four-part tautological sequence in question, this interruption is insignificant because it represents merely a change in geography, as the same message that appears in the middle of the sequence in Defendants' chorus ("I'm just gonna shake (shake x4)/I shake it off, I shake it off") also appears at the end of Plaintiffs' chorus ("That ain't got nothing to do with me and you/That's the way it is; that's the way it is"). Both sets of lyrics (the intervening lyrics in Defendants' song and the lyrics at the end of the chorus in Plaintiffs' song) offer an affirmative response to the four-part poetic sequence, communicating resolve against the existential threats they conjure.

16. Furthermore, while the second set of couplets in the chorus of each song use slightly different wording, they share the same phraseology and are both part of a four-part sequence of tautological phrases meant to paint a picture of deceitful people and/or a hostile world that pose an existential threat to the speaker. Not only do both choruses use the words "player" and "hater" to position the singer above the fray, but Defendants also adopt a four-part sequence, substituting "heartbreakers" and "fakers" for "ballers" and "shot callers" to make the same point: the world is full of untrustworthy people, but we should ignore them. As such, these couplets are entirely similar in form and function.

17. Finally, while Defendants claim their repetition of "play" and "hate" in their song's chorus is unique and makes it different from Plaintiffs' chorus, these added repetitions do not alter the basic poetic structure and meaning of the four-part sequence which is remarkably similar to that of Plaintiffs' chorus. Thus, I do not find this to be a substantial difference between the two works, especially in light of their significant similarities.

18. Further structural similarities in *Playas* and *Shake* are evident when examining

the relationship between the songs' verses. In both songs, the verses name particular threats posed by the untrustworthy people referenced in the chorus. In fact, the first verses of both songs call attention to people that spread rumors about the singer. And both songs feature speakers determined to maintain healthy relationships by staying above the fray and ignoring these untrustworthy people. In the case of *Playas*, it is a relationship with a romantic partner; in *Shake*, it is a relationship with oneself. What is more, both speakers' determination is communicated by their song's chorus, the central part of both songs and where infringement is alleged – namely, both speakers describe gossipy people using similar language ("players gonna play, haters gonna hate") through a similar four-part poetic sequence that conveys the same fundamental message: ignore the untrustworthy people and do as you please.

19. As noted in my initial and Rebuttal Reports, despite their lyrical similarities, the two songs do not otherwise *sound* much alike. However, the differences in the songs' musical structure, harmony, rhythm, and melody, discussed at great length by Dr. Ferrara, are irrelevant to this case. This distinction, between the music and the lyrics as separate copyrightable elements, is critical in this case because Plaintiffs have only claimed infringement of the sequence of words here. As such, neither the melody, rhythm nor harmony need to be significantly similar for the accompanying lyrics to be so.

20. Finally, while Professor Lewis points to alleged differences in the lyrics at issue by comparing the plot, sequence of events, theme, setting, mood, pace and dialogue, such a comparison is best utilized for ***narrative*** literary works. However, the two works at issue in this case are ***non-narrative*** works. As such, it would be pointless to compare these works by elements that are ill-fitted to their nature. Given Defendants' literal copying of the sequence combining the first two phrases in Plaintiffs' chorus and their closely paraphrasing of the two phrases combined in the second part of the lyrical sequence at issue here, these non-narrative lyrical sequences are strikingly similar, let alone substantially so.

21. Nevertheless, even if analyzed under the set of narrative comparison factors, as Professor Lewis has done here, there are enough substantial similarities to conclude that not only are Plaintiffs' lyrics original and creative, but they are also substantially similar to those

found in Defendants' work.

a. Both songs share a protagonist facing a similar existential threat – namely, individuals that spread rumors about her. These gossipy characters (the "people") are mentioned in the first verse of both songs. The protagonist in both songs is positioned against the world, determined to maintain healthy relationships (be it with a romantic partner or with herself) by staying above the fray and ignoring untrustworthy people. Significantly, both speakers' determination is communicated by their song's chorus, which is where infringement is alleged. Simply put, both songs' respective speakers describe gossipy people using similar language ("players gonna play, haters gonna hate") through a similar four-part poetic sequence that conveys the same fundamental message: ignore untrustworthy people and do as you please.

b. With respect to the plot, Professor Lewis seemingly ignores the obvious similarities between the two songs (the feelings that each narrator describes and her decision not to give into criticisms and hold true to what she believes) while overstating their differences. Simply put, both works describe a speaker who receives criticism from the outside world and is determined not to let that criticism impact her.

c. While I do not believe comparing the sequence of events here is useful or relevant in determining the songs' overall similarity, as both songs center on the communication of feelings rather than on a series of events, there are some sequencing similarities, including the introduction to both songs' discussion of the criticism the speaker receives from outsiders. Notably, in highlighting the songs' differences while glossing over their similarities, Professor Lewis describes the sequence of events in both songs without mentioning the events that occur in the central part of both works (the chorus), where each speaker expresses a remarkably similar

feeling in rising above and moving beyond the criticisms the speaker faces, using a remarkably similar four-part poetic sequence.

d. The basic theme of both songs (maintaining healthy relationships, be it with a romantic partner or with oneself) in the face of social adversity is undeniably similar. And while the theme of romantic love, like individual freedom, is commonly found in music and the arts, it is the poetic way of expressing that theme, using remarkably similar words and remarkably similar four-poetic sequence, that is of import here.

e. As for the songs' dialogue or style, both choruses employ the same colloquial, AAVE-derived terms, and use the same words and the same phrases in combination and as part of a similar four-part poetic sequence that expresses a similar idea. In his analysis, Professor Lewis overlooks the shared wordplay and other literary devices in the choruses, while highlighting differences that have no bearing on the central charges in this case.

f. Finally, while both songs come across as playful and affirming, the differences in mood highlighted by Professor Lewis, as well as the pace and setting of the works in question, are simply insufficient to overcome the remarkable similarities in the songs' choruses. By highlighting these differences, Professor Lewis overlooks how central the chorus (the most memorable part) is to each song. Similarly, while Dr. Ferrara notes in his Rebuttal Report that 81 percent of the words in Plaintiffs' chorus are different from the words in Defendants' chorus, it is the similarities in the chorus' lyrics that should be given greater weight due to the central role they play in the most memorable part of each song.

22. Accordingly, in my opinion, there is clear evidence that not only are the lyrics in question are original and creative, but they are substantially similar to those found in Defendants' chorus. Given the high degree of similarity that I have observed, it is unlikely,

in my opinion, that Defendants' chorus is so similar to Plaintiffs' chorus just by way of pure coincidence or through independent creation. While there are examples of "playa"/"hater" phrases in the post-2000 culture as well, and the phrases may have become even more common than they were prior to 2000, the particular four-part sequence in question, selected and sequenced in Plaintiffs' way, never appeared again until *Shake*'s chorus.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 22, 2021.



LOREN YUKIO KAJIKAWA