# EXHIBIT 4



The Massarsky Group at
Citrin Cooperman Advisors LLC

50 Rockefeller Plaza
New York, NY 10020
**T** 212.697.1000 **F** 212.202.5107
citrincooperman.com

Includes information designated

~~CONFIDENTIAL~~

Pursuant to Stipulated Protective Order

# UNITED STATES DISTRICT COURT
# DISTRICT OF CALIFORNIA WESTERN DIVISION

| | |
|---|---|
| Sean Hall, dba Gimme Some Hot Sauce Music; Nathan Butler, dba Faith Force Music<br><br>Plaintiffs,<br><br>v.<br><br>Taylor Swift; Karl Martin Sandberg, pka Max Martin; Karl Johan Schuster, pka Shellback; Sony/ATV Music Publishing LLC, now Sony Music Publishing (US) LLC; Kobalt Music Publishing America Inc.,; Big Machine Label Group, LLC; Universal Music Group, Inc.<br><br>Defendants. | Case No. 2:17‑cv‑06882 MWF (ASx) |

May 24, 2022

EXPERT REPORT OF BARRY M. MASSARSKY

Barry M. Massarsky

Partner and Co‑Practice Leader, Music Economics and Valuation

Exhibit 4 - 84

# TABLE OF CONTENTS

I.      Introduction
        A.   Qualifications ................................................................................................... 3
        B.   Assignment ....................................................................................................... 5

II.     Summary of Opinions ...................................................................................... 6

III.    Theory of Attribution for Determining Damages ......................................... 7

IV.     Economics of Music Copyrights .................................................................... 7

V.      The Success of Taylor Swift ........................................................................... 9

VI.     The Apportionment Valuation ...................................................................... 10
        A.   Ryan Adams' *1989* Version of Taylor Swift's *1989* ................................. 11
        B.   Other Commercially Released Versions of "Shake It Off" ....................... 12

VII.    Apportionment Results .................................................................................. 12

VIII.   Earning Adjustments ...................................................................................... 14
        A.   Profit & Loss Statements .............................................................................. 14
        B.   Adjusting Net Profits Based on the Taylor Swift Effect ........................... 15

IX.     Conclusion ...................................................................................................... 19

X.      Litigation Experience ..................................................................................... 19

XI.     Documents and Materials Relied Upon ....................................................... 21

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 85

CONFIDENTIAL                                                                3

## I.    INTRODUCTION

### A.    QUALIFICATIONS

1.  I am by training and profession a music industry economist. Throughout my 40-year career in the study of music, I have specialized in performing economic and market analyses for both sound recordings and musical works.

2.  I earned a Bachelor of Arts degree, cum laude, from Boston University in 1977, which included numerous courses in economic analysis. I earned a Masters of Business Administration degree from Cornell University in 1981. My MBA studies had an emphasis in managerial and industrial organization economics.

3.  From 1977 to 1979, I was employed as a litigation economist with the United States Department of Justice. My role was to conduct economic analyses in connection with the government's antitrust suit against IBM.

4.  I have been studying music use trends on commercial radio for four decades. From 1981 through 1992, I was employed as an economist by the American Society of Composers, Authors and Publishers (ASCAP). In 1987, I was promoted to Senior Economist, the position I held until my departure from ASCAP in 1992.

5.  In 1992, I started an economic consulting firm named Barry M. Massarsky Consulting, Inc. My firm provided advisory consulting services to a host of music industry clientele relating to strategies affecting music licensing and royalty earnings. The firm employed three other economists including my partner, Ms. Nari Matsuura.

6.  In 2022, we sold Barry M. Massarsky Consulting, Inc to Citrin Cooperman, I am now a Partner and co- Leader of its Music Economics and Valuation Services Practice.

7.  Beginning in 1992, I provided consulting services for the Recording Industry Association of America (RIAA) with respect to performing rights matters. Through these consulting services for the RIAA, I have become closely acquainted with the business conditions and industry matters that affect record companies' decision making.

8.  In 2001, I began advising a new performance rights collective, SoundExchange, which directs royalty payments to artists and recording companies. (SoundExchange was initially a division of RIAA and was spun off as an independent organization in 2003.)

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 86

CONFIDENTIAL                                                                    4

9. Through my new role at Citrin Cooperman, I continue to serve several of the music publishing companies including Universal Music Publishing Group, SONY Music Publishing, Warner Chappell, Spirit Music Group, Round Hill Music, Primary Wave and Reservoir Media. My evaluation of royalty streams for these firms spans all significant music genre classifications. Further, my firm has provided consulting services for well-known composer catalogues such as Marvin Hamlisch, the Estate of George Gershwin, Diane Warren, the Guess Who, Pete Townshend, Lionel Richie, Paul Simon, Green Day and many others.

10. Since 1993, I have provided consulting services to SESAC, a performing rights competitor to ASCAP, including the economic appraisal of music repertory valuation and the modeling of innovative music license approaches.

11. From 2000 to 2013, my firm had also directly consulted for Nielsen BDS and SoundScan. We continue to be familiar with their services for the music industry.

12. I have also testified in the following cases: United States v. ASCAP, In the matter of the Application of Salem Media of California, Inc. and New England Continental Media, Inc. [Civil Action No. 13-95 (WCC)]; and In Re Determination of Statutory License Terms and Rates for Certain Digital Subscription Transmissions of Sound Recordings (Copyright Office Library of Congress) (CARP DSTRA Docket No. 96-5).

13. My firm is also recognized as a premier music catalog valuation firm for all forms of music asset transactions within the music industry. The lending capital sources for these transactions, the commercial banks, hold us on their short list as "a preferred valuation team for the music industry." A significant portion of all music publishing copyright transactions are handled by my office including overall portfolio valuations of the enlarging music investible funds marketplace such as Hipgnosis Songs, Reservoir Media, Spirit Music Group, Round Hill Music, Primary Wave, Influence Media, Shamrock Capital and Peer.

14. I have authored "The Operating Dynamics behind ASCAP, BMI and SESAC, The U.S. Performing Rights Societies," which appeared in Technological Strategies for Protecting Intellectual Property in the Networked Multimedia Environment, Volume 1, Issue 1, January 1994, pp. 217-225.

15. I have often been quoted in the media concerning business developments and transactions within the music industry, including 2018 in The New York Times. I was also quoted in Forbes and in 2010, I was interviewed on The Today Show regarding the value of the Michael Jackson estate.

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 87

As recently as January 19, 2022, I was featured in The Wall Street Journal. I have also been quoted in the national media about the music industry.

16. I have spoken at several professional seminars including the Copyright Society of the South, the Association of Independent Music Publishers (AIMP) for both the Nashville and Los Angeles branches, the CMJ Music Forum in New York and The Hollywood Reporter/Billboard Film/TV Music Conference in Los Angeles, as well as private bank presentations for SunTrust and City National Bank. I have been asked to speak at the South by Southwest music festival in Austin, Texas. I frequently appear as a speaker at educational events and continue to be sought out for public speaking events that focuses on issues concerning the music industry.

### B.    ASSIGNMENT

17. In their Complaint, Plaintiffs, Sean Hall and Nathan Butler, allege that the copyright in the song, "Playas Gon' Play," is infringed because, they contend, the lyrics "Playas, they gonna play / And Haters, they gonna hate," a version of that phrase, "The playas gon' play / Them haters gonna hate,"  and two other tautological phrases, are allegedly copied in the song, "Shake It Off" written by Taylor Swift, Karl Martin Sandberg (Max Martin) and Karl Johan Schuster (Shellback) and included in Taylor Swift's 2014 album entitled *1989.*

18. I have been asked by Counsel for Taylor Swift and related parties to provide my analyses and opinions regarding the apportionment of profits from "Shake It Off" attributable to factors other than the allegedly copied lyrics.

19. I have not been asked to form an opinion on the legal issue of whether the Defendants are liable for copyright infringement; rather, I have been asked to assume, solely for the purpose of my analysis, that the Plaintiffs will be able to establish liability and, based on that assumption, determine the appropriate measure of damages that would be available to them.

20. I am being compensated at my hourly rate of $725 per hour, which also is my hourly rate for testifying in deposition and trial. In addition, I am being supported by my colleague, Mr. Elon Altman, who is Director with the Music Economics and Valuation Practice at Citrin Cooperman. Mr. Altman's hourly fee is $450.

21. My compensation is not dependent on my opinions expressed or on the outcome of this case.

22. Appendix B lists documents I have considered for this Report. Additional documents, testimony,

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 88

CONFIDENTIAL                                                                                         6

or other information may cause me to update my conclusions.

## II.    SUMMARY OF OPINIONS

23. For purposes of this analysis only, I have worked on the *assumption* that the Plaintiffs' disputed infringement claim is valid, and I have reached the following conclusions about the proper apportionment of value to be assigned for the commercial success of the track, "Shake It Off":

    a. The star branding quality of Taylor Swift, including the marketing and distribution support for Taylor Swift's recordings, is largely responsible for the hit making caliber of "Shake It Off." I refer to the impact that Taylor Swift creates relating to the commercial success of a song or track featuring her performance, as the Taylor Swift Effect (TSE)—or the economic measurement of the importance that this superstar holds on the retail income of a commercially released sound recording and composition.

    b. To evaluate the TSE as well as other factors such as "Shake It Off's" production elements, I have compared the commercial performance of "Shake It Off" with that of the version of "Shake It Off" released by another commercially successful artist, Ryan Adams, and which includes the allegedly infringing words, but with strikingly different commercial results.

    c. That comparison and the strikingly different commercial results demonstrate that the original "Shake It Off's" commercial success is overwhelmingly due to factors other than the allegedly copied words, including Ms. Swift's performance, artist branding, production elements, and the marketing and distribution support for the song.

24. The inescapable conclusion of this comparable is the overshadowing impact that the TSE has on the sales volume accomplishments of her songs.

25. As a consequence, that factor as well as production elements, which are not allegedly infringing, need to be deducted from the profits earned by Taylor Swift's "Shake It Off."

26. This results in a ▉% apportionment for first assessing the relative value of the lyrics and music

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 89

CONFIDENTIAL                                                    7

of "Shake It Off" versus other factors.  In other words, ▉▉% of "Shake It Off's" profits are attributable to factors other than "Shake It Off's" lyrics and music.

27. As shown below, applying the foregoing to the ▉▉▉▉ in total "Shake It Off" profits reported by Defendants, leads to the arithmetic value of ▉▉▉ as the portion of "Shake It Off" profits attributable to "Shake It Off's" lyrics and music.

28. Further re-apportionment would be necessary as the Plaintiffs' claim is only for a portion of "Shake It Off's" lyrics.

## III.    THEORY OF ATTRIBUTION FOR DETERMINING DAMAGES

29. Title 17 U.S.C. Section 504(b) provides that a successful copyright plaintiff's potential remedies include the "profits of the infringer that are attributable to the infringement…"  It further provides: "in establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenues, and the infringer is required to prove his or her deductible expenses."

30. Further, the infringer is entitled to deduct profits attributable to factors other than the plaintiff's work.

31. In determining the profits which may be awarded under the Copyright Act in the event a defendant is found liable, one must first determine the revenues that are attributable to the allegedly infringing work, the song, "Shake It Off."

32. The next conventional step is to assign the deductible expenses to the song's revenues to determine the profits subject to a copyright infringement claim.

33. The final step is to identify the portion of the defendant's profits attributable to factors other than the copyrighted work.

34. In the case of the Plaintiffs' claim to a certain few words of the lyrics contained within the song, "Shake It Off,'' and considering the towering value of the artist, Taylor Swift, in creating this song's financial success, my determination is that the plaintiffs hold, if anything at all, only a de minimis claim to the overall profits of the song, "Shake It Off."

## IV.    ECONOMICS OF MUSIC COPYRIGHTS

35. A musical album consists of multiple songs, or tracks, on a CD or digital album. "Shake It Off" is

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 90

CONFIDENTIAL                                                                                                    8

one of the 13 tracks that comprise Taylor Swift's album *1989*.[1]

36. U.S. copyright law recognizes the parallel ownership rights of both *musical compositions* and *sound recordings*. The musical composition, or song, is the creative work of composers (or songwriters) and lyricists. "Shake It Off," the song at issue in this case, is both a track and a composition.

37. From my detailed experience in the valuation of music catalogues for asset purchase, I can firmly establish that for the written composition, the three major royalty bearing component segments are performance, mechanical and synchronization rights.

38. Performance royalties are conveyed to the songwriters and music publishers of the music copyright through intermediaries such as ASCAP, BMI and SESAC, commonly referred to as Performance Rights Organizations (PROs)

39. In 2015, the dominant source of revenue earned by a songwriter and his or her music publisher came from commercial radio performances and, in certain circumstances, the revenue that the PROs apply from general license venues such as bars and restaurants.

40. Mechanical rights refer to the royalties for the use of music compositions in physical or digital phonorecords sold and whose rates are statutorily determined. In 2015, songwriters and music publishers generated most of their mechanical income from physical record sales, digital downloads, and audio streaming services.

41. Synchronization rights refer to a one-time commercial transaction between the music publisher and the producer of a fixed audiovisual program to include or "synch" the music into the audiovisual content, primarily, film, television, and commercial programming.

42. For the "master" or sound recording revenues, the primary revenue streams for artists and their record companies are physical sales of the recording, the digital licensing of audio or audiovisual streaming uses, and other ancillary performance, the licensing of sound recordings and neighboring rights including SoundExchange.

43. These are the revenue sources to be examined for determining the possible infringing value of earnings for the song, "Shake It Off."

44. Taylor Swift's recording of "Shake It Off" spent 4 weeks at #1 on the Billboard Hot 100, was #13

---

[1] There were also deluxe editions released with 16 and 19 tracks.

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 91

on the 2014 Hot 100 year-end chart (despite not being released until late August of that year) and had enough staying power to be ranked #18 on the 2015 Hot 100 year-end chart. In Billboard's 2010-2019 decade-end Hot 100 chart, "Shake It Off" was ranked #34. "Shake It Off" was certified Diamond (10x Platinum) by the RIAA.

In 2014 and 2015, when "Shake It Off" was experiencing its peak performance, the recorded music marketplace was quite different from the marketplace of 2021[2]. According to the Recording Industry Association of America's Year-End Music Industry Revenue Reports, in 2014 and 2015, streaming revenue made up 27% and 34.3% of U.S. recorded music industry revenue, respectively. By comparison, in 2021 streaming made up 83% of industry revenue (see Table 1 below). Therefore, it is very important in my analysis to compare works that came from the same 2014-2015 timeframe as "Shake It Off."

45. **Table 1**. 2014, 2015, and 2021 RIAA Year-End Music Industry Revenue



## V.     THE SUCCESS OF TAYLOR SWIFT

46. Taylor Swift, as a top selling artist and songwriter, is clearly one of the most distinguished talents in music for the 2000s. Even before the release of her biggest album, *1989* in 2014, Taylor Swift was one of the most highly awarded musical artists, as evidenced by this truncated list of her awards at that time:

---

[2] 2021 is the most available year of industry results.

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 92

CONFIDENTIAL                                                                  10

a.  Taylor had won 7 GRAMMY Awards prior to the release of the album *1989*, including GRAMMY Album of the Year, making her the youngest artist to receive such an award at the time.

b.  Taylor had earned 15 American Music Awards prior to the release of *1989*, including Artist of the Year in 2009, 2011, and 2013.

c.  Taylor Swift had won 12 Billboard Music Awards prior to the release of *1989*, including Top Artist in 2013.

d.  Through her performance rights organization, BMI, she won the coveted Country Song of The Year award in 2008, 2009 and 2010.

e.  To mark her great achievement in songwriting, Taylor Swift was awarded the Songwriters Hall of Fame's Hal David Starlight Award in 2010.

f.  Taylor Swift had been named the NSAI's Songwriter-Artist of the Year six times prior to the release of the album *1989,* in 2007, 2009, 2010, 2011, 2012, and 2013

47. From this waterfall of prominence in culture and specifically the music community, Taylor Swift pulls tremendous individual commercial appeal which remains true even apart from the actual lyrics and music composed for a specific recording.

48. To test this thesis, I organized a special study of other commercial artists who released versions of the song, "Shake It Off."

49. This study will help me isolate and value factors that contribute to "Shake It Off's" success but which are not alleged infringement, including the Taylor Swift's performance and the impact she commands as a special artist, the production quality value, in economic terms, brought by Max Martin and Shellback to the original recording of "Shake It Off," and the marketing and distribution of "Shake It Off."

## VI.    THE APPORTIONMENT VALUATION

50. I conducted the comparative analysis with data from MRC Data Music Connect, which provides weekly reports on any given track or album's digital sales, physical sales, on-demand audio

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 93

CONFIDENTIAL                                                                11

streaming, on-demand video streaming, programmed streaming, and Broadcast Data Systems (BDS) radio airplay. Music Connect tracks U.S. activity only. I then related these comparative unit statistics to the actual profit and loss summaries provided for the Taylor Swift version of "Shake It Off."

51. Across several key metrics, the activity of Taylor Swift's "Shake It Off" was compared to the activity of the Ryan Adams version of "Shake It Off," the most comparable of all the versions of "Shake It Off" released by other artists. The difference between the activity of the two versions is the value to the song that can be attributable to factors that are not allegedly infringing, including Taylor Swift's performance and her star power, the production of Max Martin and Shellback, and the marketing and distribution support for Taylor Swift's "Shake It Off."

### A.  Ryan Adams' *1989* Version of Taylor Swift's *1989*

52. Ryan Adams is a well-known alternative music artist in the United States and has achieved success in the music industry.

53. Ryan Adams has earned seven GRAMMY nominations throughout his career.

54. In 2015, Ryan Adams released his own album titled *1989* and which included versions of each track in Taylor Swift's *1989* album, including his version of Taylor Swift's "Shake it Off."

55. It is important to note that Ryan Adams' version of "Shake It Off" was released in the same music industry economic marketplace as Taylor Swift's original "Shake It Off."

56. It also is important to note that Ryan Adams' version of "Shake It Off" includes, among other lyrics in Taylor Swift's "Shake It Off," the lyrics that Plaintiffs allege in their Complaint are infringing, namely "Cause the players gonna play," "the haters gonna hate," and two more tautological phrases, "Heartbreakers gonna break," and "the fakers gonna fake," each without Taylor Swift's "Shake It Off's" repetition of the last word in each phrase.

57. As a result, Taylor Swift's "Shake It Off" and Ryan Adam's version of "Shake It Off" both include the allegedly infringing lyrics, plus other lyrics and music that Plaintiffs do not allege are infringing, and are different in that, for example, Taylor Swift's "Shake It Off" is performed by Taylor Swift, was produced by Max Martin and Shellback, and had its own marketing and

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 94

CONFIDENTIAL                                                                                    12

distribution support.

58. The commercial release of Ryan Adam's version of the album *1989*, including "Shake It Off,"
with the performance of Ryan Adams rather than Taylor Swift, with different production elements
and artistic arrangements, and with his own record label, PAX AM, to market and distribute,
achieved a debut status in 2015 of #7 in the Billboard 200 chart, one position ahead of Swift's
*1989* which was in its 48th week on the chart.

59. Entertainment Weekly rated Ryan Adams' version of *1989* in the Top 40 of albums released in
2015.

### B. Other Commercially Released Versions of "Shake It Off"

60. There were at least eleven other commercially released versions of "Shake It Off." Most of these
versions were by relatively unknown artists.  Although they included the performance of the
"Shake It Off" musical composition, they had only minor streaming activity and activity on radio
was non-existent. Two of the versions had modest success but did not work well as comparable to
Taylor Swift's "Shake It Off" because they failed to meet the relevant market criteria. One of those
versions was from the *Sing* motion picture soundtrack, a very popular children's film. Some
portion of its success is tied to the unique promotional impact of the film. The other version that
did not work well as a comparable was by Kidz Bop Kids, a popular brand of "cover" songs
marketed specifically to young children.

### VII.   APPORTIONMENT RESULTS

61. Taylor Swift's "Shake It Off" activity for the first 52 weeks was compared to the first 52 weeks of
Ryan Adams' "Shake It Off" for the following metrics in Music Connect: Digital Song Sales,
Streaming On-Demand Audio, Streaming On-Demand Video, Total Streaming Programmed,
Airplay Audience, Physical Album Sales, and Digital Album Sales.

    a. Physical Album Sales, and Digital Album Sales refer to the album *1989* and not to the song
    – "Shake It Off" – specifically.

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients'
business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America,
which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 95

~~CONFIDENTIAL~~                                                                13

62. **Table 2.** Taylor Swift and Ryan Adams MRC Music Connect Comparison

| Recording | Release Date | MRC Music Connect Activity in Each Song's First 52 Weeks | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | Digital Song Sales | Streaming On-Demand Audio | Streaming On-Demand Video | Total Streaming Programmed | BDS Airplay Audience | Physical Album Sales | Digital Album Sales |
| Taylor Swift "Shake It Off" | 19-Aug-14 | | | | | | | |
| Ryan Adams "Shake It Off" | 21-Sep-15 | | | | | | | |
| Ryan Adams as a % of Taylor Swift | | | | | | | | |

63. As shown in Table 2, the activity of Taylor Swift's version far outweighs the activity of Ryan Adams' version in each song's first 52 weeks of activity. At the highest point, Ryan Adams' version reached ▮▮% of Taylor Swift's total for Streaming On-Demand Audio. At the lowest point, Ryan Adams' radio airplay (BDS Airplay Audience[3]) was ▮▮% of Taylor Swift's version.

64. It should be noted that there were some weeks where the Music Connect data output for Taylor Swift in Streaming On-Demand Audio dropped precipitously as a result of "Shake It Off" being pulled off of Spotify. Since the drop off was caused by withdrawal of "Shake It Off," a supply issue, and not an issue of demand, smoothing the Streaming On-Demand Audio trendline preserves the correct relationship between the two versions of "Shake It Off." In those weeks we adjusted with an estimate to correct for this issue, using the assumption that the streams would decline -6.5% per week over the affected period (streams fell ▮▮% in the week before the affected period began). See Table 3 below.

65. **Table 3.** Streaming On-Demand Audio Estimate for Taylor Swift



[3] BDS Airplay Audience is a weighted airplay measure by BDS that calculates the total audience listening to each play on radio.

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 96

66. Similarly, for Ryan Adams the Music Connect data showed Streaming On-Demand Video falling to 0 streams for several weeks. I corrected for this by plugging in estimates for those weeks, based on the assumption that streams would decline by ▒% per week in the affected period (streams fell -1.8% in the week before the affected period began).

67. Besides the Ryan Adams version, and the two other versions that failed to meet the relevant market criteria, there were five other versions that had significant enough activity for Music Connect to track them. Overall, these five versions were even lower than Ryan Adams when compared to Taylor Swift's version.


## VIII.   EARNINGS ADJUSTMENTS

68. The large difference in popularity between the Taylor Swift version of "Shake It Off" and the Ryan Adams version of "Shake It Off" includes what I refer to as the "Taylor Swift Effect," as well as the production of Max Martin and Shellback, and the marketing and distribution of Taylor Swift's "Shake It Off." The data and my analysis confirms that without those factors, the song's profits would be only a fraction of what they are.

69. The next step in my analysis is to adjust the profits of "Shake It Off" based on the difference between Ryan Adams and Taylor Swift's Music Connect measured activity.

70. For example, Ryan Adams' digital song sales were ▒% of Taylor Swift's, so I adjusted the profits related to digital downloads to ▒% of their value, essentially stripping out the "Taylor Swift Effect" from the song's earnings.


### A.  Profit & Loss Statements

71. I was provided with the Profit and Loss (P&L) statements for all Defendants in the case[4], showing the earnings of "Shake It Off" from inception to date.

72.  When necessary, I made adjustments to these original P&L summaries in order to apportion the expenses to each income type.

73. For the income statement of Big Machine Label Group, revenue streams were provided on a gross level and then cost of sales and other expenses were listed underneath. I apportioned those

---

[4] With the exception of Universal Music Group, Inc.

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 97

expenses to each revenue stream based on certain assumptions.[5]

74. For Taylor Swift's income, management commissions, income tax, and two other small expenses were apportioned to each revenue source on a pro-rated basis.

75. For Sony Music Publishing, net publisher share was broken out by each income type (mechanical, performance, synch, and other) but net income after tax was only provided on the total, so I calculated net income after tax by income type based on the tax rates provided for each statement period.

76. For all other P&Ls, no adjustments were necessary for my analysis.

77. Table 4 shows the total net profits of "Shake It Off." As provided, the song's net profits totaled _____.

78. **Table 4.** Total Net Profits of "Shake It Off"

| Defendant | Total |
|---|---|
| Big Machine Label Group | $ |
| Taylor Swift | $ |
| Max Martin | $ |
| Shellback | $ |
| Sony Music Publishing | $ |
| Kobalt Music Publishing | $ |
| **Total Net Profit** | $ |

## B.  Adjusting Net Profits Based on the Taylor Swift Effect

79. The Taylor Swift Effect adjustment was applied to any income type that could be tied to one of the Music Connect metrics.[6]

80. The Sony Music Publishing P&L only had the general categories of mechanical, performance, synchronization and other. Additional detail was provided to me that broke out Sony Music Publishing earnings within those categories by detailed income type. From that detailed summary, I was able to apply the proper TSE adjustment factors. I then calculated the blended average within

[5] I apportioned distribution fees on a pro-rated basis to all physical and digital income types. Manufacturing fees were apportioned on a pro-rated basis to all physical income types. Royalty expense was apportioned on a pro-rated basis to all income types except royalty income, touring/merch commissions, and label services. All other expenses were apportioned on a pro-rated bases to all income types.

[6] For example, Streaming On-Demand Audio was applied to most audio streaming income types. Total Streaming Programmed was applied to SoundExchange and Neighboring Rights income types. BDS Audience Airplay was applied to radio.

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 98

CONFIDENTIAL                                                                16

mechanical and performance, and for Sony Music Publishing overall, and used these blended metrics for Max Martin, Shellback, Kobalt Music Publishing, and for Taylor Swift's publishing income sources.

81. **Table 5**. Sony Music Publishing Income Detail[7]

| Sony Music Publishing Income Detail | | | |
|---|---|---|---|
| **Income Type** | **Mechanical Income** | **Ryan Adams % of Taylor Swift** | **Adjusted Income** |
| Mechanical | $ | % | $ |
| Digital/Download Mechanical | $ | % | $ |
| Mechanical Performance | $ | % | $ |
| Streaming Mechanical | $ | % | $ |
| **Total Mechanical** | **$** | | **$** |
| **Blended TSE Mechanical** | | | % |
| | | | |
| **Income Type** | **Performance Income** | **Ryan Adams % of Taylor Swift** | **Adjusted Income** |
| Radio | $ | % | $ |
| Streaming | $ | % | $ |
| Video Streaming | $ | % | $ |
| Other | $ | % | $ |
| **Total Performance** | **$** | | **$** |
| **Blended TSE Performance** | | | % |
| | | | |
| **Synchronization** | **$** | % | **$** |
| | | | |
| **Total Sony Music Publishing** | **$** | | **$** |
| **Blended TSE Overall Publishing** | | | % |

82. For any master income sources that could not be tied directly to a Music Connect metric, I applied the blended factor from the sources within Big Machine Label Group that could be tied to a Music Connect metric, which came out to ▭%.

---

[7] For "Other" performance income a blended average of the rest of performance was applied. For synchronization, a blended average of all mechanical and performance income types (except "other" performance) was applied. "Mechanical Performance" refers to mechanical rights paid to the right holders when a communication to the public requires a physical copy of a composition to be played. It is paid mainly by media users such as Radio stations and TV broadcasters as a percentage of the performing rights invoiced by the PROs. Therefore, I applied the BDS Audience Airplay % to this income source.

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 99

83. Some line items did not receive an adjustment factor. For the sources relating to touring and merchandise, I did not utilize a deduction factor to the Taylor Swift profit and loss income summaries as I had no comparative understanding of the Ryan Adam's version as it related to income from those sources. While I am confident that Taylor Swift touring income would likely dwarf that of Ryan Adams, I chose a more conservative approach for my review of comparative advantages of the Taylor Swift version.

84. Table 6 shows the adjustment factors that were applied.

85. **Table 6**. Adjustment Factors Applied

| Music Connect Category | | Ryan Adams % of Taylor Swift |
|---|---|---|
| Digital Song Sales | | % |
| Total Streaming On-Demand | | % |
| Streaming On-Demand Audio | | % |
| Streaming On-Demand Video | | % |
| Total Streaming Programmed | | % |
| Airplay Audience | | % |
| Physical Albums Sales | | % |
| Digital Albums Sales | | % |

| Blended Averages Based on Above | | Ryan Adams % of Taylor Swift |
|---|---|---|
| Publishing Mechanical (based on SMP) | | % |
| Publishing Performance (based on SMP) | | % |
| Publishing Synch (based on SMP) | | % |
| Publishing Overall (based on SMP) | | % |
| Masters Licensing (based on Big Machine) | | % |
| Masters Overall (blended based on Big Machine) | | % |

86. Table 7 shows the application of the adjustment factors by revenue source.

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 100

CONFIDENTIAL                                                                                18

87. **Table 7**. Adjustment of Net Profits

| Source | Big Machine Label Group | Taylor Swift | Max Martin | Shellback | Sony Music Publishing | Kobalt Music Publishing | Total | Ryan Adams % of Taylor | Adjusted Total |
|---|---|---|---|---|---|---|---|---|---|
| Direct Sales | | | | | | | | % | |
| Label Services | | | | | | | | % | |
| Licensing Income | | | | | | | | % | |
| Digital | | | | | | | | % | |
| Digital Albums | | | | | | | | % | |
| Mobile | | | | | | | | % | |
| Pandora Incremental | | | | | | | | % | |
| Streaming | | | | | | | | % | |
| Digital Tracks | | | | | | | | % | |
| Digital Videos | | | | | | | | % | |
| Physical | | | | | | | | % | |
| Reserves - Net Change | | | | | | | | % | |
| Royalty Income | | | | | | | | % | |
| Touring/Merch Commissions | | | | | | | | | |
| Sony/ATV | | | | | | | | % | |
| Songs of Universal, Inc. | | | | | | | | % | |
| BMI - Writer Share | | | | | | | | % | |
| SoundExchange | | | | | | | | % | |
| Fintage Kobalt | | | | | | | | % | |
| Big Machine Records | | | | | | | | % | |
| Merchandise Net Sales | | | | | | | | | |
| Neighboring Rights | | | | | | | | % | |
| Production Fee | | | | | | | | | |
| Producer Royalty | | | | | | | | % | |
| Writer Share | | | | | | | | % | |
| Writer Share of Performance (US) | | | | | | | | % | |
| Writer Share of Performance/Mechanical (ROW) | | | | | | | | % | |
| MXM Net Publisher Share Shellback | | | | | | | | | |
| Mechanical | | | | | | | | % | |
| Performance | | | | | | | | % | |
| Synchronization | | | | | | | | % | |
| Print/Other | | | | | | | | | |
| **Total** | | | | | | | | | |

88. The adjusted net profits, when removing the impact that Taylor Swift and other factors not allegedly infringing, had on the success of "Shake It Off" are [redacted], which is [redacted]% of the original value. A song is made up 50% lyrics and 50% music, and the alleged infringement only refers to lyrical content of the song. As a result, I further adjust the net profits by 50% to [redacted].

## IX.  CONCLUSION

89. The profits of the song "Shake It Off" are greatly impacted by Taylor Swift's performance of the song, her star power, Max Martin and Shellback's production, and the marketing and distribution support of Taylor Swift's "Shake It Off."  I have calculated the value of the song itself once removing the Taylor Swift Effect and other factors including the production of Max Martin and

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 101

CONFIDENTIAL                                                                                    19

Shellback, to be just ____% of the original value, and when considering the lyrics only, ____% of the original value, or _____.  This does not include consideration of other factors that may further reduce that figure.

## X.    LITIGATION EXPERIENCE

90. In 2001, I was retained as an expert witness for Zomba and its affiliated companies in the *Zomba* v. *MP3.com* case.  I provided deposition testimony in that matter before it was ultimately settled prior to trial.  In 2001, I was also retained as an expert witness for Major Bob Music Publishing (Garth Brooks) in its lawsuit against MP3.com, which also settled prior to trial. In 2003, I was retained as an expert witness for both the Country Roads Music plaintiffs (Bob Dylan, Billy Joel and James Taylor) and Fonomusic/Fonovisa plaintiffs, in their lawsuits against MP3.com.  I was deposed in both of those cases prior to their respective settlements before trial.

91. In 2004, I was retained by the RIAA and BMG in a copyright infringement action against Launch Media.  I was deposed in that matter and testified at trial in 2007.  In 2004, I was also retained by the RIAA as an expert witness in its lawsuit against iMesh, a popular filesharing service.  This case settled prior to trial.

92. In 2007, I was also retained as an expert witness in *Slip N' Slide Records, Inc.* v. *TVT Records, LLC*, Case No. 05-21113-Civ (Torres) in the United States District Court for the Southern District of Florida. I testified during a jury trial in this instance, as a rebuttal expert to the plaintiff's assertions of damages relating to a specific recording's hypothetical sales value.

93. In addition, in 2009 I was deposed in the *Tango* v. *Tibble* litigation, which involved claims of legal malpractice involving a collection of recordings by David Bowie and others.  This case was settled prior to trial.

94. In 2009, I was also retained as an economic expert in the case of *Avonti Garrett* v. *Baptist Healthcare Systems, Inc*. regarding the future earnings of the deceased award-winning songwriter Stephen Garrett. I was twice deposed in that case in April 2011 and December 2011. The parties settled just prior to my scheduled testimony in 2012.

95. In 2010, I provided an expert rebuttal report regarding a damage claim in *Victory* v. *Virgin (EMI) Records*.  In 2010, I was also retained by EMI Records and Publishing in its suit against MP3Tunes.com, to provide an expert opinion regarding a lost license theory of recovery. I was

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 102

deposed in that matter in 2010.

96. In 2015, I testified and presented evidence in Sydney, Australia representing the performance rights interests of the Australian recording industry in a radio simulcast rate setting case opposing the Australian radio industry.

97. Also, in 2015, I was deposed in *UMG Recordings Inc. et al.* v. *Global Eagle Entertainment*, on behalf of UMG and UMPG concerning affirmative damages relating to copyright infringement against a major airline music program supplier. The matter was settled to the benefit of my client just prior to my testimony in 2016.

98. In 2016, I represented UMG, Justin Bieber and Usher among other parties, in a copyright infringement action concerning the song "Someone to Love." In that matter, I developed a damages mitigation model that considered relevant industry factors unfamiliar to the Plaintiffs. I was deposed in that matter and the case was never tried.

99. In 2018, I represented Ed Sheeran and Warner Music in a copyright infringement matter concerning the song "Thinking Out Loud." I rendered an expert report in producing a possible damages analysis but have not yet been deposed. In 2020, I rendered a rebuttal expert report in relation to a new plaintiff, Structured Asset Sales LLC. I am awaiting word on a deposition schedule.

100. On 2018, I was also retained by The Extreme Music Library Limited, Extreme Music Limited and VIACOM in defense of a music royalties claim against Extreme Music filed by two composers. The case, *Twelve Sixty et al.* v. *Extreme Music Library Limited et al.*, called upon my knowledge of PRO distribution matters as well as a critical review of plaintiff's rendering of damages. I was deposed in that matter and the case was dismissed on summary judgment.

101. In 2020, I was retained by defendants' counsel in Green v West, a copyright infringement matter relating to Kanye West, to offer up rebuttal to plaintiff's expert's damages theories. A report was submitted, and the case settled.

102. In 2021, I submitted a report and gave a deposition in in Music Royalty Consulting Inc. (MRCI) v. Reservoir Media Management Inc. (RMM).

103. In 2021, I submitted an expert rebuttal report, and was scheduled to be deposed, in the matter of Vicky Cornell, widow of Chris Cornell v. Soundgarden. The case was dismissed.

104. In 2021, I served as expert witness in ABKCO v Coda in a plaintiff's infringement claim involving

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 103

certain uses requiring a synchronization license. I provided an expert report and awaiting next steps.

105. I have also testified in the following cases:  *United States* v. *ASCAP, In the matter of the Application of Salem Media of California,* Inc. and New England Continental Media, Inc. [Civil Action No. 13-95 (WCC)]; and *In Re Determination of Statutory License Terms and Rates for Certain Digital Subscription Transmissions of Sound Recordings* (Copyright Office Library of Congress) (CARP DSTRA Docket No. 96-5).


## XI.    DOCUMENTS AND MATERIALS RELIED UPON

- Plaintiffs' Complaint in *Sean Hall et al. v. Taylor Swift, et al.*, U.S. District Court, Central District of California, Case No. 2:17-cv-06882.
- 2013-2014 RIAA Year End Shipment Data 2013-2014
  www.riaa.com/wp-content/uploads/2015/09/2013-2014_RIAA_YearEndShipmentData.pdf
- RIAA 2015 Year-End Shipment Memo
  www.riaa.com/wp-content/uploads/2016/03/RIAA-2015-Year-End-shipments-memo.pdf
- 2021 RIAA Year-End Music Industry Revenue Report
  www.riaa.com/wp-content/uploads/2022/03/2021-Year-End-Music-Industry-Revenue-Report.pdf
- D000704-707 Taylor Swift P&L
- D000711-713 Sony Music Publishing P&L
- D000714 Kobalt Music Publishing P&L
- D000715 Max Martin P&L
- D000716 Shellback P&L
- D000717 Big Machine Label Group P&L
- "SMP – Shake It Off Mech-Perf Income – CONFIDENTIAL" – Excel file showing the breakdown of Sony Music Publishing revenue by source
- ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 104

**CONFIDENTIAL**                                                                                          22

- ▁▁▁▁▁▁▁▁▁▁▁▁▁▁▁▁▁▁▁▁▁▁▁▁▁▁
  ▁▁▁
- Wikipedia.org – artist and song research
- Spotify App – artist and song research
- Lyrics of Taylor Swift's "Shake It Off" and Ryan Adams' "Shake It Off"

"Citrin Cooperman" is the brand under which Citrin Cooperman & Company, LLP, a licensed independent CPA firm, and Citrin Cooperman Advisors LLC serve clients' business needs. The two firms operate as separate legal entities in an alternative practice structure. Citrin Cooperman is an independent member of Moore North America, which is itself a regional member of Moore Global Network Limited (MGNL).

Exhibit 4 - 105