1  Peter Anderson, Esq. (Cal. Bar No. 88891)
       peteranderson@dwt.com
2  Sean M. Sullivan, Esq. (Cal. Bar No. 229104)
       seansullivan@dwt.com
3  Eric H. Lamm, Esq. (Cal. Bar No. 324153)
       ericlamm@dwt.com
4  DAVIS WRIGHT TREMAINE LLP
   865 South Figueroa Street, 24th Floor
5  Los Angeles, California  90017-2566
   Telephone: (213) 633-6800
6  Fax: (213) 633-6899

7  Attorneys for Defendants

8  J. Douglas Baldridge, Esq.
       jbaldridge@venable.com
9  Katherine Wright Morrone, Esq.
       kwmorrone@venable.com
10 VENABLE LLP
   600 Massachusetts Avenue NW
11 Washington, DC 20001
   Telephone: (202) 344-4000
12 Fax: (202) 344-8300

13 Attorneys for Defendant
   TAYLOR SWIFT

14

15                **UNITED STATES DISTRICT COURT**

16               **CENTRAL DISTRICT OF CALIFORNIA**

17                       **WESTERN DIVISION**

18  SEAN HALL, *etc., et al.*,            ) Case No. 2:17−cv−06882 MWF (ASx)
                                          )
19              Plaintiffs,               )
                                          )
20       vs.                              ) DEFENDANTS' REPLY
                                          ) MEMORANDUM OF POINTS AND
21  TAYLOR SWIFT, *etc., et al.*,         ) AUTHORITIES IN SUPPORT OF
                                          ) SECOND MOTION FOR SUMMARY
22              Defendants.               ) JUDGMENT
                                          )
23  ─────────────────────────────        ) Date: October 3, 2022
24                                          Time: 10:00 a.m.

25                                         Courtroom of the Honorable
26                                           Michael W. Fitzgerald
                                           United States District Judge
27

28

# **TABLE OF CONTENTS**

**Page**

1.    INTRODUCTION ...................................................................................1

2.    PLAINTIFFS DO NOT OWN THE CLAIM THEY ASSERT ......................1

    (a)    A Co-Owner Can Exclusively Transfer His Rights ................................1

    (b)    On its Face, Each Plaintiff's Transfer of All Rights to Sue Includes Any and All Rights to Sue as a Beneficial Owners ...............................2

        (1)    Plaintiffs Did Not "Part with Legal Title" ....................................3

        (2)    Plaintiffs' Beneficial Title Argument Would Render Meaningless Their Express Assignments .....................................4

        (3)    Policy Considerations Do Not Vitiate Plaintiffs' Express Assignments ..................................................................................4

        (4)    Plaintiffs Cite No Case that Voided Assignments Such as Theirs on Policy Grounds .........................................................4

        (5)    Absent Express Copyright Act Limitations, Authors Are Free to Assign Their Rights .......................................................5

    (c)    Plaintiffs Did Not Assign "a Bare Right to Sue" ..................................7

    (d)    Defendants Are Entitled to Raise Plaintiffs' Lack of Standing .............8

    (e)    Plaintiffs' Lack of Standing Is Confirmed by Their "Urgent" Requests to the Publishers to Grant Them the Right to Sue .................8

    (f)    *Sierra Club* Does Not Help Plaintiffs ..................................................9

3.    THERE IS NO GENUINE DISPUTE AS TO COPYING ............................9

    (a)    *Playas* and *Shake It Off* Are Not Strikingly Similar ...............................9

        (1)    Plaintiffs Bear the Burden of Proving Striking Similarity...........9

        (2)    There Is No Genuine Dispute as to Striking Similarity .............10

            (i)    Prof. Kajikawa's Bare Assertion of Striking Similarity Is Contrary to the Undisputed Facts ...............10

i

(ii)     The Court Can and Should Rule that the Songs Are Not Strikingly Similar .......................................................... 13

(b)   Neither Do Plaintiffs Raise a Genuine Dispute as to Access ............... 13

    (1)     *Skidmore* Did Not Do Away with or Dilute Access ................... 13

    (2)     Plaintiffs Concede They Have No Chain of Events Theory ....... 15

    (3)     *Playas* Was Not Widely Disseminated So as to Provide a Reasonable Opportunity for *Shake It Off*'s Creators to Hear It .......................................................................................... 15

        (i)     Plaintiffs Fail to Present Evidence that *Playas* Was a Widely Disseminated Song in 2001 ................................. 15

        (ii)     The Claimed Dissemination of *Playas* Did Not Provide Ms. Swift with a Non-Speculative, Reasonable Opportunity to Hear It .................................... 16

        (iii)     The Swedish Songwriters Also Did Not Have a Non-Speculative Opportunity to Hear *Playas* in Sweden ........ 18

4.     THE ALLEGED USE ALSO IS WITHIN THE FAIR USE DOCTRINE ..... 18

(a)   The Purpose and Character of the Use ..................................... 19

    (1)     *Shake It Off's* Use of Player and Hater Phrases Is Transformative ............................................................................ 19

    (2)     *Shake It Off's* Use Is Not Primarily Commercial ...................... 22

(b)   The Nature of Plaintiffs' Work ................................................. 23

(c)   The Amount and Substantiality of the Portion Allegedly Used ............ 23

(d)   The Effect on the Market for or Value of Plaintiffs' Work ................. 24

5.     CONCLUSION .......................................................................... 25

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpi Int'l, Ltd v. Anga Supply, LLC*,
    118 F. Supp. 3d 1172 (N.D. Cal. 2015) ................................................................. 13

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*,
    11 F.4th 26 (2d Cir. 2021), *cert. granted*, 142 S. Ct. 1412 (2022)...................... 21

*Arista Recs. LLC v. Myxer Inc.*,
    No. CV 08-03935, 2011 WL 11660773 (C.D. Cal. Apr. 1, 2011) ...................... 22

*Atari Interactive, Inc. v. Redbubble, Inc.*,
    515 F. Supp. 3d 1089 (N.D. Cal. 2021) ............................................................. 13

*Batts v. Adams*,
    No. CV 10-8123, 2011 WL 13217923 (C.D. Cal. Feb. 8, 2011) ........................ 14

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
    448 F.3d 605 (2d Cir. 2006)................................................................................ 25

*Blanch v. Koons*,
    467 F.3d 244 (2d Cir. 2006)................................................................................ 21

*BMG Rts. Mgmt. (US) LLC v. Glob. Eagle Ent. Inc.*,
    No. 218CV03723, 2019 WL 6315553 (C.D. Cal. Sept. 9, 2019)........................ 23

*Braham v. Sony/ATV Music Publ'g*,
    No. 215CV8422, 2015 WL 7074571 (C.D. Cal. Nov. 10, 2015)........................ 14

*Briggs v. Blomkamp*,
    70 F. Supp. 3d 1155 (N.D. Cal. 2014) ............................................................... 10

*Broadcast Music, Inc. v. Hirsch*,
    104 F.3d 1163 (9th Cir. 1997) .............................................................................. 3

*Brophy v. Almanzar*,
    No. SACV1701885, 2020 WL 8175605 (C.D. Cal. Dec. 4, 2020) ..................... 21

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994)............................................................................... 19, 22, 24

*Copeland v. Bieber*,
    789 F.3d. 484 (4th Cir. 2015) ............................................................. 22

*Corbello v. DeVito*,
    777 F.3d 1058 (9th Cir. 2015) ......................................................... 1, 2

*Cortner v. Israel*,
    732 F.2d 267 (2d Cir. 1984)............................................................. 3, 5

*DC Comics v. Towle*,
    802 F.3d 1012 (9th Cir. 2015) ............................................................ 12

*De Fontbrune v. Wofsy*,
    39 F.4th 1214 (9th Cir. 2022) ............................................................ 25

*Disney Enters., Inc. v. VidAngel, Inc.*,
    371 F. Supp. 3d 708 (C.D. Cal. 2019) ................................................ 25

*Disney Enters, Inc. v. VidAngel, Inc.*,
    869 F.3d 848 (9th Cir. 2017) .............................................................. 25

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
    983 F.3d 443 (9th Cir. 2020) .............................................................. 20

*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*,
    870 F.3d 978 (9th Cir. 2017) ......................................................... 3, 5, 8

*Elohim EPF USA, Inc. v. Total Music Connection, Inc.*,
    No. CV 14-02496, 2015 WL 12655556 (C.D. Cal. Oct. 1, 2015)......................... 2

*Elvis Presley Enters., Inc. v. Passport Video*,
    349 F.3d 622 (9th Cir. 2003) ........................................................ 22, 25

*Enterprise Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*,
    No. 2:19-CV-1458, 2021 WL 511111 (W.D. Wash. Feb. 11, 2021) ................... 12

*Erickson v. Pardus*,
    551 U.S. 89 (2007)........................................................................... 14

*Fantasy, Inc. v. Fogerty*,
    654 F. Supp. 1129 (N.D. Cal. 1987) ..................................................... 3

*Fisher v. Dees*,
    794 F.2d 432 (9th Cir. 1986) .............................................................. 19

iv

*Fournier v. Erickson*,
   242 F. Supp. 2d 318 (S.D.N.Y. 2003) ................................................................. 24

*Fraser v. Goodale*,
   342 F.3d 1032 (9th Cir. 2003) ................................................................... 15, 16

*Fred Fisher Music Co. v. M. Witmark & Sons*,
   318 U.S. 643 (1943)................................................................................. 5, 6, 7

*Frisby v. Sony Music Entm't*,
   No. CV 19-1712, 2021 WL 2325646 (C.D. Cal. Mar. 11, 2021),
   *aff'd in part, dismissed in part*, No. 21-55586, 2022 WL 2045340
   (9th Cir. June 7, 2022) ....................................................................... 21, 23, 24

*Funky Films, Inc. v. Time Warner Entm't Co.*,
   462 F.3d 1072 (9th Cir. 2006), *overruled on other grounds by*
   *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ................................. 20

*Furie v. Infowars, LLC*,
   401 F. Supp. 3d 952 (C.D. Cal. 2019) ............................................................... 21

*Golden v. Michael Grecco Prods., Inc.*,
   524 F. Supp. 3d 52 (E.D.N.Y. 2021) ................................................................. 12

*Grant v. Trump*,
   563 F. Supp. 3d 278 (S.D.N.Y. 2021) ............................................................... 25

*Haas Automtn., Inc. v. Denny*,
   No. 2:12-CV-04779, 2013 WL 6502876 (C.D. Cal. Dec. 4, 2013)...................... 13

*Harper & Row Publ., Inc. v. Nation Enters.*,
   471 U.S. 539 (1985)................................................................................. 23, 24

*Heim v. Universal Pictures Co.*,
   154 F.2d 480 (2d Cir. 1946)............................................................................ 11

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ........................................................................... 21

*Hollywood Foreign Press Ass'n v. Red Zone Cap. Partners I*,
   870 F. Supp. 2d 881 (C.D. Cal. 2012) ................................................................. 4

*Incredible Features, Inc. v. Backchina, LLC*,
   No. CV 20-943, 2021 WL 6337194 (C.D. Cal. Dec. 16, 2021)........................... 25

v

*JL Beverage Co., LLC v. Jim Beam Brands Co.*,
    828 F.3d 1098 (9th Cir. 2016) ............................................................ 15

*John Wiley & Sons, Inc. v. DRK Photo*,
    998 F. Supp. 2d 262 (S.D.N.Y. 2014), *aff'd*, 882 F.3d 394 (2d Cir.
    2018) ................................................................................................ 2, 3, 5

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003) ................................................................ 23

*Kienitz v. Sconnie Nation LLC*,
    766 F.3d 756 (7th Cir. 2014) .......................................................... 22, 24

*Leadsinger, Inc. v. BMG Music Pub.*,
    512 F.3d 522 (9th Cir. 2008) ...................................................... 23, 24, 25

*Lester v. U2 Ltd.*, No. CV0706612,
    2009 WL 10673938 (C.D. Cal. Apr. 10, 2009) .................................... 11

*Love v. The Mail on Sunday*,
    No. CV057798, 2006 WL 4046180 (C.D. Cal. Aug. 15, 2006) .............. 3

*Mason v. Jamie Music Pub. Co.*,
    658 F. Supp. 2d 571 (S.D.N.Y. 2009) .................................................... 5

*McGucken v. Pub Ocean Ltd.*,
    42 F.4th 1149 (9th Cir. 2022) ......................................................... 21, 22

*Moran v. London Recs., Ltd.*,
    827 F.2d 180 (7th Cir. 1987) .................................................................. 6

*Morris v. Young*,
    925 F. Supp. 2d 1078 (C.D. Cal. 2013) ................................................ 24

*Neman Bros. & Assocs., Inc. v. One Step Up Ltd.*,
    No. CV184297, 2019 WL 8129616 (C.D. Cal. Nov. 25, 2019) ............ 13

*Northland Fam. Plan. Clinic, Inc. v. Ctr. for Bio-Ethical Reform*,
    868 F. Supp. 2d 962 (C.D. Cal. 2012) .................................................. 23

*Parker v. Winwood*,
    No. 16-CV-00684, 2017 WL 6886076 (M.D. Tenn. Oct. 17, 2017),
    *aff'd*, 938 F.3d 833 (6th Cir. 2019) ...................................................... 5

vi

*Repp v. Webber*,
　892 F. Supp. 552 (S.D.N.Y. 1995) ................................................................. 17

*Righthaven LLC v. Hoehn*,
　716 F.3d 1166 (9th Cir. 2013) ........................................................................ 8

*Russell v. Walmart Inc.*,
　No. CV 19-5495, 2020 WL 5289889 (C.D. Cal. Aug. 17, 2020) ...................... 10

*Sedlik v. Drachenberg*,
　No. CV211102, 2022 WL 2784818 (C.D. Cal. May 31, 2022) ................... 21, 24

*Seltzer v. Green Day, Inc.*,
　725 F.3d 1170 (9th Cir. 2013) .......................................... 19, 21, 22, 23, 24

*Sierra Club v. Morton*,
　405 U.S. 727 (1972) ........................................................................................ 9

*Silvers v. Sony Pictures Entm't, Inc.*,
　402 F.3d 881 (9th Cir. 2005) ................................................................. 6, 8, 9

*Silvers v. Sony Pictures Entm't, Inc.*,
　No. CV00-6386, 2001 WL 36127624 (C.D. Cal. Jan. 25, 2001) .................. 6, 8

*Skidmore v. Led Zeppelin*,
　952 F.3d 1051 (9th Cir. 2020) ....................................... 6, 10, 12, 13, 14

*Skidmore v. Led Zeppelin*,
　No. CV153462, 2016 WL 1442461 (C.D. Cal. Apr. 8, 2016) ........... 4, 5, 13, 14

*SOFA Entm't, Inc. v. Dodger Prods., Inc.*,
　709 F.3d 1273 (9th Cir. 2013) ...................................................................... 21

*Stabile v. Paul Smith Ltd.*,
　137 F. Supp. 3d 1173 (C.D. Cal. 2015) .................................................. 10, 12

*Starz Entm't, LLC v. MGM Domestic Television Distribution, LLC*,
　39 F.4th 1236 (9th Cir. 2022) ...................................................................... 14

*Stewart v. Abend*,
　495 U.S. 207 (1990) ........................................................................................ 6

*Stockfood Am., Inc. v. Adagio Teas, Inc.*,
　475 F. Supp. 3d 394 (D.N.J. 2020) ................................................................. 2

vii

*Straughter v. Raymond*,
No. CV 08-2170, 2011 WL 13176750 (C.D. Cal. Aug. 19, 2011)......................17

*Straughter v. Raymond*,
No. CV 08-2170, 2011 WL 3651350 (C.D. Cal. Aug. 19, 2011)..................7, 17

*Sybersound Recs., Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) ......................................................1, 2, 7

*TCA Television Corp. v. McCollum*,
839 F.3d 168 (2d Cir. 2016).........................................................................21

*Teespring, Inc. v. Puetz*,
No. 15-CV-04149, 2017 WL 956633 (N.D. Cal. Mar. 13, 2017) ......................13

*Three Boys Music Corp. v. Bolton*,
212 F.3d 477 (9th Cir. 2000), *overruled on other grounds by
Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ......................10, 17, 18

*Threshold Media Corp. v. Relativity Media, LLC*,
No. CV 10-09318, 2013 WL 12331550 (C.D. Cal., Mar. 19, 2013)...................19

*Topolos v. Caldewey*,
698 F.2d 991 (9th Cir. 1983) ...................................................................3

*Warren v. Fox Fam. Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) ...................................................................3

*Wojciechowski v. Kohlberg Ventures, LLC*,
923 F.3d 685 (9th Cir. 2019) ...................................................................4

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
227 F.3d 1110 (9th Cir. 2000) ...............................................................25

*Yount v. Acuff Rose-Opryland*,
103 F.3d 830 (9th Cir. 1996) ............................................................5, 6, 7

**Statutes**

17 U.S.C.
§ 101 *et seq.* (Copyright Act of 1976) ......................................................4, 5, 9
§ 102(b).....................................................................................................20
§ 106...........................................................................................................8
§ 203(a)(5)..................................................................................................6
§ 304(c)(5)..................................................................................................6

§ 501(b) ................................................................................................ 1, 8

**Rules**

Federal Rule of Civil Procedure

26 ............................................................................................................ 16

33 ............................................................................................................ 16

34 ............................................................................................................ 16

36 .............................................................................................................. 1

37(c)(1) ................................................................................................... 16

**Other Authorities**

4 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT (2022)

§ 13D.07[A] ..................................................................................... 12, 13

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   INTRODUCTION

Plaintiffs' Opposition Memorandum (Doc. 143) ("Oppn.") resorts to a firestorm of irrelevant cases and an insistent disregard of Plaintiffs' binding admissions and the actual lyrics of the two songs.  However, (1) Plaintiffs lack standing because they assigned away the claim they assert, (2) they fail to prove a genuine dispute as to copying, and (3) the alleged copying is within the fair use doctrine.

## 2.   PLAINTIFFS DO NOT OWN THE CLAIM THEY ASSERT

As an initial, independent ground for summary judgment, Defendants showed—with Plaintiffs' Federal Rule of Civil Procedure 36 and deposition admissions—that each Plaintiff assigned to his music publisher all of his rights to sue for infringement of the copyrights in his compositions, including *Playas*.  Defs' Memo. (Doc. 134-1) at 8-13.  None of Plaintiffs' arguments avoid the plain and unambiguous terms of their Co-Publishing Agreements and Assignments.  Instead, Plaintiffs rely on misdirection and omission.

### (a)   A Co-Owner Can Exclusively Transfer His Rights

As for misdirection, Plaintiffs confuse (1) the inability of a co-owner to grant exclusive rights *as to the entire copyright* with (2) the right of a co-owner to assign *his or her own rights* exclusively to one grantee.  Oppn. at 3:17-4:14.

It is a "self-evident principle that a joint-owner cannot transfer more than he himself holds…." *Corbello v. DeVito*, 777 F.3d 1058, 1065 (9th Cir. 2015).  Because a co-owner "may not limit the other co-owners' independent rights to exploit the copyright," a co-owner's license is non-exclusive in that it does not impact his co-owner's rights.  *Id.* (quoting *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008)).  Plaintiffs latch onto the term "non-exclusive" to argue that their assignments of their rights to sue are invalid because, as co-owners, they could not transfer the exclusive rights necessary to sue under 17 U.S.C. Section 501(b).  Oppn. at 3:17-4:3.  But, while a co-owner cannot alone assign exclusive rights under

1

the jointly owned copyright, a co-owner *may assign his or her rights* exclusively to a third party.  "In other words, the third party's right is 'exclusive' as to the assigning or licensing co-owner, but not as to the other co-owners and their assignees or licensees." *Corbello*, 777 F.3d at 1065.  "[T]he basic principle that one cannot give away more than one's share in a copyright [does not] limit a co-owner's ability to transfer unilaterally any exclusive copyright interests that he himself possesses." *Id.*

None of the cases Plaintiffs cite support a contrary result.  Instead, Plaintiffs rely on cases deciding the different issue of whether a *non-exclusive* licensee may sue for infringement.  Oppn. at 4:3-10 (citing *Sybersound*, 517 F.3d at 1146 (non-exclusive licensee of karaoke rights to musical compositions lacked standing to sue)); *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 279 (S.D.N.Y. 2014) (photographers' "nonexclusive licensing agent" lacked standing to sue), *aff'd*, 882 F.3d 394 (2d Cir. 2018); *Elohim EPF USA, Inc. v. Total Music Connection, Inc.*, No. CV 14-02496, 2015 WL 12655556, at *15 (C.D. Cal. Oct. 1, 2015) (songwriter agreements by less than all co-authors transferred only non-exclusive licenses that did not provide standing to sue); *Stockfood Am., Inc. v. Adagio Teas, Inc.*, 475 F. Supp. 3d 394, 404 (D.N.J. 2020) (exclusive licensee had standing to sue).[1]

Nothing prevented each Plaintiff from transferring his respective right to sue—exclusively as between him and his publisher—as well as the claim they assert in this action.  And that is exactly what each of them did.  *See* Defs' Memo. at 9-10, 11-12.

### (b)  On its Face, Each Plaintiff's Transfer of All Rights to Sue Includes Any and All Rights to Sue as a Beneficial Owners

As Defendants predicted, Plaintiffs argue that they are beneficial owners of the *Playas* copyright and their assignments of all claims for its infringement did not include their right to sue as beneficial owners.  Their arguments fail.

---

[1]      In this section of their Memorandum, Plaintiffs also argue a different, "bare right to sue," issue that is discussed below at 7-8.

2

### (1)   Plaintiffs Did Not "Part with Legal Title"

Plaintiffs begin with a page of string citations for the undisputed principle that an author who transfers his or her entire copyright interest in return for royalties is a beneficial owner. Oppn. at 4:14-5:24. However, Plaintiffs concede they each retained legal title to the *Playas* copyright. They argue they have legal title to the portion they retained and beneficial title to the portion they transferred. But none of the cases they cite ruled that beneficial ownership can be achieved when legal ownership of a portion of the copyright is retained, thereby making beneficial ownership unnecessary. Even more importantly, none ruled that the right to sue as beneficial owner cannot be waived or transferred. *See Love v. The Mail on Sunday*, No. CV057798, 2006 WL 4046180, at *10 (C.D. Cal. Aug. 15, 2006) (author who "parted with legal title in exchange for percentage royalties" was a beneficial owner (quoting H.R. Rep No. 1476 9th Cong., 2d Sess. 159 (1976))); *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984) (same); *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 988 (9th Cir. 2017) (same); *Fantasy, Inc. v. Fogerty*, 654 F. Supp. 1129, 1131 (N.D. Cal. 1987) (same); *Topolos v. Caldewey*, 698 F.2d 991, 995 (9th Cir. 1983) (allegation that author's copyright held by his book publisher on his behalf sufficient); *Broadcast Music, Inc. v. Hirsch*, 104 F.3d 1163, 1166 (9th Cir. 1997) (beneficial ownership irrelevant to whether assignment of royalties had priority over federal tax lien).

Plaintiffs argue that the only support for Defendants' proposition that a beneficial owner must have "part[ed] with legal title" is *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003). *See* Oppn. at 5 n.8. Plaintiffs' argument is remarkable given they cite *Love*, *Cortner*, *DRK Photo*, and *Fantasy* and each of those cases specifically quotes the House Report's statement that a beneficial owner is an author who "parted with legal title in exchange for percentage royalties."

The reason Plaintiffs do not have the right to assert the claim they assert is not that they parted with legal title to the *Playas*' copyright—they jointly own legal title with their music publishers—but rather because Plaintiffs assigned that right away.

**(2)   Plaintiffs' Beneficial Title Argument Would Render Meaningless Their Express Assignments**

Each Plaintiff's Co-Publishing Agreement assigns to the music publishers all rights to sue for infringement of the Compositions' copyrights, including *Playas'* copyright. Defs' Ex. 130 (Doc. 134-24) at 5-11 (RFA Nos. 1-7, 12-16, 20-23, 25-28). Each Plaintiff's Assignment transfers to the music publisher all future claims for infringement of those copyrights. *Id.* at 6-7 (RFA Nos. 8-9, 29-30); Defs' Ex. 132 (Doc. 134-26), Ex. 138 (Doc. 134-32) at 1, ¶ 1.[2]   Mr. Butler's Co-Publishing Agreement also provides that if his music publisher decides not to pursue a claim it may, in its sole judgment, offer "to grant [him] the right to commence an action or other proceeding against [an] alleged infringer at [his] sole expense." Ex. 130 at 10 (RFA No. 24).  All of these provisions would be rendered completely meaningless if, as Plaintiffs contend, Plaintiffs retained a right to sue as beneficial owners.

**(3)   Policy Considerations Do Not Vitiate Plaintiffs' Express Assignments**

Plaintiffs argue that they retain their claimed right to sue as beneficial owners because "any attempt to contract around the Copyright Act and judicial concepts developed thereunder would not stand." Oppn. at 6:2-4.  But, again, none of the authorities Plaintiffs cite support that argument.

**(4)   Plaintiffs Cite No Case that Voided Assignments Such as Theirs on Policy Grounds**

Plaintiffs cite *Skidmore v. Led Zeppelin*, No. CV153462, 2016 WL 1442461, at *7 (C.D. Cal. Apr. 8, 2016), for the proposition that beneficial ownership is an

---

[2]   Plaintiffs argue they did not intend to make these transfers, but it is black-letter law that "when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself." *Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 690 (9th Cir. 2019) (citation omitted); *see also Hollywood Foreign Press Ass'n v. Red Zone Cap. Partners I*, 870 F. Supp. 2d 881, 916-18 (C.D. Cal. 2012).

1   "equitable trust relationship imposed as a matter of law…."  But, nowhere does that

2   ruling suggest the right to sue as a beneficial owner is inalienable or unwaivable.

3   Plaintiffs cite _DRK Photo_, 870 F.3d 978, to argue that the Copyright Act "trump[s]"

4   their "contractual intent" to assign these rights.  But _DRK Photo_ merely held that the

5   parties' apparent but unsuccessful intent to include an ownership interest did not save

6   a bare assignment.  870 F.3d at 987; _see below_ at 7-8.  Plaintiffs also cite _Yount v._

7   _Acuff Rose-Opryland_, 103 F.3d 830 (9th Cir. 1996), for the proposition that Congress

8   extended standing to beneficial owners to protect authors in case the legal owners do

9   not sue.  However, _Yount_ also recognized that "protection of authors may well come

10  from laws that give them the freedom to contract at will" and nowhere suggests that

11  the right to sue as a beneficial owner is inalienable or cannot be waived.  _Id._ at 834.

12      Plaintiffs cite three cases in which all rights to exploit works were assigned.

13  Oppn. at 6:11-20.  But by their terms those assignments did not include the right to

14  sue for future infringement claims, so the cases are irrelevant.  _See Cortner_, 732 F.2d

15  at 269 (describing the rights assigned); _Parker v. Winwood_, No. 16-CV-00684, 2017

16  WL 6886076, at *1 (M.D. Tenn. Oct. 17, 2017), _aff'd_, 938 F.3d 833 (6th Cir. 2019)

17  (same); _Mason v. Jamie Music Pub. Co._, 658 F. Supp. 2d 571, 579 (S.D.N.Y. 2009)

18  (plaintiff owns legal title and, once legal title is transferred pursuant to pending

19  purchase agreement in return for royalties, will have beneficial standing).

20          **(5)**   **Absent Express Copyright Act Limitations, Authors Are Free**

21                   **to Assign Their Rights**

22      The Supreme Court long ago ruled that Congressional intent to benefit authors

23  does not trump the provisions of contracts that, as here, authors have voluntarily

24  entered into.  _Fred Fisher Music Co. v. M. Witmark & Sons_, 318 U.S. 643 (1943).

25      In _Fred Fisher_, the issue was whether an author could assign his right to claim

26  a renewal copyright in the future, given that Congress created the renewal right to

27  benefit authors by giving them a second chance to control their works.  _Id._ at 644-45,

28  653-54.  Because the statute did not prevent an author from conveying his renewal

right, and the legislative history did not mention making that right inalienable, the Supreme Court held authors are free to assign their renewal rights.  *Id.* at 656 ("It is not for courts to judge whether the interests of authors clearly lie upon one side of this question rather than the other.  If an author cannot make an effective assignment of his renewal, it may be worthless to him when he is most in need.").  That holding and analysis remain sound today.  *See Yount*, 103 F.3d at 834 (citing *Fred Fisher* and concluding "[g]enerally speaking, it is for Congress, not the courts, to decide just how much protection is needed and what form that protection should take").

Nowhere in the legislative history did Congress state that it intended that beneficial standing be inalienable or unwaivable.  Moreover, Congress knows how to make rights inalienable: the current Copyright Act's termination provisions—which are not at issue here—expressly provide that termination "may be effected notwithstanding any agreement to the contrary."  17 U.S.C. §§ 203(a)(5) & 304(c)(5) (same); *Stewart v. Abend*, 495 U.S. 207, 230 (1990) ("The 1976 Copyright Act provides a single, fixed term, but provides an inalienable termination right.").  Yet Congress did not make beneficial standing inalienable or unwaivable.

Plaintiffs also cite the observation in *Silvers v. Sony Pictures Entm't, Inc.*, No. CV00-6386, 2001 WL 36127624 (C.D. Cal. Jan. 25, 2001), that policy concerns might cut against assignments of future claims.  Plaintiffs ignore that the district court was ultimately reversed by an en banc panel of the Ninth Circuit, which recognized the assignability of claims as long as an interest in the copyright is included.  *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 890 (9th Cir. 2005).

Plaintiffs argue that Mr. Hall's music publisher is a fiduciary to him and had a conflict of interest in declining to grant back to him the right to assert the claim he asserts in this case.  Oppn. at 6 n.10 (citing *Moran v. London Recs., Ltd.*, 827 F.2d 180, 183 (7th Cir. 1987)).  But *Moran* simply repeated the basis of beneficial ownership and found it did not apply.  Also, "a music publisher does not have a fiduciary relationship with its composers, absent special circumstances." *Skidmore v.*

1     *Led Zeppelin*, 952 F.3d 1051, 1078 (9th Cir. 2020).  Plaintiffs identify no special

2     circumstances here, let alone explain the relevance of their argument.

3        In return for the benefits provided to them under their Co-Publishing

4     Agreements, Plaintiffs voluntarily assigned to their music publishers all rights to sue

5     for infringement and all future claims for infringement.  "[A]uthors are not 'wards

6     under guardianship of the law.'"  *Yount*, 103 F.3d at 836 (quoting *Fred Fisher*, 318

7     U.S. at 657).  There is no merit to Plaintiffs' argument that a general, legislative

8     concern of aiding authors invalidates Plaintiffs' assignments.

9        **(c)**     **Plaintiffs Did Not Assign "a Bare Right to Sue"**

10       Plaintiffs raise that the bare right to sue cannot be transferred without a right in

11     the copyright itself.  Oppn. at 4:8-13.  But that principle is no bar to their assignments

12     because they also assigned to their music publishers an ownership interest in the

13     *Playas* copyright.  Defs' Ex. 131 at 1, ¶ 2(a), Ex. 132, Ex. 137 at 7, ¶ 3.02, Ex. 138.

14       Plaintiffs argue that since they retained a portion—collectively, 41 2/3%—of

15     the *Playas* copyright, each Plaintiff "necessarily retained his right to sue as the current

16     owner of the non-transferred portion of his rights."  Oppn. at 7:7:6-8.  That makes no

17     sense because they cannot have "necessarily retained" the rights to sue that they

18     unambiguously transferred.  Nor is Plaintiffs' argument supported by the cases they

19     cite.  Plaintiffs cite *Straughter v. Raymond*, No. CV 08-2170, 2011 WL 3651350, at

20     *7 (C.D. Cal. Aug. 19, 2011), for the proposition that a co-owner of copyright has

21     standing to sue.  However, the plaintiff in *Straughter* had not assigned to another his

22     right to sue on his claim.  Plaintiffs' assertion that a co-owner who *has not assigned*

23     *away the right to sue* has standing to sue is a truism that is of no help.

24       Plaintiffs argue that their assignment of the right to sue as to the portion of the

25     copyright they retained is an invalid bare assignment of a claim because, they argue,

26     it was not accompanied by the portion they retained.  But co-owners do not own

27     separate, discrete portions of a copyright.  Rather, "co-owners are like tenants in

28     common, each owning a share of the undivided whole."  *Sybersound*, 517 F.3d at

1145.  And Plaintiffs assigned to their music publishers *both* a majority ownership of the *Playas* copyright *and* the right to sue and all future claims.

In contrast, and as confirmed by the cases Plaintiffs cite, a bare assignment of a claim is one in which only the claim, *and no interest in the copyright*, is assigned. *See DRK Photo*, 870 F.3d at 985 ("[A]n assignee who holds an accrued claim for copyright infringement, *but who has no legal or beneficial interest in the copyright itself*, [may not] institute an action for infringement." (quoting *Silvers*, 402 F.3d at 883) (emphasis added)).  *Righthaven LLC v. Hoehn*, 716 F.3d 1166 (9th Cir. 2013) applied *Silvers* to conclude that—*absent the actual transfer* of 17 U.S.C. Section 106 "exclusive rights"—the assignment of a claim is invalid.  *Id.* at 1169 (purported assignment of exclusive rights illusory because assigned back to its assignor).

Plaintiffs assigned to their music publishers undivided interests in the *Playas* copyright, as well as all future claims.  That is not a bare right to sue.

**(d)    Defendants Are Entitled to Raise Plaintiffs' Lack of Standing**

Plaintiffs argue that only their music publishers may raise Plaintiffs' lack of standing.  Oppn. at 3 n.5.  However, "a third party is not foreclosed from challenging a plaintiff's ownership for purposes of standing…."  *DRK Photo*, 870 F.3d at 986 (citing *Righthaven*, 716 F.3d at 1169).  "Indeed, it is the plaintiff who has the burden of establishing a qualifying ownership interest both as a substantive element of the infringement claim, … and as a necessary predicate for standing to bring the claim, 17 U.S.C. § 501(b)."  *Id.* (citations omitted).

**(e)    Plaintiffs' Lack of Standing Is Confirmed by Their "Urgent" Requests to the Publishers to Grant Them the Right to Sue**

Plaintiffs try to sidestep their representatives', their lawyers,' and their own "urgent" requests that their music publishers "grant" them the right to sue.  Oppn. at 7:20-8:1.  But their undisputed urgent requests, as well as their urging a Congressman to help them get the right to sue, confirm what Plaintiffs' Co-Publishing Agreements and Assignments expressly provide: Plaintiffs do not have the right to assert the claim

in this action.  *See, e.g.*, Defs' Ex. 133 (Doc. 134-27), Ex. 134 (Doc. 134-28), Ex. 139 (Doc. 134-33).  Plaintiffs argue that standing is "a legal conclusion."  But their requests show they reached the same legal conclusion as Defendants.  Plaintiffs argue they requested the re-grant of the rights "out of an abundance of caution."  There is no such qualification in their requests.  Plaintiffs argue Defendants did not rely on their requests, but that misses the point that they made these requests because they needed the re-grant of the rights to establish standing.

Plaintiffs argue their music publishers had to intervene in the case and, by not doing so, supposedly abandoned their rights.  Nonsense.  Plaintiffs granted their music publishers not only all rights to sue but also the right to choose not to sue (Doc. 134-45 at Facts 315, 342), which is what they did.  They have no obligation to intervene.

### (f)   *Sierra Club* Does Not Help Plaintiffs

As a last-ditch effort, Plaintiffs argue they have "a sufficient stake in an otherwise justiciable controversy" to prosecute the claim.  Oppn. at 8:17-19 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 731 (1972)).  *Sierra Club* is inapt because the Copyright Act identifies those who have the right to sue.  405 U.S. at 732; *Silvers*, 402 F.3d at 884.  More importantly, whatever Plaintiffs' claimed basis for their alleged right to sue, they transferred that right as well as future claims to their publishers.

Plaintiffs lack standing and, for that reason alone, summary judgment is proper.

### 3.   THERE IS NO GENUINE DISPUTE AS TO COPYING

As a separate ground for summary judgment, there is no genuine dispute as to the element of copying because *Playas* and *Shake It Off* are not strikingly similar and *Shake It Off*'s creators did not have access to *Playas*.  Defs' Memo. at 13-17.

### (a)   *Playas* and *Shake It Off* Are Not Strikingly Similar

#### (1)   Plaintiffs Bear the Burden of Proving Striking Similarity

In a clear misstatement of law, Plaintiffs argue they need not "carry the burden" of proving striking similarity because, they argue, Defendants bear the burden of proving independent creation.  Oppn. at 10:9-13.  Plaintiffs question the pedigree of

the principle that the burden of proving striking similarity lies with the plaintiff. *Id.* *at 10 n.13*. But striking similarity is one way to infer copying and it is black-letter copyright law that the plaintiff bears the burden of proving copying. *Skidmore*, 952 F.3d at 1064. *If the plaintiff carries that burden*, "[t]he burden shifts to the defendant to rebut that [showing] through proof of independent creation." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000), *overruled on other grounds by Skidmore*, 952 F.3d 1051. Plaintiffs string-cite cases noting that independent creation is an affirmative defense (Oppn. at 10 nn.14, 15), but that does not change one whit that Plaintiffs must first raise a genuine dispute that copying occurred.

### (2)    There Is No Genuine Dispute as to Striking Similarity

Plaintiffs wrongly claim that in another case this Court stated that a copyright infringement claim requires no evidence of copying, "actual or circumstantial," if works are strikingly similar. Oppn. at 8:23-9:2 (citing *Russell v. Walmart Inc.*, No. CV 19-5495, 2020 WL 5289889, at *7 (C.D. Cal. Aug. 17, 2020)). In reality, the Court stated that the copyright plaintiff must prove copying (2020 WL 5289889 at *5) and, absent direct evidence of copying, it may be shown by circumstantial evidence of either access plus substantial similarity, or striking similarity (*id.* at *7). In any event, Plaintiffs agree that striking similarity requires evidence that "the works are virtually identical" or "so strikingly similar as to preclude the possibility of independent creation." Oppn. at 9:4-6 (quoting *Russell*, 2020 WL 5289889, at *7). Nothing even close to that "high bar" is present here. *See Stabile v. Paul Smith Ltd.*, 137 F. Supp. 3d 1173, 1188 (C.D. Cal. 2015) (quoting *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1166–1167 (N.D. Cal. 2014) (works not strikingly similar)).

### (i)    Prof. Kajikawa's Bare Assertion of Striking Similarity Is Contrary to the Undisputed Facts

Plaintiffs rely on their musicologist, Prof. Kajikawa, but—in addition to the fact he is not trained in literary analysis—he relies on his own say-so, contrary to his admissions and the undisputed facts. *See* Facts 378, 379. He claims the songs have

"four-part sequences [that] are 'nearly identical' and use 'striking[ly] similar phraseology'" (Oppn. at 9:18-19), but *Shake It Off* does not have a four-part sequence of tautologies; the two songs' only similar words are different versions of "players gonna play" and "haters gonna hate" phrases; and the songs' other phrases are completely different. *See* Facts 497, 502; *see also* Doc. 99-12 at Facts 70, 117.

Moreover, the claimed similarities are *not* "so idiosyncratic … as to preclude coincidence." Oppn. at 9:14-18 (quoting *Heim v. Universal Pictures Co.*, 154 F.2d 480, 488 (2d Cir. 1946)). It is undisputed the "players gonna play" and "haters gonna hate" phrases in *Playas* are public domain, and Prof. Kajikawa admitted that they were part of the urban vocabulary before *Playas*. Defs' Ex. 128 (Kajikawa 2021 Depo.) (Doc. 134-22) at 116:21-117:2, 117:2. Plaintiffs' conjecture that R. Kelly's 2000 song copied the lyrics "players wanna play / ballers wanna ball / rollers wanna roll" from the then-unreleased 2001 *Playas* (Oppn. at 11 n.17) misses the point: R. Kelly's song is further proof that these phrases as well as tautologies were—as Prof. Kajikawa testified—commonplace by 2001.[3] *See* Defs' Ex. 36 (Doc. 92-42), Ex. 11 (Doc. 92-17) (Kajikawa 2021 Depo.) at 102:15-103:25, 104:2-5, 115:9-22, 116:11-20.

Nor is there anything "so idiosyncratic [about combining players gonna play and haters gonna hate phrases] as to preclude coincidence." It is undisputed that each is a commonplace public domain phrase predating *Playas*, and it also is undisputed that they were in common usage *together* before 2013. That includes with a third tautology in the lyrics of Eric Church's 2013 song, *The Outsiders*, which he performed

---

[3]     Plaintiffs' reliance on *Lester v. U2 Ltd.*, No. CV0706612, 2009 WL 10673938, at *3 (C.D. Cal. Apr. 10, 2009), also is misplaced. *Lester* makes only passing reference to striking similarity and found a genuine dispute as to substantial similarity in protected expression because of "essentially identical" melodies and musical structure. *Id.* Here, the only similarity is a few words in the two different versions of public domain player and hater phrases, and the idea of additional but different tautologies, none of which is protected. *See, e.g.,* Defs' Memo. ISO Mtn to Amend (Doc. 108-1) at 3-7; Defs' Reply ISO Mtn to Amend (Doc. 113) at 3-25).

at the 2013 Country Music Awards that Ms. Swift attended.  Plaintiffs advise the Court that *The Outsiders* "uses only the first part of the four-part sequence at issue." Oppn. at 12 n.17.  Actually, it includes the first half of the "four-part sequence at issue"— "the player's gonna play and a haters gonna hate"—and another, different tautology, "And a regulators born to regulate." Fact 372.  Plaintiffs again miss the point when they argue that *The Outsider* uses the phrases "only once outside of the chorus": *The Outsiders* is further proof that these phrases as well as tautologies were commonplace and known to the world by 2013 and before Ms. Swift wrote *Shake It Off* in 2014.

Plaintiffs cite cases for the proposition that copying an infringing copy is not a defense.[4]  But Plaintiffs' assumption that all uses of the players and haters phrases after 2001 are copied from *Playas* is both unproven and contrary to Prof. Kajikawa's admission that the phrases were already part of the urban vocabulary before *Playas*, Plaintiffs' admissions that the phrases are public domain, and the widespread use of the phrases prior to 2014 and *Shake It Off*'s creation. Fact 364.

In a culture suffused with the phrases "players gonna play" and "haters gonna hate," as well as the idea of tautologies, it is simply untenable for Prof. Kajikawa to claim the use of different versions of them in *Shake It Off* can only be due to "copying [*Playas*] rather than … coincidence, independent creation, or prior common source." 4 NIMMER ON COPYRIGHT § 13D.07[A] (quoting *Skidmore*, 952 F.3d at 1064).  Courts have routinely found a lack of striking similarity despite expert testimony far less fantastical—and contradictory, *see* Fact 379—as Prof. Kajikawa's testimony.  *See Stabile*, 137 F. Supp. 3d at 1190 (finding two works are not strikingly similar on summary judgment notwithstanding expert's contrary conclusion; gathering cases).

---

[4]  *Golden v. Michael Grecco Prods., Inc.*, 524 F. Supp. 3d 52, 66 (E.D.N.Y. 2021) (copying photograph off of others' Internet posting); *Enterprise Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*, No. 2:19-CV-1458, 2021 WL 511111, at *6 (W.D. Wash. Feb. 11, 2021) (copying of other's infringing charts no defense); *DC Comics v. Towle*, 802 F.3d 1012, 1024 (9th Cir. 2015) (copying from derivative work).

12

          (ii)    **The Court Can and Should Rule that the Songs Are Not Strikingly Similar**

Not satisfied with their expert's musings, Plaintiffs attribute to this Court a finding of "obviously high level of similarity" that it never in fact made. Oppn. at 9:22-24 (citing Pltfs' Ex. 25 (Doc. 143-7) at 12:6-13). Having apparently convinced themselves the Court believes the songs are strikingly similar, Plaintiffs argue that expert testimony is unnecessary. Of course, they cite no case where a Court has found striking similarity because of anything other than identical artwork or sculptural works, let alone different versions of two public domain phrases in song lyrics.[5]

But Plaintiffs are half-right: the Court needs no expert to conclude that Plaintiffs fall far short of establishing that "the only explanation for" *Shake It Off* including in 2014 versions of public domain and commonplace player and hater phrases "must be 'copying [of *Playas*] rather than … coincidence, independent creation, or prior common source.'" 4 Nimmer on Copyright § 13D.07[A] (quoting *Skidmore*, 952 F.3d at 1064). Plaintiffs do not raise a genuine dispute as to striking similarity.

    **(b)**    **Neither Do Plaintiffs Raise a Genuine Dispute as to Access**

          **(1)**    ***Skidmore* Did Not Do Away with or Dilute Access**

"[A]ccess" requires evidence that the defendant had a non-speculative, reasonable opportunity to copy the plaintiff's work. Defs' Memo. at 14-15. Plaintiffs suggest *Skidmore* changed that law to instead "require[] little showing nowadays" and even perhaps do away with access altogether. Oppn. at 12:4-8. However, *Skidmore* was specific and clear when it did change Circuit law—"We also join the majority of

---

[5]   *See Neman Bros. & Assocs., Inc. v. One Step Up Ltd.*, No. CV184297, 2019 WL 8129616, at \*9 (C.D. Cal. Nov. 25, 2019) (fabric designs); *Teespring, Inc. v. Puetz*, No. 15-CV-04149, 2017 WL 956633, at \*2 (N.D. Cal. Mar. 13, 2017) (visual designs); *Alpi Int'l, Ltd v. Anga Supply, LLC*, 118 F. Supp. 3d 1172, 1180 (N.D. Cal. 2015) (molded plastic toys); *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1111 (N.D. Cal. 2021) (video game designs); *Haas Automtn., Inc. v. Denny*, No. 2:12-CV-04779, 2013 WL 6502876, at \*8 (C.D. Cal. Dec. 4, 2013) (photographs).

circuits in rejecting the inverse ratio rule and overrule our precedent to the contrary"—and *Skidmore* supported that change with pages of historical and legal analyses.  952 F.3d at 1056, 1065-69.  There are no such assertions or analyses as to access.  Further, access was not even an issue.  *Id.*  As a result, the Court's references to access are at best dicta.  *Starz Entm't, LLC v. MGM Domestic Television Distribution, LLC*, 39 F.4th 1236, 1238 (9th Cir. 2022) (language in Supreme Court decision as to issue "noted, but [which the Court] did not pass upon, … is dicta" and did not change Ninth Circuit law).  Moreover, even the dicta does not help Plaintiffs.

In criticizing the "inverse ratio" rule, *Skidmore* observed that the rule "unfairly advantages those whose work is *most* accessible by lowering the standard of proof for similarity."  951 F.3d at 1068.  *Skidmore* gave the long-running comedy, *The Office*, as an example of "highly popular works … which are also highly accessible" on the Internet.  *Id.*  Plaintiffs have made no showing that *Playas* achieved anything like that status.  It is instead a song that had limited radio airplay for a few months in 2001, and even Plaintiffs' claimed music industry expert did not know of it.  Anderson Reply Decl. Ex. 157 (Kohn Depo.) at 88:18-22.  Given there are at least 800,000,000 videos on YouTube and 80,000,000 songs on Spotify,[6] any suggestion that a creator of *Shake It Off* came across *Playas* on the Internet "can only be described as the modern day equivalent of looking for a needle in a haystack—where the alleged seeker does not know the needle exists, and isn't looking for it."  *Batts v. Adams*, No. CV 10-8123, 2011 WL 13217923, at *4 (C.D. Cal. Feb. 8, 2011).[7]

///

_____

[6]   YouTube Statistics 2022 (globalmediainsight.com); Spotify — About Spotify.

[7]   Plaintiffs cite *Braham v. Sony/ATV Music Publ'g*, No. 215CV8422, 2015 WL 7074571, at *5 (C.D. Cal. Nov. 10, 2015), to argue linking to a posting on YouTube pleads access.  Plaintiffs state the ruling was "on a motion to dismiss," which alone undercuts its relevance, and it was a pro se complaint, which are "held to less stringent standards …."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

**(2)    Plaintiffs Concede They Have No Chain of Events Theory**

Plaintiffs concede that they did not provide *Playas* to anyone involved in the creation of *Shake It Off* and that no one has ever told Plaintiffs that *Playas* was provided to anyone involved in the creation of *Shake It Off*.  Plfts' Stmt. (Doc. 143-60) at 58, Facts 389-91.  Nor does Plaintiffs' Memorandum mention a chain of events theory of access.  In short, Plaintiffs concede they have no chain of events theory.

**(3)    *Playas* Was Not Widely Disseminated So as to Provide a Reasonable Opportunity for *Shake It Off*'s Creators to Hear It**

**(i)    Plaintiffs Fail to Present Evidence that *Playas* Was a Widely Disseminated Song in 2001**

Plaintiffs do not claim *Playas* received any award or was a top 10 song and, instead, Plaintiffs rely on a litany of claimed chart positions, record sales, and radio airplay, but all of it is at best hearsay.  While on summary judgment hearsay may be admissible as to facts that can be proven with admissible evidence at trial (*Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003)), that is not the case here.  For example, in *Fraser* the plaintiff's diary containing hearsay "recitations of events within [her] personal knowledge" could be considered on summary judgment because she could testify to them of her own personal knowledge.  *Id.* at 1037-38.  Here, however, Plaintiffs have no witnesses to testify to the facts they claim.  *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (*Fraser* inapplicable where plaintiff failed to show "the hearsay declarants would be available to testify at trial, or that its hearsay evidence would be admissible at trial in some other form.").

Plaintiffs assert that *Playas* reached various positions on Billboard charts, but at their depositions Plaintiffs testified they do not know what the claimed chart documents are or meant.  *See* Anderson Reply Decl. at ¶¶ 3-4, Ex. 152 at 217:18-219:12, Ex. 151 at 151:13-153:10.  Plaintiffs assert that a million copies of the album that included *Playas* were sold, but at their depositions they testified they do not know the extent of sales, and in discovery they never produced any accountings from the

record company or music publishers.  *Id.* Ex. 152 at 45:14-46:5, Ex. 151 at 44:8-23. Plaintiffs claim extensive airplay, but they have no witness with personal knowledge and, instead, rely on 2001 issues of a magazine whose contents when offered to prove radio airplay are inadmissible hearsay.  *See* Defs' Resp. to Pltfs' Facts 59-70.

Plaintiffs also rely on documents they failed to identify in their Rule 26 disclosures or their Rule 33 interrogatory responses and failed to produce in response to Rule 34 requests for production.  As a result, those documents are excluded by Rule 37(c)(1), and Plaintiffs have made no attempt whatsoever to provide substantial justification for withholding these documents, instead leaving it to Defendants to identify the new documents.  *See* Anderson Reply Decl. at 3-11, ¶¶ 12-16.

Plaintiffs have known since they filed this action in 2017 that they did not provide *Playas* to the creators of *Shake It Off*.  Yet Plaintiffs took no third-party depositions and served no third-party subpoenas, turning a blind eye to their obligation to gather and disclose admissible evidence to prove wide dissemination.  Now, they rely on hearsay on matters that, unlike the plaintiff in *Fraser*, Plaintiffs have testified they do not know.  They fail to prove the extent to which *Playas* was distributed.

        **(ii)**    **The Claimed Dissemination of *Playas* Did Not Provide Ms. Swift with a Non-Speculative, Reasonable Opportunity to Hear It**

Further, Plaintiffs' claimed dissemination of *Playas* did not provide the creators of *Shake It Off* with a reasonable, non-speculative opportunity to copy it.  As to Ms. Swift, Defendants proved, for example, that when *Playas* was released over two decades ago, she was a child in a small town in Pennsylvania, she followed country music, and the area's radio stations—which she did not listen to—played *Playas* only for a few months in 2001 and then only 83 times the whole year.  *See* Facts 424-430. Moreover, Billboard has different charts for different genres and there is no claim that *Playas* ever appeared on Billboard's charts for country or even popular music.

///

16

Plaintiffs demonstrate the importance of that point by citing *Straughter*, 2011 WL 3651350, at *13, where the district court's finding of access was expressly based on evidence that the album with the plaintiff's song appeared "on the Billboard Chart for R&B and hip hop—the same musical genres in which defendants perform." *See also Straughter v. Raymond*, No. CV 08-2170, 2011 WL 13176750, at *3 (C.D. Cal. Aug. 19, 2011) (same, and denying reconsideration). Ms. Swift has never performed in the genres in which Plaintiffs claim *Playas* charted, and while years later *and including after Shake It Off* she heard and played some hip hop songs, that does not establish access to that song. *Cf.* Pltfs' Stmt. at Facts 89-93. Also, the fact that *Playas* never charted on Billboard's popular music charts renders *Repp v. Webber*, 892 F. Supp. 552, 557 (S.D.N.Y. 1995), irrelevant. Plaintiffs' reliance on *Three Boys Music* is misplaced because the defendant accused of copying an Isley Brothers song admitted "being a huge fan of the Isley Brothers and a collector of their music." *Three Boys Music*, 212 F.3d. at 483-84. There is absolutely no such evidence here.

Plaintiffs also argue that Ms. Swift went to a mall—the Berkshire Mall in Wyomissing, Pennsylvania—"around the relevant time." Oppn. at 14 n.14. But there is no evidence that *Playas* was ever played there. Rather, Plaintiffs rely on what appears to be an April 2001 press release by a national chain of stores referring to plans to play the *Playas* video in unidentified "select Wet Seal and Contempo Stores," of which the same document states there were 568 stores in 42 states. *See* Defs' Resp. to Pltfs' Fact 53. Plaintiffs have no witness that the national chain proceeded with those plans. Relying instead on the truth of the hearsay in the press release, Plaintiffs merely speculate that (1) the 568 stores include one in the Berkshire Mall, (2) the national chain chose that store in the mall in the small town of Wyomissing as one of the 568 "select" stores across the United States to play the music video, (3) Ms. Swift happened to go in or be close enough to the Berkshire store when the *Playas* video was played when she was eleven years old, (4) thirteen years later she remembered the lyrics, and (5) she then included versions of those lyrics in *Shake It Off*. Plaintiffs

cannot create a genuine dispute by layers of conjecture ultimately based on broad hearsay that does not even mention the Berkshire Mall.

### (iii)   The Swedish Songwriters Also Did Not Have a Non-Speculative Opportunity to Hear *Playas* in Sweden

Plaintiffs also fail to present evidence that any wide dissemination of *Playas* provided a non-speculative, reasonable opportunity for *Shake It Off*'s two Swedish songwriters, Max Martin and Shellback, to hear *Playas*.  Indeed, Plaintiffs mention them only in a footnote and, in doing so, Plaintiffs mischaracterize the evidence.

Remarkably, Plaintiffs claim to have presented evidence that *Playas* charted in Sweden.  Oppn. at 14 n.19.  Actually, it did not: Plaintiffs' evidence shows only that it charted in the U.K. and Ireland.  *See* Defs' Resp. to Pltfs' Fact 56.  Plaintiffs also argue that Max Martin watched TRL once, when an artist performed a song he produced, and that since he worked with Britney Spears he might have watched when she "appeared on TRL at the same time as *Playas*."  *Id.*  However, Max Martin unequivocally testified that until this case he had never heard *Playas* and never heard of 3LW.  Sandberg Decl. (Doc. 134-6) at 3, ¶ 14; Anderson Reply Decl. Ex. 154 (Sandberg Depo.) at 39:14-16.  And Plaintiffs' speculation is incorrect: he watched The Backstreet Boys perform on TRL in 1999.  Sandberg Reply Decl. at 1, ¶ 2.

Plaintiffs also misstate that Shellback testified he had access to American R&B/Hip Hop but not to rap.  Instead, he stated "*I did not listen to or follow pop or R&B, and other than listening to some Snoop Dogg and Cypress Hills songs I also did not listen to or follow rap music.*"  Schuster Decl. (Doc. 134-7) at 1, ¶ 4.

Plaintiffs also fail to present evidence raising a genuine dispute as to copying.

### 4.   <u>THE ALLEGED USE ALSO IS WITHIN THE FAIR USE DOCTRINE</u>

In an effort to avoid that the alleged use of two public domain phrases and the idea of tautologies is within the fair use doctrine, Plaintiffs, as is their wont, cite a plethora of irrelevant cases and misrepresent the record.  There is nothing "subtle" or "evanescent" about the application of the statutory factors here, nor are there any

factual disputes as to those factors.  "The parties dispute only the ultimate conclusions to be drawn from th[e] facts" and, accordingly, fair use may be decided on summary judgment.  *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1175 (9th Cir. 2013).

> **(a)** **The Purpose and Character of the Use**
>
> > **(1)** ***Shake It Off's* Use of Player and Hater Phrases Is Transformative**

Plaintiffs, with their penchant for string citations, criticize Defendants for supposedly citing only one fair use case involving songs.  Oppn. at 19:1-3.  Plaintiffs are wrong,[8] and a string citation is not necessary to establish that the fair use doctrine applies to songs.  They also are wrong in arguing that *Shake It Off* does not use the public domain phrases to convey a different meaning and message.

Plaintiffs argue that *Shake It Off* conveys "the same fundamental message" that "we should not be concerned with what other people say and do, trusting in ourselves instead."  *Id.* at 19:14-16.  Plaintiffs ignore the undisputed facts that *Shake It Off* also adds to the phrases other lyrics as well as music that are very different than *Playas*.[9]  Moreover, Plaintiffs' generalization obscures that *Playas* uses the phrases to convey the message that the singer will not let her boyfriend go despite what people say, but *Shake It Off* uses the phrases to convey the message that people criticize her but she is going to find comfort in her music.  Expert testimony is not needed to confirm this is what the lyrics unambiguously state (*compare* Ex. 147 (Doc. 134-41) *with* Ex. 148 (Doc. 134-42)), but even Prof. Kajikawa admits this is "the literal reading of the lyrics."  Defs' Ex. 11 (Kajikawa 2001 Depo.) (Doc. 92-17) at 154:2-8, 265:2-266:2.

---

[8]     Defendants cited, *e.g.*, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) (copying of song a fair use); *Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986) (same); *see also Threshold Media Corp. v. Relativity Media, LLC*, No. CV 10-09318, 2013 WL 12331550 (C.D. Cal., Mar. 19, 2013) (copying of song in movie a fair use).

[9]     *See, e.g.*, Anderson Decl. Ex. 145 (Hall Depo.) (Doc. 134-39) at 209:11-17, 210:14-22, & Ex. 149 (Doc. 134-43); Ex. 144 (Butler Depo.) (Doc. 134-38) at 124:23-125:7, & Ex. 148 (Doc. 134-42).

He, as well as Plaintiffs, have admitted that *Shake It Off*'s meaning and message is very different from *Playas*.[10]

Plaintiffs cite *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020), for the proposition that a new work is not transformative if it "merely 'replace[d] original characters' and left the 'story' intact and its building material 'otherwise intact'…." Oppn. at 20:9-12 (quoting Defs' Memo. at 20:6-8). However, by Plaintiffs' own admissions the characters and story of *Playas* and *Shake It Off* are very different.[11]   Plaintiffs' claimed similarity at an abstract, unprotected level[12] is

---

[10]   *See, e.g.*, Defs' Ex. 128 (Kajikawa 2021 Depo.) (Doc. 134-22) at 262:21 (*Playas* is a romantic song in which the singer tells her boyfriend that so-called friends want to break them up), 137:17-18 (*Shake It Off* is a pop song); Ex. 11 (Doc. 92-17, Kajikawa 2021 Depo.) at 158:13-25 (in *Playas,* the singer tells her boyfriend she will stay true to him despite so-called friends trying to break them up), at 162:2-163-17 (nowhere in *Shake It Off* does the singer say that so-called friends are trying to break up a romantic relationship she has with someone or that he can trust her love), at 265:2-266:2 (different narrative in the two songs); Ex. 145 (Hall Depo.) (Doc. 134-39) at 158:8-159:3 (in *Playas*, the singer reassures her boyfriend that although her friends are trying to break them up she will love him forever), 211:1-9 (in *Shake It Off* the singer sings that people criticize her but she will shake it off and find comfort in her music); Ex. 144 (Butler Depo.) (Doc. 134-38) at 128:10-13 (in *Shake It Off*, the singer sings about people criticizing her but she is going to shake it off), at 129:2-22 (in *Shake It Off*, but not in *Playas*, the singer sings about people criticizing her for staying out too late and having nothing in her brain).

[11]   Plaintiffs argue the only difference is that *Shake It Off* repeats four times the last words in its versions of the phrases and that the Court rejected that as significant under the extrinsic test. Oppn at 21, ¶ 26. But that is not the only difference and it is undisputed the songs' meanings and messages are different. *See above* at 20 n.10.

[12]   17 U.S.C. § 102(b); *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076, 1081 (9th Cir. 2006) (similarities at a "general, abstract level" are not protectible), *overruled on other grounds by Skidmore*, 952 F.3d 1051. Also, Plaintiffs characterize their claimed similarity as both singers "proclaim that they will not pay attention to *their critics* and stay true to themselves…." (emphasis added). But in *Playas*, so-called friends *criticize the singer's boyfriend* and the singer will stay true *to him*, while in *Shake It Off*, unidentified people criticize the singer, who does not have a boyfriend and will shake off the criticism of herself.

irrelevant.  *See, SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1279 (9th Cir. 2013) (that *The Ed Sullivan Show* clip included Sullivan's unprotected "trademark gesticulation and style" and "charisma" irrelevant to fair use analyses).  Nor are Plaintiffs helped by their citation to cases where nearly entire works were copied.  *TCA Television Corp. v. McCollum*, 839 F.3d 168, 176 (2d Cir. 2016) (defendant's performance, "almost verbatim, [of] a little over a minute of" comedy routine); *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1154 (9th Cir. 2022) (magazine's use of entirety of plaintiff's photographs); *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 34 (2d Cir. 2021) (use of photograph), *cert. granted*, 142 S. Ct. 1412 (2022).  Plaintiffs cite *Blanch v. Koons*, 467 F.3d 244, 252 (2d Cir. 2006), but it *affirmed the grant of summary judgment* to a defendant who included a portion of the plaintiff's photograph in a larger work and for a different purpose.

Plaintiffs argue there is a triable issue as to whether the differences between *Shake It Off* and *Playas* are sufficient to qualify as transformative.  Oppn. at 21:12-15.  But the works are before the Court and the differences are both apparent and admitted.  *See, above* at 19-20 nn.10, 11.  As a result, summary judgment is proper. *Seltzer*, 725 F.3d at 1175.  Once again, Plaintiffs are not helped by the cases they cite. In *Frisby v. Sony Music Entm't*, the plaintiff's sampling of a sound recording was not transformative because he "supplie[d] no new information, aesthetics, insights or understandings."  No. CV 19-1712, 2021 WL 2325646, at *17 (C.D. Cal. Mar. 11, 2021), *aff'd in part, dismissed in part*, No. 21-55586, 2022 WL 2045340 (9th Cir. June 7, 2022).  Both *Brophy v. Almanzar*, No. SACV1701885, 2020 WL 8175605 (C.D. Cal. Dec. 4, 2020), and *Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010), are right of publicity cases, not copyright cases.  *Sedlik v. Drachenberg*, No. CV211102, 2022 WL 2784818 (C.D. Cal. May 31, 2022), involved an exact replica of a copyrighted photographic portrait.  And in *Furie v. Infowars, LLC*, the parties presented "widely conflicting evidence on the fair use defense…."  401 F. Supp. 3d 952, 974 (C.D. Cal. 2019).  Here, that *Shake It Off* uses the public domain phrases to

convey a very different message and meaning is apparent from the lyrics before the Court and is beyond dispute.

Plaintiffs' irrelevant cases and disregard of the actual lyrics in favor of generalizations do not change that *Shake It Off*'s use of the public domain phrases is transformative.

### (2)   *Shake It Off's* Use Is Not Primarily Commercial

The fact a work is commercial rather than nonprofit does not carry "presumptive force against a finding" of fair use. *Campbell*, 510 U.S. at 584. Instead, the court considers "the degree to which the new user exploits the copyright for commercial gain—as opposed to incidental use as part of a commercial enterprise." *Seltzer*, 725 F.3d at 1178. Plaintiffs argue that in *Seltzer* the plaintiff's artwork included in concert videos was not used for "marketing," while, they claim, Defendants used the allegedly copied phrases "for the very purpose of selling their song" because they are in the chorus. Oppn. at 17:26-18:8. But that is not "marketing." *See Seltzer*, 725 F.3d at 1178. Plaintiffs cite *Copeland v. Bieber*, 789 F.3d. 484 (4th Cir. 2015), but it not a fair use case, and *Arista Recs. LLC v. Myxer Inc.*, No. CV 08-03935, 2011 WL 11660773, at *36 (C.D. Cal. Apr. 1, 2011), involved exact copies of sound recordings and, as a result, the use was not transformative. Plaintiffs also cite *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 628 (9th Cir. 2003), but the Court recognized that "[t]he more transformative a new work, the less significant other inquiries, such as commercialism, become."

Plaintiffs argue that the importance of transformative use has been "heavily criticized" by a Seventh Circuit panel. Oppn. at 18 n.24 (citing *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 758 (7th Cir. 2014)). We are in the Ninth Circuit and bound by its law as well as *Campbell*. Moreover, Plaintiffs also show that our Circuit recently reaffirmed that "the more transformative the new work, the less will be the significance of other factors, like commercialism." *Id.* (quoting *McGucken v. Pub*

*Ocean Ltd.*, 42 F.4th 1149, 1158 (9th Cir. 2022)).  *Shake It Off*'s use of the public domain phrases is highly transformative and this factor cuts in favor of fair use.

**(b)   The Nature of Plaintiffs' Work**

While creative works tend to merit more protection than factual works, Plaintiffs discount that whether a work is unpublished or published "is a critical element of its 'nature.'"  *Harper & Row Publ., Inc. v. Nation Enters.*, 471 U.S. 539, 564 (1985).  "Published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred."  *Seltzer*, 725 F.3d at 1178 (quoting *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003)).  The fact that *Playas* is a published work "tends to weigh in favor of the fair use of that work."  *Id.*

None of the cases Plaintiffs cite change that conclusion.  Both *BMG Rts. Mgmt. (US) LLC v. Glob. Eagle Ent. Inc.*, No. 218CV03723, 2019 WL 6315533, at *9 (C.D. Cal. Sept. 9, 2019), and *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 531 (9th Cir. 2008), involved the wholesale copying of entire works without any transformation.  Similarly, *Frisby* involved unauthorized sampling without any transformation.  *Frisby*, 2021 WL 2325646, at *7, *17.  Plaintiffs also try to dismiss unhelpful cases on the grounds they involved parody or critiqued the original.  Oppn. at 24 n.31.  But "fair use protection is not limited to parodies of well-known works" (*Northland Fam. Plan. Clinic, Inc. v. Ctr. for Bio-Ethical Reform*, 868 F. Supp. 2d 962, 976 (C.D. Cal. 2012))—the non-parody fair use cases are legion—and may apply even if the new work "fails to comment on the original" (*Seltzer*, 725 F.3d at 1177).

Accordingly, the second factor also tilts in favor of fair use.

**(c)   The Amount and Substantiality of the Portion Allegedly Used**

Plaintiffs devote less than a sentence to the third factor, stating only that the Court's denial of summary judgment under the extrinsic test weighs against fair use "in relation to the third factor."  Oppn. at 23:13-14.  But that makes no sense because by definition fair use applies to uses a plaintiff claims are infringing, not to ones a court has determined are not infringing.

In a footnote, Plaintiffs cite a case in which *unpublished* photographs were used in their entirety (*Fournier v. Erickson*, 242 F. Supp. 2d 318, 335-36 (S.D.N.Y. 2003)) and also cite *Harper & Row*, 471 U.S. at 564-69, for the proposition that allegedly "taking the 'heart' of the original … always weighs against fair use…." Oppn. at 23 n.30. But *Harper* involved an *unpublished* work. Even uses of entire *published works* do not weigh against fair use when the amount is "no more than is necessary for [the] intended use." *Seltzer*, 725 F.3d at 1178-79 (In applying the third factor, "the extent of permissible copying varies with the purpose and character of the use." (quoting *Campbell,* 510 U.S. at 586–87)). Here, the alleged copying is limited to the two public domain phrases and two other but different tautologies, to convey the idea of ignoring what other people say. While copying is denied, Plaintiffs establish that no more was allegedly copied than necessary to convey that idea.

As a result, Plaintiffs are not helped by also citing *Frisby*, 2021 WL 2325646, at *16-17 (sampling of sound recording for no purpose other than "repackaging" sounds); *Morris v. Young*, 925 F. Supp. 2d 1078, 1087 (C.D. Cal. 2013) (defendant did not "use[] only the amount of the Subject Photograph necessary to convey [his] message."), and *Sedlik*, 2022 WL 2784818, at *10. And *Kienetz* supports Defendants since the court affirmed summary judgment on fair use grounds because only a small portion of the plaintiff's photograph—the photograph's depiction of the subject's smile and the outline of his head—was copied. 766 F.3d at 759–60. Here, Plaintiffs admit no music was copied and, of all of *Playas*' lyrics, Plaintiffs claim copying only of two public domain phrases and the idea of two more tautologies.

**(d)    The Effect on the Market for or Value of Plaintiffs' Work**

Defendants showed, and Plaintiffs do not dispute, that *Shake It Off* is not a market substitute for *Playas*—that is, no one would buy *Shake It Off* in order to hear *Playas*—and that Plaintiffs have shown no negative effect on *Playas*. Facts 505-08, 510-11. Plaintiffs argue "the likelihood of market harm may be presumed." Oppn. at 24:1-3 (quoting *Leadsinger*, 512 F.3d at 531). But, Plaintiffs rely on cases where,

unlike this one, there was no admission of lack of market harm.  *See, e.g.,* Fact 505; *Leadsinger*, 512 F.3d at 531; *Disney Enters, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 861 (9th Cir. 2017); *see also Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1119 (9th Cir. 2000) (presumption applied because plaintiff is a non-profit religious organization).

Plaintiffs argue that Defendants' alleged use deprived them of a license fee *for that alleged use*.  Oppn. at 25:1-4 (citing *Incredible Features, Inc. v. Backchina, LLC, No. CV 20-943, 2021 WL 6337194, at \*5 (C.D. Cal. Dec. 16, 2021)*).  But the plaintiffs in *Incredible* "are in the business of licensing the Subject Images for commercial gain" (2021 WL 6337194, at \*5 (C.D. Cal. Dec. 16, 2021)), while Plaintiffs produced no licenses for the right to use *Playas*' lyrics.  That also disposes of Plaintiffs' argument that "the sort of use" Defendants allegedly made would, if widespread, deprive Plaintiffs of licensing fees.  Oppn. at 25:7-14 (quoting *De Fontbrune v. Wofsy*, 39 F.4th 1214, 1220 (9th Cir. 2022)).  *De Fontbrune* involved the unauthorized use of 1,492 photographs that had previously been licensed.  In *Grant v. Trump*, 563 F. Supp. 3d 278, 288 (S.D.N.Y. 2021), the defendant used forty seconds of the plaintiff's song.  In *Elvis*, the plaintiffs owned or were in the business of licensing rights to video and audio recordings of Elvis Presley that were included in the defendant's documentary.  349 F.3d at 624-25.  Plaintiffs also cite *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 615 (2d Cir. 2006), but it rejected the plaintiff's attempt to "prevent others from entering fair use markets merely" by claiming a possible market.  That is what Plaintiffs seek to do here.

Ultimately, Plaintiffs fall back on the principle that market harm is less important than the other fair use factors, citing *Disney Enters., Inc. v. VidAngel, Inc.*, 371 F. Supp. 3d 708, 722 (C.D. Cal. 2019).  Plaintiffs' problems include that the other factors also favor fair use.

## 5.  **CONCLUSION**

Accordingly, summary judgment should be granted in Defendants' favor.

1

2      Dated: September 19, 2022                    /s/ Peter Anderson

3                                          Peter Anderson, Esq.
                                           Sean M. Sullivan, Esq.
4                                          Eric H. Lamm, Esq.
                                           DAVIS WRIGHT TREMAINE LLP
5                                          Attorneys for Defendants

6
                                           J. Douglas Baldridge, Esq.
7                                          Katherine Wright Morrone, Esq.
                                           VENABLE LLP
8                                          Co-counsel for Defendant
                                           TAYLOR SWIFT
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28