GERARD FOX LAW P.C.
Gerard P. Fox (SBN 151649)
gfox@gerardfoxlaw.com
Marina V. Bogorad (SBN 217524)
mbogorad@gerardfoxlaw.com
Olga Viner (SBN 282423)
oviner@gerardfoxlaw.com
1880 Century Park East, Suite 1410
Los Angeles, CA 90067
Telephone: (310) 441-0500
Facsimile: (310) 441-4447

*Attorneys for Plaintiffs*
SEAN HALL D.B.A. GIMME SOME HOT
SAUCE MUSIC AND NATHAN BUTLER
D.B.A. FAITH FORCE MUSIC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN HALL d.b.a. GIMME SOME HOT SAUCE MUSIC, *et al*., <br><br> Plaintiffs, <br><br> vs. <br><br> TAYLOR SWIFT, *et al*., <br><br> Defendants. | Case No.  2:17-cv-06882 MWF (ASx) <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERT REPORTS, OPINIONS, AND TESTIMONY** <br><br><br> Date:    October 24, 2022 <br> Time:    10:00 a.m. <br> Ctrm.:   5A <br> Judge:   Hon. Michael W. Fitzgerald |

# **TABLE OF CONTENTS**

I.   Applicable Legal Standard ........................................................................2

II.  Mr. Kohn Is Qualified To Provide His Expert Opinions In This Case, His Apportionment Opinions Are Relevant And Reliable, And Defendants' Challenges To Mr. Kohn's Testimony Should Be Rejected Because They Go To Weight, Not Admissibility..........................................3

   A.   Mr. Kohn Is Qualified To Opine On Apportionment .........................3

   B.   Mr. Kohn's Opinions Are Relevant And Reliable ..............................6

   C.   Defendants' Remaining Objections to Mr. Kohn's Opinions Go To Weight, Not Admissibility ........................................8

   D.   Mr. Kohn's Criticisms Of Defendants' Experts Are Admissible ....................10

III. Prof. Loren Kajikawa Is Qualified To Provide His Expert Opinions In This Case And Defendants' Challenges To Prof. Kajikawa's Testimony Should Be Rejected Because They Go To Weight, Not Admissibility........................................11

   A.   Prof. Kajikawa Is Qualified To Properly Analyze The Competing Musical Compositions In This Case..................................12

   B.   Defendants' Remaining Objections To Prof. Kajikawa's Testimony Should Be Rejected Because They Go To Weight, Not Admissibility ........................................15

   C.   Prof. Kajikawa's Criticisms of Defendants' Experts Are Admissible........................................20

IV.  Juli Saitz's Opinion That Taxes Are Not Deductible in Calculating Profits and Her Criticism of Mr. Massarsky's Damages Report Are Admissible ........................................21

i

# TABLE OF AUTHORITIES

**Cases**

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
  508 F. Supp. 798 (S.D.N.Y. 1981) ............................................................... 7, 8

*Andreas Carlsson Prod. AB v. Barnes*,
  2016 WL 11499657 (C.D. Cal. Apr. 14, 2016) .......................................... 17

*Baxter v. MCA*,
  812 F.2d 421 (9th Cir. 1987) .......................................................................... 14

*Benay v. Warner Bros Ent.*,
  607 F.3d 620 (9th Cir. 2010) ................................................................... 17, 18

*Bergen v. F/V St. Patrick*,
  816 F.2d 1345 (9th Cir. 1987) ...................................................................... 16

*Bernal v. Paradigm Talent and Literary* Agency,
  788 F. Supp. 2d 1043 (C.D. Cal. 2010) ................................................. 11, 14

*Bitton v. International Transport, Inc.*,
  437 F.2d 817 (9th Cir. 1970) .......................................................................... 14

*Boosey & Hawkes Music Publishers, Ltd. v. Buena Vista Home Video*,
  145 F. 3d 481 (2d Dist. 1988) .......................................................................... 4

*Bridgeport Music v. Dimension Films*,
  410 F.3d 796 (6th Cir. 2005) ........................................................................... 4

*Copeland v. Bieber*,
  789 F.3d 484 (4th Cir. 2015) ........................................................................... 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) .......................................................................... 2, 6, 16

*Eldred v. Ashcroft*,
  537 U.S. 186 (2003) ........................................................................................ 4

*Engenium Solutions, Inc. v. Symphonic Techs., Inc.*,
  924 F. Supp. 2d 757 (S.D. Tex. 2013) ......................................................... 14

*Fahmy v. Jay-Z*,
  2015 U.S. Dist. LEXIS 129446 (C.D. Cal. Sept. 24, 2015) ..................... 3, 7

*Faulkner v. Arista Records LLC*,
  46 F. Supp. 3d 365 (S.D.N.Y. 2014) .............................................................. 9

*Friedman v. Medjet Assistance, LLC*,
  2010 U.S. Dist. LEXIS 145223 (C.D. Cal. 2010) ...................................... 13

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.*,
  462 F.3d 1072 (9th Cir. 2006) ...................................................................... 19

ii

*Furniture Dealer.Net v. Amazon.com*,
  2020 U.S. Dist. LEXIS 203345 (D. Minn. Mar. 25, 2022) .......................... 8

*Gaste v. Kaiserman*,
  863 F.2d 1061 (2d Cir. 1988) .................................................... 6, 8

*Gray v. Perry*,
  2018 WL 3954008 (C.D. Cal. Aug. 13, 2018) .................................... 15

*Gray v. Perry*,
  2019 U.S. Dist. LEXIS 113807 (C.D. Cal. July 5, 2019) ...................... 9, 15

*Hall v. Swift*,
  2021 U.S. Dist. LEXIS 245750 (C.D. Cal. Dec. 9, 2021) ............... 1, 12, 17

*Handgarter v. Provident Life & Accident Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) ..................................................... 2, 3

*Humetrix, Inc. v. Gemplus S.C.A.*,
  268 F.3d 910 (9th Cir. 2001) ............................................... 9, 12, 21

*In re Silicone Gel Breast Implants Prod. Liab. Litig.*,
  318 F. Supp. 2d 879 (C.D. Cal. 2004) ......................................... 2, 13

*Jeff Benton Homes v. Alabama Heritage Homes, Inc.*,
  929 F. Supp. 2d 1231 (N.D. Ala. 2013) ..................................... 11, 14

*Kouf v. Walt Disney Pictures & Television*,
  16 F.3d 1042 (9th Cir. 1994) ...................................................... 19

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................. 2, 15

*Larson v. Kempker*,
  404 F.3d 936 (8th Cir. 2005) ....................................................... 2

*May v. Sony Music Ent.*,
  399 F. Supp. 3d 169 (S.D.N.Y. 2019) ........................................... 17

*Moghaddam v. Jaguar Land Rover N. Am., LLC*,
  2018 U.S. Dist. LEXIS 226507 (C.D. Cal. Sept. 19, 2018) ...................... 8

*Newton v. Diamond*,
  388 F.3d 1189 (9th Cir. 2004) ...................................................... 7

*Olson v. Ford Motor Co.*,
  481 F.3d 619 (8th Cir. 2007) ........................................................ 3

*Renteria v. Ethicon, Inc.*,
  2020 U.S. Dist. LEXIS 242116 (C.D. Cal. Nov. 18, 2020) ..................... 1, 2

*Shaw v. Lindheim*,
  919 F.2d 1353 (9th Cir. 1990) ................................................. 17, 19

iii

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
309 U.S. 390 (1940) ................................................................................passim

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
81 F.2d 49 (2d Dist. 1936) ...............................................................................8

*Slip-N-Slide Records, Inc. v. TVT Records, LLC*,
2007 WL 3232274 (S.D. Fla. Oct. 31, 2007) ....................................................9

*Smith v. Ford Motor Co.*,
215 F.3d 713 (7th Cir. 2000) ..........................................................................16

*Stilwell v. Smith & Nephew, Inc.*,
482 F.3d 1187 (9th Cir. 2007) ..........................................................................9

*Straughter v. Raymond*,
2011 WL 3651350 (C.D. Cal. Aug. 19, 2011) .................................................15

*Swirsky v. Carey*,
376 F.3d 841 (9th Cir. 2004) ....................................................................15, 16

*Thomas v. Newton Int'l Enters.*,
42 F.3d 1266 (9th Cir. 1994) ............................................................................2

*Three Boys Music Corp. v. Bolton*,
212 F.3d 477 (9th Cir. 2000) ................................................................7, 14, 15

*Ty Inc. v. Publ'ns Int'l, Ltd.*,
2004 U.S. Dist. LEXIS 1237 (N.D. Ill. July 1, 2004) ....................................10

*Ty, Inc. v. Publ'ns Int'l, LTD.*,
2004 U.S. Dist. LEXIS 20942 (N.D. Ill. Oct. 19, 2004) .............................5, 15

*Ty, Inc. v. Publ'ns Int'l, LTD.*,
2004 U.S. Dist. LEXIS 21765 (N.D. Ill. Oct. 24, 2008) .................................20

*Tyus v. Urban Search Mgmt.*,
120 F.3d 256 (7th Cir. 1996) ............................................................................5

*U.S. v. Little*,
753 F.2d 1420 (9th Cir. 1984) ........................................................................14

*United States v. Hankey*,
203 F.3d 1160 (9th Cir. 2000) ..........................................................................5

*United States v. Senchenko*,
133 F.3d 1153 (9th Cir. 1998) ........................................................................14

*United States v. W.R. Grace*,
504 F.3d 745 (9th Cir. 2007) ............................................................................3

*Watt v. Butler*,
744 F. Supp. 2d, 1315 (N.D. Ga. Sept. 28, 2010) .....................................13, 14

*Woods v. Bourne Co.*,
   60 F.3d 978 (2d Cir. 1995) ................................................................ 4

**Statutes**

17 U.S.C. § 504 ............................................................................... 8, 21

**Rules**

Fed. R. Evid., Rule 702 .......................................................... passim

"The inquiry into admissibility of expert opinion is a *flexible one*, where shaky but admissible evidence is to be attacked on cross-examination, contrary evidence and attention to the burden of proof, not exclusion. Rule 702 should be applied with a liberal thrust favoring admission." *Renteria v. Ethicon, Inc.*, 2020 U.S. Dist. LEXIS 242116, at *9 (C.D. Cal. Nov. 18, 2020) (Fitzgerald, J.).[1] Under this flexible rubric, Defendants' Motion to Exclude Plaintiffs' Expert Reports, Opinions and Testimony (the "Motion") should be denied.

*First*, Mr. Kohn's opinions as to apportionment in this case are based on his extensive experience in the music industry, his review of the evidence and applicable legal standards. Because apportionment is a challenging and nuanced issue, expert testimony on apportionment is traditionally permitted and helpful to the trier of fact. Therefore, Plaintiffs should be permitted to present all of Mr. Kohn's apportionment opinions to the jury.

*Second*, Defendants' motion as to Prof. Kajikawa should be denied because Prof. Kajikawa has demonstrated he is qualified and Defendant' factual and legal assertions to the contrary are unsupported. The arguments Defendants make in their Motion to exclude Prof. Kajikawa are really disagreements with Prof. Kajikawa's *conclusions*, disguised as objections to his qualifications and methodology. Indeed, this Court already rejected similar attacks on Prof. Kajikawa. *See Hall v. Swift*, 2021 U.S. Dist. LEXIS 245750, at *16 (C.D. Cal. Dec. 9, 2021) (Fitzgerald, J.) (noting this is a "battle of the experts"). As Defendants' objections to Ms. Saitz's testimony similarly go to the weight, and not admissibility, Defendants' Motion as to Ms. Saitz' expert testimony should be denied as well.

In light of the foregoing, as well as what follows, Defendants' Motion should be denied in its entirety.

---

[1] All internal alterations, quotation marks, footnotes and citations herein are omitted, and all emphasis is added unless otherwise noted. All "D-Ex." references are to Defendants' exhibits to the Declaration of Peter Anderson in support of Defendants' Motion to Exclude Plaintiffs' Expert Reports, Opinions, and Testimony (Dkt. No. 146-2). All "P-Ex." references are to Plaintiffs' exhibits to the concurrently filed Declaration of Gerard P. Fox.

1

## I.  **Applicable Legal Standard**

2      *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) – and Fed. R.

3  Evid. 702 – articulate a liberal standard for the admission of expert testimony.  The threshold

4  for admissibility is low.  *Daubert*, 509 U.S. at 597 (1993) (expert testimony is admissible if

5  it "rests on a reliable foundation and is relevant to the task at hand.").  While *Daubert*

6  highlighted several indicia of reliability, the Supreme Court has since made clear that the

7  *Daubert* test is "flexible" and that "*Daubert*'s list of specific factors neither necessitates nor

8  exclusively applies to all experts or in every case." *Kumho Tire Co. v. Carmichael*, 526 U.S.

9  137, 141 (1999).

10      Similarly, in applying Rule 702, the Ninth Circuit "contemplates a broad conception of

11  expert qualifications." *Handgarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015

12  (9th Cir. 2004) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)).

13  "Rule 702 is broadly phrased and intended to embrace more than a narrow definition of

14  qualified expert." *Thomas*, 42 F.3d at 1269.  "A court abuses its discretion when it excludes

15  expert testimony solely on the ground that the witness's qualifications are not sufficiently

16  specific if the witness is generally qualified." *In re Silicone Gel Breast Implants Prod. Liab.*

17  *Litig.*, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004).  Even where a court finds that an expert is

18  not sufficiently specialized, this is not grounds for exclusion. *Id.*  ("A lack of specialization

19  affects the weight of the expert's testimony, not it's admissibility.").[2]

20      "Moreover, the inquiry into admissibility of expert opinion is a flexible one, where

21  shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and

22  attention to the burden of proof, not exclusion." *Renteria v. Ethicon, Inc.*, 2020 U.S. Dist.

23  LEXIS 242116, at * 9 (Nov. 18, 2020) (Fitzgerald, J.).  "Rule 702 should be applied with a

24

25

26  ─────────────
[2]      Although the Court determines the admissibility of expert testimony as a matter of law,
27  ***the weight of expert testimony*** is determined by the jury.  To exclude expert testimony, a
district court must find that the testimony is so "fundamentally unreliable" that it does not
28  assist the jury, otherwise, the factual basis of the testimony goes to the weight of the evidence.
*Larson v. Kempker*, 404 F.3d 936, 940-41 (8th Cir. 2005).

liberal thrust favoring admission." *Id.*[3]

"When an expert's testimony is not scientific or technical, the reliability of that testimony need not be based on 'a particular methodology or technical framework,' but instead can be found reliable based on the expert's knowledge and experience alone." *Fahmy v. Jay-Z*, 2015 U.S. Dist. LEXIS 129446, at *3 (C.D. Cal. Sept. 24, 2015) (quoting *Hangarter v. Provident Life & Assc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004)). The relevant inquiry is simply whether the expert's testimony, viewed in a "holistic" manner, is reliable. *See United States v. W.R. Grace*, 504 F.3d 745, 762 (9th Cir. 2007).

## II. Mr. Kohn Is Qualified To Provide His Expert Opinions In This Case, His Apportionment Opinions Are Relevant And Reliable, And Defendants' Challenges To Mr. Kohn's Testimony Should Be Rejected Because They Go To Weight, Not Admissibility

Defendants seek to exclude the testimony of Bob Kohn, Plaintiffs' designated apportionment expert, contending that Mr. Kohn is not qualified to render his opinions, that his testimony will not help the jury, and his conclusions are not based on sufficient facts or data and are the product of unreliable methods. (*See* Mot. at 2:24-10:3.) In addition, Defendants seek to exclude Mr. Kohn as a rebuttal witness to Defendants' designated experts, Barry Massarsky, Prof. Nathaniel Lewis, and Jim Parham on similar grounds. (*See* Mot. at 10:4-13:28.) For the reasons set forth below, Defendants' motion should be denied.

### A. Mr. Kohn Is Qualified To Opine On Apportionment

In this case, Mr. Kohn opines that the reasonable portion of Defendants' profits from *Shake It Off* attributable to Defendants' infringement of *Playas* is 50%. (D-Ex. 1 [Dkt. No. 146-3] at 4.) Concerning this issue of apportionment (*i.e.*, determining which elements of profits are attributable (or not) to the alleged infringement), courts have explained that it need not be proven with "mathematical exactness but only a reasonable approximation." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 397-98 (1940) (affirming an apportionment

---

[3]   *See also Olson v. Ford Motor Co.*, 481 F.3d 619, 626 (8th Cir. 2007) (Fed. R. Evid. 702 does not permit a judge to preclude expert testimony just because it seems doubtful or tenuous).

of defendants' profits based on "the testimony of experts and persons informed by observation and experience).

There is no doubt that Mr. Kohn is qualified to provide expert testimony in this case, given his professional career in the music industry spanning over four decades.  As set forth more extensively in his expert report and Curriculum Vitae (*see* D-Ex. 1 [Dkt. No. 146-3] at 1-3, 11-13 & 16-17), Mr. Kohn's expertise includes business practices within the music and publishing industries, with a focus on the licensing of rights in musical compositions.[4]  Upon graduating from Loyola Law School, Mr. Kohn went to work for noted entertainment lawyer Mickey Rudin, representing the likes of Frank Sinatra, Liza Minelli, Steely Dan, Irvin Azoff, Warner Bros. Music, Warner Bros. Publications, 20th Century Fox Studios, and other music industry clients.  (D-Ex. 1 at 2.).  In addition to his experience as a transactional attorney for music industry clients, Mr. Kohn has also served as an executive for several music industry companies.  (P-Ex. 5 at 46:2-8 [executive and co-founder of record label] & 46:9-47:25 [marketing executive for independent record label].)   In 2006, Mr. Kohn co-founded RoyaltyShare, Inc., the premier provider of licensing, revenue and royalty processing services that assisted record companies with licensing recordings to digital music service providers and with calculating their royalty obligations to recording artists, record producers, and music publishers.  (D-Ex. 1 [Dkt. No. 146-3] at 2.)

Mr. Kohn is the co-author of *Kohn on Music Licensing*, 5th Edition (Wolters Kluwer, 2019), an 1800-page treatise on the customs and practices in the music industry, which has been cited extensively by courts nationwide as well as the Supreme Court.[5]   (*Id.* at 1-2.)

---

[4]   Mr. Kohn earned his Bachelor of Science degree business administration, with a major in finance and a minor in economics, from California State University, Northridge (D-Ex. 1 at 17 & P-Ex. 5 at 44:6-9), and Master of Laws (LL.M.) degree from Columbia Law School, where was a Visiting Scholar, conducting academic research, until 2018 (D-Ex. 1 at 17).

[5]   *See, e.g., Eldred v. Ashcroft*, 537 U.S. 186, fn. 21 (2003) (cited for music-industry practices concerning the assignment of copyrights); *Bridgeport Music v. Dimension Films*, 410 F.3d 796, fn. 18 (6th Cir. 2005) (cited for the use of digital samples of existing sound recordings in new sound recordings); *Woods v. Bourne Co.*, 60 F.3d 978 (2d Cir. 1995) (cited for entertainment industry customs and practices concerning performing rights administered by ASCPA); *Boosey & Hawkes Music Publishers, Ltd. v. Buena Vista Home Video*, 145 F. 3d 481 (2d Dist. 1988) (same).

Among other things, the treatise addresses the customs and practices of co-ownership of songs and the use of copyrighted material from one song to another song, such as where portions of a recording and its underlying song are "sampled" and used in another recording and its underlying song. (*Id.*) Mr. Kohn has previously served as an expert in at least five legal proceedings, four concerning copyright issues.  (*Id.* at 2-3.)  Finally, Mr. Kohn is the co-inventor of the patent for a means of tracking revenues and producing royalty statements arising from the exploitation of musical works and sound recordings.  (*Id.* at 3.)

Mr. Kohn's expert reports and the opinions set forth therein are based on his extensive knowledge of the customs and practices of the music industry, coupled with his understanding of business and legal transactions in the music industry, and his professional experience in the music industry, including in negotiating, in both a business and legal capacity, for rights in musical works and sound recordings.  In light of the liberal standard governing the admissibility of expert testimony and Mr. Kohn's prolific experience, as set forth above, there can be no question that he is sufficiently qualified to offer expert testimony in this matter. *See* 2000 Advisory Committee Notes to Fed. R. Evid. 702 (recognizing that "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of expert testimony."); *See also Ty, Inc. v. Publ'ns Int'l, LTD.*, 2004 U.S. Dist. LEXIS 20942, at *6 (N.D. Ill. Oct. 19, 2004) (rejecting *Daubert* challenge to apportionment expert in copyright case, recognizing that "an expert informed by observation and experience might determine the relevant importance of the infringing content to the value of the infringing work as a whole"); *see also United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (in considering the admissibility of testimony based on some 'other specialized knowledge,' Rule 702 generally is construed liberally").[6]

---

[6]     The fact that Mr. Kohn does not have experience in apportioning profits between music and lyrics specifically does not preclude him from testifying as an expert on apportionment in this case.  All that the law requires of an expert is that "the person possesses expertise in a field" and that his court testimony "adheres to the same standards of intellectual rigor that are demanded in [his] professional work." *Tyus v. Urban Search Mgmt.*, 120 F.3d 256, 263 (7th Cir. 1996).  Mr. Kohn has over 40 years of experience in the music industry, and as a result has first-hand knowledge of what drives profits.  *See Gaste v. Kaiserman*, 863 F.2d 1061,

As *Daubert* itself makes clear, the standards that may apply to scientific or quantitative testimony are often inapplicable to interdisciplinary approaches of the type Mr. Kohn employs. *See Daubert*, 509 U.S. at 593. The pertinent question is not whether his testimony satisfies the standards applicable to statisticians and survey experts; it is whether his testimony is relevant and reliable. *See Daubert*, 509 U.S. at 597; *Sheldon*, 309 U.S. at 408 ("[W]hat is required [in a copyright infringement damages apportionment] is not mathematical exactness but only a reasonable approximation. That, after all, is a matter of judgment and the testimony of those who are informed by observational experience may be not only helpful but, as we have said, may be indispensable."). Accordingly, Defendants' objections as to Mr. Kohn's qualifications in this case should be rejected.

### B.  Mr. Kohn's Opinions Are Relevant And Reliable

In his expert report, Mr. Kohn opines that the reasonable portion of the profits from *Shake It Off* attributable to the infringement of *Playas* is 50%. (D-Ex. 1 [Dkt. No. 146-3] at 4.) To support this conclusion, Mr. Kohn first notes that the phrases at issue are "at the heart" of *Playas* (because, amongst other things, they make up the song's title, appears in the chorus, and are repeated throughout), and that Plaintiffs' unique selection and arrangement of those phrases is what gave *Playas* its popular appeal and commercial success. (*Id.* at 5-7.) Mr. Kohn further notes that these lyrics also appear in the chorus of *Shake It Off*, which "tends to be the most memorable part of the song and, for that reason, often becomes the most popular and valuable part of the song." (*See id.* at 6 & 7 ["*Shake It Off* uses nearly identical words in nearly identical ways as the basis for the chorus of each song, again the most memorable part of each song"].)[7] In considering what portion of the profits of *Shake It Off* are attributable to *Playas*, Mr. Kohn weighed "Plaintiffs' copyrighted phrase[s] quite heavily" because "without the heart of the lyrics" taken from *Playas*, "the rest of the lyrics in *Shake It Off* lose all of its

---

1308 (2d Cir. 1988) (permitting retired music publisher to opine on apportionment of lyrics in infringed song).

[7]    While Mr. Kohn relies on aspects of Prof. Kajikawa's expert opinion in this case, he did not do so blindly as Defendants suggest. (*See, e.g.*, P-Ex. 5 at 32:12-16 & 179:6-180:19 (performing independent research regarding Ms. Swift's move from country music star to pop star with the release of *Shake It Off* and the *1989* album).

force and meaning, and energy." (*Id.* at 8.)  Mr. Kohn further noted the significance and role of the lyrics in question in helping to propel Ms. Swift to pop music stardom, and Ms. Swift's decision to obtain trademark registration for the mark "Players Gonna Play" just before the release of *Shake It Off*.  (P-Ex. 5 at 73:1-75:8; *see also* D-Ex. 3 at 1-2.)

Regarding apportionment, expert testimony has long been recognized to be helpful to the trier of fact.  *Sheldon*, 309 U.S. at 480 (noting that expert testimony on apportionment "may be not only helpful but, as we have said, may be indispensable.").  Mr. Kohn's apportionment opinion is relevant to the central issues in this case and will assist the trier of fact in assessing what portion of Defendants' profits from *Shake It Off* can be attributable to Plaintiffs' alleged infringement.  *See ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 508 F. Supp. 798, 807 (S.D.N.Y. 1981), modified, 722 F.2d 988, 801 (2d Cir. 1983) (in a music copyright case, considering the "much-touted 'hook'" as a factor in apportionment analysis); *Newton v. Diamond*, 388 F.3d 1189, 1196 (9th Cir. 2004) (considering whether portions of a song constituted the "heart or hook" of a song for purposes of determining its qualitative significance); *Copeland v. Bieber*, 789 F.3d 484, 493-94 (4th Cir. 2015) (concluding that "choruses or hooks of popular music are often ***disproportionately significant***…")[8]; *Fahmy v. Jay-Z*, 2015 U.S. Dist. LEXIS 129446, at *69-70 (C.D. Cal. Sept. 24, 2015) (denying motion to exclude expert's testimony regarding the significance of the plaintiff's song on defendant's song, and finding evidence of the popularity of plaintiff's song may be relevant to assessing the impact of the song's popularity on the success of the infringing work); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000) (jury properly relied upon evidence that that the infringing song "was the album's lead single…" to reach a 28% apportionment);

---

[8]    In *Copeland*, the court explained that "the chorus – often termed the 'hook,' in recognition of its power to keep a listener coming ack for more – that many listeners will recognize immediately or hear in their minds when a song title is mentioned.  As the part of a song that is most often repeated and remembered, a chorus hook is important not only aesthetically ***but also commercially***, where it may be central to a song's economic success." 789 F.3d at 493-94 (concluding that "choruses or hooks of popular music songs are ***disproportionately significant***, relative to the amount of time or number of measures they occupy. Virtually no hit record is without a bit of music or words so compelling that it worms its way into one's memory and won't go away.")

*Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Dist. 1936) ("It is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his work he did not pirate.")

### C. Defendants' Remaining Objections to Mr. Kohn's Opinions Go To Weight, Not Admissibility

Defendants' remaining objections to Mr. Kohn's report and opinion go to the weight of his testimony, not to its admissibility. For example, while admitting that Mr. Kohn considered the contribution of factors other than the copyrighted work in his apportionment analysis, Defendants argue that he simply ignored these factors because he was not qualified to analyze them. (Mot. at 8:17-25). Aside from this being factually wrong (*see e.g.*, P-Ex. 5 at 80:3-24 [discussing Ms. Swift's success as a country music performer as a factor in apportioning profits], 179:6-180:16 [discussing Ms. Swift's shift from country music star to pop star with the release of *Shake It Off*] & 184:5-188:10 [same])[9], Mr. Kohn's analysis as to the portion of the profits that are receivable for infringement of the copyrighted work is consistent with the apportionment standard set forth in 17 U.S.C. § 504(b). Thus, Defendants' claim is nothing more than "a distinction without a difference." *See Furniture Dealer.Net v. Amazon.com*, No. 18-cv-232 (JRT/HB), 2020 U.S. Dist. LEXIS 203345, at *13, n.2 (D. Minn. Mar. 25, 2022).[10] At its core, Defendants' issue with Mr. Kohn's opinion here is simply that they disagree with it. This does not preclude Mr. Kohn from testifying; rather, it goes to the weight of his testimony. *Moghaddam v. Jaguar Land Rover N. Am., LLC*, 2018 U.S. Dist. LEXIS 226507, at *26-27 (C.D. Cal. Sept. 19, 2018) (Fitzgerald, J.) (denying motion to exclude expert whose "opinions are based upon a review of a number of sources and his personal experience in the industry" and noting that "[t]o the extent Defendant believes

---

[9] In determining how much income is attributable to one factor over another is "not an area susceptible to precise measurement." *Sheldon*, 309 U.S. at 408; *see also ABKCO Music, Inc.*, 508 F. Supp. at 807 (observing in a music copyright case, apportionment is "not an area susceptible to precise measurement"); *Gaste*, 863 F.2d at 1069 (same).

[10] The purpose of an apportionment analysis is to ascertain if the portion of Defendants' profits is the result of factors other than the copyrighted work. 17 U.S.C. § 504(b). Or, to phrase it as its corollary, which is the determination that actually needs to be made, what portion of the profits are recoverable for infringement of the copyrighted work?

[Plaintiff's expert] failed to consider all relevant information or that his testimony will have no foundation [or is not supported by valid reasoning or methodology], Defendant may elicit such weaknesses during cross-examination."); *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001) ("To the extent [defendant] sought to challenge the correctness of [plaintiff's] expert's testimony, its recourse is not exclusion of the testimony, but, rather, refutation of it by cross-examination and by the testimony of its own expert witnesses.")

Defendants also claim that Mr. Kohn's apportionment methodology itself is subjective and unreliable. Given that there is no definitive methodology for determining apportionment in copyright infringement cases (*see supra* fn. 10), any alleged flaws in Mr. Kohn's methodology or the evidence he relied upon in reaching his opinions in this case are matters for cross-examination and argument. *Id.; see also Gray v. Perry*, 2019 U.S. Dist. LEXIS 113807, at *65-67 (C.D. Cal. July 5, 2019) (denying *Daubert* motion to exclude plaintiffs' expert testimony on apportionment in infringement case, noting that defendants' issues "go to the weight of [the expert's] testimony rather than its admissibility and can addressed on cross-examination"); *Humetrix, Inc.*, 268 F.3d at 919 ("To the extent [defendant] sought to challenge the correctness of [plaintiff's] expert's testimony, its recourse is not exclusion of the testimony, but, rather, refutation of it by cross-examination and by the testimony of its own expert witnesses."); *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) ("The test for reliability, however, is not the correctness of the expert's conclusions, but the soundness in his methodology."); *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-CIV, 2007 WL 3232274, at *13 (S.D. Fla. Oct. 31, 2007) (expert's failure to consider certain marketing expenses incurred, calculation of profits which failed include numerous line items for expenses including marketing and promotion expenses, advertising, and royalties, among other claimed deficiencies go to the weight of the expert's testimony, not to its legal admissibility reliability. Resolution of those claimed deficiencies were matters for the jury to consider); *Faulkner v. Arista Records LLC*, 46 F. Supp. 3d 365, 386 (S.D.N.Y. 2014) (party's disagreement on expert's opinion or damage calculation can and should be addressed on cross examination in front of the jury, not excluded under *Daubert*).

Here, Defendants' attacks on Mr. Kohn's opinions are directed at his election of a methodology other than the purportedly "superior" methodology used by Defendants' own experts. Such matters would go to the weight of the evidence and evidence credibility, and should be handled via cross-examination, not outright exclusion of an expert witness on a subjection (apportionment) regarding which the Supreme Court said that expert testimony may be "indispensable." *Sheldon*, 309 U.S. at 408.

At the end of the day, Mr. Kohn's apportionment methodology carefully considers the available evidence in light of a set of factors that facilitate the evaluation of the contribution of various factors to Defendants' profits. Even if Defendants criticize the weight of each factor of what Defendants assert is Mr. Kohn's analysis is not the product of reliable principles and methods, these criticisms go to weight/credibility and not admissibility. *Ty Inc. v. Publ'ns Int'l, Ltd.*, No. 99 C 5565, 2004 U.S. Dist. LEXIS 1237, at * 19 (N.D. Ill. July 1, 2004) (*Daubert* motion denied as to damages expert in copyright case who used a "self-created" apportionment formula). For the foregoing reasons, Mr. Kohn should be permitted to testify on all aspects of his apportionment opinions.

## D.   Mr. Kohn's Criticisms Of Defendants' Experts Are Admissible

Defendants also seek to preclude Mr. Kohn from testifying against Defendants' experts, arguing that he is not qualified to critique the methodologies and qualifications of these witnesses, and that his critiques of these witnesses are irrelevant. (Mot. at 10:4-13:28.)

Defendants claim that Mr. Kohn's challenges to Mr. Massarsky's report are irrelevant and should be excluded. (*See* Mot. at 11:7-12:11.) As Defendants' criticism here go to weight/credibility, not admissibility, they should be rejected, and Mr. Kohn should be permitted to provide expert testimony in rebuttal to Mr. Massarsky's report.[11]

Next, Defendants argue that Mr. Kohn is not qualified to critique Prof. Lewis' opinions

---

[11]    *See supra* at 8 (discussing the significance of Ms. Swift's transition from country music start to pop star with the release of *Shake It Off* and the *1989* album to Mr. Kohn's apportionment analysis) & 6-7 (discussing the importance of the allegedly infringing lyrics to Mr. Kohn's apportionment analysis).

because he is not a literary expert[12] and his arguments are "non sequiturs." (Mot. at 12:19-22.) But Mr. Kohn's criticism of Prof. Lewis' testimony (that Prof. Lewis did not consider the significance of the infringed lyrics, especially in the context of Ms. Swift's trademark registration of "Players Gonna Play") does not require knowledge of musicology. Rather, applying a similar analysis to that described in his expert report, Mr. Kohn will critique Prof. Lewis' opinion regarding the elements of *Shake It Off* which contributed to the song's commercial success. As stated above, Mr. Kohn is qualified to offer testimony of this kind.

Similarly, Mr. Kohn is qualified to opine as an expert on the factors contributing to *Shake It Off*'s profits, and to criticize Mr. Parham's failure to take certain factors into account. (*See, e.g.*, D-Ex. 7 [Dkt. No. 146-5] at 8 [criticizing Mr. Parham's opinion for failing to consider the effect Ms. Swift's use of the infringing work while transitioning from a country music to pop star had on *Shake It Off*'s commercial success.)

Therefore, the reasons set forth above, Mr. Kohn's testimony on apportionment or his rebuttal testimony should not be excluded.

### III. Prof. Loren Kajikawa Is Qualified To Provide His Expert Opinions In This Case And Defendants' Challenges To Prof. Kajikawa's Testimony Should Be Rejected Because They Go To Weight, Not Admissibility

In denying Defendants' motion for summary judgment as to the extrinsic test, this Court was "unpersuaded by Defendants' contention that Plaintiffs' expert, Professor Kajikawa, did not properly analyze the competing musical compositions or that he is somehow not qualified to do so." (*See* Dkt. No. 104.) Nevertheless, Defendants ask this

---

[12] While Mr. Kohn does not intend to testify as a literary expert, he has taken literature courses (P-Ex. 5 at 35:21) and included literature as part of his curriculum at the Monterey College School of Law (*id.* at 38:20-25). *See Bernal v. Paradigm Talent and Literary* Agency, 788 F. Supp. 2d 1043, 1062, n.14 (C.D. Cal. 2010) (in denying *Daubert* motions in a copyright infringement case, noting that "*there is no particular type of background that qualifies one to compare [a literary work]*… Thus, while a person with a great deal of experience writing literary works and reading manuscripts or television scrips certainly has the necessary background, an avid movie buff and television watcher might also be qualified to render an opinion in this case."); *Jeff Benton Homes v. Alabama Heritage Homes, Inc.*, 929 F. Supp. 2d 1231, 1240 (N.D. Ala. 2013) (qualifying architect as an expert even though he never designed any homes in the relevant market); *Bernal*, 788 F. Supp. 2d at 1061-62 (noting that an avid movie buff and television watcher might also be qualified to render an opinion about the comparison of screenplays).)

11

Court to resolve "what is essentially simply a battle of the experts." (*Id.*)[13] The Court should decline to do so once again.

The crux of Plaintiffs' claim is Defendants' infringement of their four-part "lyrical sequence" of groups of actors engaged in the activities named after those actors to express a familiar truism in a new way: that people should stay true to themselves despite what others may say or do. Plaintiffs' designated expert musicologist, Prof. Kajikawa, intends to testify that the infringed expression to be nothing short of "an original innovation, aptly summarizing the infringement by opining that Defendants' chorus "not only uses the same words and the same phrases, but it does so in combination and as part of a similar four-part poetic sequence that expresses a similar idea." (P-Ex. 2 at ¶¶ 28 & 55.) Defendants seek to exclude Prof. Kajikawa's expert reports and opinions in this case, claiming that he failed to apply the extrinsic test, and instead provides his subjective views, thereby straying into the intrinsic test where expert testimony is not allowed." (Mot. at 14:15-17.) As demonstrated below, Prof. Kajikawa is imminently qualified to render his opinions in this case and Defendants' objections to his testimony go to the weight of his testimony, and not its admissibility.

**A.** **Prof. Kajikawa Is Qualified To Properly Analyze The Competing Musical Compositions In This Case**

Prof. Kajikawa makes his living through the study and teaching of music and lyrics, and his experience could not be more on point. A review of his Curriculum Vitae reveals that he is well-qualified. *See* D-Ex. 9 [Dkt. No. 146-11] at 9-10. Just last year, this Court was "unpersuaded by Defendants' contention that Plaintiffs' expert, [Prof.] Kajikawa, did not properly analyze the competing musical compositions or that he is somehow not qualified to do so." *Hall v. Swift*, 2021 U.S. Dist. LEXIS 245750, at *15-16 (Fitzgerald, J.) (noting that "Prof. Kajikawa identifies himself as an academic musicologist, lists his numerous areas of study (including specific music genres and sonic/poetic qualities of song lyrics in American popular music), states that he conducted an objective comparative analysis of the two works,

---

[13]     *Humetrix*, 268 F.3d at 919 ("[a]uthority to determine the victor in such a 'battle of expert witnesses' is properly reposed in the jury.")

and reviewed Defendants' expert reports.").

Although Defendants attempt to limit Prof. Kajikawa's qualifications by painting him as an expert in "race and politics" (Mot. at 15:1), Prof. Kajikawa's studies and education are in musicology, and that is the discipline he applied in writing his expert reports.  (P-Ex. 3 at 13:22-25; 16:10-12 & 17:4-6 [Master of Arts degree and Ph.D. in Musicology from UCLA], 17:10-22 [subject of doctoral thesis was the culture, politics and history of African American music]; P-Ex. 1 at 2.)  Prof. Kajikawa is also the chair of the Music Program at George Washington University's Corcoran School of the Arts & Design.  *See* Declaration of Loren Kajikawa, dated August 23, 2021 ("Prof. Kajikawa Decl.") [Dkt. No. 98-2] at ¶ 2 & D-Ex. 9 [Dkt. No. 146-11] at 9).  Additionally, he is the co-editor of the Tracking Pop series at the University of Michigan Press as well as a member of the editorial board for the Journal of Popular music Studies.  *Id.*  Prof. Kajikawa's main area of research and teaching is American music of the twentieth and twenty-first centuries, with special attention to the dynamics of race and politics.  *Id.*[14]

Defendants take issue with Prof. Kajikawa's qualifications largely because "he is not a literary expert."  (Mot. at 18:8-9.)  However, Prof. Kajikawa is not subject to exclusion as an expert merely because he is not a "literary expert."  *Watt v. Butler*, 744 F. Supp. 2d, 1315, 1320 (N.D. Ga. Sept. 28, 2010) (denying motion to exclude plaintiff's expert ethnomusicologist in copyright infringement case filed against rap music and rejecting argument that his opinion focuses too heavily on the similarities between the two songs while disregarding the differences).  Moreover, it is well-established that "[a] lack of specialization affects the weight of the expert's testimony, not its admissibility."  *In re Silicone Gel Breast Implants Products Liability Litigation*, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004); *Friedman v. Medjet Assistance,* LLC, 2010 U.S. Dist. LEXIS 145223, at *13-14 (C.D. Cal. 2010) ("If the expert meets liberal minimum qualifications [under Rule 702], then the level of the expert's expertise goes to credibility and weight, not admissibility."); *see also Bitton v.*

---

[14]    Prof. Kajikawa's further credentials, honors, awards, publications, and qualifications are listed in his Curriculum Vitae.  *See* D-Ex. 9 [Dkt. No. 146-11].

*International Transport, Inc.*, 437 F.2d 817, 822 (9th Cir. 1970) (expert's purported "lack of specific experience goes to the weight not admissibility"); *U.S. v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984) (rejecting argument that expert was not qualified because he was an income tax specialist as opposed to a partnership tax specialist, and finding that the lack of specific experience went to the weight, not the admissibility of evidence); *United States v. Senchenko*, 133 F.3d 1153, 1157 (9th Cir. 1998) (defendant's arguments regarding an expert's qualifications went "to the weight of [the] testimony, [but did] not undermine its admissibility").

Notably, Prof. Kajikawa need not be a "literary expert" to opine on substantial similarity where, as here, the works at issue are ***non-narrative*** and Plaintiffs' copyright infringement claim goes to the selection and arrangement of elements in *Playas* and *Shake It Off*.[15] In this vein, Prof. Kajikawa is eminently qualified to assess similarities in the selection and arrangement of the two songs[16] given his academic and professional experience in the

---

[15] Even if *Playas* and *Shake It Off* were viewed as "narrative" works (they are not), no particular "literary" expertise is required to analyze and compare the constituent elements of a narrative work (*e.g.,* plot, characters, pace, mood and dialogue). Numerous courts have found academics, critics, or professionals with industry experience in a particular genre of popular entertainment qualified under *Daubert* to render expert opinions comparing the similarities and dissimilarities in two works. *See, e.g., Watt*, 744 F. Supp. 2d at 1320 (noting that the *Daubert* standard, which arose in the context of scientific or mathematical research and analysis, is often difficult to apply in the context of copyright infringement involving expression or artistic work); *Bernal v. Paradigm Talent and Literary Agency*, 788 F. Supp. 2d 1043, 1061 (C.D. Cal. 2010); *Engenium Solutions, Inc. v. Symphonic Techs., Inc.*, 924 F. Supp. 2d 757, 770 (S.D. Tex. 2013) (denying motion to exclude expert based on qualifications even though expert did not have any experience in comparing works at issue); *Jeff Benton Homes*, 929 F. Supp. 2d at 1240 (architect qualified as expert based on his many years of analyzing substantial similarities of two floor plan designs even though architect never designed any homes in the relevant market).

[16] Here, the expression and arrangement at issue consists of (at least) the following elements, exhibiting Plaintiffs' choices to: (1) combine tautological phrases, (2) via parallel lyrics, (3) each bearing grammatical structure "Xers gonna X," (4) use of four such phrases in the chorus, (5) two of which are variations on playa/hata phrases invoked to open the chorus, (6) each dealing with groups of "Xers" that bear certain negative connotations, (7) with the combined effect of expressing a larger idea "that we should not be concerned with what other people say or do, trusting in ourselves instead." (*See* P-Ex. 1 at ¶¶ 1 & 9, 11-12 & 20; P-Ex. 2 at ¶¶ 20 & 51-53; Prof. Kajikawa Decl. [Dkt. No. 98-2] at ¶¶ 14-18; P-Ex. 3 at 113:4-11.) The combined effect of these similarities satisfies the extrinsic test of substantial similarity. *See Three Boys Music Corp.*, 212 F.3d at 485 (substantial similarity may be based upon a finding of a unique combination of otherwise unprotectable elements); *Baxter v. MCA*, 812 F.2d 421, 425 (9th Cir. 1987) (the works at issue should be compared in their entirety, including both protectable and unprotectable elements, to determine whether a significant

study of selection and arrangement of words and phrases in pop culture and popular music. Furthermore, because this case involves lyrics contained in two musical compositions, Prof. Kajikawa, a musicologist trained in musical analysis and transcription, is best equipped at picking up what a song means and comparing musical lyrics. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) ("no one denies that an expert might draw a conclusion from a set of observations based on his extensive and specialized experience").

Prof. Kajikawa's background and experience satisfies the *minimum* liberal requirements for admissibility of expert witness testimony. Based on his experience and scholarship, Prof. Kajikawa bears the necessary qualifications to engage in the type of comparative discussion set forth in his expert reports. *See Gray v. Perry*, *supra*, 2019 U.S. Dist. LEXIS 113807, at \*45; *see also Ty, Inc. v. Publ'ns Int'l, LTD.*, *supra*, 2004 U.S. Dist. LEXIS 20942, at \*6 ("an expert informed by observation might determine the relative importance of the infringing content to the value of the infringing work as a whole."). Accordingly, Defendants' grounds for excluding Prof. Kajikawa's opinions based on his qualifications are unsupportable and should be rejected.

## B.  Defendants' Remaining Objections To Prof. Kajikawa's Testimony Should Be Rejected Because They Go To Weight, Not Admissibility

Defendants' remaining objections to Prof. Kajikawa's reports and testimony go to the weight of his testimony, not its admissibility. First, Defendants' claim that Prof. Kajikawa's expert opinion in this case will not assist the trier of fact is based on a mischaracterization of Prof. Kajikawa's opinion as to the originality of the lyrics in *Playas*. (*See* Mot. at 15:2-6 & 15:25 [casting Prof. Kajikawa's "view that only the racially insensitive could double

---

qualitative or quantitative portion of plaintiff's work was appropriated); *Gray v. Perry*, 2018 WL 3954008, at \*7 (C.D. Cal. Aug. 13, 2018) (finding genuine issue of material fact precluded summary judgment where report by plaintiff's expert concluded that that the allegedly infringing song "clearly borrows a memorable and highly characteristic combination of discrete and specific musical elements…"), *Straughter v. Raymond*, 2011 WL 3651350, at \*15-16 (C.D. Cal. Aug. 19, 2011) ("The Court finds that … expert testimony [introduced by plaintiff] is sufficient to raise a genuine issue of material fact as to substantial and striking similarity. As in *Three Boys*, [the expert] has identified particular features of the works which, taken in combination, can support a finding of substantial similarity."), citing *Swirsky*, 376 F.3d at 851-52 and *Thee Boys*, 212 F.3d at 845.

Plaintiffs' claim"].)  Rather, Prof. Kajikawa's opinion that "[a]ttempts to dismiss the lyrics in question as banal (too brief and unoriginal to merit protection) signal an inability or unwillingness to recognize the validity of black vernacular expression" that exhibits creativity by utilizing common phrases into "a formal poetic strategy that expresses a new meaning" (P-Ex. 1 at ¶ 18; *see also* P-Ex. 2 at ¶ 48; *accord* P-Ex. 3 at 214:5-215:12 [cautioning against "rush[ing] to judgment in this case" given that "there's a long and documented history of the way in which black speech has been mocked… and used as evidence of black inferiority."] This opinion is clearly relevant to Plaintiffs' copyright infringement claim for copyright infringement and will help the trier of fact.  *See Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004) (the proponent of a copyright infringement claim must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original); *Daubert*, 509 U.S. at 591 (expert testimony is relevant if it will assist the trier of fact to understand or determine a fact in issue).

Defendants next contend that Prof. Kajikawa's reports and opinion are not based on sufficient facts or data because "the one claimed similarity he relies upon is his repeated assertion that *Playas* and *Shake It Off* each has a four-part sequence of tautological phrases." (Mot. at 16:1-14 [noting that "nowhere in *Shake It off* is there a sequence of four tautological phrases, as in *Playas*."].)  Not only does this argument go to the weight of Prof. Kajikawa's testimony, and not its admissibility,[17] but it mischaracterizes all of the songs' objective similarities that Prof. Kajikawa has testified to at length.  *See e.g.*, *supra* at 15, fn. 17.

Finally, Defendants take issue with Prof. Kajikawa's methodology in applying the extrinsic test, arguing that Prof. Kajikawa's opinions are not the product of reliable principles and methods.  (*See* Mot. at 16:17-18:15.)  In doing so, Defendants once again mistakenly fault

---

[17]    *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n. 5 (9th Cir. 1987) ("[T]he weakness in the underpinnings of [expert] opinions may be developed upon cross-examination" because "such weakness goes to the weight and credibility of the testimony" as opposed to its admissibility); *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (citing *Daubert*, 509 U.S. at 595 (when evaluating opinions offered by an expert witness, the "soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact.").

Prof. Kajikawa for failing to analyze the substantial similarity by employing the comparison structure of the elements that apply to **narrative** literary works.  *See Andreas Carlsson Prod. AB v. Barnes*, 2016 WL 11499657, at *16 (C.D. Cal. Apr. 14, 2016) (observing that it is "[i]n comparing **narrative-driven** works" that "the extrinsic test compares the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the works at issue"), citing *Benay v. Warner Bros Ent.*, 607 F.3d 620, 624 (9th Cir. 2010).  But "pop songs do not function exactly like books," and, as both Plaintiffs' and Defendants' experts agree, the song lyrics at issue here are non-narrative.[18]  As such, it is pointless to compare them by the elements that are ill-fitted to their nature.[19]  (*See Hall v. Swift*, *supra*, 2021 U.S. Dist. LEXIS 245750, at *14-15 (Fitzgerald, J.) ("it is not clear that all of the factors discussed by Defendants' experts are necessary here (e.g., … mood or pace for literary works.").

Importantly, ***the Ninth Circuit does not appear to have ever applied Defendants' "narrative" comparison structure to song lyrics***, and courts that analyzed song lyrics as literary creations (*i.e.*, divorced from the underlying music) have applied an entirely different comparison structure to gauge whether two sets of lyrics are substantially similar – namely, the fragmented literal similarity test.  *See May v. Sony Music Ent.*, 399 F. Supp. 3d 169, 180-81 & 185-86 (S.D.N.Y. 2019).  Clearly, Prof. Kajikawa's analysis under this comparison structure (*see* P-Ex. 1 at 2-8) qualifies as a proper methodology in assessing substantial similarity under the extrinsic test.  In any event, whether Prof. Kajikawa used an appropriate "methodology" is not the appropriate inquiry under *Daubert*.  Rather, the inquiry should be whether Prof. Kajikawa has sufficient knowledge and expertise.

---

[18]   P-Ex. 2 at ¶ 37; *see also id.* at ¶ 17 (explaining that "these are not books or films, let alone narrative-driven, story-telling songs"); *accord* P-Ex. 4 at 7-8 (Prof. Lewis confirming that, unlike narrative driven songs, the works at issue here "center on the communications of feelings and ideas rather than on a series of experienced events"); Prof. Kajikawa Decl. (Dkt. No. 98-2) at ¶ 11 (confirming that "many popular songs are less concerned with narrative and more focused on emotional expression" and opining that both works at issue here "center on the communication of feelings and ideas rather than on narrative"); P-Ex. 3 at 264:3-22 & 266:13-17 (agreeing that neither song is "really a storytelling song[]" and that "neither of these are narrative driven songs" but rather "[b]oth of these songs are centered more around an expression of emotion and resolve in the face of criticism.").

[19]   *Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990) (accounting for the nature of the underlying work in its substantial similarity analysis).

1

2

3

4

Even if analyzed under the set of "narrative" comparison factors, Prof. Kajikawa's opinion that there are substantial similarities between the two works[20] and the claimed differences do not defeat them[21] is more than enough to satisfy *Daubert*'s relaxed standard for admissibility.[22]   In any event, Defendants' focus on painting Prof. Kajikawa's identified

5

---

[20]   *Benay*, 607 F.3d at 624 ("[T]he [extrinsic test] focuses on articulable similarities…").

[21]   Defendants argue that Prof. Kajikawa's opinion focuses too heavily on the similarities between *Playas* and *Shake It Off*, while disregarding the differences in plot, sequence of events and dialogue. (Mot. at 17:8-18:2.) This objection, however, goes to the weight and accuracy of Prof. Kajikawa's testimony, not the reliability of his methodology. Furthermore, while Defendants make much of the fact that Prof. Kajikawa does not properly consider the differences between *Playas* and *Shake It Off*, this objection goes to the significance that Prof. Kajikawa attaches to those differences. (*See, e.g.*, P-Ex. 2 at ¶ 47 [finding the interruption of lyrics in *Shake It* Off's chorus insignificant because it represents merely a change in geography, as the same message that appears in the middle of the sequence in Defendants' chorus also appears at the end of Plaintiffs' chorus].) Defendants' expert, Prof. Lewis, gives great weight to the dissimilarities between *Playas* and *Shake It Off*.   Indeed, he finds these dissimilarities fatal to Plaintiffs' case. (D-Ex. 5 [Dkt. No. 146-7] at 6-7 [Prof. Lewis opining that Defendants' repetition is a key difference between the two works].)   Prof. Kajikawa disagrees, explaining that the differences between the two songs are merely "a change in geography" having little bearing on the overall issue of copying.  (Dkt. No. 98-2 at ¶ 15.) Thus, to the extent Defendants intend to argue that Prof. Kajikawa's reasoning and, ultimately, his conclusions, are faulty, they will be able to do so at trial.  Defendants have offered no evidence, however, showing Prof. Kajikawa's methods are unreliable to warrant exclusion under *Daubert*.

[22]   As to plot, *see* P-Ex. 3 at 263:9-24 & 266:3-24; P-Ex. 1 at ¶¶ 1, & 11-12; P-Ex. 2 at ¶¶ 12-18 & ¶ 20; and Prof. Kajikawa Decl. (Dkt. No. 98-2) at ¶ 21(b).  As to sequence of events, *see* Prof. Kajikawa Decl. (Dkt. No. 98-2) at ¶ 21(c) (sequencing similarities include the introduction to both songs' discussion of the criticism the speaker receives from outsiders); P-Ex. 3 at 147:8-148:3 & 148:15-149:10 (similarities in first and second part of sequence as mentioning gossipers followed by the speaker countering the gossipers), *see also id.* at 276:2-277:5 (noting similarities in sequence of events include threats from outsiders followed by responding to those threats); P-Ex. 1 at ¶ 20 (discussing similarity in both songs' first verse both calling attention to gossipy people); P-Ex. 2 at ¶¶ 14-18 (criticizing Prof. Lewis for omitting the allegedly infringing expression from his sequence analysis and opining that the claimed differences outside of the four-part sequence at issue "have no bearing" on the similarities between the choruses). As to characters, *see* P-Ex. 3 at 144:5-145:25 (both songs' first "[m]aking statements about what people are saying about the speaker"), 147:8-148:10 (both songs' pre-chorus performs similar function "of countering the gossipers that are mentioned, the people that have ill intent that are based on the first verse and again set up the chorus, where there is some similarities"), 202:9-203:6 & 269:25-271:6; P-Ex. 1 at ¶¶ 9-14; P-Ex. 2 at ¶¶ 3 (noting that both songs' first verse mentions "people" as characters that spread rumors about the speaker), 6 ("both songs feature speakers determined to maintain healthy relationships," be it a romantic relationship or a relationship with oneself), 7 (opining that the "people in *Playas* and the "so-called friends" in *Shake It Off* both "represent abstract and not fully formed threats to the speaker") & 9-11 (opining that both songs share a protagonist positioned against the world, who is "determined to maintain healthy relationships by staying above the fray and ignoring untrustworthy people," even though it is a romantic relationship in *Playas* and a "relationship with oneself" in *Shake It Off*.)  As to theme, *see* P-Ex. 2 at ¶¶ 19-23 (opining that the core theme shared by the songs at issue is "maintaining healthy relationships in the face of social adversity," even though it is "a relationship with oneself"

1  similarities in the songs' objective elements as supposedly too abstract or general (*see* Mot.

2  at 16:27 & 18:3-4)[23] is really a disagreement with Prof. Kajikawa's **conclusions**, disguised

3  as objections to his methodology and not proper to consider under *Daubert*.

4

---

5  that is discussed in *Shake It Off*, and the "small differences in setting" are not relevant to the
core shared theme); P-Ex. 1 at ¶ 1; P-Ex. 3 at 200:11-201:15.   As to mood, *see* P-Ex. 2 at ¶¶

6  24-25 (discounting certain mood differences as insignificant: "(b)oth are pop songs, and both
come across as playful and affirming"); P-Ex. 3 at 137:15-18.  As to pace, *see* P-Ex. 2 at ¶¶

7  26-28 (discounting the claimed differences in pace as insufficient to overcome the
"remarkably similar" choruses and strongly disagreeing that Plaintiffs' lyrics lack wordplay

8  or are not otherwise playful). As to dialogue/style, *see* P-Ex. 1 at ¶¶ 1 & 11-12 (both songs
use "striking[ly] similar phraseology to "position the singer (narrator) above the fray"); P-Ex.

9  2 at ¶¶. 20 (underscoring the "same basic theme, such as 'maintaining healthy relationships
in the face of social adversity,'" be it a "romantic" or a "relationship with oneself"), 29-34 &

10  55 (observing that Prof. Lewis "overlooks" the shared wordplay and other literary devices in
the choruses and the claimed "stylistic differences have no bearing on the central charges in

11  this case;" also observing that both choruses employ "the same colloquial, AAVE-derived
terms" and "not only use the same words and the same phrases, but [they] do[] so in

12  combination and as part of a similar four-part poetic sequence that expresses a similar idea");
P-Ex. 3 at 184:19-185:18 (same), 187:13-188:2, 188:13-189:17, 195:8-19 & 198:18-199:6

13  (*Shake It Off* "adopts a four-part sequence substituting heartbreakers and fakers for ballers
and shot callers to make the same point: The world is full of untrustworthy people, but we

14  should ignore them. As in *Playas*, the words player and hater are not used to label individual
people, but to position the singer above the fray."); Prof. Kajikawa Decl. (Dkt. No. 98-2) at ¶

15  17 (disputing that any added repetitions to *Shake It Off* alter the basic poetic structure and
meaning of the four-part sequence which is substantially similar to that of Plaintiffs' chorus);

16  P-Ex. 2 at ¶ 47 (same) & 50-51 (noting that although the second part of the structure in *Shake
It Off* is paraphrased rather than copied, this paraphrasing "share[s] the same 'phraseology'"

17  and concluding that both second parts of both sequences are "entirely similar in form and
function."); P-Ex. 3 at 197:20-199:6 (same); P-Ex. 2 at ¶ 52 (opining that despite the insertion

18  of lyrics in *Shake It Off*, "the overall function and meaning of the poetic sequence remains
intact"); P-Ex. 3 at 227:15-229:14 (observing that interruptive lyrics in Defendants' song

19  "correspond to three lines of lyrics at the end" of Plaintiffs' chorus and explaining that the
interrupting lyrics "do[] the same work" as the affirmative statement or statement of resolve"

20  that is found at the end of Plaintiffs' chorus.").

21  [23]   Defendants' cases on this point deal primarily with works that were dissimilar at even
a general level and are thus readily distinguishable.  *See Funky Films, Inc. v. Time Warner*

22  *Ent. Co., L.P.*, 462 F.3d 1072, 1078 (9th Cir. 2006) (distinguishing a murder mystery from a
character exploration story, the latter being "not so much a story about death as it is about the

23  way the characters struggle with life in the wake of the cataclysmic death of the father"); *Kouf*
*v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (discounting the

24  "general" similarity on the level of "a life struggle of kids fighting insurmountable dangers"
after determining that one work "celebrate[d] family values," while the other depict[ed] the

25  triumph of good over evil.").  *But see Shaw*, 919 F.2d at 1362-64 (9th Cir. 1990) (where two
literary works dealt with the same idea of "a man who will equalize the odds, a lone man

26  working outside the system to protect his underdog clients and to resolve their predicaments
as a part of his rough notion of justice," finding that while there were "significant similarities

27  and differences," the works exhibited, *inter alia*, "[t]he most striking similarity" between
"central characters," which was "their self-assuredness, and unshakable faith in the

28  satisfactory outcome of any difficult situation;" accordingly, "reasonable minds might differ
as to the substantial similarity between the protected *ideas*") (original emphasis).

### C.   Prof. Kajikawa's Criticisms of Defendants' Experts Are Admissible

Defendants also seek to preclude Prof. Kajikawa from testifying in rebuttal to the testimony of Defendants' experts, Mr. Massarsky, Prof. Lewis, and Mr. Parham. (Mot. at 18:17-21:23.)   Defendants claim that Prof. Kajikawa is not qualified to critique Mr. Massarsky's opinion because he is not an economist or a music industry expert.  (Mot. at 18:25-19:1.)   But Prof. Kajikawa's criticisms of Mr. Massarsky's report do not require knowledge of economics. Rather, Prof. Kajikawa raises three discrete objections to Mr. Massarsky's report.  First, he notes that Mr. Massarsky did not consider that "a song's artistic qualities – it's words and music – are fundamental to its success." (D-Ex. 10 [Dkt. No. 146-12] at ¶ 6.)  Second, Prof. Kajikawa notes Mr. Massarsky's analysis "presents *Shake It Off* as a passive beneficiary of Ms. Swift's popularity, rather than active force in shaping it" or her "larger career trajectory…"  (*Id.* at ¶ 7.)   Third, Prof. Kajikawa notes that Ryan Adamas' version of *Shake It Off* is different in "tone" and did not meet the critical acclaim that Ms. Swift's *Shake It Off* achieved.  (*Id.* at ¶¶ 5-6 & 14-16.)  All three comments are based on Prof. Kajikawa's background and experience as an academic musicologist, with a focus on numerous areas of study including specific genres of music and sonic/poetic qualities of song lyrics in American popular music. As stated above, Prof. Kajikawa is qualified to offer testimony of this kind.

Defendants next claim that Prof. Kajikawa is not qualified to rebut Prof. Lewis because he is not qualified to present a comparative literary analysis as he is not a "literary expert." For the reasons set forth above (*see above* at 14-16), the Court should reject this argument once and for all.  Moreover, while Prof. Lewis focused on "lyrics that have no bearing on the central charges in this case," Prof. Kajikawa properly focused his attention on the sequence at issue, which appears in the chorus, the most important part of both songs.[24]   Accordingly, Prof. Kajikawa is qualified to criticize Prof. Lewis' opinions, and his Rebuttal to Prof. Lewis'

---

[24]   "The degree to which [Prof. Kajikawa] appropriately valued the non-infringing content relative to the allegedly infringing [content] may raise doubts about the credibility of his conclusions, but not the admissibility of his testimony." *Ty, Inc. v. Publ'ns Int'l, LTD.*, 2004 U.S. Dist. LEXIS 21765, at *8 (N.D. Ill. Oct. 24, 2008).

Report will assist the trier of fact in comparing the two works at issue.

Lastly, as Defendants' claim that Prof. Kajikawa is not qualified to rebut Mr. Parham's report for the same reasons cited in support of their argument regarding Prof. Kajikawa's rebuttal of Mr. Massarsky and Prof. Lewis' reports (Mot. at 21:3-8), this argument should be rejected for the same reasons stated above. (*See supra* at 21.)

## IV.  **Juli Saitz's Opinion That Taxes Are Not Deductible in Calculating Profits and Her Criticism of Mr. Massarsky's Damages Report Are Admissible**

Finally, Defendants seek to limit the testimony of Juli Saitz, Plaintiffs' designated expert economist and preclude her rebuttal testimony in response to Mr. Massarsky's report. As an expert economist, Ms. Saitz will testify at trial regarding her analysis of various financial documents produced during discovery which track Defendants' revenues and profits from *Shake It Off*.  For example, she will testify regarding her assessment of the costs and expenses which may be deducted from Defendants' infringing profits.  And she will provide summaries of Defendants' revenues separated by each individual Defendant and revenue stream.  Defendants do not object to these aspects of Ms. Saitz's testimony, and they do not question her qualifications.  Rather, Defendants' sole objection relates to her failure to deduct taxes in calculating Defendants' profits from *Shake It Off*.  (D-Ex. 15 at ¶ 51.)  However, "criticisms of an expert's method of calculation [are] a matter for the jury's consideration in weighing the evidence." *Humetrix*, 268 F.3d at 919.  As Ms. Saitz is aptly qualified to testify on damages in this case, it is up to the trier of fact to determine the weight to afford those calculation.

Defendants also argue that Ms. Saitz's criticism of Mr. Massarsky's report concerns the amount of Defendants' profits in this case and should be excluded because Mr. Massarsky's analysis was directed at the percentage of profits, not the amount, and he simply used the profit figures Defendants provided as an example of an allocated profit once his apportionment percentage was applied.  (Mot. at 22:23-25.)  However, Plaintiffs are not required to take infringers at their word when it comes to calculating profits under §504(b).  Furthermore, as Ms. Saitz correctly points out, Mr. Massarsky never states in his report that

he is using Defendants' profits figures as "an example."  Accordingly, to the extent that Mr. Massarsky is taking Defendants' profit calculations at face value and placing a certain value on the amount of Defendants' profits that are attributable to the infringement alleged in this case, Ms. Saitz's critique in this regard is well-founded, and she should be able to present it to the jury.

Based on the foregoing, Defendants' Motion should be denied in its entirety.

DATED: August 29, 2022             BY:   GERARD FOX LAW P.C.


*/s/ Gerard P. Fox*

_____

Gerard P. Fox
Marina V. Bogorad
Olga Viner

*Attorneys for Plaintiffs*
SEAN HALL D.B.A. GIMME SOME
HOT SAUCE MUSIC and NATHAN
BUTLER D.B.A. FAITH FORCE MUSIC