Peter Anderson, Esq. (Cal. Bar No. 88891)
    peteranderson@dwt.com
Sean M. Sullivan, Esq. (Cal. Bar No. 229104)
    seansullivan@dwt.com
Eric H. Lamm, Esq. (Cal. Bar No. 324153)
    ericlamm@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants

J. Douglas Baldridge, Esq.
    jbaldridge@venable.com
Katherine Wright Morrone, Esq.
    kwmorrone@venable.com
VENABLE LLP
600 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (202) 344-4000
Fax: (202) 344-8300

Attorneys for Defendant
TAYLOR SWIFT

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| SEAN HALL, *etc., et al.*,<br><br>        Plaintiffs,<br><br>    vs.<br><br>TAYLOR SWIFT, *etc., et al.*,<br><br>    Defendants. | Case No. 2:17−cv−06882 MWF (ASx)<br><br>DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFFS' EXPERT REPORTS, OPINIONS AND TESTIMONY<br><br>Date: October 24, 2022<br>Time: 10:00 a.m.<br><br>Courtroom of the Honorable<br>Michael W. Fitzgerald<br>United States District Judge |

# **TABLE OF CONTENTS**

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ............................1

1.    INTRODUCTION .......................................................................1

2.    THE COURT SHOULD EXCLUDE BOB KOHN AND HIS
      ASSERTIONS AS TO THE TWO SONGS' RESPECTIVE LYRICS
      AND THE APPORTIONMENT OF *SHAKE IT OFF* PROFITS ....................2

      (a)   Mr. Kohn Is Not Qualified to Opine on Apportionment of Profits.........2

            (1)   Mr. Kohn Relies on His Subjective Lay Beliefs and Bare
                  Assertions, Not His Knowledge of Business Custom and
                  Practice ..........................................................................2

            (2)   None of Plaintiffs' Cases Qualify Mr. Kohn as an Expert on
                  the Matters on which He Opines ........................................5

      (b)   Mr. Kohn's Assertions Are Not Relevant or Reliable and Will Not
            Assist the Jury..........................................................................7

            (1)   Mr. Kohn's Assertions Are Unsubstantiated and Irrelevant.........7

            (2)   Plaintiffs Are Not Helped by the Cases They Cite .....................8

      (c)   Mr. Kohn Fails to Provide Opinions that Are Based on Facts or
            Data and the Product of Reliable Principles and Methods.....................9

            (1)   Plaintiffs Cannot Avoid Rule 702 by Arguing that the Clear
                  Defects in Mr. Kohn's Report and Testimony Just Go to the
                  Weight to Be Given Them ...............................................9

            (2)   Once Again, Plaintiffs Are Not Helped by the Cases They
                  Cite .............................................................................11

      (d)   Kohn's Rebuttal Reports and Opinions Also Are Inadmissible ..........12

            (1)   Kohn's Rebuttal of Barry Massarsky Is Properly Excluded
                  as Irrelevant Argument.................................................12

            (2)   Mr. Kohn Is Not Qualified to Rebut Prof. Lewis and Also
                  Offers Only Irrelevant Argument.................................13

i

(3)     Mr. Kohn's Rebuttal of Jim Parham Is Properly Excluded as
Factually Wrong and Irrelevant .................................................14

3.     THE COURT SHOULD EXCLUDE PROF. KAJIKAWA, HIS
ASSERTIONS AS TO THE TWO SONGS' RESPECTIVE LYRICS,
AND HIS REBUTTAL REPORTS .........................................................15

(a)     Prof. Kajikawa Is Not Qualified as a Literary Expert ..........................15

(b)     Prof. Kajikawa's Opinions Fall Far Short of Satisfying Rule 702........17

(1)     Prof. Kajikawa's Opinions Will Not Help the Trier of Fact
Apply the Extrinsic Test ............................................................17

(2)     Prof. Kajikawa's Opinions Are Not Based on Sufficient
Facts or Data .................................................................................18

(3)     Prof. Kajikawa's Opinions Are Not the Product of Reliable
Principles and Methods ................................................................19

(c)     Prof. Kajikawa's Attempted Rebuttals Also Fail .................................21

(1)     Prof. Kajikawa Is Not Qualified to Rebut Mr. Massarsky
and Offers Only Irrelevant Arguments ......................................21

(2)     Prof. Kajikawa Is Not Qualified to Rebut Prof. Lewis and
Again Offers Only Irrelevant Arguments ..................................22

(3)     Prof. Kajikawa Also Is Not Qualified to Rebut Mr. Parham
and Just Refers Back to Plaintiffs' Irrelevant Arguments as
to Mr. Massarsky and Prof. Lewis .............................................23

4.     JULI SAITZ'S REPORT AND OPINIONS SHOULD BE LIMITED ..........23

(a)     The Court Should Exclude Ms. Saitz' Opinion, Contrary to Ninth
Circuit Law, that Taxes Should Not Be Deductible in Calculating
Profits Under § 504(b).........................................................................23

(b)     Ms. Saitz' Admittedly Misdirected Rebuttal of Barry Massarsky
Also Should Be Excluded......................................................................24

5.     CONCLUSION.......................................................................................24

ii

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

**Cases**

4

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
5
    508 F. Supp. 798 (S.D.N.Y. 1981) ..................................................... 8, 11

6

*Benay v. Warner Bros. Ent., Inc.*,
7
    607 F.3d 620 (9th Cir. 2010) .......................................................... 19, 21

8

*Bernal v. Paradigm Talent & Literary Agency*,
    788 F. Supp. 2d 1043 (C.D. Cal. 2010) ......................................... 13, 16
9

*Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*,
10
    803 F.3d 1032 (9th Cir. 2015) ............................................................ 20

11

*Bitton v. Intn'l Transpt., Inc.*,
12
    437 F.2d 817 (9th Cir. 1970) .............................................................. 15

13

*In re ConAgra Foods, Inc.*,
14
    302 F.R.D. 537 (C.D. Cal. 2014) ......................................................... 7

15

*Copeland v. Bieber*,
16
    789 F.3d 484 (4th Cir. 2015) ............................................................... 8

17

*D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*,
    411 F. Supp. 2d 483 (D.N.J. 2006), *aff'd*, No. CIV.A. 03-1026
18
    (MLC), 2006 WL 755984 (D.N.J. Mar. 20, 2006) ........................... 3, 16

19
*Daubert v. Merrill Dow Pharm. Inc.*,
20
    509 U.S. 579 (1993) ............................................................ 1, 6, 10, 15

21

*Diviero v. Uniroyal Goodrich Tire Co.*,
22
    114 F.3d 851 (9th Cir. 1997) .............................................................. 10

23

*Elliott v. Versa CIC, L.P.*,
24
    349 F. Supp. 3d 1004 (S.D. Cal. 2018) ................................................. 3

25

*Engenium Solutions, Inc. v. Symphonic Techs., Inc.*,
26
    924 F. Supp. 2d 757 (S.D. Tex. 2013) ................................................ 16

27

*Fahmy v. Jay-Z*, No. 2:07-cv-05715,
28
    2015 WL 5680299 (C.D. Cal. Sept. 24, 2015) ...................................... 9

iii

*Faulkner v. Arista Records LLC*,
 46 F. Supp. 3d 365 (S.D.N.Y. 2014) ...................................................... 12

*Friedman v. Medjet Assist., LLC*, No. CV 09–07585,
 2010 WL 9081271 (C.D. Cal. Nov. 8, 2010)............................................ 15

*Funky Films, Inc. v. Time Warner Entm't Co.*,
 462 F.3d 1072 (9th Cir. 2006) ........................................................ 20, 21

*Gaste v. Kaiserman*,
 863 F.2d 1061 (2d Cir. 1988)............................................................... 6, 11

*Gray v. Perry*, No. 2:15-cv-05642-CAS (JCx),
 2019 WL 2992007 (C.D. Cal. July 5, 2019).......................................... 11

*Humetrix, Inc. v. Gemplus S.C.A.*,
 268 F.3d 910 (9th Cir. 2001) .......................................................... 11, 23

*Intermedics, Inc. v. Ventritexx, Inc.*,
 139 F.R.D. 384 (N.D. Cal. 1991)...................................................... 8, 14

*Jeff Benton Homes v. Alabama Heritage Homes, Inc.*,
 929 F. Supp. 2d 1231 (N.D. Ala. 2013).......................................... 13, 16

*Jinro Am. Inc. v. Secure Inv., Inc.*,
 266 F.3d 993 (9th Cir. 2001) ................................................................. 1

*Kouf v. Walt Disney Pictures & Television*,
 16 F.3d 1042 (9th Cir. 1994) ............................................................... 19

*Kumho Tire Co., Ltd. v. Carmichael*,
 526 U.S. 137 (1999)....................................................................... 1, 15

*Litchfield v. Spielberg*,
 736 F.2d 1352 (9th Cir. 1984) ............................................................. 20

*Lust v. Merrell Dow Pharm., Inc.*,
 89 F.3d 594 (9th Cir. 1996) ................................................................... 1

*May v. Sony Music Entm't*,
 399 F. Supp. 3d 169 (S.D.N.Y. 2019) .................................................. 19

*Moghaddam v. Jaguar Land Rover N. Am., LLC*, No. CV 17-3716,
 2018 WL 6003579 (C.D. Cal. Sept. 19, 2018) ...................................... 11

iv

*Newton v. Diamond*,
  388 F.3d 1189 (9th Cir. 2004) ................................................................ 8

*Pucket v. Hernandez*, No. 216CV02199SVWAGR,
  2016 WL 7647555 (C.D. Cal. Dec. 21 2016) ....................................... 19

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) ............................................................. 16

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
  309 U.S. 390 (1940) ....................................................................... 7, 11

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
  81 F.2d 49 (2d Dist. 1936) .................................................................... 9

*In re Silicone Gel Breast Implants Prod. Liab. Litig.*,
  318 F. Supp. 2d 879 (C.D. Cal. 2004) ............................................... 6, 15

*Skidmore v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) ................................................. 16, 19, 20

*Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-CIV,
  2007 WL 3232274 (S.D. Fla. Oct. 31, 2007) ........................................ 11

*Swirksy v. Carey*,
  376 F.3d 841 (9th Cir. 2004) ............................................................. 19

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ................................................. 9, 19, 23

*Toliver v. Sony Music Entm't*,
  149 F. Supp. 2d 909 (D. Ak. 2001), *aff'd*, 47 Fed. Appx. 496
  (9th Cir. 2002) ................................................................................... 19

*Ty Inc. v. Publ'ns Int'l, Ltd.*, No. 99 C 5565,
  2004 WL 5025744 (N.D. Ill. July 1, 2004) .......................................... 12

*Ty, Inc. v. Publ'ns Int'l, Ltd.*, No. 99 C 5565,
  2004 WL 2359250 (N.D. Ill. Oct. 19, 2004) .......................................... 5

*Tyus v. Urban Search Mgmt.*,
  102 F.3d 256 (7th Cir. 1996) ................................................................ 6

*U.S. v. Finley*,
  301 F.3d 1000 (9th Cir. 2002) .............................................................. 7

*U.S. v. Hankey*,
   203 F.3d 1160 (9th Cir. 2000) ................................................................. 5

*U.S. v. Little*,
   753 F.2d 1420 (9th Cir. 1984) ............................................................... 15

*U.S. v. Senchenko*,
   133 F.3d 1153 (9th Cir. 1998) ............................................................... 15

*United States v. Aria*, No. CV-94-1624-PCT-PGR,
   2007 WL 3342696 (D. Ariz. Nov. 7, 2007) ...................................... 3, 16

*Watt v. Butler*,
   744 F. Supp. 2d 1315 (N.D. Ga. Sept. 28, 2010) ................................. 15

**Statutes**

17 U.S.C.
   § 102(b) ................................................................................................ 20
   § 504 .................................................................................................... 22
   § 504(b) ............................................................................... 10, 21, 23

**Rules**

Fed. R. Civ. P. 26(a)(2)(B)(i) ...................................................................... 3

Fed. R. Evid.
   403 ...................................................................................................... 17
   702 ........................................................ 1, 2, 5, 9, 10, 11, 13, 14, 17
   702(a) ............................................................................................... 3, 7
   702(b) ............................................................................................. 10, 18
   702(c) ............................................................................................. 10, 20
   702(c)-(d) ............................................................................................. 21
   702(d) .................................................................................................. 10

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   INTRODUCTION

Defendants' Motion to exclude Plaintiffs' experts relies on the Court's "special obligation" as a "gatekeeper"[1] to ensure that before a witness comes "before the jury cloaked with the mantle of an expert" to provide testimony that "can be both powerful and quite misleading," the "proffered witness truly qualifies as an expert, and that such testimony meets the requirements of Rule 702."[2]   Plaintiffs bear the burden of proving their claimed experts' testimony meets those requirements.[3]   Rather than carry that burden, Plaintiffs concede crucial facts and once again rely on misleading string citations of cases that are either irrelevant or support Defendants' Motion.

For example, Plaintiffs concede that while Mr. Kohn has expertise as to business custom and practice in the music industry, his conclusion that 50% of *Shake It Off*'s profits are attributable to the allegedly copied lyrics is instead based on how those lyrics "struck" him.  Plaintiffs also do not dispute that he has no musical training and claims expertise because he saw The Beatles on The Ed Sullivan Show and—like most, if not all, of us—likes music.  Plaintiffs cite no case supporting the admissibility of his testimony.  As another example, Plaintiffs concede that Prof. Kajikawa—who they offer as an expert as to the extrinsic test and to rebut Defendants' experts as to the apportionment of *Shake It Off* profits—is a musicologist who studies the dynamics of race and politics, and has no background in comparative literary analysis, economics, or music industry marketing.  Plaintiffs also cite no cases supporting the admissibility of his testimony.  Finally, Plaintiffs concede that Juli Saitz, an accountant, provides one opinion directly contrary to this Circuit's law and another

---

[1]   *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 145, 147-48 (1999) (quoting *Daubert v. Merrill Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993)).

[2]   *Jinro Am. Inc. v. Secure Inv., Inc.*, 266 F.3d 993, 1004-05 (9th Cir. 2001).

[3]   *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

opinion she admits was misdirected.  Again, Plaintiffs cite no cases supporting the admissibility of her testimony.

Plaintiffs would have this Court allow their experts to testify at trial with no background or experience in the areas in which they are offered to testify and without providing any basis for testing their opinions, solely based on Plaintiffs' argument that these issues go to weight and not admissibility.  Defendants respectfully submit that the Court should decline Plaintiffs' invitation that it abdicate its special obligation and gatekeeper role by allowing the jury to hear manifestly improper "expert" testimony.

**2.   THE COURT SHOULD EXCLUDE BOB KOHN AND HIS ASSERTIONS AS TO THE TWO SONGS' RESPECTIVE LYRICS AND THE APPORTIONMENT OF *SHAKE IT OFF* PROFITS**

Bob Kohn is a lawyer who claims knowledge of "business customs and practices in the music industry."  Defs' Ex. 1 (Doc. 146-3) at 3.  But in his Report and Rebuttal Report he purports to opine—based on what "struck" his untrained, lay ear— that the allegedly copied lyrics in *Playas Gon' Play* ("*Playas*") are the "heart" of *Playas* and *Shake It Off*, and that 50% of *Shake It Off*'s profits are attributable to the allegedly copied lyrics, without which the song would lose all "force, meaning, and energy."  *Id.* at 4, 8.  Plaintiffs have not carried, and cannot carry, their burden of proving that Mr. Kohn has the required expertise, and meets the other requirements of Rule 702, to provide that testimony.

**(a)   Mr. Kohn Is Not Qualified to Opine on Apportionment of Profits**

**(1)   Mr. Kohn Relies on His Subjective Lay Beliefs and Bare Assertions, Not His Knowledge of Business Custom and Practice**

Plaintiffs admit Mr. Kohn has no experience in apportioning profits between music and lyrics, and they do not contest that he lacks experience, let alone expertise, in apportioning a song's profits between allegedly infringing and non-infringing factors.  *See* Opp. at 5 n.6.  This alone should end the inquiry and support this Court

1  following the lead of others in rejecting Mr. Kohn's opinions as beyond his stated
2  expertise.

3       Moreover, Plaintiffs fail to address Mr. Kohn's admission that—rather than rely
4  on his claimed expertise as to "business customs and practices in the music
5  industry"—he bases his opinions on his conclusory, untestable assertion that the
6  allegedly copied lyrics "struck [him] most." Nor do Plaintiffs address his admissions
7  that he has no training in music or literary analyses and, instead, he claims "expert"
8  status because he has listened to music since seeing The Beatles on The Ed Sullivan
9  Show, has read "many, many novels," and is a member of a book club. *See* Defs' Ex.
10 2 at 121:11-122:11, 36:4-16, 41:10-12, 41:23-42:4. However, that "qualifies" him as
11 a layperson, not an expert with "scientific, technical, or other specialized knowledge
12 [that] will help the trier of fact…." Fed. R. Evid. 702(a). Also, his failure to disclose
13 in his Reports that his opinions are based on liking music and books further supports
14 preclusion. Fed. R. Civ. P. 26(a)(2)(B)(i) (retained expert's report "must contain …
15 a complete statement of all opinions the witness will express and the basis and reasons
16 for them") (emphasis added); *see, e.g., Elliott v. Versa CIC, L.P.*, 349 F. Supp. 3d
17 1004, 1006 (S.D. Cal. 2018) (granting motion to exclude expert testimony where
18 expert's report failed to claim any expertise in the subject matter at issue).

19      Plaintiffs argue that Mr. Kohn's lack of specialized knowledge as to music,
20 lyrics, and apportionment does not prevent him from opining as to those subjects
21 because his "professional career in the music industry span[s] over four decades."
22 Opp. at 4 and 5, n.6. But Mr. Kohn cannot claim to be an expert on all things having
23 to do with music just because he is a lawyer claiming knowledge of business custom
24 and practice in the music industry. *See, e.g., D & D Assocs., Inc. v. Bd. of Educ. of N.*
25 *Plainfield*, 411 F. Supp. 2d 483, 486 (D.N.J. 2006) (holding licensed attorney lacked
26 experience necessary to offer opinion on malpractice focusing on actions taken by an
27 attorney within a specific area of law, as compared to claims for general ethical
28 violations), *aff'd*, No. CIV.A. 03-1026 (MLC), 2006 WL 755984 (D.N.J. Mar. 20,

3

2006); *United States v. Aria*, No. CV-94-1624-PCT-PGR, 2007 WL 3342696, at *1 (D. Ariz. Nov. 7, 2007) (excluding three expert witnesses who were soil scientists from testifying because they did not possess the requisite scientific, technical or other specialized knowledge of the specific accretion/avulsion issues being tried, and did not possess any professionally-based knowledge of the specific area in dispute).

Plaintiffs dedicate multiple paragraphs to touting the various items in Mr. Kohn's Curriculum Vitae and Report—which omitted at least one case in which his testimony was excluded—that purportedly qualify him to provide expert testimony, highlighting his experience as a "transactional attorney for music industry clients," "executive and co-founder" of a record label, "marketing executive" for an independent record label, and co-founder of a company providing licensing and royalty processing services. Opp. at 4-5. But neither Mr. Kohn nor Plaintiffs explain how that background imbues Mr. Kohn with specialized knowledge making his belief as to, *e.g.*, what "struck" him about *Playas* and *Shake It Off* more helpful than the jurors' own conclusions. Moreover, the experience Plaintiffs cite is not the experience Mr. Kohn relies upon: instead, he relies on his assertions that he has long listened to music, has read many novels, and is a member of a book club, all to determine what "struck" him and what he thinks "resonated with the public." Defs' Memo. at 7-8.

Plaintiffs' reliance on the book that Mr. Kohn is credited as having written with his father is an even bigger red herring. As illustrated by the book's Table of Contents and Index, nowhere does the book discuss apportionment of profits in a copyright infringement case, or even the factors that inform how profit awards are calculated. *See* Anderson Reply Decl. at 1, ¶ 3, & Ex. 16. Unsurprisingly given its title—*Kohn on Music Licensing*—the book focuses on music industry custom and practice as to licensing musical compositions and sound recordings. *Id.*[4] His claimed knowledge ///

---

[4]     Plaintiffs note that the book has been cited by courts, but—as shown by Plaintiffs' own descriptions of the cases citing the book—none cite it for the

on those topics does not qualify him to share with the jury, as purported expert testimony, his subjective views that combining the public domain player and hater phrases is the "heart" of *Playas*, the "heart" of *Shake It Off*, and the reason for 50% of *Shake It Off*'s profits.

Plaintiffs cite the Advisory Committee Notes to Rule 702 for the proposition that "in certain fields, experience is the predominant, if not sole basis for a great deal of expert testimony." Opp. at 5. But the Advisory Committee Notes also make clear that experts "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Plaintiffs fail to explain how Mr. Kohn's experience in business custom and practice provides a basis for his opinions as to the "heart" of *Playas* and *Shake It Off* and the apportionment of *Shake It Off*'s profits. Even more damning is Mr. Kohn's testimony that rather than rely on that experience, he relied on his untrained ear and recreational reading of novels.

### (2)   None of Plaintiffs' Cases Qualify Mr. Kohn as an Expert on the Matters on which He Opines

Plaintiffs are not helped by citing cases in which the court allowed an expert to testify to subjects within his expertise. *See Ty, Inc. v. Publ'ns Int'l, Ltd.*, No. 99 C 5565, 2004 WL 2359250 at *5-*6 (N.D. Ill. Oct. 19, 2004) (expert was qualified to opine on apportionment of profits from use of infringing photos in nonfiction books given expert's background in "creating, publishing and selling non-fiction books for consumers" and experience "gauging consumer interest in and consumption of" nonfiction books); *U.S. v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (undercover officer qualified to opine on gang affiliation and gang activities based on years of working with "thousands" of gang members, including gangs in question). Here,

---

apportionment of profits in copyright cases, the factors to use to apportion those profits, or even what "the heart" of a song might be. *See* Opp. at 4, n. 5.

Mr. Kohn's expertise as a lawyer familiar with business custom and practice does not qualify him to provide the opinions he provides.  Moreover, when asked what he thinks *does* give him that expertise, he relied on listening to music and reading novels.

Plaintiffs also cite cases for the proposition that if an expert is generally qualified, a lack of specific qualifications does not bar his testimony.  But expertise to opine as to the "heart" of a song or evaluate factors that contribute to a song's profits is not a subset of Mr. Kohn's general qualification as an expert on business custom and practice.  Further, Plaintiffs rely on cases where, unlike here, the experts' general qualifications provided a clear foundation for their opinions.  *In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 901 (C.D. Cal. 2004) (chemist could opine on medical studies because they involved chemical analyses that used "classic tools of the analytical chemistry trade"); *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 264 (7th Cir. 1996) (expert social psychologist and statistician used his background in employing "the well-known 'focus group' method" to opine on effect of advertisement on African-Americans).  Plaintiffs' reliance on *Gaste v. Kaiserman*, 863 F.2d 1061, 1070 (2d Cir. 1988), is particularly misplaced because it did not involve a *Daubert* challenge and also because the expert who opined as to the value of lyrics was a music publisher, not a music attorney and executive like Mr. Kohn.

Based on his experience, Mr. Kohn presumably could explain synch licenses and mechanical licenses and their customary terms.  But neither his generalized experience nor that he has listened to music since seeing The Beatles on The Ed Sullivan Show, reads a lot of novels, and is a member of a book club, provide him with the required "specialized knowledge" to testify as an expert that certain lyrics, and not others, are the "heart" of *Playas* and *Shake It Off* or that 50% of *Shake It Off*'s profits are attributable to the allegedly copied public domain players play and haters hate phrases.  Plaintiffs fail to carry their burden of establishing that Mr. Kohn is qualified to provide the opinions he provides in this case.  He is properly excluded for that reason alone.

**(b)** **Mr. Kohn's Assertions Are Not Relevant or Reliable and Will Not Assist the Jury**

**(1)** **Mr. Kohn's Assertions Are Unsubstantiated and Irrelevant**

Defendants showed that Mr. Kohn's opinions are both irrelevant and will not "help the trier of fact to understand the evidence or to determine a fact at issue…." Defs' Memo. at 6-7 (quoting Fed. R. Evid. 702(a)).  In response, Plaintiffs make the rather unremarkable and undisputed point that *expert testimony* on apportionment can be helpful to the trier of fact.  Opp. at 7 (citing *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 408 (1940)).   Then, ignoring most of Defendants' showing, Plaintiffs focus instead on re-casting Mr. Kohn's opinions and conclusions to summarily assert they are both relevant and will assist the trier of fact.  *Id.* at 6-8.  But just because Plaintiffs say it does not make it so.

Indeed, Plaintiffs fail to explain how Mr. Kohn's alleged expertise permits him to draw any greater conclusions than any juror or this Court as to the "portion of the profits from … *Shake It Off* [that] are attributable to that song's [claimed] use of lyrics from the song *Playas Gon' Play*."  Anderson Decl., Ex. 1 at 3.  Plaintiffs simply ignore that Mr. Kohn, by admitting he has no musical or literary analysis training and that he simply relied on what "struck" him about the songs, does no more than jurors and the Court can do.  Anderson Decl., Ex. 2 at 109:3-15; *see, e.g.*, *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014) ("Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact." (quoting *U.S. v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002))).  Plaintiffs raise that Mr. Kohn also said that his conclusion that the allegedly copied lyrics are the "heart" of *Playas* is supported by the fact that (1) they are in *Playas*' chorus, (2) they are repeated, and (3) three of the words are *Playas*' title.  Opp. at 6.  But Plaintiffs ignore that these three facts are readily apparent to the jury and do not require expert testimony to identify.  Plaintiffs also ignore that, in any event, the "heart" of *Playas* is irrelevant to the apportionment of *Shake It Off*'s profits.  Defs' Memo. at 6:25-7:3.

Plaintiffs similarly ignore the problems with Mr. Kohn's focus on the trademark registered by one of Ms. Swift's companies in "players gonna play." Defs' Memo. at 7. Defendants showed that the trademark phrase is both different than the *Playas* lyric—"Playas, they gon' play"—and not the allegedly copied combination of player and hater phrases, and that Mr. Kohn's "opinion" is just an argument that any lawyer can make based on the trademark registration. *Id.* (citing *Intermedics, Inc. v. Ventritexx, Inc.*, 139 F.R.D. 384, 396 (N.D. Cal. 1991) ("if the expert is in any significant measure parroting views that are really the lawyer's … it would be fundamentally unfair to the truth finding process")). In response, Plaintiffs do nothing more than attach Mr. Kohn's deposition testimony where he argues that the trademark application supposedly proves that, *e.g.*, Ms. Swift hoped the public would associate the phrase with her. Pltfs' Ex. 5 (Doc. 152-6) at 73:23-74:4. Argument is not expert testimony.

Finally, Defendants also raised that Mr. Kohn repeats Prof. Kajikawa's assertions without independently evaluating them. Plaintiffs try to dodge that point by arguing that in one instance Mr. Kohn did Internet research and reviewed articles to determine—incorrectly—when Ms. Swift transitioned from country to pop music. Opp. at 6, n.7. But that does not change, and Plaintiffs do not dispute, that Mr. Kohn—including by citing to Prof. Kajikawa's claim that the brevity of the allegedly copied phrase should be disregarded—simply parrots Prof. Kajikawa. That is of no assistance to the trier of fact. *See* Defs' Memo. at 7; Anderson Decl., Ex. 2 at 163:6-8.

Mr. Kohn's assertions are unsubstantiated and legal argument, and Plaintiffs fail to establish that his testimony will assist the jury.

### (2)   Plaintiffs Are Not Helped by the Cases They Cite

The numerous cases in Plaintiffs' page-long string citations regarding relevance are themselves irrelevant and serve no purpose beyond distraction.

Plaintiffs rely on statements in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 508 F. Supp. 798, 802 n.11 (S.D.N.Y. 1981), *Newton v. Diamond*, 388 F.3d 1189,

1   *1196 (9th Cir. 2004)*, and *Copeland v. Bieber*, 789 F.3d 484, 493-94 (4th Cir. 2015),

2   about the importance of a song's "hook."  But none of those cases involved the

3   disputed admissibility of expert testimony, nor do they support Mr. Kohn—with no

4   musical training—opining as to what constitutes the "heart" of *Playas* and *Shake It*

5   *Off*.

6        Plaintiffs' reliance on *Fahmy v. Jay-Z*, No. 2:07-cv-05715, 2015 WL 5680299

7   at *22 (C.D. Cal. Sept. 24, 2015), also is misplaced.  There, the court permitted a

8   qualified expert, whose opinion was based on "a lengthy and detailed analysis of

9   relevant sources," to testify as to the popularity of the plaintiff's song.   In stark

10  contrast, Mr. Kohn merely assumes *Playas* was popular, and his opinions are not

11  based on relevant or objective sources.   Defs' Memo. at 8.   Plaintiffs' remaining

12  authorities as to relevance have nothing to do with expert testimony or this Motion.

13  *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000) (upholding

14  jury's apportionment of profits based on Plaintiffs' non-expert evidence that

15  defendant's song was lead single on album); *Sheldon v. Metro-Goldwyn Pictures*

16  *Corp.*, 81 F.2d 49, 56 (2d Dist. 1936) (copying of "substantial parts" of plaintiff's

17  work was copyright infringement).

18       Once again, Plaintiffs do not carry their burden of establishing that Mr. Kohn's

19  Report and testimony will assist the jury.

20       **(c)**     **<u>Mr. Kohn Fails to Provide Opinions that Are Based on Facts or</u>**

21       **<u>Data and the Product of Reliable Principles and Methods</u>**

22            **(1)**     **Plaintiffs Cannot Avoid Rule 702 by Arguing that the Clear**

23            **Defects in Mr. Kohn's Report and Testimony Just Go to the**

24            **Weight to Be Given Them**

25       Repeating a common refrain of those opposing motions to exclude an expert,

26  Plaintiffs argue that the remainder of Defendants' objections to Mr. Kohn's Reports

27  and opinion go to the weight of his testimony, not to its admissibility.   Opp. at 8-10.

28  ///

9

Plaintiffs' arguments misconstrue Rule 702's requirements and gloss over Plaintiffs' failure to establish in the first instance that Mr. Kohn's opinions are admissible.

As an initial matter, Plaintiffs once again largely ignore Mr. Kohn's failure to provide anything other than subjective belief, rather than facts or data upon which expert opinion can be based; that his opinions are not "the product of reliable principles and methods"; and that he has not reliably applied principles and methods to the facts of the case, as required by Rule 702(b), (c), and (d). Those failures are strictly an issue of admissibility, not weight or credibility. *See, e.g.*, *Daubert*, 509 U.S. at 590 ("the word 'knowledge' [in Rule 702] connotes more than subjective belief"); *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (an expert opinion is unreliable when it rests on "subjective beliefs"). In particular, Plaintiffs do not even attempt to rebut the myriad examples Defendants provided in their Motion of Mr. Kohn spouting wholly unsupported subjective beliefs and argument in lieu of facts or data or reliable principles or methods. *See* Defs' Memo. at 7-9 (citing, for example, Mr. Kohn's testimony that his Report's assertion that the *Playas* player and hater lyric "appears to have struck the listener's ear most" is based only on the notion that the lyric "struck [him] most" (Anderson Decl., Ex. 2 at 109:3-17), and is not based on any musical or musicological training, which he does not have (*id.* at 32:17-34:2); Mr. Kohn's failure to conduct a survey to support his assertion that the *Playas* lyric "resonated with the public," instead basing that claim on his assertion that the song was popular and may have triggered subsequent uses of player and hater phrases (*id.* at 109:18-110:8); Mr. Kohn providing no basis for his claim that *Playas* was popular (*id.* at 215:22-217:6); and Mr. Kohn's assumption that post-*Playas* uses of the phrases players gonna play and haters gonna hate—which Prof. Kajikawa admits were already part of the urban vocabulary before *Playas*—are due to *Playas* supposed popularity (*id.* at 114:1-4)).

Plaintiffs claim, without any analysis, that Mr. Kohn's opinions are "consistent with the apportionment standard set forth in 17 U.S.C. § 504(b)." Opp. at 8. Yet

1   Plaintiffs agree that the purpose of an apportionment analysis is to ascertain the
2   portion of *Shake It Off*'s profits attributable to factors other than the allegedly copied
3   lyrics.  *Id.* at 8, n.10.  And Mr. Kohn acknowledged that those other factors include
4   *Shake It Off*'s music, Ms. Swift's recorded performance of the song, and the
5   production, marketing, and distribution of that recording.  *See* Anderson Reply Decl.
6   at 1, ¶ 4, Ex. 17 at 51:24-53:17, 56:5-57:22.  Mr. Kohn, however, either "implicitly"
7   discounted those factors or admittedly took no step to consider or analyze them.  *See,*
8   *e.g.,* Ex. 2 at 59:17-25, 64:13-21, 82:9-16, 84:4-14, 87:6-18.

9         **(2)   Once Again, Plaintiffs Are Not Helped by the Cases They**
10              **Cite**

11        Plaintiffs point out that apportionment is not susceptible to precise
12   measurement.  Opp. at 8 n.9 (citing *Sheldon*, 309 U.S. at 408; *ABKCO Music, Inc.,*
13   508 F. Supp. at 801; *Gaste*, 863 F.2d at 1069).  But that does not excuse Mr. Kohn's
14   utter lack of reliable methodology or relevant qualifications, or his failure to base his
15   opinions on objective facts or data.  Plaintiffs are not helped by their citation of
16   *Moghaddam v. Jaguar Land Rover N. Am., LLC*, No. CV 17-3716, 2018 WL 6003579
17   at *9 (C.D. Cal. Sept. 19, 2018) and *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910,
18   919 (9th Cir. 2001).  Those cases stand only for the principle that, where expert
19   testimony is otherwise admissible, the expert's failure to consider all relevant
20   information, and the foundation of the expert's testimony, are matters for cross-
21   examination.  That principle does not permit Mr. Kohn to avoid the requirements of
22   Rule 702 in the first instance.

23        Indeed, in each case cited by Plaintiffs, the expert used reliable methods and
24   the opposing party's arguments focused on the factual basis of the methodology, not
25   its reliability.  *Gray v. Perry*, No. 2:15-cv-05642-CAS (JCx), 2019 WL 2992007 at
26   *20 (C.D. Cal. July 5, 2019) (apportionment expert employed "cooperative game
27   theory," which is "often used by economists to establish values," and defendants
28   argued that expert "fail[ed] to consider" relevant evidence); *Humetrix, Inc.*, 268 F.3d

at 919 (expert testimony on lost profits in contract case based on analysis of prior contracts and was "supported by substantial evidence"); *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-CIV, 2007 WL 3232274 at *13 (S.D. Fla. Oct. 31, 2007) (expert calculated album's sales projections based on comparison of other albums and defendant "challenge[d] the factual basis for [the expert's] methodology"); *Faulkner v. Arista Records LLC*, 46 F. Supp. 3d 365, 373-74, 386 (S.D.N.Y. 2014) (holding expert employed "methodology [that] was reliable" in rebutting complex royalty calculations and noting plaintiffs' "disagreement" with expert's opinion can be addressed on cross-examination); *Ty Inc. v. Publ'ns Int'l, Ltd.*, No. 99 C 5565, 2004 WL 5025744, at *5-* 6 (N.D. Ill. July 1, 2004) (expert's self-created mathematical royalty rate model was reliable where based on relevant knowledge and experience valuing royalties; defendants' challenges to specific assumptions and exact weight of each factor concerned credibility, not reliability).

Ultimately, Mr. Kohn's opinions rely solely on a claimed subjective conclusion wholly divorced from any underlying facts or data, let alone any reliably applied principles and methods. Plaintiffs fall far short of carrying their burden of establishing that his opinions are admissible. Accordingly, they are properly excluded.

### **(d)   Kohn's Rebuttal Reports and Opinions Also Are Inadmissible**

#### **(1)   Kohn's Rebuttal of Barry Massarsky Is Properly Excluded as Irrelevant Argument**

Plaintiffs do not even credibly attempt to argue that Mr. Kohn's challenges to the Report of Defendants' economist, Mr. Massarsky, are salvageable. Defendants raised that Mr. Kohn's Rebuttal Report presents mere irrelevant argument rather than challenging Mr. Massarsky's methodology or data he employed. *See* Defs' Memo. at 10-12. Plaintiffs once again argue those defects go to the weight to be given Mr. Kohn's Rebuttal Report, but that is not so. Irrelevant assertions are not helpful to the jury, yet Plaintiffs rely upon Mr. Kohn's references to Ms. Swift's transition from country to pop music and the claimed importance of the *Playas*' lyrics to *Playas*, both

12

of which are irrelevant to the apportionment of *Shake It Off*'s profits.  Opp. at 10 and n.11.  And Plaintiffs chose to ignore the other reasons Defendants raised for excluding Mr. Kohn's criticism of Mr. Massarsky's Report.  *See* Defs' Memo. at 11-12.

Plaintiffs fail to carry their burden of proving that Mr. Kohn's Rebuttal Report and testimony as to Mr. Massarsky are admissible under Rule 702.  Accordingly, that Rebuttal Report and testimony are properly excluded.

### (2)    Mr. Kohn Is Not Qualified to Rebut Prof. Lewis and Also Offers Only Irrelevant Argument

Plaintiffs' attempt to escape exclusion of Mr. Kohn's rebuttal of Defendants' literary expert, Prof. Lewis, is equally unavailing.  Plaintiffs acknowledge that Mr. Kohn does not intend to testify as a literary expert.  They instead argue that he will apply a "similar analysis" used in his Report to "critique Prof. Lewis' opinion regarding the elements of *Shake It Off* which contributed to the song's commercial success," and assert Mr. Kohn is qualified to offer testimony of this kind.  Opp. at 11.

But Mr. Kohn is not qualified as a literary expert, musicologist, or otherwise to offer the opinions set forth in his Report.[5]  *See above* at 2-7.  Plaintiffs' argument also ignores that Mr. Kohn's critiques are pure legal argument (*e.g.*, that short phrases may be protected by copyright) and irrelevant (*e.g.*, criticizing Prof. Lewis, a literary

///

---

[5]    While acknowledging that Mr. Kohn does not intend to testify as a literary expert, Plaintiffs argue he took some "literature courses" and in his corporate law class had his students read Milton's *Paradise Lost*, as including "essentially a corporate board meeting."  Anderson Reply Decl. at 1, ¶ 4, Ex. 17 at 38:20-41:1.  But Plaintiffs' authorities do not support their view that anyone who takes a literature class or reads books is qualified as a literary expert.  Opp. at 11 n.12; *see Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1062 n.14 (C.D. Cal. 2010) (expert with 40 years' experience in screenwriting qualified to opine on substantial similarity of screenplays); *Jeff Benton Homes v. Alabama Heritage Homes, Inc.*, 929 F. Supp. 2d 1231, 1240 (N.D. Ala. 2013) (architect had relevant experience to opine on similarities between architectural designs).

1  expert, for not "explain[ing] why" the phrase players gonna play was registered as a

2  trademark).  *See* Defs' Memo. at 12.

3       Mr. Kohn's Rebuttal Report and testimony as to Prof. Lewis' Supplemental

4  Report also are irrelevant and inappropriate argument.  Plaintiffs again fail to prove

5  they are admissible under Rule 702 and, accordingly, they are properly excluded.

6       **(3)**    **Mr. Kohn's Rebuttal of Jim Parham Is Properly Excluded as**

7              **Factually Wrong and Irrelevant**

8       Plaintiffs' one-sentence response to Defendants' grounds for excluding

9  Mr. Kohn's rebuttal of Mr. Parham, a music industry marketing, sales, and promotion

10  expert, does nothing more than rely on Plaintiffs' argument that Mr. Kohn is qualified

11  to testify to anything and everything relating to music.  Opp. at 11.  Plaintiffs argue

12  Mr. Kohn can raise Mr. Parham's supposed "failure to take certain factors into

13  account."  *Id.*  But Plaintiffs' counsel are free to cross-examine Mr. Parham as to the

14  basis for his opinions and it is improper to have an expert to just parrot that argument.

15  *Intermedics*, 139 F.R.D. at 396.  Moreover, Plaintiffs simply ignore that Mr. Kohn's

16  assertions that Mr. Parham did not consider the extent of Ms. Swift's popularity and

17  the "effect" of her transition from country to pop music on her career are, respectively,

18  wrong and irrelevant.  *See* Defs' Memo. at 13.  Mr. Kohn's cursory rebuttal directed

19  to Mr. Parham's Report is properly excluded.

20       Mr. Kohn is an attorney with some experience as to business custom and

21  practice in the music industry.  But—in an effort to be all things to all people and with

22  no training in music or comparative literary analysis—he relies instead on his

23  subjective gut feeling as to what "struck" him about *Playas* and *Shake It Off* as the

24  basis to opine as to the "heart" of *Playas*, the "heart" of *Shake It Off*, and the *Shake It*

25  *Off* profits attributable to the allegedly copied lyrics, and also as to the Reports of a

26  literary expert, an economist, and a music industry marketing, sales, and promotion

27  expert.  Plaintiffs have failed to carry their burden under Rule 702, and the Court's

28  ///

1   "special obligation" as a "gatekeeper" mandates that he be excluded.  *Kumho Tire*,

2   526 U.S. at 147-48 (quoting *Daubert*, 509 U.S. at 589).

3   **3.**      **THE COURT SHOULD EXCLUDE PROF. KAJIKAWA, HIS**

4           **ASSERTIONS AS TO THE TWO SONGS' RESPECTIVE LYRICS,**

5           **AND HIS REBUTTAL REPORTS**

6           **(a)**      **Prof. Kajikawa Is Not Qualified as a Literary Expert**

7           Plaintiffs make no claim as to *Shake It Off*'s music and, instead, contend that

8   its and *Playa*'s lyrics are substantially similar when compared as literary works.

9   However, Plaintiffs do not dispute that their proffered expert as to the extrinsic test,

10  Prof. Kajikawa, is not a literary expert.  *See* Opp. at 13.  Instead, Plaintiffs argue that

11  they need no literary expert because the songs' lyrics are "non-narrative," and Prof.

12  Kajikawa is qualified based on his background in music.  Opp. at 14-15.  But whether

13  viewed as narrative or non-narrative literary works, the lyrics remain literary works

14  and Prof. Kajikawa is admittedly not a literary expert.  That is fatal to the claim Prof.

15  Kajikawa is qualified to provide expert testimony in this case.

16          None of Plaintiffs' cited cases permitted a purported musicologist who is not a

17  literary expert to opine on the alleged similarities in songs' lyrics, whether narrative

18  or non-narrative.  Opp. at 13-15 & n.15.  Rather, in each case the expert's

19  qualifications directly related to the topic of his testimony.  *See Watt v. Butler*, 744 F.

20  Supp. 2d 1315, 1320 (N.D. Ga. Sept. 28, 2010) (musicologist qualified to opine on

21  musical similarity and there were no alleged similarities in lyrics); *In re Silicone Gel*

22  *Breast Implants*, 318 F. Supp. 2d at 895 (chemist could opine on medical studies that

23  involved chemical analyses); *Friedman v. Medjet Assist., LLC*, No. CV 09–07585,

24  2010 WL 9081271 at *4 (C.D. Cal. Nov. 8, 2010) (neurologist qualified to testify to

25  basic physiological and neurological facts about spinal fractures); *Bitton v. Intn'l*

26  *Transpt., Inc.*, 437 F.2d 817, 822 (9th Cir. 1970) (expert in chemistry, physics, and

27  geology qualified to provide analysis of physical evidence in car accident); *U.S. v.*

28  *Little*, 753 F.2d 1420, 1445 (9th Cir. 1984) (tax expert with significant experience in

partnership taxation could testify to partnership tax issues); *U.S. v. Senchenko*, 133 F.3d 1153, 1157 (9th Cir. 1998) (illegal wildlife trade investigator qualified to testify to value of illegal animal parts); *Bernal*, 788 F. Supp. 2d at 1061 (expert with 40 years' experience in screenwriting qualified to opine on substantial similarity of screenplays); *Jeff Benton Homes*, 929 F. Supp. 2d at 1240 (architect qualified to opine as to architectural designs); *Engenium Solutions, Inc. v. Symphonic Techs., Inc.*, 924 F. Supp. 2d 757, 770 (S.D. Tex. 2013) (computer programmer qualified to opine on similarities between computer programs).

These cases are consistent with the requirement that the proponent of an expert witness first establish that the expert has specific knowledge and expertise in the area in which he or she opines. Plaintiffs' problems include that Prof. Kajikawa purports to opine as to similarity in literary works—the songs' respective lyrics—even though he is admittedly not a literary expert and has no background in comparative literary analysis. *See, e.g.*, *D & D Assocs., Inc.*, 411 F. Supp. 2d at 486 (licensed attorney lacked experience necessary to offer opinion as to another attorney's conduct in a specific area of law); *Aria*, 2007 WL 3342696, at *1 (excluding three soil scientists from testifying because they did not possess the requisite scientific, technical or other specialized knowledge of the specific accretion/avulsion issues being tried, and did not possess any professionally-based knowledge of the specific area in dispute).

Plaintiffs attempt to distance Prof. Kajikawa from his stated area of study in race and politics (Anderson Decl., Ex. 8 at 29:22-30:2) by pointing to his other studies and education in musicology. But neither Plaintiffs nor Prof. Kajikawa claim substantial similarity in the music in *Playas* and *Shake It Off*. And Plaintiffs cannot deny Prof. Kajikawa's unabashed reliance on his views as to race and politics. Most notably, Prof. Kajikawa argues that anyone who doubts the originality of combining a "players gonna play" phrase with a "haters gonna hate" phrase "signal[s] an inability or unwillingness to recognize the validity of black vernacular expression." Defs' Memo. at 15. His assertion is not only insulting but also irrelevant to the extrinsic

16

test, which "assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression"—*Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020)—not subjective assertions as to the "validity" of a claimed source.

Prof. Kajikawa is a musicologist who studies race and politics, but there is no claim that the songs' music is similar, and the dynamics of race and politics are irrelevant to Plaintiffs' copyright claim.  For this reason alone, Plaintiffs fail to carry their burden of establishing that Prof. Kajikawa is qualified to testify to claimed similarities in lyrics, and he is properly excluded.

**(b)** **Prof. Kajikawa's Opinions Fall Far Short of Satisfying Rule 702**

Plaintiffs retreat once again to the argument that the deficiencies in Prof. Kajikawa's experience, Reports, and opinions go to the weight of his testimony, not to its admissibility.  Opp. at 15-19.  But, once again, Plaintiffs fail to address Rule 702's standards for admissibility, which confirm that Prof. Kajikawa's Reports and testimony are properly excluded.

**(1)** **Prof. Kajikawa's Opinions Will Not Help the Trier of Fact Apply the Extrinsic Test**

First, Prof. Kajikawa is not qualified to perform a comparative literary analysis of *Shake It Off*'s and *Playas*' respective lyrics.  *See above* at 15-17.  Naturally, an opinion by an expert not qualified to testify to that opinion will not be helpful.

Remarkably, Plaintiffs argue that the jury will be helped by Prof. Kajikawa's insulting assertion—after this Court's 2018 ruling that combining two public domain phrases is banal (Doc. 30) at 13, 15)—"that '[a]ttempts to dismiss the lyrics in question as banal (too brief and unoriginal to merit protection) signal an inability or unwillingness to recognize the validity of black vernacular expression' that exhibits creativity by utilizing common phrases into 'a formal poetic strategy that expresses a new meaning.'"  Opp. at 16.  But this is a copyright infringement case and words do

17

not become copyrightable by reason of their origin.  In fact, Prof. Kajikawa admitted, like Plaintiffs, that the phrases are public domain.  His attempt to claim racial insensitivity is irrelevant and properly barred under Federal Rule of Evidence 403.

Plaintiffs fail to carry their burden of proving Prof. Kajikawa's testimony would assist the jury.

### (2) Prof. Kajikawa's Opinions Are Not Based on Sufficient Facts or Data

Plaintiffs do not dispute that Prof. Kajikawa repeatedly relies upon his assertion that *Playas* and *Shake It Off* each has a "four-part sequence" of tautological phrases. Defs' Memo. at 16; Opp. at 16.  Nor do Plaintiffs dispute that *Shake It Off* does not in fact have *a sequence* of four tautological phrases.  Rather, and as Prof. Kajikawa has admitted under oath, *Shake It Off* has two sets of tautological phrases that are separated by three lines of lyrics that do not appear in *Playas*. *See, e.g.,* Defs' Ex. 8 (Doc. 146-10) at 286:2-9.  In short, Prof. Kajikawa's opinions are moored in an objectively false claimed fact.

Plaintiffs argue that Prof. Kajikawa's reliance on a false fact goes to the weight of his testimony, not its admissibility.  But Rule 702(b) requires that Plaintiffs show that Prof. Kajikawa's "testimony is based on sufficient facts or data…."  Staking his opinions on the false premise that both songs have a sequence of four tautological phrases violates that requirement.

Plaintiffs also argue that Defendants "mischaracterize all of the songs' objective similarities that Prof. Kajikawa has testified to at length." Opp. at 16.  But the only "objective similarit[y]" he identifies is the false claim that *Shake It Off*, like *Playas*, has a sequence of four tautological phrases.  The other claimed similarities are not objective, concrete similarities, but abstract generalizations. *See below* at 20-21.

Plaintiffs fail to carry their burden of proving that Prof. Kajikawa's Reports and testimony as to the extrinsic test are "based on sufficient facts or data…." Fed. R. Evid. 702(b).  Accordingly, his Reports and testimony are properly excluded.

18

**(3)      Prof. Kajikawa's Opinions Are Not the Product of Reliable Principles and Methods**

Defendants also showed that Prof. Kajikawa failed to properly apply the extrinsic test. Defs' Memo. at 16-18. Plaintiffs concede he was required to apply that test, which "requires that the plaintiff identify concrete elements based on objective criteria." _Three Boys Music Corp._, 212 F.3d at 485. However, Plaintiffs take issue with applying the test for literary works, once again arguing that the lyrics are not narrative-driven. Opp. at 17.

Relying almost exclusively on the testimony of Prof. Kajikawa—who, again, is not a literary expert—Plaintiffs assert that "pop songs do not function exactly like books" and thus cannot be analyzed under the test for literary works (Opp. at 17 and n.18), which "focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works." _Benay v. Warner Bros. Ent., Inc._, 607 F.3d 620, 624 (9th Cir. 2010) (quoting _Kouf v. Walt Disney Pictures & Television_, 16 F.3d 1042, 1045 (9th Cir. 1994)), _overruled on other grounds by Skidmore_, 952 F.3d 1051. But Plaintiffs' argument that the lyrics are non-narrative literary works and do not function "exactly like books" does not change that they are literary works, and Prof. Lewis was able to analyze the lyrics in that fashion.[6]

Indeed, contrary to Plaintiffs' assertion, in determining whether lyrics are substantially similar, courts in this Circuit do consider themes, characters, and other "literary" elements where applicable. _See, e.g._, _Toliver v. Sony Music Entm't_, 149 F. Supp. 2d 909, 915-919 (D. Ak. 2001) (analyzing lyrics' scenarios, themes, structures,

---

[6]      Plaintiffs argue that Prof. Lewis confirmed that "unlike narrative driven songs," the works at issue here "center on the communications of feelings and ideas rather than on a series of experienced events." Opp. at 17, n.18; P-Ex. 4 at 7-8. But Prof. Lewis, among other things, analyzed the narrative structure of the songs, concluding, _e.g._, that _Shake It Off_ "employs a sequence of events that is linear and direct, with a clearly established narrative direction," and "tells the story of individual perseverance and offers a stronger sense of narrative sequencing." P-Ex. 4 at 7-9.

19

characters, etc.), *aff'd*, 47 Fed. Appx. 496 (9th Cir. 2002); *Pucket v. Hernandez, No. 216CV02199SWWAGR, 2016 WL 7647555 at \*5-\*6 (C.D. Cal. Dec. 21 2016)* (similar).  Plaintiffs relies on *May v. Sony Music Entm't*, 399 F. Supp. 3d 169, 180-81, 185-86 (S.D.N.Y. 2019), but it applied the Second Circuit's fragmented literal similarity test, which differs from this Circuit's extrinsic test.  *Swirksy v. Carey*, 376 F.3d 841, 849 n.16 (9th Cir. 2004).

Moreover, the extrinsic test requires substantial similarity in concrete, objective similarities in protected expression no matter the nature of the works, whether narrative or non-narrative literary works, photographs, or musical works.  Prof. Kajikawa, however, dismisses that level of analysis as too "literal," and, by resorting instead to generalities, fails to reliably apply the required "principles and methods." Fed. R. Evid. 702(c); *see, e.g., Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (claimed "similarit[y] in plot exist[s] only at the general level for which plaintiff[s] cannot claim copyright protection."); *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1079 (9th Cir. 2006), *overruled on other grounds by Skidmore*, 952 F.3d 1051 (no substantial similarity under the extrinsic test where works "explore themes of death, relationships, and sex, . . . [but] in very different ways"); 17 U.S.C. § 102(b) (in "no case does copyright protection … extend to any idea [or] concept"); *Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1041 (9th Cir. 2015) (holding selection and arrangement of ideas is unprotectible).

Thus, as Defendants highlighted in their Motion, with respect to plot, Prof. Kajikawa acknowledges the "literal events" in the songs' respective lyrics are different but improperly claims similarity at the general level of not letting criticism impact oneself.  *See* Defs' Memo. at 17.  Prof. Kajikawa also acknowledges the very different sequence of events in the two songs' lyrics but finds similarity in the both songs begin by referring to criticism, albeit of very different people for very different reasons.  *Id.*  Regarding characters, he finds similarity only by resorting to the

20

hyperbolic abstraction that both singers face an "existential threat." *Id.*  And regarding themes, he claims similarity by abstracting to "maintaining healthy relationships in the face of social adversity." *Id.*  Finally, he does not claim substantial similarity in settings, mood, or pace, and, as to dialogue, he finds similarity in a so-called "four-part sequence" that does not actually appear in *Shake It Off*. *Id.*

Despite a nearly page-long footnote, Plaintiffs identify no other claimed similarities, other than at the most general level.  Opp. at 18-19, n. 22.  Plaintiffs' attempts to distinguish Defendants' authority on these points is also unavailing.  In particular, Plaintiffs argue that Defendants cite cases that "deal primarily with works that were dissimilar at even a general level and thus are readily distinguishable." Opp. at 19, n.23.  But that is not so. *See, e.g., Funky Films*, 462 F.3d at 1081 ("At a very high level of generality, both works share certain plot similarities: the family-run funeral home, the father's death, and the return of the 'prodigal son,' who assists his brother in maintaining the family business," but those general plot ideas are not protected by copyright law); *Benay*, 607 F.3d at 624 (In both parties' works, "an American war veteran travels to Japan in the 1870s to train the Imperial Army in modern Western warfare in order to combat a samurai uprising," but that general premise is not protectable).  Prof. Kajikawa's reliance on abstract similarities at 30,000 feet is a repudiation of the extrinsic test, not the application of it.

Plaintiffs fail to carry their burden of showing that Prof. Kajikawa's opinions are "the product of reliable principles and methods" "reliably applied" (Fed. R. Evid. 702(c)-(d)), and they plainly are not.  Accordingly, they are properly excluded.

**(c)** **Prof. Kajikawa's Attempted Rebuttals Also Fail**

**(1)** **Prof. Kajikawa Is Not Qualified to Rebut Mr. Massarsky and Offers Only Irrelevant Arguments**

Plaintiffs admit that Prof. Kajikawa is not an economist, let alone a music industry economist, the area of Mr. Massarsky's expertise.  Opp. at 20.  That alone disqualifies Prof. Kajikawa from rebutting Mr. Massarsky's opinion.

Plaintiffs claim that Prof. Kajikawa's criticisms of Mr. Massarsky's Report do not require knowledge of economics at all. *Id.* Instead, they argue Prof. Kajikawa's criticisms rely on his experience as a musicologist. But Plaintiffs do not address the fundamental errors Defendants identified in Prof. Kajikawa's criticisms: contrary to his assertions, (1) Mr. Massarsky's comparison of the objective data as to Ms. Swift's version of *Shake It Off* and another's version with the same allegedly infringing lyrics necessarily takes into account the "artistic qualities" of those lyrics and differences in tone, and (2) that *Shake It Off* helped Ms. Swift's career is irrelevant to the allocation of profits under 17 U.S.C. Section 504(b). *See* Defs' Memo. at 19.

Prof. Kajikawa is unqualified to rebut Mr. Massarsky's Report, and Plaintiffs do not carry their burden of showing Prof. Kajikawa's testimony will assist the jury in determining the *Shake It Off* profits attributable to factors other than the allegedly copied lyrics. Prof. Kajikawa's Rebuttal Report and testimony should be precluded.

### (2) Prof. Kajikawa Is Not Qualified to Rebut Prof. Lewis and Again Offers Only Irrelevant Arguments

Once again, Plaintiffs do not contest that Prof. Kajikawa is not qualified to present a comparative literary analysis. Opp. at 20. As a result, Prof. Kajikawa's Rebuttal Reports and testimony as to Prof. Lewis's Reports and testimony are properly excluded for the same reasons addressed above. *See above* at 15-17.

Further, Plaintiffs attempt to argue that Prof. Kajikawa properly focused his attention on the "sequence at issue, which appears in the chorus, the most important parts of both songs." But that ignores that, as shown in Defendants' Motion, under Section 504 the elements of *Shake It Off* are compared *to each other*, not to *Playas*. Defs' Memo. at 20. In short, Plaintiffs' argument and Prof. Kajikawa's criticisms are irrelevant to Prof. Lewis' 2022 Report as to apportionment. Also, the fact that Prof. Kajikawa again misrepresents that *Shake It Off* includes a "four-part poetic sequence" despite admitting that in *Shake It Off* the phrases are not in sequence, further undercuts both the relevance and reliability of his testimony. *See* Defs' Memo. at 20.

22

1    Ultimately, Prof. Kajikawa is not qualified to rebut Prof. Lewis' Reports, and

2    Prof. Kajikawa's testimony and Rebuttal Reports will not assist the trier of fact in

3    determining the *Shake It Off* profits that are not attributable to the allegedly infringing

4    lyrics.

5        **(3)    Prof. Kajikawa Also Is Not Qualified to Rebut Mr. Parham**

6              **and Just Refers Back to Plaintiffs' Irrelevant Arguments as**

7              **to Mr. Massarsky and Prof. Lewis**

8    Plaintiffs offer no argument as to why Prof. Kajikawa is qualified to rebut

9    Mr. Parham, nor how Prof. Kajikawa's opinions are relevant.  Plaintiffs instead refer

10   to Plaintiffs' prior arguments as to Mr. Massarsky and Prof. Lewis.  Opp. at 21.

11   Accordingly, for the same reasons as set forth in Defendants' Motion and above at 21-

12   23, Plaintiffs fail to carry their burden.  Prof. Kajikawa is not qualified to rebut

13   Mr. Parham's Report, and Prof. Kajikawa's testimony and Rebuttal Report will not

14   assist the trier of fact.

15   **4.    JULI SAITZ'S REPORT AND OPINIONS SHOULD BE LIMITED**

16       **(a)    The Court Should Exclude Ms. Saitz' Opinion, Contrary to Ninth**

17             **Circuit Law, that Taxes Should Not Be Deductible in Calculating**

18             **Profits Under § 504(b)**

19   Defendants established that Ms. Saitz' opinion that copyright defendants should

20   not be allowed to deduct taxes in calculating profits under Section 504(b) is trumped

21   by the established law that they may do so.  *See* Defs' Memo. at 22 (citing *Three Boys*

22   *Music*, 212 F.3d at 487-88 (non-willful infringers may deduct taxes in calculating

23   profits)).  Plaintiffs argue only that the jury should determine the weight to afford her

24   testimony.  Opp. at 21.  But Plaintiffs provide no support, because there can be none,

25   for the proposition that the jury should hear an expert opinion that is indisputably

26   contrary to existing law.  The sole case Plaintiffs cite does not even come close to

27   supporting that position.  *Humetrix*, 268 F.3d at 919 (testimony as to lost profits in

28   non-copyright case).

1   Plaintiffs do not carry their burden of showing that it would assist the trier of

2   fact to allow Ms. Saitz to present an opinion contrary to law.  Accordingly, her Reports

3   and testimony that taxes should not be deductible is properly excluded.

4   **(b)**   **Ms. Saitz' Admittedly Misdirected Rebuttal of Barry Massarsky**

5   **Also Should Be Excluded**

6   Defendants established that Ms. Saitz' rebuttal of Mr. Massarsky's Report is

7   based on her admitted misconception that his Report opines as to *the dollar amount*

8   of *Shake It Off* profits rather than *a percentage apportionment* of whatever the amount

9   of those profits; that she was not engaged to consider Mr. Massarsky's methodology;

10   and that she is "not offering an opinion on what he did with respect to apportionment."

11   Defs' Memo. at 22-23.  Plaintiffs again offer no meaningful rebuttal.

12   Plaintiffs state that they need not take Defendants "at their word" as to the

13   amount of profits.  Opp. at 21.  But Defendants do not ask Plaintiffs to take them at

14   their word; they ask only that Plaintiffs take their own expert at her word.  And Ms.

15   Saitz stated at her deposition that she agreed "that Mr. Massarsky just uses the profit

16   figure provided by defendants as an example of a profit figure to which he applies the

17   percentage that his report concludes is appropriate[.]"  *See* Anderson Decl., Ex. 14 at

18   84:3-12.  Plaintiffs also assert that at some point in her testimony that Plaintiffs fail to

19   specify, Ms. Saitz stated that Mr. Massarsky's Report did not expressly refer to the

20   dollar amount resulting from the application of the percentage as "an example." Opp.

21   at 21-22.  Even if those words were not used, Ms. Saitz still recognized it was only an

22   example.  Ex. 14 at 84:3-12.

23   Plaintiffs fail to carry their burden and, instead, refuse to acknowledge their

24   own expert's admission that her Rebuttal Report as to the Massarsky Report was a

25   misfire.  It is properly excluded.

26   **5.**   **CONCLUSION**

27   For the foregoing reasons and the reasons set forth in Defendants' Motion, the

28   Court should exclude the expert opinions, testimony, and Reports of Plaintiffs' experts

Mr. Kohn and Prof. Kajikawa, and should exclude Juli Saitz' expert opinions, testimony, and Reports as to the deduction of taxes and as to Mr. Massarsky's Report and methodology.

Dated: October 3, 2022

/s/ Peter Anderson

Peter Anderson, Esq.
Sean M. Sullivan, Esq.
Eric H. Lamm, Esq.
DAVIS WRIGHT TREMAINE LLP
Attorneys for Defendants

J. Douglas Baldridge, Esq.
Katherine Wright Morrone, Esq.
VENABLE LLP
Co-counsel for Defendant
TAYLOR SWIFT